UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STATE OF ILLINIOIS,<br><br>           Plaintiff,<br><br>       v.<br><br>CITY OF CHICAGO<br><br>           Defendant. | Case No. 17-cv-6260 |

**MOTION TO INTERVENE**

The Fraternal Order of Police Chicago Lodge No. 7 (the "Lodge") by and through its attorneys files this request pursuant to Rule 24 (a) of the Federal Rules of Civil Procedure to seek intervention as a matter of right in the above captioned case based upon its substantial interest in the subject of this litigation which may, as a practical matter, impair or impede the Lodge's ability to protect its collective bargaining representational interests of the Chicago police officers it represents. In support of this motion and in compliance with Rule 24 (c), the Lodge submits two pleadings - a Motion to Dismiss Count I, the 42 U.S.C. Sec. 1983 claim, contained in paragraphs 205 to 208, and an answer to all other allegations in the Complaint filed in this matter. These pleadings satisfy the pleading requirements of FRCP Rules 7 and 8.

The Lodge is the recognized exclusive representative for the purpose of negotiating with the City of Chicago for wages, hours and working conditions of Chicago police officers pursuant to Sections 3 and 7 of the Illinois Public Labor Relations Act, ("IPLRA"). 5 ILCS 315/3 and 7. In support of this motion to intervene, the Lodge states as follows:

FRCP Rule 24 should be construed broadly to favor proposed intervenors. United States ex rel. McGough v. Covington Techs. Co., 967 F.2d 1391, 1394 (9th Cir. 1992). In evaluating whether the requirements to intervene under Fed. R. Civ. P. 24(a) are met, courts "are guided primarily by practical and equitable considerations." United States v. City of Los Angeles, 288 F.3d 391, 397 (9th Cir. 2002), quoting Donnelly v. Glickman, 159 F.3d at 409 (9th Cir. 1998). By allowing parties with a practical interest in the outcome of a case to intervene, a court may often prevent or simplify future litigation involving related issues. Forest Conservation Council v. U.S. Forest Serv., 66 F.3d 1489, 1496 n. 8 (9th Cir. 1995), abrogated on other grounds by Wilderness Society v. United States Forest Service, 630 F.3d 1173 (9th Cir. 2011). In United States v. City of Los Angeles, supra, the Ninth Circuit reversed a District Court judge's denial of a police union's motion to intervene. The Ninth Circuit held that the Police League had established a protectable interest in the remedy that was sought by the United States against the City of Los Angeles. 288 F.3d at 402. The same protectable interest is present with the Lodge in the case at bar.

A. **The Lodge's Rule 24 Motion is timely because the Lodge has not been part of the substantive discussions between the parties on multiple issues of concern to its members and because the consent decree drafts on multiple issues have not been shared with the Lodge.**

1. For a motion to intervene to be considered timely, courts should factor in whether the proposed intervenor was reasonably diligent in learning of a suit that might affect its rights. People Who Care v. Rockford Bd. Of Educ., 68 F.3d 172, 175 (7th Cir. 1995), citing Nissei Sangyo America, Ltd. v. United States, 31 F.3d 435, 438 (7th Cir. 1994). The Lodge could not determine how the negotiations for a potential consent decree could affect their rights because

the draft proposals had not been furnished to the Lodge representatives by the OAG. For these reasons, there is no unreasonable delay in the Lodge seeking to intervene now.

2. The passage of time since the commencement of litigation or settlement negotiations is not dispositive in granting a Rule 24 motion in this case. Nissei Sangyo America, Ltd. v. United States, 31 F.3d 435, 439 (7th Cir. 1994). Rather, courts should also consider the prejudice to the existing parties. Id., Zurich Capital Markets, Inc. v. Coglianese, 236 F.R.D. 379 (N.D.Ill. 2006) (motion to intervene not untimely because it did not unfairly prejudice parties). The Lodge has moved to intervene with reasonable haste upon learning of the nature of this case's consent decree negotiations between the existing parties. Consent decree negotiations have not concluded. Therefore, the prejudice towards the existing parties that would result in the intervention of the Lodge is *de minimis*. To the contrary, the prejudice towards the Lodge and its statutory and contractual rights under its collective bargaining agreement would be significant should their motion be denied.

3. The ultimate test in determining timeliness is a prejudice that may be suffered by the parties with respect to a motion to intervene, and the most important consideration is what, if any, prejudice would result to the existing parties. In People Who Care v. Rockford Bd. Of Educ., 68 F.3d 172, 176 (7th Cir. 1995), the purported intervenor sought permission to intervene to stop the issue of bonds that had been authorized by the court on December 5, 1994. This was one of many orders that had been issued in that case. The first order was issued in July 1989, and approximately four and one-half years later, the intervenor sought to stop the issuance of bonds that were needed to remedy the segregation in the schools, as found by the court. Id. at 173-74. Accordingly, the intervention was denied because the prejudice to the school district was too great, which is wholly different in the instant case because no remedial activities have begun.

4. For several months, representatives of the Lodge and the Office of the Attorney General ("OAG") have met to discuss two provisions that might be contained in a consent decree, which would protect the collective bargaining interests of the Lodge and its members. The Lodge originally suggested a number of other provisions, but no draft language has been exchanged on these matters. As of the filling of this motion, the State and City have not reached an agreement on substantive matters that specifically relate to the matters alleged in the Complaint.

5. The Third Joint Status Report filed by the State and the City in this case notes in ¶ 11 that "…the parties have exchanged draft provisions and held formal, face-to-face negotiations on multiple additional topics. The Parties intend to continue these negotiations…." Third Joint Status Report State of Illinois v. City of Chicago, p. 3, Case No. 170-cv-6260. Nothing in this status report indicates that the parties are close to reaching a settlement. The Lodge has not been part of these discussions on "multiple additional topics."

6. This report also states that the State "…continues to meet with counsel and high-ranking members of the Fraternal Order of Police ("FOP")…." Id. ¶ 10. As of the filing of this motion, the parties have not shared with the Lodge or its officers any of the draft provisions that have been exchanged in face-to-face negotiations on multiple additional topics. The discussions with the OAG and the Lodge have been limited to general proposals designed to protect the collective bargaining rights of the Lodge and its members, but not the specific provisions of the collective bargaining agreement. There should be no doubt that the Lodge has a vital interest in the "draft provisions" and "multiple additional topics" that deal with fundamental matters involving the daily work of police officers, but the Lodge has not been included in these discussions between the present parties to the litigation.

4

7. The Lodge filed this motion for intervention only after it had learned on May 15, 2018, that community groups, described below, published and undoubtedly submitted to the OAG a report that contains recommendations for the consent decree - <u>Chicago Community Consent Decree, App. 168</u>, which are extensive and adverse to the interests of the Lodge and the employees it represents.

B. **<u>The Lodge is the exclusive bargaining representative for police officers and has a substantial interest in the outcome of this litigation.</u>**

8. The Lodge is recognized by the City of Chicago as the sole and exclusive representative for a bargaining unit of all sworn police officers below the rank of Sergeant and pursuant to the provisions of the IPLRA (5 ILCS 315/1, et seq.) has had an enduring collective bargaining relationship with the City of Chicago to negotiate wages, hours and working conditions on behalf of the bargaining unit.

9. Under the provisions Section 7 of the IPLRA, the Lodge has the right to bargain collectively and negotiate in good faith with the City of Chicago with respect to wages, hours and other conditions of employment, to bargain about matters that may be covered by other laws that pertain in part to a matter affecting wages, hours and other conditions of employment, and to enter into collective bargaining agreements containing causes which either supplement, implement or relate to the effect of such provisions in other laws. 5 ILCS 315/5 and 7. *See* <u>People Who Care</u>, 962 F.2d 1335, 1338 (7th Cir. 1992).

10. Based on the provisions of IPLRA, the City of Chicago and the Lodge have negotiated numerous collective bargaining agreements since approximately 1980. The most recent collective bargaining agreement has a term of July 1, 2012, to June 30, 2017, and pursuant to Section 28.2 of the collective bargaining agreement, all of its provisions remain in full force and effect after the expiration date while negotiations or an impasse resolution

procedure are continuing for the renewal of the collective bargaining agreement. <u>Collective Bargaining Agreement between the City of Chicago and Fraternal Order of Police Chicago Lodge No. 7</u>, ("CBA") Section 28.2. App. 1, 54. Because these contract rights have been negotiated based upon the state's major collective bargaining law and are to be impacted by the OAG's requested injunctive relief, the Lodge has a protectable interest in the remedy in this case. <u>U.S. v. City of Los Angeles</u>, 288 F.3d 391, 400-01 (9th Cir. 2002).

11. The CBA contains provisions addressing a number of the subjects raised in the complaint filed by the Office of the Illinois Attorney General in this case. They include the investigation of allegations of police officer misconduct and related discipline, the field training officer program, police officer promotions, officer mental health and support programs, including the performance recognition system, behavioral intervention system, personal concerns program, and the requirement that allegations of misconduct by police officers be supported by affidavits. The Seventh Circuit has held that contract provisions negotiated between employers and labor organizations may not be changed by a consent decree without the assent of the union. <u>People Who Care v. Rockford Board of Education</u>, 961 F.2d 1335, 1337 (7th Cir. 1992), citing <u>W.R. Grace & Co. v. Rubber Workers Local 759</u>, 461 U.S. 757, 771 (1983). The court also held that litigants may not agree to disregard valid state laws. 961 F.2d at 1337. As a result of the union's intervention, the court concluded that it was inappropriate for the district court in a consent decree to override collective bargaining contract provisions or to relieve the school district of its statutory obligation to bargain with the union about contract modifications. 961 F.2d at 1339. It was this court decision that resulted from the union's intervention the purpose of which was to complain that a significant contract provision negotiated by the union and the employer that was being impaired by the consent decree that had been negotiated between the

plaintiff community group and the Board of Education. Accord, Doe v. Cook County, Illinois, 798 F.3d 558, 563-64 (7th Cir. 2015) (court reversed a consent decree that adversely impacted a collective bargaining agreement).

12. The community group recommendations consist of 488 separate paragraphs in 127 pages supported by a number of community groups. App. 168. These recommendations seek substantive modifications in the operations of the Chicago Police Department with specific recommendations to change provisions of the collective bargaining agreement without negotiating with the Lodge (¶¶ 187, p. 54, App. 178), to change the anonymous complaint prohibition of the collective bargaining agreement (¶ 212, p. 59, App. 181-A), to require the termination of officers who violate Rule 14 of the Chicago police department (¶ 259, p. 66, App. 182), to regulate the right of officers to engage in secondary employment (¶ 265 p. 66, App.182), and other changes to the collective bargaining agreement.

13. These are substantive changes that would directly impact Chicago police officers and will be submitted to this court for review and possible inclusion in a consent decree. The recommendations seek to strip collective bargaining and contract rights, which have protected police officers since the commencement of the collective bargaining relationship.

14. The OAG and the City have entered into memorandum of agreement with organizations that have filed complaints in other cases to seek relief against the City of Chicago and individual police officers. These cases are Communities United et al. v. The City of Chicago, Case No. 17-cv-7151, and Campbell et al. v. The City of Chicago et al., Case No. 17-cv-4467. Plaintiffs in both cases ("community groups") seek injunctive relief for the purpose of changing policies and practices of the police department regarding accountability, supervision and discipline of police officers, the investigation of allegations of police officer misconduct, and

other issues in a manner similar to that sought by the OAG in the instant case. The <u>Campbell</u> and <u>Communities United</u> plaintiffs are collectively identified as the "Coalition Founders" and have agreed to meet with the OAG and the City of Chicago to present proposed consent decree provisions, which undoubtedly are contained in the report noted above.

15. All of these issues and others are the subject of specific injunctive type relief requested by the OAG in this case in the form of a court order requiring the City and its agents to adopt and implement various policy and procedural changes that would greatly affect work related interests of the members of the Chicago Police Department.

C. **The complaint seeks to impact the CBA provision.**

16. Among the collective bargaining provisions that will be impacted by the consent decree and the importance they play in the protection of rights of police officers are:

a. Bill of Rights Section 6.1 (D) which states that no anonymous complaint of misconduct shall be made against an officer or be the subject of a Complaint Register [initial discipline allegation] unless the allegation is a violation of the Illinois criminal code, the criminal code of another state of a criminal violation of the United States. App. 11.

Appendix L of the CBA which provides for additional protections of police officers, including a provision that no officer shall be required to answer any allegation of misconduct unless it is supported by an appropriate affidavit, except as specified in certain circumstances. App. 82.

1. The Complaint alleges these provisions of the CBA are procedural and training deficiencies relating to investigations, and the OAG seeks as a remedy policy and procedural changes in the investigations, which would inevitably include changes in the limitations on the use of anonymous complaints. <u>Complaint</u>, ¶¶ 148-150, <u>Answer of the Lodge in Support of</u>

Motion to Intervene, p. 43, ¶¶ D-E. The community groups recommend that the affidavit requirement of the CBA be eliminated and that the City of Chicago adopt an ordinance to exempt it from the affidavit requirement of the Illinois Uniform Peace Officers' Disciplinary Act, 50 ILCS 725/1, et seq. Chicago Community Consent Decree, ¶¶ 212-213, n.18, pp. 59-60. App. 181A and B.

  b. Section 8.1 of the CBA provides that "[no] officer covered by this agreement shall be suspended, relieved from duty or otherwise disciplined in any manner without just cause." Section 8.1, CBA, p. 10, App. 17.

    1. The OAG alleges that the disciplinary system of the CPD results in police officers receiving less severe discipline than the facts merit and that there is no standardized disciplinary matrix. Complaint, ¶¶ 159, 164 and ¶ 165. The Complaint also alleges that discipline is haphazard and unpredictable.

    2. The Department has issued a disciplinary matrix protocol that is the subject of an unfair labor practice proceeding now pending at the Illinois Labor Relations Board. An ILRB Administrative Law Judge found that the CPD unilaterally changed its disciplinary process, such action constituted an unfair labor practice, and issued a recommended order that the City bargain in good faith with the Lodge concerning the decision to implement a new disciplinary matrix and guidelines. FOP Lodge No. 7, Case No. L-CA-17-034 ILRB (Nov. 8, 2017). App. 183, 223-4.

    3. Any attempt by the OAG to use the consent decree to interfere with a remedy ordered by the ILRB would be counter to the interests of work place justice and the requirements of collective bargaining under the IPLRA.

  c. A letter dated September 3, 2014, attached to the CBA at p. 144 provides for the creation of a Labor Management Committee to view and study ways to improve and strengthen

the field officer training program. App. 151. Instead of relying upon collective bargaining to change the system, the OAG is seeking a court order to change this training program. The Lodge should be a part of those discussions.

        1. The OAG alleges the field officer training program is not adequately staffed, officers are not compensated sufficiently to be mentors, and the field training officers are assigned too many officers to train. Complaint, ¶¶ 78-86.

    d.    Appendix J of the CBA pp. 72-73 establishes the procedures for an intervention system and personal concerns program to deal with employee problems and related matters involving mental health support for police officers. App. 79.

        Appendix R provides for the removal of an officer from active duty for psychological reasons and the review of any claims that the officer is psychologically fit to perform the duties of a police officer. App. 93.

        1. The Complaint alleges the Department does not adequately support the mental health needs of police officers and seeks changes in the policies and procedures under which officers are monitored for stress, provided assistance and intervention for stress management and assistance in resolving their personal problems. The Complaint also alleges that the Personnel Concerns Program, the Behavioral Intervention System and the Performance Recognition System are not consistently or effectively utilized. Complaint, ¶¶ 173-186 and ¶¶ 112-121.

    e.    Article 12 of the collective bargaining agreement provides for promotions within the bargaining unit. App. 28.

        1. The Complaint alleges that the promotion system is "not sufficiently tailored to identify candidates for certain critical supervisory skills or to weed out individuals who have

10

potentially problematical backgrounds." Complaint, ¶ 126. The complaint seeks changes in the policies and procedures concerning the promotions of police officers within the bargaining unit.

  f. Section 8.7 of the collective bargaining agreement provides that the actual number of technical response reports (TRR) issued against an officer will not be used for disciplinary purposes against the officer. App.18.

    1. The Complaint in ¶¶ 100-104 alleges that the review process for TRR's is inconsistent, inadequate and that supervisors typically review TRR's only for correctness and completeness but not to determine whether force was properly used and that they are routinely approved within minutes of submission.

    The Complaint seeks as a remedy changes in the policies and procedures concerning the use and review of TRR's.

  g. Section 16.1 of the CBA provides for the right of an officer to engage in secondary employment in a manner to supplement the income the officer receives from full-time employment with the CPD. App. 30. Section 16.2 provides for an officer to work in a voluntary special employment program on scheduled days off at the Chicago Housing Authority, Chicago Transit Authority and Midway and O'Hare airports. The terms under which this employment may be obtained are set forth in this section. App.30.

  17. The State alleges that it seeks a consent decree for the purpose of obtaining several substantive reforms to address critical deficiencies in police department policies and practices including accountability, promotion, officer assistance and support, which on the basis of the allegations of the Complaint include such areas as those stated in ¶¶ 16(a) to (g) above, including but not limited to discipline, the use of anonymous complaints about police officers' conduct, promotions, field training officers, mental health support programs, the use of tactical

response reports, all of which are matters that directly affect the provisions of the collective bargaining agreement. Specifically, the OAG seeks an order from this court that the City and its agents adopt and implement policies and procedures to change the practices that have been alleged to support unlawful conduct. The Lodge seeks intervention for the purpose of protecting its interest under the collective bargaining agreement and the IPLRA. The impact of the remedies sought by the OAG on these provisions of the CBA support the Lodge's claim that this litigation could lead to an impairment or impediment of the Lodge's ability to protect its collective bargaining rights. United States v. City of Los Angeles, 288 F.3d 391, 400 (9th Cir. 2002).

### D.     **Neither the OAG nor the City can adequately represent the Lodge's interests.**

18.     The interests of the Lodge cannot be adequately represented by the present parties in this case based upon the manner in which they have exchanged draft consent decree proposals without sharing them with the Lodge. The City of Chicago engages in collective bargaining with the Lodge as the employer, and their interests are most often diametrically opposite and adversarial, especially in the unfair labor practice case, referenced above, in which the Lodge alleged that the City unilaterally without bargaining with the Lodge implemented a wholesale change in the CPD's discipline system. The OAG has filed the complaint against the City alleging, *inter alia*, that the current systems and procedures some of which are based on the provisions of the collective bargaining agreement are inadequate, haphazard and need to be replaced. Therefore, neither the OAG nor the City are able or willing to adequately represent the collective bargaining interests of the Lodge and its members in this litigation. See Trbovich v. United Mine Workers of America, 404 U.S. 528 (1972) (Secretary of Labor unable to adequately represent an intervening union member's interests while also representing union.)

12

In Forest Conservation Council v. U.S. Forest Serv., 66 F.3d 1489, 1498-99 (9th Cir. 1995) (quoting People of State of California v. Tahoe Regional Planning, 792 F.2d 775, 778 (9th Cir. 1986), the Ninth Circuit held that in determining the adequacy of representation, the court considers whether the interest of a present party is "… such that it will undoubtedly make all the intervenor's arguments; whether the present party is capable and willing to make such arguments; and whether the intervenor would offer any necessary elements to the proceedings that other parties would neglect." It should be clear that neither of the present parties to the OAG's complaint are in a position to advocate favorably on behalf of the Lodge's interests. The court also noted that "[a] presumption of adequate representation generally arises when the representative is a government body or officer charged by law with representing the interests of the absentee." Id. at 1499 (quoting Pennsylvania v. Rizzo, 530 F.2d 501, 505 (3d. Cir. 1976). But this presumption is inapplicable when the government is an employer of the employees the proposed intervenor represents due to their adversarial relationship during, among other times, the collective bargaining process. United States v. City of Los Angeles, 288 F.3d 391, 401-02 (9th Cir. 2002).

The Chicago Police Department is the employer of the Lodge's members and as such has an interest in obtaining contract provisions that might be inimical to the interests of the Lodge. The Fifth and Ninth Circuits have recognized that a lower threshold of demonstrating inadequacy is used to determine the adequacy of representation. Woolen v. Surtran Taxicabs, Inc., 684 F.2d 324, 332 (5th Cir. 1982) (granting motion of antitrust intervenors who felt inadequately represented by plaintiff class), United States v. City of Los Angeles, 288 F.3d 391, 402 (9th Cir. 2002) ("In sum, the Police League has made the minimal showing needed to establish that the City's defendants' representation 'may' be inadequate.")

## **CONCLUSION**

It is for these reasons that the Lodge believes that its motion to intervene as a matter of right should be granted. Should this request be denied, the Lodge requests that it be given granted permissive intervention status pursuant to FRCP Rule 24 (b).

        Respectfully submitted,

        /s/ Joel A. D'Alba_____

        Joel A. D'Alba,

        Attorney for Fraternal Order of
        Police Chicago Lodge No. 7

Of counsel:

Asher, Gittler & D'Alba
200 W. Jackson Blvd., St. 720
Chicago, Illinois 60606
ARDC No. 0571121

Phone No. (312) 263 1500

jad@ulaw.com