# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STATE OF ILLINOIS,<br><br>    Plaintiff,<br><br>  v.<br><br>CITY OF CHICAGO,<br><br>    Defendant. | Case No. 1:17-cv-06260<br>Honorable Robert M. Dow Jr. |

### PLAINTIFF'S BRIEF IN OPPOSITION TO THE FRATERNAL ORDER OF POLICE CHICAGO LODGE NO. 7'S MOTION TO INTERVENE

**TABLE OF CONTENTS**

I. FACTUAL BACKGROUND ................................................................................................... 1
    A. The Complaint ................................................................................................................. 1
    B. FOP's Knowledge of this Lawsuit .................................................................................. 1
    C. Consent Decree Negotiations .......................................................................................... 3
II. ARGUMENT .......................................................................................................................... 5
    A. The Court should deny FOP intervention as of right. .................................................... 5
      1. FOP's motion is untimely. ........................................................................................... 5
        a. FOP has known about its asserted interest in this case since the filing of the Complaint. ................................................................................................................ 6
        b. FOP's intervention now would prejudice the Parties. ........................................... 7
        c. FOP cannot show that denial of its motion would be prejudicial ......................... 9
      2. FOP cannot demonstrate an interest in this case. ........................................................ 9
      3. FOP cannot demonstrate that disposition of this case threatens to impair FOP interests. ..................................................................................................................... 11
      4. FOP cannot show that the named parties inadequately represent its interests. ........... 12
    B. The Court should deny FOP permissive intervention. .................................................. 13
    C. At most, FOP is entitled to the same rights as other stakeholders. .............................. 14
III. CONCLUSION ..................................................................................................................... 15

Plaintiff, the State of Illinois (the "State"), opposes the motion to intervene by the Fraternal Order of Police Chicago Lodge No. 7 ("FOP"). Rather than seeking to enter this litigation in August 2017 when the State filed its Complaint, FOP has waited until the moment that the parties have nearly finished negotiating a proposed consent decree. FOP has made clear that it seeks to stop any consent decree, undoing hundreds of hours of negotiation and community engagement by the parties to this case, despite offering only speculation as to how a consent decree will affect FOP's interests. At the same time, FOP's motion ignores the clear opportunities it has to assert its interests in this case—including the ability to file motions and briefs challenging the adequacy and fairness of any proposed consent decree. FOP has failed to show it is entitled to intervention as of right or to permissive intervention.

## I. FACTUAL BACKGROUND

### A. The Complaint

The State filed this lawsuit on August 29, 2017. Dkt. 1. The State's Complaint alleges that the City of Chicago ("City"), through the Chicago Police Department ("CPD"), engages in a pattern of unconstitutional conduct that deprives Chicago residents of their rights under the Fourth Amendment, the Illinois Constitution, and Illinois law. Compl., Counts I–IV.

### B. FOP's Knowledge of this Lawsuit

This case was prominently announced to the public via joint press conference with Attorney General Lisa Madigan and Mayor Rahm Emanuel. As its numerous public statements demonstrate, FOP has known about its interest in this case since it was filed in August 2017, long before moving to intervene. FOP reported to this Court through counsel on July 20, 2018 that FOP "wanted to be a part of this process from very early on," noting that it presented issues related to this case and police reform to the State in October 2017. Ex. A (7/20/18 Hrg. Tr.) at 8:6–16. FOP's

public statements on this case have strongly conveyed its view that there should not be any consent decree. On the day the Complaint was filed, FOP's President, Kevin Graham, declared that any consent decree would be "a potential catastrophe for Chicago" and "will only handcuff the police even further."[1] In FOP's September 2017 newsletter, the first to be published after the lawsuit began, Graham criticized the lawsuit in an article titled "No Reason to 'Consent.'" Ex. B. Graham argued that negotiating a consent decree to resolve this case "could seriously threaten our collective bargaining rights" and that "[n]o one in my administration, and few Lodge 7 members, believe that such actions are necessary." *Id.*

FOP's public opposition to any consent decree continues to this day. On July 17, 2018, commenting for an article that published three privileged and confidential pages purporting to be from the draft consent decree, FOP officials confirmed their opposition to any negotiated consent decree that addresses necessary reform of the CPD.[2] In the article, FOP Vice President Martin Preib called this action "a bizarre lawsuit that, if it succeeds, will effectively undermine policing in Chicago," while FOP President Kevin Graham stated that a consent decree will "let our officers be injured or killed simply for a policy that makes other people feel good."[3] And in a July 20, 2018 statement, FOP strongly criticized this action and "the proposed consent decree," which "our Lodge will continue to fight," as "not legal, not moral, politically motivated," and which "will have a devastating impact on the ability of our members to protect the public." Ex. C. In keeping with these comments, FOP accompanied its motion to intervene in this case with a Rule 12(b)(6)

---

[1] Brandis Friedman, *Developments in Court Oversight for the Chicago Police Department*, CHI. TONIGHT (WTTW) (Aug. 29, 2017 7:18 PM), https://bit.ly/2Mmr4Hi. Here and elsewhere, the State requests that the Court take judicial notice of FOP's public statements in news accounts. *See United States v. Medline Indus., Inc.*, No. 11 C 5373, 2015 WL 1396190, at *3 n.7 (N.D. Ill. Mar. 24, 2015).
[2] *See* Matt Finn, *Chicago Police Union Fights State's 'Bizarre' Proposed Consent Decree After Obama-era DOJ Investigation*, FOX NEWS (July 17, 2018), https://fxn.ws/2LhVEUC.
[3] *Id.*

2

motion to dismiss the Fourth Amendment claim that is the basis for the Court's jurisdiction. *See* Dkt. 51-1.

Although not obligated to do so, counsel for the State met repeatedly with FOP's President and counsel for FOP. In total, counsel for the State had eight in-person meetings with FOP's President and counsel between September 2017 and May 2018. As FOP's motion acknowledges, those meetings involved discussion of "provisions that might be contained in a consent decree, which would protect the collective bargaining interests of the Lodge and its members." FOP Mot. 4. And the State's discussions with FOP were not limited to FOP's collective bargaining agreement (CBA) and collective bargaining rights. The State actively solicited FOP's views regarding measures to improve CPD unrelated to FOP's CBA, including training for CPD officers and recruits, the supervisory promotion process, mental health support services for officers, and police oversight agencies.

In addition, in March 2018, the State and the City entered into a Memorandum of Agreement ("MOA," attached as Exhibit D) with a coalition of community groups ("Coalition") that afforded the Coalition certain rights to raise objections and provide input regarding any consent decree proposed to the Court before the Court decides whether to approve and enter a final consent decree. At the same time the MOA was publicly released, the parties offered FOP the same rights provided to the Coalition in the MOA, but FOP refused this offer.

**C.  Consent Decree Negotiations**

Since the filing of the Complaint, the State has been engaged in extensive settlement-related discovery and negotiations with the City, including CPD personnel, regarding a consent decree. The State has served 242 document requests on the City and received over 97,000 pages in responsive documents. The State has also retained a team of six nationally renowned experts

3

who have conducted numerous site visits, meetings, and interviews with City and CPD personnel. The State's experts have participated in negotiations with the City regarding the consent decree's content. As of this filing, the State has incurred $294,603 in expenses related to experts it has retained to assist with this matter. The State has dedicated a team of nine attorneys from the Attorney General's Office—most of whom regularly spend in excess of 80% of their time on this case—to prepare initial drafts of consent decree provisions and to participate in negotiations. Attorneys from the firm Robins Kaplan have also spent many pro bono hours assisting the State. The State's negotiating team has participated in approximately 250 hours of face-to-face negotiations with the City from November 2017 through July 2018.

In addition to the extensive resources the State has dedicated to the negotiation process itself, two additional attorneys, community outreach staff, and a team of dedicated support staff have assisted the State with other aspects of the case, including the extensive process of soliciting public input regarding the consent decree. To solicit feedback from both the public and CPD officers, the State conducted 14 community roundtables in neighborhoods throughout Chicago with the assistance of the Institute for Policy and Civic Engagement at the University of Illinois at Chicago, and focus groups with CPD officers with the assistance of the Police Foundation. The State also retained a consultant to assist with logistics and organizing of the community roundtables and to design and build a website exclusively dedicated to informing the public and providing a forum through which the public and CPD officers could submit proposals regarding the consent decree. As of this filing, costs related all of these efforts to solicit public input regarding the consent decree are $507,476.

As a result of the parties' extensive negotiations and efforts, the parties have nearly reached agreement, except for one outstanding issue: whether, as at least ten other recent police consent

decrees require, officers should document when they point a firearm at a person in the course of an investigatory stop or arrest. The parties are finalizing a 235-page draft of a consent decree with over 700 paragraphs that, with the exception of a few paragraphs relating to the disputed issue, is almost ready for public release and comment.

## II. ARGUMENT

### A. The Court should deny FOP intervention as of right.

There are four requirements for a party to intervene as of right under Rule 24(a): "(1) the motion to intervene is timely filed; (2) the proposed intervenors possess an interest related to the subject matter of the action; (3) disposition of the action threatens to impair that interest; and (4) the named parties inadequately represent that interest." *Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 657–58 (7th Cir. 2013). Intervention is not permitted unless the moving party can meet each of the Rule's requirements, *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 946 (7th Cir. 2000), and the burden is on that party to do so. *Reid L. v. Ill. State Bd. of Educ.*, 289 F.3d 1009, 1017 (7th Cir. 2002). FOP's motion to intervene does not satisfy any one of the Seventh Circuit's four requirements to intervene as of right.

#### 1. FOP's motion is untimely.

The timeliness inquiry under Rule 24 requires evaluation of four factors: "(1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; (4) any other unusual circumstances." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 797–98 (7th Cir. 2013).

### a. FOP has known about its asserted interest in this case since the filing of the Complaint.

Courts evaluating timeliness of intervention motions are to consider "the time between the [proposed intervenor's] knowledge that the suit could impact their interests and the motion to intervene." *Heartwood, Inc. v. U.S. Forest Serv., Inc.*, 316 F.3d 694, 701 (7th Cir. 2003). As discussed in Part I-B, FOP's own public comments demonstrated its concern about its interest in this case in August and September 2017. Yet FOP tells a different story in its brief. FOP first says it has not been able to determine how consent decree negotiations could affect its interest because it has not received any drafts, FOP Mot. 2–3; it then contends that it moved to intervene "only after" May 15, 2018, when community groups "published and undoubtedly submitted" to the State a set of recommendations. *Id.* at 5. FOP's repeated public statements since August 2017 of the purported impacts of a consent decree on its membership flatly contradict these assertions; it has long known of its interest in this case, yet failed to attempt to intervene.

Moreover, FOP's brief concedes that various paragraphs of the Complaint provided notice of FOP's asserted interest. In a section of its brief arguing that "[t]he Complaint seeks to impact the CBA provision[s]," FOP contends that over 40 paragraphs of the Complaint implicate certain provisions of its collective bargaining agreement that "will be impacted by the consent decree." *Id.* at 8–12; *see, e.g.*, *id.* at 8 (noting that the State "seeks as a remedy policy and procedural changes in the investigations" of officer misconduct); *id.* at 11 ("The complaint seeks changes in the policies and procedures concerning the promotions of police officers within the bargaining unit."). Yet over nine months passed between the filing of the Complaint and FOP's motion. Given the requirement of proposed intervenors "to be reasonably diligent in learning of a suit that might affect their rights," *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995), FOP should have sought to intervene soon after the State filed the Complaint.

The Complaint is not the only notice FOP should have heeded of its claimed interest in this case. As described above, the State held eight meetings with FOP representatives after the Complaint was filed but before FOP sought to intervene. As FOP acknowledges, *see* FOP Mot. 4, in those meetings the State, FOP, and at various times the City discussed potential consent decree language encompassing FOP's CBA concerns and police reform measures outside the CBA. FOP acknowledged these meetings in open court on July 20, 2018. *See* Ex. A at 8:6–16. These meetings further confirm that FOP has been continually apprised of its potential interest in the case since its inception in August 2017. *See Reid L.*, 289 F.3d at 1018 (the relevant measure is "the length of time the intervenor knew or should have known of her interest in the case").

### b. FOP's intervention now would prejudice the Parties.

FOP made no move to enter this case for over nine months after it was filed, during which time the Parties have engaged in intensive negotiations and community engagement. In public comments, including in the past week, FOP has made clear that it opposes the entire basis for these negotiations and for issuance of a consent decree by this Court. FOP's attempt to intervene now poses certain and significant prejudice to the Parties: "The purpose of the [timeliness] requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *Sokaogon Chippewa Cmty.*, 214 F.3d at 949. *See also United States v. Blagojevich*, 612 F.3d 558, 561 (7th Cir. 2010) ("People potentially affected by the decision can't sit on the sidelines, as if intervention were a petition for rehearing.").

In FOP's telling, prejudice toward the parties from FOP's intervention would be "*de minimis*" because "[c]onsent decree negotiations have not concluded." FOP Mot. 3. But as FOP fails to acknowledge and Part I-C above demonstrates, the parties have undertaken substantial, sustained efforts to negotiate toward a consent decree and engage the public in the past several

7

months at great expense of funds and attorney hours. Introducing an intervenor on equal footing with the existing parties at this late date—particularly one that has repeatedly stated its public opposition to any consent decree—holds the real danger of undoing much of this work and, at best, substantially delaying the progress the parties have made toward a complete consent decree. "Once parties have invested time and effort into settling a case it would be prejudicial to allow intervention. ... [O]nce complex settlement negotiations that are well publicized begin parties may not be allowed to intervene." *Ragsdale v. Turnock*, 941 F.2d 501, 504 (7th Cir. 1991) ("A case may never be resolved if another person is allowed to intervene each time the parties approach a resolution of it.").

Rather than address the considerable work the parties have done to this point, FOP cites a single case in which intervention was denied. FOP Mot. 3 (citing *People Who Care v. Rockford Bd. of Educ.*, 68 F.3d 172 (7th Cir. 1995) [*People Who Care II*]). The proposed intervenor in *People Who Care II* was denied intervention because his motion was untimely; he had "no legitimate reason for waiting so long to intervene" and had "dragged his feet" on an issue about which he had long been aware. *Id.* at 176. Further, intervention in that case would interrupt and delay long-running negotiations the parties had conducted, and thus "would be significantly disruptive and detrimental to both parties and to the goal of ending discrimination." *Id.* at 176. That is an apt description of FOP's attempt to enter this case, which reflects its affirmed objective to prevent a consent decree.

FOP's entry would prove disruptive in a manner similar to the proposed intervenor in *Sokaogon Chippewa Community*, where "the parties had spent substantial time (nearly six months), effort, and money in settlement negotiations" before the intervenor tried to enter, though a settlement had not yet been reached. 214 F.3d at 949–50. As the Seventh Circuit concluded, "[t]o

8

allow a tardy intervenor to block the settlement agreement after all that effort would result in the parties' combined efforts being wasted completely." *Id.* at 950; *see also id.* at 949 (if a proposed intervenor "was concerned about settlement negotiations not taking its interests into account, it should have moved to intervene at such a time when it would have been able to participate in them"). FOP has amply demonstrated that it seeks to upend a carefully negotiated process that is nearly at an end, presenting the clear prospect of prejudice.

### c. FOP cannot show that denial of its motion would be prejudicial.

Any prejudice that FOP may suffer if it is not permitted to intervene is speculative. FOP fails to identify any specific effect that denial of its motion may have. The closest it gets is noting its "vital interest" in the topics covered in a potential consent decree along with "extensive and adverse" community recommendations issued on May 15, 2018. FOP Mot. 4–5. FOP appears to contend that because the parties are not sharing draft portions of the consent decree in the way FOP wants, FOP will be prejudiced by denial of its motion to intervene. *See id.* at 4. Having avoided attempting to intervene far earlier, FOP may file comments on or objections to the consent decree after the parties file it with the Court. As described below in Part II-C, FOP has and will have significant opportunities to assert its interests as a non-party.

### 2. FOP cannot demonstrate an interest in this case.

Aside from three draft consent decree pages obtained by national media,[4] FOP ostensibly does not know what will be in an eventual consent decree. In order to show an interest related to an action for purposes of intervention, the interest a proposed intervenor must show "is to be distinguished from a mere 'betting' interest in the outcome of a case"; it must be "direct, significant and legally protectable." *Reich*, 64 F.3d at 322–23. Intervention as of right is inappropriate when

---

[4] *See* Matt Finn, *Chicago Police Union Fights State's 'Bizarre' Proposed Consent Decree After Obama-era DOJ Investigation*, FOX NEWS (July 17, 2018), https://fxn.ws/2LhVEUC.

9

any "detrimental impact" from the proposed intervenor's exclusion from the suit is "pure speculation." *Sokaogon Chippewa Cmty.*, 214 F.3d at 947; *see also Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 571 (7th Cir. 2009) ("Remoteness of injury is a standard ground for denying a person the rights of a party to a lawsuit."). Yet speculation about the specific impact of a consent decree on its CBA is the basis of FOP's attempt to intervene.

In that sense, this case is distinguishable from *People Who Care v. Rockford Board of Education*, 961 F.2d 1335 (7th Cir. 1992) [*People Who Care I*]. *See* FOP Mot. 6. By the time the unions in that case were granted strictly limited intervention, a consent decree had already been entered—allowing the unions to point to specific consent decree provisions that conflicted with their CBA. *See* Ex. E (Order, *People Who Care v. Rockford Bd. of Educ. Sch. Dist. No. 215*, No. 89 C 20168 (N.D. Ill. June 11, 1991), ¶¶ 3, 9) (noting union opposition to specific consent decree provisions prior to intervention and providing for intervention "only for the specific and limited purpose of … represent[ing] the interests of their respective collective bargaining units with respect to the intervention issues"); *People Who Care I*, 961 F.2d at 1336 (noting consent decree provisions upon which "[t]he district's unions intervened").

FOP otherwise argues that community group recommendations entitled "Chicago Community Consent Decree" seek to "change provisions of the collective bargaining agreement without negotiating with the Lodge." FOP Mot. 7. To be clear, although part of the important community engagement process, the recommendations FOP cites are not the consent decree to be filed with the Court. FOP cannot point to any provision of an agreed consent decree between the Parties that will affect its interests in a specified way; it can only speculate.

10

### 3. FOP cannot demonstrate that disposition of this case threatens to impair FOP interests.

Intervening in this suit is not the only method for FOP to defend its interests. Under Rule 24, a proposed intervenor may not intervene of right unless it is "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2). In practice, "[t]he existence of 'impairment' depends on whether the decision of a legal question involved in the action would as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding." *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982).

Here, FOP has multiple avenues outside this litigation in which it may seek to protect its interests in its CBA—beginning with negotiations regarding a successor agreement to FOP's current CBA, in which FOP and the City are currently engaged as far as the State is aware. In addition, there are forums beyond negotiations in which FOP knows it can directly assert its rights with regard to the City's conduct under the CBA—most prominently the filing of a petition with the Illinois Labor Relations Board. FOP has used this forum multiple times in the past to challenge changes to CPD policy FOP believes concern its CBA, including its recent challenges to CPD disciplinary guidelines[5] and body camera policies.[6] Barring any of these possibilities, FOP at most is entitled to the same right to comment on the fairness of the proposed consent decree and subsequent Independent Monitor reports, described below in Part II-C.

---

[5] *See* Decision and Order, *Fraternal Order of Police, Lodge #7 v. City of Chicago*, No. L-CA-17-034 (Ill. Labor Rels. Bd. June 5, 2018), *available at* https://bit.ly/2Lk27z4.

[6] *See* Recommended Decision and Order, *Fraternal Order of Police, Lodge #7 v. City of Chicago*, No. L-CA-17-037 (Ill. Labor Rels. Bd. Jan. 2, 2018), *available at* https://bit.ly/2mEESRQ.

### 4. FOP cannot show that the named parties inadequately represent its interests.

In the Seventh Circuit, when a party to a proceeding "is a governmental body charged by law with protecting the interests of the proposed intervenors, the representative is presumed to adequately represent their interests unless there is a showing of gross negligence or bad faith." *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007). Although FOP omits mention of this rule in its motion, FOP cannot show that the State has acted with gross negligence or in bad faith in representing its interests. In fact, FOP has manifested its agreement with the State's strategy on multiple points in its own filings with this Court.

In this case, the State is suing the City of Chicago as *parens patriae* on behalf of all Illinois residents, which FOP admits in its proposed answer to the Complaint. *See* Answer of Fraternal Order of Police Lodge No. 7 ¶¶ 15, 20, 23–24 (Dkt. 51-2). By initiating this action as *parens patriae*, the State represents all Illinoisans in pursuing its "quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general." *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607 (1982). In addition, the Attorney General is charged by Illinois law with "appear[ing] for and represent[ing] the people of the State" and "defend[ing] all actions and proceedings against any State officer, in his official capacity, in any of the courts of this State or the United States." 15 ILCS 205/4. These duties as charged by law entitle the State to a presumption of adequate representation.

Rather than address the Seventh Circuit's standard, FOP contends the State is not "able or willing to adequately represent the collective bargaining interests of the Lodge" based on the Complaint's criticism of "some" systems and procedures "which are based on the provisions of the collective bargaining agreement." FOP Mot. 12. Nowhere does FOP contend that OAG is acting with gross negligence or bad faith in this action. FOP's reliance on Fifth and Ninth Circuit

12

law in search of a less stringent standard (*see* FOP Mot. 13) is inapposite, especially given that FOP seeks to apply that weaker standard to question the City's representation, not the State's.

Furthermore, FOP's own filings in this case indicate that it agrees with significant portions of the State's strategy. FOP's proposed answer to the Complaint contains an array of admissions to the State's substantive allegations concerning the Chicago Police Department. *See* Answer of Fraternal Order of Police Lodge No. 7 ¶¶ 46–48, 73–83, 85–88, 94, 96–99, 101–02, 105, 112–17, 122, 124–26, 173–83, 185, 187–90. These admissions concern FOP members' working conditions, including use of force, training initiatives like the Field Training Officer program, inadequate supervision systems, early intervention problems, promotions, officer wellness, and community policing. If the State had been grossly negligent or just plain negligent in representing FOP's interests, it is unlikely FOP would signal agreement with such a broad range of criticisms and prescriptions as those it admitted from the State's Complaint. FOP questions no other element of the State's strategy in this case. FOP cannot overcome the presumption of adequacy of representation in the State's prosecution of this action.

**B.      The Court should deny FOP permissive intervention.**

Without a word of explanation, FOP asserts at the end of its motion that it should be granted permissive intervention absent a ruling in its favor on intervention of right. Given the lack of any justification or citation to support this argument, it is waived. *See Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").

Regardless, if FOP's motion for intervention of right is denied, its putative motion for permissive intervention should be denied as well. Such motions must be timely, *see* Fed. R. Civ. P. 24(b)(1), and as already discussed, FOP's motion comes far too late in the consent decree

13

negotiations to avoid prejudicing the parties. *See* Fed. R. Civ. P. 24(b)(3). In addition, this Court has held that an intervenor who cannot intervene as of right because of the presumption of adequate representation by a government entity cannot obtain permissive intervention. *See* Ex. F (Order, *Anheuser-Busch, Inc. v. Schnorf*, No. 10 C 1601, at *3 (N.D. Ill. June 1, 2010) (ECF No. 89)) (noting case law holding that "[w]hen intervention of right is denied for the proposed intervenor's failure to overcome the presumption of adequate representation by the government, the case for permissive intervention disappears"). More fundamentally, FOP's public actions in opposition to any consent decree to reform policing in Chicago should be disqualifying. The parties' extensive good-faith efforts to draft an all-encompassing consent decree would be at risk of being derailed by FOP's entry into this case. The Court should deny permissive intervention.

C.      **At most, FOP is entitled to the same rights as other stakeholders.**

Even if the Court determines that FOP's motion is timely and that FOP has a concrete interest in this matter, FOP is entitled at best to rights that the State offered to FOP and other stakeholder groups already enjoy. Under the parties' MOA with the Coalition, the State and the City have already committed to jointly request a fairness hearing on the consent decree. *See* Ex. D ¶ 10. Under this process, FOP will have the right to object and articulate conflicts between the consent decree and its CBA. As part of the fairness hearing, FOP may make motions or filings relating to the adequacy or fairness of the proposed consent decree. *Id.* Like those entities, however, FOP may not raise defenses, file dispositive motions, or appeal. The City and State have agreed not to object to the standing of the Coalition to make its position known on how the consent decree affects their interests, and FOP is entitled to the same rights as the Coalition.

The precedent FOP cites does not show that FOP is entitled to a status equal to the parties. In *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002), the union moved to

14

intervene shortly after the complaint was filed, unlike FOP's nine-month delay in this case. The union in *Los Angeles* could also point to specific parts of the proposed consent decree that would affect its interests, given that the complaint and consent decree were filed on the same day. *Id.* at 395. *Los Angeles* does not permit the tardy, speculative intervention FOP seeks.

In fact, in cases in which FOP has intervened on the basis of putative CBA rights, the Seventh Circuit has recognized that FOP lacks standing to assert interests beyond its CBA rights. *See Wiggins v. Martin*, 150 F.3d 671, 673–75 (7th Cir. 1998) (despite being permitted to intervene, FOP lacked standing to appeal an order striking the City's designation of certain documents as confidential). The Fifth Circuit likewise affirmed a district court's denial of police union intervention in a consent decree case, concluding that the union had "no legally protectable interest in the subject matter of the litigation" beyond the civil service system for officers, which was not affected by the decree. *United States v. City of New Orleans*, 540 F. App'x 380, 381 (5th Cir. 2013). And the Second Circuit has rejected police unions' attempt at intervention aimed at stopping court-ordered reforms to police practices. *See Floyd v. City of New York*, 770 F.3d 1051 (2d Cir. 2014). There, the unions should have known of their "readily apparent" interest in the case "well before" they sought to intervene and that their stated interest in their collective bargaining rights was "too remote" from the subject matter of the consent decree. *Id.* at 1058–62 (noting that "no provision in the agreement prevents the unions from collectively bargaining" especially when the consent decree invited unions "to be heard in the reform process").

### III. CONCLUSION

For the reasons stated above, the State respectfully requests that the Court deny FOP's motion to intervene.

Dated: July 24, 2018 Respectfully submitted,

                                          LISA MADIGAN
Attorney General for the State of Illinois

By: /s/ Gary S. Caplan
Assistant Chief Deputy Attorney General
OFFICE OF THE ILLINOIS ATTORNEY
GENERAL
100 W. Randolph St., 12th Floor
Chicago, Illinois 60601
(312) 814-3000
gcaplan@atg.state.il.us

Brent D. Stratton
Gary S. Caplan
Cara A. Hendrickson
Karyn L. Bass Ehler
Thomas Verticchio
Cynthia L. Flores
Shareese N. Pryor
Leigh J. Richie
Christopher G. Wells
Mikiko Thelwell
Assistant Attorneys General
100 West Randolph Street, 11th floor
Chicago, Illinois 60601
Phone: (312) 814-3000
Attorney No. 99000

Martin R. Lueck
Munir R. Meghjee
Timothy Q. Purdon
Anne M. Lockner
Patrick M. Arenz
Sharon Roberg-Perez
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Phone: (612) 349-8591