UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STATE OF ILLINOIS,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>CITY OF CHICAGO,<br><br>　　　　　　　Defendant. | Case No. 17-cv-6260<br>Honorable Robert M. Dow, Jr. |

**PLAINTIFF'S RESPONSE TO COMMENTS FROM THE COMMUNITY AND U.S.
DEPARTMENT OF JUSTICE REGARDING THE PROPOSED CONSENT DECREE**

　　　　The State of Illinois ("State"), by Lisa M. Madigan, Attorney General, respectfully submits this Response to the comments submitted to the Court regarding the Proposed Consent Decree, and states:

**I.　INTRODUCTION**

　　　　The longstanding history of unconstitutional policing in Chicago and the failure to enact lasting reforms has created deep mistrust between many Chicago communities, particularly communities of color, and the Chicago Police Department ("CPD"). The Proposed Consent Decree is a heavily negotiated document that provides a robust and comprehensive remedy to redress the decades-long pattern of unconstitutional conduct alleged in the State's Complaint. The Proposed Consent Decree is lawful, fair, reasonable, and adequate, and should be approved.

　　　　The State recognizes that the Proposed Consent Decree cannot and will not cure every concern that Chicago residents have about policing and the criminal justice system. As many have acknowledged in their comments to this Court, the Proposed Consent Decree represents an important, though not final, step towards much-needed reform. A majority of the comments made

to the Court regarding the Proposed Consent Decree support its entry, but also advocate for certain additional provisions to further strengthen the agreement.

Although the Proposed Consent Decree incorporates the goals underlying several of the recommendations made to the Court through written comments and at the Fairness Hearing, the State recognizes that a number of the recommended additional provisions have not been fully incorporated. While the State does not disagree with the objectives of most of these additional provisions, the Proposed Consent Decree is the product of extensive arm's-length negotiation between the parties that fairly addressees the constitutional policing issues raised in the State's Complaint. Further, even in the absence of these additional provisions, the Proposed Consent Decree envisions that, going forward, the community will continue to remain engaged in CPD's reform efforts through continuing dialogues, meaningful opportunities to participate in the development of CPD policies and training, and an agreed-upon enforcement mechanism. (Dkt. 107-1 ¶¶ 21-27, 39-41, 46, 52, 87, 91, 122, 136, 160, 259, 271-72, 283, 421-22, 511, 525, 531-32, 538, 622, 633, 645-48, 651, 669-70, 709, 721.) These opportunities will help ensure that the reforms undertaken by the City and CPD are responsive to the needs of both officers and the community at large. This agreement is a historic remedy both in breadth and strength that provides a solid framework for addressing systemic problems within CPD that have been decades in the making. Accordingly, as many in the community have stressed in their comments to the Court, time is of the essence and the Proposed Consent Decree should be approved.

## II. PROCEDURAL BACKGROUND

For over 50 years, investigations of CPD's policing practices have revealed widespread constitutional violations, including repeated police abuse and use of excessive force, all of which has disproportionately harmed Chicago's African American and Latino residents. Following each

review, efforts aimed at reforming CPD have fallen short, proving insufficient to adequately address its unlawful policing practices. In August 2017, the State brought this action to eliminate the unconstitutional conduct that has plagued Chicago for decades. On September 13, 2018, following months of investigation, including input from numerous subject matter experts, CPD officers, and community members from all across Chicago, and robust, arm's-length negotiations between the City and the State, the parties submitted the Proposed Consent Decree to this Court for approval.

Throughout the process of drafting the Proposed Consent Decree, the Office of the Illinois Attorney General ("OAG") received meaningful input from community members and police officers. The OAG established a website, email address, and telephone hotline to provide Chicagoans with information on this case and offer an avenue for submitting input. The website was visited more than 13,000 times and OAG received over 1,600 comments submitted via the website, email, and voice messages. In addition, the OAG, in partnership with the Institute for Policy and Civic Engagement at the University of Illinois at Chicago, held fourteen Consent Decree Community Roundtables in neighborhoods throughout Chicago as well as several additional facilitated small group conversations. Through this process, the OAG received over 6,000 wide-ranging and diverse comments from over 1,000 participants throughout the City. Through its partnership with the Police Foundation, the State was also able to solicit input from current CPD officers through thirteen focus groups of randomly selected CPD officers and a password-protected open comment box made available to all CPD members. The feedback received was invaluable to informing the negotiation of the Proposed Consent Decree and has resulted in an agreement that lays a comprehensive and durable foundation of reforms for addressing CPD's pattern of unconstitutional policing.

On July 27, 2018, the parties published a draft of the consent decree and encouraged the public to comment on how they believed the draft could be improved. After receiving nearly 1,700 comments and suggestions covering a diverse range of topics, the parties then began a new round of extensive negotiations relating to the feedback from the public comment period. The parties made additions and changes to the draft of the consent decree incorporating public feedback in a number of areas, including: requiring the City to use best efforts to expand the Civilian Office of Police Accountability's jurisdiction to investigate sexual misconduct by CPD officers; providing additional protections for individuals with disabilities; requiring improvements to how CPD and the City handle crisis intervention; and providing increased transparency and expanded opportunities for community input. The Proposed Consent Decree is the product of thorough investigations, considerable community and police input, and hundreds of hours of painstaking negotiations between the parties.

For assistance in determining whether the Proposed Consent Decree is lawful, fair, reasonable, and adequate, this Court invited the public to submit written and oral comments on the terms of the Proposed Consent Decree. The Court received over 500 written comments and heard from 96 speakers during a two-day public hearing. Over 400 of the written comments made to the Court support entry of a consent decree to ensure comprehensive and systemic reform of CPD. Some community members and community-based organizations (the "Community") also made recommendations for strengthening the agreement. In addition to the Community comments submitted in support of the Proposed Consent Decree, the United States Department of Justice ("DOJ") submitted to the Court a Statement of Interest opposing the entry of the Proposed Consent Decree. (Dkt. 160.) Neither the absence of certain additional provisions nor the opposition of the DOJ should preclude approval of what is a fundamentally lawful, fair, reasonable, and adequate

agreement. *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) (citing, *inter alia*, *Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982)).

**III.　RESPONSE TO COMMENTS SUBMITTED BY THE COMMUNITY IN SUPPORT OF THE PROPOSED CONSENT DECREE**

Several of the Community's recommended additional provisions have already been incorporated into the agreement, in large part, due to the extensive community input received during the drafting process. For example, the Impartial Policing Section of the Proposed Consent Decree requires: CPD to implement policies and practices that will enable CPD to police fairly, with courtesy and dignity, and without bias, including a prohibition on taunting or denigrating an individual (Dkt. 107-1 ¶ 54); a requirement to establish protocols for protecting transgender, intersex, and gender non-conforming individuals (*Id.* ¶ 61); a framework for implementing data-driven efforts to identify and root out bias in policing (*id.* ¶¶ 79-82); annual in-service training to ensure effective communication and meaningful access to police services for individuals with disabilities (*id.* ¶¶ 68-69, 74); and annual in-service training on CPD's sexual misconduct policy. (*id.* ¶¶ 63, 74.) Similarly, the Supervision Section and Accountability and Transparency Section of the Proposed Consent Decree include provisions that are responsive to several recommendations regarding the evaluation of officers and the reporting of misconduct, including: requiring annual performance evaluations for all CPD members, including school-assigned officers, that address constitutional policing, community policing, problem-solving, and the effective use of de-escalation or specialized training without requiring CPD members to achieve specific numerical thresholds (*id.* ¶¶ 369-76); incentivizing the reporting of misconduct and disciplining officers who fail to do so (*id.* ¶¶ 351-53, 436-37); publication of quarterly and annual aggregate data on allegations of misconduct (*id.* ¶ 550); and annual publication of use-of-force data and any associated analyses. (*id.* ¶ 546.)

Other Community-recommended additional provisions that have been incorporated into the Proposed Consent Decree include: a requirement to treat all individuals impacted by officer-involved shootings with dignity and respect (*Id.* ¶ 489); identified repercussions for officers who fail to comply with CPD's body-worn camera policy (*id.* ¶ 239); a requirement that the City invite persons with lived experiences of behavioral or mental health crises to participate in the crisis intervention response advisory committee (*id.* ¶ 132); regular review of crisis-intervention data to ensure that CPD's policies, practices, and training are consistent with the agreement and best practices (*id.* ¶¶ 122-25); a commitment to hiring qualified applicants that reflect a broad cross section of the Chicago community (*id.* ¶¶ 251, 258-60); and an emphasis on the effective use of de-escalation. (*id.* ¶¶ 48, 85, 153, 156-57, 161, 244, 266, 370, 375.)

While the Proposed Consent Decree lays a strong foundation to address longstanding problems within CPD, the State acknowledges that certain recommendations made by the Community are not included. The Proposed Consent Decree itself recognizes that many of these issues need further exploration and discussion, such as diversion programs as an alternative to arrest (*Id.* ¶¶ 11, 86), and the Community can continue to advocate for change in CPD policies and practices. As Community members stated at the Fairness Hearing, the Proposed Consent Decree represents a floor, not a ceiling, and should be approved.

## IV. RESPONSE TO COMMENT SUBMITTED BY DOJ OPPOSING THE PROPOSED CONSENT DECREE

Throughout his term of office, President Donald J. Trump's DOJ has taken the policy position that the federal government must leave the administration of local law enforcement agencies to state and local governments. *See* Ex. A, Memorandum for Heads of Department Components and United States Attorneys, United States Attorney General, Supporting Federal, State, Local and Tribal Law Enforcement (Mar. 31, 2017) ("Local control and local accountability

6

are necessary for effective local policing. It is not the responsibility of the federal government to manage non-federal law enforcement agencies."). Here, the United States' opposition to the Proposed Consent Decree overlooks a critical fact – the Proposed Consent Decree is the result of extensive arm's-length negotiations between the State and the City, with significant participation by CPD. Indeed, the Proposed Consent Decree is the very sort of state and local accountability that President Trump's DOJ claims to support.

Despite purporting to embrace DOJ's previously articulated policy position of leaving the administration of local law enforcement agencies to state and local governments, the Statement of Interest turns it on its head. For example, the Statement of Interest indicates that "[w]hile the leadership of the City of Chicago, the CPD, and the State of Illinois are the front-line officials who must address [the public safety] crisis, the United States Department of Justice stands ready to help." (Dkt. 160 at 2.) Yet, rather than provide "help" or support for the resolution the City, State, and CPD have negotiated with painstaking precision over the course of eleven months, DOJ does nothing more than attempt to eviscerate the State and local police reform efforts that are well underway. Indeed, DOJ tries to undermine the collective judgment of the State, the City, and the CPD by arguing, without factual support, that the hard-fought consent decree proposed by those "front-line officials" does not address the challenges faced in Chicago:

> There may be times and places that necessitate carefully tailored consent decrees to bring a local agency into compliance with federal law. But this sweeping Proposed Consent Decree *is not the right vehicle for the City of Chicago right now*, as the City's law enforcement professionals seek to combat a historic violent crime wave.

(*Id.* at 2, 10 (emphasis added).) Despite DOJ's attempt to cast it as otherwise, the Proposed Consent Decree is in fact another "crucial and laudable step[] to improve CPD's compliance with federal

law and protect the rights of its citizens" taken by the City and the State. *Id*. at 10. Accordingly, even under DOJ's reasoning, the Proposed Consent Decree should be entered by the Court.

In addition to DOJ's unsupported arguments regarding the "right vehicle" for police reform in the City of Chicago, DOJ also asserts, in the most general fashion, that the Proposed Consent Decree, suffers from "[f]our major—and problematic—features": scope; authority of the independent monitor; cost; and the Court's retention of jurisdiction until the City has achieved full and effective compliance. *Id*. at 5-10. These arguments merely regurgitate the current DOJ's general policy aversion to law enforcement consent decrees, but fail to critically examine the substance of the Proposed Consent Decree and its capacity to address the challenges currently faced in Chicago. In fact, these specific features of the Proposed Consent Decree mirror other cities' successful police reform consent decrees.[1] Accordingly, DOJ's general opposition to consent decrees is not thoughtfully tailored to the provisions of *this* Proposed Consent Decree, and should be disregarded.

---

[1] *See, e.g*., (scope) *United States v. Police Department of Baltimore City, et al.*, No. 1:17-cv-00099-JKB, Dkt. 2-2 (D. Md. Jan. 12, 2017) (addressing, *inter alia*, Community Policing and Engagement, Stops Searches, Arrests, and Voluntary Police-Community Interactions, Impartial Policing, Responding To and Interacting With People With Behavioral Health Disabilities or In Crisis, Use of Force, Interactions With Youth, Handling of Reports of Sexual Assault, Supervision, Misconduct Investigations and Discipline, Recruitment Hiring and Retention, Staffing, Performance Evaluations, and Promotions, Officer Assistance and Support); *United States v. City of Ferguson*, No. 4:16-cv-000180-CDP, Dkt. 41 (E.D. Mo. Apr. 19, 2016) (addressing, *inter alia*, Community Policing and Engagement, Crisis Intervention, Force, Policies and Training, Recruitment, Supervision, Accountability, Data Collection, Reporting, and Transparency); *United States v. City of Cleveland*, No. 1:15-cv-01046-SO, Dkt. 7-1 (N.D. Ohio June 12, 2015) (addressing, *inter alia*, Community Engagement and Building Trust, Bias-Free Policing, Use of Force, Crisis Intervention, Accountability, Officer Assistance and Support, Supervision). *See, e.g*., (authority of the independent monitor) *Police Department of Baltimore City*, Dkt. 2-2, ¶ 283 (all material creation or revision of policy subject to monitor approval); *City of Ferguson*, Dkt. 41, ¶ 44 (Ferguson will submit all policies, procedures, protocols, plans, and other administrative orders or directives related to the consent decree, as well as any proposed revision, to the monitor for approval prior to implementation). *See, e.g*., (cost) *Police Department of Baltimore City*, Dkt. 2-2, ¶ 500 ("The City will be responsible for providing necessary and reasonable financial resources to BPD to enable BPD to fulfill its obligations under the Agreement."); *City of Ferguson*, Dkt. 41, ¶ 16 (Ferguson is responsible for providing "necessary support and resources" to the Ferguson Police Department to ensure the requirements of the consent decree are "fully implemented and sustained"). *See, e.g*., (compliance) *Police Department of Baltimore City*, Dkt. 2-2, ¶ 504 (Baltimore must achieve "full and effective compliance" prior to termination of the consent decree); *City of Ferguson*, Dkt. 41, ¶ 462 (Ferguson must achieve and sustain "full and effective compliance" prior to the termination of the consent decree).

Finally, DOJ argues that "an alarming and unprecedented surge in violent crime and homicide" in Chicago "over the last several years" counsels against entry of the Proposed Consent Decree, speculating that its terms and obligations would "strip the CPD of the flexibility it needs to address the violent crime crisis in Chicago." (Dkt. 160 at 1, 11.) Not only does DOJ's argument incorrectly assume that constitutional policing and crime reduction are incongruent, it ignores the fact that the substance of the Proposed Consent Decree is designed to increase trust between CPD and the community and thereby help to reduce crime. DOJ cites to no specific provisions in the Proposed Consent Decree to support its claims. Alarmingly, DOJ only considers violent crime and homicide statistics from 2015-16, ignoring the year-over-year decline in violent crime and homicide after 2015-16. *See* Ex. B, Chicago Police Department, CompStat City Wide, Week 41 (showing, *inter alia*, a citywide 24% decrease in murders, 16% decrease in robberies, and 8% decrease in aggravated batteries between 2016 and 2018). DOJ also ignores the integral roles of the City and CPD in determining Chicago's crime fighting strategies to ensure that crime reduction and reform are both prioritized and achieved by CPD.

For the reasons stated above, DOJ's opposition should not preclude approval of the Proposed Consent Decree.

## V. CONCLUSION

The State respectfully requests that the Court grant the motion to approve the Proposed Consent Decree, and enter the Proposed Consent Decree as an order of the Court.

Dated:  December 10, 2018                             Respectfully submitted,

                                      For Plaintiff State of Illinois:

                                      LISA MADIGAN
                                      ATTORNEY GENERAL OF
                                      THE STATE OF ILLINOIS

                              By:  /s/ Cynthia L. Flores

Assistant Attorney General
OFFICE OF THE ILLINOIS ATTORNEY GENERAL
100 W. Randolph St., 11th Floor
Chicago, Illinois 60601
(312) 814-3000
CFlores@atg.state.il.us

Brent D. Stratton
Cara A. Hendrickson
Gary S. Caplan
Karyn L. Bass Ehler
Thomas Verticchio
Cynthia L. Flores
Shareese N. Pryor
Leigh J. Richie
OFFICE OF THE ILLINOIS ATTORNEY GENERAL
100 West Randolph Street, 11th floor
Chicago, Illinois 60601
Phone: (312) 814-3000
Attorney No. 99000

Martin R. Lueck
Munir R. Meghjee
Timothy Q. Purdon
Anne M. Lockner
Patrick M. Arenz
Sharon Roberg-Perez
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Phone: (612) 349-8591