

**C|O|P|A**
CIVILIAN OFFICE OF POLICE ACCOUNTABILITY
INTEGRITY • TRANSPARENCY • INDEPENDENCE • TIMELINESS

# Civilian Office of Police Accountability Investigations Manual

## October 2017

### Interim Chief Administrator: Patricia Banks



EXHIBIT C

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 6
   A. MISSION & VALUES ....................................................................................................... 6
   B. COPA ORDINANCE ........................................................................................................ 6
   C. RELEVANT RULES AND LAWS ........................................................................................ 7

II. AGENCY OVERVIEW ......................................................................................................... 9
   A. INVESTIGATIONS SECTION ............................................................................................. 9
      1. *Investigations Section Roles and Responsibilities* ................................................. 9
         a. Chief Administrator ....................................................................................... 9
         b. First Deputy Chief Administrator ................................................................ 10
         c. Deputy Chief of Investigation ...................................................................... 10
         d. Deputy Chief of Intake ................................................................................ 10
         e. Director of Investigations Operations & Quality Management (IO/QM) ... 11
         f. Supervising Investigator ............................................................................... 11
         g. Major Case Specialist .................................................................................. 12
         h. Investigator .................................................................................................. 12
         i. Digital Forensic Analyst .............................................................................. 13
         j. Evidence Specialist ...................................................................................... 14
         k. Quality Management Analyst ...................................................................... 15
   B. ADMINISTRATION SECTION ......................................................................................... 15
   C. PUBLIC AFFAIRS SECTION ........................................................................................... 15

III. INVESTIGATIVE PROCESS OVERVIEW ................................................................... 16
   A. INVESTIGATIVE STANDARDS ....................................................................................... 16
   B. KEY STAGES OF INVESTIGATION ................................................................................. 16
   B. EVIDENCE COLLECTION AND EVALUATION ................................................................ 18
   C. CASE CONCLUSION AND OUTCOME DETERMINATION ................................................. 18
   D. POST-CLOSING LITIGATION ........................................................................................ 18
   C. FINAL DISPOSITIONS AND FINDINGS ........................................................................... 18
   D. BENCHMARKS ............................................................................................................. 19
      1. *Six Month Investigation Benchmark* ..................................................................... 19
      2. *Intake Benchmarks* .............................................................................................. 20
      3. *Investigative Case Plan (ICP) Benchmark* .......................................................... 20
      4. *Investigative Actions (IA) Benchmarks* ............................................................... 20
      5. *Complainant, Victim, or Witness Interview Benchmark* ..................................... 22
      6. *CPD Member Interview Benchmark* ................................................................... 22
      7. *Case Review Benchmark* ..................................................................................... 23

IV. INTAKE ............................................................................................................................... 24
   A. COPA INTAKE PROCESS ............................................................................................. 24
   B. INTAKE UNIT PROCEDURES ........................................................................................ 25
   C. METHODS OF INTAKE ................................................................................................. 26
   D. JURISDICTION DETERMINATION .................................................................................. 27
   E. NON-COPA JURISDICTION ......................................................................................... 29
   F. COPA JURISDICTION .................................................................................................. 30
      1. *Affidavits and Overrides* ..................................................................................... 30
      2. *Requesting an Affidavit Override* ....................................................................... 30
   G. CASE ASSIGNMENTS ................................................................................................... 31
      1. *Notification-based Investigations* ....................................................................... 31
      2. *Complaint-based Investigations* .......................................................................... 31
      3. *Criteria for Assigning Cases* ............................................................................... 32

V. INVESTIGATIVE PROCESS ............................................................................................. 32
   A. INVESTIGATIVE CASE PLAN ........................................................................................ 32

B. CANVASSING ....................................................................................................................... 33
  1. Canvassing Guidelines ................................................................................................ 33
  2. Canvassing Businesses ................................................................................................ 34
  3. Canvassing Private Residences ................................................................................... 34
  4. Documentation ............................................................................................................ 34
C. CPD REPORTS .................................................................................................................... 35
  1. Arrest Reports ............................................................................................................. 35
  2. Case Incident Report ................................................................................................... 36
  3. Tactical Response Report (TRR) ................................................................................ 36
  4. Officer Battery Reports (OBR) ................................................................................... 37
  5. Detective Supplemental Reports & General Progress Reports ................................... 37
  6. Traffic Pursuit Package ............................................................................................... 38
  7. Contact Card/Investigatory Stop Reports ................................................................... 38
  8. Taser Download Reports ............................................................................................. 38
  9. Inventory Sheets .......................................................................................................... 39
  10. Crime Scene Processing Reports ................................................................................ 39
  11. Log Scan ...................................................................................................................... 39
  12. GPS Reports ................................................................................................................ 39
  13. Watch Commander's Log ............................................................................................ 40
  14. Personnel Action Request ........................................................................................... 40
  15. Training History .......................................................................................................... 40
  16. Officer Complaint Register (CR) History (Last 7 Years) ........................................... 40
  17. Synoptic (Drug/Alcohol) Report ................................................................................. 41
  18. CPD Hospitalization Report ........................................................................................ 41
D. ADDITIONAL CITY DEPARTMENT REPORTS ....................................................................... 41
  1. OEMC PCAD Reports ................................................................................................ 42
  2. CFD EMS Ambulance Reports ................................................................................... 42
  3. Chicago Department of Transportation ...................................................................... 43
  4. Sister Agencies ............................................................................................................ 43

VI. EVIDENCE COLLECTION AND EVALUATION ....................................................... 43
A. GENERATING LEADS .......................................................................................................... 43
  1. Lead Generation Process ............................................................................................ 43
B. ACCESSING LEADS (LAW ENFORCEMENT AGENCIES DATA SYSTEM) ............................... 44
C. SOCIAL MEDIA SEARCHES .................................................................................................. 45
D. USE OF SUBPOENAS ............................................................................................................ 45
  1. Subpoena Approval Process ........................................................................................ 46
  2. Return Date ................................................................................................................. 46
  3. Witness Fee ................................................................................................................. 46
  4. Service ......................................................................................................................... 46
E. ELECTRONICALLY STORED INFORMATION (ESI) ............................................................... 46
  1. Assistance from COPA Digital Forensic Analysts ..................................................... 46
  2. Video Evidence ........................................................................................................... 47
  3. Photographic Evidence ............................................................................................... 48
  4. Phones & Electronic Storage Devices ........................................................................ 48
F. MEDICAL EVIDENCE ........................................................................................................... 49
  1. Medical Examiner Records ......................................................................................... 49
  2. Personal Medical Records .......................................................................................... 49
  3. HIPAA ......................................................................................................................... 49
G. FORENSIC EVIDENCE .......................................................................................................... 50
  1. Collaboration with COPA Evidence Specialists ........................................................ 50
  2. Ballistics, Firearms & Weapon Related Evidence ..................................................... 51
    a. Scene Reconstruction ........................................................................................ 51
    b. Gunshot Residue ............................................................................................... 51
    c. Weapon DNA Evidence .................................................................................... 52
    d. Illinois State Police Crime Lab ......................................................................... 52

| | | | |
|---|---|---|---|
| | H. | Biologic Evidence (Blood & DNA) | 53 |
| **VII.** | **INTERVIEWS** | | **53** |
| | A. | Governing Rules & Regulations | 54 |
| | B. | Interview Preparation | 55 |
| | | 1. Review of Incident and Evidence | 55 |
| | | 2. Interview Materials | 56 |
| | | 3. Anticipation of Challenges | 57 |
| | | 4. Scheduling and Accommodation | 57 |
| | C. | Interviewer Professionalism and Conduct | 57 |
| | D. | Interview Outline: Structure and Order of Topics | 58 |
| | | 1. Interview Preamble | 59 |
| | | 2. Questioning Guidelines | 59 |
| | | 3. Interview Clarity | 60 |
| | | 4. Chronological Approach | 60 |
| | | 5. Setting the Scene | 61 |
| | | 6. Description of Incident | 62 |
| | | 7. Post-Incident Events | 62 |
| | | 8. Identify Prior Interactions | 62 |
| | | 9. Identify Injuries and Treatment | 62 |
| | | 10. Direct Questioning | 63 |
| | E. | Interviewee Legal or Union Representation | 63 |
| | F. | Digital Recording of Interviews | 64 |
| | | 1. Documenting Gestures and Discussions with Representatives | 64 |
| | | 2. Documenting Breaks in Recording | 65 |
| | G. | Use of Exhibits | 65 |
| | H. | Interview Conclusion | 66 |
| | I. | Civilian Witness Interviews | 66 |
| | J. | Department Member Interviews | 67 |
| | | 1. Scheduling and Logistics | 67 |
| | |    a. Special Scheduling Protocols for OIS Incidents | 67 |
| | | 2. Member Status | 68 |
| | | 3. Interview Protocols | 68 |
| | | 4. Access to Prior Statements | 68 |
| | | 5. Member Representation | 69 |
| | | 6. Advisements | 69 |
| | | 7. Preparation for Member Interviews | 69 |
| | | 8. Member Background Information | 70 |
| | K. | Confidentiality | 70 |
| **VIII.** | **PARALLEL CIVIL AND CRIMINAL LITIGATION** | | **71** |
| | A. | Parallel Civil Litigation | 71 |
| | | 1. Requesting Civil Litigation Files | 71 |
| | | 2. Responding to Discovery Requests | 71 |
| | | 3. Obtaining Civil Trial Transcripts | 71 |
| | B. | Parallel Criminal Litigation | 72 |
| | | 1. Protocols for Interviewing Charged Individuals | 72 |
| | | 2. Ordering Criminal Case Transcripts | 72 |
| **IX.** | **CASE FILE MAINTENANCE** | | **72** |
| | A. | COPA Records Retention Policy | 74 |
| | B. | Legal Holds | 74 |
| **X.** | **CASE CONCLUSION AND OUTCOME DETERMINATION** | | **74** |
| | A. | Preparation for Final Review | 74 |
| | B. | Final Summary Report (FSR) | 74 |

      1. *FSR Outline*.................................................................................................................75
         a. FSR Signatures...................................................................................................76
         b. FSR Naming Convention....................................................................................76
         c. FSR Watermarks.................................................................................................77
      2. *FSR Checklist*..............................................................................................................77
   C. CHAIN REVIEW PROCESS...................................................................................................77
      1. *Internal Non-Concurrence*........................................................................................78
   D. DISCIPLINARY RECOMMENDATIONS..................................................................................78
      1. *Disciplinary Recommendation Memorandum*..........................................................79
      2. *CR Matrix*...................................................................................................................80
         a. Disciplinary Factors............................................................................................81
         b. Prescribed Penalty Ranges.................................................................................81
      3. *Recommendations for Remedial or Other Action*....................................................81

**XI. POST-CLOSING LITIGATION**.......................................................................................................81

   A. PREPARING FOR ARBITRATION/POLICE BOARD HEARINGS.................................................81
   B. SITTING FOR DEPOSITIONS................................................................................................82
   C. COURT TESTIMONY............................................................................................................82

**XII. MAJOR CASE INVESTIGATION PROTOCOLS**........................................................................82

   D. POLICE AND COMMUNITY RELATIONS IMPROVEMENT ACT (PCRIA)................................82
   E. RESPONSE TO MAJOR CASE INCIDENTS.............................................................................83
      1. *Notifications*..............................................................................................................83
      2. *COPA Responders*....................................................................................................83
      3. *On-Scene Chain of Command*..................................................................................84
      4. *Initial On-Scene Investigative Activities*..................................................................85
      5. *Scene Walkthrough*...................................................................................................85
      6. *On-Scene Resource Assignments*.............................................................................86
      7. *Canvassing Major Case Incidents*............................................................................87
      8. *Reporting On-Scene Activities*..................................................................................88
      9. *Response to Officer Involved Shooting Incidents*....................................................89
      10. *Response to Motor Vehicle Death Incidents*..........................................................89
         a. Canvassing Motor Vehicle Death Incidents.......................................................89
      11. *Response to Death in Custody Incident Investigations*........................................90
   F. MAJOR CASE ASSIGNMENTS.............................................................................................91
   G. FUNCTIONAL ROLES FOR MAJOR CASE INVESTIGATIONS..................................................91
   H. COLLABORATION WITH COPA LEGAL SECTION................................................................92
   I. MAJOR CASE INCIDENT DEBRIEFINGS...............................................................................92
   J. MAJOR CASE INCIDENT INVESTIGATIVE STEPS..................................................................93
   K. MAJOR CASE REVIEW PROCEDURE...................................................................................94
      1. *Open Investigation Review*.......................................................................................94
      2. *Case Closure Review*................................................................................................94
         a. Major Case Review Meeting..............................................................................95
         b. Final Case Closure Review Chain.....................................................................96

**XIII. ALTERNATIVE DISPUTE RESOLUTION METHODS**.............................................................96

   A. OVERVIEW OF ADR METHODS..........................................................................................96

**XIV. INVESTIGATIONS MANUAL APPROVAL/EDIT/CHANGE HISTORIES**..............................96

**XV. APPENDICES**.................................................................................................................................97

Cases involving discipline that can be resolved by grievance and that require a full hearing will proceed to arbitration. Arbitration is a full hearing on the merits of the case before a civilian arbitrator chosen by both CPD and the Union. Though less formal than other hearings, an arbitration requires sworn testimony from relevant parties. COPA staff testimony may be required to address the findings of the case and to address any other relevant issues. Reviewing the file and one's notes is critical. COPA Legal staff will work to ensure that investigators are prepared and ready for any needed testimony.

More serious discipline may be heard by the Police Board. Investigator testimony may be needed for Police Board hearings. The Police Board is a more formal hearing before a hearing office and later the hearing record is reviewed by the members of the Police Board and a decision rendered. COPA staff testimony may be required to address the findings of the case and to address any other relevant issues. Reviewing the file and one's notes is critical. COPA Legal staff will work to ensure that investigators are prepared and ready for any needed testimony.

### B. Sitting for Depositions

If an investigator receives notification that they are to be deposed, they should report such notification to the General Counsel immediately. COPA Legal staff will work to ensure that investigators are prepared for deposition testimony.

### C. Court Testimony

If an investigator receives a subpoena for court testimony in any civil, criminal, or administrative matter, they should report this to the General Counsel. COPA Legal will work with the investigator to ensure that the investigator is prepared for such testimony.

## XII. MAJOR CASE INVESTIGATION PROTOCOLS

COPA defines major cases as any cases that meet one or more of the following criteria:

- Officer-involved death as defined by the Police and Community Relations Improvement Act
- Officer-involved firearms discharge that strikes an individual other than the Department member
- Officer-involved incident that results in great bodily harm or serious bodily injury

    - Note: Incidents may include officer-involved pursuits and motor vehicle incidents, officer-involved weapon discharges, and incidents in custody or while trying to get a subject into custody.
    - Note: Incidents can include on- and off-duty actions.

### D. Police and Community Relations Improvement Act (PCRIA)

Pursuant to the Police and Community Relations Improvement Act (50 ILCS 727), the investigation of an officer-involved death as defined by the Act must be conducted by at least two investigators, or an entity or agency comprised of at least two investigators, one of whom is the lead investigator. Neither can be employed by the same agency as the involved Department member. The lead investigator must be certified as a "lead homicide investigator" by the Illinois Law Enforcement Training Standards Board, or have received similar training approved by the Illinois Law Enforcement Training Standards Board or the

Department of State Police, or similar training provided at an Illinois Law Enforcement Training Standards Board certified school.

Investigators conducting the investigation shall, in an expeditious manner, provide a complete report to the State's attorney. If the State's attorney declines to prosecute any involved member and no involved member is otherwise charged or indicted, the investigator will publicly release a report.

Please see section C below for COPA's Major Case response protocols, which are in accordance with the Act.

Note: See COPA PCRIA Compliance policy (COPA Policy 3.4.3).

### E. Response to Major Case Incidents

COPA will respond to the scene upon notification by OEMC or CPIC.

On-call COPA personnel shall remain within city limits while on call to ensure their ability to respond to incidents in a timely manner. Pursuant to the City's vehicle use policy, on-call COPA personnel may not take city vehicles beyond the City limits for non-COPA business without the prior authorization of a Deputy Chief.

#### 1. Notifications

COPA personnel will respond to an incident scene upon notification by the Department's Crime Prevention Information Center (CPIC). A notification matrix developed by COPA provides instruction to CPIC as to the types incidents requiring notice to COPA, as well as the type of notice required (email to COPA on-call distribution list, phone call to COPA during business hours or to on-call supervisor during non-business hours, or both).

> Note: On occasion, in situations involving Officer Involved Shooting (OIS) incidents, COPA may receive a notification from OEMC. In the interest of timeliness improving timeliness of notifications, COPA has requested that, since the information regarding OIS incidents flows through OEMC before reaching CPIC, that OEMC provide notice to COPA's on-call supervisor. These notifications may be in place of, or supplemental to, CPIC notifications.

#### 2. COPA Responders

| COPA RESPONSE TO MAJOR CASE INCIDENTS | | |
|---|---|---|
| **Type of Incident** | **Full Team Response** | **Limited Response** |
| OIS with hits | Always | NA |
| OIS without hits | When Appropriate | Always |
| OIS animal discharge | Rarely | When Appropriate |
| Injury in Custody | When Appropriate | Always |
| Death in Custody | Always | NA |
| Motor Vehicle Death | Always | NA |
| **Who goes?** | | |
| Chief Administrator | ✓ (if available) | |
| First Deputy Chief Administrator | ✓ (when not on call, only if available) | |
| On-Call Deputy Chief | ✓ | As needed |
| Supervising Investigator (LHI trained) | ✓ | ✓ |
| Major Case team (at least one LHI-trained Major Case Specialist) | ✓ | ✓ |
| MIRT Team | As needed | As needed |
| Evidence Specialist | ✓ | As needed |
| Digital Forensic Analyst | As needed | As needed |
| Public Information Officer | ✓ | As needed |

3. On-Scene Chain of Command

Until a COPA Deputy Chief arrives at the scene, the highest ranking COPA employee at the scene of a Major Case incident assumes leadership for the purpose of COPA's investigation. The on-scene COPA Deputy Chief will receive a status briefing from the on-scene COPA staff-in-charge prior to assuming the on-scene responsibility. Once the Deputy Chief arrives at the scene, Deputy Chief is the COPA's incident commander and directs all COPA's resources. All incident-related information should then be conveyed to the on-scene COPA Deputy Chief.

### 4. Initial On-Scene Investigative Activities

The first responding COPA employees shall notify the CPD Street Deputy or On-Call Incident Commander (OCIC) (or other highest ranking CPD official) that COPA employees are present and request access to the scene as soon as safety and security concerns are no longer present.

The first responding COPA employees shall gather preliminary information for the responding COPA investigators, Supervisors, and Deputy Chiefs. The responding Supervising Investigator will notify the Cook County State's Attorney's Office (CCSAO) Special Prosecutions unit about the incident.

COPA staff will remain near the perimeter (inside the yellow tape – outer secured perimeter) of the scene until the CPD Street Deputy or OCIC confirms that COPA personnel may access the inner perimeter (first red tape) scene. If access to the scene appears unnecessarily delayed, the COPA Deputy Chief will consult with the OCIC to determine the cause for the delay. If the explanation of delay or the delay itself is unreasonable, then the COPA Deputy Chief elevates the issue to the First Deputy Chief Administrator and the Chief Administrator.

The on-scene COPA Deputy Chief maintains primary leadership for the scene and direction of Major Case Specialists, Supervising Investigators, and MIRT Investigator(s). The on-scene Deputy Chief, in consultation with the on-scene COPA Supervising Investigator, shall assign and designate the following responsibilities:

- Oversight of evidence identification and collection;
- Canvass of the area;
- Witness identification and interview arrangements; and
- Maintain activity log/documentation of investigative actions taken by COPA personnel while on the scene.

If there are questions associated with the scene or resources, then COPA Deputy Chief should consult with the First Deputy Chief Administrator. The COPA Deputy Chief will, upon reviewing the available information from the scene, determine whether to request a LEICA Scan (i.e., Scene Reconstruction Analysis). If a LEICA Scan is needed, then the Deputy Chief should notify the Chief Administrator prior to making the request through the ISP.

The Supervising Investigator serves as information hub of information and directs all evidence gathering; also ensuring that the COPA Deputy Chief is kept abreast of any investigative issues and developments.

### 5. Scene Walkthrough

Deputy Chiefs, Supervising Investigators, Major Case Specialists, and any additional COPA employees (as determined by the Deputy Chief) shall participate in the scene walkthrough led by the CPD Street Deputy

85

or OCIC. When safe and appropriate to do so, and after consulting with the on-scene CPD OCIC or other commanding officer, the COPA team shall conduct an independent survey of the scene (i.e., to gain conceptual view based on forensic evidence displayed at the scene) by using one of three methods:
- Inner out
- Outer in
- Grid Pattern

During the independent survey of the scene, COPA staff should document the scene using graphic drawing (e.g., plat, street, the approximate position of vehicles or evidence, etc.). During the surveying of the scene, COPA staff must not disturb forensic evidence, hinder Evidence Technicians' collection or processing of evidence, nor contaminate the scene in any other way.

COPA employees (as designated by the COPA Deputy Chief or her/his designee) must be present when any weapon is recovered and processed. Similarly, COPA staff shall consult with the CPD Street Deputy or OCIC to ensure that a member of the COPA investigative staff is present when any CPD members recover audio or video recordings related to the incident available on Department issued equipment, including body-worn cameras and in-car cameras, or equipment maintained by any third party.

If called to the scene, a COPA Forensic Digital Analysts or Evidence Specialist will monitor, collaborate, and request (if not already done) the following evidence from CPD:

- Trajectory analysis (if properly equipped);
- Photograph(s) of all items of evidence on-scene or in relation to the scene to document their location;
- Photograph(s) of all involved Department members; and
- Breathalyzer analysis conducted for each involved Department member, in compliance with any applicable CBA (pursuant to GO3-02-06).

As needed and requested by on-scene COPA Supervising Investigators or Deputy Chiefs, COPA Forensic Digital Analysts or Evidence Specialists should conduct measurement analysis, take digital photos and video of the scene, canvass the area for any digital evidence (e.g., security cameras, cell phone videos identified by the on-scene Major Case Specialists).

### 6. On-Scene Resource Assignments

The on-scene Supervising Investigator and Deputy Chief will assign roles and responsibilities to the responding Major Case Specialists and MIRT investigator staff. One or more investigators may be sent to a CPD Area or District office to:

- Observe the processing of any involved weapon and the taking of evidence photos of involved Department members;
- Interview any witness CPD members (subject to CPD CBAs); or
- Interview any non-departmental member witness transported to the CPD Area or District office.

Where there is a concurrent criminal investigation conducted by CPD that is related to an officer-involved death incident, CPD and COPA will confer to coordinate interview scheduling and order. When there is a parallel criminal investigation being conducted by CPD, COPA personnel must confer with CPD prior to attempting to interview any non-Department witnesses on the scene or at the Area office. CCSAO personnel may also participate in witness interviews when they are available on scene.

At the direction of the COPA on-scene Supervising Investigator, and in consultation with the COPA Deputy Chief, an investigator may be assigned to respond to the hospital where an involved person (civilian or Department member) is receiving treatment or has died. The COPA investigator assigned to respond to a hospital must obtain preliminary information from the medical staff or the involved individual (if allowed and able). The information should include contact information for the involved individual or other point of contact, and the medical information should include the type, location, and nature of the wounds (if available). If possible, the COPA investigator should also obtain the preliminary entry/exit assessment (if the medical professional is able to provide her/his opinion). The investigator should also obtain the number of entry and exit points (e.g., how may holes and wounds). The investigator should also be present for any CPD Evidence Technician events taking place at the hospital (e.g., GSR, DNA swabbing, etc.). The assigned investigator shall remain at the hospital until properly relieved by the on-scene Supervisor or the Deputy Chief.

As information becomes available (and if the case involves a death), the COPA Deputy Chief may assign one of the Major Case Specialists or MIRT investigators to be present during the autopsy. The investigator assigned to attend an autopsy should record any information (prior to obtaining official report) obtained during the autopsy, including (non-exhaustive list):

- Toxicology report on the deceased
- Trajectory (if gunshot wound victim) and Rodding
- Information on stippling of the body and clothes from a gunshot wound
- Any notes of comments or information obtained during the autopsy that identify or document any other injuries or anomalies.

If called to the scene, COPA Forensic Digital Analysts or Evidence Specialists should remain at the scene while CPD continues evidence collection. The COPA Deputy Chief on-scene will determine which COPA staff members (in addition to the Digital Forensic Analyst and Evidence Specialist) should remain at the scene to oversee scene processing by CPD evidence technicians and for the purpose of conducting additional canvassing activities. Any assigned investigator, at the direction of on-scene COPA Supervisor or Deputy Chief, must continue to conduct a thorough canvass of the area to generate any potential or additional leads.

### 7. Canvassing Major Case Incidents

Unless the circumstances make doing so unsafe or inappropriate, COPA personnel will conduct a canvass to identify possible witnesses and sources of video or audio recordings at the earliest opportunity as soon as possible. If additional COPA personnel are needed to conduct an effective canvass, the Deputy Chief or Supervising Investigator will take the necessary steps to call out additional COPA personnel to the scene.

A member of the COPA response team will be identified as the lead investigator for the canvass. The lead investigator for the canvass will confer with members of the response team to develop the canvass plan which will identify the scope and location of the canvass. The lead investigator for the canvass will assign specific tasks to members of the canvass team. At the conclusion of the canvass, the lead investigator for the canvass will compile copies of all investigator notes and logs from the canvass and will summarize the results of the canvass in a report.

Canvassing should be conducted as soon as practicable by on-scene Major Case Specialists and the on-scene Supervising Investigator, as well as responding MIRT investigators. Initial canvassing may occur while waiting for the CPD OCIC walkthrough on cases involving death. If the individual shot survived, the COPA response team should consult with CPD Detectives to determine whether CPD had completed their canvassing prior to conducting preliminary COPA canvassing. In cases involving death, additional

canvassing should occur after the CPD walkthrough using inner to the outer method (i.e., closest to the incident extending out). Extreme care and situational awareness should be maintained to ensure the integrity of the evidence being collected. Although the incident may be contained to a city block, the canvass area should extend beyond the initial area (i.e., the area within the yellow tape).

During the initial canvassing of the scene, investigators should identify and document any CPD vehicles involved in the incident and ancillary CPD vehicles by using inner to the outer method. Vehicles with in-car camera should be viewed on scene and should be documented and summarized in the investigator's memo or log. If possible, in-car camera viewing should start from the involved vehicle and subsequently move out to responding vehicles (in order of arrival if known). Investigators must also document any civilian vehicles in the immediate vicinity of the incident.

Investigators must conduct initial canvass interviews of any civilians in/near the scene (if available). In these interviews, investigators should:

- Obtain the civilian's contact information ( e.g., address, phone/cell phone, email) and verify, if possible, their government-issued ID;
- Identify whether the witness saw or heard the incident;
- If witness observed/heard the incident, and time/space allows (e.g., in the COPA agency vehicle, CPD Area/District, or the witnesses residence), conduct a full digitally recorded on-scene interview;
- If there is time restriction (due to CPD OCIC walkthrough, etc.), arrange for post walkthrough interview/information gathering; and
- If the witness indicates that she/he cannot wait, coordinate with the COPA Deputy Chief so that COPA staff can be allocated to conduct an initial eyewitness interview.

Some witnesses residing near the incident may have been present at the time of the incident and subsequently left the area. Consequently, when conducting a canvass of the area of the incident, investigators should start from closest to the incident and extend outward. The primary focus should remain in the initial area (i.e., from the beginning and end of the block of the incident if the incident occurred in the middle of the block or extending to subsequent blocks if the incident occurred near an intersection). Once the canvass of the immediate area is completed, r investigators should "fan out" and canvass the ancillary blocks and parallel streets.

Unless doing so would be impracticable under the circumstances, investigative staff will conduct at least two additional canvasses of the scene following the initial canvass conducted in the immediate aftermath of the incident.

### 8. Reporting On-Scene Activities

COPA Investigators and Major Case Specialists, to the extent that they made relevant individual observations or performed individual tasks, must document their individual observations in To/From reports as soon as practicable, but no later than 48 hours after the event.

> Note: Once the COPA CMS system is operational, documentation shall occur using the electronic CMS system to report any investigative actions/steps taken at the scene.

Pursuant to PCRIA (see section XII.B above), the lead COPA investigator must provide a report to the State's Attorney in an expeditious manner. To fulfill this requirement:

- COPA will refer all officer-involved death investigations to the Cook County State's Attorney's Office ("CCSAO") for consideration of criminal charges;
- When the case is referred to the CCSAO, in addition to providing the CCSAO with case materials, the COPA investigator will provide a Referral Memo which summarizes the available evidence at that time;
- At the conclusion of COPA's investigation, the COPA investigator shall draft a Summary Report pursuant to the relevant COPA policies and procedures regarding final reports of investigation. If the CCSAO has declined to pursue criminal charges against any involved Department member, and no other criminal charges have been filed against any involved Department member, the COPA investigator shall prepare a copy of the Summary Report for public release that has been appropriately redacted pursuant to any applicable collective bargaining agreements and municipal, state, or federal law.

### 9. Response to Officer Involved Shooting Incidents

If the shooting officer is not a member of CPD, COPA has no jurisdiction and does not respond. If the shooting officer is a CPD member, COPA will look to the circumstances of the discharge. COPA may or may not respond to events involving the unintentional discharge of a weapon or a discharge directed at an animal. In those situations, the on-call team should discuss the circumstances with the Deputy Chief, who may also consult with the Chief Administrator, to determine whether the circumstances of the event warrant sending a response team. Such situations that warrant sending a response team include conflicting or questionable factual scenarios that (e.g., where the preliminary narrative of the event received from CPIC has inconsistencies with other initial evidence). COPA will usually send a limited team to these events. If the discharge event resulting in injury to any person, COPA will always send a full response team.

### 10. Response to Motor Vehicle Death Incidents

COPA investigators should consider and document several additional items when reviewing the scene of a Motor Vehicle Death incident. These items (not an exhaustive list) include:

- Direction of the vehicle travel;
- Lighting and weather conditions;
- Location of the deceased and their distance from the scene of crash/accident (e.g., if the deceased is located outside the vehicle or if the deceased was pedestrian);
- Any visible tire marks;
- Any vehicle Event Data Recorder ("black box") from the deceased individual's vehicle if she/he was driving (COPA's Digital Forensic Analyst should secure the data from the box); and
- GPS data of Department members vehicles.

#### a. Canvassing Motor Vehicle Death Incidents

When canvassing the scene of a Motor Vehicle Death Incident, investigators should expand the canvass area to include the location where the pursuit originated, the route of the pursuit, and the scene of the subsequent crash, impact, or death. The Major Case Specialist at the scene and the responding MIRT investigators should conduct canvassing. Once a determination is made regarding the initiation point and path and direction of the CPD vehicle pursuit resulting in death, investigators should identify city-owned and third party video recording devices along the route of the pursuit and secure the recordings as quickly as possible. Investigators should also view and request all available CPD dash cam and body-worn camera footage related to the pursuit.

If applicable, investigators should identify and interview any eyewitnesses who may have seen or recorded the initial interaction between the civilian vehicle and the Department members that resulted in the pursuit, or the crash itself.

For more detail, refer to the Canvassing Guidelines (section V.B.1) and Canvassing Major Case Incidents (section XII.C.7).

### 11. Response to Death in Custody Incident Investigations

The COPA Major Case Incident response team will respond to the incident scene upon notification by OEMC or CPIC (see COPA Responders, section XII.C.2 above). If the death in custody occurred inside a CPD vehicle, then the response and investigative process associated with the section above should be followed.

If the death in custody occurred in at a CPD facility, then the initial response is limited to the incident location.

Irrespective of the initial report (e.g., CPIC notification or preliminary briefing at the scene), COPA Major Case Specialists should carefully consider the circumstances surrounding the death, as the death could have occurred due to a number of possible causes. For example:

- Civilian detainee's action (e.g., suicide, including accidental or unintentional suicide);
- Department member negligence (e.g., incorrect use of control tactics resulting in asphyxiation);
- Medical condition (e.g., heart attack);
- Accidental death (e.g., attempting escape resulting in the detainee's death not resulting from Department members response); or
- Misconduct on the part of the Department member (e.g., beating, torturing, physically abusing the detainee).

In order to initiate a thorough investigation, COPA investigators should secure any document that provides information associated with detainee's physical and medical condition when she/he arrived at the location of the incident. Further, investigators should secure the logbook that documents the frequency and time of each cell check as required by the Department. Investigators should pay particular attention to whether there are any gaps in the regular cell checks, or whether there is a predictive pattern to indicate that the "checks" may have been prefilled and subsequently did not occur as documented.

The COPA investigator should identify and secure all video recording devices located in and near the incident. The investigator should also request all video of the facility in order to examine the sequence of events from when the detainee was brought into the facility to when the person was discovered to be in distress or deceased. Further, the video evidence can serve as a reference point to match whether the documented "checks" match the frequency as required by the Department.

As with any officer-involved death incident, the assigned Major Case Specialist should attend the autopsy of the deceased. The assigned Major Case Specialist should also secure the deceased individual's medical history. Medical history can provide clarity in cases where the evidence secured at the scene does not indicate neglect, misconduct, or suicide.

> Note: See section VI.I "Medical Evidence" for more information on the type of documents needed from the Medical Examiner's Office.