UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STATE OF ILLINOIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 17-CV-6260 |
| | ) | Judge Robert M. Dow, Jr. |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**Status Report on Meet and Confer Activities and Motion to Extend
Implementation Date of Paras. 188 to 196 of the Consent Decree**

This is a status report to the Court on the meet and confer activities of the existing parties

and the Lodge and a motion to extend the time for the implementation of the point and report

provisions of the Consent Decree in Paras. 188 to 196 of the Consent Decree to allow the City

and the Lodge to complete collective bargaining on this subject and  to enlist the aid of the Court

to discuss the matter with the parties.

Status Report On Existing Parties' Discussions With The Lodge

On May 31, 2019, the Independent Monitor reported to the Court on the monitoring plan

for the first year of the implementation of the Consent Decree.  After the Monitor's report was

completed, the Court noted the Lodge's counsel was present and turned to the issues that had

been raised in the Lodge's Second Motion to Intervene (hereinafter, "the Motion"), which had

been filed on March 1, 2019. The Lodge's counsel advised the Court on the issues raised in the

Motion that were based on statutes and ordinances and are not covered by the Consent Decree's

carve out provision in Para. 711.  These are the City's violation of State law by using non-State

certified personnel to investigate officer-involved death cases, the City's refusal to destroy as

1

required by State law the unflagged body worn camera videos that have been stored for more than 90 days, the City's acceptance of anonymous complaints to investigate allegations of officer misconduct and the denial to the officers under investigation of the names of complainants and the nature of the complaints in violation a City ordinances.

In addition, the Lodge's counsel addressed two other issues involving impending dates for implementation of paragraphs of the Consent Decree - May 30, 2019, for the acceptance of anonymous complaints and July 1, 2019, for the implementation of the point and report provisions. Specifically, the Lodge noted that there are duties performed by officers that are not unlike the duties of SWAT team officers for which there is no point and report requirement, e.g., serving search and arrest warrants and breaking down barricaded entry ways, seizing firearms, responding to active shooter situations, moving from room to room or yard to yard and momentarily, as in a fraction of a second - maybe a nanosecond, pointing a weapon while trying to identity the person being sought who is known to have a weapon and considered to be dangerous. These are circumstances that might not be considered to be seizures, and, therefore, it is unclear under the Consent Decree whether or not these circumstances would now trigger the point and report requirements. The Court noted that these situations may not have been considered in the discussions with the existing parties when they had their settlement conferences with the Court.

The Court noted that he has yet to decide these questions raised by the Lodge's motion and recommended that, given the commencement of a new City administration and new Illinois Attorney General, that the parties confer with the FOP to decide how they want to deal with these issues. The Court said that with the new people coming in it might take a while for them to take positions with respect to these issues and suggested that the parties meet and confer for the

purpose of trying to deal with them. Counsel for the City stated that he would attempt to meet promptly. The Court also recognized the importance of the collective bargaining for the Lodge in the Consent Decree process. The Court suggested the parties decide if they want to have a briefing schedule on this issue or even engage in a settlement conference in which he would participate. The existing parties have had preliminary meetings to discuss the investigation of police-involved deaths, the destruction of unflagged videos, anonymous complaints and the information to be given to officers under interrogation and will continue to attempt to resolve these matters.

Shortly after the status hearing the Lodge advised the Monitor the Lodge had established a Consent Decree Committee for the purpose of working with the CPD and the monitor on the implementation of the Consent Decree provisions that affected statutory or contractual rights. On June 6, 2019, the Monitor met with senior officers of the Lodge, including the chair of the Lodge's Consent Decree Committee and the Lodge's Counsel. The purpose of this meeting was for the Lodge officers to meet the Monitor and advise her of the Lodge's willingness to work with her on the implementation of the Consent Decree and to advise as to the potential implementation problems that might arise. The Monitor noted that the Deputy and Associate Monitors are scheduled to meet in Chicago in July, and the Lodge's Consent Decree chair offered to meet with the Deputy and Associate Monitors at that meeting. He further offered to match up the members of the Consent Decree by subject matter with the corresponding Deputy and Associate Monitors. The Lodge expects to meet with these persons in July or earlier.

The Lodge's President advised the representatives of the City of this meeting and in a Chicago Sun-Times podcast with reporter Fran Spielman stated that the Lodge arranged this meeting with the Monitor in order to have a dialogue as to how the Consent Decree is going to

affect police officers, the public and the CPD's prime mission of fighting crime. <u>Chicago Sun Times: Fran Spielman Show</u>, "*After cold war, police union president hopes to break the ice with Lightfoot*", June 21, 2019, available at, <u>https://chicago.suntimes.com/fran-spielman-show/2019/6/21/18701211/chicago-police-union-kevin-graham-lori-lightfoot-meeting</u>.

<u>Point and Report Meeting With the City</u>

The Lodge has continued to engage in collective bargaining negotiations with representatives on the City on a variety of subjects. Particular to the instant motion, the parties met on March 18, 2019, to discuss the Lodge's request to bargain about the circumstances in which officers should and should not point a firearm at a person and the CPD's clarification of a policy requiring the officers to report such actions and that they be documented. Consent Decree Paras. 189 and 190. The Lodge also asked a series of questions about the CPD's plans to implement a policy on point and report incidents. <u>Consent Decree</u>, Paras. 188 and 189. A second meeting was conducted on April 17, 2019, at which the CPD representatives answered the questions, and the Lodge made several proposals that are consistent with what the Lodge advised the Court on May 31, 2019, as to police activities that should not warrant reporting when a firearm is pointed.

Subsequent to this meeting, the Lodge requested that the City present to the Lodge information which the Lodge believed to be relevant and necessary for the Lodge to adequately represent its members. The Lodge also made additional proposals on the point and report issues to protect the safety and interests of the officers in the most dangerous situations that confront them on the City streets. The City has declined to provide the information that had been requested and declines to respond to the Lodge's several proposals and bargain on the issue despite the Lodge having presented applicable case law to justify its position on this subject.

Northside Center for Child Development Inc., 310 NLRB No. 20 (1993), (question of whether a security guard will carry a weapon is a mandatory subject of bargaining). As to the City's refusal to provide the Lodge relevant necessary information, the Lodge has accommodated the City's concerns for confidentiality by offering to enter into a non-disclosure confidentiality agreement. Exhibit A, June 7, 2019, letter from Lodge to City and Exhibit B, June 7, 2019, letter from Lodge to the City. As of the date this motion is to be filed, the City has not responded to the these letters, nor has it been willing to schedule a meeting to discuss the Lodge's additional proposals and concerns on the point and report issues. There is no bargaining impasse by which the City may unilaterally impose the conditions of these subjects. Department of Central Management Services v. Illinois Labor Relations Board, slip op. at 6-7 and 16-17, 2018 IL App. (4th) 160827, 116 N.E. 2d 388 (2018). (Impasse cannot be declared when the there are remaining issues to be discussed and requested relevant and necessary information has not been presented).

The Lodge is not seeking to remove paragraphs 188 to 196 from the Consent Decree but only to exercise its rights under Para. 711 and the Illinois Labor Public Labor Relations Act to negotiate on such matters and to prevent the City from using its contract with the Attorney General to negate such rights. People Who Care v. Rockford Board of Education District No. 205, 961 F.2d 1335, 1337-8 (7thCir. 1992) (parties may not use a consent decree to alter statutory or contract rights.)

For these reasons, the Lodge requests that this Court temporarily extend the time for the implementation only of paragraphs 188 to196 in order to allow the Lodge and the City to complete their negotiations on this matter. The Lodge also accepts the Court's recommendation that the City and Lodge participate in the discussions and bargaining over this issue. If this

matter cannot be resolved, the Lodge will be ineluctably left filing an unfair labor practice over the unilateral implementation of a very important safety condition of employment.

At this time, none of the other pending issues require an extension of time before implementation be granted by the Court so that those discussions may continue.

For the foregoing reasons, the Lodge requests that the Court extend the July 1, 2019, implementation for the point and report policy.

Respectfully submitted,

Joel A. D'Alba

Of counsel:

Asher, Gittler and D'Alba

LAW OFFICES

# ASHER, GITTLER & D'ALBA, LTD.

SUITE 720
200 WEST JACKSON BOULEVARD
CHICAGO, ILLINOIS 60606

TELEPHONE (312) 263-1500
FACSIMILE (312) 263-1520

www.ulaw.com
www.worker-rights.com



June 19, 2019

**VIA EMAIL AND REGULAR MAIL**
daj@franczek.com
David A. Johnson
Franczek, P. C.
300 S. Wacker Drive
Suite 3400
Chicago, Illinois 60606

> Re:    Fraternal Order of Police - Chicago Lodge No. 7
>          Collective Bargaining Negotiations and Consent Decree

Dear Mr. Johnson:

I call to your attention information obtained by the Lodge yesterday during the seniority subcommittee negotiations with the City. One of the subjects raised by the Lodge involves the unity of command and span of patrol provisions, paras. 357 through 368 of the Consent Decree. The Lodge raised this question based upon the effect of these proposals on seniory rights of the officers with respect to furlough selections and officer preferences as to their partners and day-off groups. The CPD representatives acknowledged that a pilot project is being considered for implementation in three districts, and the Lodge indicated its objection to going forward on the unity of command and span of patrol provisions without bargaining with the Lodge.

The conversation on that issue leads the Lodge to believe that there are a number of other Consent Decree provisions that are being considered for implementation within the time frame set by the Consent Decree and the time frame prepared by the monitor and filed with the District Court on May 30, 2019. Accordingly, the Lodge requests participation in collective bargaining negotiations on all Consent Decree matters that affect wages, hours and working conditions and further requests that no such provisions of the Consent Decree be implemented prior to agreement with the Lodge on all collective bargaining matters.

These include the following subjects:

Community policing, Para. 14;
School assigned officers, Para. 39;



EXHIBIT

A

ASHER, GITTLER & D'ALBA, LTD.

Prohibition of sexual misconduct, Para. 63;
Polices for dealing with individuals with physical, mental and developmental issues and hate crimes, Paras. 64-65 and 68;
Polices concerning the selection of officers to work on crisis intervention teams, Paras. 92-97;
Polices concerning foot pursuits, Para. 172;
LEMART Training and officers' requirements to perform such work, Paras. 174-175;
Polices concerning the pointing of a weapon and reporting such action, Para. 189, Paras. 190-196;
Polices concerning body worn cameras, Para.237;
Promotion process, Para. 261;
FTO selection and compensation for such work, Para. 302;
Additional training requirements, Para. 327;
Unity of command and span of control, Paras. 357 to 368;
Performance evaluations, Para. 370;
Mental health and wellness plans, Para. 383, 390-391;
Anonymous complaints, Para. 425;
Reporting on officer misconduct. Para. 436;
Standards of proof for sustained, not sustained, unfounded and exonerated allegations of misconduct, Para. 467;
Command channel review procedure, Para. 498;
Distribution of new polices and posting them, Para. 545;
Early Intervention System, Para. 583

Please contact the Lodge as soon as possible to arrange collective bargaining negotiations on these subjects.

Very truly yours,

Joel A. D'Alba

JAD/ssk

cc:     Kevin Graham
        Pasquale A. Fioretto
        Martin Preib
        Robert Bartlett

LAW OFFICES

ASHER, GITTLER & D'ALBA, LTD.

SUITE 720
200 WEST JACKSON BOULEVARD
CHICAGO, ILLINOIS 60606

TELEPHONE (312) 263-1500
FACSIMILE (312) 263-1520

www.ulaw.com
www.worker-rights.com



June 7, 2019

Wynter C. N. Jackson
Director Management Labor Affairs Section
Department of Police City of Chicago
3510 S. Michigan Avenue
Chicago, Illinois 60653

     Re:    Point and Report Requirements of the Consent Decree and related
             bargaining obligations

Dear Ms. Jackson

     I respond to your letter to Kevin Graham dated June 3, 2019, in which you state
unequivocally that the Illinois Public Labor Relations Act does not require the Department of
Police to bargain over the point and report policy. This is a position with which the Lodge has a
serious disagreement, and the Lodge calls your attention to a decision of the National Labor
Relations Board on a similar subject. The bargaining sessions that have occurred on this subject
with representatives of the Lodge and the City have focused on a draft of the Department Notice
D19-01 with an effective date of July1, 2019, and this bargaining is consistent with the
mandatory subjects of bargaining requirement of the Illinois Public Labor Relations Act, ILCS
315/4 and 7, and the National Labor Relations Act subjects of bargaining requirements as
interpreted in Northside Center for Child Development Inc., 310 NLRB No. 20 (1993). There the
question was whether a security guard will carry a weapon is a mandatory subject of bargaining.
The Board on that case held that this subject is "plainly germane to the working environment and
is not among those managerial decisions, which lie at the core of interpersonal control." In
addition, the question of whether the guards will carry guns is a very substantial and significant
one. It can affect the safety, and indeed the life of the security guard involved. Questions
concerning the safety and lives of unit employees are not insignificant matters". 310 NLRB 105.
Attached for your review is a letter directed to CPO counsel, David A. Johnson, on this subject.



EXHIBIT

B

ASHER, GITTLER & D'ALBA, LTD.

Because this issue is a mandatory subject of bargaining, the Department has a duty to furnish information as requested by the Lodge to facilitate the collective bargaining on this question. The fact that point and report is an issue contained within the Consent Decree does not negate the bargaining obligations over the circumstances in which officers will be required to report whenever they point their firearms.

Your claim of exemption under the Freedom of Information Act is not an appropriate response with respect the Illinois Public Labor Relations Act, which is the state's comprehensive labor relations statute and which governs the request for information in this case. The information requested is not sought under the Freedom of Information Act. The department has failed to assert in a timely manner a claim for confidentiality in order to give the parties a chance to accommodate such a need. As found by the National Labor Relations Board, an employer has an obligation to make such an assertion. Detroit Newspaper Agency, 317 at NLRB 1071, 1073 (1995). In that case, confidential information as decided by the Board is limited to a few general categories that would reveal, contrary to promises or reasonable expectations, highly personal information, such as a person's medical records or psychological test results, information that would reveal trade secrets or substantial proprietary information, information that would reasonably be expected to lead to harassment or retaliation, the identity of witnesses, and information that is traditionally privileged such as memoranda prepared for pending lawsuits. Id. No such claims have been made in this matter.

Notwithstanding the City's not having claimed a confidentiality defense, the Lodge did state during collective bargaining negotiations its willingness to negotiate with the City the provisions of a confidential or non-disclosure agreement under which the information sought could not be used by persons other than those who signed the agreement. The Lodge is still willing to enter into such discussions. Notably, the Labor Board in Detroit Newspaper held that information of thoughts and impressions of senior level employees, such as a Senior Vice-President for Human Resources, do not fall within a class of confidential material.

In addition to the request for information that has already been submitted to the Department, the Lodge seeks memoranda, investigatory files, and any written or electronically stored material concerning the October 5, 2016, severe beating of police officer Veronica Murillo. She was severely injured after she hesitated to draw her weapon during an encounter with a person she was trying to apprehend.

For these reasons, the Lodge respectfully disagrees with the Department's position not to submit the information requested.

Very truly yours,

Joel A. D'Alba

JAD/ssk

cc:     Kevin Graham