UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

OCT - 9 2019

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| STATE OF ILLINOIS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 17-cv-6260 |
| CITY OF CHICAGO | ) ) |
| Defendant | ) ) |

## MOTION ON THE BEHALF OF CHICAGO POLICEOFFICER MARTIN PREIB TO INTERVENE

NOW COMES, the Petitioner MARTIN PREIB, *pro se* and on his own, and brings this Motion to Intervene and states the following:

1. Petitioner is filing this *pro se* motion to intervene in the lawsuit between Attorney General Lisa Madigan and the City of Chicago, claiming that Department of Justice investigation upon which the lawsuit is predicated is flawed, biased, and corrupt in that the federal investigators refused to take into account a broad collection of evidence undermining the central claims against the Chicago Police Department. Petitioner also seeks to intervene because both parties in the lawsuit intentionally ignored the same body of evidence in agreeing to a consent decree and in negotiating its substance.

2. Petitioner is a Chicago Police Officer and has been for the previous 17 years having a date of appointment to the City of Chicago Department of Police of 29 July 2002.

3. Petitioner has standing to be heard before this Court as he is an active Chicago Police Officer and effected party by the imposition of the Consent Decree entered by this Court.

4. On August 29, 2017, the State of Illinois by Lisa Madigan, Attorney General of the State of Illinois, filed a Complaint against the City pursuant to 42 U.S.C. § 1983; the U.S. Constitution; the Illinois Constitution; the Illinois Civil Rights Act of 2003, 740 ILCS 23/5; and the Illinois Human Rights Act, 775 ILCS 5/5-102(C) ("the Complaint" or the "State's Complaint").

5. The Complaint alleged that the Chicago Police Department ("CPD") violates the Constitution and state and federal laws of its citizens by engaging in a pattern of using excessive force, including deadly force, in a manner that disproportionately harms Chicago's African American and Latino residents. The Complaint sought to address allegations that CPD engages in a pattern and practice of civil rights violations and unconstitutional policing and address recommendations and conclusions set forth by the U.S. Case: 1:17-cv-06260 Document #: 703-1 Filed: 01/31/19 Page 8 of 236 Page ID #:5001 2 Department of Justice ("DOJ Report") and the Police Accountability Task Force convened by Mayor Rahm Emanuel ("PATF Report").

6. These complains arose from an investigation conducted by the Department of Justice Civil Rights Division. The factual basis of the complaint and the eventual entry of the Consent Decree all emanates from the DOJ Report. The DOJ Report under the previous Department of Justice makes sweeping and unsupported allegations regarding the conduct of the members of the Chicago Police Department and CPD as a whole.

7. The DOJ investigation was widely criticized. Former Attorney General Jeff Sessions called it "anecdotal" and "unscientific" as such the current Department of Justice declined to pursue a consent decree. Others argued that it was politically motivated, as

evidenced by the fact that the DOJ rushed to finish it before President Trump was sworn in.

8. The allegations and conclusions in the DOJ Report and the PTAF Report have never been challenged or tested in a court of law, but have been accepted by this Court and others as factually correct. It is clear that if factual allegations were to be put through a rigorous, thorough and considered court proceeding that many of the conclusions would be found to be faulty, questionable and self-evidently wrong.

9. The defendant, City of Chicago, never litigated these issues or attempted to challenge the sufficiency of the DOJ Report or the PTAF Report and instead just accepted the conclusions for unknown reasons without comment.

10. Throughout the period of the aforementioned reports and prior to this Court signing the Consent Decree, petitioner attempted to confront the Department of Justice, the media, and the City of Chicago about the evidence contradicting the claims that the Chicago Police Department "engages in a pattern and practice of civil rights violations and unconstitutional policing." Indeed, petitioner has gathered and submitted evidence pointing to a pattern and practice of false allegations against the police that have destroyed the careers and reputations of officers, freed actual criminals and then made them wealthy through civil lawsuits. The Petitioner's attempts have fallen on deaf ears and it is the position of the Petitioner, that if this Court had been given the opportunity to test and challenge the reports, it too would have had many questions regarding the propriety of such an overreaching document by which the Chicago Police Officers are to be governed.

11. Petitioner has special insight to make these arguments. As an award-winning writer, Petitioner has written two books spelling out the corruption that lies at the heart of false police misconduct allegations in the city alleging that the police violate the constitutional rights of citizens.

12. Petitioner's work played a central role in undermining the key wrongful conviction case in the state's history, the exoneration of Anthony Porter in 1999. Petitioner's efforts led to overturning of the conviction of Alstory Simon, who replaced Porter in prison for a 1982 double murder and revealed evidence of corruption at Northwestern University and false allegations against the police. Indeed, when Simon was released from prison, the Cook County State's Attorney said that former Northwestern professor David Protess and his investigator violated the constitutional rights of Simon in a "coercive" effort to get Simon to confess to the murders.

13. Petitioners work in this case led to the publication of a book, *Crooked City*, which detailed the evidence of corruption at Northwestern in that case and the publication of a blog by the same name detailing evidence of corruption in that case and many others. Petitioner has alleged for several years a pattern and practice of false allegations against the police.

14. Upon his release from prison, Simon's attorneys filed a lawsuit claiming a pattern and practice of corruption against Northwestern. The case was settled in this courtroom.

15. At the announcement by the Department of Justice to investigate the Chicago Police Department, Petitioner delivered a letter to the DOJ outlining his claims of a pattern and practice of corruption based upon false claims of civil rights violations against police officers. DOJ investigators never responded to Petitioner.

16. In the meantime, Petitioner's research and writing about police misconduct led to his election as the Second Vice President of the Fraternal Order of Police ("FOP") the bargaining unit for all Chicago Police Officers. His job assignment was investigating and writing about corruption in the allegations of police misconduct, confronting the media with the evidence and persuading public officials to take this evidence into consideration.

17. While serving as Second Vice President, state Attorney General Lisa Madigan used the DOJ investigation to file a lawsuit against the City of Chicago and begin the creation of a Consent Decree. As stated above, instead of challenging the complaint and the factual basis by which it asserts itself, the City of Chicago, cooperated. Numerous times the Petitioner submitted evidence of wrongdoing in the wrongful conviction movement to both Madigan's office and Mayor Rahm Emanuel. Not once did representatives from either governmental entity address this evidence, even though it categorically rejected the DOJ investigation and its conclusions.

18. Petitioner is aware that the FOP did attempt to intervene and was rebutted by both this Court and the Seventh Circuit Court of Appeals. Petitioner understands and respect both of these Court's ruling. However, and while not being a licensed attorney, Petition believes that the Seventh Circuit Court of Appeal's decision did clearly state that intervention by a third party could be required in the future. Specifically, the Seventh Circuit Court of Appeals recognized this Court's scholarly and insightful words when it stated that "There is one final matter worth discussing. The district court assured the Lodge that, "if the assumptions about the future course of this litigation described above should turn out to be radically incorrect, nothing in the rules or the case law of which this court is aware would prevent re-examination of the matter of intervention. (citing to this

Court's decision at 2018 WL 3920816) That is correct. The Lodge's allegations of prejudice are presently speculative, and the other factors counsel against intervention. But if the Lodge's fears are substantiated, the balance of interests will shift." It is petitioner's opinion that "the balance of interests" has shifted.

19. Indeed, at the very time the City of Chicago under Mayor Rahm Emanuel was cooperating in the consent decree, attorneys working for the city were fighting the federal civil lawsuit brought by Stanley Wrice, whose conviction for a 1982 rape and severe burning of a woman had been reversed on the claim that he was coerced into confessing. Cook County State Judge Thomas Byrne rejected a certificate of innocence for Wrice, saying he believed he participated in the crime.

20. Nevertheless, Wrice filed a federal lawsuit against the city. The attorney for the city subpoenaed the vast body of evidence obtained in the Alstory Simon lawsuit alleging misconduct against Northwestern as part of a defense strategy, including the evidence that students were used to sexually bait witnesses into recanting their witness statements.

21. Once again, while the attorneys for the city in the Wrice case were pursuing this body of evidence, the City was also working with Illinois Attorney General Madigan about the consent decree based upon a completely different narrative. In essence, the City of Chicago was arguing that there has been a pattern and practice of deception by wrongful conviction defendants in one federal court room and then admitting before this Court that there is a pattern and practice by the Chicago Police to violate citizen's rights. It appears that the City of Chicago is taking different positions on the same issue.

22. Then, in the last two months, attorneys for the city filed motions in two more cases citing evidence that fully supports Petitioner's above claims.

23. Armando Serrano's conviction for murder was reversed on the claim that retired Detective Reynaldo Guevara coerced a witness to falsely name Serrano as the offender. Attorneys for the city have filed a motion alleging the exact same misconduct in this case as Petitioner has alleged in other cases. The city attorneys filed for sanctions against Serrano and his agents, faculty at Northwestern University, alleging that Serrano and his agents hid or intentionally destroyed evidence that would aid the accused detectives in defending themselves. They also alleged attempted bribes of witnesses by Northwestern, an accusation that has arisen time and time again in wrongful conviction claims.

24. Attorneys also filed a motion in the case of *Tyrone Hood v City of Chicago* in which they seek to depose former Governor Pat Quinn and a reporter for the New Yorker Magazine, Nicholas Schmidle. In their motion, the attorneys allege that Schmidle crossed the line of journalism into advocacy in his article claiming Hood was the victim of police coercion. They also allege that Quinn used Schmidle's article as justification for commutating Hood's sentence with no new evidence of innocence.

25. These claims mirror exactly those alleged by Petitioner, who has alleged a collusion among the media, elected officials and civil rights law firms to reverse convictions that should not have been reversed.

26. Petitioner has every right to intervene in this lawsuit. The City of Chicago is now alleging two contradictory theories about the constitutional policing in the federal courts. With these new motions filed by the city in the Tyrone Hood and Armando Serrano cases, Petitioner as a police officer, FOP member, and FOP Board Member has the right to intervene in this lawsuit and confront the city, Attorney General, the Department of Justice and the Special Monitor for their refusal to allow highly relevant evidence

contradicting the investigation and lawsuit that created the consent decree, evidence that the city itself names in federal civil rights cases. It is most respectfully the exact sort of new information that this Court did not have when your honor approved the Consent Decree. It is exactly the "assumptions about the future course of this litigation" that "should turn out to be radically incorrect" which this Court and the Seventh Circuit Court of Appeals contemplated to allow for future intervention.

WHEREFORE, the Petitioner MARTIN PREIB, *pro se* and on his own, respectfully requests that this Court allow him to intervene and be a party to this matter.

Respectfully submitted,

*/s/ Martin Preib*

Martin Preib

Martin Preib
1412 W Washington Blvd # 3
Chicago, IL 60607
312-733-7776