UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STATE OF ILLINOIS,<br><br>                Plaintiff,<br><br>    v.<br><br>CITY OF CHICAGO,<br><br>                Defendant. | Case No. 1:17-cv-06260<br>Honorable Robert M. Dow, Jr. |

## STATUS REPORT

On October 10, 2019, the Court requested that the parties, the City of Chicago ("City") and the State of Illinois ("State"), submit a status report with the Fraternal Order of Police, Chicago Lodge No. 7 ("FOP" or "Lodge"), regarding issues raised by the FOP in its March 1, 2019 motion for limited intervention. (Dkt. 714, 778). The FOP's motion raises the following issues: (1) whether paragraphs 440(d) and 488 of the consent decree in this case conflict with the Police Community Relations Improvement Act ("PCRIA"), 50 ILCS 727/1-2 *et seq.* (Dkt. 714 at 3–7); (2) whether paragraphs 238(g) and 576 of the consent decree conflict with the Illinois Law Enforcement Officer-Worn Body Camera Act ("Body Camera Act"), 50 ILCS 705/10-1 *et seq.* (Dkt. 714 at 7–8); (3) whether paragraphs 425, 427, 429, 440, and 461 of the consent decree conflict with Section 2-84-330(D) of the Chicago Municipal Code, which relates to anonymous complaints against police officers (Dkt. 714 at 9–10); and (4) whether paragraph 475 of the consent decree conflicts with Section 2-84-330(E) of the Chicago Municipal Code, which relates to the disclosure of a complainant's identity to an officer prior to the officer being interviewed about a

misconduct complaint (Dkt. 714 at 10). The City, the State, and the FOP each provide their respective views on the status of these issues below.

1. **PCRIA**

a. **City:** The FOP objects to what it argues are violations of PCRIA, predicated on technical aspects of the training of lead investigators of officer-involved homicides. The consent decree provides that criminal investigations into the actions of any CPD member relating to any officer-involved death will comply with PCRIA, and the City will use "best efforts to ensure that a 'law enforcement agency,' as that term is defined under PCRIA, will conduct such investigations." (Consent Decree ¶ 492.) Under the consent decree, using "best efforts" requires "a party, in good faith, to take all reasonable steps to achieve the stated objective." (*Id.* ¶ 729.) The FOP's apparent objection to the consent decree requirements regarding officer-involved death investigations focuses on the fact that the "Consent Decree may not authorize an administrative investigation based on the PCRIA's internal investigation procedures." (Dkt. 714 at 6.) But, the consent decree does not provide for any investigations that may violate the requirements of PCRIA, as the FOP suggests. The FOP further objects to an officer-involved homicide investigation being handled by a non-law enforcement agency (*i.e.*, the Civilian Office of Police Accountability or "COPA"). (*Id.*)

The FOP filed its motion for partial intervention on March 1, 2019, the same date that the consent decree took effect, and the FOP ignores that the City *is*, in fact, engaging in best efforts to ensure that a law enforcement agency will conduct these types of investigations. Furthermore, the FOP filed a lawsuit against the City on this very issue in the Circuit Court of Cook County, and the City filed a motion to dismiss that lawsuit. *Fraternal Order of Police v. City of Chicago*, Case

No. 2019-CH-03450 (Mullen, J.). The case in circuit court is, at present, stayed by the agreement of the parties until November 18, 2019.

Much like the FOP's other motions, the FOP does not explain the nexus between its objections on the handling of officer-involved homicide investigations and what it claims are violations of the FOP's rights. But, the fact that the City must engage in best efforts to comply with PCRIA requirements does not put the consent decree at odds with PCRIA. The FOP presents no basis to amend the consent decree or intervene on this issue.

      **b.** **State:** Counsel for each of the City, the State, and the FOP met on July 18, 2019 to discuss the FOP's concerns regarding whether the City's procedures for conducting officer-involved death investigations comply with the PCRIA. Based on the State's understanding of the FOP's concerns, the State believes that these concerns do not relate to the requirements in the consent decree, many of which have not yet been implemented, but relate instead to the City's current investigative practices. The State anticipates that implementation of the consent decree, which expressly requires compliance with the PCRIA (¶ 492), is likely to obviate some of the FOP's concerns about the City's current practices. The State also notes that the City's compliance with the PCRIA is currently the subject of a pending state court lawsuit filed by the FOP against the City and the Chicago Police Department ("CPD"). *FOP Chicago Lodge No. 7 v. City of Chicago, et al.*, No. 19-CH-03450 (Cir. Ct. Cook Cnty. Mar. 15, 2019). Given that the FOP's concerns relate to a question of state law and it has sought relief in state court, the State respectfully submits that the Court should wait for the FOP's state court lawsuit to be resolved before deciding whether any issues remain regarding the PCRIA that need to be addressed in this forum. The State does not anticipate that there will be any, because as the State has previously laid out (Dkt. 679 at 32–35), the consent decree does not conflict with the PCRIA.

**2.      Body Camera Act**

a.      **City:**  The FOP argues that the consent decree "violates a state statute that requires that videos recorded by body worn cameras must be retained for no longer than 90 days." (Dkt. 714 at 7.)  The plain terms of the consent decree require that CPD conducts a "periodic random review of officers' [body-worn camera] videos for compliance with CPD policy and training purposes," (Consent Decree ¶ 238(g)), as well as "random audits of body-worn and in-car camera recordings of incidents that involved civilian interactions to assess whether CPD officers are complying with CPD policy."  (*Id.* ¶ 576.)  The FOP argues that, because "these two paragraphs of the consent decree do not contain any time limits as to the storage of the videos," the consent decree violates the Body Camera Act, 50 ILCS 706/10-1, *et seq.*  (Dkt. 714 at 7.)  Here, the FOP reads a requirement into the consent decree, assuming that CPD is obligated to maintain or store body-worn camera footage for more than 90 days, when the consent decree says no such thing. This is, again, not a proper basis upon which the FOP should be permitted to intervene in this lawsuit or to seek an amendment to the consent decree.

Moreover, like the issue the FOP raised regarding investigations under PCRIA (discussed above), the issue of retaining body-worn camera footage is also the subject of the FOP's lawsuit filed in the Circuit Court of Cook County, *Fraternal Order of Police v. City of Chicago*, Case No. 2019-CH-03450 (Mullen, J.).  The FOP cannot point to any term of the Consent Decree that violates the body-worn camera statute, and, to the extent the FOP asserts its members' rights are being violated by the City's practices on this issue, those rights are being (or will be) adjudicated in state court, not here.

b.      **State:** The State does not believe that this issue should be resolved by the Court at this time. The FOP's concerns do not relate to the consent decree's requirements, but

instead focus on whether the City's current practices of retention of body-worn camera footage comply with the Body Camera Act. The FOP has challenged whether the City's retention practices comply with the Body Camera Act in the same state court lawsuit relating to compliance with the PCRIA. The State respectfully submits that the Court should wait for the FOP's state court lawsuit to be resolved before deciding whether any issues remain regarding the Body Camera Act that need to be addressed in this forum. The State does not anticipate that there will be any, because as the State has previously laid out (Dkt. 679 at 35–36), the consent decree does not conflict with the Body Camera Act.

### 3. Anonymous Complaints

a. **City:** The FOP next contends that the terms in the consent decree which provide that the City and COPA accept anonymous complaints of misconduct violate the FOP's Collective Bargaining Agreement ("CBA"). The City does not dispute that the 2012 CBA prohibits the use of anonymous complaints "to be made the subject of a Complaint Register investigation unless the allegation is . . ." a criminal violation. (CBA Section 6.1(D).) Such a requirement does not, however, prohibit the City from ensuring that anonymous complaints may be accepted or assigning such complaints Log Numbers. The consent decree expressly acknowledges that complaints accepted, documented, submitted to COPA, and investigated, will be done so only in accordance with "the applicable collective bargaining agreement." (Consent Decree ¶ 427.) The consent decree further provides that "[t]he City and CPD will undertake *best efforts* to ensure that all complaints, including anonymous complaints, can be the subject of a misconduct investigation." (*Id.* ¶ 477.) These consent decree terms, read together with the CBA "Carve Out" provisions (*Id* ¶¶ 710-11), reflect that the parties expressly recognized that the City may not open a Complaint Register investigation predicated on an anonymous complaint, unless

the anonymous complaint falls into one of the exceptions explicitly identified by the CBA. (*See* CBA Section 6.1.D, providing that Complaint Register investigations may be based on anonymous allegations of criminal conduct, as well as anonymous allegations regarding residency or medical roll abuse that are verified.) The City acknowledges (and the terms of the consent decree make clear) that the City will need to undertake its best efforts, *i.e.*, through collective bargaining, to ensure that anonymous complaints which do not fall under the CBA exceptions may be made the subject of misconduct investigations. At present, aside from the exceptions set forth in the CBA, anonymous complaints may not be made the subject of misconduct investigations, and the City recognizes that it may have to bargain with the FOP in order to implement the change the consent decree contemplates.

In short, nothing in the consent decree regarding anonymous complaints conflicts with the terms of the FOP's CBA. The City and State were careful in drafting the consent decree, recognizing that some of the terms in the consent decree may not be fully attainable without changes to the applicable collective bargaining agreements. The consent decree terms regarding anonymous complaints do not present any basis for which the FOP should be permitted to intervene or otherwise seek to amend the Consent Decree.

      **b.** **State:** The State does not believe there is any actual controversy for this Court to resolve regarding anonymous complaints. As the State has previously explained, the consent decree's requirements regarding anonymous complaints comply with the limitation on conducting complaint register investigations of anonymous complaints in FOP's collective bargaining agreement ("CBA"). (Dkt. 679 at 17-20, 31.) The FOP's motion for limited intervention focuses on a similar but not identical provision in the Chicago Municipal Code, Section 2-84-330(D), regarding anonymous complaints. (Dkt. 714 at 8–10.) But as the State has previously

explained, the FOP's CBA provision regarding anonymous complaints controls over the Municipal Code based on the FOP's own reading of Section 15 of the Illinois Public Labor Relations Act. (Dkt. 679 at 31 (discussing 5 ILCS 315/15).) In other words, the Municipal Code provision is irrelevant in light of the FOP's CBA, and the consent decree complies with the CBA. In discussions with the FOP's counsel, the State has walked through how the consent decree abides by the CBA limitation regarding investigation of anonymous complaints. The FOP has not pointed to any complaint that is being investigated in violation of the CBA limitation. In the absence of a specific violation of the FOP's CBA allegedly caused by the consent decree, there is no dispute for this Court to resolve regarding anonymous complaints.

    4.    **Disclosure of Complainant's Identity**

        a.    **City:**  Much like the issue presented by anonymous complaints, the FOP argues that paragraph 475 of the consent decree, which provides that the City "will undertake best efforts to ensure that the identities of complainants are not revealed to the involved CPD member prior to the CPD member's interrogation," reflects a violation of its CBA and the companion Chicago Municipal Code (Section 2-84-330(E)), which require that officers under investigation receive the names of complainants prior to being interrogated. (Dkt. 714 at 10.) In presenting this argument, the FOP again ignores the requirement that the City use "*best efforts*" to effect that change to the current CBA and code. (Consent Decree ¶ 475.) Put another way, the City anticipates that, in order to not reveal the identity of a complainant prior to an officer's interrogation, it will need to engage in collective bargaining with the FOP. There is no conflict between the plain language and meaning of the consent decree and the requirement regarding the identity of complainants. The FOP has not presented a basis on which to intervene or amend the consent decree relating to this requirement that the City engage in collective bargaining.

    **b.**  **State:** The FOP argues that paragraph 475 of the consent decree violates Section 2-84-330(E) of Chicago Municipal Code, which requires an officer under investigation to be "informed in writing of the nature of the complaint and the names of all complainants" immediately prior to his or her interrogation. (Dkt. 714 at 10.) Paragraph 475 provides that "[t]he City and CPD will undertake best efforts to ensure that the identities of complainants are not revealed to the involved CPD member prior to the CPD member's interrogation." Paragraph 475 requires the City and CPD to use their "best efforts" to try and change the Municipal Code as well as a corresponding provision in the FOP's CBA. This "best efforts" provision is one of four in the consent decree that recognizes that the FOP's CBA cannot be changed without bargaining with the FOP. (*See* Dkt. 679 at 6-8 (providing a detailed explanation of the "best efforts" provisions in the consent decree).) The FOP has not alleged that the City is using the consent decree to unilaterally revoke the CBA provision and Municipal Code provision regarding disclosure of a complainant's identity. Nor could it: the consent decree requires the City to use "best efforts" in situations in which the parties agree that the City cannot act unilaterally. Given that the consent decree requires the City to negotiate with the FOP regarding this issue, the State respectfully submits that the Court should wait until those negotiations and any resulting interest arbitration proceedings have concluded before assessing what action to take, if any, regarding this issue.

**FOP Status Report:**

The Lodge submits these comments in the form of a status report based on what it understands to be the request of the court as stated when the Lodge presented its Status Report and Motion to Extend the Implementation Date of Paras. 358 to 361 (Unity of Command) to the court on Oct. 10, 2019. In that hearing, the court ordered a briefing schedule on the motion presented by the Lodge, and as of this filing, the parties and the Lodge have filed their respective briefs on the issue of the Lodge's request for a delay.

The Lodge on March 1, 2019, filed a Motion to Intervene captioned as <u>Fraternal Order of Police Chicago Lodge No. 7's Motion for Leave to File Motion to Amend Consent Decree Pursuant To Local Rule 5.6, Or, In the Alternative, Motion For Limited Intervention, Instate. [Doc. 714]</u>. After that motion was filed, the court held a status conference on May 31, 2019, at which the Consent Decree Monitor, Margaret A. Hickey, presented her report to the court, and the court discussed the Lodge's motion and noted that with a new mayor and a new attorney general, it would be appropriate to have the parties meet and confer on the issues that have been raised in the motion. Specifically, the court stated that when

> … you guys are ready to take positions on the motion, email Carolyn and I will have you come back in. But just sort of have a meet and confer on that. Because it is a big picture item. It's all related to the negotiations…. But it's all sort of part and parcel of the same thing. So my suggestion on this is I will keep that under advisement where it is…. And then call Carolyn when you're ready to tell me whether you agree with what he said, you want to brief it, whatever. But it didn't make sense to set a briefing schedule when the key policymaker at the city has just got sworn in this week. <u>Transcript</u>, May 31, 2019, at 6, [Doc. 761].

Pursuant to the request of the court, the parties have met in a phone conference and in person on the issues that had been raised in the Lodge's motion with a phone conference on all four of the issues that are subjects of the motion to intervene. On the issues of the destruction of

9

the unflagged body worn camera videos, the response from the City was that the declaration of Mr. Kevin Graham that videos had not been destroyed applied only to pre March 1, 2019, videos, and therefore should not be considered, meaning that Mr. Graham's comments did not cover the post March 1, 2019, videos. While there is has been no resolution to this issue, it is important to note that after March 1, 2019, (the date of which the Lodge's motion was filed), the Lodge has learned in the collective bargaining negotiations that over eleven million videos have been stored and none have been destroyed after the 90 day period required by the statute. The Lodge was advised that unflagged videos have not been destroyed, including videos obtained after March 1, 2019.

On the matters of the use of anonymous complaints and disclosure of the names of the complainants against Police Officers, the City was unwilling to agree to compliance with the respective ordinances, and that position is repeated in the status report it has filed on these issues.

The only issue on which the parties and the Lodge have had discussions is the investigation of the officer-involved shootings. The Lodge proposed a solution to this issue at an in person meeting of the parties and the Lodge, which was attended by two Chicago Police Officers, one of whom is a veteran homicide investigator on such shootings and the other has been an instructor on the use of force at the Chicago Police Academy. Subsequent to that meeting, the Lodge submitted a draft agreement to be discussed with the CPD on the matter of using the Illinois State Police to supervise a select team of CPD investigators who are now investigating the underlying crimes that have been allegedly committed by the persons who were shot by Chicago Police Officers. There have been several unsuccessful attempts to contact the CPD and arrange a meeting to discuss the feasibility of this proposal. However, the Lodge is aware that senior level commanders of the CPD

believe that such an agreement with the Illinois State Police should be pursued. The Lodge remains willing to have such discussion on resolving this issue.

This is the status of these issues, and this report is submitted by the Lodge based upon the court's order of Oct. 10, 2019, in which the court asked for a joint status report. The Lodge did not understand that the court was seeking briefs on the motion it filed on March 1, 2019, so it objects to the status report qua brief that has been submitted by the parties.

**PCIRA -FOP**

Without prejudice to the Lodge's position that the parties' response should not be considered as a brief on this matter or that what follows should be considered as a reply brief, the Lodge offers the following.

1. The statements of the Lodge through its several declarations are to be taken as true, and there are no contrary statements offered by the parties. Lake Investors v. Egidi Development Group, 715 F. 2d 1256, 1258 (7th Cir. 1983).

2. The Lodge asserts that the City is allowing COPA to investigate officer-involved shootings in violation of the Police and Community Relations Improvement Act, ("PCIRA"), 50 ILCS 727/1-1 et seq. The CPD General Order G03-06, issued on Sept. 20, 2017 [Doc. 714-4] states that COPA "will have jurisdiction to conduct an officer-involved death when a member is off duty but performing activities that are within the scope of his or her law enforcement duties." Id. at 2. COPA under this order will be responsible for notification to the Cook County State's Attorney's Office Special Prosecution Bureau of the investigation into the conduct of sworn members related to the officer-involved death. Id. at 4. The role of COPA at the scene of a shooting is prescribed by the General Order in Section G as, "Crime Scene Access and Evidence Collection." Id. at 6-7.

11

3. The Consent Decree at Para. 492 states that the criminal investigations into CPD members will comply with PCIRA, and that the City will use best efforts to secure a law enforcement agency to conduct such investigation. However, under the General Order and the Declaration of John Farrell, show that the City – COPA is not following the requirement of PCIRA by using non state certified COPA investigators. Farrell Declaration, [Doc. 714-1 at 2] and Bartlett Declaration, [Doc. 714-3]. The term best efforts is not a guise by which the City can maintain an ongoing violation of the PCIRA.

4. The parties claim that the federal court should abstain from hearing this matter and instead defer to the state court action filed by the Lodge. Their contention is controverted by the Colorado River abstention doctrine. *See* Colorado River Water Conservation Dist. v. U.S., 424 U.S. 800, 817 (1979); Illinois Bell Telephone Co. v. Illinois Commerce Comm'n, 740 F.2d 566 (7th Cir. 1984) (holding that district court did not abuse its discretion in denying stay of proceedings); Voktas, Inc. v. Central Soya Co., Inc., 689 F.2d 103 (7th Cir. 1982) (same). This doctrine applies in situations such as here, where the same claims are simultaneously pending in federal and state courts, and stands for the proposition that federal courts have a "virtually unflagging obligation … to exercise the jurisdiction given to them." Colorado River, at 817. Federal courts may only grant a stay of proceedings in deference to state courts in very limited circumstances, and must balance the advantages and disadvantages of granting a stay in order to achieve wise judicial administration, but with the balance heavily weighted in favor of the exercise of jurisdiction. Interstate Material Corp. v. City of Chicago, 847 F.2d 1285, 1287 (7th Cir. 1988), *citing* Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1 (1983).

A blend of Supreme Court and Seventh Circuit opinions has created a 10-factor test in determining whether granting a stay in deference of state proceedings is appropriate: (1) the

desirability of avoiding piecemeal litigation; (2) the order in which jurisdiction was obtained by concurrent forums; (3) the inconvenience of the federal forum; (4) the court first assuming jurisdiction over any property which may be involved in the suit; (5) the source of the governing law, state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. *See,* Lumen Const., Inc. v. Brant Const. Co., Inc., 780 F.2d 691 (7th Cir. 1985). These factors, along with the court's need to weigh heavily in favor of exercising jurisdiction, strongly suggest that the court should not defer to the state proceedings.

Denial of a stay of the federal case in deference to the state claim would not create piecemeal litigation – all of the Lodge's claims can be resolved by this court. There would be no piecemeal litigation if this court grants the motion to intervene and ultimately allows the Lodge relief on the issue of the Consent Decree not being respectful of the PCIRA obligations of the City. Since this court obtained jurisdiction of the issue with the filing of the Consent Decree as proposed on Sept. 13, 2018, [Doc. 107-1] the court has had an opportunity to be much more acquainted with the issues in this case than the state court judge, who has not even received all briefs on the City's motion to dismiss the Lodge's complaint.

With respect to the third factor, the resolution of these claims in federal court is not inconvenient – rather, it is more convenient to adjudicate violations of state law by the Consent Decree in the same forum in which the Consent Decree's implementation is administered.

The fourth factor is inapplicable to this case because it does not involve property.

With respect to the fifth factor, the source of the governing law the Lodge relies on is state law. However, this one factor should not weigh too heavily against the Lodge in deciding whether

13

to abstain under Colorado River. *See* Schneider Nat. Carriers, Inc. v. Carr, 903 F.2d 1154, 1157 (7th Cir. 1990) (rejecting argument in favor of granting Colorado River abstention on account of theory of recovery being based on Indiana law in light of federal courts' frequent adjudication of state law).

On the sixth factor, the City has conceded that the state is not an adequate forum because there is a lack of standing to complain of violations of the PCIRA. In effect, the City and State are claiming here that the Lodge's motion before this court should not be granted because a state court case is pending in which the claims should be dismissed. That would leave the Lodge with no remedy of any kind, so the City's claim for deferral should be disregarded as being disingenuous. There has been virtually no litigation on the state court matter other than a motion to dismiss filed by the City in which is argues that the Lodge does not have standing to complain of violations of the PCIRA. The state court matter has been stayed in order for the parties to attempt a resolution of this matter. The stay is in effect, and the next status conference with the court is November 18, 2019.

With respect to the seventh factor, there has been virtually no litigation in the state case, while this court has had jurisdiction over the case since the September 13, 2018, filing of the Consent Decree. [Doc. 107-1]. *See* Carr, at 1157 (holding that stay in favor of state litigation would waste judicial resources by throwing away 7 months' work in federal court). The Lodge filed the pending motion to intervene on March 1, 2019, prior to filing in Cook County Circuit Court on March 19, 2019.

With respect to the eighth factor, this court has concurrent jurisdiction to hear the state law claims pursuant to 28 U.S.C. § 1367. Since this court obtained jurisdiction of the issue with the filing of the complaint and the Consent Decree as proposed on Sept. 13, 2018, [Doc. 107-1], there

has been much more litigation in this court than the state court with respect to the Lodge's Consent Decree issues. Therefore, this court is more familiar with the case. For these reasons, the Lodge believes that *Colorado River* abstention in favor or deference to the state litigation should be rejected.

**<u>Video Destruction – 90 Day Storage Requirement - FOP</u>**

There is no acknowledgment by the parties as to the destruction requirements for unflagged videos stored more than 90 days. Consent Decree Para. 576 requires the CPD to conduct random audits without any time limitation as required by the statute at Section 706/10-20(a) (7) (B), and Para. 238 requires periodic random reviews for compliance with CPD policy and training purposes, and the CPD "will ensure the recordings are retained in compliance with the statute." It should be clear that the CPD's retention of unflagged videos as admitted in the collective bargaining negotiations is a reason to grant the intervention to obtain appropriate relief. Because both paragraphs do not refer to the important time limit required by the state law, the Lodge has an interest in intervention and proposing appropriate relief for this matter.

**<u>Anonymous Complaints and Complainant Disclosures - FOP</u>**

As to these two issues, there has been no discussion among the parties concerning this issue and the Lodge's attempt at a resolution and the Lodge reserves the right to file a brief on these matters. It does however note that Para. 475 states that the CPD will "undertake best efforts to ensure that the identities of complainants are not revealed to the involved CPD member prior to the CPD member's interrogation." This means that the CPD will directly undertake efforts during the term of the Consent Decree to violate the ordinance which prohibits such action. Simply stating that it will try to make the change to the collective bargaining agreement during negotiations does not excuse the ongoing violation under the terms of the Consent Decree.

On the issue of anonymous complaints, the City acknowledges that they may "not be made the subject of misconduct investigations," [Status Report at 6], but the Consent Decree in three paragraphs, 425, 429 and 440 (b) specifically provide for the use of such complaints in matters of alleged misconduct. Para. 440 (b) states: "The City, CPD and COPA will ensure all complaints of alleged misconduct submitted to the anonymous reporting website… will be received by the OIG and will be submitted to COPA…." Para. 429 states that the "City will continue to ensure that a website if made available to CPD members to anonymously report officer misconduct…." Para. 425 states that "The City, CPD and COPA will ensure individuals are allowed to submit complaints … anonymously … on allegations of misconduct." While the City may desire to engage in collective bargaining on this matter, there is no good reason to allow it to hide behind the Consent Decree to violate the ordinance.

Respectfully submitted:

| /s/Christopher G. Wells | /s/Elizabeth E. Babbitt | /s/Joel D'Alba |
|---|---|---|
| Christopher G. Wells | Elizabeth E. Babbitt | Joel A. D'Alba |
| Chief, Public Interest Division | TAFT STETTINIUS & | ASHER, GITTLER & |
| OFFICE OF THE ILLINOIS | HOLISTER LLP | D'ALBA, LTD. |
| ATTORNEY GENERAL | 111 E. Wacker Dr., | 200 W. Jackson Blvd. |
| 100 W. Randolph St., | Suite 2800 | Suite 720 |
| 12th Floor | 312-527-4000 | Chicago, IL 60606 |
| Chicago, Illinois 60601 | EBabbitt@taftlaw.com | (312) 263-1500 (Telephone) |
| (312) 814-3000 | | (312) 263-1520 (Facsimile) |
| CWells@atg.state.il.us | | |

*Counsel for the State of Illinois*

*Counsel for the City of Chicago*

*Counsel for the Fraternal Order of Police, Chicago Lodge No. 7*

Date:   November 12, 2019