**Before Arbitrator Brian Clauss**                                    17.21

---

Fraternal Order of Police, Lodge 7

And

City of Chicago Police Department

                                        Grievance 177-11-001& 002
                                        (PFI Start Time)

---

For the Union:
Paul D. Geiger, Esq.
Fraternal Order of Police, Lodge #7
Chicago, Illinois

For the Employer:
Melinda Lawrence, Esq.
Assistant Corporation Counsel
City of Chicago

Date of hearing:  April 12, 2011
Location:      Chicago, Illinois



1

**INTRODUCTION**

The City of Chicago Department of Police ("Department," or "Employer") and Fraternal Order of Police, Lodge #7 ("Union" or "FOP Lodge 7") are parties to a Collective Bargaining Agreement ("CBA"). The Union filed grievances on January 8 and 13, 2010 after the Department changed the second watch designated start time for Police Forensic Investigators ("PFIs") from 0600 hours to 0800 hours. That change was effective on January 6, 2011 - the first period of 2011. The Department adjusted Forensic Investigator Victor Rivera Sr.'s[1] ("Grievant Rivera") and Forensic Investigator Mark Harvey's[2] ("Grievant Harvey", and together with Grievant Rivera, "Grievants") start time ahead two (2) hours to 1000 pursuant to Section 20.7.

The parties were unable to resolve the matter through the grievance procedures of the CBA and the matter was set for a hearing before the undersigned Arbitrator. The hearing was held on April 12, 2011 and the parties were given full opportunity to present evidence and witnesses. The hearing was transcribed and the parties filed post-hearing briefs in support of their positions. It is on this record that the Award was decided.

**FACTS**

Grievant Rivera testified that he has been assigned to Unit 177 since he was promoted to the position of Forensic Investigator in 1997. He has bid to the second watch and is currently on that watch. The second watch start time was 0600 hours from 1997 until 2010. His start time for a crime lab assignment was moved to 1000 in 2010. Grievant Rivera understood that the Department had authority under the CBA to adjust start times by two (2) hours. He received a

---

[1] Star 11520  Unit 177
[2] Star 10582  Unit 177

memo dated November 15, 2009 that indicated that start times for the first watch was 2200 hours and the second watch was 0800. The memo also indicated that the Department could move start times by two hours pursuant to provisions of the CBA. He bid for days following receipt of the memo.

Grievant Harvey testified that he has been assigned to Unit 177 since he was promoted to the position of Forensic Examiner in March, 1998. He had worked the midnight watch until January 2011. He then moved to the second watch. He knew the starting time for the second watch was 0600 hours because the second watch relieved the midnight watch. He understood that the Department could adjust start times by two hours from 0600 hours. Starting after 0800 hours was more than the two hour swing that the CBA allowed.

Officer Richard Aguilar testified that he is the Grievance Chairman for FOP Lodge 7. He was part of the negotiations group for the 2007-2012 contract and has also been a part of the work schedule committee for approximately 15 years. The committee developed the new four-two schedule that allows for ten hour days in some units. The CBA contains a Memorandum of Understanding ("MOU") that memorializes the work of the schedule committee on pages 125 through 134. There was no agreement to change the start of Unit 177 in the MOU and there was no negotiation over the designated start time for Unit 177. There was agreement to the designated start time of various units in the MOU, but not for Unit 177. The Department may start officers within two hours before or after the designated start time.

Commander O'Neill proposed that Unit 177's second watch would be from 0800 to 1830 hours and 1000 to 2030 hours. The Union responded that the 1000 hours start was outside the two (2) hour adjustment period from the designated start time. In a letter dated November 10, 2010, Commander O'Neill stated that Unit 177 had started at 0800 hours since 2010. The letter

continued that 0800 hours was established as a designated start time. The Union responded that the 0800 start time was allowed by the CBA because it was within the adjustment period from the designated start time. Further, a change to the designated start time should have been discussed at negotiations. The Department did not seek to negotiate the start time of Unit 177 following the Union's response.

The Union did not agree to change the designated start time of Unit 177 and the Department changed the designated start time to 0800 hours. Unit 177 is specifically mentioned in Article 31 and not in Article 20.7. A grievance was filed over the change in designated start time.

On cross examination, Officer Aguilar testified that the Forensic Investigations Unit was not part of the pilot program in 2010. The Union believes that the 0600 start time for Unit 177 has been established by twenty (20) years of past practice. The designated start time cannot be unilaterally changed by the Department.

Lieutenant Robert Dubiel testified that he is assigned to the Forensic Services Unit. Forensic Services is divided into three large groups: (i) Crime Scene Processing – consisting of ETs North, ETs South; (ii) the Mobile Unit – a Mobile Crime Lab for high profile violent crimes and the Mobile Incident Response Vehicle for incident response; and (iii) the Forensic Services Unit. Lieutenant Dubiel commands the Forensic Services Unit. The unit has 26 police forensic investigators ("PFIs"), 22 of whom are assigned to the Mobile Crime Lab. The remaining PFIs are assigned to the polygraph and Medical Examiner's Office.

Lieutenant Dubiel testified that there are 39 budgeted slots for forensic examiners working the Mobile Crime Lab, but only 22 are currently assigned to the Mobile Crime Lab. Normally, 28 forensic examiners are assigned to the Mobile Crime Lab. There are two watches

for the forensic investigators with 10 1/2 hour shifts. Longer shifts allow for covering the day with only two shifts. The change from three shifts to two was implemented in January 2011 because there was insufficient personnel in the unit to cover three watches. Changing the start times provides 24-hour coverage for the unit. Although additional investigators have been requested, none have been promoted since 2008. The unit had lost 33% of its forensic investigators through attrition and that number was expected to rise to 41% by mid-April.

Lieutenant Dubiel continued that the unit's designated start time is now 0800 hours for one mobile crime lab with two forensic investigators. The rest of the watch, except for the sole 0600 start at the M.E., starts at 1000 hours. If the assignments started at 0600 and 0800 hours, there would be a two (2) hour gap when nobody is available to respond to requests for a mobile crime lab.

The Department posted the notice about the change in start times both in the commander's book and on the bulletin board. The Lieutenant researched the overtime under both the prior and current schedules and concluded that it was essentially unchanged at an average of 29 hours OT per forensic examiner. Lieutenant Dubiel agreed that OT is paid when there is insufficient staffing in a unit. He also agreed that nobody was starting at 1000 in 2010. The change in start time to 0800 hours occurred after January 2010.

Commander Donald O'Neill testified that he is the commander of MLAS and was a member of the work schedule committee tasked with establishing new work schedules, work hours, and start times. The committee's work resulted in several pilot districts participating in an alternate work schedule. The program was expanded to most of the Department and now the schedule is a 4/2 schedule of 9-hour work days. The original MOU for the pilot program was expanded to cover much of the Department.

According to Commander O'Neill, the Department gave up its management right to change designated start times for the units specified in the MOU. Forensic examiners were not included in any of the MOUs. The Department did not cede its management authority to set designated start times to any units not included in the MOU. Further, Article 4(H) indicates that the Department has the right to establish work schedules, to determine the starting and quitting times and the hours to be worked. The Department has retained the right to operate and manage - including changing schedules. Section 20.7 also supports the Department's position in the instant matter because the change to the schedule was made prior to the start of the first period.

Commander O'Neill continued that there has been a General Order in effect since approximately 1995 that designated 0800 hours as the start time for the entire Chicago Police Department. The evidence technicians were put on the new 4/2 schedule, however, the forensic investigators wished to remain on their 10.5 hour schedule. There was never a GO or MOU regarding the start time for forensic investigators. There were discussions with the Union regarding the start time for the forensic investigators. Because the forensic investigators had been in the assignment for a considerable period they did not want to change from 10.5 hour days. The parties negotiated to impasse and the Department then implemented the 0800 hours designated start time.

Commander O'Neill testified that the 0800 hours designated start time was set prior to the beginning of the year and the forensic investigators were informed of the change. They bid to the watches knowing of the change.

Commander O'Neill agreed that his letter stated that the unit had a 0600 hours start time for many years. In conversations with the Union, he stated that he did not agree with the position that the 0800 hours start time was the designated start time for the forensic investigators and that

the start time had been moved up two (2) hours for the years it was 0600 hours. The Union was asked whether to include Unit 177 in the work schedule committee and they declined. Unit 177 was not one of the units with a negotiated designated start time in the MOU.

Commander O'Neill denied that the change in starting time was done strictly to avoid paying overtime. Rather, it was done to effectively deploy available resources in a Department suffering manpower shortages.

ISSUE

The parties agreed to the issues as follows:

Did the Department violate the CBA when it changed the start time of the second watch forensic investigators from 6:00 am to 8:00 am, then used the adjustment period under Section 20.7 to start the forensic examiners at 8:00 am and 10:00 am. If so, what is the appropriate remedy?

RELEVANT PROVISIONS OF THE COLLECTIVE BARGAINING AGREEMENT

**Article 4 – Management Rights**
The Employer has and will continue to retain the right to operate and manage its affairs in each and every respect. The rights reserved to the sole discretion of the Employer shall include, but not be limited to, rights:

\*   \*   \*

(H). to establish work schedules and to determine the starting and quitting time, and the number of hours to be worked;

\*   \*   \*

Inherent managerial functions, prerogatives and policy-making rights, whether listed above or not, which the Employer has not expressly restricted by a specific provision of this Agreement are not in any way, directly or indirectly, subject to the grievance and arbitration procedures contained herein, provided that no right is exercised contrary to or inconsistent with other terms of this Agreement.

**Section 20.2 – Compensation for Overtime**
All approved overtime in excess of the hours required of an officer by reason of the officer's regular duty, whether of an emergency nature or of a non-emergency

nature, shall be compensated for at the rate of time-and-one-half. Such time shall be computed on the basis of completed fifteen (15) minute segments.

**Section 20.7 – Change of Schedule**
The Employer's right to assign officer for duty at any time and at different times during each twenty-eight (28)-day police period remains unrestricted and unchallenged. Watch assignments and designated starting times shall be established and posted for each police period.

\* \* \*

However, starting times may be adjusted by the Employer: (1) plus or minus (2) hours from the designated starting times; or (2) for up to seven (7) hours within an officer's assigned watch for circumstances not known to the Department 48 hours prior to the start of the police period...

Any adjustment inconsistent with the above provision, made after the start of the twenty-eight (28)-day police period, will result in payment in accordance with Section 20.2 for the hours worked outside the officers' tour of duty scheduled at the beginning of the officer's twenty-eight (28)-day police period for that period. Shift changes during a police period made voluntarily at the request of an officer and upon approval of the employer shall not require additional compensation.

\* \* \*

**ARTICLE 31 – STEADY WATCH**

**Section 31.1 – Implementation**
A.1. District and units in which assigned officers have selected a steady watch will continue to select a steady watch each year. These units include the following:

\* \* \*
        Crime Lab (including Mobile Crime Unit)
\* \* \*

**Section 31.6 – Temporary Watch Assignments**
\* \* \*

Once watch assignments are made, changes will not be made except for: (1) officers identified as Personnel Concerns, (2) officers in a limited or convalescent duty for the duration of that status, (3) officers on restricted duty, (4) officers who have been relieved of their police powers, (5) to fill temporary vacancy...or (6) upon mutual agreement of the officer seeking the change and the Department... When watch assignments are changed in accordance with the provisions of this section, the provisions of Article 20 shall not apply. Changes in watch assignment

not in accordance with the provisions of this Section shall require compensation of the officer in accordance with Article 20...

**Section 9.7 – Authority of the Arbitrator**
...the arbitrator shall have no right to amend, modify, nullify, disregard, add to, or subtract from the provisions of this Agreement.

## POSITIONS OF THE PARTIES

*The Union*

The Union first contends the Department violated a long-established past practice when it unilaterally adjusted the PFIs second watch designated start time by more than the two (2) hours allowable pursuant to Section 20.7. 0600 hours had been a long-established designated start time. The Department violated Section 20.7 when it unilaterally adjusted the PFIs start time to beyond 0800. Specifically, the Union argues at page 10 of their brief:

> Unit 177's second watch had a long standing established designated start time of 0600 hours. Starting in 2011, the City, in an effort to cut corners, moved the second watch's starting time around by up to four (4) hours in order to cover as much time with as little a number of officers as possible, this unilateral action clearly violates the plain language of Section 20.7.

The Union continues that the Department took this unilateral action after a failed attempt to negotiate the 0800 start time for the PFIs. Further, the Union argues that the Department also violated Articles 31 and 20 by not paying Grievants' time and-one-half for the additional hours worked beyond their steady watch.

The Union cites two prior awards by Edwin Benn as arbitral authority for its position. FOP Lodge 7 and Chicago Police Dept. Grievance No. 008-04-003/287, is cited for the proposition that section 20.7 is violated when start times are adjusted by more than two hours from the designated start times. FOP Lodge 7 and Chicago Police Dept. Grievance No. 055-96-

001/103, is cited for the proposition that Unit 177 is not exempted from the provisions of Article 20.7.

***The Department***

The Department counters that the Union failed to meet its burden of proof. The plain meaning of Article 4 Management Rights should control the analysis. The Department continues that determining shift start and end times are an explicitly reserved right pursuant to Article 4(H). Further, Section 20.7 expressly allows schedule changes on the first day of the 28-day police period.

The Department maintains that it exercised its right to establish a new designated start time after the parties negotiated to impasse on the matter, even though it had no duty to negotiate. Furthermore, the change is supported by the rational justification of covering manpower needs. There is insufficient manpower to provide for three shifts, and the change was therefore neither arbitrary nor capricious.

ANALYSIS

In a contract interpretation grievance, the burden is on the party alleging a violation of the Collective Bargaining Agreement. Accordingly, the burden is on the Union to establish a violation of the CBA.

The Union argues that the Department violated Section 20.7 when it started PFIs more than two hours from the designated start time of 0600. This unilateral action violated a long-term, established past practice of the 0600 designated start time. The record indicates that 0600 hours was the start time since approximately 1997.

The Union acknowledges that, other than the units included in the MOU, there is no language in the current CBA that designates specific watch start times. Unit 177 is not in the

10

MOU. However, the past practice established that 0600 is the designated start time. PFIs who are started at a time adjusted more than two hours from the 0600 designated start time should be compensated for overtime based upon steady watch and Article 20.7. The Union also cites two awards for the proposition that an adjustment of more than two hours from the designated start time is a violation of Section 20.7.

In its Brief, the Union contends that the "City attempted to negotiate a new starting time of 0800 hours with the FOP, but when that failed it took unilateral action contrary to the wishes of the officers and the FOP." Conversely, the Department argues the clear and unambiguous language of Article 4 Management Rights, subsection H, provides it with the sole discretion "to establish work schedules and to determine the starting and quitting times."

In 2010, the Department engaged the Union in discussions seeking to change the PFI's designated second watch start time to 0800 hours from 0600 hours. When no agreement was reached, the Department changed the start time for Unit 177. The Department then published a vacancy bid announcement for the change of designated start times to be effective with the first police period of 2011.

### The Plain Language of Article 4(H)

The first inquiry in a contract analysis is whether the plain language of the Agreement resolves the grievance. If not, then aids to interpretation such as bargaining history and past practice may be considered. *See City of Chicago and FOP Lodge 7*, Gr. 055-96-001/03 (Benn 1997) at 10. The Department cites management rights in support of its position. Article 4(H) provides, in pertinent part:

> The Employer has and will continue to retain the right to operate and manage its affairs in each and every respect. The rights reserved to the sole discretion of the Employer shall include, but not be limited to, rights:

\* \* \*

(H). to establish work schedules and to determine the starting and quitting time, and the number of hours to be worked;

An examination of the plain language of Article 4(H) reveals that it is unambiguous. Article 4(H) plainly states that the Department has the right to establish the starting and quitting times. That right has certain limitations such as the MOU, Article 31, Article 20.7 and other articles – none of which are implicated in the instant matter. Here, the Department used its Management Rights to set the designated start time for Forensic Investigators at 0800 hours. The subsequent adjustment of the 0800 hours designated start time ahead two (2) hours to 1000 hours and back to 0600 hours, was permissible under Section 20.7.

*The Arbitrary or Capricious Standard*

The inquiry next turns to whether the decision to change the designated start time was arbitrary or capricious.[3] The Department maintains that the new designated start time rests upon a rational basis. The Union counters that it was a unilateral action when the Union would not agree to change the start time. The record supports the Department's argument. Specifically, the record is replete with testimony regarding the Department's manpower shortage, particularly in Forensic Services, and its need to provide 24/7 coverage by PFIs. The Unit is facing even greater manpower shortages due to imminent retirements. Moreover, the Record reflects that in 2010, the Department approached the Union with its need to ensure mobile crime lab coverage during the busy 2000 to 2200 hours period. Conversely, there was little demand for the PFIs during the hours 0600 to 0800.

In 2009 the Department had PFIs working two 10-1/2 hour shifts to better coordinate PFIs and ETs. The ETs had previously been placed on a 4/2 rotation instead of a 6/2 day

---

[3] See FOP Lodge 7 and City of Chicago (GR. R. Day)(Berman, Aug 16, 2006) in support of the arbitrary and capricious standard for management decisions.

rotation. The ETs second watch shift time is 0800 hours, consistent with the historical second watch start time. The Department maintains that changing the PFI second watch designated start time to 0800 hours was necessary for the Department to more effectively deploy its reduced manpower. The record supports a conclusion that the Department's action was rationally based upon budget and manpower requirements.

***Past Practice***

While the plain language of Article 4(H) is clear and ordinarily the analysis would end with that conclusion, the Union deserves an analysis of its past practice claim in light of more than a decade of 0600 as the start time for PFIs.

The Union argues that that the unilateral change of the designated start time is a violation of an established past practice. Accordingly, any analysis must consider whether the 0600 start time for PFIs is a binding past practice in Unit 177. Long-standing past practices can be binding upon the parties, provided certain criteria are met. Elkouri & Elkouri, *How Arbitration Works*, Sixth Edition, provides a substantive discussion of past practice in Chapter 12, entitled "Custom and Past Practice." Section 12.2 provides in pertinent part:

> When it is asserted that a past practice constitutes an implied term of a contract, strong proof of its existence ordinarily will be required. Indeed, many arbitrators have recognized that. 'in the absence of a written agreement 'past practice' to be binding on both Parties, must be (1) unequivocal; (2) clearly enunciated and acted upon; (3) readily ascertainable over a reasonable period of time as a fixed and established practice accepted by both Parties.'

> Another commonly used formulation requires 'clarity and consistency and acceptability.' The term 'clarity' embraces the element of uniformity. The term 'consistency' involves the element of repetition, and 'acceptability' speaks to a mutuality of the custom or practice. [citations omitted]

Moreover, "[f]or a past practice to constitute as an implied term of a contract, 'strong proof' of its existence is required."[4]

Clarity and consistency are two of the required criteria for establishing a binding past practice. Both elements are present in the instant matter. It is undisputed that the start time for PFI second watch was 0600 from at least 1997 until the first period of 2011. The evidence also indicates the Department did not change the second watch designated start time until April 2010. Lieutenant Dubiel testified that to the best of his "institutional memory," it was not until April 2010 the PFIs' start time was moved to 0800 hours. He stated that the second watch PFI start time was 0600 until as recently as the November 2009 bid. The 0600 start time was clear and it was consistent over a long period.

Clarity and consistency are present in the instant matter and the analysis then considers whether there is mutuality to the practice. "A past practice is binding on the parties only when circumstances ensure that it has been understood and accepted by both as an implied term of the contract."[5] Moreover, strong evidence of mutual acceptance is particularly necessary when the alleged implied term concerns fundamental management rights "regarding method of operation and direction of the workforce."[6] The instant matter involves such fundamental management rights.

An examination of the mutuality of the 0600 start time should be considered in light of the following well-known analysis:

> But there are other practices which are not the result of joint determination at all. They may be mere happenstance, that is, methods that developed without design or deliberation. Or they may be choices by Management in the exercise of managerial discretion as to the convenient methods at the time. In such cases

---

[4] See, *How Arbitration Works,* Elkouri & Elkouri, 6th ed., p. 607. See also, *2010 Cumulative Supplement,* K. May, p. 241.
[5] *Id. How Arbitration Works,* 2010 Cumulative Supplement, p. 243.
[6] *Id.*

there is no thought of obligations or commitment for the future. Such practices are merely present ways. Not prescribed ways, of doing things. ... The law and the policy of collective bargaining may well require that the employer inform the Union and that he be ready to discuss the matter with it on request. But there is no requirement of mutual agreement as a condition precedent to a change of practice of this character."[7]

*Ford Motor Company,* 19 LA 237, 241-2 (1952) (Shulman)

Establishing a start time is part of the fundamental rights regarding method of operation or direction of the workforce. The Department's acknowledgment that 0600 hours had been the PFIs' second watch designated start time since 1997 is some evidence of mutuality. However, that evidence is not dispositive and must be considered in light of other evidence in order to determine whether the required 'strong evidence' of mutuality has been established.

The unrebutted testimony of Commander O'Neill indicates that the "historical" second watch designated start time for the Chicago Police Department is 0800 hours. According to Commander O'Neill and Lieutenant Dubiel, the switch to the 0800 designated start time was driven by manpower needs. The 0600 start time was a useful start time when there were more officers in the unit.

However, the unit has shrunk and faces further reductions due to imminent retirements. Commander O'Neill was part of the negotiations over start times in the MOU. The Department and the Union also discussed changing the PFI start time, but did not reach agreement. Absent agreement on PFI start times, a new designated start time was established by the Department and Commander O'Neill cited the management right as allowing the Department to do so. As stated above, this was a management right under the CBA.

Establishing mutuality requires strong proof. As the moving party in this matter, it was the Union's burden to establish the required strong proof that the 0600 designated start time was

---

[7] *Id. How Arbitration Works,* 6th ed., p. 613.

mutually accepted by both parties. Based upon the evidence and the arguments, the 0600 start time was one of the "choices by Management in the exercise of managerial discretion as to the convenient methods at the time" and not a mutually accepted practice."

Although the Department discussed it with the Union, "there is no requirement of mutual agreement as a condition precedent to a change of practice of this character."[8] There was no strong evidence of mutuality established in the instant matter. Therefore, the Union has not established that the 0600 start time for PFIs is a binding past practice.

### Article 31 and Article 20.2

The Union also argues that even if the Department did not violate Section 20.7, it nevertheless violated Articles 31 and 20.2 when it changed the PFIs' start time from the 0800 steady watch designated start time. The Department has failed to pay OT for "hours worked outside the officers' selected watch." The Union's argument is not persuasive.

Article 31 provides PFIs with steady watch protection. However, as discussed above, that protection does not preclude the Department from changing the designated start time of a steady watch. Article 31.1 expressly states that, "officers [who] have selected steady watch will continue to select a steady watch each year." It further refers to an Annual Selection Process for officers who desire to select a steady watch. In the instant matter, the Department gave notice on November 15, 2010 to PFIs as to the designated steady watch start times for year 2011. The bid was effective with the first police period of 2011. Because the designated start time was properly changed by the Department, there has been no violation of Article 20.2.

---

[8] *Ford Motor Company*, 19 LA 237, 241-2 (1952) (Shulman), discussed in *How Arbitration Works*, Elkouri & Elkouri, 6th ed.

***The Union's Citation to Prior Awards***

The Union cites to Arbitrator Benn's decision in FOP Lodge 7 and Chicago Police, Gr 008-04-003/287, for the proposition that an adjusted start time beyond two hours is a violation of Section 20.7. The award specifically states that it is non-precedential. Further, the question of whether the Department had the authority to establish a designated start time was not at issue. Rather, the issue in that grievance was adjusting the start time by more than two hours.

The Union also cites to FOP Lodge 7 and Chicago Police, Gr 055-96-001/103, in support of its position. Again, the issue in that matter was not whether the Department had the authority to establish a designated start time, but rather the issue in that grievance involved adjusting the start time by more than two hours. Neither award is instructive for the analysis of the instant grievance.

CONCLUSION

Grievances denied.

*Brian Clauss*

Brian Clauss, Arbitrator
November 30, 2011