UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STATE OF ILLINOIS, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>CITY OF CHICAGO, )<br>)<br>Defendant. ) | Case No. 17-cv-6260<br>Honorable Robert M. Dow, Jr. |

**EMERGENCY MOTION TO PROTECT CHICAGO POLICE OFFICERS' WELLNESS HEALTH AND SAFETY PURSUANT TO LOCAL RULE 5.6, OR, IN THE ALTERNATIVE, MOTION FOR LIMITED INTERVENTION, *INSTANTER***

The Fraternal Order of Police Chicago Lodge No. 7 ("the Lodge"), by and through its attorneys, files this motion *instanter* pursuant to Local Rule 5.6, for leave to file an emergency motion to require the City of Chicago to take sufficient measures to protect the health and safety of Chicago Police Officers under Paras. 2, 6, 377, 378 and 385 of the Consent Decree signed by this Court on January 31, 2019. [Doc. 703-1]. Over the last three weeks, Officers have been deployed for consecutive twelve hour days with all regular days off and furlough time canceled. They are exhausted and worn out from the constant exposure to citizen protests and need longer work breaks. The City of Chicago is not complying with the wellness health and safety obligations of the Consent Decree. This court has stated on several occasions that its function under the Consent Decree is to serve as a contract enforcer, and this emergency motion requests the court to take such action to protect the health, welfare and safety of the Officers. As of yesterday, the CPD ordered Officers to return to the twelve hour day schedule and cancelled all regular days off and furloughs, the third such order since May 30, 2020.

In the alternative, the Lodge seeks, pursuant to Rule 24(a) FRCP, intervention for the limited purpose of protecting the rights of Chicago Police Officers pursuant to the General Duty Clause of the Occupational Health and Safety Act of 1970 and the Para. 2 of the Consent Decree. In support of the intervention request, the Lodge relies on the answer to the complaint that was previously filed as Doc. 51-2.

Local Rule 5.6 permits a non-party to participate in a judicial proceeding by permission of the Court. As to the alternative motion to intervene, the Lodge is seeking in this second request the same kind of limited intervention that was granted to the union in People Who Care v. Rockford Board of Education, 961 F.2d 1335 (7th Cir. 1992), where the District Court allowed intervention for the union to protect its contract rights long after the consent decree had been issued and approved and after the initial motion to intervene had been denied. Lodge's Reply Brief, [Doc. 81 at 7-9]. [*See* Doc. 81-5 (District Court's June 11, 1991 order in Case No. 89-C-20168, at Para. at 3, granting intervention to union to protect contract rights approximately two years after filing of complaint and entry of consent decree)]. Here, the Lodge believes that the issues are similar in that the Consent Decree obligates the City to protect the safety and wellness health of Police Officers.

## Consent Decree Requires City to Protect the Wellness Health and Safety of its Police Officers

The Consent Decree unequivocally states that the City and the Chicago Police Department agree to, inter alia, promote Officer safety and to ensure that Officers "are provided with the training, resources and support they need to perform their jobs professionally and safely." Para. 2, Consent Decree. This paragraph also requires changes in the area of office wellness. Id. The Consent Decree also recognizes that the Officers are exposed to significant danger, high stress and "that psychological and emotional wellness are critical to officers' health, relationships, job

performance and safety. The City and the CPD have an obligation to help the CPD members cope with the consequences that come from their service to the public." Para. 378, <u>Consent Decree.</u>

The scheduling of Officers for as many as sixteen consecutive days with between eight and twelve hours of work and in some cases up to fifteen to sixteen hours with no regular days off or furlough days allowed is totally contrary to the Consent Decree requirements that Officers be supported to perform their jobs safely. Without proper rest and regular breaks between their tours of duty and Officer are too exhausted and worn out to perform their jobs in a safe manner. There is great harm that can result from sleep deprivation, and the constant twelve hour shifts has meant that Officers are sleep deprived.

> The harm which can result from sleep deprivation cannot be overstated. Catastrophes at nuclear power plants such as Three Mile Island in Pennsylvania in 1979 and Chernobyl in the Ukraine in 1986 as well as the Exxon Valdez oil spill in Alaska in 1989 were in part attributed to sleep deprivation and fatigue (Vila et al., 2002:7). The costs of an accident on the job can mount in view of the potential civil liability for employers (such as a police department) who knowingly schedule employees in a manner which causally induces fatigue and thereby increases the likelihood of an accident (McGreevy, 2000; Milarsky, 2000). Senjo, Scott & Heward, Michelle, "Sleep and Job Performance in Law Enforcement: Measuring Differences Between Highway Patrol, Sheriff, and Municipal Police Officers" (2007).

For the Chicago Officer the hours for the past three weeks have been unduly burdensome. As stated declaration the regular day off were cancelled effective Saturday May 30, 2020, and the midnight (1st watch) hours normally 2300 to 0730 were altered to 1300 to 0100 on Monday, June 1, 2020, and was then changed again on Thursday, June 4, 2020, to start at 1700 to 0500. A return to the normal hours began on Wednesday, June 10, 2020 effective with the second watch. The Officers in Day Off Group 63 were most severely affected in that the worked from May 27, 2020, to June 12, 2020, without a day off. Effective June 13, 2020, the twelve hour schedule with no days off has resumed, and this is the schedule that is now complicating the daily work lives of

3

the Officers, but was cancelled on Monday afternoon only to be renewed on Tuesday afternoon in anticipation of public demonstrations over this weekend.

Research on sleep deprivation has shown the connection between sleep deprivation and job performance.

> The physical bodily reactions to sleep deprivation are given greater clarity when using the alcohol metaphor. Being very tired is compared to being intoxicated from alcohol consumption. Williamson and Feyer (2000) compared the relative effects of sleep deprivation to the effects of alcohol. Their findings show that after 17 to 19 hours of wakefulness, human fatigue reaches a level equivalent to that found at the legal BAC (Blood Alcohol Content) limit for safe driving. Response speeds for the fatigue impaired group were up to 50% slower on some tests than those in the alcohol impaired group, and accuracy speeds were significantly slower (Williamson & Feyer 2000:649). Of course, legal limits are placed on alcohol consumption due to the correlation between alcohol consumption and driving performance. Since alcohol intoxication causes altered perceptions of reality, fatigue could cause similar effects on police officers during their work. A mindset that is fatigue-impaired can lead to fatal misconceptions. Senjo, Scott & Heward, Michelle, "Sleep and Job Performance in Law Enforcement: Measuring Differences Between Highway Patrol, Sheriff, and Municipal Police Officers" (2007).

Currently, no state or federal mandates exist regarding police work length. Requiring CPD Officers to work 12 hour shifts and then return to another tour of duty with only a limited break creates safety and health issues. Furthermore, with the cancellation of Regular Days Off, numerous Police Officers have worked 16 days or more straight without any days off in between. The City cannot keep implementing abnormally dangerous working conditions for work by requiring Police Officers to work so many hours without affording them ample time to rest.

"Humans are hard-wired with a genetically determined biological need for sleep and with a circadian pacemaker that programs us to sleep at night and to be awake during the day on a 24-Hour schedule." (Rosekind and Gander, 1996). Fatigue costs the US economy $136 billion per year in health-related lost productivity alone (Journal of Occupational and Environmental Medicine 49 (1) (2007): 1-10).

4

Rotating shift work is inherently dangerous ("Sleep Deprivation: What does it Mean for Public Safety Officers?" Bryan Vila, Ph.D., NIJ Journal, Issue No. 262, pp. 26, 27). Clearly, sleep deprivation is dangerous. (*Id.*, p. 27) (sleep deprivation is dangerous and being awake for 19 hours produces impairments comparable to having blood alcohol concentration of 0.05 percent). More than half of police officers fail to get adequate rest and have a 44 percent higher level of obstructive sleep apnea (*Id.*). Law Enforcement Officers deal with not only the stress of working shifts, but also witness or experience trauma and managing dangerous confrontations (*Id.*). Exposures to various high intensity stressors also impact the quality of sleep which officers do receive.

In one study conducted over a 40 year period, the average age of death for Police Officers was 66, a full 10 years sooner than the norm ("Dying for the Job," in Policing and Stress, ed. H. Copes and M.L. Dantzker, Upper Saddle River, NJ: Pearson Prentice Hall 2005: 87-102).

Reactions to sleep deprivation are greatly highlighted when using the alcohol metaphor– being very tired is compared to being impaired from alcohol consumption. Scott Senjo and Michelle Heward, "Sleep and Job Performance in Law Enforcement: Measuring Differences Between Highway Patrol, Sheriff, and Municipal Police Officers," (2007). Research has shown that being awake for 19 hours produces "impairments that are comparable to having a blood alcohol concentration (BAC) of .05 percent. Being awake for 24 hours is comparable to having a BAC of roughly .10 percent" (Dawson, D., and K. Reid, "Fatigue, Alcohol and Performance Impairment," Nature 388 (July 17, 1997): 235). In essence, the impact of sleep deprivation is doubled with that additional 5 hours of lost sleep. It is significant to note that Illinois considers it a crime to drive with a BAC of .08 percent or higher. Moreover, CPD Officers must maintain a BAC of .00 percent during duty hours.

More Law Enforcement Officers die as the result of accidents than from criminal assaults ("Police Officers Deaths in the United States, 1980-2207," p. 29). Indeed, the rates of such accidents increase with lack of sleep and time of day. Research shows that the risk increases considerably after a person is on duty nine or more hours; after a 10 hour tour of duty, the risk increases by about 90%; and after a 12 hour tour of duty, it increases 110% (Folkard, S. And D.A. Lombard, "Modeling the Impact of the Components of Long Work Hours on Injuries and Accidents," American Journal of Industrial Medicine 49 (11) (November 2006): 953-963). Based on these findings, it should be clear that the Chicago Police Officers are being subjected to unreasonable and unsafe work hours and shifts without having a sufficient break work break.

The Lodge requests this court to grant a limited intervention on an emergency basis to present additional evidence to show the effects of sleep deprivation on the Officers and to make its claims that mistakes in job performance are likely without having a change in the schedule. At a minimum, the safety and wellness requirements of the Consent Decree should be interpreted to require the City to marshal additional resources to provide for citizen protection such as requesting the assistance of other police agencies and even the National Guard.

## OSHA General Duty Clause Prohibits Sleep Deprivation

Paragraph 2 of the Consent Decree commits the City and the CPD to deliver services in a manner that "fully complies with the Constitution and laws of the United States and the State of Illinois." Para. 2, <u>Consent Decree</u>. The General Duty Clause of the Occupational Health and Safety Act of 1990 provides that workers are to be free of work place hazards:

> Each employer shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees. Section 5(a) (1) 29 USC 654.

The recognized hazard of sleep deprivation has been verified in the studies that are cited in this motion, and the Lodge has advised the Department of the hazards and abnormally dangerous working conditions that are now confronting the Officers. The recent death of an Officer who may have been too tired to realize or hear his carbon monoxide alarms is sufficient reason to recognize the harm done to the Officers and the violation of the General Duty Clause.

Currently, no state or federal mandates exist regarding police work length.  Requiring CPD Officers to work 12 hour shifts and then return to another tour of duty with only a limited break creates safety and health issues.  Furthermore, with the cancellation of Regular Days Off, numerous Police Officers have worked 16 days or more straight without any days off in between. The City cannot keep implementing abnormally dangerous working conditions for work by requiring Police Officers to work so many hours without affording them ample time to rest.

Clearly, Police Officers who are over tired put themselves, their fellow officers and the communities they serve at risk.  Sadly, the incident last week of Police Officer Meng's tragic death highlights that exhaustion played a direct role in him passing out.  Arguably, the City and/or Police Department may be held responsible if an Officer causes a death or serious injury as a result of being too tired.  Indeed, significant judgments have been awarded in the transportation industry for accidents caused by work related exhaustion.  Research clearly establishes that a scientific correlation exists between sleep, fatigue and diminished job performance. The Department cannot continue to allow such dangerous practices to exist.  Officers' health and safety must be taken seriously.

## Conclusion

For the foregoing reasons, the Lodge requests this Court to grant leave to file this motion *instanter* and allow the Lodge to intervene in this case for the limited purposes identified herein,

so that the Lodge, as a party to this litigation, may seek appropriate protections for the health and safety of Chicago Police Officers, and to allow the Lodge to present additional evidence in support of this request for compliance with the health and safety provisions of the Consent Decree. Such protections would include requirement that the Officers be given sufficient rest periods and that the City be required to seek additional law enforcement resources from other police departments and the Illinois National Guard.

                                    Respectfully submitted,

                                    /s/Joel A. D'Alba
                                    Joel A. D'Alba

Joel A. D'Alba
ASHER, GITTLER & D'ALBA, LTD.
200 W. Jackson Blvd., Suite 720
Chicago, Illinois 60606
(312) 263-1500
jad@ulaw.com
rah@ulaw.com
mjp@ulaw.com

8