

# OFFICE OF THE ATTORNEY GENERAL
STATE OF ILLINOIS

**KWAME RAOUL**
ATTORNEY GENERAL

September 25, 2020

**SENT VIA EMAIL**

City of Chicago Law Department
c/o Tyeesha Dixon
121 North LaSalle Street, Suite 600
Chicago, Illinois 60602
E-mail: Tyeesha.Dixon@CityofChicago.org

**Re:   CPD Home Raids**

Dear Ms. Dixon,

The Office of the Illinois Attorney General ("OAG") asks the City and the Chicago Police Department ("CPD") to comprehensively address the detailed concerns raised by the Coalition in its August 5, 2020 letter ("Letter") concerning CPD's policies and practices in executing warrants and home raids. The OAG echoes these concerns both as the plaintiff in *State of Illinois v. City of Chicago*, 17-cv-6260 (N.D. Ill.), and more generally as the chief legal advocate for the health and well-being of Illinois residents.

Under the Consent Decree, the City has committed to ensuring that CPD serves "all of the people of Chicago in a manner that fully complies with the Constitution and laws of the United States and the State of Illinois, respects the rights of all of the people of Chicago, builds trust between officers and the communities they serve, and promotes community and officer safety."[1] The right to be secure in one's home is at the core of the Fourth Amendment. There is scarcely a more violent invasion of that right than to have police officers break into a home based on bad information and hold a family, including young children, at gunpoint. The OAG is disturbed by the ongoing and well-documented accounts of CPD raids involving mistaken addresses, incorrect information, excessive force, verbal abuse, pointing guns directly at young children and their parents, and

---

[1] Consent Decree, ¶ 6.

500 SOUTH SECOND STREET, SPRINGFIELD, ILLINOIS 62706 • (217) 782-1090 • TTY: (217) 785-2771 • FAX: (217) 782-7046
100 WEST RANDOLPH STREET, CHICAGO, ILLINOIS 60601 • (312) 814-3000 • TTY: (312) 814-3374 • FAX: (312) 814-3806
1001 EAST MAIN, CARBONDALE, ILLINOIS 62901 • (618) 529-6400 • TTY: (618) 529-6403 • FAX: (618) 529-6416

accounts of disrespect and avoidable escalation against Chicago families in their own homes. These issues are exacerbated by evidence that they disproportionately affect Black, Brown, and economically disadvantaged neighborhoods.[2]

As CPD implements the Consent Decree's wide-ranging reforms, it must address the systemic problems identified by the Coalition that lead to "wrong raids" by CPD officers.[3] CPD is obligated to create "clear policy, training, and supervisory direction…to provide police services in a manner that promotes community trust … and ensures equal protection of the law to all individuals."[4] The identified flaws in CPD's home raid practices endanger everyone involved and undermine the very purpose of the Consent Decree.

As CPD strives to embody the Consent Decree's guiding principles,[5] fulfill the Decree's requirements for officer conduct and supervision,[6] and incorporate data-driven accountability and officer support,[7] CPD must work with the Coalition, the Independent Monitor, and the OAG to address the concerns raised in the Letter to protect Chicago's children, make policing more effective, and restore trust between police and the communities they serve.[8]

*Interactions with Youth*

The Coalition's policy and training recommendations to safeguard children from trauma fall squarely within CPD's obligations under Paragraphs 32 and 37(d) of the Consent Decree.[9] Under these paragraphs, CPD is required to review and revise its polices and training to provide officers with guidance on, and developmentally appropriate responses to, interactions with youth and children, including information about adolescent development and techniques for positive youth interactions.

In comments we sent on January 7, 2020, we stated that CPD should develop a clear directive about safeguarding children at the time of parental arrest, as OAG does not believe CPD currently has clear guidance on this issue. We explained that best practices call for clear policies, procedures, and training on steps police can take to reduce trauma associated with the arrest of a parent. We asked CPD to collaborate with our office to develop an additional policy on this topic, which we noted would advance compliance with Paragraph 32 of the Consent Decree. During the January 2020 site visit, and again by email on January 30, 2020, we specifically raised concerns about the impact of search warrant execution on juveniles and provided you a copy of a 2014 report and model policy related to "safeguarding children of arrested parents."[10] We requested to work with

---

[2] *See* Letter at 4.
[3] *See* Letter at 4-9.
[4] Consent Decree, ¶ 51.
[5] *See, e.g.,* Consent Decree, ¶¶ 6, 10, 15, 49, 51, 250, 265-68, 293, 298, 317.
[6] *See, e.g*., Consent Decree, ¶¶ 32, 35, 36, 54, 153, 156, 162, 164, 176, 189, 237-39, 271-72, 334, 341-46, 352-53, 369.
[7] *See, e.g.,* Consent Decree, ¶¶ 355, 544, 547, 561, 566-69, 576, 583, 588.
[8] *See* Letter at 9-13.
[9] *See* Letter at 10-12
[10] International Association of Chiefs of Police Report, Safeguarding Children of Arrested Parents (August 2014), available at https://bja.ojp.gov/sites/g/files/xyckuh186/files/Publications/IACP-SafeguardingChildren.pdf.

you on developing a more comprehensive directive. CPD has not substantively responded to this request. As the Coalition's Letter underscores, additional action on this issue cannot wait.

*Search Warrant Policy and Training*

CPD's search warrant policies and practices have failed to prevent recurring wrong raids. The Coalition's recommendations to improve the veracity of warrant information will make search warrant execution safer and are critical for community trust.[11] These policy and training modifications are implicated by a number of Consent Decree requirements.

For example, Paragraph 156 requires that CPD's use of force policies and training, supervision, and accountability systems ensure that CPD members use "sound tactics" to eliminate or reduce the amount of force needed; use de-escalation "to prevent or reduce the need for force wherever safe and reasonable";[12] "continually assess the situation and modify the use of force as circumstances change"; and act "with a high degree of ethics, professionalism, and respect for the public" "in a manner that promotes trust between CPD and the communities it serves" and respects "the sanctity of human life." These requirements are inextricably tied to the wrong raid issues identified in the Letter.[13] Moreover, the Consent Decree requires CPD to identify and analyze trends, including trends in use of force and trends in litigation,[14] to assess and improve its policies and training.[15] The Coalition has documented trends that CPD must address by revising its policies and training to reflect best practices, meet the goals of the Consent Decree, and prevent or reduce the need to use force.[16]

On February 28, 2020, we raised the issue of search warrant-related trainings, particularly as related to incidents with wrong addresses or children present, in the context of CPD's pre-service and promotional training course list. We requested that the trainings be produced for review. While CPD recently produced its pre-service trainings on September 16, the Coalition's recommendations must guide CPD as it revises its policies and training.

OAG also agrees that CPD should ban "no-knock" search warrants. As the tragic killing of Breonna Taylor has painfully reminded the country, and as experts point out, no-knock search warrants are dangerous for both officers and the public.[17] While officers might still be permitted

---

[11] Letter at 10.
[12] *See also* Consent Decree, ¶ 161 (adopting de-escalation as a core principle and requiring de-escalation techniques).
[13] Letter at 4-8. *See also* Dave Savini, Chicago Police Officers Reveal Major Missteps As They're Questioned On Video For Lawsuit About Raiding Wrong Home, CBS 2 Chicago (Oct. 3, 2019) (officer testimony and body camera evidence revealing that "[d]espite the lack of verification that the address was correct, [the officer's] superior signed off" on the wrong raid warrant and that the officers continued to search the home "even when they knew they were in the wrong place"), https://chicago.cbslocal.com/2019/10/03/chicago-police-officers-questioned-on-video-for-lawsuit-about-raiding-wrong-home.
[14] Consent Decree, ¶¶ 547-49, 572.
[15] *See, e.g*., Consent Decree, ¶ 157.
[16] Letter at 4-8.
[17] *See, e.g.,* The Justice Collaborative Institute, End No-Knock Raids, available at https://tjcinstitute.com/wp-content/uploads/2020/06/no_knock_raids-1.pdf.

to enter a home without knocking in exigent circumstances, Chicago should join the nationwide trend in banning "no-knock" warrants.[18]

### *Search Warrant and Arrest Data*

"Data can empower CPD to engage in the type of critical self-examination essential to instilling and maintaining constitutional policing."[19] The Coalition's recommendations for search warrant and arrest data are vital for increasing transparency under Paragraph 544 and enabling CPD to continually improve its practices and support its officers.[20] Additionally, Paragraphs 567-569 require CPD to collect and maintain the data and records necessary to accurately evaluate its use of force practices and to facilitate transparency and accountability regarding those practices.

Further, it is imperative that CPD implement the Consent Decree paragraphs on body worn cameras, which require officers to record their law-enforcement related activities per the Illinois Law Enforcement Officer-Worn Body Camera Act.[21] CPD must assure that all officers record their law enforcement-related encounters and activities, including search and arrest warrant execution.

### *Next Steps*

While CPD has taken some steps to improve its home raid practices, including some updates to its search warrant policy,[22] more work needs to be done. The spirit of reform demands it, and the Consent Decree requires it.

As a next step, please schedule a time to meet with the Coalition, IMT, and OAG to discuss the Coalition's detailed proposals and to address these concerns as it updates its policies, procedures, training, data collection, accountability procedures, and officer support.

---

[18] *See, e.g.,* Candice Norwood, The War on Drugs Gave Rise to 'No-Knock' Warrants. Breonna Taylor's Death Could End Them, PBS (June 12, 2020), https://www.pbs.org/newshour/politics/the-war-on-drugs-gave-rise-to-no-knock-warrants-breonna-taylors-death-could-end-them; George Floyd Justice in Policing Act of 2020, H.R. 7120, 116th Cong. § 362 (2019-2020).

[19] Consent Decree, ¶ 566 ("CPD can leverage data to ensure constitutional policing by: systematically collecting enough data to have a broad-based understanding of officers' interactions with the public; auditing the data to ensure it accurately reflects those interactions; analyzing the data to identify trends or areas of concern; developing tailored support and interventions to address behavior that is or may become problematic; and assessing the effectiveness of attempts to modify officers' behavior.")

[20] *See* Letter at 12-13.

[21] Illinois Law Enforcement Officer-Worn Body Camera Act, 50 ILCS 706/10-1 et seq. *See also* Consent Decree, ¶¶ 236-242.

[22] *See* Special Order S04-19, Search Warrants (eff. Jan. 3, 2020) at Sec. VIII(E), available at http://directives.chicagopolice.org/directives/data/a7a57be2-12a76ce1-24512-a76c-e6f5e256f0ef4e84.pdf?hl=true; *see also* Letter at 8 (discussing same).

Respectfully,

KWAME RAOUL
Attorney General of the State of Illinois

/s/ Christopher G. Wells
Christopher G. Wells
Chief, Public Interest Division
Office of the Illinois Attorney General
100 W. Randolph St., 12th Flr.
Chicago, Illinois 60601
Email: CWells@atg.state.il.us

cc: Maggie Hickey
     Craig B. Futterman
     Sheila A. Bedi
     Karen Sheley