**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STATE OF ILLINOIS, | |
| Plaintiff, | |
| | Case No. 17-cv-6260 |
| v. | |
| | Judge Robert M. Dow, Jr. |
| CITY OF CHICAGO, | |
| Defendant. | |

**CITY OF CHICAGO'S RESPONSE IN OPPOSITION TO**
**COALITION'S MOTION TO ENFORCE THE CONSENT DECREE**

The City of Chicago ("City"), by and through its undersigned attorneys, submits this Response in Opposition to the Coalition's *Motion to Enforce the Consent Decree Concerning CPD's Execution of Search Warrants and Home Raids* ("Coalition Motion") (Dkt. 924). In support thereof, the City states as follows:

The City and Chicago Police Department ("CPD") acknowledge and appreciate the public's concerns about the manner in which search warrants have been obtained and carried out. The City and CPD have improved, and will continue to improve, relevant policies, training, and operations to promote respectful and constitutional search-warrant related practices.

However, a motion to enforce the consent decree entered in this case ("Consent Decree") (Dkt. 703-1), is not the appropriate mechanism for attaining the search warrant-related reforms the Coalition seeks. Both the law and the terms of the Consent Decree require a demonstrated failure by the City to satisfy an express provision as a prerequisite to the Court's exercise of its enforcement authority. While the Consent Decree addresses a myriad of CPD practices across numerous topics related to CPD's day-to-day law enforcement activities, the Coalition Motion does not—and cannot—identify any enforceable Consent Decree provision related to search

warrant practices, as the Consent Decree does not address search warrant practices. The Coalition argues for an interpretation of the Consent Decree that would improperly expand its scope beyond its express terms. Because search warrant practices are not referenced within the four corners of the Consent Decree, the Court cannot grant the relief the Coalition seeks, and the Coalition Motion should be denied.

## **ARGUMENT**

**I.     Search Warrant Practices Are Not Expressly Addressed in the Consent Decree and Therefore Cannot Be the Subject of Isolated Enforcement Actions.**

It is well established that "[f]or purposes of construction, a judicially approved consent decree is essentially a contract." *United States v. Alshabkhoun*, 277 F.3d 930, 934 (7th Cir. 2002). Therefore, a consent decree "is to be construed for enforcement purposes basically as a contract." *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238 (1975). When interpreting a consent decree, "the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *Goluba v. School Dist. of Ripon*, 45 F.3d 1035, 1038 (7th Cir. 1995) (quoting *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971)). Accordingly, a court's ability to enforce a consent decree is limited by the terms the parties negotiated and agreed to reduce to writing. *See Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 573-74 (injunction against layoffs and demotions of certain employees as enforcement remedy was improper where "there [was] no mention of layoffs or demotions within the four corners of the decree").

As this Court acknowledged, search warrants are not mentioned anywhere in the Consent Decree's 799 paragraphs. *See* Dkt. 703-1; *see also* Transcript of Jan. 26, 2021 Hearing at 10:13-20, attached hereto as Exhibit A (explaining that the term "search warrant" does not appear in the Consent Decree). For that reason, the Coalition cannot cite any provision in the Consent Decree

that refers to search warrant practices or policies. The Parties to the Consent Decree engaged in several hundred hours of negotiations over nearly a year to reach agreement on the specific reforms included within its scope. *See Ill. v. City of Chicago*, Case No. 17-cv-6260, 2019 WL 398703, *4 (N.D. Ill. Jan. 31, 2019) (Dkt. 702 at 4). The execution of search warrants is not among them.

If the Parties had intended the Consent Decree, which is expansive and detailed, to address search warrant practices, they would have included express terms covering them. They did not, and the Consent Decree memorializes the Parties' understanding of the its limited scope. *See* Dkt. 703-1 ¶ 708 ("This is an integrated Agreement. It contains the entire understanding and agreement of the Parties."). The Coalition cannot unilaterally expand the terms of the Consent Decree to include search warrants. *See Stotts*, 467 U.S. at 563–64; *see also Harris v. City of Philadelphia*, 47 F.3d 1333, 1337 (3d Cir. 1995) (a consent decree "memorializes the bargained for positions of the parties and should be strictly construed to preserve those positions"); *Walker v. U.S. Dep't of Housing and Urban Devel.*, 912 F.2d 819, 825 (5th Cir. 1990) ("The respective obligations of [the] parties are discerned strictly from the within the decree's four corners, as written."); *United States v. City of Cincinnati*, 771 F.2d 161, 166 (6th Cir. 1985) (courts may not "broaden the scope" of a consent decree "to achieve a purpose not expressed in the decree"); *Berger v. Heckler*, 771 F.2d 1556, 1558 (2d Dist. 1985) ("The court is not entitled to expand or contract the agreement of the parties as set forth in the consent decree, . . . and the explicit language of the decree is given great weight.") (internal citation omitted).

Because search warrant practices and policies are not addressed within the four corners of the Consent Decree, the Coalition is not entitled to the enforcement relief it seeks. *Stotts*, 467 U.S. at 563–64; *Goluba*, 45 F.3d at 1038. Accordingly, the Coalition Motion should be denied.

## II. The Consent Decree's Terms Cannot Reasonably Be Interpreted to Provide Piecemeal Enforcement Remedies for Individual Law Enforcement Activities.

Recognizing the Consent Decree is silent on CPD's search warrant practices (*see* Dkt. 924 at 12 n.32, 25), the Coalition attempts to enforce various more general provisions of the Consent Decree, including those related to Use of Force, Body Worn Cameras, Interaction with Youth, Community Policing, Impartial Policing, and Accountability. To be sure, the Consent Decree mandates broad reforms across numerous CPD law enforcement activities. The Consent Decree also contemplates that fully realizing these reforms will take years. Dkt. 703-1 ¶ 715. Thus, asking the Court to adjudicate CPD's compliance in a piecemeal fashion vis-à-vis individual law enforcement activities does not align with the spirit or purpose of the Consent Decree, which is to address programmatic, long-term reform across the department.

For example, one of the provisions the Coalition cites is Paragraph 156 (Dkt. 924 at 7), which provides that "CPD's use of force policies and training, supervision, and accountability systems will be designed, implemented, and maintained so that CPD members . . . act at all times in a manner consistent with the sanctity of human life" and "only use force that is objectively reasonable, necessary, and proportional under the totality of the circumstances," among numerous other comprehensive reforms. Dkt. 703-1 ¶ 156. But that provision does not provide any specific benchmarks or requirements with respect to any individual CPD practices—including the execution of search warrants—that can become the subject of an isolated enforcement action. Instead, the Consent Decree creates a framework by which the Monitor is responsible for determining an appropriate and reliable methodology for assessing CPD's *overall* compliance with these broad requirements over time through ongoing compliance reviews and audits. *Id.* ¶¶ 642, 644. This programmatic approach to assessing compliance is the only framework under which

evaluation of Consent Decree compliance—and enforcement of the Consent Decree's requirements—is tenable.

The Coalition also mistakenly contends that CPD's search warrant practices violate the Guiding Principles of the Community Policing, Impartial Policing, and Accountability sections of the Consent Decree. *See* Dkt. No. 924 at 8-10. There is no mention of search warrants in any of these sections. Moreover, the Consent Decree expressly states that the Guiding Principles "are not intended to impose substantive requirements" and are only "intended to provide . . . context for the subsequent substantive requirements of" the Consent Decree. Dkt. 703-1 at ¶ 757.

As discussed above, to read any of the provisions the Coalition relies upon to include specific directives or requirements regarding the execution of search warrants would be to "improperly expand[] the [Consent Decree]'s terms and impose[] obligations on [the City] that are beyond its scope." *Perez v. Danbury Hosp.*, 347 F.3d 419, 425 (2d Cir. 2003). So too would the Coalition's proposed enforcement approach, which runs contrary to the framework the Parties established. Such an interpretation would ignore the Parties' negotiations over the topics to be included in the Consent Decree. In ruling on a motion to enforce, a court is to strictly construe the terms of a consent decree, so as to preserve and give effect to "the bargained-for positions of the parties." *Harris*, 47 F.3d at 1337. The Coalition's proposed interpretation of the Consent Decree would nullify the Parties' bargained-for positions regarding the exclusion of search warrants, and for that reason, that interpretation should be rejected.

### III.     The Court Cannot Order the Enforcement Relief the Coalition Seeks.

Given that the Consent Decree contains no express provisions addressing search warrants, the Coalition is unable to articulate what it is asking the Court to "enforce" to remedy the Coalition's assertions of "violations of the Decree and federal law." Dkt. 924 at 25. Instead,

acknowledging that the Consent Decree does not "specifically refer" to search warrants, the Coalition asks generally for the Court's "intervention" to "produce a remedy." *Id.* As discussed above, the Court cannot enforce a contract provision that does not exist, and therefore, the Court does not have the authority to create and order a remedy. *See Stotts*, 467 U.S. at 573-74; *see also City of Cincinnati*, 771 F.2d at 166 (enforcement order is improper where it is used "to achieve a purpose not expressed in the decree"). The Consent Decree expressly provides that the Coalition may only seek Court enforcement for "fail[ure] to comply with a[] provision of [the Consent Decree]." Dkt. 703-1 ¶¶ 694, 709.

The Coalition cites several cases to support its position that the Court has the discretion to create an enforcement remedy for an issue that is not included in the Consent Decree. Dkt. 924 at 25-26. However, those cases are inapposite in that they either did not involve a motion to enforce at all, or involved motions to enforce based on findings of specific violations of one or more express consent decree provisions. *See Floyd v. City of New York*, 959 F. Supp. 2d 668, 671 (S.D.N.Y. Aug. 12, 2013) (ordering injunctive relief in form of policing reforms after findings of liability on consolidated class actions, not upon motion to enforce consent decree); *United States v. City of Seattle*, Case No. 12-cv-1282, 2018 WL 6304761 (W.D. Wash. Dec. 3, 2018) (ordering briefing on whether city's rejection of an officer accountability ordinance, which resulted in reinstatement of officer involved in excessive force incident, affected city's status as being in full and effective compliance with consent decree's provisions on accountability); *McElrath v. Goodwin*, 713 F. Supp. 299 (E.D. Ark. 1988) (ordering sanctions and training after finding that state troopers violated specific paragraphs of consent decree); *ACLU of Tenn., Inc. v. City of Memphis*, Case No. 17-cv-02120, 2020 WL 5630418, *2 (sanctions issued on motion to enforce after plaintiff showed by clear and convincing evidence that specific city actions violated specific

provisions of consent decree); *Cintron v. Vaughn*, Case No. 69-cv-13578, 2007 WL 4240856 (D. Conn. Nov. 29, 2007) (affirming contempt after where special master found city defendants violated five specific paragraphs in consent decree).

To invoke the Court's enforcement authority, the Coalition must first demonstrate that the City or CPD has violated an express provision of the Consent Decree. *See, e.g.*, *Davis v. New York City Housing Auth.*, 839 F. Supp. 215, 226 (S.D.N.Y. 1993) ("[A]bsent litigation on the merits, courts are typically limited in their ability to afford relief beyond the express provisions of a consent decree."). Because the Consent Decree contains no such express provision related to search warrants, the Coalition instead refers generally to "violations of the Decree and federal law." Dkt. No. 924 at 25. The Court has recognized, however, that its authority under the Consent Decree is limited and "lies largely in contract enforcement rather than fashioning remedies for violations of federal law." Dkt. No. 702 at 10. Thus, the Coalition Motion should be denied.

## IV. The Parties Should Exhaust the Required Dispute Resolution Process Prior to Any Judicial Intervention.

The Coalition's Motion is also improper because the Coalition failed to exhaust all the procedural prerequisites prior to seeking enforcement. The Consent Decree provides that the Coalition may only initiate enforcement proceedings with the Court after the Independent Monitor's ("Monitor") attempts to mediate a dispute between the Coalition and the City are unsuccessful. Dkt. 703-1 ¶¶ 695, 709. On July 23, 2020, the Coalition sent a letter to the City raising issues regarding CPD's response to recent protest activity and seeking to invoke the dispute resolution process required by Paragraph 695. The Consent Decree does not require the City to provide a written response, and rather, mandates a meet-and-confer process. *Id.* As contemplated by the procedure set out in Paragraph 695, the Monitor promptly convened a meeting with the

City, Office of the Attorney General ("OAG"), and Coalition to begin discussions of the issues raised in the Coalition's letter.

On August 5, 2020—amid the ongoing discussions and conferences regarding the protest-related issues—the Coalition sent the City an additional letter raising issues regarding CPD's execution of search warrants and seeking to invoke the dispute resolution procedures of Paragraph 695. Shortly thereafter, however, the Coalition requested that the City and Monitor prioritize discussion and resolution of the protest-related issues because the protest-related issues were more pressing in the Coalition's view. The City and the Monitor obliged that request and have participated in numerous meetings and exchanged correspondence with the Coalition and OAG to address protest-related issues, at the exclusion of other topics, including search warrants. These discussions remain ongoing, and the dispute resolution process is not yet complete, due in part to the Coalition's request. Therefore, even if the Coalition were permitted to seek enforcement on this issue, which it is not for all the reasons set forth above, the Coalition Motion is premature.

**V.     Although the Consent Decree Does Not Provide the Appropriate Forum to Address the Coalition's Concerns, the City Remains Committed to Achieving Better Policies, Practices, and Outcomes.**

The Coalition's Motion to enforce is improper and should be denied because search warrant policies and practices are outside the scope of the Court's enforcement authority.[1] However, in opposing the Coalition Motion, the City notes that the issues the public has raised regarding search warrants are not being ignored. The City is committed to achieving better policies, practices, and outcomes related to search warrants. Significant resources have been, and will continue to be,

---

[1]     To the extent the Court does not deny the Coalition Motion on the legal grounds stated herein, the City respectfully seeks leave to respond in full to the Coalition's factual assertions.

dedicated to reviewing search warrant-related issues and evaluating and addressing potential deficiencies. These measures have included:

- The City and CPD's public acknowledgement of the mistreatment of Ms. Anjanette Young during the February 2019 search warrant execution at her home;[2]

- Mayor Lori Lightfoot's Executive Order creating the first City guidelines requiring the swift release of video and other materials to people subject to alleged police misconduct, even if those materials would not otherwise be subject to mandatory public disclosure;[3]

- A day-long public City Council hearing regarding CPD's search warrant practices and related administrative misconduct investigation;[4]

- Public release of City correspondence related to the warrant execution at Ms. Young's home and other transparency measures; and

- Public updates on the Chicago Office of the Inspector General's ongoing evaluations of CPD's practices related to obtaining and execution of search warrants.[5]

The City's commitment to this issue is genuine and ongoing.

---

[2] *See Read Mayor Lori Lightfoot's letter to the City Council on the Anjanette Young case*, CHICAGO TRIBUNE, (Dec. 22, 2020, 11:57 A.M.), https://www.chicagotribune.com/news/ct-lightfoot-letter-to-city-council-anjanette-young-20201222-fn42g43quffnzak6ajn2qkurze-htmlstory.html.

[3] Executive Order No. 2021-1, *Access to Information Regarding Alleged Police Misconduct*, *available at* https://www.chicago.gov/content/dam/city/depts/mayor/Press%20Room/Press%20Releases/2021/February/EOTransmittalLetter.pdf.

[4] Chicago City Council December 22, 2020 Joint Meeting of the Committees of Human Relations and Public Safety, *available at* https://vimeo.com/showcase/6277263/video/491741216;

[5] *City of Chicago Office of Inspector General Public Safety Section 2020 Vision, Priorities, and Projects* Report, dated February 27, 2020, available at: https://igchicago.org/wp-content/uploads/2020/02/2020-Public-Safety-Project-Plan.pdf.

**CONCLUSION**

WHEREFORE, the City of Chicago respectfully requests that the Court deny the Coalition's *Motion to Enforce the Consent Decree Concerning CPD's Execution of Search Warrants and Home Raids* (Dkt. 924), and grant any other relief the Court deems appropriate.

Dated: February 23, 2021

Respectfully submitted,

CELIA MEZA
Acting Corporation Counsel of the
**CITY OF CHICAGO**

By: /s/ Allan T. Slagel
Special Assistant Corporation Counsel

Allan T. Slagel (ARDC #6198470)
aslagel@taftlaw.com
Elizabeth E. Babbitt (ARDC # 6296851)
ebabbitt@taftlaw.com
Paul J. Coogan (ARDC # 6315276)
pcoogan@taftlaw.com
Adam W. Decker (ARDC # 6332612)
adecker@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2800
Chicago, Illinois 60601
(312) 527-4000

Tyeesha Dixon
tyeesha.dixon@cityofchicago.org
Deputy Corporation Counsel
for Public Safety Reform
121 North LaSalle Street, Room 600
Chicago, Illinois 60614
(312) 744-1806
*Attorneys for Defendant*

28863085v5