# EXHIBIT A

```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3     STATE OF ILLINOIS,              )   Docket No. 17 CV 6260
                                       )
 4               Plaintiff,            )   Chicago, Illinois
                                       )   January 26, 2021
 5          v.                         )   9:53 A.M.
                                       )
 6     CITY OF CHICAGO,                )
                                       )
 7               Defendant.            )
                 TRANSCRIPT OF PROCEEDINGS - Status
 8            BEFORE THE HONORABLE ROBERT M. DOW, JR.

 9     APPEARANCES:

10     For the Plaintiff:       OFFICE OF THE ATTORNEY GENERAL
                                BY:  MR. CHRISTOPHER G. WELLS
11                                   MS. MARY GRIEB
                                100 West Randolph Street
12                              Eleventh Floor
                                Chicago, Illinois  60601
13                              (312)-814-6141
                                cwells@atg.state.il.us
14
       For the Defendant:       TAFT STETTINIUS & HOLLISTER LLP
15                              BY:  MR. ALLAN T. SLAGEL
                                111 East Wacker Drive
16                              Suite 2800
                                Chicago, Illinois  60601
17                              (312)527-4000
                                aslagel@taftlaw.com
18
                                CHICAGO DEPARTMENT OF LAW
19                              MS. TYEESHA DIXON
                                121 North Lasalle Street
20                              Suite 600
                                Chicago, Illinois 60602
21                              (312) 744-1806
                                tyeesha.dixon@cityofchicago.org
22
       For the Intervenor:      ASHER, GITTLER & D'ALBA, LTD.
23                              BY:  MR. JOEL A. D'ALBA
                                200 West Jackson Boulevard
24                              Suite 1900
                                Chicago, Illinois  60606
25                              (312)263-1500
                                jad@ulaw.com
```

| | | |
|---|---|---|
| 1 | For the Independent Monitor: | SCHIFF & HARDIN |
| 2 | | MS. MAGGIE HICKEY INDEPENDENT MONITOR |
| 3 | | BY:  MS. MEREDITH R.W. DECARLO 233 South Wacker Drive |
| 4 | | Suite No. 7100 Chicago, Illinois 60606 |
| 5 | | mdecarlo@schiffhardin.com |
| 6 | For the Coalition: | CIVIL RIGHTS AND POLICE ACCOUNTABILITY PROJECT |
| 7 | | BY:  MR. CRAIG B. FUTTERMAN Mandel Legal Aid Clinic |
| 8 | | University of Chicago 6020 North University Avenue |
| 9 | | Chicago, Illinois 60637 futterman@uchicago.edu |
| 10 | | |
| 11 | | COMMUNITY JUSTICE AND CIVIL RIGHTS CLINIC |
| | | BY:  MS. SHEILA A. BEDI |
| 12 | | 357 East Chicago Avenue Northwestern University Law School |
| 13 | | Chicago, Illinois  60611 Sheila.Bedi@law.northwestern.edu |
| 14 | | |
| | | ACLU OF ILLINOIS |
| 15 | | BY:  MS. NUSRAT CHOUDHURY      MS. ELIZABETH JORDAN |
| 16 | | 150 North Michigan Avenue Suite No. 600 |
| 17 | | Chicago, Illinois 60601 |
| 18 | | |
| | | EQUIP FOR EQUALITY |
| 19 | | BY:  MS. AMANDA ANTHOLT 20 North Michigan Avenue |
| 20 | | Suite 300 Chicago, Illinois 60602 |
| 21 | | |
| 22 | ALSO PRESENT: | MS. VANESSA DELVIA |
| 23 | | |
| 24 | | |
| 25 | | |

1       (The following proceedings were had telephonically.)
2       THE CLERK:  Okay.  The next case is going to be 17
3  Civil 6260.  State of Illinois versus The City of Chicago.
4       THE COURT:  Okay.  Good morning.  I'm going to have to
5  take attendance here since I can't see anybody.  And, in fact,
6  I'm about to pull into the parking garage in the federal
7  building here, so if you all can hang for about three minutes,
8  as soon as I get out of the parking garage, I will jump back on
9  the call.  But if you can hang on for three minutes, then I
10 will be in my office by then with all of my calendars open.  Is
11 that okay for everybody to hold tight for three minutes?
12      ALL ATTORNEYS:  Yes, your Honor.
13      THE COURT:  Okay.  I will call back in three minutes
14 when I get out of the garage.  Thank you.
15    (Brief recess.)
16      THE CLERK:  17 Civil 6260, State of Illinois versus
17 City of Chicago.
18      THE COURT:  Okay.  Good morning, everybody.  Thank you
19 so much for your patience.  I knew as soon as I went
20 underground, I was going to lose you anyway, but now that I'm
21 in my office, it is much better.  So I am going to take
22 attendance to see who is on.  So who's on for the Attorney
23 General, please?
24      MR. WELLS:  Good morning, your Honor.  Chris Wells for
25 the State of Illinois.

1         THE COURT:  Okay.  Mr. Wells, anybody else in your
2    office?  Oh, go ahead.
3         MS. GRIEB:  Good morning, your Honor.  Mary Grieb,
4    also from the Attorney General's office.
5         THE COURT:  Okay.  Good morning.  Anybody else?
6         Okay.  How about from the City?
7         MR. SLAGEL:  Good morning, your Honor.  This is Allen
8    Slagel on behalf of the City.
9         THE COURT:  Okay.  Good morning, Mr. Slagel.
10        Anybody else from the City?
11        MS. DIXON:  Tyeesha Dixon for the City.
12        THE COURT:  And then how about for the Coalition?
13        MR. FUTTERMAN:  Good morning, your Honor.  This is
14   Craig Futterman, one of the attorneys for the Coalition.
15        THE COURT:  Okay.  Good morning.
16        MS. BEDI:  Good morning, your Honor.  This is Sheila
17   Bedi, also for the Coalition.
18        THE COURT:  Good morning.  Anybody else?
19        MS. DELVIA:  This is Vanessa (inaudible) Office for
20   the Coalition.
21        THE COURT REPORTER:  I'm sorry.  I didn't get your
22   last name.  I got Vanessa.
23        MS. DELVIA:  Delvia.
24        THE COURT REPORTER:  Thank you.
25        THE COURT:  Okay.  Anybody else on the line for the

```
 1   Coalition?
 2            MS. CHOUDHURY:  Your Honor, this is Nusrat Choudhury
 3   of the ACLU of Illinois, and I'm here with my colleague Liz
 4   Jordan.  I can spell my name.  I don't believe that I have
 5   appeared before you before.
 6            THE COURT:  If you wouldn't mind doing that, I'm sure
 7   it will help Kris out a lot.  We can go back to the appearance
 8   forms if you have filed an appearance, but please go ahead.
 9   Thank you.
10            MS. CHOUDHURY:  Sure.  The first name is spelled with
11   an N, like Nancy, -U like umbrella, -S like Sam, -R like
12   Robert, -A like apple, -T like Tom.  Last name is Choudhury.
13   It's spelled C like cat, -H like hat, -U like umbrella, -D like
14   David, -H like hat, -U like umbrella, -R like Robert, and -Y
15   like yellow.
16            Your Honor, I'm the legal director of the ACLU of
17   Illinois, and I will be serving as lead counsel for the ACLU of
18   Illinois in this matter. I believe you may know that Karen
19   Sheley had also transitioned to work for the State, and I'm
20   also here with my colleague Liz Jordan.
21            THE COURT:  Sure.  And I am familiar with Ms. Jordan,
22   and I did not know that Ms. Sheley had -- she has gone on to
23   work where?
24            MS. CHOUDHURY:  She is working for the Illinois
25   Criminal Justice Information Agency, and it is a huge loss to
```

```
 1    the ACLU of Illinois, but we shall persevere.
 2            THE COURT:  Well, we will certainly miss her, but glad
 3    to have you and Ms. Jordan still on the case here, so thank
 4    you.  Is there anybody else who wants to state an appearance
 5    for the record today --
 6            MS. ANTHOLT:  Good morning, your Honor.  This is
 7    Amanda Antholt of the --
 8            THE COURT REPORTER:  I'm sorry.  I can't hear.
 9            THE COURT: Okay.  And I think that was Amanda Anthold
10    also for the Coalition; is that right?
11            MS. ANTHOLT:  Yes, your Honor.  Thank you.
12            THE COURT REPORTER:  Thank you.
13            THE COURT:  Okay.  Great.  And I think I heard
14    Mr. D'Alba.  Mr. D'Alba, is that you?
15            MR. D'ALBA:  Yes, your Honor.  I am here on behalf of
16    the Fraternal Order of Police Chicago Lodge No. 7.
17            THE COURT:  Okay.  Thank you. So we have been at this
18    long enough where I can pick up all of your voices now,
19    although sadly I can't see you all yet, but someday.  Okay.  So
20    if that's everybody, so the motion was filed and I assume that
21    the folks who may wish to respond to it have had a chance to
22    look at it.  I've read the motion, obviously, and I've also
23    talked it over with the monitors.  Anybody from the monitoring
24    team on, too?  I should have asked that.  I think Ms. Hickey is
25    not available this morning, but is there anybody on the
```

1    monitoring team that wants to speak their presence?
2            MS. DECARLO:  Yes, that's correct, your Honor.  This
3    is Meredith DeCarlo on behalf of the independent monitor,
4    Maggie Hickey.
5            THE COURT:  Okay.  Wonderful.  Thank you.  I'm glad
6    you're on.  Okay.  So let me ask, Mr. Slagel, you are probably
7    the first one who is most apt to want to respond to this, but
8    Mr. Wells, probably the Attorney General may be wishing to
9    weigh in as well.  So, Mr. Slagel, what says the City?
10           MR. SLAGEL:  The City would like to file a written
11   response, your Honor, and we would like 28 days to do that.
12           THE COURT:  So, Mr. Wells, what's the AG's position?
13           MR. WELLS:  Your Honor, Mary Grieb will be taking the
14   lead for us today, so I'll --
15           THE COURT:  Okay.  Ms. Grieb, what's the AG's
16   position?
17           MS. GRIEB:  Good morning again, your Honor.  The
18   coalition's motion raises some very serious issues about the
19   department's practices regarding search warrants and home
20   raids.  As we said in our December letter to the City that was
21   attached as an exhibit to the Attorney General's motion, the
22   Attorney General's Office is concerned about these
23   well-documented accounts of (inaudible) involving mistaken
24   addresses, bad information, excessive force, pointing guns at
25   young children, and disrespectful treatment of residents.  The

1   fact that these problems appear to disproportionately affect
2   communities of color makes them even more disturbing to our
3   office.  With all that said, we would like to see the City's
4   written response and we ask for 21 days to file our own written
5   response to that.
6            THE COURT:  So if I have got this right, then, the
7   City wants to file a response, then the AG would like to file a
8   response to the City's response that may or may not agree with
9   the Coalition in its entirety, may or may not agree with the
10  City, but it would come at the time of a reply brief, but it
11  would be more of a -- I suppose, Ms. Grieb, you might be
12  responding both to the Coalition and to the City; is that
13  possible?
14           MS. GRIEB:  That's right, your Honor.  We would like
15  to see the City's position in writing and have time to consider
16  it.
17           THE COURT:  And, then, who's got the lead for the
18  Coalition on this?  Who should I be asking?
19           MR. FUTTERMAN:  Hi, Judge Dow.  This is Craig
20  Futterman.
21           THE COURT:  Okay.  Good.  All right, Mr. Futterman.
22  So I think what I see here is that the AG wants to get both
23  your position and the City's position on the table before the
24  AG files a brief.  I'd certainly allow you to file a reply in
25  support of your motion to what the City is likely to say, but

1  do you also want to see the AG's response before you file your
2  reply?
3        MR. FUTTERMAN:  Yeah, I guess, your Honor, just to
4  take one step backwards, if I may.
5        THE COURT:  Mm-hmm.
6        MR. FUTTERMAN:  We have been reaching out and -- in
7  efforts to try to work and meet with the City collaboratively
8  to work this out for nearly six months, and these issues
9  continuing have escalated as all have seen.  What we
10 propose -- what we propose, rather than getting immediately
11 into, again, a protracted briefing schedule, would -- if the
12 Court were willing to indulge us, to immediately commence
13 collaborative structured settlement negotiations to try to
14 remedy these violations, and if the Court was so willing, we
15 would agree to enter and continue the enforcement motion to
16 work together to try to remedy these ongoing and serious
17 violations of the consent decree and Constitution.
18        And so what we would most like to see, your Honor, and
19 would ask would be that the City send us a written response to
20 the remedies that we proposed nearly six months ago and
21 attached to the motion as Exhibit B, as they publically
22 represented that they have a plan to represent these issues,
23 and to share them with us so that we could engage in
24 collaborative problem-solving efforts with the Coalition and
25 the Court.  But what we've also seen as these nearly six months

1 have passed is that there is an urgent need for court
2 intervention and supervision because the City has been
3 unwilling or unable to engage over this entire time without it,
4 and these violations continue and have escalated in ways that
5 have caused grievous trauma and harm to all we represent. So
6 proposing that as an alternative process to briefing and then
7 going into immediate hearing -- hearings afterwards.
8       THE COURT: Okay. Mr. Futterman, I appreciate that
9 thought. And here's what I think we ought to do, is do kind of
10 a parallel thing here. I think it makes sense, unless you all
11 came to me today and said, "We're in agreement that we want to
12 do this collaborative process that was outlined by the
13 Coalition." If everybody agreed that they wanted to do that, I
14 think I would be willing to do it, even though I'm not sure
15 that this enforcement action is the right way to go here
16 because I think you could put Control F in the consent decree
17 and put "search warrant" as your search term, you might not
18 find it in there. So I think there's an open question as to
19 whether this can be compelled as an enforcement action under
20 the decree. And I suspect the City's response will take issue
21 with that. I don't know where the AG is going to come out on
22 it, but that remains to be seen.
23       I am, as I have said to Ms. Hickey -- and I'm sure it
24 has been conveyed to you that I am willing to sit down to talk
25 with you all to talk about these issues, but I'm not sure that

1    I can compel this to be done, and that's what the briefing will
2    show.  So I think we need to do this on parallel tracks.  If
3    you all come to me and say we heard what Mr. Futterman said and
4    we would like to at least, you know, dip a toe in that water,
5    as I said to Ms. Hickey, I'm willing to sit down with you guys
6    and explore that, but until you all come to me willing to dip
7    the toe in at least, I have to sort out my own authority under
8    the decree, and that's where the briefing, I think, is going to
9    help me.
10           I think what's going to make sense here is for you
11   guys to keep talking with the monitor's help.  I'm aware that
12   Judge Williams is going to be supervising an independent
13   investigation with her law firm.  I'm aware that the Inspector
14   General is also hot-to-trot on this issue.  I'm aware that COPA
15   is on the issue, too.  I'm aware that the City Council is on
16   the issue, so there are lots of things going in parallel, but
17   if you all come to me through the Monitor and say we want to
18   sit down and talk about this, I'm always there for you.  But I
19   think the authority question is one that needs to be explored,
20   and I think it will be best explored in writing.  So
21   Mr. Slagel, 28 days from now is the 23rd of February.  And
22   then, Ms. Grieb, you wanted 21 after that.  Carolyn, can you
23   help me with that?  That's February 44th, but I don't know what
24   it is in March.
25           (Laughter.)

```
1              THE CLERK:  How many days after the 23rd?
2              THE COURT:  Twenty-one.  So three weeks after that.
3              THE CLERK:  Okay, so that's March 16th.
4              THE COURT:  Mr. Futterman, I am going to give you the
5    option of filing, then, on the 16th a reply if you want, or you
6    can have whatever time you want on the other end if you want to
7    wait for the AG.  You don't have to decide today.  You can
8    decide later if you want.  Is that okay, Mr. Futterman?
9              MR. FUTTERMAN:  That's fine, your Honor.  That's fine.
10             THE COURT:  Because I don't know what -- you may not
11   know exactly when you want to fire away at what the response is
12   that you get, and I will let you decide whatever -- if you
13   decide you don't want to file a reply on the 16th of March and
14   you'd rather wait to read the AG's, just send Carolyn an email
15   saying when you expect to file your reply after you read the
16   AG's.
17             MR. FUTTERMAN:  Thank you, your Honor.  Again, our
18   deepest concern is that, as you know, there's a lot of things
19   going on on parallel tracks, and that these violations continue
20   and we just hope -- and we say this publically for all
21   parties -- that we want nothing more than to engage and to do
22   what the consent decree requires and envisions, a collaborative
23   process with community representatives, the AG, and the Monitor
24   and the Court to try to end these constitutional violations and
25   violations of the decree.
```

1       THE COURT:  Right.  And I also know that the Monitor
2  has been communicating with me quite frequently about what is
3  going on beyond what I can read in the newspaper about Judge
4  Williams and Mr. Ferguson, COPA, and the City Council, and, of
5  course, I'm monitoring that as best I can, but I am a little
6  more detached, I'm afraid, for better or for worse -- sometimes
7  it is for better -- than you all are.  So feel free to call my
8  attention to things that you think are relevant, but I think
9  there is an authority question here that needs to be sorted out
10 unless you all come to me by agreement.
11          And I will continue through Ms. Hickey to, you know,
12 be available for you guys to make your, you know -- you can
13 tell her what you want to get back to me, and otherwise I'll
14 get it in writing.  And I will, you know, continue to work with
15 you guys on all of these issues across all of these fronts.
16 And I'm sure that Ms. Hickey will be in touch with you all
17 pretty soon on this, but I did want to get this briefing
18 schedule today in case you all don't come to agreement on this,
19 I will need to sort out that threshold authority question, and
20 then I will do that.
21          So I apologize for the delay this morning.  I thank
22 you guys for your patience.  Let me just go one by one since I
23 can't see any of you.
24          Is there anything else that the Attorney General,
25 State of Illinois wanted to bring up today?

1            MR. WELLS:  No, your Honor.  Thank you.
2            THE COURT:  Okay.  Anything else for the City today?
3            MR. SLAGEL:  No, your Honor.  Thank you.
4            THE COURT:  Okay.  Coalition?
5            MR. FUTTERMAN:  Thank you, your Honor, no.  And
6    appreciate your help, your Honor.
7            THE COURT:  Anything else -- Mr. D'Alba, anything else
8    for you today, sir?
9            MR. D'ALBA:  Thank you, your Honor.  The Lodge has, as
10   you know and as you have previously stated, a role with respect
11   to its collective bargaining obligations with the City and the
12   protection of the rights under the Labor Act pursuant to
13   sections -- paragraph 710 and 711.  And there are ongoing
14   discussions right now with the City on issues involving the use
15   of force, discipline of officers, and the operation of the
16   body-worn cameras.  And any conversations that take place
17   between the parties and the Coalition that have an impact on
18   the collective bargaining process are matters of concern to the
19   Lodge, and the Lodge would like to be able to sit in on those
20   negotiations to monitor, to make sure that its rights are
21   preserved.
22           THE COURT:  Now, I don't know what negotiations
23   between the Coalition and the City are going on.  They're not
24   going on with me, at least, at the moment on any of these
25   issues.  But my suggestion would be to raise that

1  with -- probably with Mr. Slagel, since he is -- he represents
2  the other side of your collective bargaining.  I don't know if
3  he is involved in the collective bargaining at all, and if
4  there's anything that you think I can rule on by way of a
5  motion, you're welcome to file it, Mr. D'Alba, but I'm not -- I
6  am very distant, I think, from these collective bargaining
7  issues, although I am trying to monitor them myself.  And I
8  understand that the General Assembly has put in a bill some
9  things that might affect some of the statutes that have been
10 raised in the past in discussions about the City's ultimate
11 ability to comply with the terms of the decree because much of
12 what they're going to have to accomplish, they're going to have
13 to accomplish with your clients at the bargaining table.
14         So at the moment, I don't see anything that -- I don't
15 even know what exactly the details of how the Coalition might
16 be talking to the City, but I would sort of raise that through
17 Mr. Slagel for now.  And if you can find an appropriate motion
18 to file, I'm obviously happy to consider them.  But at the
19 moment, all I can say is that the collective bargaining is not
20 in my wheelhouse, even though I realize that the success of the
21 bargaining table will certainly bear heavily on the ability of
22 the City to actually satisfy what's in the decree.  And I have
23 been waiting for a long time, as you all have, for a new
24 collective bargaining agreement to be raised.  This is
25 something that we've been talking about since 2017 is when is

|   |   |
|---|---|
| 1 | this coming?  My hope is that it is coming. |
| 2 | I understand there's an arbitration process and all of |
| 3 | that, too.  But it's mostly out of my wheelhouse, Mr. D'Alba, |
| 4 | but if you can think of a way that you need to raise that by |
| 5 | motion, you're welcome to do so.  Okay, sir? |
| 6 | MR. D'ALBA:  Yes, sir, your Honor.  I do want to point |
| 7 | out that we do have on file a set of objections with you in |
| 8 | Docket No. 813, in which the City and COPA entered into a |
| 9 | stipulation that, in my opinion, as stated in our objections, |
| 10 | affects issues involving the collective bargaining contract, |
| 11 | such as anonymous complaints, affidavit requirements, |
| 12 | preliminary investigations, time limits for investigations, |
| 13 | witness discussions, and the mediators, and the fact that there |
| 14 | could be an agreement reached under your auspices leads us to |
| 15 | conclude at the Lodge that that's a concern because that |
| 16 | stipulation was reached between COPA and the City without the |
| 17 | participation of the Lodge, and that's why we filed those |
| 18 | objections.  So a ruling on those objections could be of some |
| 19 | help in guiding the parties as to things that they're planning |
| 20 | on doing that would impact the collective bargaining |
| 21 | negotiations and the agreement. |
| 22 | THE COURT:  Okay.  This is 813.  Thank you for |
| 23 | reminding me, Mr. D'Alba.  The docket, as you know, is immense |
| 24 | and there have been lots of other issues that have come to the |
| 25 | front in the last year that I have spent lots of time with the |

1  parties on, but I will go back to 813.  And it looks like there
2  was a response filed by the City at 818.  And I think probably
3  a reply that you guys filed at 834, I think.  So let me go take
4  another look at that, Mr. D'Alba.  Thank you for the reminder.
5      MR. D'ALBA:  Thank you, your Honor, for giving me the
6  opportunity.
7      THE COURT:  Okay.  Anybody else for the good of the
8  order here today?
9      Okay.  Marvelous.  It is good to talk to all of you.
10 I hope sometime in 2021 we will be able to go back to showing
11 up in person to hash these issues out, but in the meantime,
12 everybody, please be well, and stay as dry as you can.
13     ALL ATTORNEYS:  Thanks, your Honor.
14     (Proceedings concluded.)
15
16              * * * * * * * * *
17              C E R T I F I C A T E
18    I certify that the foregoing is a correct transcript from
19 the record of proceedings in the above-entitled matter.
20
21
22 /s/Kristin M. Ashenhurst, CSR, RDR, CRR    February 3, 2021
   Kristin M. Ashenhurst, CSR, RDR, CRR       Date
   Federal Official Court Reporter
23
24
25