# Exhibit 2

| TO: | City of Chicago Law Department |
|---|---|
| CC: | Office of the Illinois Attorney General |
| FROM: | The Independent Monitoring Team |
| RE: | IMT Preliminary Comments – CPD Search Warrants Special Order S04-19 |
| DATE: | March 18, 2021 |

On March 2, 2021[1], the City of Chicago and the Chicago Police Department (CPD) posted a revised *Search Warrants* Special Order (S04-19) for a 15-day public comment period, ending March 18, 2021. The City, the OAG, and the Coalition are briefing the issue of whether the search warrant policies should be included under the review process of the Consent Decree. While this issue is resolved before the Court, the IMT is providing these preliminary comments on S04-19 within public comment period.

Overall, we appreciate that the CPD has publicized the Special Order, and we encourage the CPD to continue to engage with the public on this policy. In the meantime, we are offering these preliminary comments to improve S04-19 as soon as possible. We also find that S04-19 reflects a number of improvements over the previous version (dated January 3, 2021), including the importance of treating all subjects with dignity and respect. However, there are still deficiencies. We believe, for example, that S04-19 could do a better job outlining a purpose statement—which should include a sanctity of life statement—defining terms to enhance understanding by the public and CPD members, and linking to other related policies and requirements, such as use of force and crisis intervention policies and corresponding reporting and de-escalation requirements. There are also a number of steps the CPD could take to enhance safety for the public and officers, including barring "civilian-dress members" from participating in the service of a search warrant. Moreover, the CPD could also enhance accountability by specifically requiring written approvals and by collecting and publicizing data about search warrants. Finally, we have additional questions about the policy and concerns about how it may overlap with requirements under the Consent Decree, which we would like to discuss with the City, the CPD, and the Office of the Illinois Attorney General.

More specific feedback on S04-19 is in the chart below.

Please note that our comments may be subject to change based on information that the IMT receives during future collaboration.

***

If you have any questions or concerns, please contact the Independent Monitor Maggie Hickey at MHickey@schiffhardin.com or 312.258.5572.

---

[1] That day, the City also forwarded a courtesy copy of the policy to the Independent Monitoring Team.

# Chart 1 – IMT Preliminary Comments
# Search Warrants – Special Order S04-19

| # | Section | Comments |
|---|---------|----------|
| 1 | General: Definitions | We recommend including a definitions section to address and clarify key terminology such as the following: <br>• "no knock," <br>• "real property searches," <br>• "person/technology searches," <br>• "John Doe" warrants, <br>• "knock and announce," <br>• "Registered Confidential Informant (RCI)," <br>• "probable cause," <br>• "high-risk search warrant," and <br>• other frequently-used terms. |
| 2 | General: Purpose Statement | Consider including a Purpose Statement that stresses the importance of proper investigation, applying for search warrants, and serving search warrants The Purpose Statement should help ensure accountability and build trust in the search warrant process, thereby enhancing the safety for the public and CPD officers. |
| 3 | General: Training Requirements | It would be helpful to clarify what training is required to be a part of an entry team. For instance, it would be helpful to know the responsibilities of the entry team ("stack"), who is responsible for what side of the room, or who will break off to cover rooms. Training should be required for officers who serve as numbers 1 and 2 in the stack, and whether dynamic entry training and refresher training is provided to those units that are most often involved in search warrant service. <br><br> Consider referring to the specific trainings required to participate in serving a search warrant in the policy. As drafted, the Special Order does not require that officers utilized for entry teams have formal training for conducting search warrants, and it creates additional work for officers who may currently lack adequate training. For instance, the Special Order appears to allow "civilian dress" officers and detectives to conduct entry while following uniformed officers, though those officers may not have dynamic search warrant training |

# Search Warrants – Special Order S04-19

| # | Section | Comments |
|---|---------|----------|
|   |         | and may not understand their position and the responsibility of the entry team. |
| 4 | General: Written Approvals | Consider more consistently requiring written approvals and acknowledgements throughout the policy. As written, there are several instances when specific agencies or individuals should provide written or signed acknowledgements. This should be the practice each time an approval or acknowledgement is required by the policy. |
| 5 | General: Data Collection and Reporting | Consider including reporting requirements. It is important to document enforcement actions to build public trust and as a learning organization interested in accountability, transparency, and constitutional policing. We strongly encourage the CPD to gather, analyze, and publicize basic data about search warrants across Chicago. A reporting section in the Special Order would clarify the CPD's intention to ensure that responding officers and supervisors gather critical information, which the CPD could then report to the public on a regular basis. The data collected should include information about the search warrant, location, and process, including whether officers were uniformed, wearing body worn cameras, whether weapons were used, and whether children or vulnerable individuals were present. We welcome an opportunity to discuss this issue further. |
| 6 | General: Uniforms | We strongly suggest the CPD require all officers conducting a search to be uniformed. However, if officers in civilian dress will be permitted to participate, specific training should be required. We suggest revising Sections III, IX.A., and IX.B., and any other sections discussing possible exceptions to uniform requirements to reflect either a requirement that all officers are uniformed or that officers will be required to have additional training before they can participate in the service of a search warrant while not wearing the uniform of the day. |
| 7 | General: Related Policies | Consider referring and providing links to other policies which interact with the Special Order. For instance, as drafted, the Special Order does not refer to the CPD's use-of-force or crisis-intervention policies, including the corresponding reporting or de-escalation requirements. Addressing the connection of these policies is important. |

# Search Warrants – Special Order S04-19

| # | Section | Comments |
|---|---------|----------|
| 8 | I.B. Purpose | Consider revising this section as follows "outlines the responsibilities for investigations and search warrant development." |
| 9 | I.F. Purpose | Subsection F. appears to be the most important purpose listed. To emphasize this importance, consider moving I.F. to I.A. or I.B. and rewording as follows: "details the requirements for the review of Complaints for Search Warrants (CCMC-1-219) and Search Warrants (CCMC-1-219) . . . ." |
| 10 | II.A. Policy | As reflected in Comment 2 above, consider elaborating on Subsection II.A. and reframing it as a Purpose Statement for the Special Order. Consider including a sanctity of life statement in the Purpose Statement. *See* Comment 2. |
| 11 | II.B. Policy | It would be helpful to clarify whether the approval of the commanding officer must be in writing. We suggest that written approval should be required. *See* Comment 4. |
| 12 | II.B.2. Policy | Consider clarifying the kinds of search warrants discussed in this subsection to ensure that officers understand the importance of legally and properly conducting a search and how to do so. |
| 13 | II.C.1. Policy | Consider clarifying whether Section II.C.1. refers to all search warrants, location search warrants, or the search warrants discussed in II.B.2. |
| 14 | II.C.2. Policy<br>II.D.2. Policy | It would be helpful to clarify whether the Special Order intended to mean that the sworn Department member of lieutenant rank or above will remain on the scene until the search is completed and officers clear, or some other definition. Consider clarifying "remain on scene" and "full duration."<br><br>(For clarity, also consider formatting Section II.C.2. in a manner consistent with section II.D.2, which contains the same language but currently uses different formatting.) |
| 15 | II.C.3. Policy | Consider revising this section as follows: "review and approve all pre-service and post-service reporting requirements." |

# Search Warrants – Special Order S04-19

| # | Section | Comments |
|---|---------|----------|
| 16 | II.C. EXCEPTION - Policy | To eliminate vagueness, consider rewording this section as follows: "The requirements of Section II.C. do not apply to search warrants that do not involve real property or locations where occupants could be present . . . .". As written, the "exception" appears to apply only to II.C.3. |
| 17 | II.F. Policy | Consider providing additional context to Section II.F. to clarify its purpose and to ensure it is consistent with the revised provisions of G02-01-03, *Interactions with Transgender, Intersex, and Gender Nonconforming (TIGN) Individuals*. As worded, this section is vague for the public and for officers. |
| 18 | II.G. Policy | Consider whether Section II.G. would be better placed in the policy governing the investigation phase of the search warrant or in a policy related to investigation. |
| 19 | II.I Policy | Consider revising this section as follows: "follow procedures outlined in this directive for the investigation, development, preparation, approval, and documentation of digital and electronic search warrants." It would be helpful to clarify (1) why the Bureau of Patrol is not included in Section II.I. and (2) if the requirements for the Bureaus of Detectives and Counterterrorism are different from those for the Bureau of Patrol, explain why only Detectives and Counterterrorism are addressed. |
| 20 | II.J. Policy | Consider using a term other than "raid," such as "search warrant service," to describe these search warrant procedures. We do not believe that "raid" sends an appropriate message to officers conducting the search warrant or to the public. Consider providing examples of wrong search warrant situations so that officers better recognize when they have the wrong address or person. Examples could include a person moving, or never residing at that address.<br><br>Consider also revising this section as follows: "Department members will immediately notify a supervisor if they become aware of any wrong search warrant situation . . . ."<br><br>Consider explicitly stating that II.J.2. includes those who approved and supervised the search warrant investigation, application, and service of the search warrant. |

## Search Warrants – Special Order S04-19

| # | Section | Comments |
|---|---------|----------|
| 21 | II.K. Policy | Consistent with comment 21, consider using a term other than "raid." It would be helpful to clarify when the after action review will be conducted (i.e. before end of a shift or within 24 hours), who will conduct it, and whether or not the after action review will be tied to discipline. We suggest conducting an after action review for all search warrants served.<br><br>For transparency, we also suggest that the annual evaluation of after action reviews should be included in the CPD 's annual report. |
| 22 | III.A. Uniform Requirements | Officers knocking and announcing should also be attired in the uniform of the day. Consider clarifying whether only the first two officers are so uniformed or the entire team. It would be helpful to clarify whether Section III.A. contemplates "civilian dress" officers wearing only a ballistic vest who may have to break from the "stack" to search rooms, closets, or other levels. *See* Comment 6. |
| 23 | III.B. Note Uniform Requirements | Consider including the information about Departmental Specialized Personal Garments in this policy. The CPD should explain "uniform of the day" in this policy to help officers and the public have a better understanding. The CPD should prohibit officers from wearing head coverings to avoid causing confusion regarding whether officers are actually police.. |
| 24 | III.C. Uniform Requirements | We have serious concerns with this section. Covert entry can cause confusion. There have been many shootouts across the country due to "policy opt outs" such as this. Uniformed Officers should always lead every entry team. The CPD should clarify whether "covert" means any officer not in the uniform of the day, or a SWAT member. |
| 25 | III.D. Uniform Requirements | We are very concerned about Section III.D. Officers not wearing uniforms while conducting a search warrant sows dangerous confusion. *See* Comment 6. |
| 26 | III.D. Uniform Requirements | It would be helpful to clarify to whom in the Office of the Superintendent this exemption would apply, and what is defined as an "appropriate exempt rank." |
| 27 | III.E. Uniform Requirements | We recommend requiring specialized training for personnel authorized to wear specialized personal garments. |

## Search Warrants – Special Order S04-19

| # | Section | Comments |
|---|---------|----------|
| 28 | III.F. Uniform Requirements | We have significant concerns about Section III.F. and the corresponding Note. We would appreciate the opportunity to discuss this Section, along with Sections III.B through E. |
| 29 | IV. Search Warrant Classification | Consider re-ordering this section. As currently written, the reader may believe that John Doe Search Warrants or Unregistered Confidential Informant Search Warrants happen more frequently than they actually do. The data recommendations in Comment 5 will help identify and clarity trends, as well as inform the CPD about whether additional changes to policy are warranted. |
| 30 | IV.A.1. John Doe Search Warrants | We recommend specifying that the John Doe should include information sufficient for the reader and an approving CPD member to have confidence that the source is credible. Consider clarifying whether the applying officer or supervisor should provide command staff with additional information verbally to allow command staff confidence in the search warrant application. |
| 31 | IV.A.2. John Doe Search Warrants | Consider whether the information about John Doe should be presented to the command staff member before or after it is presented to a judge. Along these lines, it would be helpful to know whether search warrant approval from the judge overrides command approvals, and whether command staff denial of a search warrant can override a judge's approval. |
| 32 | IV.A.3. John Doe Search Warrants | It would be helpful to clarify what level of detail is required for the review by the bureau chief. As written, the policy does not indicate any specific information that would be necessary for this review. Providing detail about specific information will enhance accountability. |
| 33 | IV.B.1.d Unregistered Confidential Informant | It would be helpful to clarify how CPD members will verify whether informants are registered with the Bureau of Counterterrorism without compromising the informants. |
| 34 | IV.B.2. Unregistered Confidential Informant (UCI) Files | We would like to discuss this section. We have questions about the Unregistered Confidential Informant files, and where and how they are kept. It may not be necessary to provide detailed information in this policy, but additional clarity is needed. |

# Search Warrants – Special Order S04-19

| # | Section | Comments |
|---|---------|----------|
| 35 | IV.B.4. Unregistered Confidential Informant | Consider revising this section as follows: "Before approving and signing the Complaint for Search Warrant (CCMC-1-219) and the Search Warrant (CCMC-1-220), the approving supervisor will ensure that the Department member's UCI File is reviewed and contains all pertinent information listed in item IV-B-1 through 2." |
| 36 | IV.C.1.b. Registered Confidential Informants (RCI) | It would be helpful to clarify how the Registered Confidential Informants are determined to be reliable. Consider specifying the specific policies and procedures referred to in Section IV.C.1.b. |
| 37 | IV.C.2. Registered Confidential Informant (RCI) Files | Section IV.C.2. Should refer to the specific "standardized procedure" which "has been established to document use of the RCI." The referenced policy should not be a secret as it only provides information on how the RCI is made reliable and how records are kept.<br><br>It would be helpful to clarify whether this is the same RCI repository used by Internal Affairs and Counterterrorism Bureaus.<br><br>Consider providing information about how the records are kept without providing information about the Confidential Informants. |
| 38 | IV.D.1.a. "No-Knock" Search Warrant | It would be helpful to clarify how the Bureau Chiefs will determine what is "dangerous to the life or safety of the officers" and the specific criteria by which that determination will be made. |
| 39 | IV.D.2. "No-Knock" Search Warrant | It would be helpful to clarify whether the CPD would classify an officer yelling "police" before using a ram as a "knock-and-announce" or as a "no-knock" search warrant. *See* Comment 1. |
| 40 | IV.D.4. "No-Knock" Search Warrant | Consider moving Section IV.D.4. to Section IV.D.1. |
| 41 | IV. Search Warrant Classifications | It would be helpful to clarify the service process for "Knock-and-Announce" search warrants, which are not currently addressed in this section. |
| 42 | V.C. Boundary Considerations | Consider revising this section as follows: "Before serving the search warrant, members assigned to the Bureau of Patrol serving a search warrant outside of their district or area of assignment will seek approval and written acknowledgements from their area deputy chief, |

## Search Warrants – Special Order S04-19

| # | Section | Comments |
|---|---------|----------|
|   |         | through their chain of command, and from the commander and area deputy chief of the district of service. The search warrant team supervisor will ensure the following notifications and acknowledgements are made before serving the search warrant:" |
| 43 | V.D.1. Boundary Considerations | It would be helpful to know whether V.D.1. discusses only a search team or also a search warrant service team. Typically, the jurisdiction where the search is conducted will handle the actual search warrant entry according to their own department policies. We suggest strengthening the wording to include the actual entry of the warrant service team. |
| 44 | V.D. NOTE Boundary Considerations | Consider clarifying whether the CPD intends to take the lead on search warrant service outside the CPD's jurisdiction. If so, consider specifying whether other jurisdictions have approved this and whether the CPD will obtain or require written authorization from other jurisdictions to conduct the entry and search. Also consider specifying accountability mechanisms for these entries and searches. |
| 45 | VI.A. Search Warrant Development | Consider revising this section as follows: "Information used in the investigation and development of any search warrant will be verified and corroborated by an independent investigation before submission and approval of the search warrant." |
| 46 | VI.C.4. Search Warrant Development | Consider including actual photos of the search warrant location—including the front and rear of the structure and any ingress or egress points—to eliminate confusion of the location of warrant service. Consider including information about any other current investigations or recent search warrants at the target location. |
| 47 | VI.C.4.d. Search Warrant Development | Consider using "subject of the warrant or investigation" rather than "target person." |
| 48 | VI.C.5. Search Warrant Development | Consider using "subject of the warrant" rather than "target person." |

## Search Warrants – Special Order S04-19

| # | Section | Comments |
|---|---------|----------|
| 49 | VII.C. Search Warrant Complaint Preparation | Consider revising this section as follows: "present both the Complaint for Search Warrant (CCMC-1-219) and Search Warrant (CCMC-1-220) to the member's immediate supervisor who will review both forms and ensure both forms are presented to the designated approving supervisor for review and written or signed approval. The submitting member's exempt-level commanding officer will review the Complaint for Search Warrant (CCMC-1-219) and Search Warrant (CCMC-1-220), through their immediate chain of command, before being submitted to the appropriate sworn Department member of the rank of deputy chief or above for written or signed approval." |
| 50 | VII.C. Search Warrant Complaint Preparation | Consider whether these reviews and approvals should be face-to-face with the person applying for search warrant to enable the applicant to address any follow up questions or concerns. |
| 51 | VIII.A. Search Warrant Review and Approval | Consider revising this section as follows: "All department search warrants will require written or signed approval by a sworn Department member the rank of deputy chief or above, including all search warrants for real property or locations where occupants could be present with the following exceptions:" |
| 52 | VIII.D.3. Search Warrant Review and Approval | Consider expanding this section's requirement of signature or written acknowledgement of the search warrant throughout the entire policy. Written or signed approvals should be required at every step. |
| 53 | IX.A.1. Search Warrant Service | Consider revising this section as follows: "conduct a planning session with the search team members assigned to participate in serving the warrant, which will include ensuring that participating Department members are thoroughly familiar with:" |
| 54 | IX.A.1. Search Warrant Service | Consider requiring surveillance on the search warrant service location while the search warrant briefing is ongoing. This should occur well before the service of the search warrant to provide tactical and safety information to the team. If stationary surveillance is not possible, consider drive by surveillance with several types of vehicles or foot traffic. |
| 55 | IX.A.1.b. Search Warrant Service | Consider including more detail, including photos of the front and back of the location, points of ingress and egress, aerial photos of |

## Search Warrants – Special Order S04-19

| # | Section | Comments |
|---|---------|----------|
|  |  | the block, and the floorplan of the structure if known. As drafted, the CPD risks continuing to conduct searches of incorrect locations if there are no specifics about the location included in that meeting. |
| 56 | IX.A.1.d. Search Warrant Service | Consider revising this section as follows: "each CPD member's identity and assigned duties;" |
| 57 | IX.A.2. Search Warrant Service | Consider making Section IX.A.2. part of the planning session in Section IX.A.1 to ensure it is clear that the determination about uniform exceptions is made before the service of the search warrant. *Compare* Comment 7. |
| 58 | IX.A.3. Search Warrant Service | It would be helpful to clarify whether the notice to SWAT team supervisor in this section is necessary if the search warrant is to be conducted by SWAT. Additionally, we suggest that if a covert approach is used, it would be best to use SWAT rather than undercover officers in ballistic vests and blue jeans. |
| 59 | IX.A.3. Search Warrant Service | Consider clarifying the role and responsibilities of SWAT when they are engaged in service of a search warrant. For instance, it would be helpful to clarify whether the SWAT supervisor is in charge of decisions regarding tactical entry and the premises until it is secured and whether SWAT officers engage in the search or only secure persons and possible weapons in close proximity. Consider clarifying whether the SWAT supervisor or district supervisor will be in charge and any points where there is a transition from one to the other. |
| 60 | IX.A.3. NOTE Search Warrant Service | It would be helpful to clarify why this Note allows for a sergeant to approve, whereas other provisions in this policy call for approval by a commanding officer, Department Chief, or Bureau Chief. |
| 61 | IX.A.7. Search Warrant Service | Consider requiring written acknowledgement of requests for presence of a canine team and signed approval of the request. |
| 62 | IX.A.7. Search Warrant Service | It would be helpful to clarify whether a canine team will be used before entry or only after. As drafted, this provision is unclear. |
|  |  | In the Note, consider revising to require justification for use of a canine team, rather than justification for not using canine team. It would be helpful to clarify how often canine teams are actually used during search warrant service. |

## Search Warrants – Special Order S04-19

| # | Section | Comments |
|---|---------|----------|
| 63 | IX.C. Search Warrant Service | Consider clarifying that the search team supervisor will acknowledge in writing that he or she has reviewed each item in Section IX.C. |
| 64 | IX.C. Search Warrant Service | Consider revising this section as follows: "Before leaving the search warrant briefing location, the search team supervisor will ensure that:" |
| 65 | IX.C.2. Search Warrant Service | We suggest clarifying when the Body Worn Cameras should be activated. As written, the policy does not address activation, and only states that officers will be equipped with body worn cameras. |
| 66 | IX.C.2. and 7. Search Warrant Service | While we urge the CPD to consider requiring all participating members to be uniformed, *see* Comment 6, the policy should explain whether civilian dress participating members are required to wear body worn cameras to participate. We suggest revising to clarify that all participating members will wear body worn cameras as contemplated by Section IX.C.2. |
| 67 | IX.C.9. Search Warrant Service | Consider requiring every entry team member to be equipped with a radio. This is a safety risk. With only one member of the search team having a radio, if that officer goes down, other team members will be unable to efficiently request assistance. |
| 68 | IX.D.1.b. Search Warrant Service | Consider identifying the specific situation in which it would not be applicable for the team to knock and announce. |
| 69 | IX.D.1.e. Search Warrant Service | Consider requiring the search team to read the Search Warrant out loud to the named individual or the residents of the location or, if there are no residents present, reading the Search Warrant out loud for body worn camera or audio recording. |
| 70 | IX.D.2. Search Warrant Service | Consider moving the information in Section IX.D.2 to the opening paragraphs of this policy. |
| 71 | IX.E.1.d. Search Warrant Service | Consider providing trauma counselors for children present. It would be helpful to clarify what kinds of care are contemplated for bystanders. |

# Search Warrants – Special Order S04-19

| # | Section | Comments |
|---|---------|----------|
| 72 | IX.E.5 Search Warrant Service | It would be helpful to clarify whether the canine team will ever be utilized while children and other inhabitants are still within the structure. |
| 73 | IX.E.6.b.2 NOTE Search Warrant Service | It would be helpful to clarify the process for "locking the scene down" to secure additional search warrants for locations or items of interest that were not included in the original search warrant. |
| 74 | IX.E.6.b.4. Search Warrant Service | Consider requiring the designated member to photograph any damage to the structure or other property in the structure. |
| 75 | IX.E.8.b. Search Warrant Service | Consider requiring the team supervisor and the witness officer who requested the "Acknowledged By" to sign or initial the form as well. |
| 76 | IX.E.9. Search Warrant Service | It would be helpful to clearly define what constitutes a "reasonable manner" of securing the entry point. A lack of reasonable security could lead to lost or stolen items. Consider requiring a team member to have a hammer and nails or screw gun and screws to secure the location. |
| 76 | IX.F.1.a. NOTE Search Warrant Service | Consider requiring a copy of the search warrant to be attached to the report. |
| 77 | IX.F.1.d. Search Warrant Service | Consider revising as follows: "request that the search team supervisor review and acknowledge in writing the record in CLEAR and the completed Sketch Page." |
| 77 | IX.F.2.d. Search Warrant Service | It would be helpful to clarify whether this is the same after action report described earlier in this Special Order. Consider specifying when the after action report will be completed, for instance within 24 hours or before the end of the tour of duty. |
| 78 | Glossary Terms | We recommend that the CPD replace the word "citizen" with "community member," which is more inclusive and accurate. |