# Exhibit 4

| Chicago Police Department | **Special Order   S04-19** |
| --- | --- |
| **SEARCH WARRANTS** | |

| **ISSUE DATE:** | 14 May 2021 | **EFFECTIVE DATE:** | 28 May 2021 |
| --- | --- | --- | --- |
| **RESCINDS:** | 03 January 2020 Version | | |
| **INDEX CATEGORY:** | Preliminary Investigations | | |

## I.   PURPOSE

This directive:

A.   *outlines the search warrant classifications, including John Doe, Unregistered Confidential Informant, Registered Confidential Informant, and No-Knock Search Warrants.*

B.   *outlines the responsibilities and accountability for search warrant investigations and development.*

C.   outlines procedures for preparing Complaints for Search Warrants (CCMC-1-219) and Search Warrants (CCMC-1-220).

D.   continues the procedures for obtaining, *serving*, returning, and retaining Complaints for Search Warrants (CCMC-1-219) and Search Warrants (CCMC-1-220).

E.   *details the requirements for* the review of Complaints for Search Warrants (CCMC-1-219) and Search Warrants (CCMC-1-219) *by the submitting member's chain of command and the approval by the designated Department supervisor before these documents are presented to an assistant state's attorney for review and submitted to a judge for approval.*

F.   *continues* the use of the City Claims Notification form ([CPD-11.719](CPD-11.719)).

**NOTE:**   *The Department has determined extraordinary circumstances demand an immediate revision or clarification to this policy. The Department will continue to work to review and modify the procedures and responsibilities established by this directive, as necessary, to ensure the appropriate development, approval, service, supervision, and accountability for the use of search warrants. While this review is being conducted and until a revised directive is published, the procedures established by this directive will remain in effect.*

## II.   POLICY

A.   *All Department members will treat all persons with the courtesy and dignity which is inherently due every person and will act, speak, and conduct themselves in a courteous, respectful, and professional manner. All Department members will act in accordance with the Constitution of the United States of America, including the Fourth Amendment, and will comply with the law and Department policy.*

B.   *All Department members participating in serving a search warrant will exercise caution and use tactics that protect and respect the rights of all individuals who are involved.*

1.   *Consistent with the Department directive titled "***De-escalation, Response to Resistance, and Use of Force***." Department members are required to use de-escalation techniques to prevent or reduce the need for force, unless doing so would place a person or a Department member in immediate risk of harm, or de-escalation techniques would be clearly ineffective under the circumstances at the time.*

2.   *Department members are responsible for the safety and security of persons in their custody. Department members are reminded that a subject will be searched and restrained in such a manner as to prevent escape and to provide for the safety of the public, the person in custody, and the Department members involved. Consistent with the above requirement,*

*Department members will assess the necessity to apply restraining devices (handcuffs) to subjects during the service of a search warrant.*

    3.    *If forcible entry is required, use only the amount necessary to gain entry, making every effort to leave the premise in the same condition as originally found.*

C.    *All Department search warrants will require approval by a sworn Department member the rank of deputy chief or above, including all search warrants for real property or locations where occupants could be present, with the following exceptions:*

    1.    *All search warrants classified as John Doe or No-Knock warrants will require personal review and approval by the submitting Department member's bureau chief or above, and not a designee.*

        **REMINDER:**    *The bureau chiefs authorized to review and approve John Doe or No-Knock search warrants are the chiefs of the Bureau of Patrol, Bureau of Detectives, Bureau of Counterterrorism, Bureau of Crime Control Strategies, and Bureau of Internal Affairs.*

    2.    *All search warrants that do not involve real property or locations where occupants could be present, including digital, electronic, or solely evidentiary (e.g., buccal swab) search warrants are required to be approved by a sworn Department member the rank of lieutenant or above.*

        **NOTE:**    *Department members will refer to the Department directive titled "***Electronic and Evidentiary Search Warrants***" for the full procedures on the investigation, development, approval, and service of digital, electronic, or solely evidentiary (e.g., buccal swab) search warrants that do not involve real property or locations where occupants could be present.*

D.    *A sworn Department member of the rank of lieutenant or above will*:

    1.    *be present on-scene and in overall command while serving the search warrant;*

    2.    *remain on-scene for the full duration of the search warrant being served, including the conclusion of all searches; and*

    3.    *review all pre-service and post-service reporting requirements.*

E.    A sworn member of the **rank of sergeant or above** will perform the functions of the search team supervisor and will:

    1.    oversee all *pre-service* planning requirements;

    2.    be present and remain on the scene *for the full duration of the search warrant being served*; and

    3.    oversee all *post-service* reporting requirements.

F.    A sworn member assigned to the search team and designated by the search team supervisor will perform the functions of the evidence officer for every search warrant *served*.

G.    *A sworn female Department member will be present during the service of the search warrant and available for any search warrant assignment, including for occupant security and searches*.

H.    Department members are prohibited from using their personal funds for the purchase of controlled substances or other items of contraband.

I.    All search warrants obtained by Department members, including those that did not result in the seizure of property or are returned *unserved*, will be documented by the creation and approval of a Search Warrant Data record in the CLEAR system.

J.    *Department members will refer to the Department directive titled "***Electronic and Evidentiary Search Warrants***" for the procedures on the investigation, development, approval, and service of digital, electronic, or solely evidentiary (e.g., buccal swab) search warrants that do not involve real*

*property or locations where occupants could be present. The approval and service of digital and electronic search warrants will be governed by any additional requirements established and directed by their respective bureau chiefs, the State's Attorney Office, and the approving judge.*

K. *Consistent with the Department directive titled "***Complaint and Disciplinary Procedures,***" Department members will notify a supervisor if they become aware of any wrong raid (as defined below) or any alleged, suspected, or apparent violations of the Rules and Regulations of the Chicago Police Department, directives, or orders by any sworn or civilian Department members while developing, preparing, or serving a search warrant, including but not limited to submitting false reports while developing, preparing, or serving a search warrant.*

    1. *For the purposes of search warrants, a wrong raid is:*

        a. *a search warrant that is served at a location that is different than the location listed on the search warrant; or*

        b. *an incident where a Department member serving a search warrant encounters, identifies, or should reasonably have become aware of circumstances or facts that are inconsistent with the factual basis for the probable cause documented and used to obtain the search warrant.*

    2. *When observing, being notified of, or becoming aware of alleged, suspected, or apparent violations of the Rules and Regulations of the Chicago Police Department, directives, or orders by any sworn or civilian Department member, Department supervisors will generate a Log Number in accordance with the Department directive titled "***Complaint and Disciplinary Procedures,***" including identifying the accused members and the alleged, suspected, or apparent violations of the Rules and Regulations of the Chicago Police Department, directives, or orders by any sworn or civilian member of the Chicago Police Department.*

L. *The Department will conduct a critical incident after-action review for search warrants identified as wrong raids or in other circumstances identified by the Superintendent.*

    1. *The critical incident after-action review for search warrants will include, but is not limited to, a review of the search warrant documentation, including the unit Search Warrant File and relevant recorded evidence (e.g., body worn camera recordings).*

    2. *The results of each after action review will be presented to the Superintendent for a personal, secondary review and determination of any required actions, including any:*

        a. *modifications to Department policies, tactics, equipment, or training.*

        b. *communication to Department supervisors, including the reviewing or approving command staff members, the on-scene supervisors, or the search team supervisor.*

    3. *The Superintendent will arrange for an annual evaluation of all the reviews conducted as outlined in Item II-L.*

## III. UNIFORM REQUIREMENTS

A. For each search warrant *being served*, two entry team officers will be attired in the prescribed seasonal field uniform of the day.

B. For the purposes of public and individual officer safety, all civilian-dress members of the Chicago Police Department engaged in *serving* a search warrant will make themselves identifiable by use of specialized personal garments (i.e., Specialized Cap, Warrant Team Vest), in accordance with the provisions of this directive.

    **NOTE:** Descriptions of and authorizations for specialized personal garments servare contained in the Department directive titled "**Departmental Specialized Personal Garments**." All districts and designated units have been supplied an inventory of Warrant Team Vests to be made available for *serving* search warrants.

C. In unusual circumstances, the search team supervisor *may request the authorization for an exception to uniform requirements from their exempt-rank unit commanding officer. The search team supervisor will* be prepared to justify *such a request for* an exception (e.g., approach path is carefully guarded, necessitating covert entry onto the premises; search team members must remain inconspicuous at the location and *delay serving* the search warrant until the arrival of a particular *subject of the search warrant*).

D. Department members assigned to the Office of the Superintendent, the Bureau of Detectives, and the *Bureau of Counterterrorism* may be exempt from the uniform requirements with prior approval from the appropriate exempt-rank Department member.

E. The *Equipment and Supply Section* will maintain a supply of specialized personal garments for distribution to designated units that have personnel authorized to wear specialized personal garments.

F. Department members authorized to wear specialized personal garments and attired in civilian dress will wear the required identifying garments prior to and while *serving* a search warrant.

**NOTE:** Specific units, designated by the appropriate bureau chief or exempt-rank Department member, will be authorized to wear specialized personal garments *while serving* search warrants or other Department-related duties.

## IV. SEARCH WARRANT CLASSIFICATIONS

A. John Doe Search Warrants

1. An individual will be classified as a John Doe for the purpose of obtaining a search warrant when:

   a. the individual provides specific information concerning a criminal activity to a specific Department member or team;

   b. the individual wishes to remain anonymous throughout the course of obtaining the search warrant;

   c. the specific information has been verified and corroborated by an independent investigation by the Department member, *consistent with the search warrant development procedures outlined in Item VI of this directive*; and

   d. has not received monetary or other compensation for cooperation.

2. Department members utilizing an individual classified as a John Doe for the purpose of obtaining a search warrant will present this individual to the judge approving the Search Warrant (CCMC-1-220).

3. *The Department will not utilize search warrants classified as John Doe search warrants* **unless** *the search warrant is personally reviewed and approved by the submitting Department member's bureau chief and not a designee.*

B. Unregistered Confidential *Informant*

1. An individual will be classified as an Unregistered Confidential *Informant* (UCI) for the purpose of obtaining a search warrant when the individual:

   a. provides specific information concerning a criminal activity to a specific Department member or team;

   b. has given repeated, documented, and verified information concerning criminal activity to a specific Department member or team;

   c. **has not received** monetary or other compensation for cooperation; and

   d. **is not registered** with the *Bureau of Counterterrorism*.

2. Unregistered Confidential *Informant* (UCI) Files

    a. To provide protection to Department members and the Unregistered Confidential *Informant* (UCI), a standardized procedure has been established to document the use of the UCI in order to protect the anonymity of the UCI. Department members utilizing a UCI will maintain a UCI File that:

        (1) documents the identity and reliability of the UCI;

        (2) establishes the credibility of the UCI in support of search warrant activities; and

        (3) collects and retains pertinent information of the UCI to maintain the integrity of the system.

    b. Department members utilizing a UCI will maintain a UCI File that will include a copy of all:

        (1) associated reports from each instance the UCI provides information that leads to an arrest or recovery of evidence;

        (2) Illinois State Police Crime Lab Reports from each instance a lab report is received for evidence that was recovered based on information received from a UCI; and

        (3) search warrants obtained based on information received from a UCI.

3. Department members utilizing a UCI for the purposes of obtaining search warrants will:

    a. *conduct an independent investigation to verify and corroborate the specific information that has been provided to the member by the UCI, consistent with the search warrant development procedures outlined in Item VI of this directive*; and

    b. upon submission of the Search Warrant (CCMC-1-220), make the UCI File available for review to the *member's chain of command for the review and approval of the search warrant*.

4. *Before approving the Complaint for Search Warrant (CCMC-1-219) and the Search Warrant (CCMC-1-220), the approving supervisor* will ensure that the Department member's UCI File is reviewed and contains all pertinent information listed in item IV-B-1 through 2.

C. Registered Confidential *Informants* (RCI)

1. *A cooperating individual who provides intelligence and information concerning criminal activity to a specific Department member that is eligible to receive compensation consistent with Department policy and bureau-level procedures, and*:

    a. *voluntarily provides intelligence and information concerning criminal activity to a specific Department member or team*;

    b. *is eligible to receive monetary compensation for providing verified and documented intelligence and information to a specific Department member or team consistent with this directive and the bureau's policy and procedures*; and

    c. is registered as an RCI through the *Bureau of Counterterrorism*.

    **NOTE:** *Bureau-of-Counterterrorism-related decentralized unit personnel operating under the Bureau of Patrol are the only non-Bureau-of-Counterterrorism members authorized to utilize the Bureau of Counterterrorism Registered Confidential Informant System*.

2. Registered Confidential *Informant* (RCI) Files

To provide protection to both Department members and the Registered Confidential *Informant* (RCI), a standardized procedure has been established to document the use of the

RCI. To protect the anonymity of RCIs, a secured Department repository is maintained by the *Bureau of Counterterrorism* and contains the Department's Registered Confidential *Informant* Files. RCI Files are created to:

a. document the identity and reliability of the RCI;

b. establish the credibility of the RCI in support of search warrant activities;

c. document an individual's cooperation in support of requests for letters of consideration;

d. record the monetary payments and dispensing of "1505" and contingency fund monies; and

e. collect and retain pertinent information of the RCI to maintain the integrity of the system.

**NOTE:** The Bureau of Internal Affairs will maintain their own Registered Confidential *Informant* (RCI) Files and repository separate from the *Bureau of Counterterrorism* for confidentiality purposes.

3. Department members utilizing an RCI for the purposes of obtaining a search warrant will:

a. *conduct an independent investigation to verify and corroborate the specific information that has been provided to the member by the RCI, consistent with the search warrant development procedures outlined in Item VI of this directive*; and

b. submit a copy of any required reports pursuant to procedures established by the *Bureau of Counterterrorism*.

4. The Chief, *Bureau of Counterterrorism*, will ensure Registered Confidential *Informants* (RCI) are registered and the *Bureau of Counterterrorism* Registered Confidential *Informant* File System is maintained and secured in accordance with established policy and procedures set forth by *Bureau of Counterterrorism* directives.

D. *"No-Knock" Search Warrant*

1. *The Department will not utilize search warrants classified as "no-knock" search warrants **unless***:

a. *there is a reasonable suspicion that knocking and announcing would be dangerous to the life or safety of the officers serving the warrant or another person; **AND***

b. *the search warrant is personally reviewed and approved by the submitting Department member's bureau chief or above, and not a designee.*

2. *A judge may authorize a "no-knock" search warrant when there is a reasonable suspicion that knocking and announcing would be dangerous to the life or safety of the officers serving the warrant or another person. A "no-knock" search warrant allows law enforcement to enter a property without immediate prior notification to the residents, such as by knocking or ringing a doorbell pursuant to 725 ILCS 55/108-8.*

3. *Prior to serving a "no-knock" search warrant, the search team supervisor will ensure*:

a. *that each participating member is assigned a functioning body worn camera (BWC) and is following policies and procedures in accordance with the Department directive titled "**Body Worn Cameras**"*; and

b. *that a Special Weapons and Tactics (SWAT) supervisor is notified that a "no-knock" search warrant has been issued pursuant to 725 ILCS 55/108-8 and request the SWAT Team service of the "no-knock" search warrant.*

NOTE:  *A SWAT team supervisor can be contacted at all times via the 24-hour SWAT desk, PAX 4344.*

4. **Only the SWAT Team will serve "no-knock" search warrants.**

## V.   BOUNDARY CONSIDERATIONS

A. Whenever a Department member wishes to obtain a search warrant to be *served* outside of Cook County **and** the search warrant is related to a criminal offense which occurred outside the jurisdiction of Cook County, the member will follow the procedures required by the Office of the State's Attorney of the affected jurisdiction *in regards to preparing and serving* the search warrant, processing of evidence, and prosecution.

NOTE:  Department members obtaining a search warrant according to the procedures outlined above **are still required** to follow the provisions of this directive regarding Department supervisory review *and approval* and *the procedures for documenting and serving* search warrants.

B. The *Office of the Cook County State's Attorney* will be contacted, according to the procedures outlined in this directive, when Department members seek to obtain a search warrant in the following circumstances:

1. The location of the search warrant is within the City of Chicago.

2. The associated criminal act occurred within the City of Chicago, and a search warrant is sought for a location, either:

a. outside the corporate limits of the City of Chicago; or

b. outside the geographical boundaries of Cook County.

NOTE:  Whenever possible, Department members who intend to *serve* a search warrant outside the City of Chicago will notify the local jurisdiction to seek the assistance of local law enforcement personnel.

C. *Before serving the search warrant,* members assigned to the *Bureau of Patrol serving* a search warrant outside of their district *or area* of assignment will seek approval from their *area deputy chief, through their chain of command, and from the commander and area deputy chief* of the district of *service. The search team supervisor will ensure the following notification are made prior to serving the search warrant*:

1. *The Office of Emergency Management and Communications (OEMC) dispatcher;*

2. The district station supervisor of the district of occurrence;

3. The designated unit supervisor/district station supervisor of the search team; and

4. Crime Prevention and Information Center (CPIC).

D. Department members *serving* a search warrant outside the corporate limits of the City of Chicago will notify:

1. the designated unit supervisor/district station supervisor of the search team; and

2. Crime Prevention and Information Center (CPIC).

**NOTE:** Whenever possible, Department members who intend to *serve* a search warrant outside the City of Chicago will notify the local jurisdiction to seek the assistance of local law enforcement personnel.

## VI. SEARCH WARRANT DEVELOPMENT

A. *Information used in the development of any search warrant will be verified and corroborated by an independent investigation prior to submission and approval of the search warrant.*

B. *Prior to preparing a Complaint for Search Warrant (CCMC-1-219) and Search Warrant (CCMC-1-220), it is the affiant Department member's responsibility to take all the proper investigative steps to provide for the integrity of the search warrant and ensure that the information is properly verified and corroborated. This preparation will include a review of the* **Rules and Regulations of the Chicago Police Department**, *state and constitutional law, and the appropriate research, investigation, and operational planning.*

C. *The affiant Department member preparing a Complaint for Search Warrant (CCMC-1-219) and Search Warrant (CCMC-1-220) will:*

1. *ensure all the information is truthful, accurate, and current to the best of the member's ability.*

2. *conduct a thorough debriefing of any cooperating informant to establish individual credibility and verify the information provided.*

3. *verify as much information as possible regarding the person who is the subject of the search warrant including, but not limited to:*

   a. *name, alias, nickname, birth date, and physical description of the person who is the subject of the search warrant;*

   b. *home address, relationship to the search warrant location, and other locations; and*

   c. *in-custody status or location, such as Cook County Jail, Cook County Electronic Monitoring, and Illinois Department of Corrections (IDOC).*

4. *verify as much information as possible regarding the search warrant location including, but not limited to:*

   a. *physical location, description, complete address, apartment number, and distinguishing features;*

   b. *additional occupants of the location, paying special attention to potentially vulnerable persons (e.g., children, elderly, persons with disabilities, people with limited English proficiency);*

   c. *potential security features, including fortified locations, availability of weapons, and animals; and*

   d. *when the person who is the subject of the search warrant is most likely to be at the location.*

5. *use the Department's investigative tools to verify the validity of the person who is the subject of the search warrant and the search warrant location.*

D. *The preparing Department member will document the investigation to corroborate the content of the Complaint for Search Warrant (CCMC-1-219) and Search Warrant (CCMC-1-220) and will verify the validity of the search warrant before presenting that warrant and affidavit to their chain of command for review and approval and to the State's Attorney's Office (SAO) for review.*

## VII.    SEARCH WARRANT COMPLAINT PREPARATION

A Department member preparing a Complaint for Search Warrant (CCMC-1-219) and Search Warrant (CCMC-1-220) will:

A.    prepare one original Complaint for Search Warrant (CCMC-1-219) and one original Search Warrant (CCMC-1-220);

B.    ensure that both the Complaint for Search Warrant (CCMC-1-219) and the Search Warrant (CCMC-1-220) accurately and specifically describe the *person who is the subject of the search warrant, the location* to be searched, and articles to be seized; and

C.    present both the Complaint for Search Warrant (CCMC-1-219) and Search Warrant (CCMC-1-220) to *the member's immediate supervisor who will review both forms and ensure both forms are presented to the designated approving supervisor for review and approval. The Complaint for Search Warrant (CCMC-1-219) and Search Warrant (CCMC-1-220) will be reviewed by the submitting member's exempt-level commanding officer, through their immediate chain of command, before being submitted to the appropriate sworn Department member the rank of deputy chief or above for approval.*

## VIII.    SEARCH WARRANT REVIEW AND APPROVAL

A.    *All Department search warrants will require approval by a sworn Department member the rank of deputy chief or above, including all search warrants for real property or locations where occupants could be present, with the following exceptions:*

1.    *All search warrants classified as John Doe or No-Knock warrants will require personal review and approval by the submitting Department member's bureau chief or above, and not a designee.*

      **REMINDER:**    *The bureau chiefs authorized to review and approve John Doe or No-Knock search warrants are the chiefs of the Bureau of Patrol, Bureau of Detectives, Bureau of Counterterrorism, Bureau of Crime Control Strategies, and Bureau of Internal Affairs.*

2.    *All search warrants that do not involve real property or locations where occupants could be present, including digital, electronic, or solely evidentiary (e.g., buccal swab) search warrants are required to be approved by a sworn Department member the rank of lieutenant or above.*

      **NOTE:**    *Department members will refer to the Department directive titled "**Electronic and Evidentiary Search Warrants**" for the procedures on the investigation, development, approval, and service of digital, electronic, or solely evidentiary (e.g., buccal swab) search warrants that do not involve real property or locations where occupants could be present.*

B.    *When reviewing any search warrant, Department supervisors will ensure the search warrant meets the statutory and constitutional requirements, achieves a legitimate law enforcement objective, and the information contained in the warrant has been verified and corroborated by an independent investigation by the Department member prior to approval.*

      **NOTE:**    *For search warrants utilizing an Unregistered Confidential Informants (UCI), the UCI File will be reviewed prior to approval.*

C.    *A sworn Department supervisor designated to review a search warrant will*:

1.    examine the Complaint for Search Warrant (CCMC-1-219) and the Search Warrant (CCMC-1-220) in light of statutory and constitutional requirements.

2. if the complaint is based upon information received from an Unregistered Confidential *Informant* or Registered Confidential *Informant, ensure*:

    a. the guidelines established in Item IV of this directive *are followed*; and

    b. the search warrant is substantiated by claims of prior use of the particular individual.

3. *if the complaint is based upon information received from a John Doe or is for a No-Knock search warrant, ensure the guidelines established in Item IV of this directive are followed.*

4. determine that:

    a. the facts alleged in the complaint are credible, reliable, *and clearly indicate that an investigation undertaken as a result of the information received validates an assertion of probable cause*.

    b. all facts stated in the complaint were properly obtained.

    c. an investigation has been thoroughly conducted *in the development of the search warrant to provide for the integrity of the search warrant and ensure that the information is properly verified and corroborated*. If additional investigation is determined to be necessary, the complaint will be returned to the Department member for appropriate action.

    d. the information concerning the place, places, person, or persons to be searched is specifically and accurately described in both the Complaint for Search Warrant (CCMC-1-219) and the Search Warrant (CCMC-1-220).

    e. the articles to be seized are described with particularity.

    f. the technical aspects of both the Complaint for Search Warrant (CCMC-1-219) and the Search Warrant (CCMC-1-220) are correct (e.g., dates, times, spelling of names).

    g. probable cause for the issuance of the search warrant is stated in the complaint. Probable cause is present when the facts and circumstances are sufficient to warrant a person of reasonable caution to believe that a crime has been committed and that evidence of the crime can be found at the premises to be searched.

5. interview the Department member requesting the search warrant for clarification and verification.

D. *The approving sworn Department supervisor as outlined in Item VIII-A of this directive will*:

1. *review the search warrant consistent with the guidelines outlined in Item VIII-C above*.

2. ensure the Chicago High Intensity Drug Trafficking Area (HIDTA) is notified and the search warrant information is submitted on a [Chicago HIDTA Deconfliction Submission](#) for event deconfliction following the established procedures.

3. upon review and approval, indicate approval of both the Complaint for Search Warrant (CCMC-1-219) and the Search Warrant (CCMC-1-220) by initialing with star number, *documenting the date and time of approval, and recording the HIDTA* deconfliction number in the lower-left margin of the face side of each original document and return the documents to the submitting Department member.

E. *After approval by the appropriate Department supervisor*, the member seeking to obtain a search warrant will:

1. *provide the search warrant for review to a* Cook County Assistant State's Attorney assigned to the *Felony Review Unit*, *Narcotics Prosecution Bureau*, or City of Chicago Attorney, as appropriate, using one of the following *review* procedures:

    a. Present the Complaint for Search Warrant (CCMC-1-219) and the Search Warrant (CCMC-1-220) in person for review:

        (1) between 0900 and 1700 hours on regular court days at the Cook County State's Attorney's Office.

            (a) **Narcotics-related** warrants will be processed by the Narcotics Prosecution Bureau.

            (b) **All others** will be processed by the Felony Review Unit.

        (2) between 1700 and 0900 hours or on court holidays to an assistant states attorney assigned to the Felony Review Unit.

        NOTE: The requesting officer should contact the Felony Review Unit prior to arriving at the Cook County State's Attorney's Office.

    b. for narcotics-related and gambling-related search warrants, submit the Complaint for Search Warrant (CCMC-1-219) and the Search Warrant (CCMC-1-220) in accordance with the Department directive titled "**Alternate Search Warrant Approval Method**."

    c. for search warrants alleging criminal acts in violation of the Municipal Code of Chicago which carry a penalty of incarceration upon conviction, in accordance with the Department directive titled "**Municipal Ordinance Search Warrant Approval Method**."

2. ensure that the *reviewing* attorney that examines the complaint signs and enters the warrant number on the original document of both the Complaint for Search Warrant (CCMC-1-219) and Search Warrant (CCMC-1-220).

F. *After review by a Cook County Assistant State's Attorney assigned to the Felony Review Unit, Narcotics Prosecution Bureau, or City of Chicago Attorney, the member seeking to obtain a search warrant will*:

1. present the Complaint for Search Warrant (CCMC-1-219) and Search Warrant (CCMC-1-220) to a judge for signature.

2. ensure the date and time of the judge's approval has been recorded by the court on both original documents.

3. print the name of the approving judge and the *reviewing* attorney in the lower-right margin on both of the originals and prepare one copy of the Complaint for Search Warrant (CCMC-1-219) and two copies of the Search Warrant (CCMC-1-220).

## IX. SEARCH WARRANT SERVICE

A. Prior to *serving* a search warrant, the search team supervisor will:

1. conduct a planning session with the search team members assigned to participate in *serving* the warrant, *which will include* ensuring that participating *Department* members are thoroughly familiar with:

    a. the purpose and scope of the search;

b. the location of the search, *including but not limited to the type of location, the points of entry or exit, and the floor plan, if available*;

c. *potential occupants of the location, paying special attention to potentially vulnerable persons (e.g., children, elderly, persons with disabilities, people with limited English proficiency)*;

    **NOTE:** *The search team supervisor will, when appropriate, request assistance from specialized resources, including:*

        (1) *Crisis Intervention Team (CIT) trained officers consistent with the Department directive titled "**Crisis Intervention Team (CIT) Program**," and*

        (2) *Department-authorized interpreters consistent with the Department directive titled "**Limited English Proficiency**."*

d. each *Department* member's identity and assigned duties;

e. the function and operation of the equipment to be used; and

f. known and potential hazards likely to affect *serving* the search warrant.

2. determine if exceptions to the uniform or equipment provisions of this directive are going to be requested. The search team supervisor must request **prior** approval from the designated unit supervisor.

3. *notify* a Special Weapons and Tactics (SWAT) team supervisor, *via the 24–hour SWAT desk, PAX 4344*, if:

a. the *person who is the subject of the search warrant* has a violent criminal history;

b. the *person who is the subject of the search warrant* has a history of violence against the police;

c. the *person who is the subject of the search warrant* is known to keep firearms readily available;

d. a large number of *persons are present who are the subjects of the search warrant*;

e. the location is fortified;

f. guard dogs or other violent dogs are present;

g. a No-Knock search warrant has been issued pursuant to [725 ILCS 55/108-8](); or

h. there are any other circumstances, as determined by the search team supervisor, that indicate a *notification* is appropriate.

    **NOTE:** *Consistent with the Department directive titled "**Special Weapons and Tactics (SWAT) Incidents**," the SWAT team will be available to assist in serving search warrants city-wide that have been deemed high risk in accordance with the Warrant Service Matrix after review by a SWAT team supervisor, the SWAT Assistant Commanding Officer, SWAT Commanding Officer, or their designees.*

4. ensure that a Search Warrant Data record is created in the CLEAR system, including the completion of the:

a. Personnel Assignments section.

b. justification for any exception to the uniform requirements as outlined in this directive. The exception and its justification will be noted in the Equipment Exception field.

5. review the Search Warrant Data-Part I form ([CPD-41.703]()), ensuring that all Items for Consideration have been considered.

6.  after a satisfactory review, submit the Search Warrant Data-Part I form (CPD-41.703) electronically to the designated unit supervisor the rank of lieutenant or above for approval.

7.  request the presence of a canine team when the focus of the warrant is narcotics and/or explosives.

    **NOTE:**  Search team supervisors not utilizing a canine team for these situations will justify in the appropriate case report why a canine team was not used (e.g., canine team not available, search involved a safety deposit box).

8.  designate a search-team member that has received Department training in the use of digital cameras and uploading images to photograph images consistent with *the photographing procedures outlined in* Item *IX-E-6* of this directive.

    **NOTE:**  Any unit that does not have access to a Department-issued digital camera or a Department member trained in its use will request the services of an evidence technician.

B.  The designated unit supervisor the rank of lieutenant or above reviewing the Search Warrant Data form (CPD-41.703) prior to *serving* a search warrant will:

1.  interview the search team supervisor and:

    a.  determine whether the Items for Consideration have been reviewed;

    b.  verify that all civilian dress search team members have the appropriate specialized personal garments (i.e., Specialized Cap, Warrant Team Vest);

    c.  ensure the search warrant information is submitted to Chicago HIDTA for event deconfliction in accordance with the Department directive titled "**Chicago HIDTA Deconfliction Submissions**"; and

    d.  review the proposed plan and indicate approval electronically via the CLEAR system *with the exception of a No-Knock search warrant*.

        **NOTE:**  *If the warrant is classified as a No-Knock search warrant, the search team supervisor will forward the warrant to their bureau chief via their chain of command for review of the proposed plan and indication of approval electronically via the CLEAR system.*

2.  ensure Warrant Team Vests are made available to all civilian dress members of the search team from the unit supply.

C.  Before entering the location described in the search warrant, the search team supervisor will ensure that:

1.  each participating member is wearing body armor *and has a Department-issued radio*;

2.  *each participating member is assigned a functioning body worn camera and is following policies and procedures in accordance with the Department directive titled "***Body Worn Cameras,****" including the activation to record law-enforcement-related activities.*

3.  *a sworn member of the rank of lieutenant or above is present on-scene for the full duration of the search warrant being served*;

4.  *a sworn female member is present during the service of the search warrant and is available for any search warrant assignment, including for occupant security and searches*;

5.  the premises to be searched are in fact those described in the search warrant;

6.  the search warrant is being *served* within 96 hours of issuance;

7. each participating civilian dress member required to wear the cap and the vest is wearing the items;

8. two entry officers are attired in the prescribed seasonal field uniform of the day;

9. at least one member of the search team has a Department-issued radio operating on the zone frequency of the location to be searched;

10. coordination of communications is established. Members of the search team may use authorized walkie-talkie radios or use specialized frequencies of personal radios intended to be operated in walkie-talkie mode; and

11. *the following notifications are made prior to serving the search warrant:*

    a. The Office of Emergency Management and Communications (OEMC) dispatcher;

    b. The *watch operations lieutenant* of the district of occurrence; and

    c. The designated unit supervisor/*watch operations lieutenant* of the search team.

D. At the time of *serving the* search warrant:

1. the search team supervisor will:

    a. ensure all Department members' body worn cameras (BWC) are activated *to event mode to record the service of the search warrant* in accordance with the Department directive titled "**Body Worn Cameras**."

    b. ensure the Department members *serving* the search warrant adhere to the Knock and Announce Rule and 725 ILCS 5/108-8. *When applicable, the presence of the search team will be announced and the residents of the location will be given a reasonable opportunity to allow entry.*

        NOTE: *The search team supervisor will ensure the compliance with the Knock and Announce Rule is documented in the Post-Service or Returned Warrant Data record.*

    c. personally coordinate the movements and activities of team members.

    d. ensure that any searches of persons present at the location *where* the search warrant is being *served* are conducted in accordance with the Department directive titled "**Processing Persons Under Department Control**."

    e. *ensure a member of the search team promptly presents a copy of the Search Warrant (CCMC-1-220) to the person named in the warrant or, in that persons absence, the person in charge of the premises. If no one is present at the site of the search, a copy of the Search Warrant (CCMC-1-220) will be left at the place from which articles are seized. If no articles are seized, a copy of the Search Warrant (CCMC-1-220) will be left in a conspicuous location on the premises.*

    f. *ensure that OEMC is promptly notified of all firearms pointing incidents that occur while serving the search warrant in accordance with the Department directive titled "**Firearm Pointing Incidents**." The OEMC notification will include the Radio Identification/Beat Number of the Department member or members who pointed a firearm at a person.*

        NOTE: *The firearm pointing incident notification **does not include** Department members assigned as a Special Weapons and Tactics (SWAT) Team member who point a firearm at a person during the course of a designated SWAT incident.*

2. if evidence of a clandestine laboratory exists, the search team supervisor will ensure the procedures outlined in the Department directive titled "**Processing Narcotics Cases**" are followed.

E.  Upon securing the premises and determining the situation is under control:

1.  the search team supervisor will ensure notifications are made to the following:

    a.  the OEMC dispatcher;

    b.  the *watch operations lieutenant* of the district of occurrence;

    c.  the designated unit supervisor/*watch operations lieutenant* of the search team;

    d.  the police agency having immediate jurisdiction that a search warrant has been *served*, if outside the City of Chicago;

    e.  DCFS, if children are present and the search warrant reveals an unsecured firearm, easily accessible narcotics, or the inside residence is deemed injurious; and

    f.  the Office of Communications for all search warrants *for real property or locations where occupants could be present.*

2.  if a Department member becomes aware the search warrant was *a wrong raid or served at a location that is different than* the location listed on the search warrant, that member will immediately notify the search team supervisor. The search team supervisor will ensure a:

    a.  Log Number is generated *in accordance with the Department directive titled "***Complaint and Disciplinary Procedures***";* and

    b.  City Claims Notification form ([CPD-11.719](CPD-11.719)) is completed in accordance with the Department directive titled "**City Claims Notification Program**."

    c.  *notification is made to the following:*

        (1)  *the watch operations lieutenant of the district of occurrence;*

        (2)  *the designated unit supervisor/watch operations lieutenant of the search team;*

        (3)  *the Office of Communications*;

        (4)  *Office of Community Policing, Crime Victim Services Section.*

3.  if children are present, Department members will maintain a sensitive approach and use due care to safeguard the emotional and physical well-being to minimize trauma following a search warrant *being served*.

    a.  *The search team supervisor will ensure the presence of children during a search warrant is documented in the Post-Service or Returned Warrant Data record.*

    b.  *When determining the appropriateness of applying handcuffs or other physical restraints to children, Department members will consider:*

        (1)  *the totality of the circumstances, including, but not limited to, the nature of the incident and the child's age, physical size, actions, and conduct, when known or objectively apparent to the member, and*

        (2)  *whether such restraints are necessary to provide for the safety of the child, the Department member, or others.*

4.  all evidence collection will be the responsibility of the evidence officer.

    a.  While on the scene of the warrant, only the evidence officer or search warrant supervisor will handle recovered currency during a search.

    b.  Bulk amounts of United States currency subject to inventory will be sealed at the scene in a Currency Inventory Bag (CPD-41.720) and processed in accordance with the Department directive titled "**Inventorying Money**."

        (1)  For the purposes of this directive, a bulk amount of United States currency is defined as an amount that is not readily determined on the scene.

(2) Currency inventory bags will not be used for money suspected of having evidentiary value (e.g., commingled "1505" funds, proceeds of a robbery).

5. the canine team will be *used for narcotics or explosives detection* before the search team conducts the search, if requested.

6. the designated member will:

   a. ensure the correct date and time stamp is added to all digital images.

   b. photograph the following:

      (1) the interior of the premises after it is secured and before it is searched;

      (2) articles seized *while serving* the search warrant;

      NOTE: When feasible, articles will be photographed in the locations they were discovered prior to recovery.

      (3) the premises after the search is completed; and

      (4) the point of entry at the time *the scene is safe and secure and* when the search warrant team departs from the premises.

7. the evidence officer will:

   a. record all articles recovered from the search on an Evidence Recovery Log (CPD-41.124);

   b. sign the form in the box marked "Recovered by: Name and Star No."; and

   c. submit the form to the search team supervisor.

8. the search team supervisor will:

   a. review the Evidence Recovery Log (CPD-41.124) and sign it in the box marked "Witnessed by: Name and Star No.";

   b. if the location is occupied, request the on-scene person to sign the form in the box marked "Acknowledged By." If refused, check the appropriate box;

   c. leave the Pink Copy—Location of Warrant copy of the log form at the location of the search; and

   d. inventory the White Copy—Inventoried copy of the log form as part of the evidence in the case.

9. if an owner, resident, or other responsible party is not present *while the search warrant was being served*, the search warrant supervisor will ensure the point of entry is secured *to reasonably restrict unlawful entry into the location.*

F. Following a search warrant *being served*:

1. the Department member who obtained the search warrant will:

   a. submit the appropriate case report or Supplementary Report form (CPD-11.411-A), or (CPD-11.411-B) for personnel assigned to the Bureau of Detectives, regardless of whether the search resulted in the seizure of property or contraband. This report will document that a search warrant was obtained and *served*.

      NOTE: Information, evidence, or testimony used to obtain the search warrant that is documented in the Complaint for Search Warrant (CCMC-1-219) need not be restated in this report.

   b. generate a *Post-Service or Returned Warrant Data record* in the CLEAR system.

c. generate a printout of the Sketch Page of the Search Warrant Data record (CPD-41.703) and complete that portion of the record by hand.

d. request that the search team supervisor review the record in CLEAR and the completed Sketch Page. Upon a satisfactory review, the member will submit the record electronically to the designated unit supervisor the rank of lieutenant or above for approval. The Sketch Page will be submitted to the search team supervisor for his or her signature and then forwarded to the designated unit supervisor the rank of lieutenant or above for final approval.

> **NOTE:** The *Post-Service or Returned Warrant Data record* must be approved in the CLEAR system before a related inventory can be submitted for approval.

2. the search team supervisor will:

a. review the completed *Post-Service or Returned Warrant Data record* in the CLEAR system *and ensure it contains, when appropriate, the:*

(1) *documentation of the compliance with the Knock and Announce Rule.*

(2) *presence of children during the service of the search warrant.*

(3) *identified damage or other property concerns.*

b. review the completed Sketch Page, indicate approval by his or her signature, and forward it to the designated unit supervisor the rank of lieutenant or above for final approval.

c. whenever cannabis, controlled substances, or other items of contraband are found in unusual locations, after review by the designated unit supervisor, forward a copy of the *Post-Service or Returned Warrant Data record,* including the Sketch Page, to the Deputy Chief, *Training and Support Group.*

d. ensure the designated member inventories all digital images as an attachment to the inventory utilizing the eTrack inventory system:

(1) The designated member will inventory a photocopy of the original *Search Warrant (CCMC-1-220) (excluding the Complaints for Search Warrants (CCMC-1-219))* and include all digital images as an attachment to this inventory.

(2) After the digital images are entered into the eTrack system and approved by a supervisor, the designated member will delete the images from the digital camera memory card.

e. personally conduct a *post-service* evaluation session with all members who participated in *developing and serving* the search warrant *to identify any tactical, equipment, or training concerns. The search team supervisor will ensure documentation of the post-service evaluation session is submitted to the designated unit supervisor the rank of lieutenant or above for review and included in the unit search warrant file.*

3. the designated unit supervisor the rank of lieutenant or above will review the *Post-Service or Returned Warrant Data record* and the Sketch Page and indicate his or her review *and approval,* as necessary. The Sketch Page will be returned to the search team supervisor for inclusion in the unit warrant file.

## X. SEARCH WARRANT RETURN

A. After a search warrant has been *served* and:

1. **an arrest is made**, the original Complaint for Search Warrant (CCMC-1-219) and Search Warrant (CCMC-1-220) will be attached to the court complaint and listed below the arrestee's

name and charges on the next unshaded line of the Court Complaint Transmittal Listing (CPD-11.551).

2. **no arrest is made**, the original Complaint for Search Warrant (CCMC-1-219) and Search Warrant (CCMC-1-220) will be returned to the *issuing* court through the use of a Court Complaint Transmittal Listing (CPD-11.551) *within twenty days of service*. The returned warrant will be identified on the transmittal by entering the address *where the warrant was served* and the search warrant number (e.g., 2500 East Madison Street, Search Warrant Number SW12345). *When* **no arrest is made** *and items are seized and inventoried, a copy of the eTrack inventory records will also be submitted to the issuing court.*

B. *In both instances when an arrest is made or when no arrest is made, a secondary Court Complaint Transmittal (CPD 11.551), including a copy of the Complaint for Search Warrant (CCMC-1-219) and Search Warrant (CCMC-1-220), will be prepared and forwarded to the court room* **of the judge issuing the search warrant** *within twenty days of service. The "Miscellaneous" line of the Court Complaint Transmittal will identify:*

1. *the address where the warrant was served, and*

2. *if the search warrant was a wrong raid incident. A wrong raid is:*

   a. *a search warrant that is served at a location that is different than the location listed on the search warrant; or*

   b. *an incident where a Department member serving a search warrant encounters, identifies, or should reasonably have become aware of circumstances or facts that are inconsistent with the factual basis for the probable cause documented and used to obtain the search warrant.*

   **NOTE:** *When an arrest is made, a copy of the required court documents for arrestee will also be submitted to the court room of the judge issuing the search warrant.*

C. When a search warrant **has not been *served*** within 96 hours of issuance, the search warrant will be signed by the returning officer and returned to the clerk of the court within twenty days.

1. The Search Warrant (CCMC-1-220) will be returned using a Court Complaint Transmittal Listing (CPD-11.551) and identified by entering both the address of the location and the States Attorney's Warrant Number in the space provided for the defendant's name on the transmittal.

2. Both a Search Warrant Data-Part I form (CPD-41.703) and a *Post-Service or Returned Warrant Data record* will be created in the CLEAR system to document the existence of the warrant.

## XI. PROPERTY DISPOSITION

A. The evidence officer will ensure:

1. all other items seized are inventoried in accordance with the Department directive titled "**Processing Property Under Department Control**."

2. procedures are initiated in accordance with the Department directives titled "**Seizure And Forfeiture Of Vehicles, Vessels, and Aircraft**" and "**Internal Revenue Service Notification Procedures**" relative to property or monies subject to a forfeiture hearing.

B. The recovering officer will request the prosecuting attorney obtain a court order, when necessary, to:

1. authorize the retention of the seized property by the Department for the purposes of investigation or scientific analysis;

2. have the seized property impounded by the court and turned over to the court clerk pending final disposition;

3. return the seized property to its legal owner; or

4. dispose of the seized property.

**XII. UNIT RESPONSIBILITIES**

A. Search Warrant File

1. *Search warrant files will:*

   a. *contain the information, reports, and documents from the independent investigation to verify and corroborate the information used in developing the search warrant.*

   b. *be secured and stored in the unit that obtained the search warrant and maintained in accordance with the existing records-retention schedule.*

2. Upon *the service or the* return of a search warrant, the unit member who obtained the warrant will:

   a. enter the RD number and the Property Inventory number(s), if applicable, on the copy of the Search Warrant (CCMC-1-220) that will be retained in the unit file; and

   b. forward this copy of the Search Warrant (CCMC-1-220), a copy of the Complaint for Search Warrant (CCMC-1-219), and the approved Sketch Page to the exempt unit commanding officer.

3. The designated unit supervisor the rank of lieutenant or above will ensure the appropriate information is entered on the Search Warrant Log (CPD-11.426) prior to filing.

4. The exempt unit commanding officer will:

   a. review the forms and forward them to the designated unit supervisor to be included in the files maintained in the unit.

   b. *ensure a copy of the unit search warrant file is provided to the appropriate reviewing Department unit or investigating agency for any wrong raid or any alleged, suspected, or apparent violations of the Rules and Regulations of the Chicago Police Department, directives, or orders by any sworn or civilian Department members while developing, preparing, or serving a search warrant.*

B. Specialized Personal Garments

1. Designated units will maintain a supply of Warrant Team Vests for temporary distribution *while serving* search warrants.

   a. Designated units within the Bureau of Detectives and *Bureau of Counterterrorism* include:

      (1) each area headquarters; and

      (2) units designated by the Chiefs, Bureau of Detectives, and *Bureau of Counterterrorism*.

   b. Designated units within the *Bureau of Patrol* include:

      (1) each district; and

      (2) units designated by the Chief, *Bureau of Patrol*.

   c. Additional units will be designated by the appropriate bureau chief or exempt-rank Department member.

2. Designated unit supervisors are responsible for securing, distributing, and maintaining the unit supply of Warrant Team Vests.

3. Search team members requiring temporary issuance of a Warrant Team Vest will:

   a. sign out the item on the Personal Equipment Log (CPD-21.919) at the unit issuing the item; and

          b.     return the item to the issuing unit upon *serving* the search warrant.

    4.    Warrant Team Vests will **only** be issued directly to personnel assigned to units designated by the Chief, *Bureau of Counterterrorism*, in accordance with the Department directive titled "**Departmental Specialized Personal Garments**."

    5.    Specialized Caps will be distributed to authorized personnel in accordance with the Department directive titled "**Departmental Specialized Personal Garments**."

  C.    *The Office of Community Policing, Crime Victim Services Section, will provide any available Department assistance or services when notified of a wrong raid or a search warrant that was served at a location that is different than the location listed on the search warrant.*

(Items indicated by *italic/double underline* were added or revised)

Authenticated by: KC

David O. Brown
Superintendent of Police

20-056 JAB/MWK

**PHONE BOOK ENTRIES:**

1.   **Equipment and Supply Section**
1869 W. Pershing 4th fl

2.   **SWAT Unit**
PAX 4344

3.   **Cook County State's Attorney - Felony Review**
2650 S. California Ave., Room 14C10
773-674-3020

4.   **Cook County State's Attorneys - Narcotics Prosecutions Bureau**
(773) 869-2726
0900 hours and 1700 hours, on regular court days.

**GLOSSARY TERMS:**

1.   **Consent to Search Incident**

  A.   An incident where Department members obtain verbal or written permission to search a residence or other private property, not accessible to the public, for specific property or individuals.

     **NOTE:**    **An incident where verbal consent to search is obtained by a Department member to search a vehicle pursuant to a traffic or investigatory stop is not a consent to search incident.**

2. **Verbal Consent to Search**

   Verbal permission given to Department members to obtain access to and search a residence or other private property not accessible to the public by a member of the public who has the legal authority to give consent.

3. **Written Consent to Search**

   Written permission given to Department members to obtain access to and search a residence or other private property not accessible to the public by a member of the public who has the legal authority to give consent, **which is documented and approved on a Consent to Search form**.

**ADDENDA:**

1. S04-19-01 - Consent to Search Incidents
2. S04-19-02 - Alternative Search Warrant Approval Method
3. S04-19-03 - Municipal Ordinance Search Warrant Approval Method
4. S04-19-04 - Chicago HIDTA Deconfliction Submissions
5. S04-19-05 - Electronic and Evidentiary Search Warrants