# Exhibit 5

| Par. # | Paragraphs from Consent Decree |
|---|---|
| 32 | Within 180 days of the Effective Date, CPD will review and revise its current policies relating to youth and children and, within 365 days, will revise its training, as necessary, to ensure that CPD provides officers with guidance on developmentally appropriate responses to, and interactions with, youth and children, consistent with the provisions of this Agreement and as permitted by law. |
| 35 | If a juvenile has been arrested CPD will notify the juvenile's parent or guardian as soon as possible. The notification may either be in person or by telephone and will be documented in any relevant reports, along with the identity of the parent or guardian who was notified. Officers will document in the arrest or incident report attempts to notify a parent or guardian. If a juvenile is subsequently interrogated, CPD policy will comply with state law and require, at a minimum, that: a. Juvenile Miranda Warning will be given to juveniles prior to any custodial interrogation; b. the public defender's office may represent and have access to a juvenile during a custodial interrogation, regardless of parent or legal guardian permission; c. CPD officers will make reasonable efforts to ensure a parent or legal guardian is present for a custodial interrogation of a juvenile arrestee under 15 years of age in custody for any felony offense; and d. juveniles in custody for felony offenses and misdemeanor sex offenses under Article 11 of the Illinois Criminal Code will have their custodial interrogation electronically recorded. |
| 36 | When determining whether or not to apply handcuffs or other physical restraints on a juvenile, CPD officers will consider the totality of the circumstances, including, but not limited to, the nature of the incident and the juvenile's age, physical size, actions, and conduct, when known or objectively apparent to a reasonable officer, and whether such restraints are necessary to provide for the safety of the juvenile, the officer, or others. |
| 37 | Consistent with the requirements set forth in the Training section of this Agreement, CPD will incorporate the philosophy of community policing into its annual inservice training for all officers, including supervisors and command staff, by providing training on the following topics: a. an overview of the philosophy and principles of community policing, consistent with this Agreement; b. methods and strategies for establishing and strengthening community partnerships that enable officers to work with communities to set public safety and crime prevention priorities and to create opportunities for positive interactions with all members of the community, including, but not limited to, youth, people of color, women, LGBTQI individuals, religious minorities, immigrants, individuals with limited English proficiency, homeless individuals, and individuals with disabilities; c. problem-solving tactics and techniques; d. information about adolescent development and techniques for positive interactions with youth; and e. effective communication and interpersonal skills. |
| 54 | CPD will continue to require that all CPD members interact with all members of the public in an unbiased, fair, and respectful manner. CPD will require that officers refrain from using language or taking action intended to taunt or denigrate an individual, including using racist or derogatory language. |

| | |
|---|---|
| 68 | Before January 1, 2020, CPD will review and, to the extent necessary, revise its policies and practices for ensuring effective communication and meaningful access to CPD programs, services, and activities for individuals with physical, mental, or developmental disabilities. These policies will identify specific procedures and responsibilities applicable to circumstances in which CPD officers encounter persons with intellectual or developmental disabilities, autism, dementia, blindness, deafness, hearing loss, and mobility disabilities, including, but not limited to: a. properly defining terms related to individuals with disabilities and the disability community; b. providing reasonable accommodations, to the extent safe and feasible, in order to facilitate CPD officer encounters with individuals with a disability; c. the arrest and transport of individuals with disabilities or who require the assistance of ambulatory devices; and d. using qualified and Department-authorized interpreters, consistent with CPD policy, to communicate with people who are deaf, hard of hearing, or who have a speech impairment, including for the provision of Miranda warnings. |
| 153 | CPD's use of force policies, as well as its training, supervision, and accountability systems, must ensure that: CPD officers use force in accordance with federal law, state law, and the requirements of this Agreement; CPD officers apply de-escalation techniques to prevent or reduce the need for force whenever safe and feasible; when using force, CPD officers only use force that is objectively reasonable, necessary, and proportional under the totality of the circumstances; and any use of unreasonable or unnecessary force is promptly identified and responded to appropriately. |
| 156 | CPD's use of force policies and training, supervision, and accountability systems will be designed, implemented, and maintained so that CPD members: a. act at all times in a manner consistent with the sanctity of human life; b. act at all times with a high degree of ethics, professionalism, and respect for the public; c. use de-escalation techniques to prevent or reduce the need for force whenever safe and feasible; d. use sound tactics to eliminate the need to use force or reduce the amount of force that is needed; e. only use force that is objectively reasonable, necessary, and proportional under the totality of the circumstances; f. only use force for a lawful purpose and not to punish or retaliate; g. continually assess the situation and modify the use of force as circumstances change and in ways that are consistent with officer safety, including stopping the use of force when it is no longer necessary; h. truthfully and completely report all reportable instances of force used; i. promptly report any use of force that is excessive or otherwise in violation of policy; j. are held accountable, consistent with complaint and disciplinary policies, for use of force that is not objectively reasonable, necessary, and proportional under the totality of the circumstances, or that otherwise violates law or policy; and k. act in a manner that promotes trust between CPD and the communities it serves. |
| 157 | CPD will collect and analyze information on the use of force by CPD members, including whether and to what extent CPD members use de-escalation techniques in connection with use of force incidents. CPD will use this information to assess whether its policies, training, tactics, and practices meet the goals of this Agreement, reflect best practices, and prevent or reduce the need to use force. |

| | |
|---|---|
| 161 | CPD recently adopted de-escalation as a core principle. CPD officers must use deescalation techniques to prevent or reduce the need for force whenever safe and feasible. CPD officers are required to de-escalate potential and ongoing use of force incidents whenever safe and feasible through the use of techniques that may include, but are not limited to, the following: a. using time as a tactic by slowing down the pace of an incident; b. employing tactical positioning and re-positioning to isolate and contain a subject, to create distance between an officer and a potential threat, or to utilize barriers or cover; c. continual communication, including exercising persuasion and advice, and providing a warning prior to the use of force; d. requesting assistance from other officers, mental health personnel, or specialized units, as necessary and appropriate; and e. where appropriate, use trauma-informed communication techniques, including acknowledging confusion or mistrust, or using a respectful tone. |
| 162 | Consistent with CPD's commitment to preventing and reducing the need for force, CPD officers will allow individuals to voluntarily comply with lawful orders whenever safe and feasible (e.g., allowing individuals the opportunity to submit to arrest before force is used). |
| 164 | CPD officers must only use force when it is objectively reasonable, necessary, and proportional under the totality of the circumstances. |
| 189 | CPD will clarify in policy that when a CPD officer points a firearm at a person to detain the person, an investigatory stop or an arrest has occurred, which must be documented. CPD will also clarify in policy that officers will only point a firearm at a person when objectively reasonable under the totality of the circumstances. |
| 238 | CPD will continue to maintain a policy regarding body-worn camera video and audio recording that will require officers to record their law-enforcement related activities, and that will ensure the recordings are retained in compliance with the Department's Forms Retention Schedule (CPD-11.717) and the Illinois Law Enforcement Officer-Worn Body Camera Act. At a minimum, CPD's body-worn camera policy will: a. clearly state which officers are required to use body-worn cameras and under which circumstances; b. require officers, subject to limited exceptions specified in writing, to activate their cameras when responding to calls for service and during all law enforcement-related activities that occur while on duty, and to continue recording until the conclusion of the incident(s); c. require officers to articulate in writing or on camera their reason(s) for failing to record an activity that CPD policy otherwise requires to be recorded; d. require officers to inform subjects that they are being recorded unless doing so would be unsafe, impractical, or impossible; e. address relevant privacy considerations, including restrictions on recording inside a home, and the need to protect witnesses, victims, and children; f. establish a download and retention protocol; g. require periodic random review of officers' videos for compliance with CPD policy and training purposes; h. require that the reviewing supervisor review videos of incidents involving reportable uses of force by a subordinate; and i. specify that officers who knowingly fail to comply with the policy may be subject to progressive discipline, training, or other remedial action. |
| 346 | Effective supervisors will: a. engage in activities and conduct that support the mission and goals of the Department, including those set forth in this Agreement; b. model appropriate conduct, including abiding by high standards of integrity and adhering to the United States Constitution and other laws, CPD policy, and the terms of this Agreement; and c. consistently demonstrate professionalism, courtesy, and respect towards all people with whom they interact. |
| 568 | CPD will collect and maintain the data and records necessary to accurately evaluate its use of force practices and to facilitate transparency and accountability regarding those practices. |

| 569 | CPD must collect, track, and maintain all available documents related to use of force incidents, including: a. TRRs, or any other similar form of documentation CPD may implement for initial reporting of reportable use of force incidents; b. TRR-Is, or any other similar form of documentation CPD may implement to document supervisory investigation of reportable use of force incidents; c. Tactical Response Reports – Review ("TRR-Rs"), or any other similar form of documentation CPD may implement to document review or auditing of reportable use of force incidents; d. arrest reports, original case incident reports, and investigatory stop reports associated with a reportable use of force incident; e. administrative investigative files, including investigative materials generated, collected, or received by BIA, or COPA, or any similar form of documentation CPD may implement for misconduct allegations or civilian complaints; and f. all reasonably available documentation and materials relating to any reportable use of force, in-custody injury or death, or misconduct allegation, including body-worn, in-car, or known third-party camera recordings, and statements, notes, or recordings from witness and officer interviews. |