**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **STATE OF ILLINOIS,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 17-cv-6260** |
| **CITY OF CHICAGO,** | **Judge Robert M. Dow, Jr.** |
| **Defendant.** | |

## MONITORING PLAN FOR YEAR THREE

The Independent Monitor Margaret A. Hickey and the Independent Monitoring Team submit the attached Monitoring Plan for Year Three.

Dated October 29, 2021

/s/Margaret A. Hickey
Margaret A. Hickey
Schiff Hardin LLP
233 S. Wacker Drive, Suite 7100
Chicago, IL 60606
Telephone: (312) 258-5500
Facsimile: (312) 258-5600
mhickey@schiffhardin.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that, on October 29, 2021, she caused a true and correct copy of the foregoing **Monitoring Plan for Year Three** to be filed electronically with the Court's CM/ECF system, which caused an electronic copy of this filing to be served on counsel of record.

/s/Margaret A. Hickey
Margaret A. Hickey
Schiff Hardin LLP
233 S. Wacker Drive, Suite 7100
Chicago, IL 60606
Telephone: (312) 258-5500
Facsimile: (312) 258-5600
mhickey@schiffhardin.com



Independent Monitoring Team | Chicago Police Department Consent Decree

# Monitoring Plan
*Year Three*
*July 1, 2021, through June 30, 2022*

Report Date: October 29, 2021

**Table of Contents**

Introduction ...................................................................2

    Year Three Priorities ..........................................3

    COVID-19 Extension ..........................................7

    Monitoring in Year Three .............................14

Conclusion and Looking Ahead .............................19

Appendix A. Consent Decree Paragraphs in Year Three .......21

Appendix B. The Consent Decree and the IMT ....................23

***

Readers of the electronic pdf may click sections above to jump to the corresponding sections of the report.

## Monitoring Plan for Year Three - Figures

Figure 1:
Reporting Periods for Years One, Two, and Three ...................................................... 8

Figure 2:
Monitoring Plan for Year Three Paragraphs (All Monitorable Paragraphs) ........... 10

Figure 3:
Community Policing Section through Year Three ..................................................... 11

Figure 4:
Impartial Policing Section through Year Three ........................................................ 11

Figure 5:
Crisis Intervention Section through Year Three ....................................................... 11

Figure 6:
Use of Force Section through Year Three ................................................................. 11

Figure 7:
Recruitment, Hiring, and Promotions Section through Year Three ....................... 12

Figure 8:
Training Section through Year Three ........................................................................ 12

Figure 9:
Supervision Section through Year Three .................................................................. 12

Figure 10:
Officer Wellness Section through Year Three .......................................................... 12

Figure 11:
Accountability and Transparency Section through Year Three ............................. 13

Figure 12:
Data Collection, Analysis, and Management Section through Year Three ........... 13

Figure 13:
Other Requirements through Year Three ................................................................. 13

Figure 14:
Consent Decree Deadlines for the IMT .................................................................... 16

# Introduction

As the Independent Monitoring Team (IMT), we assess the City of Chicago's (City's) compliance with the requirements of the Consent Decree.[1] Specifically, we assess how relevant City entities—including the Chicago Police Department (CPD); the Civilian Office of Police Accountability (COPA); the Chicago Police Board; the City Office of Inspector General, including the Deputy Inspector General for Public Safety; and the Office of Emergency Management and Communications—are complying with the Consent Decree.[2]

This is our Monitoring Plan for Year Three. It includes our projected assessments and tasks for the fifth and sixth reporting periods of the Consent Decree (July 1, 2021, through June 30, 2022). Our Monitoring Plan for Year Three builds on our Monitoring Plan for Year Two, which builds on our Monitoring Plan for Year One.[3] Specifically, in Year Three, the IMT will continue to assess all paragraphs in our Monitoring Plans for Year One and Year Two in addition to the new paragraphs in this Plan. *See* Figure 2 (reporting periods one through six), and Appendix A (reporting periods three and four only).[4]

**At the end of Year Three, we will assess the City's compliance with all paragraphs with requirements in the Consent Decree ("monitorable paragraphs").** Specifically, the IMT will assess whether the City is on course to reach and maintain full and effective compliance for requirements for one or two years, as required, by the end of Year Five.[5]

---

[1]   Background on the Consent Decree and the IMT, including our full organizational chart, is available in Appendix B.

[2]   The Consent Decree is available on the Office of the Illinois Attorney General's (OAG's) consent-decree website. *See Resources*, CHICAGO POLICE CONSENT DECREE ("Consent Decree Approved by the Court on January 31, 2019"), http://chicagopoliceconsentdecree.org/resources/. We cite the relevant paragraphs of the Consent Decree throughout this Monitoring Plan for Year Two.

[3]   The IMT filed the Monitoring Plan for Year One in May 2019, which is available on our website. *See Reports*, IMT (May 30, 2019), https://cpdmonitoringteam.com/reports/.

[4]   The Consent Decree also include City requirements outside of the 10 Consent Decree topics. Unlike other requirements, the Parties agree that the City's efforts in the Implementation section of the Consent Decree do not require three levels of progress: Preliminary, Secondary, and Full. In contrast, the City's ability to demonstrate Preliminary, Secondary, and Full compliance with other requirements of the Consent Decree depend on the City's ability to comply with many of the implementation paragraphs. This includes, for example, providing access and documents to the IMT and the OAG in a timely fashion. *See* ¶¶686–87. As in previous monitoring reports, we will continue to provide compliance status updates on the City's ongoing efforts.

[5]   *See* ¶657 (requiring the IMT to "conduct a comprehensive assessment to determine whether and to what extent the City and CPD are in compliance with [the Consent Decree], whether

# Year Three Priorities

The City and the CPD continue to assure the OAG and the IMT that they are working to catch up on the underlying compliance requirements from the missed deadlines in Year One and Year Two. Year Three is a pivotal year for the City and the CPD under the Consent Decree, which contemplates the completion of requirements by the end of five years (*see* ¶714). To meet that goal, the City must achieve compliance with all Group B paragraphs (community policing, impartial policing, crisis intervention, use of force, supervision, accountability and transparency, and data collection) by the end of Year Three for the City and the CPD to "maintain such compliance" for "at least two years" per ¶714.

In addition, ¶657 requires the IMT, at the end of Year Three, to "conduct a comprehensive assessment to determine whether and to what extent the City and the CPD are in compliance with this Agreement, whether the outcomes intended by this Agreement are being achieved, and whether any modifications to this Agreement are necessary in light of changed circumstances or unanticipated impact (or lack of impact) of the requirements." The City and the CPD will need to make significant progress over the next 10 months to achieve the "outcomes intended." The overarching goal of the Consent Decree is "to ensure that the City and CPD deliver services in a manner that fully complies with the Constitution and laws of the United States and the State of Illinois, respects the rights of the people of Chicago, builds trust between officers and the communities they serve, and promotes community and officer safety" (¶2).

Over the past year, a number of events have demonstrated the ongoing need to have a community-focused and transparent Chicago Police Department. The reverberations of last year's protests after the murder of George Floyd continue to impact community members' views of the Chicago Police Department.[6] Furthermore, the officer-involving shootings of Adam Toledo and Anthony Alvarez highlighted the need for the CPD to create a foot pursuit policy and gather consistent and reliable data on pursuits. These events, among others, also have implications for the City's and the CPD's ability to facilitate independent investigations of lethal force in accordance with State law. Furthermore, routine interactions (*e.g.*, traffic stops) remain an area of concern, particularly for persons living in Chicago's more

---

the outcomes intended by [the Consent Decree] are being achieved, and whether any modifications to [the Consent Decree] are necessary in light of changed circumstances or unanticipated impact (or lack of impact) of the requirements."). *See also* ¶¶714–15.

[6]   *See The City of Chicago's and The Chicago Police Department's Responses to Protests and Unrest under the Consent Decree,* IMT, (July 20, 2021), https://cpdmonitoringteam.com/overview/reports-and-resources/imt-special-report-responses-to-protests-and-unrest/

disadvantaged areas.[7] While the CPD has, for the most part, responded to the above issues by drafting and revising policies, the CPD will need to continue to enhance training to ensure on-the-street behavior is consistent with the recently revised policies.

We will endeavor to assess the City's compliance with all monitorable paragraphs in the Consent Decree by the end of Year Three. Still, through consultation with the City, the CPD, other relevant City entities, and the OAG, we will also prioritize issues to facilitate the City and the CPD's ability to reach compliance as efficiently as possible.

As explained further below, we believe these priorities for Year Three should include the following:

(1) community engagement efforts

(2) data collection, management, and analysis

(3) high-quality and expanded training

(4) compliance with the Police and Community Relations Improvement Act (PCRIA)

(5) impartial policing

(6) addressing incomplete requirements in Year One and Year Two, including remaining policy and training development

## (1) Community Engagement

Effective and sustainable police reform requires adherence to the principles of community engagement. As a result, the City and the CPD must ensure that the input of the community is sought, respected, and incorporated into the development of policy, training, and operations. In Year Three, we will evaluate the CPD and the City's community engagement efforts related to various issues of the Consent Decree, including the following:

- Crime reduction strategies (¶15)
- Meetings between district representatives and community stakeholders (¶24)
- Youth and children (¶33)
- Policing efforts and strategies (¶¶46-47)
- Mental health advisory committee (¶¶130–31)

---

[7] *See Community Survey Report (November 2019 – February 2020),* IMT (August 26, 2020), https://cpdmonitoringteam.com/overview/reports-and-resources/independent-monitor-conducts-community-survey/.

- Accountability processes (¶¶421–22)
- Accountability transparency (¶424)
- Police Board (¶531)

## *(2) Data Collection, Management, and Analysis*

The ability of CPD and the City to collect, analyze, and utilize data to make evidence-based decisions about agency operations will be a primary focus of the IMT in Year Three. In all sections of the Consent Decree, CPD and the City is required to incorporate updated data collection forms, processes, and analysis and therefore the City and CPD will need to conduct the comprehensive assessment described in ¶606. This comprehensive assessment will need to evaluate all data collection efforts, including data on the following:

- Misdemeanor arrests and administrative notices of violation (¶¶79–82)
- Objectives and functions of the CIT Program (¶91)
- CIT events (¶¶107–08, 118)
- CIT officer coverage (¶111–12)
- OEMC data related to CIT (¶149)
- Ongoing force assessments and associated use of force data (¶¶157, 217, 568–72)
- Foot pursuits (¶¶168–69)
- Pointing of a Firearm (¶¶190 and 192)
- Recruitment and hiring assessment (¶259)
- Training audits (¶288)
- System to track CPD training (¶290)
- Effective supervision and supervisory decision-making (¶353–55)
- Staffing models (¶¶365-367)
- Performance evaluations (¶¶369-372)
- Compliance with Officer Support Systems Plan (¶389)
- Administrative investigations (¶¶438 and 440) including the Case Management Systems (¶¶505 and 509)
- Accountability satisfaction surveys (¶483)
- CPD's Annual Report (¶546)
- CPD's Annual Litigation Report (¶548)
- CPD and COPA quarterly and annual accountability reports (¶550)
- Accountability audits (¶¶553 and 558)
- Deputy Inspector General for Public Safety (PSIG) audits (¶560)
- Audits of body-worn camera and in-car camera recordings (¶576)
- Officer Support System (¶¶584, 585, 588, and 597)
- Information Systems Data Group (¶608)

### (3) High Quality and Expanded Training

The City and CPD have made commendable progress in creating policies and procedures related to the reforms required by the Consent Decree. While further work is required to bring all paragraphs into Preliminary Compliance, we will also evaluate whether CPD and City representatives are being trained in the reforms as they are occurring. Accordingly, our Year Three efforts related to training will be focused on (but not limited to) the following training topics:

- Community policing (¶37)
- OEMC language access services (¶66)
- Impartial policing (¶74)
- Crisis intervention for CIT officers (¶¶95–97) and non-CIT officers (¶126)
- Force avoidance (¶¶243–46)
- Conducting recruitment, hiring, and promotions (¶254)
- Recruitment and hiring assessment (¶¶259–60)
- Promotion assessment (¶¶261–262)
- Development of training (¶¶273–76)
- Training facilities (¶281)
- Instructor performance reviews and training efficacy (¶¶285–86)
- Training outcomes (¶294)
- Field training (¶298)
- Field Training Officer training (¶¶301–04)
- Supervisor training (¶¶331–32)
- Ongoing street-level training (¶352)
- Officer wellness (¶¶412–13)
- BIA training (¶¶526, 528–29)
- Police Board training (¶540)

### (4) Compliance with PCRIA

The City must comply with the Police and Community Relations Improvement Act, 50 ILCS 727/1-1 *et seq.* ("PCRIA") relating to officer-involved deaths. *See, e.g.*, ¶492. The City must also "use best efforts to ensure that a 'law enforcement agency,' as that term is defined under PCRIA, will conduct [criminal officer-involved-death investigations]." *Id*. Currently, only sworn members of law enforcement agencies can investigate homicides which currently does not happen within the City. These investigations have vast implications for community trust that officer-involved incidents are fairly and impartially investigated. As such, we will continue to work with City representatives and stakeholders to ensure that "best efforts" are made to have an independent law enforcement agency conduct such investigations.

### (5) Impartial Policing, including Traffic Stops

While routine interactions with law enforcement agencies often do not receive the same level attention as more visible interactions (such as uses-of-force incidents), routine interactions can have a great impact on perceptions of police. The City and the CPD will need to ensure that such routine interactions, such as traffic stops, are conducted fairly and that outcomes do not indicate officer bias or other impartialities. Various paragraphs in the Consent Decree reflect the importance of impartial policing across all police interactions with members of the public, including routine or spontaneous law enforcement decisions. *See, e.g.*, ¶55. This includes, for example, the following paragraphs:

- Positive and procedurally just communication (¶54)
- Interactions with transgender, intersex, and gender non-conforming individuals (¶61)
- Interactions with people with disabilities (¶¶69-70)
- Misdemeanor arrests and administrative notices of violation (¶¶79 and 82)

### (6) Incomplete requirements in Year One and Year Two

As reflected in our first four monitoring reports, the City continues to work toward fulfilling many of the requirements that from Year One and Year Two. This includes policy and training development across all 10 Consent Decree topics. Some topics, however, are farther behind and require additional attention. To ensure that certain policies and training materials do not continue to fall behind, we must prioritize the incomplete or missed requirements in Year Three accordingly. This includes, for example, the CPD's Bureau of Internal Affairs policies and training materials and other important policies under revision, such as the Body Worn Camera policy.

## COVID-19 Extension

The City's reform efforts have been and continue to be directly affected by the unprecedented impact of COVID-19.

On March 27, 2020, after an unopposed motion by the City, the Court entered an order, extending "all the future obligations and deadlines under the Consent Decree, including those for the City of Chicago, State of Illinois, and Independent Monitor, . . . [for] the time period the COVID-19 Executive Order No. 8 issued by the Governor of the State of Illinois remains in effect."[8] Executive Order No. 8 expired on May 29, 2020—64 days after the extension order. As a result, the Parties

---

[8] *See Order Regarding the Extension of Consent Decree Obligation Deadlines* (March 27, 2020), https://cpdmonitoringteam.com/wp-content/uploads/2020/04/2020_03_27-Order-Regarding-the-Extension-of-Consent-Decree-Obligation-De....pdf.

agreed to extend all future deadlines in the Consent Decree by the 64 days that Governor Pritzker's Executive Order was in effect (March 27, 2020 through May 29, 2020).[9] Some of those adjusted deadlines will be reflected in Year Three, during which we will return to our regular six-month reporting periods. *See* Figure 1, below.

Figure 1: Reporting Periods for Years One, Two, and Three

| Monitoring Plan for Year One | |
|---|---|
| 1st Reporting Period | March 1, 2019 – August 31, 2019 (*See* Independent Monitoring Report 1) |
| 2nd Reporting Period | September 1, 2019 – February 29, 2020 (*See* Independent Monitoring Report 2) |
| **Monitoring Plan for Year Two** | |
| 3rd Reporting Period | March 1, 2020 – December 31, 2020 (*See* Independent Monitoring Report 3) |
| 4th Reporting Period | January 1, 2021 – June 30, 2021 (*See* Independent Monitoring Report 4) |
| **Monitoring Plan for Year Three** | |
| 5th Reporting Period | July 1, 2021 – December 31, 2021 (Independent Monitoring Report 5, Spring 2021) |
| 6th Reporting Period | January 1, 2022 – June 30, 2022 (Independent Monitoring Report 6, Autumn 2021) |

We thank everyone who has and continues to make significant sacrifices to help protect Chicago's communities in this unprecedented time. This includes the thousands of first responders and essential workers throughout our communities, including healthcare workers, grocery and pharmacy workers, mass-transit workers, delivery drivers, and everyone who has been on the front lines of Chicago's COVID-19 response. Our gratitude also extends to the families of these workers, who have supported them and, in some cases, also risked infection for our community. And we are grateful to Chicago for the robust and continued efforts of the Chicago communities that continue to respond to this pandemic and save lives. We also take this opportunity to express our sincere condolences for everyone who has lost someone during this pandemic.

\*\*\*

Figure 2 on the following page reflects the paragraphs with requirements that the IMT will monitor in Year Three, including which paragraphs the IMT monitored in

---

[9]   Many Consent Decree deadlines are inter-related with other requirements and deadlines. For this reason, the City may prefer that some deadlines do not move the full 64 days. In other instances, an appropriately extended deadline may cause unforeseeable issues that cause the OAG to prefer a further extension. As a result, the IMT may adjust this Monitoring Plan in accordance with the Consent Decree and with the approval of the Parties.

the first four reporting periods. Appendix A at the bottom of this Plan simplifies the same information for Year Two only, the third and fourth reporting periods.

Figure 2: Monitoring Plan for Year Three Paragraphs (All Monitorable Paragraphs)

| Topic Area | Year Three Monitoring (Fifth Reporting Period) July 1, 2021 – December 31, 2021 | Year Three Monitoring (Sixth Reporting Period) January 1, 2022 – June 30, 2022 |
|---|---|---|
| Community Policing | 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48 **(Total = 35)** | 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48 **(Total = 35)** |
| Impartial Policing | 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82 **(Total = 31)** | 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82 **(Total = 31)** |
| Crisis Intervention | 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152 **(Total = 64)** | 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152 **(Total = 66)** |
| Use of Force | 153, 154, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 243, 244, 245, 246, 247, 248 **(Total = 92)** | 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244, 245, 246, 247, 248 **(Total = 96)** |
| Recruitment, Hiring, and Promotion | 253, 254, 255, 256, 257, 258, 259, 260, 261, 262, 263, 264 **(Total = 12)** | 253, 254, 255, 256, 257, 258, 259, 260, 261, 262, 263, 264 **(Total = 12)** |
| Training | 270, 271, 272, 273, 274, 275, 276, 277, 278, 279, 280, 281, 282, 283, 284, 285, 286, 287, 288, 289, 290, 291, 292, 294, 295, 296, 297, 299, 300, 301, 303, 304, 305, 306, 307, 308, 309, 310, 311, 312, 313, 314, 315, 316, 317, 319, 320, 321, 322, 323, 324, 326, 327, 328, 329, 331, 332, 333, 334, 335, 336, 337, 338, 339, 340 **(Total = 65)** | 270, 271, 272, 273, 274, 275, 276, 277, 278, 279, 280, 281, 282, 283, 284, 285, 286, 287, 288, 289, 290, 291, 292, 294, 295, 296, 297, 298, 299, 300, 301, 302, 303, 304, 305, 306, 307, 308, 309, 310, 311, 312, 313, 314, 315, 316, 317, 318, 319, 320, 321, 322, 323, 324, 326, 327, 328, 329, 331, 332, 333, 334, 335, 336, 337, 338, 339, 340 **(Total = 68)** |
| Supervision | 348, 350, 352, 353, 354, 355, 356, 360, 361, 362, 363, 364, 368, 370, 371, 372, 373, 374, 375, 376 **(Total = 20)** | 347, 348, 349, 350, 351, 352, 353, 354, 355, 356, 357, 359, 360, 361, 362, 363, 364, 365, 366, 367, 368, 369, 370, 371, 372, 373, 374, 375, 376 **(Total = 29)** |
| Officer Wellness and Support | 381, 382, 383, 384, 385, 386, 387, 388, 389, 390, 391, 392, 393, 394, 395, 396, 397, 398, 399, 400, 401, 402, 404, 406, 407, 408, 409, 410, 411, 412, 413, 414, 415, 416, 417, 418 **(Total = 36)** | 381, 382, 383, 384, 385, 386, 387, 388, 389, 390, 391, 392, 393, 394, 395, 396, 397, 398, 399, 400, 401, 402, 404, 406, 407, 408, 409, 410, 411, 412, 413, 414, 415, 416, 417, 418 **(Total = 36)** |
| Accountability and Transparency | 424, 425, 426, 427, 428, 429, 430, 431, 432, 433, 434, 435, 436, 437, 438, 439, 440, 441, 442, 443, 444, 445, 446, 447, 448, 449, 450, 451, 452, 453, 454, 455, 456, 457, 459, 460, 461, 462, 463, 464, 465, 466, 467, 468, 469, 470, 471, 472, 473, 474, 475, 476, 477, 478, 479, 480, 481, 482, 483, 484, 486, 487, 488, 489, 490, 491, 492, 493, 494, 495, 496, 497, 498, 499, 500, 501, 502, 503, 504, 505, 506, 507, 508, 509, 511, 512, 513, 514, 515, 516, 517, 518, 519, 522, 523, 524, 525, 526, 527, 528, 529, 530, 532, 533, 534, 535, 536, 537, 538, 539, 540, 541, 542, 543, 545, 546, 547, 548, 549, 550, 551, 552, 553, 554, 555, 556, 557, 558, 559, 561, 562, 563, 565 **(Total = 133)** | 424, 425, 426, 427, 428, 429, 430, 431, 432, 433, 434, 435, 436, 437, 438, 439, 440, 441, 442, 443, 444, 445, 446, 447, 448, 449, 450, 451, 452, 453, 454, 455, 456, 457, 459, 460, 461, 462, 463, 464, 465, 466, 467, 468, 469, 470, 471, 472, 473, 474, 475, 476, 477, 478, 479, 480, 481, 482, 483, 484, 485, 486, 487, 488, 489, 490, 491, 492, 493, 494, 495, 496, 497, 498, 499, 500, 501, 502, 503, 504, 505, 506, 507, 508, 509, 511, 512, 513, 514, 515, 516, 517, 518, 519, 521, 522, 523, 524, 525, 526, 527, 528, 529, 530, 531, 532, 533, 534, 535, 536, 537, 538, 539, 540, 541, 542, 543, 554, 545, 546, 547, 548, 549, 550, 551, 552, 553, 554, 555, 556, 557, 558, 559, 560, 561, 562, 563, 564, 565 **(Total = 139)** |
| Data Collection, Analysis, and Management | 569, 570, 571, 572, 573, 574, 575, 576, 577, 578, 579, 580, 581, 582, 583, 584, 585, 586, 587, 588, 589, 590, 591, 592, 593, 594, 595, 596, 598, 601, 602, 603, 604, 606, 607, 608, 609 **(Total = 37)** | 568, 569, 570, 571, 572, 573, 574, 575, 576, 577, 578, 579, 580, 581, 582, 583, 584, 585, 586, 587, 588, 589, 590, 591, 592, 593, 594, 595, 596, 598, 597, 599, 600, 601, 602, 603, 604, 605, 606, 607, 608, 609 **(Total = 42)** |
| **TOTAL** | **525** | **554** |
| Other | 677, 678, 679, 680, 683, 684, 685, 686, 700, 706, 711, 720 **(Total = 12)** | 626, 627, 629, 630, 631, 632, 633, 634, 635, 636, 637, 638, 639, 640, 641, 642, 643, 677, 678, 679, 680, 682, 683, 684, 685, 686, 687, 699, 700, 701, 704, 705, 706, 711, 714, 720, 721 **(Total = 37)** |

### Figure 3: Community Policing Section through Year Three

| Topic Area | Year One Monitoring<br>March 1, 2019 – February 29, 2020 | Year Two Monitoring<br>March 1, 2020 – June 30, 2021 | Year Three Monitoring<br>(Fifth Reporting Period)<br>July 1, 2021 – December 31, 2021 | Year Three Monitoring<br>(Sixth Reporting Period)<br>January 1, 2022 – June 30, 2022 |
|---|---|---|---|---|
| Community Policing (¶¶8–48) | 13, 14, 15, 18, 20, 32, 39, 40, 42, 43, 44, 45, 46, 47 | 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48 | 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48 | 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48 |
| TOTAL ¶¶ | 14 | 35 | 35 | 35 |

### Figure 4: Impartial Policing Section through Year Three

| Topic Area | Year One Monitoring<br>March 1, 2019 – February 29, 2020 | Year Two Monitoring<br>March 1, 2020 – June 30, 2021 | Year Three Monitoring<br>(Fifth Reporting Period)<br>July 1, 2021 – December 31, 2021 | Year Three Monitoring<br>(Sixth Reporting Period)<br>January 1, 2022 – June 30, 2022 |
|---|---|---|---|---|
| Impartial Policing (¶¶49–82) | 53, 58, 60, 61, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 74, 76 | 52, 53, 54, 55, 56, 57, 58, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82 | 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82 | 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82 |
| TOTAL ¶¶ | 16 | 30 | 31 | 31 |

### Figure 5: Crisis Intervention Section through Year Three

| Topic Area | Year One Monitoring<br>March 1, 2019 – February 29, 2020 | Year Two Monitoring<br>March 1, 2020 – June 30, 2021 | Year Three Monitoring<br>(Fifth Reporting Period)<br>July 1, 2021 – December 31, 2021 | Year Three Monitoring<br>(Sixth Reporting Period)<br>January 1, 2022 – June 30, 2022 |
|---|---|---|---|---|
| Crisis Intervention (¶¶83–152) | 89, 91, 92, 99, 107, 108, 109, 110, 116, 118, 120, 121, 122, 123, 125, 128, 129, 130, 131, 132, 137, 142, 151 | 87, 88, 89, 90, 91, 92, 93, 94, 96, 97, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152 | 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152 | 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152 |
| TOTAL ¶¶ | 23 | 61 | 64 | 66 |

### Figure 6: Use of Force Section through Year Three

| Topic Area | Year One Monitoring<br>March 1, 2019 – February 29, 2020 | Year Two Monitoring<br>March 1, 2020 – June 30, 2021 | Year Three Monitoring<br>(Fifth Reporting Period)<br>July 1, 2021 – December 31, 2021 | Year Three Monitoring<br>(Sixth Reporting Period)<br>January 1, 2022 – June 30, 2022 |
|---|---|---|---|---|
| Use of Force (¶¶153–248) | 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 173, 176, 177, 178, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 196, 197, 198, 199, 200, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 218, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235 | 153, 154, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 243, 244, 245, 246, 247, 248 | 153, 154, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 243, 244, 245, 246, 247, 248 | 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244, 245, 246, 247, 248 |
| TOTAL ¶¶ | 63 | 92 | 92 | 96 |

### Figure 7: Recruitment, Hiring, and Promotions Section through Year Three

| Topic Area | Year One Monitoring<br>March 1, 2019 – February 29, 2020 | Year Two Monitoring<br>March 1, 2020 – June 30, 2021 | Year Three Monitoring<br>(Fifth Reporting Period)<br>July 1, 2021 – December 31, 2021 | Year Three Monitoring<br>(Sixth Reporting Period)<br>January 1, 2022 – June 30, 2022 |
|---|---|---|---|---|
| Recruitment, Hiring, and Promotion (¶¶249–264) | 263, 264 | 253, 254, 255, 256, 257, 258, 259, 260, 261, 262, 263, 264 | 253, 254, 255, 256, 257, 258, 259, 260, 261, 262, 263, 264 | 253, 254, 255, 256, 257, 258, 259, 260, 261, 262, 263, 264 |
| TOTAL ¶¶ | 2 | 12 | 12 | 12 |

### Figure 8: Training Section through Year Three

| Topic Area | Year One Monitoring<br>March 1, 2019 – February 29, 2020 | Year Two Monitoring<br>March 1, 2020 – June 30, 2021 | Year Three Monitoring<br>(Fifth Reporting Period)<br>July 1, 2021 – December 31, 2021 | Year Three Monitoring<br>(Sixth Reporting Period)<br>January 1, 2022 – June 30, 2022 |
|---|---|---|---|---|
| Training (¶¶265–340) | 270, 271, 272, 280, 284, 316, 320, 323, 334, 336, 339, 340 | 270, 271, 272, 273, 274, 275, 276, 277, 278, 279, 280, 282, 283, 284, 287, 288, 289, 290, 291, 292, 294, 295, 296, 297, 299, 300, 303, 304, 305, 306, 307, 308, 309, 310, 311, 312, 313, 314, 315, 316, 317, 319, 320, 321, 322, 323, 324, 326, 327, 328, 329, 331, 332, 333, 334, 335, 336, 337, 338, 339, 340 | 270, 271, 272, 273, 274, 275, 276, 277, 278, 279, 280, 281, 282, 283, 284, 285, 286, 287, 288, 289, 290, 291, 292, 294, 295, 296, 297, 299, 300, 301, 303, 304, 305, 306, 307, 308, 309, 310, 311, 312, 313, 314, 315, 316, 317, 319, 320, 321, 322, 323, 324, 326, 327, 328, 329, 331, 332, 333, 334, 335, 336, 337, 338, 339, 340 | 270, 271, 272, 273, 274, 275, 276, 277, 278, 279, 280, 281, 282, 283, 284, 285, 286, 287, 288, 289, 290, 291, 292, 294, 295, 296, 297, 298, 299, 300, 301, 302, 303, 304, 305, 306, 307, 308, 309, 310, 311, 312, 313, 314, 315, 316, 317, 318, 319, 320, 321, 322, 323, 324, 326, 327, 328, 329, 331, 332, 333, 334, 335, 336, 337, 338, 340 |
| TOTAL ¶¶ | 12 | 61 | 65 | 68 |

### Figure 9: Supervision Section through Year Three

| Topic Area | Year One Monitoring<br>March 1, 2019 – February 29, 2020 | Year Two Monitoring<br>March 1, 2020 – June 30, 2021 | Year Three Monitoring<br>(Fifth Reporting Period)<br>July 1, 2021 – December 31, 2021 | Year Three Monitoring<br>(Sixth Reporting Period)<br>January 1, 2022 – June 30, 2022 |
|---|---|---|---|---|
| Supervision (¶¶341–376) | 348, 356, 360, 362, 364, 368  (Total = 6) | 348, 350, 353, 354, 355, 356, 360, 362, 364, 368, 370, 371, 372, 373, 374, 375, 376 | 348, 350, 352, 353, 354, 355, 356, 360, 361, 362, 363, 364, 368, 370, 371, 372, 373, 374, 375, 376 | 347, 348, 349, 350, 351, 352, 353, 354, 355, 356, 357, 359, 360, 361, 362, 363, 364, 365, 366, 367, 368, 369, 370, 371, 372, 373, 374, 375, 376 |
| TOTAL ¶¶ | 6 | 17 | 20 | 29 |

### Figure 10: Officer Wellness Section through Year Three

| Topic Area | Year One Monitoring<br>March 1, 2019 – February 29, 2020 | Year Two Monitoring<br>March 1, 2020 – June 30, 2021 | Year Three Monitoring<br>(Fifth Reporting Period)<br>July 1, 2021 – December 31, 2021 | Year Three Monitoring<br>(Sixth Reporting Period)<br>January 1, 2022 – June 30, 2022 |
|---|---|---|---|---|
| Officer Wellness and Support (¶¶377–418) | 382, 383, 384, 385, 386, 387, 388, 389, 391, 401, 404, 406, 409, 411 | 381, 382, 383, 384, 385, 386, 387, 388, 389, 390, 391, 392, 393, 394, 395, 396, 397, 398, 399, 400, 401, 402, 404, 406, 407, 408, 409, 410, 411, 412, 413, 414, 415, 416, 417, 418 | 381, 382, 383, 384, 385, 386, 387, 388, 389, 390, 391, 392, 393, 394, 395, 396, 397, 398, 399, 400, 401, 402, 404, 406, 407, 408, 409, 410, 411, 412, 413, 414, 415, 416, 417, 418 | 381, 382, 383, 384, 385, 386, 387, 388, 389, 390, 391, 392, 393, 394, 395, 396, 397, 398, 399, 400, 401, 402, 404, 406, 407, 408, 409, 410, 411, 412, 413, 414, 415, 416, 417, 418 |
| TOTAL ¶¶ | 14 | 36 | 36 | 36 |

#### Figure 11: Accountability and Transparency Section through Year Three

| Topic Area | Year One Monitoring<br>March 1, 2019 – February 29, 2020 | Year Two Monitoring<br>March 1, 2020 – June 30, 2021 | Year Three Monitoring<br>(Fifth Reporting Period)<br>July 1, 2021 – December 31, 2021 | Year Three Monitoring<br>(Sixth Reporting Period)<br>January 1, 2022 – June 30, 2022 |
|---|---|---|---|---|
| Accountability and Transparency (¶¶419–565) | 425, 426, 429, 430, 431, 434, 436, 441, 442, 443, 444, 445, 446, 448, 450, 451, 453, 455, 456, 457, 459, 460, 461, 462, 463, 464, 465, 466, 467, 468, 469, 475, 477, 478, 479, 480, 481, 484, 486, 487, 488, 493, 497, 498, 499, 500, 501, 504, 508, 512, 514, 522, 525, 526, 527, 528, 529, 530, 532, 533, 538, 540, 542, 552, 558, 561, 563, 565 | 425, 426, 427, 428, 429, 430, 431, 432, 433, 434, 435, 436, 437, 438, 439, 440, 441, 442, 443, 444, 445, 446, 447, 448, 449, 450, 451, 452, 453, 454, 455, 456, 457, 459, 460, 461, 462, 463, 464, 465, 466, 467, 468, 469, 470, 471, 472, 473, 474, 475, 476, 477, 478, 479, 480, 481, 484, 486, 487, 488, 489, 490, 491, 492, 493, 494, 495, 496, 497, 498, 499, 500, 501, 502, 504, 505, 506, 507, 508, 509, 511, 512, 513, 514, 515, 516, 517, 518, 519, 522, 523, 524, 525, 526, 527, 528, 529, 530, 532, 533, 534, 535, 536, 537, 538, 539, 540, 541, 542, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 554, 555, 556, 557, 558, 559, 561, 562, 563, 565 | 424, 425, 426, 427, 428, 429, 430, 431, 432, 433, 434, 435, 436, 437, 438, 439, 440, 441, 442, 443, 444, 445, 446, 447, 448, 449, 450, 451, 452, 453, 454, 455, 456, 457, 459, 460, 461, 462, 463, 464, 465, 466, 467, 468, 469, 470, 471, 472, 473, 474, 475, 476, 477, 478, 479, 480, 481, 482, 483, 484, 486, 487, 488, 489, 490, 491, 492, 493, 494, 495, 496, 497, 498, 499, 500, 501, 502, 503, 504, 505, 506, 507, 508, 509, 511, 512, 513, 514, 515, 516, 517, 518, 519, 522, 523, 524, 525, 526, 527, 528, 529, 530, 532, 533, 534, 535, 536, 537, 538, 539, 540, 541, 542, 543, 545, 546, 547, 548, 549, 550, 551, 552, 553, 554, 555, 556, 557, 558, 559, 561, 562, 563, 565 | 424, 425, 426, 427, 428, 429, 430, 431, 432, 433, 434, 435, 436, 437, 438, 439, 440, 441, 442, 443, 444, 445, 446, 447, 448, 449, 450, 451, 452, 453, 454, 455, 456, 457, 459, 460, 461, 462, 463, 464, 465, 466, 467, 468, 469, 470, 471, 472, 473, 474, 475, 476, 477, 478, 479, 480, 481, 482, 483, 484, 485, 486, 487, 488, 489, 490, 491, 492, 493, 494, 495, 496, 497, 498, 499, 500, 501, 502, 503, 504, 505, 506, 507, 508, 509, 511, 512, 513, 514, 515, 516, 517, 518, 519, 521, 522, 523, 524, 525, 526, 527, 528, 529, 530, 531, 532, 533, 534, 535, 536, 537, 538, 539, 540, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 554, 555, 556, 557, 558, 559, 560, 561, 562, 563, 564, 565 |
| **TOTAL ¶¶** | 68 | 128 | **133** | **139** |

#### Figure 12: Data Collection, Analysis, and Management Section through Year Three

| Topic Area | Year One Monitoring<br>March 1, 2019 – February 29, 2020 | Year Two Monitoring<br>March 1, 2020 – June 30, 2021 | Year Three Monitoring<br>(Fifth Reporting Period)<br>July 1, 2021 – December 31, 2021 | Year Three Monitoring<br>(Sixth Reporting Period)<br>January 1, 2022 – June 30, 2022 |
|---|---|---|---|---|
| Data Collection, Analysis, and Management (¶¶566–609) | 569, 576, 577, 578, 579, 580, 581, 582, 602, 604, 606 | 569, 570, 571, 572, 573, 574, 575, 576, 577, 578, 579, 580, 581, 582, 583, 584, 585, 586, 587, 588, 589, 590, 591, 592, 593, 594, 595, 596, 598, 601, 602, 603, 604, 606, 607, 608, 609 | 569, 570, 571, 572, 573, 574, 575, 576, 577, 578, 579, 580, 581, 582, 583, 584, 585, 586, 587, 588, 589, 590, 591, 592, 593, 594, 595, 596, 598, 601, 602, 603, 604, 606, 607, 608, 609 | 568, 569, 570, 571, 572, 573, 574, 575, 576, 577, 578, 579, 580, 581, 582, 583, 584, 585, 586, 587, 588, 589, 590, 591, 592, 593, 594, 595, 596, 598, 597, 599, 600, 601, 602, 603, 604, 605, 606, 607, 608, 609 |
| **TOTAL ¶¶** | 11 | 37 | **37** | **42** |

#### Figure 13: Other Requirements through Year Three[10]

| Topic Area | Year One Monitoring<br>March 1, 2019 – February 29, 2020 | Year Two Monitoring<br>March 1, 2020 – June 30, 2021 | Year Three Monitoring<br>(Fifth Reporting Period)<br>July 1, 2021 – December 31, 2021 | Year Three Monitoring<br>(Sixth Reporting Period)<br>January 1, 2022 – June 30, 2022 |
|---|---|---|---|---|
| Other | 711 | 677, 678, 679, 683, 684, 685, 686, 711, 720 | 677, 678, 679, 680, 683, 684, 685, 686, 700, 706, 711, 720 | 626, 627, 629, 630, 631, 632, 633, 634, 635, 636, 637, 638, 639, 640, 641, 642, 643, 677, 678, 679, 680, 682, 683, 684, 685, 686, 687, 699, 700, 701, 704, 705, 706, 711, 714, 720, 721 |
| **TOTAL ¶¶** | 1 | 9 | **12** | **37** |

---

[10] Unlike other requirements, the Parties agree that the City's efforts in the Implementation section of the Consent Decree do not require three levels of progress: Preliminary, Secondary, and Full. In contrast, the City's ability to demonstrate Preliminary, Secondary, and Full compliance with other requirements of the Consent Decree depend on the City's ability to comply with many of the implementation paragraphs. This includes, for example, providing access and documents to the IMT and the OAG in a timely fashion. *See* ¶¶686–87. As in previous monitoring reports, we will continue to provide compliance status updates on the City's ongoing efforts.

# Monitoring in Year Three

In accordance with ¶¶661–62 and 642, the IMT assesses how the City, the CPD, and other City entities comply with each paragraph of the Consent Decree in three successive levels: **(1) Preliminary compliance**, **(2) Secondary compliance**, and **(3) Full compliance**. The CPD and other City entities will not be "in compliance" with a requirement until they reach Full compliance for the requisite length of time required by the Consent Decree—either one or two years (¶714). We will assess the City's compliance on all appropriate levels for the paragraphs presented in this report.

❖ **Preliminary compliance** refers principally to the development of acceptable policies and procedures that conform to best practices (as defined in ¶730) and to the incorporation of requirements into policy (¶642). The IMT will assess the development of policies, procedures, rules, and regulations reasonably designed to achieve compliance. To attain Preliminary compliance, the City must have policies and procedures designed to guide officers, City employees, supervisors, and managers performing the tasks outlined in the Consent Decree. These policies and procedures must include appropriate enforcement and accountability mechanisms, reflect the Consent Decree's requirements, comply with best practices for effective policing policy, and demonstrate the City and its relevant entities' ability to build effective training and compliance.

❖ **Secondary compliance** refers principally to the development and implementation of acceptable and professional training strategies (¶642). Those strategies must convey the changes in policies and procedures that were established when we determined Preliminary compliance. Secondary compliance also refers to creating effective supervisory, managerial, and executive practices designed to implement policies and procedures as written (¶730). The IMT will review and assess the City's documentation—including reports, disciplinary records, remands to retraining, follow-up, and revisions to policies, as necessary—to ensure that the policies developed in the first stage of compliance are known to, are understood by, and are important to line, supervisory, and managerial levels of the City and the CPD. The IMT will be guided by the ADDIE model of curriculum development to assess training and will consider whether there are training, supervision, audit, and inspection procedures and protocols designed to achieve, maintain, and monitor the performances required by the Consent Decree.

❖ **Full compliance** refers to adherence to policies within day-to-day operations (¶642). Full compliance requires that personnel, including sergeants, lieutenants, captains, command staff, and relevant City personnel routinely hold each other accountable for compliance. In other words, the City must "own" and

enforce its policies and training. The IMT will assess whether the City's day-to-day operations follow directives, policies, and training requirements. When measuring Full compliance, we will note whether supervisors notice, correct, and supervise officer behavior and whether appropriate corrections occur in the routine course of business. In this phase, we will review whether compliance is reflected in routine business documents, demonstrating that reforms are being institutionalized. In addition, we will determine whether all levels of the chain of command ensure consistent and transparent compliance.

These levels of compliance guide the IMT in its review of all paragraphs in the Consent Decree. The three compliance levels often apply differently to various paragraphs. For some paragraphs, for example, Preliminary compliance may refer to efforts to establish the requisite training, rather than to creating a policy. Still, to reach and sustain Full compliance, the City may need to create a policy to ensure that it provides training consistently, as appropriate.

The Consent Decree establishes that the City, the CPD, and other relevant City entities are not in any level of compliance until we find that that they are in a level of compliance. The CPD and other City entities will reach "full and effective compliance" with a requirement once they reach and maintain Full compliance for the requisite length of time required by the Consent Decree—either one or two years. *See* ¶714.

## The IMT's Assessments and Deadlines

In addition to monitoring the City's compliance efforts, the IMT is bound to several specific and ongoing requirements under the Consent Decree. Figure 14, below, summarizes the Consent Decree's deadlines for the IMT, most of which are ongoing.

The IMT will conduct compliance reviews and data analyses on an ongoing basis throughout the monitoring project. In Year One, we conducted many in-person site-visits to monitor compliance. In Year Two, these efforts continued but transitioned to online meetings because of the pandemic. Our virtual site visit activities may include, but are not limited to, reviewing records, policies, procedures, training curricula, and various data sources; virtual observations of training sessions; interviews; and meetings, conversations, and discussions with the Parties, personnel, community members, and external stakeholders about specific Consent Decree requirements, progress, and plans to achieve compliance.

Figure 14: Consent Decree Deadlines for the IMT

| Paragraphs | Requirement | Deadline | Second Reporting Period Deadlines |
|---|---|---|---|
| 627–37 | Review of CPD Policies and Procedures | Various, Ongoing | Correspond with policy deadlines |
| 638–41 | Review of Implementation Plans and Training Materials | Various, Ongoing | Correspond with plan and training deadlines |
| 642–44 | Compliance Reviews and Audits | Various, Ongoing | Will occur during each reporting period |
| 645–51 | Community Surveys | 180 Days (and every two years) | early 2022 |
| 652–55 | Monitoring Plan | 90 Days (and every year) | draft by September 13, 2021 |
| 656 | Technical Assistance and Recommendations | Ongoing | Ongoing |
| 667 | Coordination with the Office of Inspector General | Ongoing | Ongoing |
| 668 | Maintain Regular Contact with the Parties | Ongoing | Monthly |
| 669 | Monitor will Participate in Meetings with the Coalition | Quarterly | Quarterly |
| 670–71 | Communication with the Parties, Collective Bargaining Representatives, and the Public | Ongoing | Ongoing |

## The IMT's Community Engagement Team Activities

The IMT's Community Engagement Team plays a critical role by monitoring levels of trust and sentiment among the stakeholders to the Consent Decree. The IMT's Community Engagement Team includes experienced Chicago community members, experts in police-community relations, lawyers, and academics. These members work together to meaningfully engage Chicago's communities and ensure community participation throughout the monitoring process. The Community Engagement Team also works closely with the Monitor, Deputy Monitor, and Associate Monitors to assess the community component of compliance with the Consent Decree.

Because of the COVID-19 pandemic, the IMT's Community Engagement Team has begun focusing on connecting with community members virtually, and we have hosted online events regularly since the COVID-19 pandemic began. We look forward to continuing to connect with community groups across the city via teleconferences and video conferences during this challenging time.

The IMT's Community Engagement Team's work is important to create sustainable change within the City and the CPD and to measure compliance with specific policy, training, and procedural changes required by the Consent Decree. The City and the CPD do not function effectively when they lack trust from the communities they serve. In its 2017 report, the DOJ found that the impacts of the "CPD's pattern or practice of unreasonable force fall heaviest on predominantly black and Latino neighborhoods."[11] The DOJ also found that people in many neighborhoods in Chicago lack confidence that "their police force cares about them and has not abandoned them, regardless of where they live or the color of their skin."[12]

Effective policing requires both (1) procedural and cultural change and (2) improved relationships between the City, the CPD, and the communities they serve. The Community Engagement Team encourages improved relationships based on respect, trust, and partnership. These relationships will also be strengthened by transparency and accountability.

The IMT's Community Engagement Team will continue to perform two key tasks regarding the monitoring process: (1) gathering input from Chicago residents about their concerns regarding CPD policies and practices and (2) providing information to the Chicago community regarding the IMT's activities and findings. In Year One, we completed our first citywide survey about the CPD, which gathered opinions from over 1,300 Chicagoans. We will repeat that citywide survey this year and will use the results of that survey to guide our community engagement work moving forward.

Because the IMT believes that hearing community voices consistently throughout the monitoring process is crucial, we will undertake special studies of Chicago's communities during the years we are not conducting the ¶¶645–51 community surveys.

The IMT's first special study is a series of focus groups with Black and Latino males to help provide context and deeper understanding of the survey results, which indicated that young Black men, and to a lesser extent Latino men, experienced police using force at much higher rates than the survey respondents in general. Of particularly interest for further study was that they indicated having had a gun pointed at them at extremely disproportionate rates (19 times more often). Between December 2020 and June 2021, the IMT conducted focus groups with over 100 participating black and Latino males between the ages of 15 and 35. Focus groups with women of color began in March 2021 and are ongoing. Once data

---

[11] DOJ Civil Rights Division and United States Attorney's Office Northern District of Illinois, *Investigation of Chicago Police Department* (January 13, 2017) at 4, *available at* http://chicagopoliceconsentdecree.org/wp-content/uploads/2018/01/DOJ-INVESTIGATION-OF-CHICAGO-POLICE-DEPT-REPORT.pdf.

[12] *Id.* at 15.

collection is complete, the IMT will produce a public special report on our findings from the focus groups.

Throughout Year Three, we will continue to make contact with many individuals, community leaders, and community-based organizations, relying more on electronic communications and less on face-to-face meetings and encounters. As conditions permit, and if COVID-19 becomes less of a public health threat, the Community Engagement Team will again attend in-person community meetings across Chicago, including meetings with the Coalition, community-based organizations, and CPD beat meetings.

## Independent Monitoring Reports

The IMT will release two Independent Monitoring Reports during Year Three. Independent Monitoring Report 5 will cover the first six-month period of Year Three, July 1, 2021, through December 31, 2022, and Independent Monitoring Report 6 will cover the next six-month monitoring period of Year Three, January 1, 2022, through June 30, 2022. These reports will summarize monitoring activities, including data analysis and reviews and audits conducted during the two reporting periods. The reports will also summarize the IMT's determinations of Preliminary, Secondary, and Full compliance for each paragraph reviewed or explain why the IMT was unable to adequately assess a requirement under review.

As with our first four Independent Monitoring Reports, these reports will be comprehensive and will reference specific data and information that we use to make determinations of compliance. The Independent Monitoring Reports will also include relevant data and observations from the Community Engagement Team.

During Year Three, as described above, the IMT will also release at least two special reports. The first special report will be on the IMT's Community Focus Groups and the second report will be on the IMT's Community Survey.

# Conclusion and Looking Ahead

In Years One and Two, the City and the CPD struggled with community engagement; reliable data collection, management, and analysis; staffing and resource shortages; and record production. Through the first two years of the Consent Decree, the City and the CPD have, however, made progress revising and developing policies and training. In Year Three, we look forward to monitoring the City's and the CPD's efforts to ensure and demonstrate compliant practices.

Much of the work required of the City and the CPD during Year Three involves continued internal planning in each of the ten topic areas in the Consent Decree. Our focus on the various topic areas of the Consent Decree may shift over time based on the City's and the CPD's progress regarding critical elements of the Consent Decree. The monitoring plans for subsequent years will reflect those shifts.

There are, however, several elements of the IMT's work that will remain consistent over time. The IMT's Community Engagement Team will remain involved with local community-based groups invested in police reform in Chicago. We will disseminate information to community members about the City's progress and collect important information from Chicago residents. Likewise, the IMT will continue to implement and assess community surveys and research, which will also solicit input from CPD members.

Our principles will continue to lead us throughout the monitoring process: transparent community engagement and participation; independent reviews of police policies and practices; and regular communication among the OAG, the City, the CPD, the Chicago Police Board, COPA, the Office of the Inspector General, the Deputy Inspector General for Public Safety, other relevant City entities, members of the Coalition (¶669), and members of Chicago communities.

We note the limits of this Monitoring Plan. Any plan is subject to change, and that is especially true of a plan developed to address a project as complex and comprehensive as this one. We also recognize that the COVID-19 pandemic has and may continue to present unprecedented challenges, which will make accurate planning more difficult. As a result, we expect that we may need to add to, subtract from, or otherwise modify various aspects of this Monitoring Plan. Nonetheless, this is our best estimate of what we expect to monitor during Year Three. We will publicly report and explain any major changes.

When Judge Dow approved the Consent Decree in 2019, he set the stage for the years ahead:

> *The State of Illinois and the City of Chicago have entered into this consent decree with the goal of using it as a vehicle for solving*

> *the common problems . . . in a manner that defuses tension, re-*
> *spects differences of opinion, and over time produces a 'lawful,*
> *fair, reasonable, and adequate' result for everyone involved.*[13]

The IMT remains steadfast in its commitment to fairly monitor and assess the City's compliance with the requirements of the Consent Decree and to deliver technical assistance to assist the City when requested.

---

[13] *See Memorandum Opinion and Order Approving Proposed Consent Decree* (January 31, 2019), 16, *available at* http://chicagopoliceconsentdecree.org/wp-content/uploads/2019/02/Order-Approving-Consent-Decree.pdf.

# Appendix A.
# Consent Decree Paragraphs in Year Three

| Topic Area | Year One Monitoring March 1, 2019 – February 29, 2020 | Year Two Monitoring March 1, 2020 – June 30, 2021 | Year Three Monitoring (Fifth Reporting Period) July 1, 2021 – December 31, 2021 | Year Three Monitoring (Sixth Reporting Period) January 1, 2022 – June 30, 2022 |
|---|---|---|---|---|
| Community Policing (¶¶8–48) | 13, 14, 15, 18, 20, 32, 39, 40, 42, 43, 44, 45, 46, 47 (Total = 14) | 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48 +21 paragraphs (Total = 35) | 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48 +0 paragraphs (Total = 35) | 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48 +0 paragraphs (Total = 35) |
| Impartial Policing (¶¶49–82) | 53, 58, 60, 61, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 74, 76 Total = 16 | 52, 53, 54, 55, 56, 57, 58, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82 +14 paragraphs (Total = 30) | 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82 +1 paragraph (Total = 31) | 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82 +0 paragraphs (Total = 31) |
| Crisis Intervention (¶¶83–152) | 89, 91, 92, 99, 107, 108, 109, 110, 116, 118, 120, 121, 122, 123, 125, 128, 129, 130, 131, 132, 137, 142, 151 (Total = 23) | 87, 88, 89, 90, 91, 92, 93, 94, 96, 97, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152 +38 paragraphs (Total = 61) | 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152 +3 paragraphs (Total = 64) | 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152 +2 paragraphs (Total = 66) |
| Use of Force (¶¶153–248) | 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 173, 176, 177, 178, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 196, 197, 198, 199, 200, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 218, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235 (Total = 63) | 153, 154, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 243, 244, 245, 246, 247, 248 +29 paragraphs (Total = 92) | 153, 154, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 243, 244, 245, 246, 247, 248 +0 paragraphs (Total = 92) | 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244, 245, 246, 247, 248 +4 paragraphs (Total = 96) |
| Recruitment, Hiring, and Promotion (¶¶249–264) | 263, 264 (Total = 2) | 253, 254, 255, 256, 257, 258, 259, 260, 261, 262, 263, 264 +10 paragraphs (Total = 12) | 253, 254, 255, 256, 257, 258, 259, 260, 261, 262, 263, 264 +0 paragraphs (Total = 12) | 253, 254, 255, 256, 257, 258, 259, 260, 261, 262, 263, 264 +0 paragraphs (Total = 12) |
| Training (¶¶265–340) | 270, 271, 272, 280, 284, 316, 320, 323, 334, 336, 339, 340 (Total = 12) | 270, 271, 272, 273, 274, 275, 276, 277, 278, 279, 280, 282, 283, 284, 287, 288, 289, 290, 291, 292, 294, 295, 296, 297, 299, 300, 303, 304, 305, 306, 307, 308, 309, 310, 311, 312, 313, 314, 315, 316, 317, 319, 320, 321, 322, 323, 324, 326, 327, 328, 329, 331, 332, 333, 334, 335, 336, 337, 338, 339, 340 +49 paragraphs (Total = 61) | 270, 271, 272, 273, 274, 275, 276, 277, 278, 279, 280, 281, 282, 283, 284, 285, 286, 287, 288, 289, 290, 291, 292, 294, 295, 296, 297, 299, 300, 301, 303, 304, 305, 306, 307, 308, 309, 310, 311, 312, 313, 314, 315, 316, 317, 319, 320, 321, 322, 323, 324, 326, 327, 328, 329, 331, 332, 333, 334, 335, 336, 337, 338, 339, 340 +4 paragraphs (Total = 65) | 270, 271, 272, 273, 274, 275, 276, 277, 278, 279, 280, 281, 282, 283, 284, 285, 286, 287, 288, 289, 290, 291, 292, 294, 295, 296, 297, 298, 299, 300, 301, 302, 303, 304, 305, 306, 307, 308, 309, 310, 311, 312, 313, 314, 315, 316, 317, 318, 319, 320, 321, 322, 323, 324, 326, 327, 328, 329, 331, 332, 333, 334, 335, 336, 337, 338, 339, 340 +3 paragraphs (Total = 68) |
| Supervision (¶¶341–376) | 348, 356, 360, 362, 364, 368 (Total = 6) | 348, 350, 353, 354, 355, 356, 360, 362, 364, 368, 370, 371, 372, 373, 374, 375, 376 +11 paragraphs (Total = 17) | 348, 350, 352, 353, 354, 355, 356, 360, 361, 362, 363, 364, 368, 370, 371, 372, 373, 374, 375, 376 +3 paragraphs (Total = 20) | 347, 348, 349, 350, 351, 352, 353, 354, 355, 356, 357, 359, 360, 361, 362, 363, 364, 365, 366, 367, 368, 369, 370, 371, 372, 373, 374, 375, 376 +9 paragraphs (Total = 29) |

| Topic Area | Year One Monitoring<br>March 1, 2019 – February 29, 2020 | Year Two Monitoring<br>March 1, 2020 – June 30, 2021 | Year Three Monitoring<br>(Fifth Reporting Period)<br>July 1, 2021 – December 31, 2021 | Year Three Monitoring<br>(Sixth Reporting Period)<br>January 1, 2022 – June 30, 2022 |
|---|---|---|---|---|
| Officer Wellness and Support (¶¶377–418) | 382, 383, 384, 385, 386, 387, 388, 389, 391, 401, 404, 406, 409, 411<br><br>(Total = 14) | 381, 382, 383, 384, 385, 386, 387, 388, 389, 390, 391, 392, 393, 394, 395, 396, 397, 398, 399, 400, 401, 402, 404, 406, 407, 408, 409, 410, 411, 412, 413, 414, 415, 416, 417, 418<br>**+22 paragraphs**<br>(Total = 36) | 381, 382, 383, 384, 385, 386, 387, 388, 389, 390, 391, 392, 393, 394, 395, 396, 397, 398, 399, 400, 401, 402, 404, 406, 407, 408, 409, 410, 411, 412, 413, 414, 415, 416, 417, 418<br>**+0 paragraphs**<br>(Total = 36) | 381, 382, 383, 384, 385, 386, 387, 388, 389, 390, 391, 392, 393, 394, 395, 396, 397, 398, 399, 400, 401, 402, 404, 406, 407, 408, 409, 410, 411, 412, 413, 414, 415, 416, 417, 418<br>**+0 paragraphs**<br>(Total = 36) |
| Accountability and Transparency (¶¶419–565) | 425, 426, 429, 430, 431, 434, 436, 441, 442, 443, 444, 445, 446, 448, 450, 451, 453, 455, 456, 457, 459, 460, 461, 462, 463, 464, 465, 466, 467, 468, 469, 475, 477, 478, 479, 480, 481, 484, 486, 487, 488, 493, 497, 498, 499, 500, 501, 504, 508, 512, 514, 522, 525, 526, 527, 528, 529, 530, 532, 533, 538, 540, 542, 552, 558, 561, 563, 565<br><br>(Total = 68) | 425, 426, 427, 428, 429, 430, 431, 432, 433, 434, 435, 436, 437, 438, 439, 440, 441, 442, 443, 444, 445, 446, 447, 448, 449, 450, 451, 452, 453, 454, 455, 456, 457, 459, 460, 461, 462, 463, 464, 465, 466, 467, 468, 469, 470, 471, 472, 473, 474, 475, 476, 477, 478, 479, 480, 481, 484, 486, 487, 488, 489, 490, 491, 492, 493, 494, 495, 496, 497, 498, 499, 500, 501, 502, 504, 505, 506, 507, 508, 509, 511, 512, 513, 514, 515, 516, 517, 518, 519, 522, 523, 524, 525, 526, 527, 528, 529, 530, 532, 533, 534, 535, 536, 537, 538, 539, 540, 541, 542, 545, 546, 547, 548, 549, 550, 551, 552, 553, 554, 555, 556, 557, 558, 559, 561, 562, 563, 565<br>**+60 paragraphs**<br>(Total = 128) | **424**, 425, 426, 427, 428, 429, 430, 431, 432, 433, 434, 435, 436, 437, 438, 439, 440, 441, 442, 443, 444, 445, 446, 447, 448, 449, 450, 451, 452, 453, 454, 455, 456, 457, 459, 460, 461, 462, 463, 464, 465, 466, 467, 468, 469, 470, 471, 472, 473, 474, 475, 476, 477, 478, 479, 480, 481, **482**, **483**, 484, 486, 487, 488, 489, 490, 491, 492, 493, 494, 495, 496, 497, 498, 499, 500, 501, 502, **503**, 504, 505, 506, 507, 508, 509, 511, 512, 513, 514, 515, 516, 517, 518, 519, 522, 523, 524, 525, 526, 527, 528, 529, 530, 532, 533, 534, 535, 536, 537, 538, 539, 540, 541, 542, **543**, 545, 546, 547, 548, 549, 550, 551, 552, 553, 554, 555, 556, 557, 558, 559, 561, 562, 563, 565<br>**+5 paragraphs**<br>(Total = 133) | 424, 425, 426, 427, 428, 429, 430, 431, 432, 433, 434, 435, 436, 437, 438, 439, 440, 441, 442, 443, 444, 445, 446, 447, 448, 449, 450, 451, 452, 453, 454, 455, 456, 457, 459, 460, 461, 462, 463, 464, 465, 466, 467, 468, 469, 470, 471, 472, 473, 474, 475, 476, 477, 478, 479, 480, 481, 482, 483, 484, **485**, 486, 487, 488, 489, 490, 491, 492, 493, 494, 495, 496, 497, 498, 499, 500, 501, 502, 503, 504, 505, 506, 507, 508, 509, 511, 512, 513, 514, 515, 516, 517, 518, 519, **521**, 522, 523, 524, 525, 526, 527, 528, 529, 530, **531**, 532, 533, 534, 535, 536, 537, 538, 539, 540, 541, 542, 543, 545, 546, 547, 548, 549, 550, 551, 552, 553, 554, 555, 556, 557, 558, 559, **560**, 561, 562, 563, **564**, 565<br>**+6 paragraphs**<br>(Total = 139) |
| Data Collection, Analysis, and Management (¶¶566–609) | 569, 576, 577, 578, 579, 580, 581, 582, 602, 604, 606<br><br>(Total = 11) | 569, 570, 571, 572, 573, 574, 575, 576, 577, 578, 579, 580, 581, 582, 583, 584, 585, 586, 587, 588, 589, 590, 591, 592, 593, 594, 595, 596, 598, 601, 602, 603, 604, 606, 607, 608, 609<br>**+26 paragraphs**<br>(Total = 37) | 569, 570, 571, 572, 573, 574, 575, 576, 577, 578, 579, 580, 581, 582, 583, 584, 585, 586, 587, 588, 589, 590, 591, 592, 593, 594, 595, 596, 598, 601, 602, 603, 604, 606, 607, 608, 609<br>**+0 paragraphs**<br>(Total = 39) | **568**, 569, 570, 571, 572, 573, 574, 575, 576, 577, 578, 579, 580, 581, 582, 583, 584, 585, 586, 587, 588, 589, 590, 591, 592, 593, 594, 595, 596, 598, **597**, **599**, **600**, 601, 602, 603, 604, **605**, 606, 607, 608, 609<br>**+5 paragraphs**<br>(Total = 42) |
| **TOTAL ¶¶** | **229** | **509** | **+16 paragraphs**<br>**525** | **+29 paragraphs**<br>**554** |
| Other[14] | 711<br><br>(Total = 1) | 677, 678, 679, 683, 684, 685, 686, 711, 720<br><br>(Total = 9) | 677, 678, 679, **680**, 683, 684, 685, 686, **700**, **706**, 711, 720<br>**+3 paragraphs**<br>(Total = 12) | **626**, **627**, **629**, **630**, **631**, **632**, **633**, **634**, **635**, **636**, **637**, **638**, **639**, **640**, **641**, **642**, **643**, 677, 678, 679, 680, **682**, 683, 684, 685, 686, **687**, **699**, 700, **701**, **704**, **705**, 706, 711, **714**, 720, **721**<br>**+25 paragraphs**<br>(Total = 37) |
| **TOTAL ¶¶** | **230** | **518** | **537** | **591** |

---

[14] Unlike other requirements, the Parties agree that the City's efforts in the Implementation section of the Consent Decree do not require three levels of progress: Preliminary, Secondary, and Full. In contrast, the City's ability to demonstrate Preliminary, Secondary, and Full compliance with other requirements of the Consent Decree depend on the City's ability to comply with many of the implementation paragraphs. This includes, for example, providing access and documents to the IMT and the OAG in a timely fashion. *See* ¶¶686–87. As in previous monitoring reports, we will continue to provide compliance status updates on the City's ongoing efforts.

# Appendix B.
# The Consent Decree and
# the Independent Monitoring Team

In December 2015, the U.S. Attorney General launched a civil rights investigation into the CPD's policing practices. The U.S. Department of Justice released the results of its investigation in January 2017, finding a longstanding, pervasive "pattern or practice" of civil rights abuses by the CPD. Two separate class-action lawsuits followed: *Campbell v. City of Chicago* and *Communities United v. City of Chicago*.[15]

In August 2017, the Office of the Illinois Attorney General (OAG) sued the City in federal court, seeking a Consent Decree that would address the DOJ's findings and recommendations. The case was assigned to federal Judge Robert M. Dow, Jr. The OAG then sought input from community members and Chicago police officers and negotiated the Consent Decree with the City.

In March 2018, the Parties to the Consent Decree (the OAG and the City) entered into a Memorandum of Agreement with a "broad-based community coalition committed to monitoring, enforcing, and educating the community about the Consent Decree ('the Coalition')," which "includes the plaintiffs in the *Campbell* and *Communities United* lawsuits."[16]

The OAG and the City then sought proposals for an IMT after posting a draft Consent Decree on the Chicago Police Consent Decree website. Judge Dow approved and signed a modified version of the Consent Decree on January 31, 2019. This Consent Decree provides a unique opportunity for feedback from Chicago communities and local stakeholders. The OAG will oversee and enforce the Consent Decree. *See* ¶694. The Coalition has certain enforcement rights and meets with the IMT at least quarterly. *See* ¶¶709(a) and ¶669, respectively.[17]

The Consent Decree requires action by the CPD and many other City entities. On March 1, 2019, the effective date of the Consent Decree, and after a competitive selection process, Judge Dow appointed Maggie Hickey, a partner at Schiff Hardin

---

[15]  *See Campbell v. Chicago*, N.D. Ill. Case No. 17-cv-4467 (June 14, 2017), and *Communities United v. Chicago*, N.D. Ill. Case No. 17-cv-7151 (October 4, 2017).

[16]  *See Memorandum of Agreement Between the Office of the Illinois Attorney General and the City of Chicago and* Campbell v. City of Chicago *Plaintiffs and* Communities United v. City of Chicago *Plaintiffs* (March 20, 2018), *available at* http://chicagopoliceconsentdecree.org/wp-content/uploads/2019/05/Executed_MOA.pdf.

[17]  *See also Memorandum of Agreement Between the Office of the Illinois Attorney General and the City of Chicago and* Campbell v. City of Chicago *Plaintiffs and* Communities United v. City of Chicago *Plaintiffs*, ¶9 (March 20, 2018), *available at* http://chicagopoliceconsentdecree.org/wp-content/uploads/2019/05/Executed_MOA.pdf.

LLP, as the Independent Monitor. As the Independent Monitor, Ms. Hickey over-sees the IMT and reports directly to Judge Dow.[18]

As the IMT, we (1) monitor the City's, the CPD's, and other relevant City entities' progress in meeting the Consent Decree's requirements and (2) offer assistance to the City, the CPD, and other relevant City entities to implement the changes that the Consent Decree requires.

Monitor Maggie Hickey and Deputy Monitor Chief Rodney Monroe, Ret., lead the IMT. The IMT's eight Associate Monitors, in turn, oversee the 10 topic areas of the Consent Decree. Our legal team, analysts, subject matter experts, Community En-gagement Team, and community survey staff provide support in several ways: by reaching out to and engaging with Chicago communities; by providing general ad-ministrative support; and by collecting and analyzing policies, procedures, laws, and data, including conducting observations and interviews and writing reports.

Our full organizational chart is in Appendix A, Figure 1 on the next page, and our team structure is in Appendix A, Figure 2 on the following page.

---

[18] Judge Dow also appointed Judge David H. Coar, Ret., as a special master. As special master, Judge Coar is not a member of the IMT, but he will "help facilitate dialogue and assist the [OAG], the City, and other stakeholders in resolving issues that could delay progress toward implementation of the consent decree." About, CHICAGO POLICE CONSENT DECREE, http://chica-gopoliceconsentdecree.org/about/. As the special master, Judge Coar also reports directly to Judge Dow.

Appendix B, Figure 1. Independent Monitoring Team Organizational Chart

Appendix B, Figure 2. Independent Monitoring Team Members

| Monitoring Team Leadership | | |
|---|---|---|
| | Independent Monitor | Maggie Hickey |
| | Deputy Monitor | Rodney Monroe |

| Associate Monitors | | |
|---|---|---|
| | Community Policing | Stephen Rickman |
| | Impartial Policing | Dennis Rosenbaum |
| | Crisis Intervention | Julie Solomon |
| | Use of Force | Paul Evans |
| | Training; Recruitment, Hiring Promotion | Theron Bowman |
| | Supervision | Noble Wray |
| | Officer Wellness & Support | Cassandra Deck-Brown |
| | Accountability & Transparency | Harold Medlock |
| | Data Collection, Analysis & Management | Tom Christoff |

| Community Engagement Team | | |
|---|---|---|
| | Member | Joe Hoereth |
| | Member | Laura McElroy |
| | Member | Elena Quintana |
| | Member (and Associate Monitor for Community Policing) | Stephen Rickman |
| | Member | Sodiqa Williams |
| | Community Surveys | Joe Hoereth & Other Experts |

| Subject Matter Experts and Legal Team | | |
|---|---|---|
| | Project Director | Laura Kunard |
| | Attorney, Recruitment, Hiring, & Promotions; Training | Mir Ali |
| | Attorney | Derek Barella |
| | Attorney, Supervision | Alex Becker |
| | Officer Wellness & Support | Brandi Burque |
| | Attorney, Use of Force; Data Collection, Analysis & Management | Meredith DeCarlo |
| | Use of Force; Data Collection, Analysis & Management | Terry Gainer |
| | Attorney, Community Policing; Impartial Policing | Ariel Hairston |
| | Attorney, Crisis Intervention | Brian Hamilton |
| | Community Policing; Crisis Intervention | Bruce Johnson |
| | Training | Blake McClelland |
| | Attorney, Officer Wellness and Support | Sarah Oligmueller |
| | Community Policing | Hildy Saizow |
| | Lead Attorney | Anthony-Ray Sepulveda |
| | Attorney, Supervision; Officer Wellness; Accountability & Transparency | Kylie Wood |
| | Supervision; Recruitment, Hiring & Promotions | Tom Woodmansee |

| Monitoring Team Support | | |
|---|---|---|
| | Analyst for Accountability & Transparency | Bridgette Bryson |
| | Analyst for Officer Wellness & Support | Jessica Dockstader |
| | Project Manager, Analyst for Use of Force | Vivian Elliot |
| | Analyst for Community Policing | Tammy Felix |
| | Analyst for Data Collection, Analysis & Management | Shelby Hickman |
| | Analyst for Supervision | Monique Jenkins |
| | Analyst, Independent Monitoring Team Support | Mariana Oliver |
| | Deputy Project Manager, Analyst for Training and Recruitment | Keri Richardson |
| | Analyst for Crisis Intervention | Gentry Schaffer |
| | Analyst for Impartial Policing; Accountability & Transparency | Christopher Sun |

# Frequently Asked Questions from the Community

Throughout the first reporting period, the IMT received many questions from the community. We list the most frequently asked questions and our corresponding answers below.

## What is a Consent Decree?

A Consent Decree is a court-approved settlement that resolves a legal dispute between parties. This Consent Decree requires the CPD and the City to reform training, policies, and practices in many important areas, such as use of force, community policing, impartial policing, training, accountability, officer wellness, and data and information systems. The goal is to ensure that the CPD performs constitutional and effective policing that keeps both community members and officers safe and restores the community's trust in the CPD (¶2).[19] Federal judge Robert M. Dow, Jr. was appointed to oversee the Consent Decree. He chose the Independent Monitor and oversees the work of the Independent Monitoring Team. The Independent Monitoring Team will assess the CPD's and the City's compliance with the Consent Decree. The Consent Decree will be in effect for at least five years so that the CPD can develop, implement, and sustain the training, policies, and practices that the Consent Decree requires.[20]

## Why is Chicago under the Consent Decree?

In August 2017, the Office of the Attorney General for the State of Illinois (OAG) sued the City, alleging that the CPD had violated the U.S. Constitution, the Illinois Constitution, and federal and state laws. The OAG's complaint pointed to reviews of the CPD's policing practices over the last fifty years, including a 2017 report by the U.S. Department of Justice (DOJ). According to the DOJ report, the CPD engaged in a repeated pattern and practice of using excessive force and racially discriminatory policing practices.[21] The City did not accept the OAG's allegations but agreed to enter a Consent Decree with the OAG.

---

[19] *The* final Consent Decree is available on the Chicago Police Consent Decree Website. *See Consent Decree* (January 31, 2019), http://chicagopoliceconsentdecree.org/wp-content/uploads/2019/02/FINAL-CONSENT-DECREE-SIGNED-BY-JUDGE-DOW.pdf.

[20] To learn more about the Consent Decree, visit the Office of the Attorney General's Consent Decree website: http://chicagopoliceconsentdecree.org/.

[21] DOJ Civil Rights Division and United States Attorney's Office Northern District of Illinois, *Investigation of Chicago Police Department* (January 13, 2017), http://chicagopoliceconsentdecree.org/wp-content/uploads/2018/01/DOJ-INVESTIGATION-OF-CHICAGO-POLICE-DEPT-REPORT.pdf.

## Who is on the IMT?

We have assembled a team of recognized leaders and innovators in police reform from across the country. They have experience as police chiefs, academic scholars, and attorneys and have a wide range of expertise that covers every aspect of the Consent Decree from use of force and impartial policing to the training and supervision of police officers. We also have a Community Engagement Team that organizes meetings and serves as the outreach arm. Members of the Community Engagement Team meet with residents, stakeholders, and activists to ensure that the community has a voice in this process.

## What is the IMT doing?

The Independent Monitoring Team observes and assesses how the CPD is making progress and complying with the Consent Decree's requirements. Throughout the process, the IMT collects and analyzes data to measure the City's and the CPD's progress. The Independent Monitoring Team's Community Engagement Team also gathers community input and feedback about the CPD's and the City's progress from a broad range of people and organizations. The Independent Monitoring Team will also develop and release public reports on its monitoring activities, such as this report. We will make all reports available on the Reports section of our website (https://cpdmonitoringteam.com/).

## How can I get involved?

The Community Engagement Team works hard to connect with neighborhoods, community groups, religious organizations, activists, and residents across the city. The Community Engagement Team encourages community members to participate in meetings and to promote these sessions through their networks. We regularly update the Community Involvement section of the IMT website with details on upcoming community meetings and events. If your neighborhood or community group would like to invite a Community Engagement Team member to a meeting, please email us at contact@cpdmonitoringteam.com or fill out a feedback form on our website (https://cpdmonitoringteam.com/feedback-form/).

Community members can provide input on CPD policy. When the CPD modifies or creates applicable policies, it will post them on its website so that community members can provide input: https://home.chicagopolice.org/.

Community members can also do the following:

❖ Attend any of our public meetings listed on our website;
❖ Complete an input form on our website; and
❖ Reach out to the IMT or members of our Community Engagement Team (see below).

## How can I contact the IMT?

Community members can reach out to the entire IMT via email (contact@cpdmon-itoringteam.com) and also contact individual members of our Community Engagement Team:

❖ Sodiqa Williams (Sodiqa.Williams@cpdmonitoringteam.com),

❖ Joe Hoereth (Joe.Hoereth@cpdmonitoringteam.com), and

❖ Elena Quintana (Elena.Quitana@cpdmonitoringteam.com).

Learn more at the Contact Us page on our website (https://cpdmonitoring-team.com/contact-us/).

Community members can also use the Feedback Form on our website to provide input (https://cpdmonitoringteam.com/feedback-form/).

Independent
Monitoring Team | Chicago Police
Department
Consent Decree