UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN
DIVISION

| | |
|---|---|
| STATE OF ILLINOIS, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Case No. 17-CV-6260 |
| | ) Judge Robert M. Dow, Jr. |
| | ) |
| CITY OF CHICAGO, | ) |
| | ) |
| Defendant. | ) |

### Supplement to Motion to Intervene

The Fraternal Order of Police Chicago Lodge No. 7 ("the Lodge"), by and through its attorneys, files this motion *instanter* pursuant to Local Rule 5.6 to intervene, to further request leave of this Court to renew its earlier request for permission to intervene and to supplement the Lodge's objections ]Docs. 813 and 834] to the Joint Motion To Approve the Parties' Stipulation Regarding Paras. 626 -637 and 640-641 of the Consent Decree [Doc. 807]. The Stipulation was approved by this Court on January 30, 2020, and a briefing scheduled was set on the Lodge's objections [815 and 817]. A mediation policy was announced by COPA last week to Police Officers at roll calls and was based on this Stipulation. The Lodge believes its participation in this program and its development would be quite beneficial to its success for Officers and members of the public, but the program has been unilaterally implemented without the input or role of the Lodge.

The Lodge submits the following in support of its request that the court order the parties to allow participation by the Lodge in this new mediation program:

1. This request is made to protect the interests of the Chicago Police Officers represented by the Lodge and to seek enforcement of the provisions of the Consent Decree that

1

were designed to secure and protect the collective bargaining rights of the Lodge and its bargaining unit members and in particular to require the parties to allow the Lodge to participate in the development of this mediation program.

2. There is no doubt as to the importance of the Lodge to the successful implementation of the Consent Decree because this has been recognized by the Court as to the role the Lodge should have in the development of policies that affect the wages, hours and working conditions of Police Officers. [Doc. 761]. In a May 31, 2019, status call, this Court stated that "collective bargaining is going to be a huge part of this case going forward," and the Court recognized the substantial interest of the Lodge as "an important potential intervenor, certainly an interested party." Id. at 10-11. The Court further stated that the "negotiation process is going to be a kind of third wheel on this. And you guys have to do the best you can to make it all happen." Id. at 10.

3. However important this role is to the court, it has been lost on the parties to this case in their most recent implementation within the past week of a mediation program that impairs and interferes with the collectively bargained mediation provision that is currently in the collective bargaining agreement between the Lodge and the City. Catanzara Declaration, ¶ E.

4. The stipulation at issue in this motion allows the Chicago Office of Police Accountability (COPA) to develop, revise and implement Consent Decree policies on vital matters of importance to Police Officers dealing with preliminary investigations of Officers, anonymous complaints, the process of affidavit overrides, investigation timelines and benchmarks, consideration of evidence from civil and criminal litigation, measures to prevent member collusion and witness contamination, and the mediation of misconduct complaints by non-CPD members. The Lodge objected to this stipulation on the basis of its exclusion from the

process and the assault on the collective bargaining process. The court has yet to rule on the Lodge's objections.

5. Paragraph 512 of the Consent Decree states that that the City will "ensure … COPA and BIA have developed parallel policies regarding the mediation of misconduct complaints by non CPD members. The policies will specify, at a minimum, (a) the criteria for determining incidents eligible for resolution through mediation; (b) goals of mediation … (c) the steps of the mediation process; and (d) methods of communication with complainants regarding the mediation process and the opportunity to participate. Items (a) through (d) above will be consistent between the CPD and COPA mediation policies." [Doc. 703-1 at 158]. The Stipulation between the parties requires COPA to submit a new or revised policy for this Consent Decree paragraph. [Doc. 817 at 1]. The mediation program has been conceived and implemented by COPA based on this stipulation.

6. The Lodge believes that this new COPA mediation program has substantial advantages for Officers and members of the public but seeks permission of the court to intervene in this proceeding for the purpose of negotiating with the parties adjustments and modifications in order to promote mediation as a beneficial method to resolve citizen complaints about Officer alleged misconduct.

7. Tensions that may exist between the new program and the Lodge's mediation provision in the current collective bargaining agreement need to be discussed and resolved in order to assure the success of this program. The mediation provisions in the collective bargaining agreement provide that at any time during an investigation of an Officer, the parties may agree "to mediate the resolution of the Complaint Register investigation …. The 'parties' shall mean the accused Officer, with or without his or her Lodge representative, and a representative of IAD or IPRA [a predecessor of COPA], as appropriate. The IAD/IPRA

investigator assigned to the case will not be present at the mediation." Section 6.11, <u>Lodge and City Collective Bargaining Agreement</u>. [Doc. 51-3 at 16-7]. This contract section provides:

> At any time during an investigation, the parties may agree to mediate the resolution of the Complaint Register investigation. The "parties" shall mean the accused Officer, with or without his or her Lodge representative, and a representative of IAD or IPRA, as appropriate. The IAD/IPRA investigator assigned to the case will not be present at the mediation. Prior to the mediation session, IAD/IPRA shall cause the accused Officer to be served with a Notice of Administrative Rights and a Notice of Charges and Allegations, which will include the rule violation and the factual basis therefore. Neither party is required to meet. The representatives at the meeting shall discuss the allegations and IAD's/IPRA's position regarding the finding of the case. The parties shall discuss whether they can reach accord as to a disposition. By accepting the discipline, the accused Officer is waiving his or her right to grieve or appeal the decision, and the accused Officer is not required to submit any statement or response. If the accused Officer does not agree with IAD's/IPRA's position, the disciplinary process will continue as designated. Statements made and information relayed at the mediation which are not included in the file will not be used against the Officer or included in the file at any later date. If IAD/IPRA and the accused Officer agree on a penalty less than separation, it is binding on both parties. However, the Superintendent retains the right to seek the separation of an Officer.

8. COPA has unilaterally implemented a mediation program without discussions with the Lodge and in apparent disregard and violation of ¶ 711 of the Consent Decree which provides:

> Nothing in this Consent Decree is intended to (a) alter any of the CBAs between the City and the Unions; or (b) impair or conflict with the collective bargaining rights of employees in those units under the IPLRA. Nothing in this Consent Decree shall be interpreted as obligating the City or the Unions to violate (i) the terms of the CBAs, including any Successor CBAs resulting from the negotiation process (including Statutory Impasse Resolution Procedures) mandated by the IPLRA with respect to the subject of wages, hours and terms and conditions of employment unless such terms violate the U.S. Constitution, Illinois law or public policy, or (ii) any bargaining obligations under the IPLRA, and/or waive any rights or obligations thereunder. In negotiating Successor CBAs and during any Statutory Resolution Impasse Procedures, the City shall use its best efforts to secure modifications to the CBAs consistent with the terms of this Consent Decree, or to the extent necessary to provide for the effective implementation of the provisions of this Consent Decree.

The COPA mediation program had been created without the cooperation of the Lodge and the Labor Relations Division of the CPD. <u>Catanzara Declaration</u>, ¶G and H. In fact, the senior commander of that Division first learned about the program last week after it had been publicized to members of the CPD without any notice to the elected officers of the Lodge. <u>Id</u>.

    9.    The Lodge believes that the mediation of Officer interactions with members of the public is an important element of developing trust and cooperation, especially when so many members of the public seem highly reluctant to provide critical information to Officers on the violent acts that they may have witnessed. However, the success of such a program and the cooperation on all sides requires the endorsement of each interest group or stake holder. The Lodge's participation in such a program is very important for its success, but as noted in the attached declaration, the COPA program interferes with mediation program that is currently in the Lodge's collective bargaining agreement. With such tension between the two mediation programs, the success of COPA's unilateral creation is not assured. <u>Catanzara Declaration</u>, ¶¶ G H, I and J. For this reason, the Lodge should be allowed to resolve such issues and is will to do so.

    10.    COPA has in effect done an "end run around" the bargaining table and created a policy that is at odds with the one that is already in the Lodge's collective bargaining agreement. This is the kind of actual conflict that this court has recognized as warranting the Lodge to bring to "its attention" and to seek "an avenue of relief that the Lodge believes to be appropriate." <u>State of Illinois v. City of Chicago</u>, 2019 WL 398703 at 7 (N.D. Ill. 2019). Such an override of the contract should not be permitted in the context of a consent decree as recognized by the Seventh Circuit in <u>People Who Care v. Rockford Board of Education Dist. No. 205</u>, 961 F.2d 1335, 1337 (7th Cir. 1992) and the U.S. Supreme Court in <u>W.R. Grace v. Rubber Workers</u>

Local 759, 461 U.S. 757, 771 (1983). In People Who Care, the school district and the plaintiffs impermissibly negotiated a settlement agreement to a major civil rights case in which seniority rights of teachers were modified. Under these key consent decree principals, the City and COPA may not interfere with the mediation provisions of the Lodge's contract rights. People Who Care, *supra* and W.R. Grace, *supra.*

11. It is for these reasons that the Lodge has requested this court to allow the Lodge to intervene to protect its collective bargaining rights under the Consent Decree and to give it a status to work with the City and COPA to develop a mutually agreeable program for the mediation of misconduct allegations of Police Officers.

Respectfully submitted,

*/s/ Joel A. D'Alba*

Joel A. D'Alba

Counsel for Fraternal Order of
Police, Chicago Lodge No. 7
Joel A. D'Alba (Atty. No. 50393)
Asher, Gittler & D'Alba, Ltd.
200 W. Jackson Blvd., Suite 720
Chicago, Illinois 60606
312/263-1500
jad@ulaw.com