**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STATE OF ILLINOIS, | |
| Plaintiff, | |
| v. | Case No. 17-cv-6260 |
| CITY OF CHICAGO, | |
| Defendant. | |

**UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF A FINDING OF
FULL AND EFFECTIVE COMPLIANCE OF MATERIAL REQUIREMENTS
OF THE CONSENT DECREE FOR THE OFFICE OF INSPECTOR GENERAL
AND PUBLIC SAFETY INSPECTOR GENERAL**

The City of Chicago ("City") submits this Memorandum in Support of its Motion seeking:

(1) a determination of full and effective compliance for the Office of the Inspector General ("OIG")

and the Deputy Inspector General for Public Safety ("PSIG") of their material requirements under

the Consent Decree, and (2) commencement of the required two-year period of compliance

maintenance for these requirements. *See* Dkt. No. 703 ("Consent Decree") at ¶¶ 714, 715, 717.

For the reasons more fully described below, OIG and PSIG have demonstrated by a

preponderance of the evidence that they have achieved full and effective compliance with the

relevant Consent Decree provisions, such that commencement of the required sustainment period

is appropriate. *See* ¶¶ 714, 715, 717, 720 (collectively, requiring the City to request the Court

"determine whether the City is in full and effective compliance regarding any of the materials

requirements under the [Consent Decree]" in order to start the required sustainment period, during

which OIG and PSIG must demonstrate it has "maintained such compliance" for at least two

years). Specifically, as provided for in the Independent Monitor's ("Monitor") October 8, 2021,

Fourth Monitoring Report ("IMR4 Report"),[1] Dkt. 978, the Monitor assessed that OIG and PSIG has demonstrated compliance with the applicable requirements of Consent Decree Paragraphs 440(b), 444, 481, 522, 523, 537, 556, 557, 558, 559, 561, 562, 563, and 565.[2] *See* Consent Decree ¶ 612 ("[T]he Monitor will conduct . . . reviews, audits, and assessments . . . to determine whether the [Consent Decree] has been implemented as required."); IMR4 Report at PageID 11602, 11608, 11668, 11726, 11728, 11751, 11779, 11781, 11783, 11785, 11787, 11789, 11790, 11791 (assessing that OIG and PSIG demonstrated full compliance with these paragraphs).

## STANDARD OF REVIEW

"[A] judicially approved consent decree is essentially a contract." *United States v. Alshabkhoun*, 277 F.3d 930, 934 (7th Cir. 2002). This means that "[a] court interprets the meaning of a consent decree in the same way it interprets the meaning of a contract. . . ." *Bailey v. Roob*, 567 F.3d 930, 940 (7th Cir. 2009). In general, consent decrees are interpreted by their "plain text." *Holmes v. Godinez*, 991 F.3d 775, 783 (7th Cir. 2001). When the terms of a consent decree specify a standard for demonstrating compliance, such as the Consent Decree here, courts "treat it like a contract term." *Joseph A. by Wolfe v. New Mexico Dep't of Hum. Servs.*, 69 F.3d 1081, 1085 (10th Cir. 1995) (determining whether the parties had met "substantial compliance" with a consent decree).

Here, the City is required to demonstrate compliance by a preponderance of the evidence. Consent Decree ¶ 720. "Compliance with a requirement means that the City . . . (a) [has]

---

[1] Excerpts of the portions of the IMR4 Report that are cited herein are referenced according to PageID numbers.

[2] Paragraphs 521, 560, and 564 generally require that PSIG has adequate resources, information access, and independence. These paragraphs apply to the City generally and may not apply to OIG or PSIG individually. As such, these paragraphs are not currently outstanding obligations for OIG or PSIG.

incorporated the requirement into policy; (b) [has] trained all relevant personnel as necessary to fulfill their responsibilities pursuant to the requirement; and (c) [is] carrying out the requirement in actual practice."[3] *Id.* at ¶ 642.

Consent Decree ¶ 715 provides that "[u]pon request by the City, the Court will determine whether the City is in full and effective compliance regarding any of the material requirements under the [Consent Decree]." Full and effective compliance is defined as "sustained compliance with all material requirements." *Id.* at ¶ 717. "The Monitor will conduct reviews or audits as necessary to determine whether the City . . . [has] substantially complied with the requirements." *Id.* at ¶ 642. "The Court's determination of full and effective compliance will start the relevant one- or two-year compliance periods detailed in Paragraph 714." *Id.* at ¶ 715. Finally, if the City has achieved compliance with some but not all requirements, Consent Decree ¶ 716 allows the Court to "terminate the Agreement as to those requirements for which compliance has been achieved."

## **ARGUMENT**

The requirements of the Consent Decree for OIG and PSIG are set forth in ¶¶ 440(b), 444, 481, 522, 523, 537, 556, 557, 558, 559, 561, 562, 563, and 565. As described below, the City has demonstrated by a preponderance of the evidence that OIG and PSIG achieved full and effective compliance with all applicable requirements, as reflected by the Monitor's October 8, 2021, assessments.[4]

---

[3] As addressed below where relevant, the Monitor has determined—and the Parties agree—that certain Consent Decree paragraphs require specific, discernible one-time actions, such that by the plain text of those certain paragraphs, demonstration of the general policy, training, and operations requirements provided for in Paragraph 642 is not applicable.

[4] The Consent Decree requires that for a finding of full and effective compliance, the City need only demonstrate that "material requirements" have been satisfied. Consent Decree ¶¶ 714, 715. As explained herein, the City has demonstrated that the OIG and PSIG have satisfied *all* their

A.     **Responsibilities of the OIG and PSIG**

OIG has two sets of obligations under the Consent Decree.  The first is a set of limited but specific requirements relating to investigations conducted by OIG's Investigations section, specifically, timely transmission of misconduct complaints to the Civilian Office of Police Accountability ("COPA") and recommendations to the Chicago Police Department ("CPD") Superintendent to reopen qualifying investigations of incidents occurring more than five years prior. Consent Decree ¶¶ 440(b), 481.

The second set of OIG's Consent Decree obligations relate specifically to PSIG, which is the Public Safety section of OIG established in 2016. The Consent Decree addresses PSIG's review of CPD and COPA investigative files related to disciplinary decisions, the creation of staffing-needs plans, the type and quality of reports and audits to be conducted, training for staff members, meetings with members of other City entities (such as COPA and the Police Board), and the hiring of a full-time director responsible for diversity and inclusion issues, among other duties. Consent Decree ¶¶ 444, 522, 523, 537, 556, 557, 558, 559, 561, 562, 563, 565.

B.     **Paragraph 440(b)—Processing of Non-Confidential Complaints**

Consent Decree ¶ 440(b) provides:

*The City, CPD, and COPA will ensure that all non-confidential complaints are processed by COPA as follows. . . . All complaints of alleged misconduct submitted to the anonymous reporting website and all non-confidential complaints of alleged misconduct received by the OIG will be submitted to COPA by the end of the next business day after the complaint was received.*

As the Monitor assessed, IMR4 Report at PageID 11603, OIG demonstrated full and effective compliance by: (1) incorporating these requirements into its policies, (2) training relevant

---

relevant Consent Decree requirements. Therefore, the City does not address the materiality of any of these requirements in this Motion.

personnel on the requirements, and (3) maintaining a log to memorialize that OIG timely submits applicable complaints to COPA.

Specifically, to demonstrate policy compliance, OIG created a supplement to its *Investigations Manual*, which contains OIG's policies regarding submission of complaints of misconduct to COPA. Ex. A, *Memorandum: Consent Decree Paragraph 440*, 1 (June 1, 2021) (MONITOR 244111–63) at MONITOR 244111. This policy lays out the steps that OIG personnel should take when processing an applicable complaint to ensure timely compliance. *Id.* at MONITOR 244115–26. OIG created specific training material to instruct personnel on how to properly submit a complaint to COPA. *Id.* at MONITOR 244112; MONITOR 244127–42. OIG logs attendance records at those trainings. *Id.* at MONITOR 244143–45.

In addition, OIG created a list of applicable complaints memorializing the complaint intake date, the date constituting the next business day, and the date on which OIG submitted the complaint to COPA. *Id.* at MONITOR 244112; MONITOR 244146–63. This log demonstrates that the vast majority of applicable complaints are timely submitted and that timely submission has only increased as time has elapsed. *Id.*

### C. Paragraph 444—Review of Investigative Files and Reports

Consent Decree ¶ 444 provides:

*Within ten days of the final disciplinary decision of each complaint of sexual misconduct against a CPD member alleging conduct against a non CPD-member, the City will provide the Deputy PSIG with the complete administrative investigative file, subject to applicable law. The Deputy PSIG will review and analyze each administrative investigative file and, on an annual basis, the Deputy PSIG will publish a report:*

    *a.    assessing the quality of the sexual misconduct administrative investigations review;*

    *b.    recommending changes in policies and practices to better present, detect, or investigate sexual misconduct; and*

    c.     *providing aggregate data on the administrative investigations reviewed, including:*

        i.     *the volume and nature of allegations investigated, broken down by investigating agency*

        ii.     *the percentage of investigations referred to the Cook County States' Attorney's Office ("CCSAO") for criminal review;*

        iii.     *the percentage of investigations criminally prosecuted;*

        iv.     *the percentage of investigations closed after the preliminary investigations;*

        v.     *the percentage of investigations closed for lack of a signed complainant affidavit; and*

        vi.     *the investigative findings and recommendations, including a summary breakdown of discipline recommended for investigations with sustained findings.*

As the Monitor assessed, IMR4 Report at PageID 11609, OIG demonstrated full and effective compliance by: (1) incorporating these requirements into its policies, (2) training relevant personnel on the requirements, and (3) publishing reports analyzing disciplinary investigations involving allegations of sexual misconduct.

PSIG's *Policies Manual* establishes policies for "Inspections of Closed Disciplinary Investigations." Ex. B, *Memorandum: Consent Decree Paragraph 537* (April 25, 2021) (MONITOR 235120–71) at MONITOR 235161–66. PSIG's Investigative Analysts, who comprise the staff of the Inspections Unit and conduct these reviews, have attended multiple training courses to improve the effectiveness and sufficiency of sexual misconduct investigations, including: (1) "Neurobiology of Trauma and Trauma-Informed Investigative Techniques," which addresses the impact of trauma on investigations; and (2) "Sexual Assault Crisis Intervention Training," which provides knowledge regarding the impact of sexual violence on individuals, communities, and society, and teaches basic crisis intervention skills, among other topics. Ex. C, *Memorandum:*

*Consent Decree Paragraph 444* (April 30, 2021) (MONITOR 234320–82) at MONITOR 234321. The Monitor has commented that PSIG's training materials "are represented by excellent PowerPoint presentations," are "thorough and provide PSIG investigators with information that they need to fulfill their investigation obligations under ¶ 444," and "the instruction provides meaningful insight into the emotional trauma that victims experience." IMR4 Report at PageID 11609.

As to the reporting requirement, PSIG has published reports analyzing disciplinary investigations involving allegations of sexual misconduct closed in 2019 and 2020. Ex. C at MONITOR 234321–22; MONITOR 234367–82. The reports identify qualifying incidents, provide required information for each file (including investigative findings and recommended discipline), and identify the remaining information required under ¶ 444, for example, the percentage of investigations criminally prosecuted and the percentage of cases referred to the Cook County States' Attorney's Office. *Id.* at MONITOR 234367–82.

The Monitor has commented that PSIG's "analysis and conclusions are thorough and compelling, with recommendations for improvement for BIA and COPA. This is an excellent report that sets the groundwork for the CPD and COPA to begin to properly and uniformly classify sexual-misconduct cases. . . ." IMR 4 Report at PageID 11609.

### D. Paragraph 481—OIG's Actions in Submitting "Five-Year" Letters and Tracking Responses

Consent Decree ¶ 481 provides:

*The City, CPD, and COPA will ensure that if CPD, COPA, or the OIG requests the Superintendent's authorization to open an investigation concerning incidents that allegedly occurred more than five years before the date that COPA, CPD, or the OIG became aware of the allegations, the Superintendent will respond within 30 days.*

As the Monitor assessed, IMR4 Report at PageID 11668–69, OIG demonstrated full and effective compliance by: (1) incorporating these requirements into its policies, (2) training relevant personnel on the requirements, and (3) demonstrating that OIG has requested the Superintendent's authorization to reopen the relevant investigations where appropriate. OIG's *Investigations Section Manual* explains the procedure by which OIG is to seek authorization from CPD's Superintendent to pursue allegations of misconduct against a CPD member where the alleged misconduct occurred more than five years before the initiation of an investigation. Ex. D, *OIG Investigations Section Manual* (Sept. 1, 2020) (MONITOR 214151–53). OIG, furthermore, delivers training to relevant personnel that outlines the process for submitting "five-year letters," and OIG tracks attendance records for those trainings. Ex. E, *Memorandum: Consent Decree Paragraph 481* (June 1, 2021) (MONITOR 244164–65). "Five-year letters" were sent during the relevant time period; each included a request to respond within 30 days. *See, e.g.*, Ex. F, *Letter to Superintendent Brown*, (July 31, 2020) (MONITOR 63775–76); Ex. G, *Letter to Superintendent Brown* (February 10, 2021) (MONITOR 225759–60). The Superintendent timely responded within thirty days of receipt of each of those three letters. *See, e.g.*, Ex. H, *Letter to Inspector General Ferguson* (August 18, 2020) (MONITOR 106665); Ex. I, *Letter to Deputy Inspector General Ferguson* (March 11, 2021) (MONITOR 228057).

### E.  Paragraph 522—Staffing and Equipment-Needs Plans

Consent Decree ¶ 522 provides:

> *Within 365 days of the Effective Date, COPA, the Deputy PSIG, and BIA will create separate staffing and equipment-needs plans. Such plans will include analyses setting forth the basis for the plans' staffing requirements and equipment needs assessments. CPD will implement the staffing and equipment-needs plans in accordance with the specified timeline for implementation.*

PSIG demonstrated compliance with the requirements of this paragraph by creating its *Staffing and Equipment Needs Assessment*, and submitting it to the Monitor on February 27, 2020,

fewer than 365 days from the effective date of the Consent Decree. Ex. J, *PSIG Staffing and Equipment Needs Plan* (Feb. 25, 2020) (MONITOR 41655–668). As the Monitor assessed, PSIG therefore demonstrated full compliance with the requirements of this paragraph. IMR4 Report at PageID 11726–27.

### F.     Paragraph 523—Revision of the Staffing- and Equipment-Needs Plan

Consent Decree ¶ 523 provides:

> *On an annual basis, COPA, the Deputy PSIG, and BIA will review and revise, if needed, each entity's respective staffing and equipment-needs plans.*

As described above, PSIG submitted its *Staffing and Equipment Needs Assessment* as required by Consent Decree ¶ 522. To demonstrate compliance with the requirements of ¶ 523, PSIG submitted a memorandum describing how OIG participates in the City of Chicago's annual budget process on an ongoing basis, including how OIG's budget reflects the needs identified in the staffing- and equipment-needs plan and how OIG's budget 2021 appropriations supported the needs identified in the plan. Ex. K, *OIG's Responsive Materials for Independent Monitoring Report 3* (Dec. 7, 2020) (MONITOR 214129–21517 at MONITOR 214155–62). As the Monitor assessed, PSIG therefore demonstrated full compliance with the requirements of this paragraph. IMR4 Report at PageID 11728–29.

### G.     Paragraph 537—Attendance of Deputy PSIG at Police Board Meetings

Consent Decree ¶ 537 provides:

> *All regular meetings convened by the Police Board that are open to the public will be attended by the CPD Superintendent or his or her designee; the Chief Administrator of COPA or his or her designee; the Deputy PSIG or his or her designee; and the Chief of BIA or his or her designee.*

As the Monitor assessed, IMR4 Report at PageID 11751, PSIG demonstrated full and effective compliance by: (1) incorporating these requirements into its policies, (2) providing appropriate training, and (3) demonstrating that PSIG or a designee has attended all required

meetings. In April 2021, PSIG's *Policies Manual* was updated to include the requirements under ¶ 537 and was distributed to all PSIG personnel. Ex. L, *Memorandum: Consent Decree Paragraph 537* (June 1, 2021) (MONITOR 244108–10). Specifically, in describing the position of Deputy Inspector General for Public Safety and accompanying duties, the PSIG *Manual* states that the Deputy Inspector "will attend all regular public meetings of the Police Board." Ex. B, *Memorandum: Consent Decree Paragraph 537* (April 25, 2021) (MONITOR 235120–71) at MONITOR 235131. The Monitor "acknowledge[s] the PSIG for its additional efforts at ensuring compliance. The [PSIG *Policies Manual*] includes a policy that ensures attendance of the PSIG at the Police Board meetings." IMR4 Report at PageID 11751.

During the fourth reporting period, the Monitor attended Police Board meetings either virtually or by phone and observed the Deputy PSIG or designee in attendance for all of these meetings. *Id.* Meeting minutes produced by the Police Board further confirm the attendance of the Deputy PSIG or designee. Ex. M, *City of Chicago Police Board Meeting Transcript* (Dec. 17, 2020, Jan. 21, 2021, and Feb. 18, 2021) (MONITOR 227592–606).

### H. Paragraph 556—Periodic Analysis and Evaluations

Consent Decree ¶ 556 provides:

> *The Deputy PSIG will conduct periodic analysis and evaluations, and perform audits and reviews as authorized by Municipal Code of Chicago § 2-56-230.*

As the Monitor assessed, IMR4 Report at PageID 11779, PSIG demonstrated full and effective compliance by: (1) incorporating these requirements into its policies, (2) providing appropriate training, and (3) demonstrating that PSIG has conducted audits. PSIG's *Policies Manual* addresses the analyses and evaluations and performs audits and reviews as authorized by the Municipal Code of Chicago. Ex. B, *Memorandum: Consent Decree Paragraph 537* (April 25, 2021) (MONITOR 235120–71) at MONITOR 235142–60. The manual also includes a revision

log, which documents updates and changes. *Id.* at MONITOR 235171. The Monitor has described this manual as "comprehensive." IMR4 Report at PageID 11779. Further, PSIG has relevant trainings supporting compliance with this provision, including: (1) Public Safety Overview; (2) Principles and Standards for OIG; (3) History and Overview of Chicago's Police Reform Effort; (4) Inspections Unit Overview; (5) Evaluations Unit Overview; (6) Evidence Collection, Analysis, and Documentation; and (7) Interviews and Note-Taking. Ex. N, *Memorandum: Consent Decree Paragraph 556*, (June 8, 2021) (MONITOR 244167–70) at MONITOR 244168.

PSIG, in addition, produces "quality and substantive reports, analyses, and evaluations," [5] as described by the Monitor. IMR4 Report at PageID 11779. As one example, PSIG recently produced a report titled "The Chicago Police Department's Use of ShotSpotter Technology."[6] Other reports responsive to § MCC 2-56-230 include the *Review of the Disciplinary Grievance Procedure for Chicago Police Department Members* and *Follow-up on the Chicago Police Department's "Gang Database"* to name just a few. Ex. N, *Memorandum: Consent Decree Paragraph 556*, (June 8, 2021) (MONITOR 244167–70) at MONITOR 244168–69. In addition, PSIG submitted (1) quarterly reports from 2020 and 2021;[7] and (2) the *Public Safety Section 2020 Annual Report*.[8] Ex. N at MONITOR 244167–70; *see also* Ex. O, *Consent Decree Paragraphs 556 and 558* (MONITOR 247983). These reports provide detailed information regarding the

---

[5] Available at: https://igchicago.org/about-the-office/our-office/public-safety-section/current-projects/.

[6] Available at: https://igchicago.org/wp-content/uploads/2021/08/Chicago-Police-Departments-Use-of-ShotSpotter-Technology.pdf.

[7] Available at: https://igchicago.org/publications/quarterly-reports/.

[8] Available at: https://igchicago.org/wp-content/uploads/2021/06/Public-Safety-Annual-Report-2020.pdf.

reviews and audits that PSIG conducted during 2020 and 2021, including hyperlinks to data dashboards displaying responsive data and trend analysis. *Id.* The 2020 annual report also announced three new data dashboards, one each for (1) arrests; (2) tactical response reports; and (3) 911 calls for police services. *Id.* The Monitor has concluded that these dashboards will be a valuable resource for both CPD and the public. IMR4 Report at PageID 11779.

I.     **Paragraph 557—Conducting Audits and Reviews Pursuant to Inspector General Standards**

Consent Decree ¶ 557 provides:

*The Deputy PSIG's audits and reviews will be conducted pursuant to the Association of Inspectors General Principles and Standards for Offices of Inspector General.*

As the Monitor assessed, IMR4 Report at PageID 11781–82, PSIG demonstrated full and effective compliance with this provision. The referenced standards are commonly referred to as the "Green Book." Such standards include, among others, independence, planning, staff qualifications, and quality assurance. Ex. P, *Memorandum: Consent Decree Paragraph 557* (April 20, 2021) (MONITOR 235172–237) at MONITOR 235207.

In February and March 2019, a five-person team from the Association of Inspectors General ("AIG") visited OIG for a week. *Id.* at MONITOR 235173. That team reviewed a large amount of documentation and met with numerous OIG employees and external stakeholders to assess OIG compliance with Green Book standards. *Id.* It was "the unanimous conclusion of [AIG] that the reviewed areas of [OIG] met all relevant major" Green Book standards "for the period under review." *Id.*

Further evidence supporting compliance here includes PSIG's *Policies Manual*, which contains specific provisions on Green Book compliance and provisions. *Id.* at MONITOR 235172. Consistent with those provisions, PSIG reports are published according to these standards;

examples include *Urgent Recommendations on the Chicago Police Department's Search Warrant Policies*[9] and *Report on Chicago's Response to George Floyd Protests and Unrest*.[10]

In addition, PSIG's Trainings include "Public Safety Overview," "History, Functions, Policies, Procedures, Principles, and Standards of Inspections and Evaluations," and "Evidence Collection, Analysis, and Documentation," to name some. *Id.* at MONITOR 235173. The Monitor has commented that training materials under this provision were "thorough and complete and that the necessary employees attended the trainings." IMR4 Report at 11781.

### J. Paragraph 558—Policies for Regular and Annual Data-Driven Reviews of CPD's Accountability Practices

Consent Decree ¶ 558 provides:

*Within 60 days of the Effective Date, the Deputy PSIG will develop policies for regularly, and at least annually, conducting data-driven reviews and audits to ensure the effectiveness of the City and CPD's accountability practices. These reviews and audits will be designed to ensure whether members of the community can readily make a complaint alleging misconduct and whether such complaints are investigated and adjudicated consistently with CPD policy, this Agreement, and the law. Reviews and audits will include:*

    *a.    analysis of the number of complaints received, the disposition of complaints by complaint type, the timeliness and average length of administrative investigations, and disciplinary actions taken;*

    *b.    analysis of complaint trends;*

    *c.    analysis of CPD's enforcement of its Rule 14, Rule 21, and Rule 22;*

    *d.    analysis of the thoroughness of administrative investigations, and of the justifications for terminating investigations before the investigative findings and recommendations;*

    *e.    analysis of disciplinary grievance procedures and outcomes; and*

---

[9] Available at: https://igchicago.org/wp-content/uploads/2021/01/OIG-Urgent-Recommendations-on-Search-Warrant-Policies.pdf.

[10] Available at: https://igchicago.org/wp-content/uploads/2021/02/OIG-Report-on-Chicagos-Response-to-George-Floyd-Protests-and-Unrest.pdf.

f.    *analysis of complainant-involved mediation.*

As the Monitor assessed, IMR4 Report at PageID 11783, PSIG's *Policies Manual* directs the PSIG to, among other responsibilities, conduct data-driven review and audits of the City and CPD's accountability practices. Ex. B at MONITOR 235143–44.This includes service call response times, beat integrity, duty restrictions for CPD members, and asset forfeiture, among other topics. *Id.* In addition, the trainings referenced in other provision (such as ¶ 562) also apply to the requirements here; trainings particularly pertinent include "Public Safety Section Fundamentals," "Conducting Performance Audits," "Writing Skills for Government Audit Professionals," and a variety of courses from the 2020 National Association for Civilian Oversight of Law Enforcement (NACOLE). Ex. Q, *Memorandum: Consent Paragraph 558*, (June 9, 2021) (MONITOR 244171–74).

Each of the specific topics enumerated in Paragraph 558 has been addressed by PSIG's work or is addressed in PSIG's annual audit plan, as described below.  Data and visualization tools responsive to subsections (a) and (b) are available on OIG's website.[11] This includes complaint notification trends, notification outcomes, notification history, notifications by district, and notifications by community area. As to subsection (c), PSIG's section projects on CPD enforcement of Rule 14, 21, and 22 are underway; the Rule 14 project is in the fieldwork phase and the Rule 21 and 22 projects are in the planning phases. *Id.* at MONITOR 244172. As to subsection (d), the closed case reviews regularly conducted by PSIG under Municipal Code of Chicago §2-56-230(c) are responsive to these requirements; extensive information about these reviews are found below, discussed as to ¶ 559. In addition, PSIG has recently published

---

[11]    Available    at    https://informationportal.igchicago.org/dashboards/public-safety/complaints-notifications/.

*Evaluation of the Use of the Affidavit Override in Disciplinary Investigations of Chicago Police Department Members*[12] and an *Advisory Concerning COPA's Practice of Administratively Terminating Disciplinary Investigations*.[13] As to subsection (e), OIG published this year the *Review of the Disciplinary Grievance Procedure for Chicago Police Department Members*.[14] Finally, as to subsection (f), a project proposal regarding the complaint-involved mediation process is detailed in PSIG's *Outlook on Police Oversight and Accountability*.[15]

In addition, the Monitor has observed that PSIG "seeks community input and feedback . . . including publishing the reports and audits on the PSIG website, social media pages [including LinkedIn, Facebook, and Twitter], local and national media, and in geographic community and community of interest meetings." IMR4 Report at PageID 1783–84.

### K. Paragraph 559—PSIG Review of Closed COPA and CPD Investigative Files

Consent Decree ¶ 559 provides:

> *The Deputy PSIG will conduct reviews of individual closed COPA and CPD administrative investigative files for thoroughness, fairness, and objectivity, and will make recommendations based on those reviews, including the recommendation that an investigation be reopened upon a finding of deficiency that materially affects the outcome of the investigation.*

In addition to the Consent Decree mandates, PSIG's review of closed disciplinary cases is governed by the Municipal Code of Chicago. *See* Ex. R, *Memorandum: Consent Decree*

---

[12] Available at: https://igchicago.org/2020/12/17/evaluation-of-the-use-of-the-affidavit-override-in-disciplinary-investigations-of-chicago-police-department-members/.

[13] Available at: https://igchicago.org/2020/09/10/advisory-concerning-the-civilian-office-of-police-accountabilitys-practice-of-administratively-terminating-disciplinary-investigations/.

[14] Available at: https://igchicago.org/wp-content/uploads/2021/05/OIG-Review-of-the-Disciplinary-Grievance-Procedure-for-Chicago-Police-Department-Members.pdf.

[15] Available at: https://igchicago.org/wp-content/uploads/2020/10/OIG-Public-Safety-Draft-2021-Outlook-on-Police-Oversight-and-Accountability.pdf.

*Paragraph 559* (April 30, 2021) (MONITOR 237359–585) at MONITOR 237359. As the Monitor assessed, IMR4 Report at PageID 11785, PSIG's *Policies Manual* provides for a complete review process for closed COPA and CPD administrative investigative files. Ex. B, *Memorandum: Consent Decree Paragraph 537* (April 25, 2021) (MONITOR 235120–71) at MONITOR 235161–66. The materials address reviews for completeness, objectivity, and fairness, including a detailed process for recommendations that investigations be reopened by COPA or the CPD, per the Consent Decree requirements. *Id.*

PSIG's *Policies Manual* directs regular Case Intake Meetings to include the specific PSIG members responsible for reviewing the closed cases and supervisory PSIG personnel, who discuss the case and collectively determine whether to make a recommendation to reopen a case. *Id.* Specifically, closed disciplinary cases are screened and presented at a weekly case review meeting, which is held every Friday. Ex. R at MONITOR 237360. The Inspections Unit screens all closed disciplinary cases to which it has access and opens a subset of those cases for more in-depth review. *Id.* at MONITOR 237361. When PSIG recommends that an investigation be re-opened, it publishes its recommendation in a de-identified summary form in its quarterly and annual reports. *Id.* at MONITOR 237362. Since 2019, the Inspections Unit has screened more than 1,600 cases and has opened 320 for further review. *Id.* at MONITOR 237361.

In addition, PSIG has training materials on the requirements of this provision, including the following: (1) Inspections Unit Overview; (2) Principles and Standards for Offices of Inspector General; (3) Case Study: OIG Investigation of Police Misconduct; and (4) NACOLE trainings. *Id.* at MONITOR 237360. Further, PSIG has issued and published several recommendations to improve future disciplinary investigations since the Inspection's Unit inception. *Id.* at MONITOR 237361.

### L.     Paragraph 561—Hiring a Full-Time Staff Member Responsible for Diversity, Equity, and Inclusion

Consent Decree ¶ 561 provides:

*The Deputy PSIG will hire a full-time staff member responsible for diversity and inclusion issues, who will have specific authority to review CPD actions for potential bias, including racial bias, on any matter within the Deputy PSIG's statutory authority. The Deputy PSIG will regularly publish reports on diversity and inclusion issues, no less frequently than on an annual basis, which will contain findings and analysis.*

As the Monitor assessed, IMR4 Report at PageID 11787–88, PSIG has shown full and effective compliance by hiring a well-qualified diversity, equity, and inclusion ("DEI") officer who has the authority and responsibilities stated under ¶ 561.

On April 1, 2021, PSIG emailed the Monitor the job listing for the DEI Director, which included requirements for education and experience, as well as job duties. Ex. S, *Memorandum: Consent Decree Paragraph 561* (May 19, 2021) (MONITOR 244041–56) at MONITOR 244044–47. Among many other responsibilities, the DEI Director is tasked with the "specific authority to review Chicago Police Department (CPD) actions for potential bias, including racial bias." *Id.* at MONITOR 244049. Overall, the DEI Director is (1) responsible for audits and reviews that focus on diversity issues; (2) provides diversity and inclusion anchored feedback; (3) stays closely involves throughout the data collection and analysis process, among other functions. *See* IMR4 Report at PageID 11787–88. These duties are reflected in PSIG's *Policies Manual*. Ex. B at MONITOR 235132, 235144, 235147, 235153, 235155–56, 235159, 235161, 235168.

On April 15, 2021, PSIG's new DEI Director, Sabreena El-Amin, began work; Director El-Amin replaced Carla Kupe, the prior director, who had left that role. *Id.* PSIG has produced Director El-Amin's resume to the Monitor. *Id.* at MONITOR 244052–54. In addition, on May 10, 2021, the Monitor and the Office of the Illinois Attorney General completed a site visit with Director El-Amin. IMR4 Report at PageID 11787–88. During this meeting, Director El-Amin and

Deputy Inspector General Witzburg discussed the role and duties of DEI director, plans for future reports, and PSIG training on diversity and inclusion topics. Ex. S at MONITOR 244041. As to training, several PSIG employees have attended eight-hour implicit bias training, others have attended one-hour implicit bias training, and PSIG's Investigative Analysts have completed eight hours of "Privilege & Oppression" training, which addressed a number of DEI topics. *Id.* at MONITOR 244042.

In addition, within the purview of its DEI Director, PSIG has produced the *Evaluation of the Demographic Impacts of the Chicago Police Department's Hiring Process*, which contains findings and recommendations about the demographic impacts in the CPD hiring process, including racial bias. *Id.* PSIG provided the report to CPD and the City's Office of Public Safety Administration ("OPSA"), to incorporate comments into the report before publication. *Id.* at MONITOR 244043. Further, PSIG has produced publicly available reports addressing topics such as (1) the breakdown of search warrants by race, gender, and neighborhood[16]; and (2) the designation of gang members by race, gender, and neighborhood.[17]

### M.    Paragraph 562—Providing Staff Members with Comprehensive Training

Consent Decree ¶ 562 provides:

> *The Deputy PSIG will provide all staff members with comprehensive initial on-boarding training and annual in-service training. The Deputy PSIG will create initial and in-service training plans and submit these plans to the Monitor and OAG for review and comment.*

---

[16]    Available at: https://igchicago.org/wp-content/uploads/2021/05/OIG-Second-Interim-Report_CPD-Search-Warrants.pdf.

[17]    Available at: https://igchicago.org/wp-content/uploads/2019/04/OIG-CPD-Gang-Database-Review.pdf.

As the Monitor assessed, IMR4 Report at PageID 11789, PSIG produced its *Policies Manual* (which contains a training policy), the required training plan, and training materials for PSIG training. Ex. T, *Memorandum: Consent Decree Paragraph 562* (June 10, 2021) (MONITOR 244175-5565. PSIG provided training materials for more than thirty courses. *Id.* at MONITOR 244176–77. Overall, PSIG employees have attended hundreds of hours of in-service training. *Id.* at MONITOR 244178. For example, six PSIG employees attended a 24-hour course on "Conducting Performance Audits" and eight PSIG employees attended a 16-hour course on "Writing Skills for Government Professionals." *Id.* The Monitor has commented that it found PSIG's training to be "thorough and comprehensive instruction." IMR4 Report at PageID 11789.

### N. Paragraph 563—Providing the Monitor with the Draft of PSIG's Annual Audit Plan

Consent Decree ¶ 563 provides:

> *At least 60 days prior to publishing its annual audit plan, the Deputy PSIG will provide the Monitor with a draft of its audit plan for review and comment.*

As the Monitor assessed, IMR4 Report at PageID 11790, PSIG has shown full and effective compliance with the material requirements here by timely submitting its annual plan to the Monitor during multiple reporting periods. *See* Ex. U, *Public Safety 2020: Vision Priorities Projects* (MONITOR 25722–35); Ex. V, *2021 Outlook on Police Oversight and Accountability* (MONITOR 139633–50).

PSIG's annual audit plan is directed by PSIG's *Policies Manual*. Ex. B at MONITOR 235143–45. The audit plan focuses on the vision, strategic priorities, and potential projects for PSIG.[18] Potential projects in the most recent iteration of the audit plan include the CPD promotion

---

[18] Available at: https://igchicago.org/2020/10/30/public-safety-draft-2021-outlook-on-police-oversight-and-accountability-for-public-comment/.

process, annual performance evaluation for officers, clearance of homicide investigations, and mediation for misconduct complaints, to name just a few. Ex. W, *2021 Outlook on Police Oversight and Accountability* (January 2021) (MONITOR 225254–71) at MONITOR 225259–64.

PSIG first submitted its annual audit plan, titled *Public Safety 2020 Vision Priorities Projects Report*, to the Monitor for review and comment 60 days before publication in the second reporting period. *See* Ex. U at MONITOR 25722–35. In the third reporting period, PSIG again met the requirements under this section by providing the Monitor with the *2021 Outlook on Police Oversight and Accountability* audit plan 60 days before publication.[19] *See* Ex. V at MONITOR 139633–50.

### O.     Paragraph 565—Meet and Confer Among COPA, PSIG, and CPD

Consent Decree ¶ 565 provides:

> *At least quarterly, COPA, the Deputy PSIG, and the President of the Police Board, or his or her designee, will meet to confer and share information regarding trends and analysis of data relating to CPD. They will jointly or separately provide any resulting recommendations for changes in CPD policy or rules, in writing, to the Superintendent. Thereafter a. the Superintendent will respond to any such recommendation within 60 days of receipt; b. the Superintendent's response will include a description of the actions that the Superintendent has taken or plans to take with respect to the issues raised in the recommendations; and c. all policy recommendations and responses to the same will be published on a City website.*

As the Monitor assessed, IMR4 Report at PageID 11791, PSIG's *Policies Manual* specifically references the requirements of this paragraph. Ex. X, *Memorandum: Consent Decree Paragraph 565* (April 25, 2021) (MONITOR 235238–39). The City has also produced correspondence from the Mayor advising the Police Board, COPA, and PSIG of the requirements

---

[19] The IMR4 Report states that PSIG first submitted its annual audit plan in the third reporting period and that PSIG submitted its next audit plan in the fourth reporting period. *See* R. 978, IMR4 Report at PageID 11790. Those dates are incorrect; the correct dates are those in the above explanation, as reflected in the cited supporting evidence.

of this paragraph. *Id.* The Police Board has produced meeting minutes from the quarterly meetings of the Police Board, COPA, and PSIG. Ex. Y, *Quarterly Meeting Minutes* (July 11, 2019; Dec. 18, 2019; March 30, 2020; June 22, 2020; Sept. 30, 2020) (MONITOR 141648–655); Ex. Z, *Quarterly Meeting Minutes* (Nov. 15, 2020) (MONITOR 237157–60).

The Monitor has also noted that "the IMT discussed these meetings with the members. . . . Each person indicated that the meetings . . . evolved over time to become a meaningful opportunity to discuss the very issues this paragraph intended." IMR4 Report at PageID 11791.

The City shared a draft of this motion in advance of it filing with the Monitor and the Office of the Attorney General and they have advised that the City can represent this motion as unopposed.

## CONCLUSION

For the reasons discussed above, City requests the Court find OIG and PSIG in full and effective compliance with all material requirements attributable to them in paragraphs 440(b), 444, 481, 522, 523, 537, 556, 557, 558, 559, 561, 562, 563, and 565 under the Consent Decree and commence the two-year sustainment period required by Consent Decree ¶ 714, and grant such further and other relief it deems necessary and appropriate.

February 11, 2021

Respectfully submitted,

CELIA MEZA
Acting Corporation Counsel of the
**CITY OF CHICAGO**

By: /s/ Allan T. Slagel
Special Assistant Corporation Counsel

Tyeesha Dixon
tyeesha.dixon@cityofchicago.org
Deputy Corporation Counsel
for Public Safety Reform
Zoe Jones
Zoe.Jones@cityofchicago.org
Assistant Corporation Counsel
CITY OF CHICAGO
121 North LaSalle Street
Room 600
Chicago, Illinois 60614
(312) 744-1806

*Attorneys for Defendant*

Allan T. Slagel (ARDC #6198470)
aslagel@taftlaw.com
Elizabeth E. Babbitt (ARDC # 6296851)
ebabbitt@taftlaw.com
Paul J. Coogan (ARDC # 6315276)
pcoogan@taftlaw.com
Anna Greve (admitted *pro hac vice*)
agreve@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive
Suite 2800
Chicago, Illinois 60601
(312) 527-4000

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STATE OF ILLINOIS,<br><br>                              Plaintiff,<br><br>               v.<br><br>CITY OF CHICAGO,<br><br>                              Defendant. | Case No. 17-cv-6260 |

# <u>LIST OF EXHIBITS</u>

**UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF A FINDING OF
FULL AND EFFECTIVE COMPLIANCE OF MATERIAL REQUIREMENTS
OF THE CONSENT DECREE FOR THE OFFICE OF INSPECTOR GENERAL
AND PUBLIC SAFETY INSPECTOR GENERAL**

**Exhibit**      **Description**

A.        Memorandum: Consent Decree Paragraph 440, 1 (June 1, 2021)
          (MONITOR 244111–63)

B.        Memorandum: Consent Decree Paragraph 537 (April 25, 2021)
          (MONITOR 235120–71)

C.        Memorandum: Consent Decree Paragraph 444 (April 30, 2021)
          (MONITOR 234320–82)

D.        OIG Investigations Section Manual (Sept. 1, 2020) (MONITOR 214151–53)

E.        Memorandum: Consent Decree Paragraph 481 (June 1, 2021)
          (MONITOR 244164-65)

F.        Letter to Superintendent Brown, (July 31, 2020) (MONITOR 63775–76)

G.        Letter to Superintendent Brown (February 10, 2021) (MONITOR 225759–60)

H.        Letter to Inspector General Ferguson (August 18, 2020) (MONITOR 106665)

I.        Letter to Deputy Inspector General Ferguson (March 11, 2021)
          (MONITOR 228057)

J.        PSIG Staffing and Equipment Needs Plan (Feb. 25, 2020)
          (MONITOR 41655-668)

| Exhibit | Description |
|---------|-------------|
| K. | OIG's Responsive Materials for Independent Monitoring Report 3 (Dec. 7, 2020) (MONITOR 214129–21517) |
| L. | Memorandum: Consent Decree Paragraph 537 (June 1, 2021) (MONITOR 244108-10) |
| M. | City of Chicago Police Board Meeting Transcript (Dec. 17, 2020, Jan. 21, 2021, and Feb. 18, 2021) (MONITOR 227592–606) |
| N. | Memorandum: Consent Decree Paragraph 556, (June 8, 2021) (MONITOR 244167–70) |
| O. | Consent Decree Paragraphs 556 and 558 (MONITOR 247983) |
| P. | Memorandum: Consent Decree Paragraph 557 (April 20, 2021) (MONITOR 235172–237) |
| Q. | Memorandum: Consent Paragraph 558, (June 9, 2021) (MONITOR 244171–74) |
| R. | Memorandum: Consent Decree Paragraph 559 (April 30, 2021) (MONITOR 237359–585) |
| S. | Memorandum: Consent Decree Paragraph 561 (May 19, 2021) (MONITOR 244041–56) |
| T. | Memorandum: Consent Decree Paragraph 562 (June 10, 2021) (MONITOR 244175-5565) |
| U. | Public Safety 2020: Vision Priorities Projects (MONITOR 25722–35) |
| V. | 2021 Outlook on Police Oversight and Accountability (MONITOR 139633–50) |
| W. | 2021 Outlook on Police Oversight and Accountability (January 2021) (MONITOR 225254–71) |
| X. | Memorandum: Consent Decree Paragraph 565 (April 25, 2021) (MONITOR 235238–39) |
| Y. | Quarterly Meeting Minutes (July 11, 2019; Dec. 18, 2019; March 30, 2020; June 22, 2020; Sept. 30, 2020) (MONITOR 141648–655) |
| Z. | Quarterly Meeting Minutes (Nov. 15, 2020) (MONITOR 237157–60) |