IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STATE OF ILLINOIS,<br><br>                             Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO,<br><br>                            Defendant. | Case No.: 1:17-cv-06260<br><br>Honorable Robert M. Dow Jr. |

**Stipulation Regarding Search Warrants, Consent Decree Timelines,
and the Procedure for "Full and Effective Compliance"**

1. Subject to the approval of the Court, the City of Chicago ("City") and the Office of the Illinois Attorney General ("OAG")—collectively, the Parties—and the Independent Monitoring Team ("IMT") agree to the following stipulation regarding the scope and applicability of the Consent Decree (*State of Illinois v. City of Chicago*, 17-CV-6260) for the following: (1) search warrants; (2) timelines; and (3) the procedure for determining "full and effective compliance."

2. Unless otherwise specified, this Stipulation incorporates all defined terms from the Consent Decree and does not alter or change the other requirements, deadlines, or terms of the Consent Decree. Any additional stipulations to the Consent Decree, including those related to paragraphs cited in this Stipulation, are subject to the approval of the Parties and the Court. *See* Consent Decree ¶ 696.

**I.**     **Search Warrants**

3. The Parties agree that ¶¶ 53–55 of the Consent Decree apply to—but are not limited to—Chicago Police Department ("CPD") search warrants:

*53. CPD will, consistent with this Agreement, ensure that its policies and practices prohibit discrimination on the basis of any protected class under federal, state, and local law, including race, color, sex, gender identity, age, religion, disability, national origin, ancestry, sexual orientation, marital status, parental status, military status, source of income, credit history, criminal record, or criminal history. CPD's policies and practices will prohibit retaliation consistent with Section 6-101 of the Illinois Human Rights Act (eff. Jan, 1, 2015) and Section 2-160-100 of the Municipal Code of Chicago (amended Oct. 11, 2017).*

*54. CPD will continue to require that all CPD members interact with all members of the public in an unbiased, fair, and respectful manner. CPD will require that*

> *officers refrain from using language or taking action intended to taunt or denigrate an individual, including using racist or derogatory language.*
>
> *55. CPD will prohibit officers from using race, ethnicity, color, national origin, ancestry, religion, disability, gender, gender identity, sexual orientation, immigration status, homeless status, marital status, parental status, military discharge status, financial status, or lawful source of income when making routine or spontaneous law enforcement decisions, except when such information is part of a specific subject description.*

4. Thus, the City and CPD must demonstrate that the search-warrant practices (1) are not unlawfully discriminatory or retaliatory and (2) occur in an unbiased, fair, and respectful manner. Specifically, CPD must implement sufficient policies, training, data collection, supervision, and accountability systems to ensure that CPD's planning for, internal approval processes for, execution of, and after-action review of search warrants are carried out in a manner that fully complies with the Constitution and laws of the United States and the State of Illinois and are in accordance with best practices.[1]

5. The Parties further agree that the Implementation, Enforcement, and Monitoring provisions in Part XII of the Consent Decree apply to the search-warrant requirements described herein, including but not limited to the review, comment, and objection processes described in ¶¶ 627–30, 633, and 641.

6. The Parties further agree that CPD will submit any new or revised policies regarding search warrants to the OAG and the IMT for review and comment on a timeline agreed to by the Parties. The Parties will endeavor in good faith to resolve any disagreements regarding the timeline and such new or revised policies. CPD also agrees to develop new or revised training related to these policies, pursuant to Part I of this Stipulation, to be offered initially to all relevant officers as soon as practicable. If the Parties and the IMT are unable to resolve any disagreements regarding the timeline or such new or revised policies, either Party may ask the

---

[1] The Parties further agree that the City and CPD must also continue to fulfill other Consent Decree requirements during the planning for, internal approval processes for, execution of, and after-action review of search warrants. The following is a non-exhaustive list of paragraphs that CPD must continue to comply with during the execution of warrants: ¶¶ 32 (regarding developmentally appropriate interactions with youth and children), 35 (regarding *Miranda* warnings for juveniles), 36 (regarding the use of handcuffs or other restraints on juveniles), 37 (regarding training on problem-solving tactics and effective communication/interpersonal skills), 156 (regarding use-of-force policies and training; supervision; and accountability systems), 157 (regarding the collection, analysis, and use of information on the use-of-force and de-escalation techniques by CPD members), 162 (regarding providing people with the opportunity to comply with lawful orders), 164 (regarding only using force that is objectively reasonable, necessary, and proportional), 189 (regarding pointing a firearm), 238 (regarding the need to record video and audio of law enforcement activities), 352 (regarding effective supervision requirements for all supervisors), 509 (regarding related Central Management System requirements), 546 (regarding annual report requirements), and 550 (regarding annual and quarterly report requirements)**.**

    Court to resolve such dispute following the Consent Decree's workout process. *See* ¶ 630, *et al*.

## II. Consent Decree Timelines

7. In light of the *challenges* to implementing the Consent Decree—as reflected in each of the IMT's semiannual reports to date—the Court and the IMT do not believe that the City will achieve full and effective compliance with the Consent Decree within five years of the effective date (March 1, 2024). *See* ¶ 714. As a result, the City agrees to endeavor to achieve full and effective compliance by the end of the 16th reporting period (June 30, 2027), eight years after the effective date of the Consent Decree. Likewise, the Parties agree that the IMT's comprehensive assessment—and corresponding responsibilities—should occur after the 8th reporting period (June 30, 2023). *Cf.* ¶¶ 657–60.

8. Further, the Parties acknowledge that the Consent Decree has (1) specific deadlines created by the language of the Consent Decree ("specific deadlines") (*see, e.g.*, ¶¶ 14, 58, 99, 172, 258, 606, 271, 348, 436, 382) and (2) recurring obligations created by, in part, the nature of the reforms involved, such as quarterly reports and annual trainings ("recurring obligations") (*see, e.g.*, ¶¶ 18, 89, 122, 245, 271, 550). On March 27, 2020, in response to the COVID-19 pandemic, the Court extended Consent Decree deadlines by the COVID-19 Executive Order No. 8 issued by the Governor of the State of Illinois (64 days).

9. Given the City's and the CPD's intention to reach full and effective compliance with the Consent Decree in 2027 and the ongoing efforts to mitigate the impact of COVID-19, the Parties agree that the Monitor will track specific deadlines and recurring obligations differently: The specific deadlines will continue to be extended by 64 days, but recurring obligations will return to the appropriate cadences (*e.g.*, monthly, quarterly, annually). For each paragraph and requirement, the Parties and the IMT will—following the text of the Consent Decree—collaborate to ensure recurring requirements are scheduled to enable the City, CPD, and other City entities to reach compliance as efficiently as possible and in accordance with the purposes of each requirement (*e.g.*, effective and regular training or data analysis).

## III. Procedure for Determining Full and Effective Compliance

10. Paragraph 715 states that, upon request by the City, "the Court will determine whether the City is in full and effective compliance regarding any of the material requirements under the [Consent Decree]," and that the Court's "determination of full and effective compliance will start the relevant one- or two- year compliance periods detailed in Paragraph 714."

11. The Parties agree that the Court may accept the IMT's determination that the City has met "Full compliance" in a semiannual report and may retroactively start the

3


relevant one- or two-year compliance period at the date the IMT filed the corresponding semiannual report.

Respectfully submitted on this 25th day of March, 2022.

| | |
|---|---|
| KWAME RAOUL<br>Attorney General for the<br>**State of Illinois** | CELIA MEZA<br>Corporation Counsel of the<br>**City of Chicago** |
| By: /s/ Christopher G. Wells<br>Christopher G. Wells<br>Chief, Public Interest Division<br>Office of the Illinois Attorney General<br>100 West Randolph Street<br>Chicago, IL 60601<br>(312) 814-3000<br>christopher.wells@ilag.gov | By: /s/ Allan T. Slagel<br>Allan T. Slagel<br>Special Assistant Corporation Counsel<br>aslagel@taftlaw.com<br>Elizabeth E. Babbitt<br>Paul J. Coogan<br>Taft Stettinius & Hollister<br>111 East Wacker Drive, Suite 2800<br>Chicago, IL 60601<br>(312) 527-4000 |
| Amy Meek<br>Bureau Chief, Civil Rights Bureau<br>Mary J. Grieb<br>Deputy Bureau Chief, Civil Rights Bureau<br>Aaron P. Wenzloff<br>Assistant Attorney General | Zoe Jones<br>zoe.jones@cityofchicago.org<br>Assistant Corporation Counsel<br>Public Safety Reform Division<br>121 North LaSalle Street<br>Room 600<br>Chicago, Illinois 60614<br>(312) 744-1806 |

SO ORDERED this 25th day of March, 2022.

_____
ROBERT M. DOW, JR.
United States District Judge
Northern District of Illinois