**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STATE OF ILLINOIS, | |
| Plaintiff, | |
| v. | Case No. 17-cv-6260 |
| CITY OF CHICAGO, | |
| Defendant. | |

**UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT FOR A PARTIAL
FINDING OF FULL AND EFFECTIVE COMPLIANCE OF MATERIAL
REQUIREMENTS OF THE CONSENT DECREE RELATED TO POLICE BOARD**

The policing Consent Decree entered into by the City of Chicago ("City") and the State of Illinois delineates multiple requirements related to public safety reform across multiple City entities. Once the City achieves full and effective compliance with Consent Decree requirements, it may: (1) request from the Court a judicial finding of full and effective compliance for those requirements; and (2) after either one or two years (depending on the subject matter of the requirement), move the Court for a finding that the City has maintained full and effective compliance and those requirements can be terminated from the City's obligations under the Consent Decree. (Dkt. 703-1 at ¶¶ 714–716). The City here moves the Court for a finding that the City has achieved full and effective compliance with the material requirements of several Consent Decree Paragraphs pertaining to the Chicago Police Board (¶¶ 533, 534, 535, 536, 537, 538, 539, 565), and for commencement of the required two-year sustainment period for these paragraphs.[1]

---

[1] Note that this is a motion for a *partial* finding of full and effective compliance pertaining to the Police Board. This motion does not cover additional Consent Decree paragraphs pertaining to the Police Board which are not listed in this motion and which may not yet have been assessed to be in full compliance.

## **BACKGROUND**

On August 29, 2017, the State of Illinois filed a complaint against the City alleging that the Chicago Police Department ("CPD") engages in unconstitutional practices. (Dkt. 1). Though the City has not admitted liability, to avoid extensive litigation, and in the interest of ensuring that the City provides effective and constitutional public safety to its residents, the City and the State of Illinois agreed to enter into a Consent Decree in lieu of litigating the complaint further. (Dkt. 703-1). The Consent Decree delineates hundreds of requirements for public safety reform across various topic areas. The Consent Decree contains requirements for the City and several of its agencies, including, most notably, CPD. The Consent Decree is overseen by the Independent Monitor, who, together with her team, assesses and reports on whether the City is implementing the requirements of the Consent Decree. (Dkt. 703-1 at ¶ 610). These requirements are delineated numerically in the Consent Decree by numbered paragraphs, and the Monitor's report assesses the City's progress on a paragraph-by-paragraph basis.

One of the City entities covered by the Consent Decree is the Chicago Police Board. The Police Board is made up of civilian members who decide disciplinary cases involving CPD members. The Police Board's activities are coordinated by an Executive Director, who is a City employee. Police Board proceedings commence when the CPD Superintendent files written charges with the Board. (*See* Exhibit 1, Police Board Rules of Procedure at § I.A). Police Board Hearing Officers oversee disciplinary proceedings and file written reports detailing the evidence presented at the hearings. (*See* Exhibit 1, Police Board Rules of Procedure at §§ I.E. III.G). Police Board Members review the hearing officers' report and record evidence, including video recordings of the hearing, and render disciplinary decisions. (*See* Exhibit 1, Police Board Rules of Procedure at § III.H).

The Consent Decree paragraphs delineating requirements for the Police Board fall within the Accountability and Transparency Section of the Consent Decree, which focuses on developing systems to hold CPD members accountable for misconduct and provides for increased transparency in the process of investigating such misconduct in order to foster public trust. (*See, e.g.,* Dkt. 703-1 at ¶¶ 419–421). The paragraphs pertaining to the Police Board include requirements for adequate staffing and resources (*see, e.g.,* Dkt. 703-1 at ¶¶ 521, 531–33), procedures for conducting disciplinary proceedings (*see, e.g.,* Dkt. 703-1 at ¶¶ 534–36), reporting requirements (*see, e.g.,* Dkt. 703-1 at ¶ 555), and more.

## **LEGAL STANDARD**

"A consent decree is a court order that embodies the terms agreed upon by the parties as a compromise to litigation" and, "[f]or purposes of construction, . . . is essentially a contract." *United States v. Alshabkhoun*, 277 F.3d 930, 934 (7th Cir. 2002). This means that "[a] court interprets the meaning of a consent decree in the same way it interprets the meaning of a contract." *Bailey v. Roob*, 567 F.3d 930, 940 (7th Cir. 2009). Where Illinois state contract law applies to a Consent Decree, the Court's "'primary objective'" in construing the decree must be "'to give effect to the intent of the parties.'" *Holmes v. Godinez*, 991 F.3d 775, 780 (7th Cir. 2021) (quoting *Peoples Gas Light & Coke Co. v. Beazer E., Inc.*, 802 F.3d 876, 881 (7th Cir. 2015)). To do so, the Court "'must first look to the language of the contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent'" *Id.*

In order to determine whether the City has completed all or a portion of its obligations under the Consent Decree, the Consent Decree provides for a two-step process. First, upon request by the City, the Court will determine whether the City "is in full and effective compliance regarding any of the material requirements under the Agreement." (Dkt. 703-1 at ¶¶ 714–16). The City must demonstrate by a preponderance of the evidence that it has achieved full and effective

3

compliance. (Dkt. 703-1 at ¶ 720). "The Court's determination of full and effective compliance will start the relevant one- or two- year compliance periods," depending on the subject matter of the requirement. (Dkt. 703-1 at ¶ 715).

Thereafter, once the relevant one- or two-year period has passed, the City may request that the Court determine that the City has maintained full and effective compliance for the relevant period (one or two years, dependent on the subject matter). (Dkt. 703-1 at ¶¶ 714–16). If the Court so finds, then the City has met its obligations under the Consent Decree as to that requirement and the Monitor will no longer review or assess the requirement. (Dkt. 703-1 at ¶¶ 714–716).

Per the Consent Decree, full and effective compliance "means sustained compliance with all material requirements of this Agreement. No specific numerical threshold will be required to demonstrate full and effective compliance. Non-compliance with mere technicalities, or temporary or isolated failure will not constitute failure to achieve full and effective compliance." (Dkt. 703-1 at ¶¶ 717).

## ARGUMENT

The City moves here for a determination by the Court that it is in full and effective compliance with several requirements applying to the Police Board. As detailed below, the City demonstrates by a preponderance of the evidence that the Police Board has achieved full and effective compliance with the requirements of ¶¶ 533, 534, 535, 536, 537, 538, 539, and 565 of the Consent Decree. These paragraph requirements are discrete and apply solely to the Police Board. They are therefore severable from the Consent Decree without impeding the Monitor's ability to assess other paragraphs.[2]

---

[2] "To terminate a portion of the Agreement, the Court must find that that portion of the Agreement is sufficiently severable from the other requirements of the Agreement such that partial termination

The Court should find the Police Board (and therefore the City) to be in full and effective compliance with these paragraphs. Because the provisions relevant to the Police Board fall within the Accountability and Transparency section of the Consent Decree, the Court's determination of full and effective compliance will start a two-year maintenance period. (Dkt. 703-1 at ¶¶ 714-715). Per the *Stipulation Regarding Search Warrants, Consent Decree Timelines, and the Procedure for "Full and Effective Compliance"* (Dkt. 1011), the Court should retroactively start the two-year maintenance period as of October 8, 2021, the date the IMT filed its Fourth Independent Monitoring Report (Dkt. 978). The IMT and OAG have agreed that the City may represent this Motion as unopposed.

The Independent Monitoring Team ("IMT"), in its semi-annual reports, assesses whether the City has "substantially complied with the requirements of this Agreement." (Dkt. 703-1 at ¶ 642). Per the Consent Decree, "[c]ompliance with a requirement means that the City and CPD: (a) have incorporated the requirement into policy; (b) have trained all relevant personnel as necessary to fulfill their responsibilities pursuant to the requirement; and (c) are carrying out the requirement in actual practice." (Dkt. 703-1 at ¶ 642). In its semi-annual reports, the IMT reports what level of compliance the City has achieved for each paragraph—preliminary, secondary, or full compliance. The Monitor develops methodologies for assessing compliance, which it shares with the City and the OAG. (Dkt. 703-1 at ¶ 655). The IMT has assessed the City to be in operational compliance with the below paragraphs, as reflected in the October 8, 2021, Fourth Independent Monitoring Report. (Dkt. 978).

---

would not impede the Monitor's ability to assess the City's compliance with other requirements of this Agreement." (Dkt. 703-1 at ¶¶ 719).

I.      Paragraph 533

Consent Decree ¶ 533 provides that:

*Within 180 days of the Effective Date, the Police Board will submit selection criteria for Police Board hearing officers to the Monitor and OAG for review and comment. The criteria will be drafted to help identify individuals who possess sufficient competence, impartiality, and legal expertise to serve as hearing officers. The selection criteria will be published on the Police Board's website. The City and the Police Board will ensure that the selection criteria are the basis for future selection of Police Board hearing officers.*

As indicated in the IMT's Fourth Monitoring Report, the City has demonstrated operational (full) compliance with this requirement. (Dkt. 978 at 837–38[3]). In assessing the Police Board, the IMT applied the standard three-pronged methodologies; the IMT used policy and data sources to assess whether the Police Board had achieved policy (preliminary) compliance, training sources to assess whether the Police Board had achieved training (secondary) compliance, and for operational (full) compliance, determined "whether the City and the Police Board have sufficiently implemented their policies and training." (*See* Exhibit 2, IMT's December 31, 2021, Updated Proposed Methodologies).[4]

---

[3] Page citations are to the page number of the PDF document itself, rather than to the page number listed in the report.

[4] Further details on which sources the IMT reviews to assess compliance are available on the "Key" Tab of the IMT's December 31, 2021, Updated Proposed Methodologies. For example, for policy sources, the IMT:

> may consider the following assessment sources, among others: all relevant policies (including drafts, General Orders, Standard Operating Procedures (SOPs), and any other rules or directives), underlying materials and primary sources for applicable best practices; public postings, communications with representatives from the City, the CPD (such as personnel from the Research and Development Unit), COPA, the Police Board, and the community; City, the CPD, and other relevant City entity websites and public postings; and materials from or meetings with various internal and community working groups.

With review and feedback from the IMT and OAG, the Police Board developed its Police Board Hearing Officer Selection Criteria, which are available online at https://www.chicago.gov/city/en/depts/cpb/supp_info/consent-decree.html. (*See* Exhibit 3, Police Board Hearing Officer Selection Criteria). The criteria include that Hearing Officers must be attorneys with extensive trial experience, be persons of integrity who can remain impartial, and not be current employees of the City's Police Department, Law Department, or Civilian Office of Police Accountability in the preceding three years. The IMT found the finalization of these criteria to satisfy preliminary compliance.[5] (Dkt. 978 at 837–38).

To assess secondary compliance, the IMT considered whether relevant City personnel were appropriately trained on the requirements of ¶ 533. The IMT determined that the Police Board Hearing Officer Selection Criteria "had been sufficiently disseminated and educated on so as to ensure that the Police Board Hearing Officer Selection Criteria would be appropriately followed." (Dkt. 978 at 837–38). The IMT based this determination on a June 2021 submission of materials which included the Police Board's Standard Operating Procedures and Policies manual. This manual serves as a resource for the Police Board's Executive Director and includes a section detailing the Hearing Officer selection criteria, the process for posting a position opening and reviewing applications, and steps for onboarding the selected candidates. (*See* Exhibit 4, Police

---

[5] In its First Monitoring Report, the IMT stated the City did not meet the 180-day deadline for this paragraph, which fell on August 28, 2019. (Dkt. 844 at 356). The Police Board developed the criteria in June 2019 and submitted them to the IMT on August 30, 2019. The criteria were posted publicly online prior to the deadline, from June 26 through August 22, 2019. (*See* Exhibit 5, August 30, 2019, Letter from the City re Par. 533, Police Board Hearing Officer Selection Criteria). Regardless, the IMT has assessed deadlines separately from compliance. This addresses the concern that, if the City missed a deadline, the City would never be able to achieve compliance with a requirement. (*See, e.g.*, Dkt. 978 at 315, (noting that, for ¶ 174, CPD achieved preliminary compliance although it missed the deadline stated in the paragraph); *see also* Dkt. 703-1 at ¶ 717 (indicating that a temporary failure does not preclude full and effective compliance)).

Board Standard Operating Procedures and Policies at § 2.1). Per the Standard Operating Procedures and Policies, the Executive Director is responsible for providing new Hearing Officers with materials including the Police Board Rules of Procedure, and meeting with new Hearing Officers to review the Rules and other materials relevant to Police Board proceedings. (*See* Exhibit 4, Police Board Standard Operating Procedures and Policies at § 2.1.3).

To assess full compliance, the IMT considered whether the Police Board had applied the criteria and process outlined in its manual to select a Police Board Hearing Officer when a vacancy opened. The IMT determined that the Police Board had followed this process and noted: "Throughout the hiring process, the Police Board provided monthly updates to the IMT and OAG, demonstrating their adherence to the selection criteria. For example, the selection process included interviews by the Hearing Officer Search Committee and interviews of the final three candidates (of 26 applicants) by the full Police Board." (*See, e.g.*, Dkt. 978 at 837). In addition to providing updates, the City also produced application materials for the two selected candidates and a report on the selection process. The report described how and where the position was posted, and the steps the search committee took to vet the selected candidates. (*See* Exhibit 6, March 2021 Police Board Hearing Officer Selection Submission).

The Court should find the City to be in full and effective compliance with the requirements of ¶ 533 based on the above materials, consistent with the Monitor's assessments. As required by the plain text of the paragraph, the Police Board has developed selection criteria for Police Board Hearing Officers, published those criteria, and is ensuring that the criteria are the basis for selection of Hearing Officers. The Police Board has complied with all material requirements of this paragraph.

In consultation with the City and the OAG, the IMT has also proposed a methodology to assess whether the Police Board is maintaining full and effective compliance during the two-year period. The IMT plans to review from the "Police Board (each reporting period): a letter indicating whether any hearing officer vacancies arose during the past six months, and if so, evidence demonstrating the Police Board followed its Officer Selection Criteria." (*See* Exhibit 2, IMT's December 31, 2021, Updated Proposed Methodologies). In December 2021, the Police Board submitted a letter indicating that no vacant Hearing Officer positions arose during the Fifth Monitoring Period (July 1, 2021 through December 31, 2021). (*See* Exhibit 7, December 2021 Police Board Letter re ¶ 533). Pending the Court's finding, the Police Board will continue to follow the IMT's proposed methodology until it completes the two-year period.

II.     Paragraph 534

Consent Decree ¶ 534 provides that:

*In any disciplinary action requiring the vote of the Police Board, the City will ensure:*

> a.     *a hearing officer will preside over the disciplinary proceedings; and*

> b.     *disciplinary hearings will be videotaped in their entirety.*

As indicated in the IMT's Fourth Monitoring Report, the City has demonstrated operational (full) compliance with this requirement. (Dkt. 978 at 839). In assessing the Police Board, the IMT applied the standard three-pronged methodologies; the IMT used policy sources to assess whether the Police Board had achieved policy (preliminary) compliance, training sources to assess whether the Police Board had achieved training (secondary) compliance, and for operational (full) compliance, determined "whether the City and the Police Board have sufficiently implemented their policies and training." (*See* Exhibit 2, IMT's December 31, 2021, Updated Proposed Methodologies).

To demonstrate preliminary compliance, the City submitted: (1) Section 2-84-030 of the Municipal Code of Chicago, which authorizes Hearing Officers to preside over Police Board disciplinary hearings and requires the Hearing Officers to conduct disciplinary hearing in accordance with the provisions of the Code and the Board's Rules of Procedure (s*ee* Exhibit 8, Excerpts from the Municipal Code of Chicago); and (2) the Board's Rules of Procedure, which require each disciplinary case to be assigned for hearing to a Hearing Officer and that the hearing be video recorded in its entirety (*see* Exhibit 1, Police Board Rules of Procedure at §§ I.E & III.C). The code provision and Rules of Procedure jointly memorialize the requirements of ¶ 534, satisfying preliminary compliance. To demonstrate secondary compliance, the City submitted the Police Board Standard Operating Procedures and Policies manual, which details the steps the Executive Director takes to train Hearing Officers on the Rules of Procedure—those rules extensively outline the specific procedures Hearing Officers must follow. (*See* Exhibit 4, Police Board Standard Operating Procedures and Policies at §2.1.3). As to full compliance, the Monitor has viewed video recordings of Police Board disciplinary hearings. The IMT determined that these materials demonstrated that the Police Board is following its own procedures and "acting in accordance with ¶ 534's mandate." (Dkt. 978 at 839).

The Court should find the City to be in full and effective compliance with the requirements of ¶ 534 based on the above materials, consistent with the Monitor's assessments. As required by the plain text of the paragraph, the Police Board is ensuring that a hearing officer presides over disciplinary proceedings and that those proceedings are videotaped. The Police Board has complied with all material requirements of this paragraph.

In consultation with the City and the OAG, the IMT has also proposed a methodology to assess whether the Police Board is maintaining full and effective compliance during the two-year

period. The IMT plans to review from the "Police Board (each reporting period): a letter detailing the number of cases requiring a vote of the Police Board in the last six months, and confirming whether a Hearing Officer presided over each proceeding and whether the hearings were videotaped. The Police Board will submit a sample of these recordings and will make available other records upon request." (*See* Exhibit 2, IMT's December 31, 2021, Updated Proposed Methodologies). Pending the Court's finding, the Police Board will continue to follow the IMT's proposed methodology until it completes the two-year period.

III.     Paragraph 535

Consent Decree ¶ 535 provides that:

*Prior to any vote by the Police Board following any disciplinary hearing, the City will ensure:*

>      *a.     all Police Board members are required to watch and certify that they have watched the videotape of the entire evidentiary hearing;*

>      *b.     all Police Board members are provided copies of the complete record, including demonstrative exhibits;*

>      *c.     hearing officers will prepare a written report that sets forth evidence presented at the hearing: (i) in support of the charges filed; (ii) in defense or mitigation; and (iii) in rebuttal, including evidence and aggravation, if any; the hearing officer's report will also include information relating to witness credibility;*

>      *d.     the Police Board may, at its discretion, ask a hearing officer to additionally prepare a written report and recommendation that sets forth findings of fact and conclusions of law, including any findings relating to witness credibility;*

>      *e.     the parties before the Police Board will have 14 days to review the hearing officer's report, and recommendation, and file any written objections; and*

>      *f.     all Police Board members will review de novo the hearing officer's report and any recommendation, and the parties' written objections to the same.*

As indicated in the IMT's Fourth Monitoring Report, the City has demonstrated operational (full) compliance with this requirement. (Dkt. 978 at 840–41). In assessing the Police Board, the IMT applied the standard three-pronged methodologies; the IMT used policy and data sources to assess whether the Police Board had achieved policy (preliminary) compliance, training sources to assess whether the Police Board had achieved training (secondary) compliance, and for operational (full) compliance, determined "whether the City and the Police Board have sufficiently implemented their policies and training." (*See* Exhibit 2, IMT's December 31, 2021, Updated Proposed Methodologies).

The IMT based its determination on a June 2021 submission of materials. (*See* Exhibit 8, Excerpts from the Municipal Code of Chicago; Exhibit 1, Police Board Rules of Procedure; Exhibit 4, Police Board Standard Operating Procedures and Policies). Though the IMT did not parse out its determination by preliminary, secondary, and full compliance, to demonstrate preliminary compliance, the City submitted (1) Section 2-84-030 of the Municipal Code of Chicago, which requires Board members to read the record of disciplinary cases (s*ee* Exhibit 8, Excerpts from the Municipal Code of Chicago); (2) the Board's Rules of Procedure, particularly, Section III.H. and Appendix C, which require Board members to read the complete record and view the video recording of the entire hearing, and Section III.G. which discusses the Hearing Officer's report (*see* Exhibit 1, Police Board Rules of Procedure at §§ III.H, III.G, Appendix C); and (3) the Police Board's Standard Operating Procedures and Policies manual, which documents the procedure for providing the Board members with the video recording of the entire evidentiary hearing and the record of the hearing (s*ee* Exhibit 4, Police Board Standard Operating Procedures

and Policies at § 3.2.2). These materials jointly memorialize the requirements of ¶ 535, satisfying preliminary compliance.[6]

As to secondary compliance, the above referenced materials are disseminated to ensure that Police Board members and Hearing Officers are sufficiently educated on the requirements of ¶ 535. The City submitted the Police Board Standard Operating Procedures and Policies, which details the steps the Executive Director takes to familiarize Hearing Officers with the Rules of Procedure, relevant to ¶ 535(c) & (d). (*See* Exhibit 4, Police Board Standard Operating Procedures and Policies at §2.1.3). And the Standard Operating Procedures and Policies serves as a training resource for the Police Board's Executive Director as to the requirement of all Police Board personnel. Further, the Police Board submits with this motion a letter detailing the steps the Executive Director takes to onboard new Police Board members. (*See* Exhibit 10, February 22, 2022 Letter re On-Boarding Process for New Police Board Members).

To assess full compliance, the IMT stated that it reviewed "written transcript[s], which included exhibits, showing that Police Board members receive complete records for review before a Police Board vote." (Dkt. 978 at 835–36). Additionally, in December 2021, the Police Board submitted: (1) written decisions, which document that the Board members reviewed the record of the hearing and certified that they viewed the video recording of the hearing; (2) emails to Board members and screenshots of the Board's SharePoint file-sharing site that document that the Board members were provided with a copy of the complete record of the hearing; and (3) Hearing Officer reports and any responses thereto. (*See* Exhibit 9, December 2021 Police Board Submission of

---

[6] The IMT noted that these materials memorialized ¶ 535's subsections (a) and (c)–(f). (Dkt. 978 at 840–41). The Rules of Procedure Section III.H and Section 2-84-030 of the Municipal Code of Chicago, however, require Police Board Members to read the complete record of proceedings. (*See* Exhibit 1, Police Board Rules of Procedure at § III.H; Exhibit 8, Excerpts from the Municipal Code of Chicago). Inherent in this requirement is that Police Board Members receive the record.

Materials re ¶ 535). These materials showed that the Police Board complied with the requirements of ¶ 535 in <u>all</u> cases over which the Police Board presided over in the six months prior.

The Court should find the City to be in full and effective compliance with the requirements of ¶ 535 based on the above materials, consistent with the Monitor's assessments. As required by the plain text of the paragraph, the Police Board is ensuring that Police Board members are viewing and reading relevant proceeding materials and reports, that Hearing Officers are drafting reports as required, and the parties are given 14 days to review the Hearing Officer's report and recommendation and file any written objections. The Police Board has complied with all material requirements of this paragraph.

In consultation with the City and the OAG, the IMT has also proposed a methodology to assess whether the Police Board is maintaining full and effective compliance during the two-year period. The IMT plans to review from the "Police Board (each reporting period): a letter detailing the number of disciplinary hearings held in the last six months and indicating whether the sub-requirements of (a)-(f) were met in each hearing. Police Board will identify any hearing in which any of the sub-paragraphs were not complied with and provide an explanation for any instance of non-compliance. The Police Board will provide a sample of materials demonstrating compliance and will make other relevant records available for review upon request." (*See* Exhibit 2, IMT's December 31, 2021, Updated Proposed Methodologies). Pending the Court's finding, the Police Board will continue to follow the IMT's proposed methodology until it completes the two-year period.

IV.    <u>Paragraph 536</u>

Consent Decree ¶ 536 provides that:

*As part of the Police Board proceedings, the parties to the Police Board case (the Superintendent and the involved CPD member) will be given access to the CPD member's complete disciplinary file and will have the opportunity to move for entry*

14

*into the record of proceedings any relevant aspect of the CPD member's disciplinary file, as permitted by law and any applicable collective bargaining agreements.*

As indicated in the IMT's Fourth Monitoring Report, the City has demonstrated operational (full) compliance with this requirement. (Dkt. 978 at 842). In assessing the Police Board, the IMT applied the standard three-pronged methodologies; the IMT used policy sources to assess whether the Police Board had achieved policy (preliminary) compliance, training sources to assess whether the Police Board had achieved training (secondary) compliance, and for operational (full) compliance, determined "whether the City and the Police Board have sufficiently implemented their policies and training." (*See* Exhibit 2, IMT's December 31, 2021, Updated Proposed Methodologies).

The IMT based its determination primarily on the Police Board's Rules of Procedure. As determined by the IMT, the Rules of Procedure demonstrate both preliminary and secondary compliance. Specifically, Section II.D of the Rules of Procedure memorializes the requirements of ¶ 536, and Section II.J.10 and Appendix A provide additional detail, ensuring that both parties have access to a member's disciplinary record upon request and requiring the hearing officer to specifically inquire whether the parties have obtained the records and wish to move for entry of the record. (*See* Exhibit 1, Police Board Rules of Procedure at §§ II.J.10 and Appendix A). As to secondary compliance, as noted in Section III, *supra*, the Rules of Procedure are disseminated to and discussed with Police Board members and Hearing Officers to ensure they are sufficiently educated on the requirements.

While the City agrees that the Rules of Procedure support full compliance, additional materials in the record also support a finding of full and effective compliance. In December 2021, the City submitted a sample of transcripts for status hearings and pre-hearing conferences. Those transcripts, highlighted where relevant, document that the procedures pertaining to ¶ 536

delineated in the Rules of Procedure are being followed in Police Board proceedings. (*See* Exhibit 11, December 2021 Police Board Submission re ¶ 536 (containing a sample of transcripts of status hearings and pre-hearing conferences that are highlighted at pages 17, 41, 46, 68, 170, 171, 214, 236, 238, and 239 of the exhibit to document discussion of the member's disciplinary record)).

The Court should accept the Monitor's assessment and find the City to have reached full and effective compliance with the requirements of ¶ 536 based on the above materials. As required by the plain text of the paragraph, the Police Board is ensuring that the parties to Police Board proceedings are given access to the CPD member's complete disciplinary file and have the opportunity to move for entry into the record of proceedings any relevant aspect of the CPD member's disciplinary file, as permitted by law and any applicable collective bargaining agreements. The Police Board has complied with all material requirements of this paragraph.

In consultation with the City and the OAG, the IMT has also proposed a methodology to assess whether the Police Board is maintaining full and effective compliance during the two-year period. The IMT plans to review from the "Police Board (each reporting period): a letter detailing the number of proceedings held in the last six months and indicating whether, for each of the proceedings held, the parties to the Police Board case were given access to the CPD member's complete disciplinary file and had the opportunity to move to enter any relevant aspect of the CPD member's disciplinary file into the record of the proceeding. The Police Board will provide a sample of records that demonstrate compliance with the paragraph and will make available other materials upon request." (*See* Exhibit 2, IMT's December 31, 2021, Updated Proposed Methodologies). Pending the Court's finding, the Police Board will continue to follow the IMT's proposed methodology until it completes the two-year period.

V.     Paragraph 537

Consent Decree ¶ 537 provides that:

*All regular meetings convened by the Police Board that are open to the public will be attended by the CPD Superintendent or his or her designee; the Chief Administrator of COPA or his or her designee; the Deputy PSIG or his or her designee; and the Chief of BIA or his or her designee.*

As indicated in the IMT's Fourth Monitoring Report, the City has demonstrated operational (full) compliance with this requirement. (Dkt. 978 at 843). In assessing the Police Board, the IMT applied the standard three-pronged methodologies; the IMT used policy and data sources to assess whether the Police Board had achieved policy (preliminary) compliance, training sources to assess whether the Police Board had achieved training (secondary) compliance, and for operational (full) compliance, determined "whether the City, the CPD, COPA, the Deputy PSIG, and the Police Board have sufficiently implemented their policies and training to ensure that each Police Board meeting open to the public will always be attended as specified in the Consent Decree paragraph." (*See* Exhibit 2, IMT's December 31, 2021, Updated Proposed Methodologies).

The IMT based its determination primarily on its own observations of Police Board meetings. (Dkt. 978 at 843). While the City agrees that these observations support full compliance, additional materials support a finding of full and effective compliance. Specifically, the requirements of ¶ 537 are memorialized, in part, in § 2-84-020 (d) of the Municipal Code of Chicago. (*See* Exhibit 8, Excerpts from the Municipal Code of Chicago). This section provides that "[t]he superintendent of police or the superintendent's designee and the chief administrator of the independent police review authority or the chief administrator's designee shall be present at all public meetings of the board and shall have the right to take part in the discussions and deliberations but shall have no vote." The Independent Police Review Authority has since been replaced by the Chicago Civilian Office of Police Accountability ("COPA"). *See* COPA, *Our*

17

*History*, https://www.chicagocopa.org/about-copa/our-history/. The City's Deputy Inspector General for Public Safety ("PSIG") has separately memorialized its obligation to attend these meetings in policy. (*See* Exhibit 12, City of Chicago Office of Inspector General Public Safety Section Policies Manual at 9). Additionally, on December 31, 2020, Mayor Lori Lightfoot sent a letter to the CPD Superintendent, the Chief Administrator of COPA, and the Inspector General directing them to ensure attendance at the public Police Board meetings in line with the requirements of Consent Decree Paragraph ¶ 537. (*See* Exhibit 13, December 31, 2020, Letter from the Mayor re ¶ 537).

Transcripts and video recordings of all Public Meetings of the Police Board are available online at https://www.chicago.gov/city/en/depts/cpb/auto_generated/public_meetings_archives.html. These meetings occur monthly. The first page of each month's transcript lists the attendees of the meeting. At all meetings the CPD Superintendent, the Chief Administrator of COPA, the Deputy PSIG, and the Chief of BIA, or their designees, were in attendance.

The Court should find the City to be in full and effective compliance with the requirements of ¶ 537 based on the above materials, consistent with the Monitor's assessments. As required by the plain text of the paragraph, the Police Board is ensuring that the delineated City personnel are attending the public meetings of the Police Board. The Police Board has complied with all material requirements of this paragraph.

In consultation with the City and the OAG, the IMT has also proposed a methodology to assess whether the Police Board is maintaining full and effective compliance during the two-year period. The IMT plans to review from the "Police Board (each reporting period): . . . a letter detailing the number of regular meetings held in the past 6 months and whether the CPD Superintendent, the COPA Chief Administrator, and the Deputy PSIG (or their designees) attended

each of the meetings. The Police Board will also submit for review the attendance sheet for each meeting held." (*See* Exhibit 2, IMT's December 31, 2021, Updated Proposed Methodologies). Pending the Court's finding, the Police Board will continue to follow the IMT's proposed methodology until it completes the two-year period.

VI.   Paragraph 538

Consent Decree ¶ 538 provides that:

*Within 90 days of the Effective Date, the City will create a policy for collecting, documenting, classifying, tracking, and responding to community input received during the Police Board's regular community meetings. The policy will outline the methods for: (a) directing community input to the appropriate responding entity, agency, or office; and (b) documenting and making public, all responses to community input.*

As indicated in the IMT's Fourth Monitoring Report, the City has demonstrated operational (full) compliance with this requirement. (Dkt. 978 at 844–45). In assessing the Police Board, the IMT applied the standard three-pronged methodologies; the IMT used policy and data sources to assess whether the Police Board had achieved policy (preliminary) compliance, training sources to assess whether the Police Board had achieved training (secondary) compliance, and for operational (full) compliance, determined "whether the City and the Police Board have sufficiently implemented their policies and training." (*See* Exhibit 2, IMT's December 31, 2021, Updated Proposed Methodologies).

The plain text of ¶ 538 requires only that the City create a policy compliant with the paragraph's requirements, which the City has done (as detailed in this section below). The City therefore disagrees that it is appropriate to apply the IMT's delineated three-pronged methodology in assessing this paragraph. The Court, however, need not address this issue, because even if the IMT's three-pronged methodology were appropriate in assessing this paragraph, the City would still be in operational (full compliance).

To assess preliminary compliance, the IMT reviewed a policy adopted by the Police Board pertaining to the requirements of ¶ 538, the Police Board's Policy Regarding Community Input Received at Police Board Public Meetings. (*See* Exhibit 14, June 20, 2019, Policy Regarding Community Input Received at Police Board Public Meetings). This policy is posted online in both English and Spanish at https://www.chicago.gov/city/en/depts/cpb/provdrs/public_meetings.html. This policy details that the Police Board's Executive Director will review the meeting transcript within seven days of a meeting, that the Executive Director will direct the input to the appropriate agency, and that each agency will respond within ten days of receiving the input from the Executive Director. This policy also provides for the Executive Director to post to the Police Board website community input reports tracking the community input received and providing the responses. The policy requirements are also memorialized in the Police Board's Standard Operating Procedures and Policies. (*See* Exhibit 4, Police Board Standard Operating Procedures and Policies at § 3.1.3). The Standard Operating Procedures and Policies serve as a training tool for the Executive Director, thereby satisfying secondary compliance. The IMT also reviewed the Police Board's Policy Regarding the Attendance of and Participation by the Public at Board Meetings, which is available online at the same link. (*See* Exhibit 15, Police Board Policy Regarding the Attendance of and Participation by the Public at Board Meetings).

To assess full compliance, the IMT reviewed a sample of transcripts of public meetings of the Police Board and community input reports. Together these showed community input received at the meetings and written responses provided to the input. (*See* Exhibit 16, March 2021 Police Board Submission re ¶ 538). Further supporting full compliance, the Police Board publishes on its website transcripts and video recordings of Police Board public meetings that capture all community input received at each meeting, and the community input reports. See Chicago Police

Board, Public Meetings of the Police Board Archives, https://www.chicago.gov/city/en/depts/cpb/auto_generated/public_meetings_archives.html.

The Court should find the City to be in full and effective compliance with the requirements of ¶ 538 based on the above materials, consistent with the Monitor's assessments. As required by the plain text of the paragraph, the Police Board is ensuring that it tracks community input, obtains responses, where appropriate, from the relevant City entity, and publishes those responses.

In consultation with the City and the OAG, the IMT has also proposed a methodology to assess whether the Police Board is maintaining full and effective compliance during the two-year period. The IMT plans to review from the "Police Board (each reporting period): materials to demonstrate that Police Board has, over the past six months, followed relevant policies to collect, document, classify, track, and respond to community input, including community input reports and transcripts and video recordings of Police Board public meetings at which community input is received." (*See* Exhibit 2, IMT's December 31, 2021, Updated Proposed Methodologies). Pending the Court's finding, the Police Board will continue to follow the IMT's proposed methodology until it completes the two-year period.

VII.    Paragraph 539

Consent Decree ¶ 539 provides that:

*The Police Board will make best efforts to streamline discovery efforts in all pending proceedings.*

As indicated in the IMT's Fourth Monitoring Report, the City has demonstrated operational (full) compliance with this requirement. (Dkt. 978 at 841). In assessing the Police Board, the IMT applied the standard three-pronged methodologies; the IMT used policy and data sources to assess whether the Police Board had achieved policy (preliminary) compliance, training sources to assess whether the Police Board had achieved training (secondary) compliance, and for operational (full)

compliance, determined "whether the City and the Police Board have sufficiently implemented their policies and training, using 'best efforts' as defined by Paragraph 729." (*See* Exhibit 2, IMT's December 31, 2021, Updated Proposed Methodologies). Paragraph 729 of the Consent Decree provides that "'[b]est efforts' require a party, in good faith, to take all reasonable steps to achieve the stated objective." (Dkt. 703-1 at ¶ 729).

The IMT based its determination primarily on the Police Board's Rules of Procedure. Specifically, § II.A of the Rules of Procedure provides that:

> On or before the date of the initial status hearing of each case, the Corporation Counsel shall have available for the Respondent's attorney of record a copy of the Complaint Register investigation file pertaining to the charges filed against the Respondent. (If no written appearance by an attorney representing the Respondent is on file before the date of the initial status hearing, this requirement shall not apply.) If the Corporation Counsel's position is that a protective order is required for production and use of the file, the Corporation Counsel shall file prior to the initial status hearing a motion for entry of a protective order. If the Corporation Counsel's position is that there is good cause for not having the file available on or before the date of the initial status hearing, the Corporation Counsel shall file prior to the initial status hearing a motion for additional time to make the file available. It shall be within the discretion of the Hearing Officer to grant or deny the above motions.

(*See* Exhibit 1, Police Board Rules of Procedure at §§ II.J.10 and Appendix A). This section ensures that, upon the first interaction between the parties, the CPD member's counsel will have received the file related to the complaint at issue (i.e. the Complaint Register investigation file). If, for some reason, this file is not received prior to that hearing, the process will still be streamlined because the City will have to have file, in advance of the initial hearing, for any protective order or extension of time. This prevents further delay in receiving the file and allows for any issues to be ready to be addressed at the initial hearing.

Though not mentioned in the IMT's Fourth Monitoring Report, additional materials support full and effective compliance. In addition to § II.A of the Rules of Procedure, Appendix A provides additional information to streamline discovery. Appendix A, § 3 provides that "[t]he

Executive Director of the Police Board shall retrieve the written decision of any prior Police Board disciplinary case against the Respondent and shall provide a copy of any such decision to the Corporation Counsel and the Respondent at the initial status hearing of the current disciplinary case against the Respondent." Appendix A provides additional detail on how to obtain a CPD member's disciplinary history and requires the Executive Director or Hearing Officer to notify the parties of how to obtain the disciplinary record. (*See* Exhibit 1, Police Board Rules of Procedure at Appendix A). And in December 2021, the Police Board submitted a letter providing additional detail on how the above-referenced requirements in the Rules of Procedure have streamlined discovery, stating that:

> The Police Board on July 18, 2019, amended its Rules of Procedure to facilitate the prompt production of discovery material in police disciplinary cases (see Sections I-J and II-A of the Rules of Procedure). Prior to these changes, the Complaint Register investigation file, which contains the vast majority of discovery material in most cases, was produced to the accused officer's attorney when the motion for discovery was answered, typically about 30 days after the initial status hearing of the case. Now the CR file is typically produced at the time of the initial status hearing or a few days thereafter. The Board's changes to its Rules of Procedure have resulted in the accused officer's attorney receiving the bulk of discovery material about 30 days sooner, which allows the parties to begin preparing for and the hearing officer to schedule the disciplinary hearing more quickly.

(*See* Exhibit 17, December 2021 Letter from the Police Board re ¶ 539).

As to secondary compliance, as previously noted, the Police Board's Standard Operating Procedures and Policies manual serves as a resource for the Police Board's Executive Director and requires the Executive Director to ensure hearing officers review and understand the Rules of Procedure. (*See* Exhibit 4, Police Board Standard Operating Procedures and Policies at § 2.1.3).

To demonstrate full compliance, the City previously submitted records which demonstrated that the Complaint Register investigation file was shared consistent with the requirements of the Rules of Procedure. (*See* Exhibit 18, June 2021 Police Board Submission re ¶ 539 (pages 11, 12, 39, 40, 87, 88, and 89 of the exhibit discuss initial tender of the CR file in a

sample of cases); Exhibit 19, December 2021 Police Board Submission re ¶ 539 (pages 5, 23, 24, and 43 of the exhibit discuss initial tender of the CR file in a sample of cases))

The Court should find the City to be in full and effective compliance with the requirements of ¶ 539 based on the above materials, consistent with the Monitor's assessments. These records show that, where it is in the Police Board's control, the discovery process is being streamlined.[7]

In consultation with the City and the OAG, the IMT has also proposed a methodology to assess whether the Police Board is maintaining full and effective compliance during the two-year period. The IMT plans to review from the "Police Board (each reporting period): . . . a letter summarizing the efficiency and effectiveness of discovery efforts in pending proceedings from the past 6 months. If the Police Board has identified areas of improvement or made any changes to better streamline discovery efforts, these areas of improvement or changes should be described in the letter." (*See* Exhibit 2, IMT's December 31, 2021, Updated Proposed Methodologies). Pending the Court's finding, the Police Board will continue to follow the IMT's proposed methodology until it completes the two-year period.

VIII.    Paragraph 565

Consent Decree ¶ 565 provides that:

*At least quarterly, COPA, the Deputy PSIG, and the President of the Police Board, or his or her designee, will meet to confer and share information regarding trends and analyses of data relating to CPD. They will jointly or separately provide any resulting recommendations for changes in CPD policy or rules, in writing, to the Superintendent. Thereafter:*

> *a.    the Superintendent will respond to any such recommendation within 60 days of receipt;*

---

[7] The Complaint Register investigation file will be relevant in every case, and so the Police Board's efforts to streamline discovery focus on these materials. Other discovery will vary on a case-by-case basis, and it therefore is less reasonable for the Police Board to regulate other discovery materials as a blanket requirement.

> b. *the Superintendent's response will include a description of the actions that the Superintendent has taken or plans to take with respect to the issues raised in the recommendations; and*
>
> c. *all policy recommendations and responses to the same will be published on a City website.*

As indicated in the IMT's Fourth Monitoring Report, the City has demonstrated operational (full) compliance with this requirement. (Dkt. 978 at 883–84). In assessing the Police Board for ¶ 565, the IMT applied customized methodologies. To assess preliminary compliance, the IMT determined "whether the relevant representatives are meeting quarterly." To assess secondary compliance, the IMT determined "whether the relevant entities have allocated sufficient resources to ensure that the meetings continue quarterly." And for operational (full) compliance, the IMT determined "whether the meetings sufficiently include the requisite coordination and whether any recommendations follow the requisite processes." (*See* Exhibit 2, IMT's December 31, 2021, Updated Proposed Methodologies).

To assess compliance, the IMT primarily relied on minutes from the meetings held pursuant to ¶ 565. The City includes with this motion copies of the approved minutes for the meetings held from November 2020 through August 2021 (*See* Exhibit 20, November–December 2020 COPA, Deputy PSIG, And Police Board Quarterly Meeting Minutes; Exhibit 21 March, June, and August 2021 COPA, Deputy PSIG, And Police Board Quarterly Meeting Minutes).

While the City agrees that the meeting minutes are sufficient to support the determination of full and effective compliance, additional evidence further bolsters this determination. The requirements of ¶ 565 are memorialized in the Police Board's Standard Operating Procedures and Policies (*See* Exhibit 4, Police Board Standard Operating Procedures and Policies at § 4.1). Though the methodologies for ¶ 565 do not apply the traditional policy and training review, the Standard

Operating Procedures and Policies both memorialize the requirements in writing and serve as a training tool for the Executive Director.

Additionally, in its IMR4 Report, the IMT commented on the fact that no recommendations have yet resulted from these quarterly meetings, though a review of the meeting minutes does show thoughtful and thorough discussion of issues related to CPD. The IMT noted that:

> During the fourth reporting period, the IMT discussed these meetings with the members separately regarding the effectiveness of these meetings. Each person indicated that the meetings began as an obligation to the Consent Decree but have evolved over time to become a meaningful opportunity to discuss the very issues this paragraph intended. Each indicated that they did not expect to make recommendations to CPD as a group, rather doing so as individual organizations. All three entity leaders indicated that if the need arose, they believed they would come together to make recommendations to the CPD. The meetings have also helped to build relationships among the three organizations. The Police Board Executive Director develops the meeting agendas and maintains meeting minutes. The group is developing a common understanding of the policy recommendation process; and how to maintain documentation on any policy recommendations they may make to CPD.

(Dkt. 978 at 883–84).

The Court should find the City to be in full and effective compliance with the requirements of ¶ 565 based on the above materials, consistent with the Monitor's assessments. These records show that COPA, the Deputy PSIG, and the President of the Police Board are meeting quarterly as required by ¶ 565.

In consultation with the City and the OAG, the IMT has also proposed a methodology to assess whether the Police Board is maintaining full and effective compliance during the two-year period. The IMT plans to review from the "Police Board (each reporting period): records relevant to the quarterly meetings held in the past six months that demonstrate that COPA, the Deputy PSIG, and the Police Board President met and exchanged information regarding CPD-related trends and data analyses; any resulting recommendations for CPD policy or rules changes made to the Superintendent should be provided to the IMT along with the Superintendents responses, if

any." (*See* Exhibit 2, IMT's December 31, 2021, Updated Proposed Methodologies). Pending the Court's finding, the Police Board will continue to follow the IMT's proposed methodology until it completes the two-year period.

## CONCLUSION

For the foregoing reasons, this Court should find the that the City has achieved full and effective compliance with the requirements of ¶¶ 533, 534, 535, 536, 537, 538, 539, and 565 of the Consent Decree, thereby commencing the two-year maintenance period. Per the *Stipulation Regarding Search Warrants, Consent Decree Timelines, and the Procedure for "Full and Effective Compliance"* (Dkt. 1011), the Court should retroactively start the two-year maintenance period as of October 8, 2021, the date the IMT filed its Fourth Independent Monitoring Report (Dkt. 978). The IMT and OAG have agreed that the City may represent this Motion as unopposed.

Dated:  April 8, 2022

Respectfully submitted,

CELIA MEZA
Corporation Counsel of the
**CITY OF CHICAGO**

By:  /s/ Zoe Jones
_____
Assistant Corporation Counsel

Allan T. Slagel
aslagel@taftlaw.com
Elizabeth E. Babbitt
ebabbitt@taftlaw.com
Paul J. Coogan
pcoogan@taftlaw.com
Anna Greve
agreve@taftlaw.com
Special Assistant Corporation Counsels
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2800
Chicago, Illinois 60601
Telephone: (312) 527–4000

Zoe Jones
zoe.jones@cityofchicago.org
Assistant Corporation Counsel
for Public Safety Reform
City of Chicago
121 North LaSalle Street
Room 600
Chicago, Illinois 60614
(312) 744-1806

## LIST OF EXHIBITS

Exhibit 1      Police Board Rules of Procedure

Exhibit 2      IMT's December 31, 2021, Updated Proposed Methodologies

Exhibit 3      Police Board Hearing Officer Selection Criteria

Exhibit 4      Police Board Standard Operating Procedures and Policies

Exhibit 5      August 30, 2019, Letter from the City re Par. 533

Exhibit 6      March 2021 Police Board Hearing Officer Selection Submission

Exhibit 7      December 2021 Police Board Letter re ¶ 533

Exhibit 8      Excerpts from the Municipal Code of Chicago

Exhibit 9      December 2021 Police Board Submission of Materials re ¶ 535

Exhibit 10      February 22, 2022 Letter re On-Boarding Process for New Police Board Members

Exhibit 11      December 2021 Police Board Submission re ¶ 536

Exhibit 12      City of Chicago Office of Inspector General Public Safety Section Policies Manual

Exhibit 13      December 31, 2020, Letter from the Mayor re ¶ 537

Exhibit 14      June 20, 2019, Policy Regarding Community Input Received at Police Board Public Meetings

Exhibit 15      Police Board Policy Regarding the Attendance of and Participation by the Public at Board Meetings

Exhibit 16      March 2021 Police Board Submission re ¶ 538

Exhibit 17      December 2021 Letter from the Police Board re ¶ 539

Exhibit 18      June 2021 Police Board Submission re ¶ 539

Exhibit 19      December 2021 Police Board Submission re ¶ 539

Exhibit 20      November–December 2020 COPA, Deputy PSIG, And Police Board Quarterly Meeting Minutes

Exhibit 21      March, June, and August 2021 COPA, Deputy PSIG, And Police Board Quarterly Meeting Minutes