# EXHIBIT 6 (PART 1)



CITY OF CHICAGO

✦

CHICAGO POLICE BOARD

March 17, 2021

Maggie Hickey
Independent Monitor
233 South Wacker Drive, Suite 7100
Chicago, Illinois 60606

Christopher G. Wells
Chief, Public Interest Division
Office of the Attorney General of Illinois
100 W. Randolph St., 12th Floor
Chicago, Illinois 60601

Re:     State of Illinois v. City of Chicago, Case No. 17-cv-6260
        Consent Decree Paragraph No. 533, Hearing Officer Selection Criteria

Dear Ms. Hickey and Mr. Wells:

Consent Decree Paragraph No. 533 requires the Police Board to draft selection criteria for its
hearing officers, and requires these criteria to be the basis for the future selection of hearing
officers to preside over police disciplinary cases. The Board's hearing officer selection criteria
became effective on December 10, 2019 (see MONITOR00023846, previously produced).

On October 30, 2020, the Board launched its first search for a hearing officer since the Consent
Decree was entered. On January 21, 2021, the Board selected two new hearing officers.

Enclosed with this letter are the following items:

1. Report on the hearing officer selection process and supporting documentation; and
2. Application material submitted by Michael Panter and April Perry, the two candidates the
   Board selected.

I kindly request that you let me know by April 30, 2021, of any comments or questions you have on
this information.  Thank you very much for your consideration,

Sincerely,

Max A. Caproni
Executive Director

**POLICE BOARD**
**CITY OF CHICAGO**

**HEARING OFFICER**
**APPLICATION FORM**

*Type your answers. See the final page for instructions for submitting applications.*

### General

1.  Full Name: Michael Richard Panter

2.  Office Address: █████████████████████████

3.  Office Phone Number █████████████

4.  Mobile Phone Number: (same)

5.  E-mail Address: █████████████████████

6.  Residential Address: █████████████████████████

### Education

7.  List all colleges and universities (including professional schools) you have attended, whether or not a degree or certificate was earned. Include dates attended and degrees and certificates earned, if any.

    DePaul University, College of Law, 1975-1978, JD
    Univ. Wisconsin, Madison, 1971-1975, BA
    St John's College, Annapolis, Maryland, 1970-1971

    Oxford University, Oxford, England, Courses in History of the Common Law, Summer 1977
    American Arbitration Association, Arbitration Fundamentals 2016
    American Association for Justice, Ultimate Trial Week, Harvard Law School 2007
    Harvard University, Intensive Negotiation Course

**Honors and Publications**

8. List any honors or awards you have received.

-Asked to teach courses at Ed Con, the statewide judicial conference and teach other judicial
 seminars;
-Recognized for the highest number of jury trials and settlements in the Cook County Trial
Section, Law Division;
-Asked to serve on the Illinois Supreme Court Discovery Rules Committee;
-Profiled repeatedly in professional journals;
-Outstanding Independent Judicial Evaluation.

9. If you have published any legal books or articles, or if you post notes or commentaries to
   blogs related to the legal profession, list all of them, giving citations and dates.

-Weekly column in Chicago Daily Law Bulletin on Mediation (about 75 columns);
-Numerous journal articles on litigation;
-Several hundred reasoned opinions as a judge;
-Approximately two hundred reasoned decisions as an arbitrator (one over 86 pages);
-Written materials for numerous presentations to bar associations, law firms, and
corporations.

## Law Practice

10. List all courts (including state bar admissions) and administrative bodies having special admission requirements in which you are currently or have ever been admitted to practice, giving the date of admission and your ID number. For any admission listed that is not current, explain the reason any and all such admissions are no longer current.

| Court or Administrative Body | Date Admitted | ID Number |
|---|---|---|
| State of Illinois | 1978 | |
| United States District Court | 1978 | |
| Seventh Circuit Court of Appeals | 1979 | |
| State of Florida | 1979 (resigned after judgeship) | |
| District Court Trial Bar | 1982 | |
| SCOTUS | 1984 | |

11. Describe the general nature of your current practice, including any legal specialties which you possess and the character of your typical clients. Additionally, if your practice is substantially different now from what it previously had been at any prior point, give details of your prior practice and the reason(s) for your practice's evolution.

Currently: Private Mediation and Arbitration with AAA and ADR Systems of America since 2015

Previously: Associate Judge, State of Illinois, 2008-2015; Cook County (Traffic, Domestic Relations, Law-Motions, Law-Jury)

Before that: Full-time Director of Litigation Lab, DePaul Univ., College of Law

Before that: Private practice, Michael R. Panter & Associates, all litigation

12. State the names, addresses, positions, and dates of employment for all law firms with which you have been associated in practice, all government agencies, all private business organizations, all not-for-profit organizations, and/or any other organization in which you have been employed or otherwise been affiliated with during your legal career. Also provide all dates during which you have practiced as a solo practitioner.

-Panter, Nelson & Bernfield, Ltd.,1978-1979; 33 N. Dearborn, Chicago 60602
-Heller and Morris Ltd.,1979-1980, 111 W. Washington, Chicago 60602
-Michael R. Panter & Associates, 1980-2008, various addresses, Chicago 60602
-DePaul University, Director of Litigation Lab & Adjunct Professor, 2007-2008, Chicago
-State of Illinois, Cook County Associate Judge, 2008-2015,32 W Randolph and 50 W. Washngton, Chicago 60602
-ADR Systems of America, 2015-present, 20 N. Clark, Chicago 60602
-American Arbitration Association, 2016-present

Hearing Officer
Application Form

Page 4 of 17

Police Board
City of Chicago

17-cv-06260

MONITOR00227466

13. During the past five (5) years, what percentage of your practice has been litigation?

    None since becoming a judge in 2008. Before that, close to 100%.

14. During the past five (5) years, how frequently on average have you appeared in court?

    None since becoming a mediator/arbitrator in 2015. Before that, regularly.

15. During the past five (5) years, approximately what percentage of your practice involving litigation has been:

    All of the cases mediated and arbitrated have been civil.

16. During the past five (5) years, approximately what percentage of your appearances were in:

    Have not appeared in court in the past five years.

17. Summarize your courtroom experience for the past five (5) years:

    None in the past five years. Have been mediating and arbitrating civil cases.

18.List your cases which have gone to trial in courts of record during the past ten (10) years, indicating whether you were sole, associate, or lead counsel. Give the docket or index number of each such case and give the citations of any reported opinions. Provide the name and contact information of each lead counsel representing any party at the trial, the name of the judge who presided over the trial, and specify whether the trier of fact was a jury or a judge. Indicate whether (i) the trial went to verdict or decision or (ii) the trial began, but terminated, before conclusion.

As a trial and motion judge, conducted many jury trials, bench trials and numerous contested hearings and motions. Before that, created and taught full-time Litigation Lab at DePaul Law School. Before that, had own litigation law firm and personally tried over fifty jury cases to verdict including at least one that went over six weeks. Also handled thousands of depositions, motions, pre-trials, mediations, some bench trials and appeals.

19. List any appeals you have handled in a federal or state appellate court in the past ten (10) years, indicating whether you were the sole, associate or lead appellate attorney. Identify the appellate court and give the appeal number of each appeal and the citation of any opinion. Indicate the action taken by the appellate court.

None in the past ten years as a lawyer. As a judge, had several cases appealed (nearly all affirmed). As a trial lawyer, personally handled about ten appeals.

Hearing Officer
Application Form

Page 7 of 17

Police Board
City of Chicago

17-cv-06260

MONITOR00227469

20.List your cases which have been decided after a hearing before an administrative body during the past ten (10) years, indicating whether you were sole, associate, or lead counsel. Give the case number of each such case. Provide the name and contact information of each lead counsel representing any party at the hearing, and the name of the individual (*e.g.*, administrative law judge, hearing officer, arbitrator) who presided over the hearing.

In the past ten years, none as a lawyer. Have decided many cases as a judge and as an arbitrator, and have resolved many, many cases as a judge and mediator.

21. Feel free to list any cases that you litigated, other than those identified above, that you wish to draw to the Board's attention.

See order in case of <u>Lynn Meuris, et. al. v Jody Weiss and the City of Chicago, et. al.</u>, 10 L 12240 (attached)

Hearing Officer
Application Form

Page 9 of 17

Police Board
City of Chicago

17-cv-06260

MONITOR00227471

**Hearing Officer or Quasi-Judicial Experience**

22.List all hearing officer, arbitrator, and other quasi-judicial experience you have. Identify the name of the agency, position held, dates of service, the types of issues on which you heard cases, the number of cases heard, and the agency representative most familiar with your work.

None other than as above.

## Professional and Personal Background

23. Have you ever been arrested, charged, or convicted for violation of any federal law, state law, county or municipal law, regulation or ordinance?  If yes, give details. Do not include traffic violations for which a fine of $200 or less was imposed unless it also included a jail sentence, whether or not suspended, or if the penalty included any sanctions such as loss of license.

No.

24. Have you ever been disciplined, cited, admonished or cautioned for a breach of ethics or unprofessional conduct by any court, administrative agency, bar association, or other professional group?  If yes, give details.

No.

25. Have you ever been disciplined or terminated by, or because of possible termination resigned from, any public or private employer, law firm or any other entity because of any misconduct, incompetence or unsatisfactory performance? If yes, give details.

No.

Hearing Officer
Application Form

Page 11 of 17

Police Board
City of Chicago

17-cv-06260

MONITOR00227473

## Professional and Other Activities

26.List all bar associations and legal professional societies of which you are currently a member, give the titles and dates of any office you have held or currently hold in such groups, and the dates of membership in any such associations or societies.

Currently: Chicago Bar Association, Illinois Judges Association, Illinois Jewish Judges Association, Decalogue Society, American Arbitration Association

27.List all organizations and clubs, other than bar associations and professional societies identified in response to Question 26, of which you have been a member during the past ten (10) years, including the titles and dates of any offices you have held in each such organization.

American Bar Association, Illinois State Bar Association, Florida Bar Association, American Trial Lawyers Association, Illinois Trial Lawyers Association, Women's Bar Association, Women Everywhere, Partners in Service Project, West Suburban Bar Association, Southern Poverty Law Center

Hearing Officer
Application Form

Page 12 of 17

Police Board
City of Chicago

17-cv-06260

MONITOR00227474

**Conflicts of Interest**

28. During the past ten (10) years, have you, or has any firm with which you were associated at the time, represented a party in a lawsuit, administrative matter, arbitration or mediation or any other kind of dispute (hereinafter collectively "a matter") which involved in any way the Chicago Police Department or its personnel? If yes, identify each matter, identify the parties, identify the party you or your firm represented, and describe the nature of the matter and your involvement, if any, in the matter.

In past ten years, have mediated cases involving police (investigating and reporting officers in various civil cases, do not recall if any officers were parties). As a judge, had many cases in which officers were involved. As a lawyer, handled cases involving officers.

29. During the past ten (10) years, have you, or has any firm with which you were associated at the time, been involved in a matter which involved in any way the City of Chicago in any capacity or its personnel (other than any identified in response to item 28)? If yes, identify each matter, identify the parties, identify the party you or your firm represented, and describe the nature of the matter and your involvement, if any, in the matter.

As a judge, heard a number of cases involving the City (attached are two examples). As a mediator, have had cases in which the City of Chicago was a party or stakeholder (case names not recalled). As a lawyer, had cases where the City of Chicago was involved

Hearing Officer
Application Form

Page 13 of 17

Police Board
City of Chicago

17-cv-06260

MONITOR00227475

30. During the past ten (10) years, have you, or has any firm with which you were associated at the time, represented any police officers, police boards, police departments, or police commissions (other than any identified in response to item 28)? If yes, for each such representation, identify your client, describe the nature of each such representation, identify each matter, if applicable, and describe your involvement, if any, in the representation.

No.

31. Are any of your immediate family members (*i.e.*, your spouse/domestic partner, children, parents, siblings) employed by the Chicago Police Department? If yes, list the family member and her/his position with the CPD.

No.

32. Do you have any other real or potential conflicts of interest that may affect your serving as a Hearing Officer? If yes, please describe.

No.

**Additional Information**

**33.** State any additional experiences you believe would assist you in being a hearing officer.

As a lawyer, worked with, met with and deposed many officers and have known officers personally. Have watched many officers testify in court. As a judge, particularly while serving in a high-volume, contentious, Domestic Relations call, had close relationships with all the sheriffs who kept me and our courtroom safe.

34. Is there anything in your personal or professional background that, if publicly known, could be viewed as embarrassing either to you personally or to the Police Board? If yes, give details.

No.

Hearing Officer
Application Form

Page 15 of 17

Police Board
City of Chicago

17-cv-06260

MONITOR00227477

## References

35.List three individuals as references who are familiar with your abilities and personal character. For each reference, provide the person's name, title, address, telephone number, and e-mail address.

Honorable Timothy C. Evans, Chief Judge of the Circuit Court of Cook County, 50 W. Washington, Chicago 60602; 312-603-4253; Timothy.Evans@cookcountyil.gov.

Honorable Michael B. Hyman, Appellate Justice, First District Appellate Court, 2nd Division, 160 N. LaSalle Street, Chicago 60601; 312-793-5431; hymikeb@aol.com

Honorable Nathaniel R. Howse, Appellate Justice, First District Appellate Court, 3rd Division, 160 N. LaSalle Street, Chicago 60601; 312-793-5455; nrhowse@gmail.com

Honorable James P. Flannery, Jr., Presiding Judge, Cook County Law Division, 50 W. Washington, Chicago, Illinois 60602; 312-603-6343; James.Flannery21@gmail.com

**Confidentiality Statement**

The Police Board will make every effort to maintain confidentiality regarding all inquiries, applications, interviews, and other matters pertaining to individual applicants. However, please note that information on the applicant that the Board selects as a Hearing Officer may become public.

**Declaration**

I declare that all of the information I have provided as part of my application for the position of Hearing Officer is true and correct, and that I am the actual author of the writing sample submitted with this application.

s/s Michael R. Panter                                       November 9, 2020

_____                    _____
*Signature*                                                        *Date*

**Application Procedures**

To be considered for the position, applicants shall send to Police Board Executive Director Max Caproni the following material: (1) this application form; (2) a résumé; and (3) a writing sample.

Material shall be sent either via electronic mail or in hard copy to:

> Max Caproni
> Chicago Police Board
> 30 North LaSalle Street, Suite 1220
> Chicago, IL 60602
> Max.Caproni@cityofchicago.org

**All material must be received by 5:00 p.m. Friday, October 26, 2018**.



# Hon. Michael R. Panter, (Ret.)
## Illinois

Hon. Michael R. Panter, (Ret.), is a senior mediator and arbitrator at ADR Systems with more than 40 years of legal experience. While on the bench, Judge Panter won acclaim for his settlement abilities. He settled numerous cases, including medical malpractice claims, construction claims, legal malpractice, product liability, premises cases, fee disputes, motor vehicle accidents, and commercial cases involving contracts, property damage, and fire subrogation. Before becoming a judge, he was an active trial lawyer with his own law firm for 30 years. He brings a broad perspective to his practice, having served both as a neutral and as an advocate in hundreds of mediations and arbitrations. Immediately prior to becoming a judge, Judge Panter was a full-time faculty member at DePaul University College of Law where he founded DePaul's Litigation Lab, a hands-on educational program for law students that has been the subject of numerous articles. Judge Panter is known for his thorough and intelligent approach to settlements and the boundless energy he brings to the dispute resolution process.

## Types of Cases Resolved

- Animal Injuries
- Architectural Malpractice
- Auto Liability
- Bicycle Cases
- Birth Trauma
- Civil Rights
- Construction Cases
- Contract
- Contribution and Indemnity
- Corporate and Commercial
- Coverage Disputes

- Defamation
- Dental Malpractice
- Discrimination
- Elevator Cases
- Employment
- Family Business
- Fee Disputes and Liens
- Fire Damage
- Inadequate Security
- Invasion of Privacy
- Legal Malpractice
- Liquor Liability

- Mass Torts
- Medical Malpractice
- Municipalities
- Nursing Facilities
- Parenting Problems
- Partnership Breakups
- Pharmaceutical
- Premises Liability
- Product Liability
- Property Damage
- Railroad
  *(Federal Employers Liability Act)*

- Sexual Assault
- Subrogation
- Toxic Tort
- Toy & Recreational Injuries
  *(Scuba, Golf, Health Club, Jet Ski, Roller Rink, Etc.)*
- Uninsured & Underinsured
- Motorist Claims (UM & UIM)
- Wrongful Arrest
- Wrongful Birth

MONITOR00227480

## ADR Experience and Qualifications

- Senior mediator, ADR Systems of America

- 7-year judicial career in the Circuit Court of Cook County, serving in the 1st Municipal District, the Domestic Relations Division, Law Division Motion Call and the Jury Trial Section

- 30-year career as a trial lawyer starting with commercial litigation at Panter, Nelson & Bernfield, Ltd., and tort and commercial litigation at Michael R. Panter and Associates.

- Director of Litigation Lab, DePaul University College of Law

- Adjunct Professor, DePaul University College of Law

## Representative Cases

- $20 million settlement in a car and truck collision with severe injuries

- $20 million case for wrongful placement and monitoring of a foster child by a private agency

- Over 20 medical malpractice cases for more than $1 million, including ten cases between $7-12 million

- $5.3 million case involving a construction worker killed when a crane collapsed at the construction site

- $2.5 million medical malpractice case involving a patient who died as a result of an undiagnosed post-operative pulmonary embolism

- $2.4 million medical malpractice case involving a delayed cancer diagnosis resulting in the death of an elderly patient

- $1 million attorney fee dispute case

- $1 million case involving the suicide of a mentally ill patient following psychiatric admission

- $1 million settlement for loss of an infant's arm due to physician's failure to recognize vascular compromise and thrombosis after an IV line was inserted

- $750,000 product liability case involving a child who lost an eye due to a defective spring-launched toy airplane

MONITOR00227481

## Professional Activities and Awards (Past and Present)

- Faculty, State of Illinois Judicial Education Conference, 2012, 2014, 2016 ("Settlement Strategies")

- Faculty, 2015 New Judge Seminar

- ABA TIPS Vice-Chair

- Illinois Supreme Court, Committee on Discovery Procedures

- Illinois Supreme Court, Civil Justice Committee

- State of Illinois Judicial Bench Book on Civil Law and Procedure, Writing Team

- Cook County Law Division Committee on Mediation of Discovery Disputes

- AAA Commercial Panel of National Roster of Arbitration and Panel of Mediators

- Illinois Judges Association

- American Bar Association, Litigation and Judicial Divisions, Tips, Commercial & Business litigation and ADR Subcommittees

- Illinois State Bar Association

- Florida State Bar Association

- Chicago Bar Association, Tort Litigation Committee and Referral Panels

- DuPage County Bar Association

- West Suburban Bar Association

- American Association for Justice

- Trial Lawyers for Public Justice

- Illinois Trial Lawyers Association

- American Society of Trial Consultants

- Southern Poverty Law Center

- Women's Bar Association

- Mentor, Women's Bar Association of Illinois

- Mentor, Gay and Lesbian Alliance

- Mentor, Israel Cancer Research Fund

- Women Everywhere: Partners in Service Project

- Jewish Judges Association

- Decalogue Society of Lawyers

- Young Men's Jewish Council (JCYS)

- Jewish United Fund

- Jewish Community Centers

- Standard Club

- Featured in articles and profiles in Crain's, Chicago Daily Law Bulletin, Chicago Lawyer Magazine, St. John's College

## Presentations and Publications

- Presenter, "Overview of Damages in Commercial Litigation," Chicago Bar Association Seminar

- Presenter, "Streamlining Litigation," Chubb Group of Insurance Companies

- Keynote Address, "Streamlining the Litigation Process," CLM 2015 Professional Liability & Municipal Law Conference

- Presenter, DRI Insurance Coverage and Claims Institute

- Presenter, Consortium of Representatives from Major Illinois Insurers

- Presenter, Adjusters Group of Hanover Insurance

- Presenter, Auto Management Claims Group of State Farm Insurance Company

- Presenter, Illinois Association of Defense Trial Counsel, Spring Symposium

- Presenter, "Getting the Judge on Your Side," Law Division & Municipal Joint Seminar

- Presenter, ADR in the United States," for officials from China's Ministry of Justice, through the University of Illinois Office of Global Education & Training, and hosted by the University's China Executive Leadership Program

- Presenter, "Litigation Issues," Tort Litigation Committee

- Presenter, "Arbitration," Tennessee Trial Lawyers Association

- Presenter, Circuit Court of Cook County Mandatory Arbitration and Mediation

- Presenter, "Defendant's Store Clerk – Direct Examination and Cross-Examination," Anatomy of a Trial, ISBA Tort Law Section

- Presenter, "Perspective from the Bench," ITLA Medical Malpractice Seminar

- Presenter, Chicago Bar Association, Young Lawyers Section

- Presenter, Judge Lynn M. Egan's Lunchtime Seminars

MONITOR00227483

## Presentations and Publications (*Continued*)

- Presenter, Judge James P. Flannery Meeting of New Judges

- Presenter, Chicago Bar Association Tort Litigation Committee

- Presenter, PINCUS CLE Seminars

- Presenter, Chicago Bar Association Judges' Annual Symposium

- Panelist, "The Mechanics of Jury Selection," Circuit Court of Cook County panel discussion and seminar

- Panelist, "Creative Solutions: How to Reduce Litigation Costs and Expedite Resolution," Circuit Court of Cook County Lunchtime Seminar Series

- Panelist, Chicago Bar Association, ADR Committee

- Panelist, "Damages: What, When and How," Circuit Court of Cook County Lunchtime Seminar Series

- Moderating Judge, Willis Retail Litigation Symposium

- Writing team of the Civil Law and Procedure Bench Book for the State of Illinois

- Presenter, Fred Lane, ISBA Trial Techniques Course

- Author, "Why Shareholders Have the Right to Accept Tender Offers," CBA Record

- Author, Circuit Court of Cook County Law Division Benchbook, chapters on "Voir Dire" and "Motions in Limine"

- Author, ITLA Civil Practice Update, "Discovery"

- Author, "Thirty Years in 1,600 Bankers Boxes," CBA Record

- Keynote Address, Commencement Exercises, Bradwell School of Excellence

## MCLE Presentations Judge Panter Can Do:

Judge Panter is available to do MCLE presentations on a variety of mediation and litigation topics, including:

- Jury Verdict Reports as a Tool to Study Case Evaluation
- Mediation Do's and Don'ts
- Summary Jury Trials
- The Finish Line - Jury Instructions
- Voir Dire
- Openings, Closings, Direct and Cross Exam
- Hot Topics in Civil Litigation
- Objections – Do You Feel Lucky
- Settlement Strategies for Judges
- Best Tips for Judges
- How to Get the Judge on Your Side
- Fred Lane Trial Techniques
- Streamlining the Litigation Process
- Arbitration

- Defendant's Store Clerk – Direct Examination and Cross-Examination
- Overview of Damages in Commercial Litigation
- Perspective from the Bench
- The Mechanics of Jury Selection
- Creative Solutions: How to Reduce Litigation Costs and Expedite Resolution
- Damages: What, When and How
- Walk through prior cases to look at case valuation and how it plays out at trial - Pincus Professional Education – MCLE for Attorneys and Legal Professionals, www.pincusproed.com
- Mediation Pitfalls: Making the Most of Your Mediation
- In's and Out's of Legal Malpractice Cases

## Education

- DePaul University College of Law, J.D.

- University of Wisconsin-Madison, B.A.

- St. John's College, Annapolis, MD ("The Great Books School")

## Admissions

- Illinois State Bar

- Florida State Bar

- U.S. Court of Appeals for the Seventh Circuit

- U.S. District Court for the Northern District of Illinois

- Trial Bar for the Northern District of Illinois

- Supreme Court of the United States

## Certifications

- The Effective Facilitator, Jun 2018 – Present, Leadership Strategies

ORDER

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – LAW DIVISION

| | |
|---|---|
| Lynn Meuris and Jason Vanna, )<br><br>Plaintiffs, )<br>v )<br><br>Jody Weis and the City of Chicago, )<br><br>Defendants. ) | The Honorable Michael R. Panter<br>Motion Calendar "X"<br><br>Case No.    10 L 12240 |

**ORDER**

This cause comes before the court on defendants' motion to dismiss plaintiffs' complaint pursuant to 735 ILCS 5/2-619(a)(9). The court has reviewed the pleadings, briefs and exhibits submitted, and heard oral argument. For the reasons stated below, defendants' motion is granted.

Plaintiffs claim that defendant Weis made statements at press conferences implicating them in a police brutality incident. Plaintiffs claim the statements were defamatory and cast plaintiffs in a false light. Plaintiffs claim that Weis possessed exculpatory information. Plaintiffs also allege Weis confused two separate incidents.

Plaintiffs claim that as a result of the false statements, they were stripped of their police powers only to have them reinstated five days later when Global Positioning System records showed plaintiffs were not at the scene. Plaintiffs claim that since Weis was acting outside the scope of his duties when he made the statements, the City of Chicago (the"City") is liable for his actions. In support, plaintiffs claim that Weis cannot use department rules and policies to prove the scope of his duties. Plaintiffs filed a three-count complaint alleging that Weis' statements (1) were defamatory *per se*, (2) placed them in a false light, and (3) recklessly inflicted emotional distress. Defendants filed a motion to dismiss on grounds that the claims against both Weis and the City are barred by sections 107 and 109 of the Tort Immunity Act (the "Act") and by absolute immunity.

The complaint refers to occurrences on October 15th and 18th, 2010. The complaint does not cite actual quotes as to the events of October 15th, other than to say defendant published, "information about the plaintiffs as well as five other Chicago Police Officers, stating that the officers were accused of misconduct involving brutality of an individual." No other details of the supposed "information" are cited. Plaintiffs do not allege the defendants were the accusers. There are no allegations Weis was doing anything on October 15th other than reporting the fact that unnamed officers had been accused of brutality by unnamed citizens. There are no allegations that Weis himself or anyone in the City publicly accused the plaintiffs of anything.

1

                                                                                    MONITOR00227487

**ORDER**

The description of Weis' statement at the October 15th press conference is consistent with reports of what Weis allegedly said later on October 18th. Paragraph 11 of plaintiffs' complaint specifically quotes from the October 18th press conference, where Weis allegedly stated:

    a. "Well, the allegations are serious, and that's why we stripped seven people of their police powers."

    b. "To keep them on the streets would put them at risk and put the department at risk."

    c. "I know that would be news, and that's why we're trying to get in front of this story. If there's one thing I've learned, if there's a bad story floating out there, get ahead of it."

    d. "This conduct, if true, is inexcusable, and is completely out of the line of the standard of professionalism with which our members are expected to conduct themselves."

Weis' quote (d) above, for example, "this conduct, "*if true*," indicates nothing other than that complaints had been made. The other quotes indicate the same. Weis himself is not alleged to have made accusations about plaintiffs or to have expressed any opinion on the merits of the accusations made by others. Weis appears merely to have been relaying information and stating that an investigation had been commenced. No details of the investigation were given. Nothing was said regarding possible results of the investigation.

In addition to what was quoted in the complaint, Exhibits dated October 19th and 21st quote Weis as follows:

    "'We will also determine whether any other Chicago Police Department member witnessed the incident, and what action, *if any*, they took,' he said. '*If* members are found to have neglected action . . . action will be taken.'" Sun-Times Staff, *6 More Cops Punished in Police Brutality Case*, Chicago Sun-Times, Oct. 19, 2010 (*emphasis added*). "There's just no room for any type of brutality, *and while I must emphasize that these are just allegations*, the case has not been completed, and we take these serious [sic]." Phil Rogers, *FOP Slams Weis Over Early Exposition of Abuse Investigation*, WMAQ, Oct. 21, 2010 (*emphasis added*).

Again, plaintiffs have not alleged that Weis made or confirmed the accusations.

The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation. *Zedella v. Gibson*, 165 Ill. 2d 181, 185 (1995). Specifically, section 2-619(a)(9) of the Code of Civil Procedure permits involuntary dismissal where the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim. 735 ILCS 5/2-619(a)(9) (West 1998). An "affirmative matter," in a section 2-619(a)(9) motion, is something in the nature of a defense, which negates the cause of action completely. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469 (1994). The moving party thus admits the legal sufficiency of the complaint, but asserts an affirmative defense or other matter to defeat the plaintiff's claim. *Kedzie & 103rd Currency Exchange, Inc.*

2

**ORDER**

*v. Hodge*, 156 Ill. 2d 112, 115 (1993). Affirmative matter asserted by the defendant must be apparent on the face of the complaint; otherwise, the motion must be supported by affidavits or certain other evidentiary materials. *Epstein v. Chicago Bd. of Edu.*, 178 Ill. 2d 370, 383 (1997). When a court rules on a section 2-619 motion to dismiss, it must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997). The issue of privilege is an affirmative defense and may be raised and determined by a 2-619 motion. *Geick v. Kay*, 236 Ill. App. 3d 868, 876 (2d Dist. 1992). Immunity under the Illinois Local Governmental and Governmental Employees Tort Immunity Act is an affirmative matter property raised in a 2-619 motion. *Van Meter v. Darien Pk. Dist.*, 207 Ill. 2d 359, 367 (2003).

While the immunity issue is dispositive, a review of the complaint reveals that virtually no elements of a cause of action for defamation or false light have been alleged.

To make a claim for defamation, plaintiffs must set out sufficient facts to show that defendants made false statements concerning them and that there was an unprivileged publication to a third party with fault by the defendant, which caused damage to the plaintiffs. *Krasinski v. UPS*, 124 Ill. 2d 483, 490-91 (1988); *see Moore v. People for the Ethical Treatment of Animals, Inc.*, 402 Ill. App. 3d 62 (1st Dist. 2010); *Maxon v. Ottawa Pub. Co.*, 402 Ill. App. 3d 704 (3d Dist. 2010); *Green v. Rogers*, 234 Ill. 2d 478 (2009). Plaintiffs must plead and prove that the statements were made with malice, meaning with knowledge of the statements falsity or in reckless disregard for its veracity. *Krasinski*, at 490-91.

To begin, the material statements attributed to Weis are not specifically alleged to be untrue. Weis said there is an accusation of brutality. He said the allegations are serious. He said an investigation has begun. He said officers had been stripped of power pending the investigation. Plaintiff does not allege that these statements are untrue. It is alleged Weis confused two separate incidents, one in the South Loop and one at 79th and South Vincennes but that is not the basis for the alleged defamation. Further, nothing Weis said can be labeled damaging. Neither Weis, nor the City endorsed the accusations or gave any indication there was any merit to them. They simply said the accusations were being investigated.

Even if Weis' statements could be construed as false, and even if it could be shown that he knew them to be false, none of the statements specifically named the plaintiffs in connection with the incident. If the statements were not "of and concerning" the plaintiffs, in that they did not name the plaintiffs as being involved in the incident, a claim for defamation cannot succeed. *Schivarelli v. CBS*, 333 Ill. App. 3d 775, 765 (1st Dist. 2002), *see Lovgren v. Citizens First Nat'l Bank of Princeton*, 126 Ill. 2d 411 (1989). The statements must be identifiably about the plaintiffs. *Schivarelli*, at 765. The plaintiffs generally must be named in connection with the statement. *Id.* Weis made no mention of or reference to the plaintiffs in his statements. Plaintiffs do not allege that they were in any way identified in connection to the incident. Because the plaintiffs were not specifically linked to the incident, the statements were not concerning them and were not defamatory.

Even if it could be established that any of Weis' statements were materially untrue, and even if it could be established that Weis knew them to be false, and even if plaintiffs could be connected to

3

the alleged statements, the claim for defamation lacks connection to any damages. This complaint is about words, not actions. While plaintiffs' five-day suspensions may have been unjustified, nothing connects the statements to the damages. The statements did not cause the suspension. One statement accurately reported the suspensions. While plaintiffs may have sustained damages from their allegedly wrongful suspensions, nothing alleges a connection between Weis' statements to the press and the City's decision to suspend the officers. Plaintiffs' response (P. 3) actually recognizes that the disciplinary action, not the speeches, caused plaintiffs' loss of time and embarrassment. Again, the complaint is about spoken words. While the suspension and other city conduct may have been wrongful, there is no allegation the spoken words were false, damaging, or harmful.

Since Weis' statements cannot be construed as defamatory because they were not false and did not specifically refer to the plaintiffs, the plaintiffs' false light claim similarly cannot succeed. To state a cause of action for false light, the plaintiffs must prove that Weis' statements placed them in a false light before the public, that the false light would be highly offensive to a reasonable person, and that the defendant acted with actual malice. *Duncan v. Peterson*, 2010 WL 5541104 (2d Dist. 2010). The requirement that the statement be concerning the plaintiffs and made with actual malice is the same in a defamation claim as in a false light claim. *Schivarelli*, 333 Ill. App. 3d at 765. Using the defamation analysis and given the aforementioned facts, the plaintiffs cannot prove that the statements placed them in a false light because they were not false, or made with actual malice, and did not refer to the plaintiffs specifically.

The court does not believe plaintiffs have sufficiently alleged a claim for defamation or false light. However, even if they have sufficiently alleged such claims, Weis and the City are protected by the Act as well as the absolute immunity doctrine. *Johnson v. Mers*, 279 Ill. App. 3d 372 (2d Dist. 1996).

The City is immune from liability under sections 107 and 109 of the Act. Section 107 states that a local public entity is not liable for any injury caused by any action of its employee that is defamatory or for any defamatory statements. 745 ILCS 10/2-107. Section 109 states that a local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable. 745 ILCS 10/2-109. Weis' statements were not defamatory as previously discussed. The City is therefore also not liable. Even if Weis' statements were defamatory, the City is still immune from liability. The Act is dispositive of the claims against the City.

Additionally, absolute immunity bars plaintiffs' claims against Weis. Weis' statements were made within the scope of his duties. Plaintiffs do not dispute that Weis is responsible for supervising and managing the officers of the department including the plaintiffs. It is not disputed that Weis' duties as superintendent require him to address the public and speak for the department. Plaintiffs do not dispute that Weis was acting within the scope of his duties in discussing the performance required of his officers. Weis' statements were made in order to keep the public informed about an ongoing investigation. The Chicago Municipal Code (the "Code") and the Chicago Police Board Rules and Regulations (the "Rules and Regulations") give Weis the power to administer the police department in any way consistent with their guidelines. They give Weis the responsibility of keeping law enforcement operations

4

transparent. They instruct Weis to create openness with the public in matters of public interest. *See* Sections 030, 040, and 050 of Chapter 2-84 of the Code and the Rules and Regulations. The Rules and Regulations show that Weis was supposed to be a public spokesperson on behalf of the department.

Plaintiffs cite to rules 31 and 32 to argue that Weis' statements were not made within the scope of his duties and not in accordance with the Code and the Rules and Regulations. The Rules and Regulations cited may set forth the way Weis is supposed to carry out his duties as superintendent, but they do not define those duties. Rule 31 prohibits criticism of official actions of another deepartment member when the results can be foreseen reasonably to undermine the effectiveness of the official working relationship of a member in his assigned unit. Weis did not criticize the actions of the plaintiffs in his statements; he relayed information regarding an ongoing investigation and did not identify the plaintiffs. Weis' statements, even if found to be critical, could not reasonably be foreseen to undermine the relationship of the plaintiffs and their unit. The plaintiffs were never identified. Rule 32 prohibits public statements pertaining to the police department which reasonably can be foreseen to impair the discipline, efficiency, and public service or public confidence in the department or its personnel by false statements, reckless or unsupported accusations, or the use of defamatory language. Since Weis' statements were not false, recklessly made, or defamatory in nature, Weis is immune. He was acting within the scope of his duties.

Even if Weis' statements are found to be in violation of rules 31 and 32, that does not mean he was acting outside the scope of his duties. The issue is not how well he performed his duties but whether he was engaged in the performance of duties. Even if he were performing badly, he would still be acting within the scope of his duties because he is the department spokesperson for matters of public interest. Even improper motivation, malice, knowledge of falsity, or negligence with respect to the statements cannot overcome an absolute privilege. *Geick v. Kay*, 236 Ill. App. 3d 868, 875 (2d Dist. 1992). The Code and the Rules and Regulations state that Weis was responsible for evaluating officers and maintaining transparency with the public so even if he made improper disclosures, he would still be acting within the scope of his duties. There is no question that Weis would have been within the scope of his duties to publicly reward an officer and call him a hero. Conversely, Weis may disapprove of performance. It must be noted, however, that Weis did not criticize the plaintiffs here. At most, he criticized behavior. Further, he never identified the police officers alleged to be involved. Even if he had, he would still be immune from these claims.

Weis' immunity is not affected or lost because the investigation was done by an outside agency, the Independent Police Review Authority (the "IPRA"). Weis never said that the investigation was being conducted by the police department and not another agency. He never stated who was conducting the investigation. Nothing in the record indicates Weis compromised the IPRA investigation. Weis did no more than what the IPRA director Rosenzweig did to confirm there was an investigation. (P. 5). Just after Weis said there was an ongoing investigation, Rosenzweig also said that there was an ongoing investigation. Weis' statements did not undermine the IRPA investigation. His immunity is not impaired because another agency conducted the investigation.

5

**ORDER**

As to the cause of action for reckless infliction of emotional distress, plaintiffs must allege that (1) the conduct was truly extreme and outrageous; (2) Weis either intended that his conduct inflict severe emotional distress, or knew that there was a high probability that the conduct would cause severe emotional distress; and (3) the conduct, in fact, caused severe emotional distress. *Reilly v. Wyeth*, 377 Ill. App. 3d 20, (1st Dist. 2007). Whether conduct could be deemed extreme and outrageous is evaluated based on the facts and circumstances and is deemed to be so if the conduct goes beyond all possible bounds of decency, and to be intolerable in a civilized community. *Id.* Based on the facts and reasoning stated above, Weis' statements were not extreme and outrageous. Plaintiffs' claim for reckless infliction of emotional distress cannot succeed.

On this record, there is no reason to believe Weis said anything beyond expressing concern for citizen's accusations. The issue was resolved for these plaintiffs five days later. Complaints of brutality pose difficult questions. Citizens must feel the City is responsive to their concerns. Officers must believe the City is watching out for them as well. The City needs discretion in handling such accusations.

In any event, because the Court finds that the plaintiffs have pled insufficient facts to support their claims that Weis was acting outside the scope of his duties or that the City is not immune under the Tort Immunity Act, defendants' motion is granted.

**IT IS HEREBY ORDERED:** Defendants' motion to dismiss pursuant to 2-619(a)(9) is granted.

ENTER:

_____

Michael R. Panter, Associate Judge 1990

DATE:

_____

6

MONITOR00227492

**POLICE BOARD**
**CITY OF CHICAGO**

**HEARING OFFICER**
**APPLICATION FORM**

*Type your answers. See the final page for instructions for submitting applications.*

### General

1. Full Name: April Michelle Perry

2. Office Address: ████████████████████████████

3. Office Phone Number ████████████

4. Mobile Phone Number ████████████

5. E-mail Address: ████████████

6. Residential Address: ████████████████████████████
   ████████████

### Education

7. List all colleges and universities (including professional schools) you have attended, whether or not a degree or certificate was earned. Include dates attended and degrees and certificates earned, if any.

   Northwestern University School of Professional Studies, 2018, Mediation Skills Certificate
   Northwestern University School of Law, 2000-2003, Juris Doctor
   Northwestern University, 1997-2000, Bachelor of Science in Speech

**Honors and Publications**

8.  List any honors or awards you have received.

- Executive Office for U.S. Attorneys Director's Award - Superior Performance by a Litigative Team, 2011 (for work on *U.S. v. Jon Burge*)
- U.S. Environmental Protection Agency Bronze Medal for Commendable Service, 2009 (for prosecution of the president of a company engaging in environmental crimes)
- Cook County Crime Stoppers Excellence in Law Enforcement, 2008 (for work on behalf of victims of sexual abuse)
- U.S. DEA Certificate of Appreciation, 2008 (for prosecution of an international drug conspiracy)

9.  If you have published any legal books or articles, or if you post on-line notes or commentaries related to the legal profession, list all of them, giving citations and dates.

Published Comment, *Guilt by Saturation: Media Liability for Third-Party Violence and the Availability Heuristic*, 97 Nw. U. L. Rev. 1045 (2003)

17-cv-06260                                                                                    MONITOR00227494

## Law Practice

10. List all courts (including state bar admissions) and administrative bodies having special admission requirements in which you are currently or have ever been admitted to practice, giving the date of admission and your ID number. For any admission listed that is not current, explain the reason any and all such admissions are no longer current.

| Court or Administrative Body | Date Admitted | ID Number |
|---|---|---|
| State of Illinois | 11/2003 | 6280856 |
| State of California (inactive; not practicing in CA) | 05/2013 | 289292 |
| Northern District of Illinois General Bar | 5/16/2018 | |
| Northern District of Illinois Trial Bar | 9/14/2016 | |
| 7th Cir. Court of Appeals | 11/2003 | |
| 2d Cir. Court of Appeals (inactive; not practicing in NY) | 5/5/2005 | |

11. Describe the general nature of your current practice, including any legal specialties which you possess and the nature of your typical clients. Additionally, if your practice is substantially different now from what it previously had been at any prior point, give details of your prior practice and the reason(s) for your practice's evolution.

I currently serve as the General Counsel for HomeAware, an early-stage technology startup, advising the executives, management, board and investors on significant legal issues and providing recommendations for key business decisions. My work for HomeAware includes intellectual property, data protection and privacy, corporate governance, contracts, employment, and other corporate legal matters.

My current work is substantially different from what I have done for the majority of my legal career, which was spent at the U.S. Attorney's Office and Cook County State's Attorney's Office. While at the USAO, I first- or second-chaired more than 26 felony jury trials, and acted as the lead counsel for 17 appeals before the Seventh Circuit. I also held several supervisory roles, including as a Supervisory Litigation Counsel (supervising criminal trial teams), Project Safe Childhood Coordinator (supervising cases involving crimes against children), Civil Rights and Hate Crimes Coordinator (supervising cases involving law enforcement's use of excessive force), and Deputy Chief of the Narcotics & Gangs Section. While at the CCSAO, I served in a management capacity as the Chief Deputy State's Attorney and Chief Ethics Officer, supervising the Chiefs of the CCSAO's different Bureaus, the Conviction Integrity Unit, and the Law Enforcement Accountability Division.

I chose to transition from public service into the private sector and from litigation to transactional work because I am interested in learning new things and challenging myself, and because I was approached with a unique opportunity to work as the only lawyer in a company filled with passionate and brilliant people who came from backgrounds totally different than mine. That said, while I love my job, I miss working for the greater good on behalf of the justice system.

12. State the names, addresses, positions, and dates of employment for all law firms with which you have been associated in practice, all government agencies, all private business organizations, all not-for-profit organizations, and/or any other organization in which you have been employed or otherwise been affiliated with during your legal career. Also provide all dates during which you have practiced as a solo practitioner.

| NAME | TITLE | ADDRESS | DATES |
|------|-------|---------|-------|
| HomeAware | General Counsel | 625 W. Adams 19th Floor Chicago, IL 60661 | 6/19 - Present |
| Cook County State's Attorney's Office | Chief Deputy State's Attorney & Chief Ethics Officer | 69 W. Washington Ste. 3200 Chicago, IL 60602 | 12/16 - 5/19 |
| U.S. Attorney's Office | Assistant U.S. Attorney | 219 S. Dearborn Chicago, IL 60604 | 11/04 - 12/16 |
| 7th Circuit Court of Appeals, Judge Joel Flaum | Law Clerk | 219 S. Dearborn Chicago, IL 60604 | 9/03 - 9/04 |
| Sidley Austin | Summer Associate | 1 S. Dearborn Chicago, IL 60603 | 5/02 - 8/02 |
| Mayer Brown | Summer Associate | 71 S. Wacker Dr. Chicago, IL 60606 | Summers 2001, 2002, 2003 |

Hearing Officer
Application Form

Page 4 of 15

Chicago Police Board
October 30, 2020

17-cv-06260

MONITOR00227496

13. During the past five (5) years, what percentage of your practice has been litigation?
75%

14. During the past five (5) years, how frequently on average have you appeared in court?

> 2015 - 2016 – 15+ times a month
> 2016 - 2019 – 2-3 times a month
> 2019 - present – 0 times a month

15. During the past five (5) years, approximately what percentage of your practice involving litigation has been:

| | |
|---|---|
| Civil | 20 % |
| Criminal | 80 % |

16. During the past five (5) years, approximately what percentage of your appearances were in:

| | |
|---|---|
| Federal Courts | 80 % |
| State or local courts of record | 20 % |
| Administrative bodies | 0 % |

17. Summarize your courtroom experience for the past five (5) years:

While at the U.S. Attorney's Office, I appeared in federal court on a daily basis to litigate my own cases, including for contested motions, evidentiary hearings, trials, and appeals. The two trials I had prior to leaving the USAO were both child exploitation cases. The first, *U.S. v. Norweathers*, was a jury trial of a twice-convicted federal felon who received and transported child pornography while on supervised release. I was the first chair on the case, and presented the government's opening statement and rebuttal argument. I also conducted the cross-examination of the defendant, who testified at trial that he had a public authority defense, claiming that he acted at the behest of law enforcement agents who were investigating child pornography. The defendant was convicted and sentenced to 250 months' imprisonment. The second trial, *U.S. v. Davis*, was a jury trial for possession and transportation of child pornography. Although I was technically the second chair on the trial, I became the sole attorney for closing arguments, rebuttal, and sentencing when my trial partner went into labor and delivered her baby prior to the end of the trial. The defendant was convicted and sentenced to 210 months' imprisonment.

During my last five years at the USAO I also served as a supervisor for other federal prosecutors in the role of "Supervisory Litigation Counsel." As an SLC, I worked with trial teams to help them improve their jury addresses, answered their questions regarding the

evidentiary rules and courtroom procedure, and observed and gave feedback during their trials. I also trained new AUSAs on trial advocacy, the rules of evidence, and jury selection issues.

While at the Cook County State's Attorney's Office, my courtroom experience was more limited because I served on the Executive Staff. However, I would still appear in court for significant issues, such as when a judge in a criminal matter was especially angry or abusive to the line ASAs, or when a civil case needed a high-level supervisor's intervention because of its complexity, settlement value, or importance to the client agency.

Since becoming the General Counsel for a corporation, I have not had any courtroom involvement, and will not have any courtroom involvement unless/until we find ourselves involved in litigation.

18. List your cases which have gone to trial in courts of record during the past five (5) years, indicating whether you were sole, associate, or lead counsel. Give the docket or index number of each such case and give the citations of any reported opinions. Provide the name and contact information of each lead counsel representing any party at the trial, the name of the judge who presided over the trial, and specify whether the trier of fact was a jury or a judge. Indicate whether (a) the trial went to verdict or decision, or (b) the trial began but terminated before conclusion.

I have tried 26 cases in the U.S. District Court for the Northern District of Illinois, only 2 of which were within the last 5 years.

| U.S. v. Norweathers | 09 CR 1047 895 F.3d 485 (7th Cir. 2018) | Judge Lefkow | Jury | Guilty Verdict, Affirmed | 1st Chair | Defense Attorney Mark Kusatzky (847-441-9050) |
| U.S. v. Davis | 14 CR 659 859 F.3d 429 (7th Cir. 2017) | Judge Feinerman | Jury | Guilty Verdict, Affirmed | 2nd Chair | Defense Attorney Richard Mottweiler (312-259-0234)<br><br>Trial Partner Kelly Greening (312-353-5300) |

19. List any appeals you have handled in a federal or state appellate court in the past five (5) years, indicating whether you were the sole, associate or lead appellate attorney. Identify the appellate court and give the appeal number of each appeal and the citation of any opinion. Indicate the action taken by the appellate court.

I have briefed and argued 17 cases before the Seventh Circuit Court of Appeals as the lead attorney, and briefed 1 case before the Second Circuit Court of Appeals as the lead attorney, however none of those were within the last 5 years.

20. List your cases which have been decided after a hearing before an administrative body during the past five (5) years, indicating whether you were sole, associate, or lead counsel. Give the case number of each such case. Provide the name and contact information of each lead counsel representing any party at the hearing, and the name of the individual (*e.g.*, administrative law judge, hearing officer, arbitrator) who presided over the hearing.

N/A

21. Feel free to list any cases that you litigated, other than those identified above, that you wish to point out to the Board.

*U.S. v. Jon Burge*, 08 CR 846, Judge Lefkow – I served as the second chair and delivered the government's rebuttal argument for the trial of this former CPD Commander convicted of perjury and obstruction of justice for lying about the torture of suspects while in police custody. I also drafted the government's brief and argued the appeal before the Seventh Circuit. The Seventh Circuit's opinion can be found at *U.S. v. Burge*, 711 F.3d 803 (7th Cir. 2013).

## Hearing Officer or Quasi-Judicial Experience

22. List all hearing officer, arbitrator, and other quasi-judicial experience you have. Identify the name of the agency, position held, dates of service, the types of issues on which you heard cases, the number of cases heard, and the agency representative most familiar with your work.

Aside from the constant mediation of disputes between my two children (3 and 6 years old), I have not had any formal quasi-judicial experience.

Hearing Officer
Application Form

Page 9 of 15

Chicago Police Board
October 30, 2020

17-cv-06260

MONITOR00227501

**Professional and Other Activities**

23. List all bar associations and legal professional societies of which you are currently a member, give the titles and dates of any office you have held or currently hold in such groups, and the dates of membership in any such associations or societies.

    Association of Corporate Counsel, 2019 - present

24. List all organizations and clubs, other than bar associations and professional societies identified in response to Question 23, of which you have been a member during the past ten (10) years, including the titles and dates of any offices you have held in each such organization.

    Girl Scouts of Greater Chicago and Northwest Indiana, Troop Leader, 2019 – Present
    Wesley Child Care Center Board of Directors, Chair, 2018 – Present
    Committee on Federal Criminal Jury Instructions of the Seventh Circuit, 2012 – 2016
    Chicago Debate Commission Board of Directors, 2012 – 2016
    Co-chair of the Lawndale Community Academy 8th Grade Mock Trial Program, 2006 – 2013

### Conflicts of Interest

25. During the past five (5) years, have you, or has any firm with which you were associated at the time, represented a party in a lawsuit, administrative matter, arbitration or mediation, or any other kind of dispute (hereinafter collectively "a matter") which involved in any way the Chicago Police Department or its personnel? If yes, identify each matter, identify the parties, identify the party you or your firm represented, and describe the nature of the matter and your involvement, if any, in the matter.

Given my work at the U.S. Attorney's Office and State's Attorney's Office, I have been involved in countless cases that involve the Chicago Police Department in some way. During my career I have prosecuted CPD officers and I have worked in partnership with CPD officers. Moreover, I have held supervisory roles in which I oversaw the investigation of CPD officers and made charging recommendations to the grand jury which included both recommendations to charge and recommendations against charging. Notably, I was the Civil Rights Coordinator for the USAO from October 2014 – December 2016, and therefore oversaw all grand jury investigations involving allegations of excessive force by CPD officers during that time period. I also was the supervisor for the CCSAO's Law Enforcement Accountability Division from the time it was founded in 2019 until I left the CCSAO, and therefore oversaw all investigations into criminal conduct that the CCSAO investigated during that time period.

I was not the attorney of record in any cases involving CPD while at the CCSAO. Moreover, I have not had any involvement with CPD since leaving the CCSAO. Therefore, I personally have not investigated or prosecuted a case involving CPD since December 2016.

26. During the past five (5) years, have you, or has any firm with which you were associated at the time, been involved in a matter which involved in any way the City of Chicago in any capacity or its personnel (other than any identified in response to item 25)? If yes, identify each matter, identify the parties, identify the party you or your firm represented, and describe the nature of the matter and your involvement, if any, in the matter.

As part of my work with the CCSAO, I was frequently consulted on civil cases that involved allegations of wrongful prosecution by the CCSAO and CPD. The only case I personally appeared in was *Saunders v. Cook County*, *Thames v. Cook County*, *Richardson v. Cook County* – the "Englewood Four" – and by the time I filed my appearance the City of Chicago had already resolved its own involvement in the case.

Hearing Officer
Application Form

Page 11 of 15

Chicago Police Board
October 30, 2020

17-cv-06260

MONITOR00227503

27. During the past five (5) years, have you, or has any firm with which you were associated at the time, represented any police officers, police boards, police departments, or police commissions (other than any identified in response to item 25)? If yes, for each such representation, identify your client, describe the nature of each such representation, identify each matter, if applicable, and describe your involvement, if any, in the representation.

    No.

28. Are any of your immediate family members (*i.e.*, your spouse/domestic partner, children, parents, siblings) employed by the Chicago Police Department? If yes, list the family member and her/his position with the CPD.

    No.

29. Do you have any other real or potential conflicts of interest that may affect your serving as a Hearing Officer? If yes, please describe.

    No.

## Additional Information

30. State any additional experiences you believe would be beneficial in being a hearing officer.

One of the most important jobs of a Hearing Officer is to respectfully manage people with strong personalities and opinions. I had numerous opportunities to hone this skill while at the CCSAO, where I frequently addressed difficult issues involving public officials including Mayors, Chiefs of Police, the Sheriff's Department, and the County Board, as well as civilians like crime victims, defendants' family members, and community advocates. Although I could not always solve their problems in the way they may have hoped, I was able to diffuse many emotional situations and always remain respectful and professional.

As an example, while the Chief Ethics Officer for the CCSAO I drafted and implemented the CCSAO's first written discovery policy which, among other things, required ASAs to disclose potential impeachment information about their law enforcement witnesses. Although this was mandated by the Supreme Court in 1972, it was an unfamiliar requirement for both ASAs and officers. To facilitate the rollout of this policy, I met with dozens of commanding officers to explain the reasons behind the policy and gain their support. Many times I was met with suspicion, confusion, and sometimes open hostility, but I always responded with logic, caselaw, and good humor. My proudest moment came at the end of an extremely emotionally-charged North Suburban Chiefs of Police meeting when my biggest heckler came up to me after the meeting to apologize for his behavior and say that he was impressed with my grace under pressure.

I believe my ability to maintain equanimity even in the face of high emotions and strongly worded demands would make me an asset to the Police Board.

# References

31. List three individuals as references who are familiar with your abilities and personal character. For each reference, provide the person's name, title, address, telephone number, and e-mail address.

Magistrate Judge M. David Weisman
219 S. Dearborn
Chicago IL 60604
(312) 435-5656

Attorney Katie Hill
1010 Davis St.
Evanston, IL 60201
(312) 283-5711
hill@sppplaw.com

Attorney Christina Egan
77 W. Wacker Dr.
Suite 4100
Chicago, IL 60601
(312) 750-8644
cegan@mcguirewoods.com

Hearing Officer
Application Form

Page 14 of 15

Chicago Police Board
October 30, 2020

17-cv-06260

MONITOR00227506

**Confidentiality Statement**

The Police Board will make every effort to maintain confidentiality regarding all inquiries, applications, interviews, and other matters pertaining to individual applicants. However, please note that information on the applicant that the Board selects as a Hearing Officer may become public.

**Declaration**

I declare that all of the information I have provided as part of my application for the position of Hearing Officer is true and correct, and that I am the actual author of the writing sample submitted with this application.

*April M. Perry*

_____

*Signature*

11/23/20

_____

*Date*

**Application Procedures**

To be considered for the position, applicants shall send via email to Police Board Executive Director Max Caproni (Max.Caproni@cityofchicago.org) the following material: (1) this application form, (2) a résumé, and (3) a writing sample.

**All material must be received by Monday, November 30, 2020.**

Hearing Officer
Application Form

Page 15 of 15

Chicago Police Board
October 30, 2020

MONITOR00227507

# APRIL M. PERRY

███████████████

## EXPERIENCE

### UBIETY TECHNOLOGIES, INC. (d/b/a HOMEAWARE)

General Counsel

Chicago, Illinois
June 2019 – Present

- Serve as first chief legal officer for early-stage startup developing new security technology for the residential, commercial, and law enforcement markets (*see* www.homeaware.com)
- Design and implement a legal framework to govern the deployment of innovative products in a manner that complies with all relevant state and federal laws and regulations (including privacy laws, licensing requirements, and FCC compliance)
- Create a culture of privacy- and cybersecurity-by-design by drafting and ensuring compliance with privacy policies and terms of use and service and collaborating with engineers regarding product design, data collection, and data security
- Protect intellectual property rights by evaluating patentability, overseeing patent prosecutions (five pending utility patent applications) and trademark filings, and drafting IP-related agreements
- Liase with executives, management, board of directors, and investors on significant legal issues and provide recommendations for key business decisions (*e.g.,* intellectual property licensing, fundraising and financing, employment decisions, and privacy matters)
- Negotiate and draft employment agreements, stock option grants, stock purchase agreements, consulting agreements, customer agreements, NDAs, commercial and residential leases, and large-scale hardware manufacturing contracts
- Handle all human resources matters, including drafting employee handbook and administering trainings on employment policies such as anti-harassment training and COVID-related return-to-work training
- Oversee corporate governance matters including government filings and drafting corporate by-laws, amendments to the certificate of incorporation, and board and shareholder resolutions
- Manage outside counsel on matters including patent, trademark, immigration, employment, and financings

### COOK COUNTY STATE'S ATTORNEY'S OFFICE

Chief Deputy State's Attorney and Chief Ethics Officer

Chicago, Illinois
Dec. 2016 – May 2019

- Served on the Executive Staff of the CCSAO in the following capacities:

  **Chief Deputy State's Attorney**
  - Managed Chiefs of the Civil Actions Bureau (representing Cook County and its agencies), Criminal Prosecutions Bureau, Narcotics Bureau, Special Prosecutions Bureau, Juvenile Justice Bureau, and Investigations Bureau, and the more than 700 Assistant State's Attorneys and 50 Investigators who reported to those Chiefs
  - Appeared in state and federal court to resolve complex issues, and led settlement negotiations for high-value cases (*e.g., Saunders, Thames & Richardson v. Cook County* – the "Englewood Four")
  - Liaised with and resolved concerns of external stakeholders (such as elected officials, police chiefs, victims, defense attorneys, and advocacy groups) regarding SAO cases and policies
  - Collaborated with internal stakeholders (such as the Cook County Board, Sheriff, and Health and Hospitals System) to mediate disputes and mitigate risk of future liability
  - Supervised the Director of Training and the curriculum for all in-house CLE

  **Chief Ethics Officer**
  - Identified gaps in ethics policies and training, and developed new policies and training to build a strong culture of professionalism and integrity (for example, drafted SAO's first *Giglio* policy, and trained more than 500 prosecutors about policy compliance)

- Supervised the Director of the Conviction Integrity Unit and provided recommendations to the State's Attorney regarding relief in cases of actual innocence or where a conviction was obtained unfairly, which resulted in more than 40 convictions being vacated
- Reorganized and supervised the Law Enforcement Accountability Division, which investigated law enforcement officers accused of criminal conduct

**UNITED STATES ATTORNEY'S OFFICE**                                           Chicago, Illinois
Assistant United States Attorney, Criminal Division                           Nov. 2004 – Dec. 2016
- Managed prosecutors, staff, and cases in the following supervisory roles:
  - **Project Safe Childhood Coordinator** (July 2010 – Dec. 2016)
    - Supervised investigation and prosecution of cases involving crimes against children
  - **Supervisory Litigation Counsel** (July 2011 – Dec. 2016)
    - Supervised federal criminal trial teams by providing guidance on strategic decisions, pleadings, and jury addresses
    - Trained prosecutors regarding rules of evidence, jury selection, and courtroom presentation
  - **Civil Rights and Hate Crimes Coordinator** (October 2014 – Dec. 2016)
    - Oversaw investigation and prosecution of all cases involving law enforcement's use of excessive force and crimes motivated by racial and religious bias
    - Provided training to local and federal law enforcement regarding civil rights and hate crimes
    - Engaged in community outreach and training regarding federal law and policy
  - **Narcotics & Gangs Deputy Chief** (July 2010 – July 2011)
    - Supervised prosecutors and investigations involving violations of the Controlled Substances Act
- First- or second-chaired 26 felony jury trials, including *U.S. v. Jon Burge* (former Chicago Police Commander convicted of perjury and obstruction of justice for lying about torture of suspects), *U.S. v. Kevin Trudeau* (television pitchman convicted of contempt for fraudulent infomercial), and *U.S. v. Donald McGuire* (prominent Jesuit priest convicted of child exploitation)
- Authored briefs and presented oral arguments for 17 appeals before the Seventh Circuit, including *U.S. v. Jon Burge,* all of which were resolved in favor of the government
- Responsible for prosecutions of more than 100 criminal cases, including a complex fraud scheme that involved more than $9 million in public contracts, a drug conspiracy causing death in which 47 defendants were charged, a public corruption case in which fifteen law enforcement officers were charged, and an environmental and labor embezzlement case brought against a company's president
- Managed investigative teams and task forces involving the FBI, IRS, DEA and other federal and state agencies by providing legal, policy, and strategic advice on dozens of long-term investigations

**UNITED STATES COURT OF APPEALS, SEVENTH CIRCUIT**                           Chicago, Illinois
Law Clerk to Chief Judge Joel M. Flaum                                        Sept. 2003 – Sept. 2004
- Wrote bench memoranda and initial draft opinions for civil and criminal appeals

## EDUCATION

**NORTHWESTERN UNIVERSITY SCHOOL OF LAW**                                      Chicago, Illinois
*Juris Doctor, magna cum laude, Order of the Coif*                            June 2003
- Northwestern University Law Review
  - Articles Editor 2002-2003; Staff Member, 2001-2002
  - Published Comment, *Guilt by Saturation: Media Liability for Third-Party Violence and the Availability Heuristic*, 97 Nw. U. L. Rev. 1045 (2003)

**NORTHWESTERN UNIVERSITY**                                                   Evanston, Illinois
*Bachelor of Science in Speech, magna cum laude*                             June 2000
- Major in Communication Studies; Minor in Sociology

## HONORS & AWARDS

- Executive Office for U.S. Attorneys Director's Award - Superior Performance by a Litigative Team, 2011 (for work on *U.S. v. Burge*)
- U.S. Environmental Protection Agency Bronze Medal for Commendable Service, 2009 (for prosecution of the president of a company engaging in environmental crimes)
- Cook County Crime Stoppers Excellence in Law Enforcement, 2008 (for work on behalf of victims of sexual abuse)
- U.S. DEA Certificate of Appreciation, 2008 (for prosecution of an international drug conspiracy)

## ACTIVITIES

- Girl Scouts of Greater Chicago and Northwest Indiana, Troop Leader     2019 – Present
- Wesley Child Care Center Board of Directors, Chair     2018 – Present
- Committee on Federal Criminal Jury Instructions of the Seventh Circuit     2012 – 2016
- Chicago Debate Commission Board of Directors     2012 – 2016

## BAR ADMISSIONS & CERTIFICATIONS

- Active: State of Illinois, Northern District of Illinois General and Trial Bars, 7th Circuit Court of Appeals
- Inactive: State of California, 2d Circuit Court of Appeals
- Northwestern University's School of Professional Studies Mediation Skills Certificate

MONITOR00227510

In the
# UNITED STATES COURT OF APPEALS
### for the Seventh Circuit

## No. 11-1277

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JON BURGE,

Defendant–Appellant.

On Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 CR 846 — Joan Humphrey Lefkow, *Judge*.

# BRIEF OF THE UNITED STATES

PATRICK J. FITZGERALD
United States Attorney
for the Northern District of Illinois
219 South Dearborn Street
Chicago, Illinois  60604
(312) 353-5300

MANISH S. SHAH
Assistant United States Attorney
Chief of Appeals, Criminal Division

APRIL M. PERRY
Assistant United States Attorney

                                                                MONITOR00227511

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    I.    There Were No Defects with Respect to the Indictment or
        Proof on Counts One and Three. . . . . . . . . . . . . . . . . . . . . . . . . . 24

        A.    Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

        B.    Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

        C.    The Government Charged and Proved an "Official
               Proceeding". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

    II.    Evidence Regarding *Hobley's* Underlying Merit Was Irrelevant . 29

        A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

        B.    Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

        C.    The District Court Properly Excluded the Evidence. . . . . 31

    III.    There Were No Defects with Respect to the Element of
         Materiality. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

        A.    Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

        B.    Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

C.   The Evidence of Materiality Was Sufficient. . . . . . . . . . . 37

D.   The District Court Properly Excluded Proposed
Expert Testimony. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

E.   The Instructions Did Not Constructively Amend the
Indictment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

IV.   The District Court Did Not Abuse its Discretion in
Excluding Prior Testimony. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

A.   Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

B.   Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

C.   Rule 807 Did Not Compel Admission of the Testimony. . . 46

1.   Relevant Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

2.   The Proposed Evidence Was Not Trustworthy. . . . . 48

3.   There Was Other Available Evidence. . . . . . . . . . . . 50

4.   Interests of Justice Did Not Support Admission. . . . 52

5.   Any Error Was Harmless. . . . . . . . . . . . . . . . . . . . . . . 52

D.   The Exercise of a Fifth Amendment Privilege Did Not
Deny Defendant a Fair Trial. . . . . . . . . . . . . . . . . . . . . . . . . 53

V.   The District Court Did Not Err by Discussing a Victim's
Letter at Sentencing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

A.   Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

B.   Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

C.   Defendant Did Not Demonstrate the Letter Was
Unreliable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

ii

## TABLE OF AUTHORITIES

### CASES

*Akrabawi v. Carnes Co.*, 152 F.3d 688 (7th Cir. 1998). . . . . . . . . . . . . . . . 46

*Arthur Anderson LLP v. United States*, 544 U.S. 696 (2005) . . . . . . . . . . . . 28

*Bryson v. United States*, 396 U.S. 64 (1969). . . . . . . . . . . . . . . . . . . . . . . . 32

*Crawford v. Washington*, 541 U.S. 36 (2004) . . . . . . . . . . . . . . . . . . . . . . . 49

*Dunn v. United States*, 442 U.S. 100 (1979) . . . . . . . . . . . . . . . . . . . . . . 27, 28

*Fowler v. United States*, 131 S.Ct. 2045 (2011) . . . . . . . . . . . . . . . . . . . . . . 28

*Govas v. Chalmers*, 965 F.2d 298 (7th Cir. 1992). . . . . . . . . . . . . . . . . . . . 29

*Keri v. Board of Trustees of Perdue Univ.*, 458 F.3d 620 (7th Cir. 2006) . 46, 50

*Monell v. Department of Social Services*, 436 U.S. 658 (1978). . . . . . . . . . . . . 4

*Neder v. United States*, 527 U.S. 1 (1999) . . . . . . . . . . . . . . . . . . . . . . . . 37, 39

*Nix v. Whiteside*, 475 U.S. 157 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Olivieri v. Rodriguez*, 122 F.3d 406 (7th Cir. 1997). . . . . . . . . . . . . . . . . 38-39

*United States v. Alhalabi*, 443 F.3d 605 (7th Cir. 2006). . . . . . . . . . . . . . . . 35

*United States v. Bishop*, 2008 WL 4080218 (M.D. Fla. 2008). . . . . . . . . . . . . 42

*United States v. Blanchard*, 542 F.3d 1133 (7th Cir. 2008). . . . . . . . . . . . . . 42

*United States v. Caputo*, 517 F.3d 935 (7th Cir. 2008) . . . . . . . . . . . . . . . . . 40

*United States v. DeLeon*, 603 F.3d 397 (7th Cir. 2010). . . . . . . . . . . . . . . . . 37

                    MONITOR00227514

*United States v. Dent,* 984 F.2d 1453 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . 47

*United States v. Diekemper,* 604 F.3d 345 (7th Cir. 2010) . . . . . . . . . . . . . . 43

*United States v. Doerr,* 886 F.2d 944 (7th Cir. 1989). . . . . . . . . . . . . . . . 46, 47

*United States v. Dumeisi,* 424 F.3d 566 (7th Cir. 2005) . . . . . . . . . . . . . 44, 47

*United States v. Dunnigan,* 507 U.S. 87 (1993).. . . . . . . . . . . . . . . . . 31, 32-33

*United States v. Durham,* 645 F.3d 883 (7th Cir. 2011). . . . . . . . . . . . . . . . . 35

*United States v. Fernandes,* 391 Fed. Appx. 547 (7th Cir. 2010). . . . . . . . . . . 33

*United States v. Gaudin,* 515 U.S. 506 (1995). . . . . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Guinan,* 836 F.2d 350 (7th Cir. 1988).. . . . . . . . . . . . . . . . . 48

*United States v. Hall,* 165 F.3d 1095 (7th Cir. 1999). . . . . . . . . . . . . . . . . . 52

*United States v. Hook,* 195 F.3d 299 (7th Cir. 1999).. . . . . . . . . . . . . . . . . . 40

*United States v. Hooks,* 848 F.2d 785 (7th Cir. 1988) . . . . . . . . . . . . . . . . . . 47

*United States v. Hoover,* 467 F.3d 496 (5th Cir. 2006). . . . . . . . . . . . . . . 42-43

*United States v. Howard,* 560 F.2d 281 (7th Cir. 1977) . . . . . . . . . . . . . . 37, 39

*United States v. Howard,* 774 F.2d 838 (7th Cir. 1985) . . . . . . . . . . . . . . . . . 47

*United States v. Martinez,* 650 F.3d 667 (7th Cir. 2011). . . . . . . . . . . . . . . . 23

*United States v. Matthews,* 505 F.3d 698 (7th Cir. 2007). . . . . . . . . . . 26, 27, 29

*United States v. Mays,* 593 F.3d 603 (7th Cir. 2010). . . . . . . . . . . . . . . . 57, 59

*United States v. McKenna,* 327 F.3d 830 (9th Cir. 2003). . . . . . . . . . . . . . . . 38

*United States v. McKibbins,* 656 F.3d 707 (7th Cir. 2011) . . . . . . . . . . . 27, 37

iv

*United States v. Mitov*, 460 F.3d 901 (7th Cir. 2006). . . . . . . . . . . . . . . . . . 42

*United States v. Muoghalu*, 662 F.3d 908 (7th Cir. 2011). . . . . . . . . . . . . . 54

*United States v. Mutuc*, 349 F.3d 930 (7th Cir. 2003) . . . . . . . . . . . . . . . . 55

*United States v. Norris*, 300 U.S. 564 (1937). . . . . . . . . . . . . . . . . . . . . . . . . 38

*United States v. O'Doherty*, 643 F.3d 209 (7th Cir. 2011). . . . . . . . . . . . . . . 57

*United States v. O'Hara*, 301 F.3d 563 (7th Cir. 2002) . . . . . . . . . . . . . . . . 34

*United States v. Oldbear*, 568 F.3d 814 (10th Cir. 2009). . . . . . . . . . . . . . . 53

*United States v. Pansier*, 576 F.3d 726 (7th Cir. 2009). . . . . . . . . . . . . . . . 35

*United States v. Peel*, 595 F.3d 763 (7th Cir. 2010) . . . . . . . . . . . . . . . . . 27, 31

*United States v. Powell*, 894 F.2d 895 (7th Cir. 1990). . . . . . . . . . . . . . . 53-54

*United States v. Powell*, 652 F.3d 702 (7th Cir. 2011). . . . . . . . . . . . . . . . . 30

*United States v. Pulley,* 601 F.3d 660 (7th Cir. 2010) . . . . . . . . . . . . . . . . . 57

*United States v. Ratliff-White*, 493 F.3d 812 (7th Cir. 2007). . . . . . . . . . . . . 41

*United States v. Reich*, 479 F.3d 179 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . 27

*United States v. Savage*, 505 F.3d 754 (7th Cir. 2007) . . . . . . . . . . . . . . . . . 52

*United States v. Statham*, 581 F.3d 548 (7th Cir. 2009). . . . . . . . . . . . . . . . 59

*United States v. Thornton*, 642 F.3d 599 (7th Cir. 2011). . . . . . . . . . . . . . . 30

*United States v. Vallar*, 635 F.3d 271 (7th Cir. 2011). . . . . . . . . . . . . . . . . . 24

*United States v. Vretta*, 790 F.2d 651 (7th Cir. 1986) . . . . . . . . . . . . . . . 47-48

*United States v. White*, 610 F.3d 956 (7th Cir. 2010). . . . . . . . . . . . . . . 24, 26

v

*United States v. Wright*, 363 F.3d 237 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . 47

*United States v. Yildiz*, 404 Fed. Appx. 71 (7th Cir. 2010). . . . . . . . . . . . . . . . 55

*Wilson v. City of Chicago*, 6 F.3d 1233 (7th Cir. 1993). . . . . . . . . . . . . . . . . . . 49

## STATUTES

18 U.S.C. § 1512(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 21, 25-28, 31, 37

18 U.S.C. §1512(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

18 U.S.C. § 1512(g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

18 U.S.C. § 1515 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

18 U.S.C. § 1621(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 31, 37

18 U.S.C. § 1623. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## RULES

Federal Rule of Civil Procedure 33. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Federal Rule of Evidence 401. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Federal Rule of Evidence 807. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

## MISCELLANEOUS

Report of the Special State's Attorney *available at*
http://www.state.il.us/defender/acrobatdocs/Report.pdf. . . . . . . . . . . . . . . . . 49

vi

## JURISDICTIONAL STATEMENT

Defendant-Appellant's jurisdictional statement is complete and correct.

## ISSUES PRESENTED FOR REVIEW

1.     Whether defendant's submission of false answers to interrogatories during discovery in a federal lawsuit constitutes obstruction or attempted obstruction of "any official proceeding" under 18 U.S.C. § 1512(c)(2).

2.     Whether the district court abused its discretion by denying a motion for mistrial and excluding evidence regarding the legitimacy of the civil lawsuit when the merit of the lawsuit was not relevant to the crimes with which defendant was charged.

3.     Whether there was sufficient evidence that defendant's lie about torture in a lawsuit about torture was material, whether the district court properly excluded expert testimony on materiality that was incorrect as a matter of law, and whether a jury instruction that described one way defendant's lie could have affected the outcome of the lawsuit constructively amended the indictment.

4.     Whether the district court abused its discretion in excluding hearsay statements of individuals who had personal, professional, and pecuniary interests at stake during their prior testimony, when other similar non-hearsay evidence was available to defendant.

1

                                                  MONITOR00227518

5.     Whether defendant's sentence was based upon unreliable evidence because the district court referenced a victim's letter prior to imposing sentence.

## STATEMENT OF THE CASE

Defendant was charged by indictment with obstruction and attempted obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2) (Counts One and Three), and perjury in violation of 18 U.S.C. § 1621(1) (Count Two). R. 1.[1] A jury convicted defendant on all counts. R. 291.  On January 21, 2011, defendant received concurrent sentences of 54 months' imprisonment on Counts One, Two, and Three. R. 362. Defendant appeals his conviction and sentence.

## STATEMENT OF FACTS

Defendant became a Chicago police officer on March 2, 1970. Tr. 2651. He progressed through the ranks to become a detective in 1972, a temporary sergeant in 1975, a sergeant in 1977, a lieutenant in 1980, the commanding officer of Area 2 violent crimes in 1981, and a commander in 1986. Tr. 2651-52. However, defendant's career was plagued by allegations that defendant and officers under his command tortured suspects to obtain confessions.  Specifically,

---

[1] Citations to the district court's record are designated "R." followed by the docket number. Citations to the Supplemental Appendix are designated "SA" followed by the page number.  Citations to the trial transcript are designated "Tr." followed by the page number, and for all other transcripts, "[Date]Tr." and the page number. Citations to defendant's brief are designated "Br." followed by the page number. Citations to the Presentence Investigation Report are designated "PSR" followed by the page number.

2

suspects told their friends, lawyers, and doctors that they confessed because defendant tortured them by, among other means, suffocating them, pointing loaded guns at them, and electrocuting them. Tr. 221-222, 560-61, 909-912, 1356-75, 2132-37. Suspects who did not know each other, and who were arrested years apart, described similar methods of abuse. Tr. 78-85, 2210-2229.

Eventually, the City of Chicago began facing civil lawsuits. R. 336 at 24. One such lawsuit was *Hobley v. City of Chicago, et. al.*, which was filed in the U.S. District Court for the Northern District of Illinois and named as defendants the City of Chicago and police officers including defendant. Tr. 630, 652. In that suit, defendant answered two sets of interrogatories, swearing that he did not have knowledge of the torture of suspects in CPD custody. Tr. 706-12. Based upon defendant's first set of interrogatory answers, he was charged with one count of obstruction and attempted obstruction of an official proceeding. R. 1. Based upon defendant's second set of answers, which were under oath, defendant was charged with obstruction and attempted obstruction of an official proceeding and perjury. R. 1.

### *The Trial*

#### *Hobley v. City of Chicago*

Madison Hobley served several years in prison for murder before his conviction was overturned. Tr. 632. Shortly thereafter, Hobley filed a federal

3

    MONITOR00227520