# EXHIBIT 6
# (PART 3)

with perjury under 18 U.S.C. § 1623, a crime with completely different elements than § 1512(c)(2).  Section 1623 states: "Whoever under oath . . . in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information . . . knowing the same to contain any false material declaration, shall be fined under this title or imprisoned not more than five years, or both." Thus, by its own terms, § 1623 is limited to conduct that occurs "in any proceeding," a requirement not present in § 1512.[8]

In addition to the fact that the text of § 1512 does not support defendant's argument, defendant cites no cases importing § 1623 into § 1512, and the government has found none. In fact, defendant does not cite any cases involving prosecutions under § 1512(c).[9] While § 1623 may have a wider definition of the word "proceeding" than does § 1512, it is much narrower with respect to where the criminal conduct must occur.

---

[8] Defendant mischaracterizes *Dunn* by stating that *Dunn* "considered the meaning of the word 'proceeding.'" Br. 30.  What *Dunn* actually involved was the definition of "ancillary proceeding," a term not present in § 1512. *Dunn*, 442 U.S. at 101-02.  Moreover, the term used in § 1512, "official proceeding," by definition applies to *Hobley,* a lawsuit pending in federal court.

[9] The defendant cites only two cases involving any subsection of § 1512. In both, the obstructive conduct occurred outside of court, and in neither did the Court take issue with this fact. *See Arthur Anderson LLP v. United States*, 544 U.S. 696 (2005); *Fowler v. United States*, 131 S.Ct. 2045 (2011).

28

Defendant does not dispute that *Hobley v. City of Chicago, et. al.* was an official proceeding before a judge or court of the United States. Br. 33. Interrogatories are, of course, part of federal proceedings, governed by Federal Rule of Civil Procedure 33, and integral to civil litigation. Indeed, the failure to comply with interrogatories can terminate litigation. *See Govas v. Chalmers*, 965 F.2d 298, 303 (7th Cir. 1992). Moreover, the government proved the only nexus required by § 1512: that defendant intended to obstruct, influence, or impede *Hobley* by lying in his answers to interrogatories. *See United States v. Matthews*, 505 F.3d 698, 708 (7th Cir. 2007). On appeal, defendant does not challenge the government's proof of intent. Therefore, the offenses charged in Counts One and Three were properly pled and proved.

## II.     Evidence Regarding *Hobley's* Underlying Merit Was Irrelevant.

Defendant argues that a mistrial was appropriate because evidence existed to indicate that Hobley's lawsuit against defendant was baseless. In the alternative, defendant argues he should have been allowed to present this evidence to the jury. Because the merit of Hobley's lawsuit was not relevant to the crimes with which defendant was charged, the district court properly denied a mistrial and excluded the evidence.

29

## A.     Standard of Review

The denial of a motion for mistrial and the exclusion of evidence are reviewed for abuse of discretion. *See United States v. Powell*, 652 F.3d 702, 709 (7th Cir. 2011); *United States v. Thornton*, 642 F.3d 599, 604 (7th Cir. 2011).[10]

## B.     Background

The evidence at issue consisted of the testimony of Darryl Simms, an inmate serving a life sentence who claimed to have been friendly with Madison Hobley while imprisoned with Hobley. SA94. According to Simms, Hobley told Simms that Hobley set the fire that killed Hobley's family, and Hobley confessed this to police.  SA94-95. Based upon the timing of Hobley's first allegation of abuse, Simms inferred that Hobley had not been abused at Area 2. *Id.*

Once defendant became aware of Simms' account, defendant requested a mistrial or that he be allowed to call Simms as a witness. R. 253. Defendant's motion did not seek dismissal of the indictment. R. 253. The district court denied defendant's motion, finding that Simms did not impeach any government witness and that the illegitimacy of Hobley's lawsuit would not negate a false response to interrogatories in that lawsuit. Tr. 1646.

---

[10] Although defendant begins his argument by noting the standard of review for dismissal of an indictment, the relief defendant sought from the district court was a mistrial or the opportunity to present evidence about Hobley's prior statements. R. 253, Tr. 1642-48.

30

## C.     The District Court Properly Excluded the Evidence.

This case does not involve the use of false evidence or testimony by the prosecution. As defendant himself notes, the government has never taken the position that *Hobley* was a meritorious lawsuit.  Br. 34.  No evidence was presented at trial to show that *Hobley* had merit.[11] The indictment did not allege that *Hobley* was based in fact.  SA1-7.  Nor does defendant point to any evidence to show that the grand jurors were presented with testimony regarding the legitimacy of *Hobley*.  Because no false evidence or testimony was presented to any fact finder, the cases defendant cites regarding the use of false evidence and perjured testimony, Br. 36-39, are inapposite.

Moreover, no evidence should have been presented about the merit of *Hobley* because its merit was not an element of any charged offense.  *See United States v. Dunnigan,* 507 U.S. 87, 94 (1993) (stating elements of 18 U.S.C. § 1621); *United States v. Peel*, 595 F.3d 763, 767 (7th Cir. 2010) (stating elements of 18 U.S.C. § 1512(c)(2)).  The evidence therefore was not relevant.  *See* Fed. R. Evid. 401 ("'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

---

[11] To the contrary, the government elicited evidence that the complaint was based upon what Hobley alleged and that the parties disagreed about the case's merits. Tr. 632-33, 669.

31

MONITOR00227548

This case is similar to *Bryson v. United States*, 396 U.S. 64, 65 (1969), a case in which the defendant challenged his conviction for lying to the National Labor Relations Board regarding his affiliation with the Communist Party by arguing that the NLRB's question was unconstitutional. In upholding the conviction, the Supreme Court held that whether the NLRB's inquiry of the defendant was unconstitutional was "legally irrelevant." *Id.* at 68. The Court began by finding that none of the elements of defendant's offense involved the validity of the NLRB's proceeding. *Id.* at 68-69. The Court then noted that there is "a valid legislative interest in protecting the integrity of official inquiries." *Id.* at 70. Finally, the Court held that a citizen does not have "a privilege to answer fraudulently a question that the Government should not have asked. Our legal system provides methods for challenging the Government's right to ask questions – lying is not one of them." *Id.* at 72.

Just as in *Bryson*, the legitimacy or illegitimacy of Hobley's lawsuit gave no privilege to defendant to lie as he saw fit. The crimes of perjury and obstruction do not require proof of the merits of the underlying proceeding because these crimes exist to protect the integrity of the judicial system as much as individual litigants. *See Nix v. Whiteside*, 475 U.S. 157, 168-69 (1986) (discussing attorney's duty to disclose perjury even when against his client's interests because perjury "undermines the administration of justice")*; United*

32

17-cv-06260                                                                                    MONITOR00227549

*States v. Dunnigan*, 507 U.S. 87, 97 (1993) (perjury statutes are constitutional because they "uphold the integrity of our trial system"). Moreover, just as in *Bryson*, defendant had numerous remedies for potentially frivolous litigation that did not involve lying under oath.

Defendant argues that the remedy for fraud on the court is additional fraud on the court. Defendant would have this Court immunize perjury by anyone who later learns the case against him may not have been legitimate and encourage litigants to lie under oath when defending against baseless litigation. Defendant's proposal would undermine the integrity of the court system and the very purpose for the statute. If defendant were correct, every prosecution for perjury or obstruction would involve a lengthy sideshow of evidence having no bearing on the defendant's culpability, and prosecution would be impossible in cases where the defendant obstructed justice by destroying the evidence necessary to prove the crime. *Cf. United States v. Fernandes*, 391 Fed. Appx. 547, *1 (7th Cir. 2010) (affirming sentence for obstruction in a case where defendant disposed of a computer during a child pornography investigation even though no evidence was presented that child pornography was on the computer).

33

This is not, and cannot be, the law. For these reasons, the district court properly denied defendant's motions for mistrial and to introduce Simms' testimony.[12]

## III. There Were No Defects with Respect to the Element of Materiality.

Defendant argues that the government did not present sufficient evidence that defendant's false statements were material, the district court improperly excluded expert testimony regarding materiality, and a jury instruction on materiality constructively amended the indictment. Because sufficient evidence was presented and the district court did not err, the verdict should be affirmed.

### A. Standard of Review

A challenge to the sufficiency of the evidence is "a daunting one" where the evidence is viewed in the light most favorable to the government and the verdict is affirmed when any rational trier of fact could have found the essential

---

[12] Since the evidence was not relevant, defendant also cannot sustain a *Brady* claim. *See United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002) (finding that *Brady* involves evidence "favorable to the accused because it is either exculpatory or impeaching"). Although the background section of defendant's brief states the evidence was impeaching because it showed that inmates lie about abuse, Br. 35, defendant does not allege Simms would have impeached any government witness, nor does he challenge the district court's decision to preclude this use of the evidence. In fact, Simms had no evidence that any government witness lied. Tr. 1645. Defendant also cannot sustain a *Brady* claim because disclosures during trial, while not ideal, do not constitute *Brady* violations if the defendant had "sufficient time to make use of the material disclosed." *O'Hara*, 301 F.3d at 569. Here, defendant had sufficient time to use the material: defendant received the material three weeks before closing arguments, was able to interview Simms, and Simms was brought to the courthouse in the event he was permitted to testify. R. 253, Tr. 1520-22.

34

 MONITOR00227551

elements of the crime beyond a reasonable doubt. *United States v. Durham*, 645 F.3d 883, 892 (7th Cir. 2011). Moreover, the inquiry as to whether something is material is particularly within the province of the jury given the "delicate assessment of the inferences" required. *United States v. Gaudin*, 515 U.S. 506, 512 (1995).

A district court's decision to exclude expert testimony is reviewed for abuse of discretion. *United States v. Pansier*, 576 F.3d 726, 738 (7th Cir. 2009).

The determination of whether a jury instruction constructively amended an indictment is reviewed *de novo. United States v. Alhalabi,* 443 F.3d 605, 614 (7th Cir. 2006).

## B.     Background

Before trial, defendant proposed that former state judge Daniel Locallo offer numerous expert opinions, including that defendant's answers would not be material if Hobley was unable to first prove the elements of his case. R. 173-1. The government objected to several of Locallo's proposed opinions, and the district court issued a detailed opinion allowing some opinions and excluding others. R. 173, 190, SA70-77. Ultimately, the defense chose not to call Locallo as a witness.

At trial, the government presented evidence regarding both the allegations in *Hobley* and defendant's conduct to demonstrate that defendant's interrogatory

35

answers were material. With respect to *Hobley*, the government proved that Hobley filed a lawsuit against the City of Chicago and officers including defendant alleging that Hobley had been suffocated by a typewriter cover while in CPD custody. Tr. 632, 711-12. The lawsuit included a *Monell* claim that city practices and policies, including defendant's conduct, created an environment that allowed this abuse to occur. Tr. 635-37. The government further presented evidence that, over the course of more than a decade prior to Hobley's arrest, defendant and officers under defendant's command suffocated suspects with objects like plastic bags and typewriter covers. Tr. 79-80, 1027-30, 1781, 2224-26. Additionally, the government proved that defendant was the commanding officer of Area 2 violent crimes for the five years immediately preceding Hobley's interrogation. Tr. 651, 2651-52. Finally, the government presented evidence that an answer to an interrogatory can be used as an admission, to develop additional evidence, or in a motion for summary judgment. Tr. 725.

At the conclusion of the trial the judge instructed the jury that "[a]n answer to an interrogatory is material if a truthful answer might reasonably be calculated to lead to the discovery of evidence admissible at trial of the underlying lawsuit or otherwise affect its outcome. It is not necessary that the answer actually have that effect, so long as it had the potential or capability of doing so." R. 289 at 32, SA105.

36

MONITOR00227553

## C.    The Evidence of Materiality Was Sufficient.

Defendant first argues there was insufficient evidence to show that defendant's interrogatory answers were material.

Under 18 U.S.C. § 1621(1), perjury occurs when a person makes a false statement about "any material matter."[13] To show materiality, the government must simply show that the statement had "the natural effect or tendency to impede, influence or dissuade." *United States v. Howard*, 560 F.2d 281, 284 (7th Cir. 1977) (defining materiality under § 1621); *see also Neder v. United States*, 527 U.S. 1, 16 (1999) (defining a material false statement as one that has "a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed"). This Court has refused to define materiality as requiring a change in the outcome of the case. *See United States v. DeLeon*, 603 F.3d 397, 403 (7th Cir. 2010) (defining materiality for the purposes of the sentencing guidelines, and finding that it is not necessary that the lie affect "the ultimate outcome of the judicial process"). This is because

---

[13] Materiality is not an element of the obstruction counts of conviction. *See United States v. McKibbins*, 656 F.3d 707, 712 (7th Cir. 2011) (holding that 18 U.S.C. § 1512(c) "does not include a materiality requirement"). Rather, under § 1512(c), it is only *intent* to obstruct that is required. *See* 18 U.S.C. § 1512(c) ("whoever corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so . . ."). Thus, while the government alleged that defendant's lies were material to *Hobley's* outcome, and that is what the evidence showed, the jury verdicts on Counts One and Three were not dependent upon a finding of materiality.

37

"materiality is tested at the time the alleged false statement was made." *United States v. McKenna*, 327 F.3d 830, 839 (9th Cir. 2003). It is well-established that perjury "is complete when a witness' statement has . . .been made," regardless of what happens next. *United States v. Norris*, 300 U.S. 564, 574 (1937).

Because materiality does not depend upon what happens after the false statement, defendant's arguments that his answers had to have "gummed up the works" of *Hobley*, been filed or used, or that Hobley first had to prove the legitimacy of his civil claims, Br. 42-43, are meritless.[14]  The only relevant question is whether, viewing the evidence in the light most favorable to the government, defendant's denial that he observed or had knowledge of abuse by officers at Area 2 had the "natural tendency to influence" the outcome of *Hobley* – not whether the outcome was affected.

Here, *Hobley* alleged a policy and practice of torture, and the government proved that defendant supervised and participated in over a decade of torture. The interrogatories were relevant to a central claim of the complaint, during a phase of litigation specifically designed to uncover additional evidence, shape the litigation going forward, and perhaps even terminate the case. *See Olivieri v.*

---

[14]  Moreover, defendant's complaint about the admission of too few details regarding Hobley's allegations is disingenuous given defense counsel's repeated objections to the admission at trial of any details of the *Hobley* lawsuit. Tr. 632, 634, 637.

38

*Rodriguez*, 122 F.3d 406, 409-410 (7th Cir. 1997) (noting potential for interrogatory to eliminate need to conduct more costly discovery). Therefore, a rational juror could have found that defendant's answer to an interrogatory about torture had "the natural effect or tendency to impede [or] influence," the *Hobley* litigation. *See United States v. Howard*, 560 F.2d 281, 284 (7th Cir. 1977). Moreover, a rational juror could have found that if defendant had responded truthfully by providing the requested details about abuse, this could have been a valuable admission to the plaintiff and led to additional evidence, and thus was "capable of influencing" the outcome of *Hobley*. *Neder,* 527 U.S. 1 at 16. For these reasons, the evidence of materiality was sufficient.

### D.    The District Court Properly Excluded Proposed Expert Testimony.

Defendant also argues that the district court erred by barring Locallo's proposed testimony. Specifically, defendant challenges the exclusion of Locallo's opinion that defendant's answers "would not have bearing on *Hobley's* outcome if Hobley could not first prove injury." Br. 40.

The district court did not abuse its discretion in barring Locallo's opinion. On the whole, the court found that Locallo's proposed testimony was confusing, inaccurate, and would not assist the jury. SA72-74. With respect to this particular opinion, the district court found it "confounding" and noted that "[d]iscovery is a preparation tool for marshaling facts so a party may later prove

39

or rebut claims at trial. False responses in discovery may defeat legitimate claims or rebuttals." SA75. Furthermore, as noted above, materiality does not depend upon subsequent events in a proceeding, and there is no requirement that the government prove the likely success of a proceeding in order to prove perjury occurred. Moreover, there is no requirement that discovery proceed in order of the elements of plaintiff's claim. Because Locallo's proposed testimony was confusing and inaccurate, as well as contrary to the Court's legal instructions, it was properly excluded. *See United States v. Hook*, 195 F.3d 299, 309 (7th Cir. 1999) (holding that expert testimony is properly excluded when it is inaccurate); *United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008) (finding that "the only legal expert in a federal courtroom is the judge").

### E.    The Instructions Did Not Constructively Amend the Indictment.

Defendant also challenges the use of a jury instruction stating: "An answer to an interrogatory is material if a truthful answer might reasonably be calculated to lead to the discovery of evidence admissible at trial of the underlying lawsuit or otherwise affect its outcome. It is not necessary that the answer actually have that effect, so long as it had the potential or capability of doing so." R. 289 at 32, SA105. Defendant does not contend that the instruction was an inaccurate statement of the law. Rather, defendant alleges that the instruction constructively amended the indictment. Br. 44-45.

40

Defendant argues that the indictment was constructively amended because the challenged jury instruction "expand[ed] the relevant decision-maker to include opposing counsel" and argues that "[w]hile the indictment limited the scope of the relevant decisions to *Hobley's* outcome, the jury was not so confined." Br. 41, 44. However, there is no mention of opposing counsel in the jury instruction. Moreover, by quoting only the first sentence of the jury instruction in his brief, Br. 41, defendant changes the context. Read together, the two sentences of the instruction informed the jury that it was the outcome that was relevant, just as the indictment alleged: "An answer to an interrogatory is material if a truthful answer might reasonably be calculated to lead to the discovery of evidence admissible at trial of the underlying lawsuit *or otherwise affect its outcome. It is not necessary that the answer actually have that effect, so long as it had the potential or capability of doing so.*" SA 105 (emphasis added). Thus, the jury was required to find that defendant's answers, at a minimum, had the "potential or capability" of affecting the outcome of *Hobley*.

Just because there is a difference between an instruction and language in the indictment does not mean there has been a constructive amendment. Constructive amendment occurs when jury instructions support conviction for "a crime other than that charged." *United States v. Ratliff-White*, 493 F.3d 812, 820 (7th Cir. 2007). Constructive amendment is prohibited "to insure that the

41

                                                 MONITOR00227558

defendant is not subject to a second prosecution, and to give the defendant reasonable notice so that he may prepare a defense." *United States v. Blanchard*, 542 F.3d 1133, 1143 (7th Cir. 2008). For these reasons, the Court is "primarily concerned with changes made. . . that affect elements of the crime." *United States v. Mitov*, 460 F.3d 901, 906 (7th Cir. 2006).

Defendant does not explain how the challenged instruction caused him to be convicted of a crime other than that charged, affected his right to be free from a second prosecution, or prejudiced his defense. Defendant's argument that the indictment limits the legal definition of materiality is incorrect. The challenged language does not define or limit the elements but rather explains that "[i]t was material to the outcome of the civil lawsuit whether in fact [defendant] knew of or participated in torture . . ." SA2. The decisions of opposing counsel, obtaining admissible evidence, and the process of civil discovery all are ways the outcome of a lawsuit may be affected. Because the indictment did not allege the *manner* in which the outcome of *Hobley* was affected, the instruction did not expand the indictment, and this case is distinguishable from the cases cited by defendant. *United States v. Bishop*, 2008 WL 4080218, *3 (M.D. Fla. 2008) (finding error where the indictment alleged how a document was material and the government failed to prove it); *United States v. Hoover*, 467 F.3d 496, 502 (5th Cir. 2006) (finding error where the indictment alleged one false statement and the jury

42

instructions allowed conviction for another).  For these reasons, there was no constructive amendment.

## IV.    The District Court Did Not Abuse its Discretion in Excluding Prior Testimony.

Defendant challenges the exclusion of prior testimony of Yucaitis, O'Hara, McKenna, Hill, and Hyman, and argues that this testimony should have been admitted under Federal Rule of Evidence 807.[15] Defendant further challenges the fact that Hyman was allowed to assert his Fifth Amendment privilege.[16] Because the proposed testimony was untrustworthy, was not more probative than available evidence, and the interests of justice would not have been served by its admission, the district court did not abuse its discretion by excluding the evidence. Moreover, even if an error were made, that error was harmless.

---

[15] Defendant mentions in his background section that other testimony was not allowed under Rule 807, Br. 46-47, but only raises in his argument section testimony of Yucaitis, O'Hara, McKenna, Hill, and Hyman. Br. 50-55.

[16]    Although defendant complains about numerous evidentiary rulings – including admission of Wilson's testimony, the inability to cross-examine Wilson regarding Wilson's failure to come forward when another man was imprisoned for a crime Wilson committed, and that an FBI agent read Wilson's testimony – defendant does not raise these as issues on appeal or cite any cases to support a finding that the district court abused its discretion. Therefore, these issues have been waived. *See United States v. Diekemper*, 604 F.3d 345, 355-56 (7th Cir. 2010) (finding that "unsupported and undeveloped arguments are waived").

43

### A.     Standard of Review

The district court's decision not to admit prior testimony under Rule 807 is reviewed for abuse of discretion. *See United States v. Dumeisi*, 424 F.3d 566, 574 (7th Cir. 2005). This Court has emphasized that "[t]rial courts have a considerable measure of discretion in deciding when a hearsay statement fits" under Rule 807 and will reverse "only when no reasonable person could take the view of the trial court." *Id.*

### B.     Background

Before trial, defendant moved to admit Yucaitis' and O'Hara's prior testimony under Rule 807. R. 79, 80. According to defendant's evidentiary proffer, Yucaitis would have testified that on February 14, 1982, Yucaitis stood outside Wilson's interrogation room and only O'Hara and McKenna entered the room. R. 80 at 3. Yucaitis denied abusing or seeing anyone abuse Wilson, or seeing Wilson with significant injuries. R. 80 at 4. Yucaitis' proposed testimony conflicted with Wilson's allegation that Yucaitis was one of Wilson's torturers. Tr. 1033-45.

According to defendant's summary of O'Hara's proposed testimony, O'Hara would have testified that O'Hara and McKenna were the only officers who went into Wilson's interrogation room and O'Hara did not witness any

abuse or see Wilson with significant injuries. R. 80 at 5. Wilson did not allege that O'Hara was present when any abuse occurred. Tr. 1248.

In a written opinion, the district court denied defendant's motion to admit prior testimony of Yucaitis and O'Hara, and denied it again following defendant's motion to reconsider. R. 156, SA54-63, R. 187, SA66-68.

During trial, defendant moved to admit prior testimony of Hill. R. 254. According to defendant, Hill would have testified that Hill did not abuse Wilson and that Hill was on vacation until the afternoon of February 14. R. 254. The district court denied defendant's motion. R. 273, SA99-100. Defendant then called Hill's wife to testify that her husband was on a family vacation and could not have returned to work until approximately 3:00 p.m. Tr. 3117.

When defendant subpoenaed several witnesses for trial, including McKenna and Hyman, the witnesses asserted their Fifth Amendment privilege against self-incrimination. R. 261. After the judge refused to compel their testimony, defendant moved orally for prior testimony of McKenna and Hyman to be admitted under Rule 807, without summarizing what the testimony would have been. Tr. 1099. The district court denied this motion. Wilson did not allege that McKenna or Hyman was present when any abuse occurred. Tr. 1247-48, 1049.

45

## C.     Rule 807 Did Not Compel Admission of the Testimony.

### 1.     *Relevant Law*

Rule 807 provides:

> A statement not specifically covered by Rule 803 or 804 but having
> equivalent circumstantial guarantees of trustworthiness, is not excluded
> by the hearsay rule, if the court determines that (A) the statement is
> offered as evidence of a material fact; (B) the statement is more probative
> on the point for which it is offered than any other evidence which the
> proponent can procure through reasonable efforts; and (C) the general
> purposes of these rules and the interests of justice will best be served by
> admission of the statement into evidence.

Fed. R. Evid. 807. This Court has cautioned district courts to narrowly construe

Rule 807, "to prevent it from becoming the exception that swallows the hearsay

rule." *Akrabawi v. Carnes Co.*, 152 F.3d 688, 697 (7th Cir. 1998); *see also Keri v.

Board of Trustees of Perdue University*, 458 F.3d 620, 631 (7th Cir. 2006). To this

end, the Court has developed five elements that must be satisfied before

admitting evidence under Rule 807: "(1) circumstantial guarantees of

trustworthiness; (2) materiality; (3) probative value; (4) the interests of justice;

and (5) notice." *Keri,* 458 F.3d at 631.

With respect to circumstantial guarantees of trustworthiness, there are a

number of factors courts may consider. *See United States v. Doerr*, 886 F.2d 944,

956 (7th Cir. 1989). However, this Court has emphasized that lists of factors are

46

"neither exhaustive nor absolute, and each case must be analyzed on its own facts." *Id.*

One significant fact is whether the speaker had a motivation to lie. *See Dumeisi*, 424 F.3d at 577 (finding that the "lack of a motive to falsify information" is a classic reason to find records trustworthy); *see also Doerr*, 886 F.2d at 956; *United States v. Howard*, 774 F.2d 838, 845 (7th Cir. 1985). When a witness has motive to lie, such as to exculpate himself, the statements may be found to lack trustworthiness. *See United States v. Wright*, 363 F.3d 237, 246 (3d Cir. 2004) (affirming the exclusion of a denial of wrongdoing by a public official because, as the district court found, "human nature is to deny committing crimes, especially for a public figure who is held in high esteem by the community and knows he is under investigation"); *United States v. Dent,* 984 F.2d 1453, 1460 (7th Cir. 1993) (finding that exculpatory statements lacked the necessary guarantees of trustworthiness); *United States v. Hooks*, 848 F.2d 785, 797 (7th Cir. 1988) (upholding the exclusion of testimony that was made "in the face of possible indictment" and was "suspiciously self-serving"). Although the district court is not required to exclude evidence that is made when a motivation to lie is present, it is within the court's discretion to do so. *See United States v. Vretta*, 790 F.2d 651, 659-60 (7th Cir. 1986) (upholding admission of evidence even though defendant argued speaker had motive to lie and noting court's

47

                                                    MONITOR00227564

"considerable discretion" in this area); *United States v. Guinan*, 836 F.2d 350, 355 (7th Cir. 1988) (upholding admission of testimony of defendant's ex-wife).

### 2.     *The Proposed Evidence Was Not Trustworthy.*

The district court did not abuse its discretion in finding the prior testimony did not have the necessary guarantees of trustworthiness under Rule 807. The district court noted that Yucaitis, O'Hara, and Hill had significant motivation to testify falsely during their testimony, including to protect: (1) the conviction of Wilson, who murdered two police officers; (2) themselves from professional discipline, criminal prosecution, and substantial punitive damages for which they would be personally liable; and (3) defendant, their former boss. SA59, SA99-100.[17] The district court used the same reasoning when addressing defendant's motion with respect to McKenna's and Hyman's prior testimony. Tr. 1101-02. Because motivation to lie is a proper basis upon which to deny the admission of testimony under Rule 807, the district court did not abuse its discretion.

Moreover, there is no evidence that the witnesses' inherent truthfulness would overcome their motivation to lie. Without any citation to the record,

---

[17] Defendant argues that, unlike Yucaitis and O'Hara, Hill was not a defendant in Wilson's civil lawsuit or charged by the Police Board with misconduct. Br. 50-51. However, this does not mean that Hill was not motivated to avoid the civil lawsuits and professional misconduct investigations.

48

defendant argues that Yucaitis, O'Hara, and Hill should be believed because they were "decorated CPD veterans with no criminal records." Br. 50. In another attempt to bolster their credibility, defendant notes that "Yucaitis and O'Hara were exonerated at trial in *Wilson*." Br. 46. Defendant does not mention that the *Wilson* verdict was reversed due to errors at trial which affected the verdict. *See Wilson v. City of Chicago*, 6 F.3d 1233, 1238 (7th Cir. 1993). Defendant also does not mention that CPD's Police Board did not credit Yucaitis' and O'Hara's testimony on this same issue, finding it "substantially more likely than not that each knew that Wilson was being abused." R. 21-5 at 39. Similarly, a Special Prosecutor appointed to investigate allegations of wrongdoing concluded, "Hyman did not tell the truth when he denied that he had been told by Andrew Wilson that he had been tortured." Report of the Special State's Attorney, at 54, *available at* http://www.state.il.us/defender/acrobatdocs/Report.pdf (last visited Jan. 20, 2012).[18] In addition to motive to lie, these adverse credibility findings indicate that the proffered testimony was not trustworthy.

Defendant's argument relies on the premise that cross-examination makes statements trustworthy enough to be admitted under Rule 807. In so arguing, defendant cites *Crawford v. Washington*, 541 U.S. 36 (2004), a case that involved

---

[18] Hyman refused to appear before the Special Prosecutor when subpoenaed, and was then held in contempt. *Id.* at 54. The Special Prosecutor therefore did not have the opportunity to judge Hyman's credibility in person. *Id.*

49

a defendant's right to confront witnesses against him. Needless to say, the Confrontation Clause is not the issue before this Court. Defendant's theory that cross-examination is the only factor relevant under Rule 807 is the opposite of this Court's instruction that Rule 807 be narrowly construed. *See Keri v. Board of Trustees of Perdue University*, 458 F.3d 620, 631 (7th Cir. 2006). Moreover, while defendant cites cases that stand for the general principle that cross-examination is important, defendant fails to cite a single case, and the government is not aware of any, in which cross-examination was by itself sufficient to admit hearsay under Rule 807.

The district court did not abuse its discretion in concluding that cross-examination does not provide guarantees of trustworthiness in a case in which the speakers had significant personal, professional, and pecuniary interests at stake. Therefore, the testimony was properly excluded.

### 3.    *There Was Other Available Evidence.*

The district court also did not abuse its discretion in concluding that the statements were not more probative on the point for which they were offered than other evidence which defendant could procure. To begin with, O'Hara, McKenna, and Hyman were not alleged to have been present during any abuse. Tr. 1247-48, 1049. Therefore, defendant's assertion that they could have directly refuted Wilson's allegations, Br. 54, is misplaced. To the extent that these

50

witnesses could have challenged aspects of Wilson's allegations, defendant called other witnesses for this purpose, including former CPD sergeant Fred Miller, ASA Kathleen Warnick, and court reporter Michael Hartnett. Tr. 3137, 2459-65, 3170-79.

With respect to Hill's proposed alibi testimony, defendant was able to introduce this in another manner. Specifically, Hill's wife provided the same alibi that her husband would have provided. Tr. 3117.

Finally, with respect to Yucaitis' proposed testimony, defendant also had other evidence available. In addition to the evidence noted above, defendant called a medical expert who testified that some of Wilson's injuries were inconsistent with Wilson's allegations. Tr. 2539-53. Moreover, defendant himself testified and challenged Wilson's claims of abuse. Tr. 2699-2749.

Defendant complains that the district court erred by finding an absence of corroboration in his proposed testimony. Br. 53. The district court did not make any such finding. Rather, the district court found that other similarly probative evidence was available to defendant – a fact that by the text of Rule 807 makes admission improper. SA62-63.[19] In light of the other evidence, it was not an abuse of discretion to exclude the prior testimony.

---

[19] The district court also found that the fact that Yucaitis and O'Hara corroborated each other – an argument made by the defendant in support of admission – did not add to the testimony's trustworthiness. SA60, R. 80.

51

                                                                 MONITOR00227568