# EXHIBIT 6
# (PART 4)

### 4. *Interests of Justice Did Not Support Admission.*

Finally, the district court found that the interests of justice would not be served by the admission of the testimony because it was not trustworthy. SA63. Defendant challenges this finding, arguing that the district court's decision to exclude his proposed testimony was unfair.

Defendant does not cite any cases to support his conclusion that evidence that has been found to be untrustworthy must be admitted out of equity concerns. In fact, due process rights of defendants are not violated when unreliable hearsay is excluded. *See United States v. Hall*, 165 F.3d 1095, 1113-14 (7th Cir. 1999). Because the interests of justice do not require that self-serving statements made by incredible declarants be admitted when similar evidence was available, the exclusion of the prior testimony should be affirmed.

### 5. *Any Error Was Harmless.*

Even if the district court erred in excluding some or all of the prior testimony, the error was harmless. *See United States v. Savage*, 505 F.3d 754, 762 (7th Cir. 2007) (applying harmless error analysis to the improper exclusion of evidence and asking whether the decision "had a substantial influence over the jury and the result reached was inconsistent with substantial justice").

First, as discussed above and in defendant's brief, Br. 53-54, the decision to exclude the prior testimony did not have a substantial influence over the jury

17-cv-06260                                                                                    MONITOR00227569

because defendant presented other evidence to contradict Wilson. Second, Wilson's abuse was a small portion of the government's evidence against defendant. At trial, the government called Anthony Holmes and three witnesses to corroborate Holmes' abuse, Melvin Jones and one witness to corroborate Jones' abuse, Gregory Banks and four witnesses to corroborate Banks' abuse, and Shadeed Mu'min and two witnesses to corroborate Mu'min's abuse. Tr. 78-85, 218-22, 261-63, 912-913, 333-48, 560, 1781-84, 1743-49, 1568-69, 1890-95, 2137-40, 2220-28, 1975-83, 2358-62. The government also presented two witnesses who testified that defendant made admissions to them about his knowledge of abuse. Tr. 1506-08, 1649-52. Due to the overwhelming evidence of defendant's knowledge of abuse, the exclusion of defendant's proffered hearsay was harmless.

### D. The Exercise of a Fifth Amendment Privilege Did Not Deny Defendant a Fair Trial.

Defendant also claims the district court erred by allowing Hyman to assert his Fifth Amendment privilege, and argues that this impeded defendant's right to present a defense. To show a due process violation of the right to present a defense, the defendant must show he "was denied fundamental fairness, *i.e.,* that the excluded evidence might have affected the outcome of [his] trial." *United States v. Oldbear*, 568 F.3d 814, 820 (10th Cir. 2009); *see also United States v. Powell*, 894 F.2d 895, 902 (7th Cir. 1990) (applying harmless error analysis and

17-cv-06260                                                                                                    MONITOR00227570

holding that when defense testimony is refused, the testimony must have been "relevant, material, and vital to the defense").

Apart from citing three cases for general legal principles and concluding that the district court erred, defendant offers no analysis or argument explaining how the district court abused its discretion. Br. 56.[20] Defendant does not make any showing with respect to what Hyman's testimony would have been, nor argue that Hyman's testimony would have affected the outcome of his trial. *See United States v. Muoghalu*, 662 F.3d 908, 913 (7th Cir. 2011) (finding that defendant's failure to make an offer of proof forfeited his challenge to the exclusion of evidence). But even assuming an error occurred, it was harmless. As is discussed above, Wilson was just one of five individuals whose abuse the government proved at trial. For these reasons, the exclusion of Hyman's unspecified testimony did not deny the defense any vital evidence, and the verdict should be affirmed.

## V. The District Court Did Not Err by Discussing a Victim's Letter at Sentencing.

Defendant contends that the district court utilized unreliable evidence in sentencing defendant by discussing a victim's letter prior to imposing sentence. Because defendant has not met his burden of showing that the letter was

---

[20] Defendant also did not move to unredact the district court's opinion on this issue, which presumably demonstrates how the court exercised its discretion. SA85-93.

17-cv-06260                                                                          MONITOR00227571

unreliable, and because the letter was corroborated, the district court did not err by mentioning the letter during its explanation of defendant's sentence.

## A.    Standard of Review

The district court's factual findings with respect to whether evidence at sentencing is reliable are reviewed for clear error. *See United States v. Yildiz*, 404 Fed. Appx. 71, 75 (7th Cir. 2010). Moreover, when a defendant fails to make a specific objection at sentencing with respect to a judge's factual findings, the defendant's argument on appeal is waived. *See United States v. Mutuc*, 349 F.3d 930, 938 (7th Cir. 2003).

## B.    Background

Before sentencing, more than 25 individuals who claimed they had been abused by either defendant or officers under defendant's command submitted letters which were summarized in and attached to the Presentence Investigation Report and Supplemental PSR. *See* PSR at 11 and 1/13/11 Supplemental PSR. The letters were tragically similar – describing the pain of torture, the loss of relationships with family members while imprisoned, and ongoing fear of police. PSR at 11. Defendant also submitted approximately 24 character letters on his own behalf. R. 354 at 18, 1/20/11Tr. 95.

Defendant's sentencing hearing took place January 20-21, 2011. R. 360. Melvin Jones and Anthony Holmes testified regarding the effects of defendant's

17-cv-06260                                                                 MONITOR00227572

torture. 1/20/11Tr. 18-32. The district court also heard from former police officer and community activist Howard Saffold, and history professor Adam Green, who testified regarding the community's lack of trust in police and the importance of the case to the integrity of the justice system as a whole. 1/20/11Tr. 32-54, 112-143.

For the defense, defendant's brother and sister-in-law both spoke. 1/21/11Tr. 156-165. Additionally, the brother of one of the officers murdered by Andrew Wilson testified. 1/21/11Tr. 166-69. Finally, defendant spoke. 1/21/11Tr. 199-202. At no point did defendant acknowledge any wrongdoing or express remorse for his actions. *Id.*

The district court then imposed sentence. The district court's explanation of the sentence comprises more than eight transcript pages. 1/21/11Tr. 205-213. Among other things, the district court discussed the importance of promoting respect for the law and discussed the victim impact letters, quoted from one unnamed victim, and remarked upon the statement of Anthony Holmes. 1/21/11Tr. 207-08. The court compared the victims' accounts to the defense's continued position that defendant was innocent. 1/21/11Tr. 208. The court concluded that defendant's lack of remorse "demonstrates at the very least a serious lack of respect for the due process of law and [defendant's] unwillingness to acknowledge the truth in the face of all of this evidence." *Id.* When discussing

56

MONITOR00227573

the seriousness of the offense, the district court noted that "the freedom that we treasure most of all in this country is the right to live free of governmental abuse of power" and that defendant's behavior "undermined irreparably" the administration of justice. 1/21/11Tr. 208-09. When discussing deterrence, the court discussed the importance of demonstrating to police officers that lying under oath is both risky and wrong. 1/21/11Tr. 210. The district court credited the character letters defendant submitted, and acknowledged that defendant acted heroically on many occasions. 1/21/11Tr. 211. Ultimately, the district court imposed a sentence of 54 months' imprisonment. 1/21/11Tr. 213.

## C.     Defendant Did Not Demonstrate the Letter Was Unreliable

It is the defendant's burden to establish that information relied on by the sentencing court is inaccurate or unreliable. *See United States v. Pulley,* 601 F.3d 660, 665 (7th Cir. 2010) (stating that defendant must show the court relied upon "critical, inaccurate information" at sentencing to show a due process violation; *United States v. O'Doherty*, 643 F.3d 209, 219 (7th Cir. 2011) (finding that it is defendant's burden to challenge facts in a PSR). Specifically, the defendant must "furnish some evidence that calls into question the reliability or correctness" of the evidence. *United States v. Mays*, 593 F.3d 603, 608 (7th Cir. 2010).

57

     MONITOR00227574

Defendant's challenge to the district court's use of the victim's letter fails because defendant did not meet his burden of showing that the letter was inaccurate or unreliable. Defendant notes in his brief that he objected based upon hearsay. Br. 57. In fact, the entirety of defendant's objection was as follows: "The government submits unreliable hearsay information as part of its sentencing submission. If the Sixth Amendment applies at sentencing, it is difficult to see how its Confrontation Clause component can be disregarded. All hearsay in the PSR and government's submissions should be stricken." R. 354 at 21. As with most PSRs, the PSR in this case was almost entirely hearsay.[21] Defendant did not specifically challenge the reliability of the victim impact letters. Nor should the district court have inferred from defendant's objection that defendant was challenging the use of letters at sentencing, given that defendant submitted dozens of his own letters at sentencing. By failing to make a specific objection to alert the court to some issue with respect to the letters, defendant has waived his argument on appeal.[22] But even if the issue were preserved, defendant's blanket objection did not meet his burden of "furnish[ing]

---

[21] Specifically, the offense conduct, criminal history, offender characteristics, and victim impact sections all relate information that was provided by other sources to the probation officer. PSR at 5-25.

[22] Even if this Court considers the argument forfeited, rather than waived, defendant cannot show plain error considering that he also submitted letters to be used at sentencing.

58

some evidence that calls into question the reliability or correctness" of the evidence. *See Mays*, 593 F.3d at 608.

Even now, defendant does nothing to show that the letter read by the Court was unreliable. Instead, defendant argues that the author had to be brought to court, placed under oath, and subjected to cross-examination. Br. 59. However, no such formalities are required at sentencing. *See United States v. Statham*, 581 F.3d 548, 553 (7th Cir. 2009). Because defendant has not provided any evidence that the letter he now challenges was unreliable, the district court committed no error, much less a clear one, and the sentence should be affirmed.

Setting aside defendant's failure of proof, it was not clear error for the district court to mention one of the victim impact letters prior to imposing sentence. The court's discussion of the letter comprises only ten lines of more than eight pages explaining defendant's sentence. 1/21/11Tr. 205-213. Read in context, the district court used the letter to illustrate the seriousness of the offense which had been proved by a "mountain of evidence." 1/21/11Tr. 208. Additionally, the district court explained why the massive amount of evidence against defendant mattered: "[i]t demonstrates at the very least a serious lack of respect for the due process of law and [defendant's] unwillingness to acknowledge the truth." *Id.* It was this principle that affected defendant's sentence, not any particular victim's account.

59

MONITOR00227576

Even if the district court had relied upon this letter specifically in imposing sentence, that decision would not have been clear error because the victim's account was supported by the evidence. Each victim impact letter corroborated the others, and all were corroborated by the evidence presented at trial. Multiple victims discussed the torture that led to their confessions and the pain of losing family members to death or abandonment following their convictions. There was ample evidence to support the district court's conclusion that defendant's participation in and supervision of torture led to substantial personal costs for his victims which defendant has never acknowledged or apologized for. For all of these reasons, defendant's sentence was not affected by unreliable evidence and should be affirmed.

60

                                                                MONITOR00227577

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this

Court affirm defendant's conviction and sentence.


Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

MANISH S. SHAH
Assistant United States Attorney
Chief of Appeals, Criminal Division


s/ April M. Perry
APRIL M. PERRY
Assistant United States Attorney

61

## CIRCUIT RULE 31(e) CERTIFICATION

Pursuant to Circuit Rule 31(e), I hereby certify that I have furnished a digital version of our brief and all available appendix items in nonscanned PDF format.

## RULE 32 CERTIFICATION

I hereby certify that:

1. This brief complies with the type volume limitation of Federal Rules of Appellate Procedure 32(a)(7)(B) because it contains 13,983 words.

2. This brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5), 32(a)(6), and Circuit Rule 32(b), because it has been prepared using the WordPerfect X3 proportionally-spaced typeface of Century Schoolbook with 13-point font in the text and 12-point font in the footnotes.

Respectfully submitted,

s/ April M. Perry
APRIL M. PERRY
Assistant United States Attorney
219 S. Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 886-5966

Dated: January 20, 2012

62

 MONITOR00227579

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2012 I electronically filed the foregoing Brief of the United States with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system to:

Marc W. Martin
53 West Jackson Blvd., Suite 1420
Chicago, Illinois 60604

s/ April M. Perry
APRIL M. PERRY
Assistant United States Attorney
219 S. Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 886-5966

63

MONITOR00227580

Police Board
City of Chicago

HEARING OFFICER SEARCH: REPORT ON THE SELECTION PROCESS
March 15, 2021

On October 30, 2020, the Police Board launched a search for a new hearing officer to conduct police disciplinary hearings. It was the first hearing officer search since the entry of the Consent Decree in *Illinois v. Chicago*. Below is a report of the major steps in the selection process.

Position announcement and advertisement
A position announcement (see Attachment 1) was posted on the Board's website and sent to the following local bar associations on October 30, 2020:

- o  Arab American Bar Association
- o  Asian American Bar Association of the Greater Chicago Area
- o  Black Women Lawyers' Association of Greater Chicago
- o  Chicago Bar Association
- o  Cook County Bar Association
- o  Decalogue Society of Lawyers
- o  Hispanic Lawyers Association of Illinois
- o  Puerto Rican Bar Association of Illinois
- o  Women's Bar Association of Illinois

In addition, an advertisement for the position ran in the *Chicago Daily Law Bulletin*.

Applications
The Board required each applicant to submit a completed application form, résumé, and a writing sample. The application deadline was November 30, 2020. The Board received 26 applications.

Review of Applications and Interviews
A search committee was formed to review all applications and conduct a first round of interviews. The committee consisted of Board Members Matthew Crowl and Steve Flores, Hearing Officers Lauren Freeman and Allison Wood, General Counsel Bethany Biesenthal, and Executive Director Max Caproni.

On December 4, the search committee met via Zoom and used the selection criteria to identify 7 applicants for interviews. The committee interviewed the candidates via Zoom on December 11 (see Attachment 2 for the interview questions used by the committee). The committee used the selection criteria to recommend a short list of 3 candidates for consideration by the full Board.

The full Board reviewed the 3 candidates' application material and interviewed them via Zoom on December 17 (see Attachment 3 for the interview questions used by the Board). The Board used the selection criteria to identify 2 candidates for further inquiries: Michael Panter and April Perry.

Further Inquiries
General Counsel Biesenthal and Executive Director Caproni contacted the two finalists' references and others in the legal community who know them and asked questions based on the hearing officer selection criteria (see Attachment 4 for this list of questions). General Counsel Biesenthal and Executive Director Caproni spoke with the following individuals:

- Perry: Two U.S. District Court judges, four former co-workers from the United States Attorney's Office for the Northern District of Illinois, and three defense attorneys.

- Panter: One Illinois Appellate Court justice and three Cook County Circuit Court judges.

General Counsel Biesenthal's law firm conducted an exhaustive search of internet and other publicly available information on the two finalists.

General Counsel Biesenthal and Executive Director Caproni reported the results of their inquiries to the Board.

Appointment of Two New Hearing Officers
On January 21, 2021, the Board appointed Michael Panter and April Perry as new hearing officers to conduct police disciplinary hearings. (See Attachment 5 for excerpts from the transcript of the public meeting at which the Board made these appointments.)



## Chicago Police Board

HEARING OFFICER

The Chicago Police Board seeks a highly-qualified attorney to serve as a Hearing Officer. The Hearing Officer's primary responsibility is to conduct disciplinary hearings of cases involving allegations of misconduct by Chicago police officers.

The Municipal Code of Chicago requires the Hearing Officer to be an attorney licensed to practice in the State of Illinois, with a minimum of five years' experience. Pursuant to the Consent Decree entered in *Illinois v. Chicago*, the Police Board will use the following additional criteria to select the Hearing Officer:

1. Extensive trial experience;
2. Hearing officer or quasi-judicial experience (preferred, but not required);
3. In-depth knowledge of the law and procedure;
4. Excellent oral- and written-communication skills;
5. Ability to be impartial when conducting disciplinary hearings;
6. Ability to present complex legal and factual issues clearly and impartially to the Board members;
7. Professional integrity and good character; and
8. Not be a current employee of the City of Chicago Law Department, Police Department, or Civilian Office of Police Accountability, or an employee of one of these agencies within the last three years.

This is a contract position with the Police Board; therefore, all typical rights and benefits of employee status are not available. Hearing Officers will act as independent contractors and will be responsible for providing all equipment and materials necessary to perform the tasks of the job. Hearing Officers serve on an hourly basis. Compensation is currently $175 per hour. The amount of time worked each month varies based on the caseload, with an average of 15 – 20 hours per month.

To be considered for the position, applicants shall send via email to Police Board Executive Director Max Caproni (Max.Caproni@cityofchicago.org) the following material: (1) a completed application form, (2) a résumé, and (3) one writing sample.

All application material must be received by **Monday, November 30, 2020**.

If you have any questions, feel free to contact Executive Director Caproni by e-mail or at 312-742-3259.

If you have a disability and require a reasonable accommodation to submit your application, please contact Executive Director Caproni.

2 North LaSalle Street, Suite M800, Chicago, Illinois 60602
312-742-4194    ChicagoPoliceBoard.org

POLICE BOARD HEARING OFFICER INTERVIEW QUESTIONS
FIRST ROUND OF INTERVIEWS
December 11, 2020

- Briefly tell us about yourself and why you are interested in the position.  Also, if you are selected for the position, how long do you envision yourself serving as a hearing officer?

- Please discuss your trial experience [and hearing officer/ALJ/judicial experience, if any] and how you believe it makes you well-qualified to be a hearing officer for police disciplinary cases. [Re selection criteria nos. 2 – 4]

- Taking no more than a few minutes, summarize one of the cases you have recently handled. [Re selection criteria nos. 5 and 7]

- Please give us an example of your ability to be impartial in your professional capacity. [Re selection criterion no. 6]

- Some of the disciplinary hearings are highly publicized/scrutinized.  Is there anything about that that causes you concern?

- Status hearings, pre-hearing conferences, and evidentiary hearings take place during the day at the Police Board office (or via Zoom). They usually begin at 10:00 a.m. The caseload varies. On average, a hearing officer will have two or three status dates and one to three PHC's and evidentiary hearings per month. The status dates last less than an hour; the PHC's 1 – 2 hours; and the evidentiary hearings often last until mid-to late afternoon.  In addition, the Board meets at 4:00pm of the third Thursday each month to discuss cases, and the hearing officer must be present at these meetings. Will you be able to incorporate these time commitments into your schedule?

- Questions re conflicts of interest, if any.

- What questions do you have for us?

POLICE BOARD HEARING OFFICER INTERVIEW QUESTIONS
SECOND ROUND OF INTERVIEWS
December 17, 2020

- Briefly tell us about yourself and why you are interested in the position.

- Please discuss your trial experience [and hearing officer/ALJ/judicial experience, if any] and how you believe it makes you well-qualified to be a hearing officer for police disciplinary cases.

- Taking no more than a few minutes, summarize one of the cases you have recently handled.

- The Board members are the decision makers in cases (the hearing officer's role is to preside over the hearing and present the case impartially to the Board). Are you comfortable with not being the final decision maker?

- Is there anything in your background that would be embarrassing to you or to the Board if it became public?

- What questions do you have for us?

MONITOR00227585

POLICE BOARD HEARING OFFICER SEARCH

QUESTIONS FOR CANDIDATES' REFERENCES AND
OTHERS IN THE LEGAL COMMUNITY

- Begin the call by providing a brief description of the position – make sure individuals know the role of the PB hearing officer

Questions:

- Please provide a bit of background about your interactions with Judge Panter/Ms. Perry.
- Would you say Judge Panter/Ms. Perry has an in-depth knowledge of the law and legal procedure? Can you provide examples?
- Do you believe Judge Panter/Ms. Perry has the ability to decide matters impartially?
- Can you provide us with examples in which Judge Panter/Ms. Perry was impartial?
- Would you say Judge Panter/Ms. Perry is able to present complex issues clearly? Can you provide an example?
- How would you describe Judge Panter/Ms. Perry's professional integrity? Can you provide an example?
  - Do you have any concerns about character or demeanor?
- How would you describe Judge Panter/Ms. Perry's oral communication skills? Written communication skills?

MEETING
January 21, 2021

POLICE BOARD
CITY OF CHICAGO

PUBLIC MEETING

Thursday, January 21, 2021
7:30 p.m.

(VIA VIDEO and AUDIO CONFERENCE)

- - - - - - - - - - - - - - - - - - -

APPEARANCES:

POLICE BOARD MEMBERS
GHIAN FOREMAN, President
PAULA WOLFF, Vice President
MATTHEW CROWL
REVEREND MICHAEL EADDY
STEVE FLORES
JORGE MONTES
JOHN P. O'MALLEY, JR.
RHODA D. SWEENEY
ANDREA L. ZOPP


ALSO PRESENT:
DAVID BROWN, Superintendent of Police;
SYDNEY ROBERTS, Chief Administrator of the
Civilian Office of Police Accountability;
DEBORAH WITZBURG, Deputy Inspector General for
Public Safety;
KAREN KONOW, Chief of Bureau of Internal
Affairs, Chicago Police Department;
SCOTT SPEARS, Assistant General Counsel to the
Superintendent of Police;
BRIAN MCDERMOTT, Chief of the Chicago Police
Department's Office of Operations;
BRENDAN DEENIHAN, Chief of the Chicago Police
Department's Bureau of Detectives;
MAX CAPRONI, Executive Director of the Police
Board;
MEMBERS OF THE PUBLIC.

MEETING
January 21, 2021

 1    improve the accountability process.

 2              We look forward to sharing our

 3    recommendations for change at our public

 4    meetings and to receive feedback from the

 5    public and all stakeholders in the

 6    accountability process.

 7              The Board has also conducted a

 8    search for new hearing officers to conduct over

 9    police disciplinary hearings.  We received 26

10    applications for the position.  Our selection

11    process included completion of an extensive

12    application form, submission of a writing

13    sample, two rounds of interviews with

14    candidates, conversations with candidates'

15    references and others in the legal communities,

16    and a background check.  As required by the

17    Consent Decree, we evaluated candidates based

18    on the selection criteria that are published on

19    our website.

20              Is there a motion to designate

21    Michael Panter and April Perry as Hearing

22    Officers?

23       VICE PRESIDENT WOLFF:  This is Paula.  I so

24    move.

17-cv-06260                                           MONITOR00227588

MEETING
January 21, 2021

1        BOARD MEMBER EADDY:  Michael Eaddy.

2    Second.

3        PRESIDENT FOREMAN:  All in favor, please

4    signify by saying aye.

5                    (CHORUS OF AYES.)

6        PRESIDENT FOREMAN:  Any opposed?

7                    (NO RESPONSE.)

8        PRESIDENT FOREMAN:  The motion passes.

9                 To further implement the

10   requirements of the consent decree and to make

11   other changes to the process for handling

12   disciplinary cases, proposed amendments to the

13   Board's rules of procedure have been drafted.

14   We have made announcements at prior public

15   meetings and we posted drafts on our website

16   for public comment.  We plan to consider the

17   final draft at next month's public meeting.

18                 As announced at last month's

19   public meeting, proposed amendments to the rule

20   governing suspensions of officers precluded

21   from lawfully carrying a firearm have been

22   drafted.  The purpose of these amendments is to

23   permit officers to retain medical coverage so

24   they may address medical issues while they are

MEETING
January 21, 2021

```
 1   STATE OF ILLINOIS )
                      )  SS:
 2   COUNTY OF C O O K )

 3

 4        MAUREEN A. WOODMAN, C.S.R., being first

 5   duly sworn, says that she is a court reporter

 6   doing business in the City of Chicago; that she

 7   reported in shorthand the proceedings had at

 8   the hearing of said cause; that the foregoing

 9   is a true and correct transcript of her

10   shorthand notes, so taken as aforesaid, and

11   contains all the proceedings of said hearing.

12

13

14

15
                         MAUREEN A. WOODMAN,CSR
16                       License No. 084.002740

17

18

19

20

21

22

23

24
```