# EXHIBIT 9
# (PART 2)

Police Board Case No. 20 PB 2978
Police Officer Jamie Jawor
Findings and Decision

from this case pursuant to § 2-78-130(a)(iii) of the Municipal Code of Chicago.)

DATED AT CHICAGO, COUNTY OF COOK, STATE OF ILLINOIS, THIS 15th DAY OF JULY, 2021.

Attested by:

/s/ GHIAN FOREMAN
President

/s/ MAX A. CAPRONI
Executive Director

26

MONITOR00264515

Police Board Case No. 20 PB 2978
Police Officer Jamie Jawor
Findings and Decision

## DISSENT

The following members of Board hereby dissent from the findings and decision of the

majority of the Board.

[None]

RECEIVED A COPY OF

THESE FINDINGS AND DECISION

THIS _____ DAY OF _____, 2021.

_____
DAVID O. BROWN
Superintendent of Police

27

                                                   MONITOR00264516

# BEFORE THE POLICE BOARD OF THE CITY OF CHICAGO

| | | |
|---|---|---|
| IN THE MATTER OF CHARGES FILED AGAINST | ) | |
| POLICE OFFICER DAVID SALGADO, | ) | No. 20 PB 2979 |
| STAR No. 16347, DEPARTMENT OF POLICE, | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | (CR No. 2019-4302) |
| RESPONDENT. | ) | |

## FINDINGS AND DECISION

On September 24, 2020, the Superintendent of Police filed with the Police Board of the

City of Chicago charges against Police Officer David Salgado, Star No. 16347 (hereinafter

referred to as "Respondent"), recommending the Respondent be discharged from the Chicago

Police Department for violating several Rules of Conduct, which set forth expressly prohibited

acts.

A hearing on these charges against Respondent took place before Hearing Officer Lauren

Freeman on June 3, 2021, via Zoom video conferencing. Following this evidentiary hearing, the

members of the Police Board read and reviewed the record of the proceedings, including the

Hearing Officer's Report (neither party filed a response to this report), and viewed the video

recording of the entire evidentiary hearing. Hearing Officer Freeman made an oral report to and

conferred with the Board before it rendered its findings and decision.

## POLICE BOARD FINDINGS

The Police Board of the City of Chicago, as a result of its hearing on the charges, finds

and determines that:

1. Respondent was at all times mentioned herein employed as a police officer by the

Department of Police of the City of Chicago.

MONITOR00264517

Police Board Case No. 20 PB 2979
Police Officer David Salgado
Findings and Decision

2. A copy of the charges filed, and a notice stating the date, place, and time the initial status hearing would be held, were personally served upon Respondent not fewer than five (5) days before the date of the initial status hearing for this case.

3. The Respondent was properly notified of the June 3, 2021, evidentiary hearing by both first-class and certified U.S. mail to the federal prison in which he is currently incarcerated. Respondent did not appear at the evidentiary hearing. Hearing Officer Freeman proceeded with this hearing in Respondent's absence in accordance with Section III-F of the Police Board's Rules of Procedure.

**Introduction**

4. On October 22, 2019, Respondent was found guilty by a jury in the United States District Court under case number 18 CR 00286(2) of violating: United States Code Title 18, Sec. 371 Conspiracy to Steal Property in the Care, Custody and Control of the Chicago Police Department; Title 18, Sec. 241 Conspiracy to Violate Fourth Amendment Rights of Certain Chicago Residents; Title 18, Sec. 641 Public Money, Property, or Records; Title 18, Sec. 1001 (a)(2) Making Materially False Statement to a Federal Agent; and Title 18, Sec. 1519 Destroying Records with the Intent to Impede an Investigation of Any Matter within the Jurisdiction of the FBI. On July 15, 2020, he was sentenced to 71 months in prison and is currently incarcerated at the United States Penitentiary Lewisburg in Pennsylvania. On October 28, 2019, the Illinois Law Enforcement Training and Standards Board decertified Respondent on the basis of his federal felony convictions, as required by Illinois law.

Police Board Case No. 20 PB 2979
Police Officer David Salgado
Findings and Decision

## Charges Against the Respondent

5. The Respondent, Police Officer David Salgado, Star No. 16347, charged herein, is **guilty** of violating Rule 2 and Rule 3 in that the Superintendent proved by a preponderance of the evidence the following charges:

On or about October 28, 2019, the Illinois Law Enforcement Training and Standards Board decertified Officer David Salgado's previous certification and ability to practice as a law enforcement officer in Illinois under 50 ILCS 705/6.1, as a result of being found guilty on October 22, 2019, in United States District Court, under case 18 CR 00286(2), of a violation of Title 18, United States Code Section 371 Conspiracy to Steal Property in the Care, Custody and Control of the Chicago Police Department, and/or Title 18, United States Code Section 241 Conspiracy to Violate Fourth Amendment Rights of Certain Chicago Residents, and/or Title 18. United States Code Section 641 Public Money, Property, or Records, and/or Title 18, United States Code Section 1001(a)(2) Making Materially False Statement to a Federal Agent, and/or Title 18, United States Code Section 1519 Destroying Records with the Intent to Impede an Investigation of Any Matter within the Jurisdiction of the FBI, a conviction deemed to be a decertification under the Illinois Police Training Act, 50 ILCS 705/1, *et seq.* Officer Salgado thereby violated:

a. Rule 2, which prohibits any action or conduct which impedes the Department's efforts to achieve its policy and goals or brings discredit upon the Department; and

b. Rule 3, which prohibits any failure to promote the Department's efforts to implement its policy or accomplish its goals.

See the findings set forth in Section no. 4 above, which are incorporated herein by reference. The Superintendent provided the Board with proof of Respondent's conviction and sentence in the federal court. In addition, the Superintendent put into evidence the letter from the Illinois Law Enforcement Training and Standards Board decertifying Respondent as a law enforcement officer, as well as the statutory basis for his decertification. Respondent failed to attend the hearing before Hearing Officer Freeman, either personally or through counsel, and offered no defense to the charges against him or the evidence offered by the Superintendent. His conviction and decertification bring discredit upon the Department and constitute a failure to

3

Police Board Case No. 20 PB 2979
Police Officer David Salgado
Findings and Decision

promote the Department's efforts to accomplish its goal of promoting respect for the law and

those sworn to enforce it, thereby violating Rules 2 and 3 of the Department's Rules of Conduct.

## Disciplinary Action

6. The Police Board has considered the facts and circumstances of Respondent's

conduct, and Respondent's complimentary and disciplinary histories.[1]

Under Illinois law, Respondent, a convicted felon, no longer possesses the required

certification and ability to practice as a law enforcement officer. In addition, it would be a

felony for Respondent to continue to serve as a Chicago police officer. Respondent's

decertification by the Illinois Law Enforcement Training and Standards Board constitutes a

substantial shortcoming which renders his continuance in his office detrimental to the discipline

and efficiency of the service of the Chicago Police Department, and is something that the law

recognizes as good cause for him to no longer occupy his office.

[The remainder of this page is left blank intentionally.]

---

[1] As noted above, the Respondent did not appear at the June 3, 2021, hearing to offer any evidence in defense or mitigation.

4

MONITOR00264520

Police Board Case No. 20 PB 2979
Police Officer David Salgado
Findings and Decision

## POLICE BOARD DECISION

The members of the Police Board of the City of Chicago hereby certify that they have read and reviewed the record of the proceedings, viewed the video-recording of the entire evidentiary hearing, received the oral report of the Hearing Officer, and conferred with the Hearing Officer regarding the evidence made part of the record at the hearing. The Police Board hereby adopts the findings set forth herein by the following votes.

By a vote of 5 in favor (Ghian Foreman, Paula Wolff, Steve Flores, Jorge Montes, and Andrea L. Zopp) to 0 opposed, the Board finds Respondent **guilty** of the charges in Specification No. 1, as set forth in Section No. 5 above.

As a result of the foregoing and for the reasons set forth in Section No. 6 above, the Board, by a vote of 5 in favor (Foreman, Wolff, Flores, Montes, and Zopp) to 0 opposed, hereby determines that cause exists for discharging Respondent from his position as a police officer.

**NOW THEREFORE, IT IS HEREBY ORDERED** that David Salgado, Star No. 16347, as a result of having been found **guilty** of all charges in Police Board Case No. 20 PB 2979, be and hereby is **discharged** from his position as a police officer and from the services of the City of Chicago.

This disciplinary action is adopted and entered by a majority of the members of the Police Board: Ghian Foreman, Paula Wolff, Steve Flores, Jorge Montes, and Andrea L. Zopp.

DATED AT CHICAGO, COUNTY OF COOK, STATE OF ILLINOIS, THIS 19th DAY OF AUGUST, 2021.

Police Board Case No. 20 PB 2979
Police Officer David Salgado
Findings and Decision

Attested by:

/s/ GHIAN FOREMAN
President

/s/ MAX A. CAPRONI
Executive Director

6

MONITOR00264522

Police Board Case No. 20 PB 2979
Police Officer David Salgado
Findings and Decision

## DISSENT

The following members of Board hereby dissent from the findings and decision of the

majority of the Board.

[None]

---

RECEIVED A COPY OF

THESE FINDINGS AND DECISION

THIS _____ DAY OF _____, 2021.


_____
DAVID O. BROWN
Superintendent of Police

7

## BEFORE THE POLICE BOARD OF THE CITY OF CHICAGO

IN THE MATTER OF CHARGES FILED AGAINST    )
POLICE OFFICER PATRICK KELLY,             )     **No. 19 PB 2966**
STAR No. 19397, DEPARTMENT OF POLICE,   )
CITY OF CHICAGO,                      )
                                      )     **(CR No. 1033096)**
             **RESPONDENT.**         )

## HEARING OFFICER REPORT

On October 10, 2019, the Superintendent of Police filed with the Police Board of the City of Chicago charges against Police Officer Patrick Kelly (herein "Officer Kelly" or "Respondent") recommending that he be discharged from the Chicago Police Department for violating several Rules of Conduct. A hearing on these charges against the Respondent took place on March 8–12, 2021. This report is prepared pursuant to Section III.G. of the Police Board's Rules of Procedure. It is intended to provide the members of the Board with a summary of the evidence presented at the hearing and information relating to witness credibility. This report is not meant to be a comprehensive statement or analysis of the evidence, but rather only a summary. It also does not make findings as to the credibility of witnesses, but instead provides the Board with information it may want to consider when it assesses credibility. The transcript and video recording of the entire hearing and the exhibits made part of the record at the hearing, which the members of the Board are required to read and view, contain all witness testimony and evidence presented by the parties.

### Brief Background

Respondent has been a Chicago Police Officer since 2004. The events in this case involve the off-duty shooting of Respondent's friend Michael LaPorta (LaPorta) with Respondent's service weapon in the early morning hours of January 12, 2010. The night before, Respondent and LaPorta

MONITOR00264524

Police Board Case No. 19 PB 2966
Police Officer Patrick Kelly
Hearing Officer Report

went out drinking with some of Respondent's friends. They first went to a local bar called
McNally's which closed at 2:00 a.m. They left that bar and went to another local bar called
Brewbakers and stayed until it closed at 4:00 a.m. They left that bar and went to Respondent's
home, where they continued drinking. LaPorta's cousin Kyle LaPorta drove them to Respondent's
house but he only stayed for a few minutes before leaving. At some point after Kyle LaPorta left,
at approximately 4:35 a.m., LaPorta was shot in the head with Respondent's service weapon. The
bullet entered LaPorta's head on the back, left side, approximately three inches above LaPorta's
left ear. The cartridge casing of the bullet that was fired failed to eject properly; it was found in
the chamber of Respondent's weapon, a double action Kellerman ("DAK") Sig Sauer. Respondent
called 911 at about 4:35 a.m. and reported that LaPorta had committed suicide. During that call
Respondent realized that LaPorta was still breathing. Respondent called 911 a second time at
about 4:40 a.m., asking when the paramedics would arrive at his home. Paramedics arrived during
that phone call. Respondent became upset when he was not allowed to travel to the hospital in the
ambulance with LaPorta, leading responding officers to take him to the ground and arrest him.
LaPorta survived the shooting but was left with a severe brain injury that prevented him from
communicating with investigating officers regarding the incident until 2016. In the ensuing
investigation, and in the years following the shooting, Respondent maintained that LaPorta shot
himself.

### Issues to be Determined by the Board

The Superintendent takes the position that, in the early morning hours of January 12, 2010,
Respondent shot LaPorta in the head with his service weapon. Respondent is charged with
violating Rule 2 (conduct which impedes the Department's efforts to achieve its policy and goals
or brings discredit upon the Department), Rule 8 (disrespect or maltreatment of any person), Rule

2

Police Board Case No. 19 PB 2966
Police Officer Patrick Kelly
Hearing Officer Report

9 (engaging in unjustified physical altercation), Rule 38 (unlawful or unnecessary use or display

of a weapon), and Rule 14 (making a false report). The issues to be determined by the Board are

(1) whether it is more likely than not that Respondent shot LaPorta; and if so, (2) whether

Respondent lied about the shooting to IPRA during a January 11, 2011 interview. A brief overview

of the testimony and evidence presented in this case is provided below.

## 1. Superintendent's Case

LaPorta testified that after going to two local bars, he went to Respondent's house. He had

planned to stay at Respondent's house until approximately 5:30 a.m., at which time he was going

to meet a friend to go hunting. At some point after arriving at the house, LaPorta testified that

Respondent began to yell at and hit his dog who was in a crate in the living room where they were

siting. LaPorta testified that he was praising the dog and that led to an argument with Respondent.

LaPorta told Respondent he was going to leave. He did not remember seeing Respondent with a

gun in his hand, but he believes Respondent was standing behind him when he was shot by

Respondent.

Sergeant Stephen Coyne testified that, when he responded to the scene, Respondent was

yelling, screaming, crying, and swearing, and appeared to be highly intoxicated. Sergeant Coyne

testified that Respondent remained uncooperative after he was arrested and attempted to kick out

the back windows of the squad car. Sergeant Ray Broderdorf testified that he administered a

Breathalyzer test at 12:37 p.m. on January 12, 2010—approximately eight hours after the shooting.

Respondent's alcohol reading was .093. Dr. Albert Larsen testified that, based on a back

extrapolation,[1] Respondent's claim that he drank no more than five light beers over the course of

---

[1] A back extrapolation is a calculation that uses the results of a later-in-time Breathalyzer to determine the range of alcohol concentration in an individual's body at the time of an earlier incident.

MONITOR00264526

Police Board Case No. 19 PB 2966
Police Officer Patrick Kelly
Hearing Officer Report

approximately five hours (two at McNally's, two at Brewbakers, and part of a beer upon returning to his home with LaPorta) could not be accurate. Based on Dr. Larsen's calculation, Officer Kelly's blood alcohol concentration at the time of the shooting was between .169 and .246 grams of alcohol per deciliter, a range consistent with consumption of between ten and fourteen beers.

LaPorta's uncle, David Battistoni, an experienced gun owner, testified that he has gone hunting with LaPorta hundreds of times since he was a young child. Battistoni taught LaPorta how to shoot a loaded gun when he was ten or eleven years old, and he always emphasized gun safety. Battistoni testified that, only knowing how to shoot with his right hand himself, he taught LaPorta to shoot with his right. Battistoni further testified that, in their many hunting trips, he never saw LaPorta shoot with his left hand. David Balash, a forensic science consultant and independent firearms examiner, testified that the location and direction of LaPorta's injury was inconsistent with someone holding a gun in their right hand and pulling the trigger with their index finger. He testified that the injury was also inconsistent with an individual holding the firearm in their left hand up to their temple. Such a shot would not line up with the wound location; it also would have resulted in a through-and-through wound and more catastrophic injuries. Mr. Balash demonstrated that, even when the gun was held to the location of the entry wound with the left hand, an individual could not pull the trigger with their left index finger. Mr. Balash further testified that the failure of the cartridge casing to eject from Respondent's weapon was inconsistent with someone holding the gun in their hand against their left temple and firing. The failure of the cartridge casing to eject could be consistent with LaPorta struggling for or grabbing the gun as Respondent fired it.

Dr. Mariusz Zieweski, an expert witness in the field of biomedical engineering, testified that, based on the wound location, it would have been very difficult for someone to fire the gun

4

MONITOR00264527

Police Board Case No. 19 PB 2966
Police Officer Patrick Kelly
Hearing Officer Report

with their right hand (though not impossible). Dr. Zieweski also testified that, based on the blood spatter pattern left on the floor of the living room,[2] LaPorta must have been facing a south or southwest direction at the time of the shooting (*i.e.*, facing into the living room with his back to Respondent's bedroom). The blood spatter pattern indicates that LaPorta rotated before ultimately landing on his back on the living room floor. Dr. Zieweski further testified that the location of the scalp and hair fragments found on a south windowsill and the couch (located against the south wall) were consistent with the conclusion he had reached based on the blood spatter pattern. Finally, Dr. Zieweski testified that the presence of gunshot residue on the right cuff of LaPorta's shirt was insufficient to draw a conclusion about who fired the gun; he said the residue could be consistent with defensive action taken by LaPorta.

### 2. Respondent's Position

Respondent testified that he had 2 beers at the first bar and 2 more beers at the second bar. He drank one-half of a beer when he and LaPorta went to his house. He had a dog in a crate and the crate was in the living room. He was in the living room with LaPorta. He denied yelling or hitting his dog. He did not have an argument with LaPorta. He testified that his gun was in a closed drawer in his bedroom, which is off to the side of the living room. He testified that LaPorta suddenly got up, left the living room and went into his bedroom. He followed LaPorta to see why he had gone in his bedroom. As Respondent was walking into the bedroom, LaPorta was walking out of the bedroom. Respondent turned around and was facing LaPorta and realized that LaPorta had his gun in his left hand raised to the left side of his head. Respondent tried to grab the gun, but he never touched the gun. The gun went off and LaPorta started to fall to the floor backwards on

---

[2] Dr. Zieweski testified that the blood spatter pattern underlying his analysis had not been disturbed by the police officers and paramedics who responded to the scene on the morning of January 12, 2010.

5

Police Board Case No. 19 PB 2966
Police Officer Patrick Kelly
Hearing Officer Report

his back. Respondent was so shocked that he barely remembers calling 911. He reported to 911

that it was a suicide and he thought LaPorta was dead. Then he realized LaPorta was still breathing,

and he called 911 again to ask for paramedics to come.

Dr. Robert Heilbronner, a neuropsychologist, testified that, given the severity of LaPorta's

brain injury, it is extremely unlikely that LaPorta is able to recall the events that transpired around

the time of the shooting. Dr. Heilbronner testified that LaPorta's recollection of the night at issue

has resulted from memory confabulation.[3] Respondent argued that the phenomenon of memory

confabulation explains alleged inconsistencies between LaPorta's testimony and other evidence.

For instance, LaPorta testified that Kyle LaPorta did not enter Respondent's home after they

returned from Brewbakers. However, photographs of the scene show three beer bottles on

Respondent's coffee table. LaPorta also testified that he had not talked to Respondent by telephone

before meeting him at Brewbakers, but his phone records indicate otherwise.

Detective Matthew Weber, who responded to the scene and searched Respondent's home

after the crime lab had taken photos, testified that he did not observe signs of a struggle. Rick

Wyant, a forensic scientist, testified regarding the cause of the clicking sound and the failure of

the fired cartridge case to eject from the weapon. With respect to the clicking sound, Mr. Wyant

testified that this could have resulted from the failure of the shooter to fully commit to the trigger

pull (*i.e.*, pulling the trigger back a bit and then releasing it). He testified that the failure of the

fired cartridge case to eject could have resulted from "limp wristing."[4] On cross examination,

---

[3] Dr. Heilbronner explained that memory confabulation describes a situation where someone (typically with a brain injury) does not recall events accurately. The brain, in its injured state, tries to put together a cohesive picture of what happened based on various sources of information, and the ultimate picture it presents is inaccurate.

[4] "Limp wristing" is a term of art used to describe cases where a shooter does not hold the gun firmly. As a result, the gun is able to move in the shooter's hand when the trigger is pulled . Mr. Wyant testified that this could result in the failure of the casing to eject.

6

 MONITOR00264529

Police Board Case No. 19 PB 2966
Police Officer Patrick Kelly
Hearing Officer Report

Superintendent's expert Mr. Balash acknowledged that failure to hold the gun firmly as a result of alcohol intoxication could have caused the weapon to malfunction and not eject correctly. Mr. Wyant also testified that the entry wound on the back of LaPorta's head and the location of displaced scalp and hair fragments inside Respondent's home were consistent with a contact or near contact shot. Because Officer Kelly's service weapon was a DAK, it had a lighter trigger pull than a double action only ("DAO") or single action/double action model of the gun and would have been easy to fire in a variety of positions. On cross examination, Mr. Balash acknowledged that, when writing his opinion, he assumed that Respondent's service weapon was a DAO gun, not a DAK (a gun with half the trigger pull of a DAO that is thereby easier to fire). During his testimony, Mr. Balash provided demonstrations with a single action/double action model, not a DAK.

Robert Berk, the Illinois State Police trace analyst who worked on this case, testified that he was unable to locate any gunshot residue particles on the back of Respondent's hands or on the cuffs of the shirt he was wearing at the time of the shooting. There was no indication that Respondent's hands had been washed. Mr. Berk testified that he was able to find gunshot residue on the right cuff of the shirt LaPorta was wearing at the time of the shooting. Mr. Berks' tests of LaPorta's left cuff and collar were negative for gunshot residue, but he testified that this did not rule out the possibility that LaPorta shot himself with his left hand. LaPorta's hands were not tested for gunshot residue, there was excessive handling of the garments at the hospital (they were cut off LaPorta's body), and there could have been a transfer of materials from one surface to another (all of LaPorta's clothing was placed in a single brown paper bag).

As noted above, Respondent testified that he consumed four full light beers and part of a fifth beer over the course of roughly five hours. On cross-examination, the Superintendent's expert

7

MONITOR00264530

Police Board Case No. 19 PB 2966
Police Officer Patrick Kelly
Hearing Officer Report

Dr. Albert Larsen testified that his calculation of Respondent's blood alcohol concentration at the time of the shooting could be "off" if Respondent suffered from improper liver functioning resulting from alcoholism. Respondent testified that his actions following the arrival of first respondents stemmed from concern for his friend, not intoxication.

### Evidence in Mitigation and Aggravation

Officer Kelly presented two character witnesses. Jane Bansley is Officer Kelly's younger sister. She testified that Respondent has no history of mistreating dogs or his friends. Hillary Clark, Respondent's wife and a former Chicago Police Officer, testified that Officer Kelly is a loving husband and father. Ms. Clark also testified as to Respondent's interaction with their dogs, saying that she has never witnessed any concerning behavior.

Respectfully submitted,

ALLISON L. WOOD
Hearing Officer

Date: April 22, 2021

8

# BEFORE THE POLICE BOARD OF THE CITY OF CHICAGO

IN THE MATTER OF CHARGES FILED AGAINST ) 
POLICE OFFICER JAMIE JAWOR,                )        No. 20 PB 2978
STAR No. 6740, DEPARTMENT OF POLICE,       )
CITY OF CHICAGO,                           )
                                           )        (CR No. 1085722)
                              RESPONDENT.  )

## HEARING OFFICER REPORT

On August 4, 2020, the Superintendent of Police filed with the Police Board of the City

of Chicago charges against Police Officer Jamie Jawor (herein "Officer Jawor" or "Respondent")

recommending that she be discharged from the Chicago Police Department. A hearing on these

charges against the Respondent took place on April 28, 29, and 30, 2021. This report is prepared

pursuant to Section III.G. of the Police Board's Rules of Procedure. It is intended to provide the

members of the Board with a summary of the evidence presented at the hearing and information

relating to witness credibility. This report is not meant to be a comprehensive statement or

analysis of the evidence, but rather only a summary. It also does not make findings as to the

credibility of witnesses, but instead provides the Board with information it may want to consider

when it assesses credibility. The transcript and video recording of the hearing and the exhibits

made part of the record at the hearing, which the members of the Board are required to read and

view, contain all witness testimony and evidence presented by the parties.

### Brief Background

Respondent has been a Chicago Police Officer since 2006. The charges in this case stem

from a series of events that took place on June 27, 2017, around 1:00 a.m. On that date,

Respondent was near the end of her shift, and she was driving with her partner, Officer Mark

Police Board Case No. 20 PB 2978
Police Officer Jamie Jawor
Order

Mueller South on Roosevelt Road near Independence Boulevard in Chicago. They were both

wearing plainclothes and they were in an unmarked police car, a silver Ford Explorer.

Respondent noticed that a black Grand Jeep Cherokee (Jeep) with tinted windows and White Sox

plates made two abrupt lane changes. Respondent shared her observation with Officer Mueller

and they both began to focus on the Jeep. Respondent also noticed the Jeep roll through a stop

sign, failing to make a complete stop around 12th Place or 13th Street. Respondent followed the

Jeep and, as she followed the Jeep, the Jeep increased its speed. She could not see the driver of

the car, nor did she know how many occupants were in the car. As the Jeep increased its speed,

Respondent increased her speed. Both cars were moving at speeds that exceeded the 30mph

speed limit, reaching speeds as high as 103mph. The Jeep sped through a red light at the

intersection of Roosevelt and Kostner and slammed into another vehicle. Both cars swerved and

wrapped around a traffic control signal pole. The driver of the Jeep was later identified as

Chicago Police Officer Taylor Clark. The driver of the other vehicle was later identified as

Chiquita Adams. Both Officer Clark and Ms. Adams died from their injuries.

<u>The Position of the Parties</u>

Respondent has been charged with 5 counts. The Superintendent takes the position that

Respondent violated several rules and certain General Orders in that: (1) she drove in excess of

100mph and failed to drive with due regard for the safety of persons; (2) in driving over 100mph,

she drove more than 35mph over the speed limit; (3) she failed to properly initiate a motor

vehicle pursuit by failing to properly conduct a balancing test and/or failing to activate lights

and/or sirens and/or failing to notify the OEMC regarding the facts of the pursuit; (4) she

improperly engaged and/or continued a motor vehicle pursuit at a high rate of speed; and (5) she

2

Police Board Case No. 20 PB 2978
Police Officer Jamie Jawor
Order

improperly engaged in pursuit at a speed over 100mph, on an urban street populated with

pedestrians and other vehicle traffic. Respondent's position is that she was not engaged in a

police pursuit. She was following the Jeep to gather information because it fit the description of a

vehicle that had been reported to be involved in a carjacking. Respondent argues that her actions

were reasonable, permissible, and in compliance with the applicable General Orders.

<u>Respondent's Motion to Dismiss</u>

After the Superintendent rested its case, Respondent made an oral Motion to Dismiss

Counts 1 and 2. The Superintendent responded to the motion orally. The parties were advised

that the motion would be taken under advisement for the Board to consider and the hearing

continued to completion. On April 19, 2021, Respondent filed a written Motion to Dismiss the

remaining Counts 3-5. The Superintendent filed a written response. Respondent has two

unrelated arguments as to why she believes the charges should be dismissed. First, Respondent

argues that since the charging document indicated that Respondent was charged with having

violated General Order 03-02 which relates to the use of excessive force, and this is not an

excessive force case, Counts 1 and 2 should be dismissed. The Superintendent responded that it

was a scrivener's error and that the correct General Order 03-03 was admitted into evidence and

was shown to multiple witnesses. Second, Respondent cites to the procedural history of this case,

and argues that since COPA found the charges that Respondent was involved in police pursuit

were unfounded and the Superintendent agreed, Counts 3-5 should be dismissed. Respondent

argues that there is no material issue of fact for the Board to determine based on the initial

findings of COPA and the Superintendent's agreement with those findings. The Superintendent

responded that COPA reopened its investigation, determined that there was a basis to charge

3

Police Board Case No. 20 PB 2978
Police Officer Jamie Jawor
Order

Respondent, and the Superintendent signed charges against Respondent after a review by a

Police Board member. The Superintendent further argues that the procedural history of this

matter is irrelevant and does not create a basis for dismissal of the charges. The Superintendent

states that it is for the Board to determine whether Respondent was engaged in a police pursuit,

and this determination is a material fact that would preclude Respondent's motion to dismiss.

<u>Issues to be determined by the Board</u>

If the Board denies the Motion to Dismiss, the Board will have to determine whether

Respondent was engaged in a police pursuit, and whether Respondent's testimony about why she

took the actions she took on June 27, 2017, was credible. A brief overview of the parties

respective positions is provided below.


<u>Superintendent's Position</u>

Sergeant Chatys is Respondent's direct supervisor. He testified that he was aware that a

black Jeep with White Sox plates had been involved in a carjacking. He does not remember

where or when he heard about it. He testified that when a member initiates a traffic pursuit, they

are supposed to get on the radio with OEMC (Office of Emergency Management and

Communications) and report the pursuit so it can be monitored by a supervisor who would then

advise whether the pursuit should continue or stop. He heard Officer Mueller on the radio

reporting they were following a black Jeep. The radio connection was lost for a few seconds and

when the connection was restored, Officer Mueller was reporting that there had been a crash.

After a review of the incident, Sergeant Chatys concluded that Respondent was engaged in a

pursuit and a Traffic Pursuit Report was prepared. Respondent completed the entire first page of

the report and signed it. He filled in the remainder of the report. Captain Misael Ramirez testified

4

MONITOR00264535

Police Board Case No. 20 PB 2978
Police Officer Jamie Jawor
Order

that in 2017, he was the Commanding Officer of the Traffic Section of the Traffic Review Board. The Traffic Review Board investigates traffic pursuits. When there are questions about the application of General Orders to traffic pursuits, he is the one who is asked. He testified that pursuant to General Order 03-03-01 (Emergency Vehicles Operation – Pursuits) members are required to conduct the following balancing test prior to engaging in a traffic pursuit: "The necessity to immediately apprehend the fleeing suspect outweighs the level of inherent danger created by a motor vehicle pursuit." Factors to be considered include that the speeds involved allow the member to maintain control of the vehicle without endangering others; the volume of pedestrian and vehicular traffic; and road conditions. Section III A. of the General Order prohibits members from engaging in a motor vehicle pursuit whenever the most serious offense for which the motor vehicle is wanted is for a non-hazardous traffic offense; and Section III B.3 prohibits unmarked vehicles from engaging in a motor vehicle pursuit if the most serious offense is a traffic offense. Section V states that if an unmarked vehicle engages in a traffic pursuit, the member must turn on the high beam flashing lights and the siren. Officer Mueller (Respondent's partner) testified that he heard that a black Jeep had been involved in a carjacking, but he could not remember how or when he heard it. When they were directly behind the Jeep, he does not know why they did not run the license plate. He testified that Respondent did not activate the lights until they reached Keeler. He could not remember if the sirens were activated. Once the lights were activated, he called dispatch and reported that they were following the Jeep. He then notified dispatch that the Jeep had crashed.

Adam Hyde is an expert witness that investigated the crash. He obtained data from the red-light cameras in the area and the GPS on both cars and tested the speed travelled be each car at different multiple intervals. For example, in Figure 4, which is an aerial view of 1253 S.

5

MONITOR00264536

Police Board Case No. 20 PB 2978
Police Officer Jamie Jawor
Order

Independence Boulevard, Respondent increased her speed from 8mph to 20mph. In Figure 13, an aerial view of 3906 W. Roosevelt Road, Respondent's speed was 74mph and the Jeep's speed was 65mph. In Figure 20, which is an aerial view of 4038 W. Roosevelt Road, Respondent's speed was 83mph and the Jeep was 92mph. Figure 28 shows that Respondent was driving 102mph and the Jeep was driving at 127mph.  Figure 29 shows that this is the point where Respondent turned on her lights. Figure 35 is where the crash occurred.


Respondent's position

Respondent testified that her unmarked car, a Ford Explorer, had lights on top of the right windshield. There were no lights on top of the car. There is a siren in the car, but no camera. There was also a PDT system that is used to obtain information for warrants, driver's licenses, and licenses. She also had a radio in her vest. Respondent admitted that the Jeep had done nothing wrong. She testified that when she was directly behind the Jeep, she did not get the license plate because the driver had not done anything to warrant running the plate, and she thought there would be another opportunity to get the license plate if it became necessary. She maintained that she was not engaged in a traffic pursuit. When she recalled that the Jeep matched the description of a Jeep believed to be involved in a carjacking, which is a felony, she thought it was reasonable to follow the Jeep and gather information. When the Jeep started to increase speed, she concluded that the driver was acting like a criminal and increased her speed. She continued to increase her speed as the Jeep increased its speed so that she could get the license plate. She testified that she conducted the balancing test and determined that she could continue to follow the Jeep since she was able to maintain control of her car, there were no people or cars around that were endangered, and the roads were clear. She thought her speed was reasonable,

6

MONITOR00264537

Police Board Case No. 20 PB 2978
Police Officer Jamie Jawor
Order

but she did not look at the speedometer and she did not know how fast she was going. She admitted that she did not use her sirens and explained that the reason she did not use her sirens was because she was concerned that Officer Mueller would not be able to hear the radio dispatch if she turned on the sirens. She testified that she activated her lights at Pulaski because the Jeep was speeding. Respondent signed off on the Traffic Pursuit Report because her supervisor told her to sign it.

Respondent presented the testimony of Robert Johnson as an expert. He testified police pursuits are not limited by speed when apprehending a suspect; Respondent was not required to use her sirens because people do not always hear them, and it is best to turn the siren off when communicating with dispatch; and looking at the speedometer while engaged in a traffic pursuit could be hazardous. He testified that the pursuit began when Respondent turned on her lights, which was about 15 seconds before the crash.

### Evidence in Mitigation and Aggravation

Respondent presented five mitigation witnesses. Sergeant Martin Chatys supervised Respondent in 2017 when she was part of the Gang Enforcement Unit. He testified that she has a great work ethic, her integrity is beyond reproach, and he wanted her on his team. Her partner, Officer Mark Mueller, has known Respondent for 4 or 5 years and considers her a friend and a co-worker. He described Respondent as honest and forthright. Larry Wert is a friend who has known Respondent for 7 years. He testified that she was always a stand-up person, and he has never had a reason to doubt her integrity. Deputy Chief Randall Darlin testified that Respondent worked for him on a tactical team. He testified that Respondent worked in high crime areas and is a very dedicated officer. He noted that she works well with the community and is always

7

MONITOR00264538

Police Board Case No. 20 PB 2978
Police Officer Jamie Jawor
Order

professional. Officer Fachin Walker testified that she trained Respondent, and she never had a

problem with Respondent. She was always helpful and professional.

Respectfully submitted,

ALLISON L. WOOD
Hearing Officer

Date: June 2, 2021

8

# THE POLICE BOARD OF THE CITY OF CHICAGO

IN THE MATTER OF CHARGES       )
AGAINST       )
      )
OFFICER JAMIE JAWOR, Star # 6740       )     CASE NO. 20 PB 2978
      )
      Respondent.       )

## NOTICE OF FILING

To:   Max Caproni
     Police Board
     max.caproni@cityofchicago.org
     jazmyne.rollins@cityofchicago.org

     Johanna Tran
     Theresa Smith Conyers
     City of Chicago Law Department
     johanna.tran@cityofchicago.org
     theresa.smithconyers@cityofchicago.org

     PLEASE TAKE NOTICE that on **June 14, 2021, at 6:00pm at 2 North LaSalle St., Suite M800, Chicago, Il 60602,** I filed before the Police Board of the City of Chicago the attached pleading on behalf of the Respondent, a copy of which is served upon you:

**Officer Jawor's Response to the Hearing Officer's Report**

_____
James P. McKay, Jr.

## CERTIFICATE OF SERVICE

     I hereby certify that on June 14, 2021, I electronically served this Notice and the attached Respondent's pleading mentioned above to the above parties via their respective email addresses.

_____
James P. McKay, Jr.

1

James P. McKay, Jr.
Of Counsel
Tomasik Kotin Kasserman
161 North Clark Street, Suite 3050
Chicago, Il 60601
(312) 605-8800 - office
(312) 605-8808 – fax
(312) 835-8052 - cell
jpmckaylaw@gmail.com
jim@tkklaw.com

2

## THE POLICE BOARD OF THE CITY OF CHICAGO

IN THE MATTER OF CHARGES FILED   )
AGAINST   )
  )
POLICE OFFICER JAMIE JAWOR   )    **No. 20 PB 2978**
STAR NO. 6740,   )
  )
                  RESPONDENT.   )

## <u>OFFICER JAWOR'S RESPONSE TO THE HEARING OFFICER'S REPORT</u>

NOW COMES THE Respondent, Police Officer JAMIE JAWOR, by and through her

attorney, James P. McKay, Jr., and pursuant to Section III, Paragraph G of the Chicago Police

Board Rules of Procedure responds to the Hearing Officer's Report as follows:

1. Report, page 2, lines 7-8 should read, "She could not see the driver of the **Jeep,** nor did

   she know how many occupants were in the **Jeep because of the dark windows on the**

   **Jeep.**" Source: Officer Jawor's hearing testimony of April 28, 2021, transcript, page 42,

   lines 10-20.

2. Report, page 2, line 12 should read after "wrapped around a traffic control signal pole."

   **"Officer Jawor's police vehicle was already slowing down and stopped at the red**

   **light."** Source: Superintendent's Exhibit # 16 (Attachment 167 or 224); and Officer

   Jawor's hearing testimony of April 28, 2021, transcript, page 92, lines 6-24.

3. Report, page 4, lines 20-21 should read, "After a review of the incident, Sergeant Chatys

   concluded that Respondent was engaged in a pursuit and a Traffic Pursuit Report was

   prepared **of which he and other supervisors signed off on and agreed with the**

   **recommendations.** Source: Sgt. Chatys' hearing testimony of April 28, 2021,

 MONITOR00264542

transcript, page 135, lines 1-24; page 136, lines 1-14; page 137, lines 7-16; and page 138, lines 1-17.

4. Report, page 6, lines 10-11 should read, "There was also a PDT system that is used to obtain information for warrants, driver's licenses, and licenses. **However, the PDT was inoperable, something that happened quite frequently and is still a constant problem**" Source: Officer Jawor's hearing testimony of April 28, 2021, transcript, page 56, lines 10-18; and Sgt. Chatys' hearing testimony of April 28, 2021, transcript, page 130, lines 2-21; page 150, lines 13-24; and page 151, lines 1-8.

WHERFORE, the Respondent respectfully requests that the above Responses to the Hearing Officer's Report be made part of the record of proceedings, and be reviewed by the Police Board, pursuant to Section III, Paragraph G of the Chicago Police Board Rules of Procedure

Respectfully submitted,

James P. McKay, Jr.
Attorney for Respondent Off. Jamie Jawor

James P. McKay, Jr.
Of Counsel, Tomasik Kotin Kasserman
161 North Clark Street, Suite 3050
Chicago, Il 60601
Office: (312) 605-8800
Fax: (312) 605-8808
Cell: (312) 835-8052
jpmckaylaw@gmail.com
jim@tkklaw.com

2

**BEFORE THE POLICE BOARD**
**OF THE CITY OF CHICAGO**

| | | |
|---|---|---|
| In the Matter of the Charges Against | ) | |
| | ) | |
| **POLICE OFFICER JAMIE JAWOR,** | ) | **No. 20-PB-2978** |
| | ) | |
| Respondent. | ) | |

## NOTICE OF FILING

    PLEASE TAKE NOTICE that I have on this day caused to be electronically filed with the Police Board of the City of Chicago the Superintendent's *Response to June 2, 2021, Hearing Officer Report,* a true and correct copy of which is attached hereto and served upon the below named individuals.

## CERTIFICATE OF
## SERVICE

    I hereby certify that I have on this day caused a true and correct copy of the above and foregoing Superintendent's *Response to June 2, 2021, Hearing Officer Report* and *Notice of Filing* to be delivered to the individuals listed below by sending a copy *via* email to the addresses listed below.

    TO:    James P. McKay, jpmckaylaw@gmail.com

    DATED at Chicago, Illinois this 16th day of June, 2021.

                    Johanna Tran
                    Assistant Corporation Counsel

2 North LaSalle Street, Suite 660
Chicago, IL 60602
(312) 742-7042 (phone)
Johanna.Tran@cityofchicago.org

**BEFORE THE POLICE BOARD
OF THE CITY OF CHICAGO**

| | |
|---|---|
| **In the Matter of the Charges Against** ) | |
| ) | |
| **POLICE OFFICER JAMIE JAWOR,** ) | **No. 20-PB-2978** |
| ) | |
| **Respondent.** ) | |

**SUPERINTENDENT'S RESPONSE TO
JUNE 2, 2021, HEARING OFFICER REPORT**

DAVID O BROWN, Superintendent of Police for the Chicago Police Department, ("Superintendent") by and through his attorney, Celia Meza, Acting Corporation Counsel of the City of Chicago, responds as follows to the June 2, 2021, Hearing Officer Report regarding the above captioned matter:

1. On April 28th, 29th, 30th 2021, the parties appeared before Hearing Officer Allison L. Wood for an evidentiary hearing regarding the charges pending against Police Officer Jamie Jawor ("Respondent").

2. On June 2, 2021, Hearing Officer Wood issued a Hearing Officer Report pursuant to Section III.G of the Police Board's Rules of Procedure, eff. February 18, 2021, ("Rules of Procedure").

3. Section III.G of the Rules of Procedure allows the parties to address "any material omissions or inaccuracies in the Hearing Officer' s report or recommendation" by filing a written response. Accordingly, the Superintendent respectfully requests that the Police Board consider the below facts when rendering its findings and decision in this case.

## Inaccurate Material Fact

4.   The Hearing Officer Report states that "Respondent presented the testimony of Robert Johnson as an expert.  He testified police pursuits are not limited by speed when apprehending a suspect; Respondent was not required to use her sirens because people do not always hear them, and it is best to turn the siren off when communicating with dispatch; and looking at the speedometer while engaged in a traffic pursuit could be hazardous."

5.   The testimony at trial was as follows:

```
Q: Do you have an opinion regarding the use or lack thereof of sirens when a police officer is on his
        radio trying to communicate information to a dispatcher?
A: Yes. I have personal experience with it. My opinion is that it's best to turn the siren off when
   you're communicating over the radio, because it has a tendency to make it harder for the person on
   both ends to hear. In fact, I will tell you in any number of pursuits that I've been involved in or
   emergency vehicle responses where I was operating with lights and sirens, whenever I went to transmit,
   I would cut off the siren so as not to interfere with the radio communications.

P.O. Jamie Jawor April 30, 2021 Hearing Transcript at page 605.
```

6.   Robert Johnson's testimony that Respondent was not required to use her sirens **was opinion testimony** and contrary to CPD policy.  Superintendent's Exhibit 1 General Order G03-03-01, which was admitted at the hearing, states under Section V(A) that sworn members can engage in a motor vehicle pursuit only after applying the balancing test, activating the high-beam flashing headlights, siren and light bars (if equipped) in an unmarked vehicle, and notification has been made to the OEMC regarding the facts concerning the pursuit.

7.   The Hearing Officer's Report should be clarified to state that Robert Johnson's testimony regarding Respondent's sirens was in his own opinion and not based on any CPD policy.

WHEREFORE, the Superintendent submits that the above facts are material to the present case and respectfully requests that the Police Board consider these facts, among all other evidence, when rendering its findings and decision, and for any further relief that the Police Board deems just and proper.

Respectfully submitted,

Celia Meza, Acting
Corporation Counsel
City of Chicago

/s/ Johanna Tran
Johanna Tran
Assistant Corporation Counsel

2 North LaSalle Street, Suite 660
Chicago, IL 60602
(312) 742-7042 (phone)
Johanna.Tran@cityofchicago.org

MONITOR00264547

## BEFORE THE POLICE BOARD OF THE CITY OF CHICAGO

IN THE MATTER OF CHARGES FILED AGAINST  )
POLICE OFFICER DAVID SALGADO              )      **No. 20 PB 2979**
STAR No. 16347, DEPARTMENT OF POLICE,   )
CITY OF CHICAGO,                           )
                                     )      **(CR No. 2019-4302)**
              **RESPONDENT.**     )

## HEARING OFFICER REPORT

On September 24, 2020, the Superintendent of Police filed with the Police Board of the City of Chicago charges against Police Officer David Salgado (hereafter "Officer Salgado" or "Respondent") recommending that he be discharged for violating Chicago Police Department Rules 2 and 3 on grounds he has been decertified as a law enforcement officer by the Illinois Law Enforcement Training and Standards Board. An *ex parte* hearing on these charges took place via Zoom video-conferencing on June 3, 2021, as neither Officer Salgado, nor counsel on his behalf, appeared before the Board's hearing officer following service of the charges and three written notices that the Board would proceed to adjudicate the matter *ex parte* in his absence, in accordance with Rule III.F of the Police Board's Rules of Procedure. This report, prepared pursuant to Section III.G. of the Police Board's Rules of Procedure, is intended to provide the members of the Board with a summary of the evidence presented at the evidentiary hearing. It is not meant to be a comprehensive statement or analysis of the evidence, but rather only a summary. In this case, there are no issues of credibility, as no witnesses testified. The transcript and video recording of the hearing, which the members of the Board are required to review, as well as the Superintendent's exhibits, contain all of the evidence presented.

MONITOR00264548

Police Board Case No. 20 PB 2979
Police Officer David Salgado
Hearing Officer Report

## Brief Background

On October 22, 2019, Officer Salgado was found guilty by jury in the United States District Court under case number 18 CR 00286(2), of violating United States Code Title 18, Sec. 371 Conspiracy to Steal Property in the Care, Custody and Control of the Chicago Police Department, Title 18, Sec. 241 Conspiracy to Violate Fourth Amendment Rights of Certain Chicago Residents, Title 18 Sec. 641 Public Money, Property, or Records, Title 18 Sec. 1001(a)(2) Making Materially False Statement to a Federal Agent, and Title 18 Sec. 1519 Destroying Records With the Intent to Impede an Investigation of Any Matter Within the Jurisdiction of the FBI. On July 15, 2020, he was sentenced to 71 months in prison and is currently incarcerated at the United States Penitentiary Lewisburg in Pennsylvania. On October 28, 2019, the Illinois Law Enforcement Training and Standards Board decertified Officer Salgado, on the basis of his federal felony convictions, as required by Illinois law.

## Issues to be Determined by the Board

The only issue to be decided is whether Officer Salgado should be discharged as an officer because he has been decertified by the state as a law enforcement officer. The Superintendent has provided a certified copy of the Notification of Docket Entry for David Salgado's federal case, a certified copy of Officer Salgado's federal felony convictions and the decertification letter from the Illinois Law Enforcement Training and Standards Board decertifying Officer Salgado, as well as a copy of 50 ILCS 705/6.1, which empowers the ILETSB to decertify officers for felonious conduct.

## Evidence in Mitigation and Aggravation

There was no evidence in mitigation or aggravation offered.

2

MONITOR00264549

Police Board Case No. 20 PB 2979
Police Officer David Salgado
Hearing Officer Report

As Officer Salgado did not appear before the Board, through counsel or otherwise, in response to being served with the charges, and in response to two notices from the Executive Director that the Board would proceed *ex parte* if he failed to appear, there is no need to serve him with a copy of this Report to the Board.

Respectfully submitted,

Hearing Officer Lauren Anne Freeman
Date: June 4, 2021

3

MONITOR00264550



CITY OF CHICAGO

———— ✳ ————

CHICAGO POLICE BOARD

1 December 2021

Maggie Hickey
Independent Monitor
233 South Wacker Drive, Suite 7100
Chicago, Illinois 60606

Chris Wells
Chief, Public Interest Division
Office of the Attorney General of Illinois
100 W. Randolph St., 12th Floor
Chicago, Illinois 60601

Re:     State of Illinois v. City of Chicago, Case No. 17-cv-6260
        Consent Decree Paragraph No. 535, Police Board Disciplinary Hearings

Dear Ms. Hickey and Mr. Wells:

Consent Decree Paragraph No. 535 requires Police Board members to watch the video recording of the disciplinary hearing and be provided with a copy of the complete record of the hearing, including demonstrative exhibits. Paragraph 535 also includes several requirements pertaining to the hearing officer's report on the hearing.

I am producing for your review the following items for the three police disciplinary cases decided by the Board since the 26 May 2021 production of material:

1.  Written decisions, which document that the Board members reviewed the record of the hearing and certified that they viewed the videorecording of the hearing (see the highlighted text on the first page and third-to-last page of each decision).
2.  Emails to Board members and screen prints of the Board's SharePoint file-sharing site that document that the Board members were provided with a copy of the complete record of the hearing. If you would like to be granted access to the records on the SharePoint site, please let me know and I will grant access via email.
3.  Hearing officer reports and any responses thereto.

Thank you very much for your consideration.

Sincerely,

Max A. Caproni
Executive Director

**Max Caproni**

| | |
|---|---|
| **From:** | Max Caproni |
| **Sent:** | Friday, April 16, 2021 1:38 PM |
| **To:** | Andrea Zopp; Ghian Foreman ⌐ PII ¬ ; Jorge Montes; Matthew Crowl; Michael Eaddy; Paula Wolff; Rhoda Sweeney; Steve Flores |
| **Cc:** | Allison Wood; Bethany Biesenthal; Jazmyne Rollins; Marcheta Pope; Jennifer Green; Phyllis Ross |
| **Subject:** | Case Material for May 20 Police Board Executive Session: KELLY case |
| **Attachments:** | Charges.pdf; 03-08-21 FULL Transcript for Hearing.pdf; 03-09-21 FULL Transcript for Hearing.pdf; 03-10-21 FULL Transcript for Hearing.pdf; 03-11-21 FULL Transcript for Hearing.pdf; 03-12-21 FULL Transcript for Hearing.pdf; Hearing Video Links Kelly.docx |

Board Members,

Attached in preparation for the **May 20** Police Board executive session is material for Case No. 19 PB 2966, Patrick Kelly. There are 7 attachments to this email:

1. Charges filed by the Superintendent
2. Transcripts of the evidentiary hearing held on March 8 - 12
3. Links to the video-recordings of the evidentiary hearing conducted via Zoom

Notes:
- Exhibits and the pre-hearing record are not attached to this message due to the size of the files.
- All case material, including exhibits and the pre-hearing record, will be available on both Microsoft Teams and SharePoint.
- The hearing officer's report will be forthcoming next week.

Let me know if you have any questions. Thanks very much,

Max

**Max Caproni**

| | |
|---|---|
| **From:** | Max Caproni |
| **Sent:** | Thursday, April 22, 2021 1:45 PM |
| **To:** | Andrea Zopp; Ghian Foreman [PII] Jorge Montes; Matthew Crowl; Michael Eaddy; Paula Wolff; Rhoda Sweeney; Steve Flores |
| **Cc:** | Allison Wood; Bethany Biesenthal; Jazmyne Rollins; Marcheta Pope; Jennifer Green; Phyllis Ross |
| **Subject:** | RE: Case Material for May 20 Police Board Executive Session: KELLY case |
| **Attachments:** | Hearing Officer Report 19PB2966.pdf |

Board Members,

Attached is the hearing officer's report for the Kelly case.

Max

---

**From:** Max Caproni
**Sent:** Friday, April 16, 2021 1:38 PM
**To:** Andrea Zopp [PII]; Ghian Foreman [PII]
Jorge Montes <jmontes@montesassociates.com>; Matthew Crowl <mcrowl@rshc-law.com>; Michael Eaddy
<michaeleaddy@sbcglobal.net>; Paula Wolff <paula@iljp.org>; Rhoda Sweeney [PII] Steve Flores
[PII]
**Cc:** Allison Wood [PII] Bethany Biesenthal <bbiesenthal@jonesday.com>; Jazmyne Rollins
<Jazmyne.Rollins@cityofchicago.org>; Marcheta Pope <marcheta.pope@emeraldsouth.org>; Jennifer Green
<jenny@iljp.org>; Phyllis Ross <pross@clevelandave.com>
**Subject:** Case Material for May 20 Police Board Executive Session: KELLY case

Board Members,

Attached in preparation for the **May 20** Police Board executive session is material for Case No. 19 PB 2966, Patrick Kelly. There are 7 attachments to this email:

1. Charges filed by the Superintendent
2. Transcripts of the evidentiary hearing held on March 8 - 12
3. Links to the video-recordings of the evidentiary hearing conducted via Zoom

Notes:
- Exhibits and the pre-hearing record are not attached to this message due to the size of the files.
- All case material, including exhibits and the pre-hearing record, will be available on both Microsoft Teams and SharePoint.
- The hearing officer's report will be forthcoming next week.

Let me know if you have any questions. Thanks very much,

Max

1

MONITOR00264553

2

MONITOR00264554



SharePoint Search this library

+ New Upload Edit in grid view Share Copy link Sync Download Add shortcut to OneDrive Export to Excel Pov

Case Materials > **Case No. 19 PB 2966, KELLY**

| Name | Modified | Modified By | + Add column |
|---|---|---|---|
| Hearing Exhibits Joint | April 16 | Max Caproni | |
| Hearing Exhibits Respondent | April 16 | Max Caproni | |
| Hearing Exhibits Superintendent | April 16 | Max Caproni | |
| Hearing Transcripts and Video Links | April 16 | Max Caproni | |
| Pre-Hearing Material | May 11 | Max Caproni | |
| Charges.pdf | April 16 | Max Caproni | |

**Max Caproni**

| | |
|---|---|
| **From:** | Max Caproni |
| **Sent:** | Thursday, May 27, 2021 9:28 AM |
| **To:** | Andrea Zopp; Ghian Foreman [⸏⸏⸏⸏⸏⸏ PII ⸏⸏⸏⸏⸏⸏]; Jorge Montes; Matthew Crowl; Michael Eaddy; Rhoda Sweeney; Steve Flores |
| **Cc:** | Allison Wood; Bethany Biesenthal; Jazmyne Rollins; Marcheta Pope; Phyllis Ross |
| **Subject:** | Case Material for June 17 Police Board Executive Session: JAWOR case |
| **Attachments:** | Charges 20PB2978.pdf; Motion to Dismiss Specs 3 - 5.pdf; Motion to Dismiss Response 20PB2978.pdf; Hearing Transcript 4 28 2021.pdf; Hearing Transcript 4 29 2021.pdf; Hearing Transcript 4 30 2021.pdf; Hearing Video Links Jawor.docx |

Board Members,

Attached in preparation for the **June 17** Police Board executive session is material for No. 20 PB 2978, Jamie Jawor. There are 7 attachments to this email:

1. Charges filed by the Superintendent
2. Respondent's motion to dismiss specifications 3 – 5
3. Superintendent's response to motion to dismiss
4. Transcript of the evidentiary hearing held on April 28
5. Transcript of the evidentiary hearing held on April 29
6. Transcript of the evidentiary hearing held on April 30
7. Links to the video-recordings of the evidentiary hearing conducted via Zoom

Notes:
- Paula must recuse herself from this case because she ruled on the disagreement between COPA and CPD
- Exhibits and the pre-hearing record are not attached to this message due to the size of the files.
- All case material, including exhibits and the pre-hearing record, will be available on both Microsoft Teams and SharePoint.
- The hearing officer's report and any responses will be forthcoming.

Let me know if you have any questions. Thanks very much,

Max

Max Caproni
Office: 312-742-3259
Mobile: 312-907-0008

1

**Max Caproni**

| | |
|---|---|
| **From:** | Max Caproni |
| **Sent:** | Tuesday, June 8, 2021 9:46 AM |
| **To:** | Andrea Zopp; Ghian Foreman[____PII____]; Jorge Montes; Matthew Crowl; Michael Eaddy; Rhoda Sweeney; Steve Flores |
| **Cc:** | Allison Wood; Bethany Biesenthal; Jazmyne Rollins; Marcheta Pope; Phyllis Ross |
| **Subject:** | RE: Case Material for June 17 Police Board Executive Session: JAWOR case |
| **Attachments:** | Hearing Officer Report 20PB2978.pdf |

Attached is the Hearing Officer's Report for the Jawor case. I am sorry for the delay in getting it to you.

Responses are due June 16, and I will forward any that are filed to you.

Max

---

**From:** Max Caproni
**Sent:** Thursday, May 27, 2021 9:28 AM
**To:** Andrea Zopp [____PII____]; Ghian Foreman [____PII____]
Jorge Montes <jmontes@montesassociates.com>; Matthew Crowl <mcrowl@rshc-law.com>; Michael Eaddy
<michaeleaddy@sbcglobal.net>; Rhoda Sweeney [____PII____]; Steve Flores [____PII____]
**Cc:** Allison Wood [____PII____]; Bethany Biesenthal <bbiesenthal@jonesday.com>; Jazmyne Rollins
<Jazmyne.Rollins@cityofchicago.org>; Marcheta Pope <marcheta.pope@emeraldsouth.org>; Phyllis Ross
<pross@clevelandave.com>
**Subject:** Case Material for June 17 Police Board Executive Session: JAWOR case

Board Members,

Attached in preparation for the **June 17** Police Board executive session is material for No. 20 PB 2978, Jamie Jawor. There are 7 attachments to this email:

1. Charges filed by the Superintendent
2. Respondent's motion to dismiss specifications 3 – 5
3. Superintendent's response to motion to dismiss
4. Transcript of the evidentiary hearing held on April 28
5. Transcript of the evidentiary hearing held on April 29
6. Transcript of the evidentiary hearing held on April 30
7. Links to the video-recordings of the evidentiary hearing conducted via Zoom

Notes:
- Paula must recuse herself from this case because she ruled on the disagreement between COPA and CPD
- Exhibits and the pre-hearing record are not attached to this message due to the size of the files.
- All case material, including exhibits and the pre-hearing record, will be available on both Microsoft Teams and SharePoint.
- The hearing officer's report and any responses will be forthcoming.

1

Let me know if you have any questions. Thanks very much,

Max

Max Caproni
Office: 312-742-3259
Mobile: 312-907-0008

MONITOR00264558

**Max Caproni**

| | |
|---|---|
| **From:** | Max Caproni |
| **Sent:** | Thursday, June 17, 2021 9:11 AM |
| **To:** | Andrea Zopp; Ghian Foreman [ PII ] Jorge Montes; Matthew Crowl; Michael Eaddy; Rhoda Sweeney; Steve Flores |
| **Cc:** | Allison Wood; Bethany Biesenthal; Jazmyne Rollins; Marcheta Pope; Phyllis Ross |
| **Subject:** | RE: Case Material for June 17 Police Board Executive Session: JAWOR case |
| **Attachments:** | Hearing Officer Report Response Supt 20PB2978.pdf; Hearing Officer Report Response Resp 20PB2978.pdf |

Attached are the parties' responses to the hearing officer report for the Jawor case.

---

**From:** Max Caproni
**Sent:** Tuesday, June 15, 2021 2:45 PM
**To:** Andrea Zopp [ PII ] Ghian Foreman [ PII ] Jorge Montes <jmontes@montesassociates.com>; Matthew Crowl <mcrowl@rshc-law.com>; Michael Eaddy <michaeleaddy@sbcglobal.net>; Rhoda Sweeney [ PII ]; Steve Flores [ PII ]
**Cc:** Allison Wood [ PII ] Bethany Biesenthal <bbiesenthal@jonesday.com>; Jazmyne Rollins <Jazmyne.Rollins@cityofchicago.org>; Marcheta Pope <marcheta.pope@emeraldsouth.org>; Phyllis Ross <pross@clevelandave.com>
**Subject:** RE: Case Material for June 17 Police Board Executive Session: JAWOR case

Attached is in preparation for Thursday's executive session a memorandum on the legal issues in Respondent Jamie Jawor's motion to dismiss specifications 3 - 5.

---

**From:** Max Caproni
**Sent:** Tuesday, June 8, 2021 9:46 AM
**To:** Andrea Zopp [ PII ] Ghian Foreman [ PII ] Jorge Montes <jmontes@montesassociates.com>; Matthew Crowl <mcrowl@rshc-law.com>; Michael Eaddy <michaeleaddy@sbcglobal.net>; Rhoda Sweeney [ PII ] Steve Flores < [ PII ]
**Cc:** Allison Wood [ PII ] Bethany Biesenthal <bbiesenthal@jonesday.com>; Jazmyne Rollins <Jazmyne.Rollins@cityofchicago.org>; Marcheta Pope <marcheta.pope@emeraldsouth.org>; Phyllis Ross <pross@clevelandave.com>
**Subject:** RE: Case Material for June 17 Police Board Executive Session: JAWOR case

Attached is the Hearing Officer's Report for the Jawor case. I am sorry for the delay in getting it to you.

Responses are due June 16, and I will forward any that are filed to you.

Max

---

**From:** Max Caproni
**Sent:** Thursday, May 27, 2021 9:28 AM
**To:** Andrea Zopp [ PII ] Ghian Foreman [ PII ]
Jorge Montes <jmontes@montesassociates.com>; Matthew Crowl <mcrowl@rshc-law.com>; Michael Eaddy

1

MONITOR00264559

<michaeleaddy@sbcglobal.net>; Rhoda Sweeney | PII |; Steve Flores | PII |

**Cc:** Allison Wood | PII |; Bethany Biesenthal <bbiesenthal@jonesday.com>; Jazmyne Rollins <Jazmyne.Rollins@cityofchicago.org>; Marcheta Pope <marcheta.pope@emeraldsouth.org>; Phyllis Ross <pross@clevelandave.com>

**Subject:** Case Material for June 17 Police Board Executive Session: JAWOR case

Board Members,

Attached in preparation for the **June 17** Police Board executive session is material for No. 20 PB 2978, Jamie Jawor. There are 7 attachments to this email:

1. Charges filed by the Superintendent
2. Respondent's motion to dismiss specifications 3 – 5
3. Superintendent's response to motion to dismiss
4. Transcript of the evidentiary hearing held on April 28
5. Transcript of the evidentiary hearing held on April 29
6. Transcript of the evidentiary hearing held on April 30
7. Links to the video-recordings of the evidentiary hearing conducted via Zoom

Notes:
- Paula must recuse herself from this case because she ruled on the disagreement between COPA and CPD
- Exhibits and the pre-hearing record are not attached to this message due to the size of the files.
- All case material, including exhibits and the pre-hearing record, will be available on both Microsoft Teams and SharePoint.
- The hearing officer's report and any responses will be forthcoming.

Let me know if you have any questions. Thanks very much,

Max

Max Caproni
Office: 312-742-3259
Mobile: 312-907-0008

MONITOR00264560



SharePoint Search this library

New Upload Edit in grid view Share Copy link Sync Download Add shortcut to OneDrive Export to Excel Pov

Case Materials > **Case No. 20 PB 2978 JAWOR**

| Name | Modified | Modified By | + Add column |
|---|---|---|---|
| Hearing Exhibits Respondent | May 27 | Max Caproni | |
| Hearing Exhibits Superintendent | May 27 | Max Caproni | |
| Hearing Transcripts & Video Links | May 27 | Max Caproni | |
| Charges 20PB2978.pdf | April 7 | Max Caproni | |
| Motion to Dismiss Response 20PB2978.pdf | May 27 | Max Caproni | |
| Motion to Dismiss Specs 3 - 5.pdf | May 27 | Max Caproni | |

## Max Caproni

| | |
|---|---|
| **From:** | Max Caproni |
| **Sent:** | Thursday, July 1, 2021 6:35 PM |
| **To:** | Andrea Zopp; Ghian Foreman [ PII ]; Jorge Montes; Matthew Crowl; Michael Eaddy; Paula Wolff; Rhoda Sweeney; Steve Flores |
| **Cc:** | Lauren Freeman; Bethany Biesenthal; Jazmyne Rollins; Marcheta Pope; Jennifer Green; Phyllis Ross |
| **Subject:** | Case Material for July 15 Police Board Executive Session: SALGADO case |
| **Attachments:** | Charges 20PB2979.pdf; Hearing Officer Report 20PB2079.pdf; Hearing Transcript 2021 06 03.pdf; Hearing Video Links Salgado.docx |

Board Members,

Attached in preparation for the **July 15** Police Board executive session is material for No. 20 PB 2979, Salgado. There are 4 attachments to this email:

1. Charges filed by the Superintendent
2. Hearing Officer's Report
3. Transcript of the evidentiary hearing held on June 3
4. Links to the video-recording of the evidentiary hearing conducted via Zoom

Notes:
- Exhibits and the pre-hearing record are not attached to this message due to the size of the files.
- All case material, including exhibits and the pre-hearing record, will be available on both Microsoft Teams and SharePoint.

Let me know if you have any questions. Thanks very much,

Max

SharePoint Search this library

\+ New Upload Edit in grid view Share Copy link Sync Download Add shortcut to OneDrive Export to Excel Pov

Case Materials > Case No. 20 PB 2979, SALGADO

| Name | Modified | Modified By | + Add column |
|---|---|---|---|
| Hearing Exhibits | July 1 | Max Caproni | |
| Charges 20PB2979.pdf | July 1 | Max Caproni | |
| Hearing Officer Report 20PB2079.pdf | July 1 | Max Caproni | |
| Hearing Transcript 2021 06 03.pdf | July 1 | Max Caproni | |
| Hearing Video Links Salgado.docx | July 1 | Max Caproni | |

