UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STATE OF ILLINOIS, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF CHICAGO, <br><br> Defendant. | Case No. 17-cv-6260 |

**UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT FOR A PARTIAL FINDING OF FULL AND EFFECTIVE COMPLIANCE OF MATERIAL REQUIREMENTS OF THE CONSENT DECREE**

The Consent Decree entered into by the City of Chicago ("City") and the State of Illinois delineates multiple requirements related to public safety reform across multiple City entities. Once the City achieves full and effective compliance with Consent Decree requirements, it may: (1) request from the Court a judicial finding of full and effective compliance for those requirements; and (2) after either one or two years (depending on the subject matter of the requirement), move the Court for a finding that the City has maintained full and effective compliance and those requirements can be terminated from the City's obligations under the Consent Decree. (Dkt. 703-1 at ¶¶ 714–16.)

The City here moves the Court for a finding that the City and all applicable entities have achieved full and effective compliance with the material requirements of ¶¶ 44, 142, 143, 145, 170, 257, 537, 554, 555, and 565 of the Consent Decree, and for commencement of the required sustainment periods for these paragraphs based on Independent Monitoring Team ("IMT") reports finding that the City and applicable entities are in full and effective compliance with these paragraphs. These paragraphs relate to various City entities, including the Chicago Police Department ("CPD"), the Civilian Office of Police Accountability ("COPA"), the Office of

Emergency Management and Communications ("OEMC"), Deputy Inspector General for Public Safety ("PSIG"), and the Chicago Police Board ("Police Board").

## BACKGROUND

On August 29, 2017, the State of Illinois filed a complaint against the City alleging that CPD engages in unconstitutional practices. (Dkt. 1.) The City has not admitted liability. But to avoid extensive litigation, and in the interest of ensuring that the City provides effective and constitutional public safety to its residents, the City and the State of Illinois agreed to enter into a Consent Decree in lieu of litigating the complaint further. (Dkt. 703-1.) The Consent Decree details hundreds of requirements for public safety reform across various topic areas. The Consent Decree contains requirements for the City and several of its agencies including, most notably, CPD. The Consent Decree is overseen by the Independent Monitor who, together with her team, assesses and reports on whether the City is implementing the requirements of the Consent Decree. (Dkt. 703-1 at ¶ 610.) These requirements are delineated numerically in the Consent Decree by numbered paragraphs, and the Monitor's report assesses the City's progress on a paragraph-by-paragraph basis.

## LEGAL STANDARD

"A consent decree is a court order that embodies the terms agreed upon by the parties as a compromise to litigation" and, "[f]or purposes of construction . . . is essentially a contract." *United States v. Alshabkhoun*, 277 F.3d 930, 934 (7th Cir. 2002). This means that "[a] court interprets the meaning of a consent decree in the same way it interprets the meaning of a contract." *Bailey v. Roob*, 567 F.3d 930, 940 (7th Cir. 2009). Where Illinois state contract law applies to a Consent Decree, the Court's "'primary objective'" in construing the decree must be "'to give effect to the intent of the parties.'" *Holmes v. Godinez*, 991 F.3d 775, 780 (7th Cir. 2021) (quoting *Peoples Gas Light & Coke Co. v. Beazer E., Inc.*, 802 F.3d 876, 881 (7th Cir. 2015)). To do so, the Court "'must

first look to the language of the contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent.'" *Id.*

To determine whether the City has completed all or a portion of its obligations under the Consent Decree, the Consent Decree provides for a two-step process. First, upon request by the City, the Court will determine whether the City "is in full and effective compliance regarding any of the material requirements under the Agreement." (Dkt. 703-1 at ¶¶ 714–16.) The City must demonstrate by a preponderance of the evidence that it has achieved full and effective compliance. (Dkt. 703-1 at ¶ 720.) "The Court's determination of full and effective compliance will start the relevant one- or two- year compliance periods," depending on the subject matter of the requirement. (Dkt. 703-1 at ¶ 715.)

Thereafter, once the relevant one- or two-year period has passed, the City may request that the Court determine that the City has maintained full and effective compliance for the relevant period (one or two years, dependent on the subject matter). (Dkt. 703-1 at ¶¶ 714–16.) If the Court so finds, then the City has met its obligations under the Consent Decree as to that requirement and the Monitor will no longer review or assess the requirement. (Dkt. 703-1 at ¶¶ 714–716.) However, at "any time prior to the full termination" of the Consent Decree, the Court "may reinstate previously terminated requirements upon a showing that compliance with such requirements has materially lapsed." (Dkt. 703-1 at ¶ 716.)

Per the Consent Decree, full and effective compliance "means sustained compliance with all material requirements of this Agreement. No specific numerical threshold will be required to demonstrate full and effective compliance. Non-compliance with mere technicalities, or temporary or isolated failure will not constitute failure to achieve full and effective compliance." (Dkt. 703-1 at ¶¶ 717.)

3

## ARGUMENT

The City moves here for a determination by the Court that it is in full and effective compliance with ¶¶ 44, 142, 143, 145, 170, 257, 537, 554, 555, and 565 of the Consent Decree. As noted below, in its reports for the fourth and fifth monitoring periods, IMT has found the City and the applicable entities are in full and effective compliance with these paragraphs. The City has thus demonstrated by a preponderance of the evidence that all applicable entities have achieved full and effective compliance with the above-referenced paragraphs. These paragraph requirements are discrete and apply only to specific entities. They are therefore severable from the Consent Decree without impeding the Monitor's ability to assess other paragraphs.[1]

IMT found the City and all applicable entities to be in full compliance for ¶¶ 142, 145, 170, 537, 554, and 565 in its Fourth Independent Monitoring Report ("IMR4"). Further, IMT found the City and all applicable entities to be in full compliance for ¶¶ 44, 143, 257, and 555 in its Fifth Monitoring Report ("IMR5"). Paragraphs 44, 142, 143, 145, 170, 537, 554, 555, and 565 all fall within portions of the Consent Decree requiring a two-year maintenance period. (Dkt. 703-1 at ¶¶ 714-715). Paragraph 257 falls within a portion of the Consent Decree requiring a one-year maintenance period. (Dkt. 703-1 at ¶¶ 714-715.) Per the Stipulation Regarding Search Warrants, Consent Decree Timelines, and the Procedure for "Full and Effective Compliance" (Dkt. 1011), the Court should thus retroactively start the two-year and one-year maintenance periods (1) for ¶¶ 142, 145, 170, 537, 554, and 565 as of October 8, 2021, the date IMT filed IMR4 (Dkt. 978); and (2) for ¶¶ 44, 143, 257, and 555 as of April 11, 2022, the date IMT filed IMR5 (Dkt. 1020).

---

[1] "To terminate a portion of the Agreement, the Court must find that the portion of the Agreement is sufficiently severable from the other requirements of the Agreement such that partial termination would not impede the Monitor's ability to assess the City's compliance with other requirements of this Agreement." (Dkt. 703-1 at ¶ 719.)

4

IMT and the Illinois Attorney General ("OAG") have agreed that the City may represent this Motion as unopposed.

I. Paragraph 44

Consent Decree ¶ 44 provides that:

*Before the 2019-2020 school year begins, CPD will undertake best efforts to enter into a memorandum of understanding with CPS, to clearly delineate authority and specify procedures for CPD officer interactions with students while on school grounds, consistent with the law, best practices, and this Agreement.*

On December 11, 2019, CPD entered into a Memorandum of Understanding with Chicago Public Schools. Ex. A, *Intergovernmental Agreement Between the City of Chicago and the Board of Education of the City of Chicago* (Dec. 11, 2019) (MONITOR55834–57). IMT found CPD to be in full compliance with this paragraph in IMR5. (Dkt. 1020 at PageID 16457–58.)

II. Paragraph 142

Consent Decree ¶ 142 provides that:

*Within 90 days of the Effective Date, OEMC will ensure that all current active tele-communicators have received mental health and CIT awareness training ("OEMC Training"). OEMC will provide the OEMC Training to new tele-communicators before tele-communicators complete their training and begin answering calls independently.*

In support of compliance of finding of compliance for this paragraph along with paragraphs 143 and 145 discussed below, OEMC provided IMT with training records for its eight-hour Mental Health Crisis Awareness Training. IMT found OEMC to be in full compliance with this paragraph in IMR4. (Dkt. 978 at PageID 11168.) IMT found that OEMC remained in full compliance with this paragraph in IMR5. (Dkt. 1020 at PageID 16683–84.)

III. Paragraph 143

Consent Decree ¶ 143 provides that:

*The OEMC Training will be at least an eight-hour course taught jointly by qualified OEMC staff and a mental health clinician or advocate.*

5

IMT found OEMC to be in full compliance with this paragraph in IMR5. (Dkt. 1020 at PageID 16685–87.)

IV.     Paragraph 145

Consent Decree ¶ 145 provides that:

*Any training on mental health and CIT awareness that has already been provided to tele-communicators may fulfill the OEMC Training requirement of this Agreement, if the previously provided training satisfies the criteria for the OEMC Training described in this Agreement.*

IMT found OEMC to be in full compliance with this paragraph in IMR4. (Dkt. 978 at PageID 11171.) IMT found that OEMC remained in full compliance with this paragraph in IMR5. (Dkt. 1020 at PageID 16691–92.)

V.      Paragraph 170

Consent Decree ¶ 170 provides that:

*CPD recently issued a foot pursuit training bulletin. By July 1, 2019, CPD will develop and issue a supplemental foot pursuit training bulletin that reflects best practices from foot pursuit policies in other jurisdictions. The supplemental training bulletin will be subject to review and approval by the Monitor and OAG. The supplemental training bulletin will:*

> a.   *identify risks and tactical factors officers should consider prior to initiating and during the course of a foot pursuit;*
> b.   *provide guidance to officers regarding radio communications during a foot pursuit;*
> c.   *instruct officers to avoid, to the extent practical, separating from other officers in the course of a foot pursuit;*
> d.   *provide guidance on circumstances when alternatives to a foot pursuit may be appropriate; and*
> e.   *inform officers that they must follow supervisors' instructions in the course of a foot pursuit, including instructions to alter tactics or discontinue the pursuit.*

On February 24, 2020, CPD submitted its Foot Pursuits Training Bulletin to IMT and OAG, who both later indicated that they had no objections to the bulletin. Ex. B, *Foot Pursuits Training Bulletin* (MONITOR35505–09). IMT found CPD to be in full compliance with this paragraph in

IMR4. (Dkt. 978 at PageID 11217–18.) IMT found that CPD remained in full compliance with this paragraph in IMR5. (Dkt. 1020 at PageID 16747–48.)

VI. Paragraph 257

Consent Decree ¶ 257 provides that:

*CPD will inform officers of the role of the Office of the Inspector General ("OIG") in overseeing the hiring and promotions processes.*

As evidence of compliance with this paragraph CPD has supplied IMT and OAG with training records showing that 98% of all CPD officers have received training informing them of OIG's role in overseeing the hiring and promotions processes. IMT found CPD to be in full compliance with this paragraph in IMR5. (Dkt. 1020 at 16902–03.)

VII. Paragraph 537

Consent Decree ¶ 537 provides that:

*All regular meetings convened by the Police Board that are open to the public will be attended by the CPD Superintendent or his or her designee; the Chief Administrator of COPA or his or her designee; the Deputy PSIG or his or her designee; and the Chief of BIA or his or her designee.*

The Police Board provides transcripts of its meetings in the "Public Meetings of the Police Board" section of its website, which show the presence of the above-identified persons at Police Board meetings.[2] IMT found Police Board, CPD, COPA, PSIG, and BIA to be in full compliance with this paragraph in IMR4 (Dkt. 978 at PageID 11751). IMT found that Police Board, CPD, COPA, PSIG, and BIA remained in full compliance with this paragraph in IMR5. (Dkt. 1020 at PageID 17477–48.) This Court has already agreed that PSIG and Police Board are in full compliance with this paragraph. (Dkt. 997; Dkt. 1028.)

---

[2] Available at: https://www.chicago.gov/city/en/depts/cpb/provdrs/public_meetings.html#:~:text=The%20Board's%20regular%20monthly%20meetings,to%20begin%20at%207%3A30pm.

7

VIII. <u>Paragraph 554</u>

Consent Decree ¶ 554 provides that:

*OAG acknowledges that the City adopted a policy relating to the public release of video footage capturing weapons discharges and incidents involving death or serious bodily injury. Consistent with applicable law, the City will continue to ensure COPA publicly releases such video footage pursuant to the June 2016 Video Release Policy for the City of Chicago. The Video Release Policy will not supersede or otherwise limit the City's legal obligations pursuant to state and federal transparency laws, including the Illinois Freedom of Information Act, 5 ILCS 140/1 et seq.*

On November 9, 2021, the City submitted its Policy 2.1.2, Transparency Initiatives – Release of Video and Related Materials to IMT and OAG. Ex. C, *Transparency Initiatives – Release of Video and Related Materials* (MONITOR261761–69). IMT has said that this policy "completely and thoroughly addresses ¶554 and provides detail beyond what is required by the Consent Decree, including how and when information will be released." (Dkt. 1020 at PageID 17512.) IMT found that the City and COPA to be in full compliance with this paragraph in IMR4. (Dkt. 978 at PageID 11776.) IMT found that the City and COPA remained in full compliance with this paragraph in IMR5. (Dkt. 1020 at PageID 17511–12.)

IX. <u>Paragraph 555</u>

Consent Decree ¶ 555 provides that:

*On an annual basis, the Police Board will track and publish case-specific and aggregate data about Police Board decisions. Such publications will contain and include, at minimum, the following:*

    a.    *the date on which the investigating agency (COPA, BIA, district, or OIG) received the complaint or notification for investigation;*
    b.    *the date of the Police Board hearing over which the hearing officer presided;*
    c.    *the disciplinary recommendations and/or decisions (where applicable) made by COPA, BIA, the Superintendent, and the Police Board;*
    d.    *the average time between the filing of disciplinary charges with the Police Board and the first day of hearing;*

    e.    *the average time between the filing of disciplinary charges with the Police Board and the Police Board's decision;*
    f.    *the average time between the date on which the investigating agency (COPA, BIA, district, or OIG) received the complaint for investigation and the Police Board's decision;*
    g.    *the date of the alleged misconduct;*
    h.    *the average time between the date of the alleged misconduct giving rise to the complaint or notification and the Police Board's decision; and*
    i.    *whether any Police Board decision has been appealed to any state court and, if so, the court's final judgment.*

The Police Board publishes case decisions, monthly reports of decisions, quarterly reports regarding disciplinary cases, annual reports, and data on each case filed by the Superintendent since 2010 in the "Police Discipline" section of the Police Board's website.[3] IMT found the Police Board to be in full compliance with this paragraph in IMR5. (Dkt. 1020 at PageID 17513–14.)

    X.    <u>Paragraph 565</u>

Consent Decree ¶ 565 provides that:

*At least quarterly, COPA, the Deputy PSIG, and the President of the Police Board, or his or her designee, will meet to confer and share information regarding trends and analyses of data relating to CPD. They will jointly or separately provide any resulting recommendations for changes in CPD policy or rules, in writing, to the Superintendent. Thereafter:*

    a.    *the Superintendent will respond to any such recommendation within 60 days of receipt;*
    b.    *the Superintendent's response will include a description of the actions that the Superintendent has taken or plans to take with respect to the issues raised in the recommendations; and*
    c.    *all policy recommendations and responses to the same will be published on a City website.*

In support of compliance the Police Board has periodically provided IMT and OAG minutes for the above-referenced meetings. IMT found COPA, Deputy PSIG, and Police Board to be in full compliance with this paragraph in IMR4. (Dkt. 978 at PageID 11791–92.) IMT found

---

[3] Available at: https://www.chicago.gov/city/en/depts/cpb/provdrs/police_discipline.html.

that COPA, Deputy PSIG, and Police Board remained in full compliance with this paragraph in IMR5. (Dkt. 1020 at PageID 17529–30.) This Court has already agreed that PSIG and Police Board are in full compliance with this paragraph. (Dkt. 997; Dkt. 1028.)

## CONCLUSION

For the reasons discussed above, the Court should find the City and all applicable entities in full and effective compliance with all material requirements under ¶¶ 44, 142, 143, 145, 170, 257, 537, 554, 555, and 565 of the Consent Decree. Per the Stipulation Regarding Search Warrants, Consent Decree Timelines, and the Procedure for "Full and Effective Compliance" (Dkt. 1011), the Court should thus retroactively start the maintenance periods (1) for ¶¶ 142, 145, 170, 537, 554, and 565 as of October 8, 2021, the date IMT filed IMR4 and the first date that IMT found these paragraphs to be in full and effective compliance (Dkt. 978); and (2) for ¶¶ 44, 143, 257, and 555 as of April 11, 2022, the date IMT filed IMR5 and the first date that IMT found these paragraphs to be in full and effective compliance (Dkt. 1020).

Dated: August 10, 2022

Respectfully submitted,

**CITY OF CHICAGO**

By: s/ Anna M. Greve
One of Its Attorneys

Jennifer Bagby
Jennifer.bagby@cityofchicago.com
Deputy Corporation Counsel
City of Chicago Department of Law
Public Safety Reform Division
121 North LaSalle Street, Room 600
Chicago, Illinois 60602
(312) 742-6408

Allan T. Slagel
aslagel@taftlaw.com
Elizabeth E. Babbitt
ebabbitt@taftlaw.com
Paul J. Coogan
pcoogan@taftlaw.com
Anna Greve
agreve@taftlaw.com
**TAFT STETTINIUS & HOLLISTER LLP**
111 East Wacker Drive
Suite 2800
Chicago, Illinois 60601
Telephone: (312) 527–4000