# EXHIBIT A

**INTERGOVERNMENTAL AGREEMENT
BETWEEN THE CITY OF CHICAGO AND THE
BOARD OF EDUCATION OF THE CITY OF CHICAGO**

This Intergovernmental Agreement (the "**Agreement**") is effective as of the 1st day of September, 2019 (the "**Effective Date**") by and between the City of Chicago (the "**City**"), a municipal corporation and home rule unit of local government under Article 7, Section 6(a) of the 1970 Constitution of the State of Illinois, acting through its Department of Police (the "**Department**" or the "**CPD**") and the Board of Education of the City of Chicago, a body politic and corporate, commonly known as the Chicago Public Schools (the "**Board**" or "**CPS**") acting in exercise of powers granted to it by Illinois law, specifically 105 ILCS 5/34-1 *et seq.*, as amended; pursuant to the 1970 Constitution of the State of Illinois, Art VII, Sec. 10, for the **purpose of CPD providing a school resource officer program for the Board in order to maintain and promote the safety and security of students, teachers and other staff of the Chicago Public Schools, which is of great importance to the City and the Board, as well as to foster a safe, supportive, and positive learning environment for students.**

1.  **Term and Extension.** The term of this Agreement shall begin on the Effective Date and end on August 31, 2020 ("**Term**"). This Agreement has two (2) options to renew for periods of twelve (12) months each.

2.  **Services.** CPD agrees to provide the Board a school resource program with sworn full-duty police officers at each of the designated CPS schools (individually a "**Designated School**" or if referring to more than one "**Designated Schools**") for full tours of duty as school resource officers ("**SROs**") to ensure the safety of CPS students, school personnel and others on school property as set forth in **Exhibit A** ("**Services**") in accordance with the terms and conditions of this Agreement. "Services" means, collectively, the services, deliverables, duties and responsibilities described in **Exhibit A** of this Agreement and any and all work necessary to complete them or carry them out fully and to the standard of performance required in this Agreement. The parties may, from time to time, request changes in the Scope of Services. Any such changes, whether material revisions (as defined below) or not, shall be documented and agreed upon in writing in accordance with the Change Management Process below before they may be performed or compensated.

3.  **Selection of Designated Schools.** The Board's Chief Executive Officer or his or her designees shall establish a process in which CPS principals, in consultation with their local school councils, can determine which schools shall have SROs deployed at Designated Schools under this Agreement. The Designated Schools shall be identified on **Exhibit B** attached hereto and made a part of this Agreement. **Exhibit B** is subject to change as defined in Section 4.G. and Section 9 and shall be updated by the parties at least two (2) times per year including once in September of each year and once in January of each year and provided to the Board's Chief Officer of Safety and Security or his or her designee. These Services are subject to the availability of funds. Staffing should be done in a manner to avoid overtime costs to CPS.

4.    **Selection, Assignment and Performance of SROs.**

    A.    CPD and CPS shall jointly develop a screening criteria for SROs that ensures all SROs possess the qualifications, skills and abilities necessary to work safely with students, school personnel and community members. Factors that both parties must consider when selecting SROs shall include, but not be limited to: a minimum of three (3) years of service; working knowledge of Department directives; juvenile laws; and Chicago Public Schools Student Code of Conduct; ability to work safely, effectively, and build positive relationships with students, parents, guardians and school personnel; previous experience working with youth in a learning environment (e.g., coaching youth league or youth group leader); ability to problem-solve in a team environment; college experience with an emphasis on youth studies; quality report writing skills; enthusiasm for the position with an ability to work with school administration, students and parents. Also consideration shall be given to the officer's prior disciplinary history. As a part of the screening criteria, the CPS CEO and his or her designees shall participate in the selection process and make recommendations on the SROs who will be assigned by CPD under this Agreement. Only SROs who satisfy a screening criteria developed by CPD and CPS shall be selected and assigned under this Agreement

    B.    All SROs shall have completed initial standard police officer training prior to their assignment to the Designated Schools. In addition to the standard training, SROs shall have completed annual CPS training prior to their assignment to the Designated Schools which shall include, but not be limited to, the following areas: building relationships with youth; de-escalation training; restorative practices; school-based legal topics including CPS Student Code of Conduct; youth development; training on disability and special education issues; youth crisis intervention; implicit racial bias, and training regarding student interaction with specific student groups such as limited English proficiency, LGBTQIA, homeless students and sensitivity around immigrant student situations.

    C.    The Board shall provide input to CPD to ensure that the performance evaluations for SROs are aligned with their established roles and training under this Agreement. The Board shall monitor the performance of the SROs through its Chief Officer of Safety and Security. SROs assigned to work under this Agreement shall be guided by clear policy in order to provide a positive and supportive learning environment for students.

    D.    SROs shall be subject to the direction of the Superintendent of Police or his/her designee and must observe all standards of conduct required by the CPD. Furthermore, all assigned SROs shall be supervised by CPD supervisory personnel from their respective police district. The Superintendent or his or her designee will also appoint a centralized designee who will ensure coordination and uniformity of the SRO program across police districts ("**SRO Coordinator**").

    E.    SROs shall be subject to any and all applicable state statutes and municipal ordinances, the CPD rules and regulations, CPD general and special orders,

MONITOR00055835

directives, policies and procedures or any amendment thereto or modification thereof promulgated by the Superintendent of Police.

F.      SROs shall have full authorization to enter into or on school facilities and property, subject to the agreement of the Board with full rights to enforce law and order and to protect all students, school personnel, or others who are present on school property.

G.      The number of SROs may vary from time to time for reasons including, but not limited to, availability of a sufficient number of SROs and equipment and for reasons of public safety and convenience. The number of SROs shall be determined by the Superintendent of Police or his or her designees, in consultation with the Board's Chief Executive Officer or his or her designees, including any decisions regarding redeployment of SROs, including the ability to shift resources and activity to meet the needs of the City as a whole.

H.      Each of the Designated Schools shall make an effort to introduce the SROs assigned to the Designated School to the student body at the beginning of the school year.

5.      **Emergencies**. Nothing contained herein shall preclude the emergency deployment of SROs, in any manner, at the discretion of the Superintendent of Police.

6.      **Program Oversight: Operations.**

A.      Each year the Superintendent of Police or his/her designee and the Board's Chief
Executive Officer or his/her designee (i) shall review and evaluate the SRO program and (ii) establish goals and objectives for the assigned SROs for the following school year. These specific goals and objectives will take into consideration the needs of each of the Designated Schools.

B.      CPD shall install computer terminals connected to the CPD network in certain Designated Schools where on-duty SROS are assigned.

C.      The Board shall provide, at each Designated School where SROs are assigned, secure office space for the on-duty SRO(s) to secure the CPD computer and protect the privacy rights of students.

D.      CPD shall provide a monthly report to the Board's Chief Officer of Safety and Security detailing all crimes and arrests committed by any persons at CPS schools, whether a student, staff or otherwise in accordance with Illinois statutes.

7.      **Reimbursement, Payment and Documentation**.

A.      The maximum compensation that may be paid to CPD during the Term of the Agreement shall not exceed the amount stated in the Board Report, cited on the signature page of this Agreement, as may be amended ("**Maximum Compensation Amount**").

3

Bills shall be submitted by CPD to CPS as follows:

- For the Services rendered during the period September 1 - December 31, 2019: one bill during December 2019 for a total amount not to exceed $16,500,000.
- For the Services rendered during the period January 1 - August 31, 2020: one bill during June 2020 for a total amount not to exceed $16,500,000.

CPS will tender to the City the first payment not later than January 31, 2020; and will tender the second payment not later than September 30, 2020. If this Agreement is renewed, payments for the next year will follow the same schedule in time frame.

B.  Pursuant to Section 30 of this Agreement, CPS shall have the right to audit the records of CPD and CPD shall cooperate with such request and make records available for inspection at a location mutually agreed to by the parties. Such audits may be conducted up to two (2) times per year.

8.  **Labor Guidelines.** The Board shall not be considered a party to the collective bargaining agreement between the City and the Fraternal Order of Police. At all times the City shall be considered the sole employer of SROs and has exclusive authority to direct the duties of such SROs and control the work and conduct of the SROs and shall be solely responsible for payment and provision to the SROs of salary and any other benefits to which the SROs are entitled as employees of the City. The City is responsible for making necessary tax and other withholdings from the SROs' pay, and for making all necessary tax and other employment-related payments and filings. The City shall also maintain payroll, attendance, and performance evaluation records of the SROs.

9.  **Board Authority to Change Number of SROs and Designated Schools**. The Board shall have the right, upon thirty (30) days written notice as provided in Section 24, unilaterally to reduce Services which may include the number of Designated Schools receiving Services and/or the number of SROs at a specific Designated School.

The Board may upon written notice as provided in Section 24 request an increase in Services which may include the number of Designated Schools receiving Services from CPD and/or the number of SROs at a specific Designated School. All increases in Services are subject to the discretionary authority of the Superintendent to shift police resources to meet the needs of the City as a whole.

10.  **Change Management Process**: During the Term of this Agreement, the parties may determine that change(s) to the Agreement is necessary. In such an event, the parties shall determine if the proposed change amounts to a material revision as described in this Section before determining how that change will be documented.

A.  Material Revision: A "material revision" includes (i) increasing the total cost of the Services to be provided during the Term of this Agreement beyond the Maximum Compensation Amount, as may be amended; (ii) substantial reduction in the scope of Services; (iii) substantial expansion of the Services to be provided beyond the Scope of Services authorized by the Board in this Agreement; (iv) extending the time of

4

MONITOR00055837

performance of Services beyond the time period approved by the Board; (v) change or modification to the legal terms and conditions in this Agreement; or (vi) any other shift of the risks and liabilities between the Parties. A material revision requires a written amendment to the Agreement approved in advance by the Board, then signed by the authorized representatives of both parties and approved by the Board's General Counsel.

B. <u>Statements of Work</u>: If the proposed change does not amount to a material revision as defined above, the parties may mutually agree upon and enter into a written Statement of Work ("**SOW**") to further describe the specific Services to be rendered, the roles and responsibilities of the parties, the periods of performance, timelines, deliverables, and any other terms necessary for the performance of the Services according to the expectations described in the Agreement. Each SOW entered shall be numbered sequentially in order of execution and shall be executed by the Board's Chief Executive Officer or his/her designee and the authorized representative of CPD. The SOW shall be in the form that is included as **Exhibit C**. No SOW shall modify, amend, or add legal terms, conditions, or provisions; shift risks or liabilities between the parties; or otherwise constitute a material revision as set forth above. Any Services performed in accordance to an SOW shall also be performed in accordance with the terms of the Agreement. Any SOW that is not completed and approved in accordance with the terms of this Agreement, including this Section, shall be null and void, and CPD shall not be entitled to any compensation for Services rendered pursuant to a void SOW. In the event of any conflict or inconsistency between the terms and conditions of a Statement of Work and the terms and conditions of this Agreement, this Agreement shall control.

11. **Complaint Process; Investigations.** CPD shall provide school administrators with a complaint process to promote a swift review and resolution of complaints by CPS including, but not limited to, removal of such SRO, if necessary, from performing Services under this Agreement. This process will be either through the SRO Coordinator or District Commander who has the authority to remove an SRO from performing Services under the Agreement if deemed necessary and in compliance with all applicable labor agreements. Additionally, any investigations conducted by CPS which include a member of the Department acting in his or her capacity as a SRO or which involve any other CPD officer's on duty conduct shall be shared with the SRO Coordinator.

12. **Termination of Funding**. Except as to Services already rendered prior to the date of notification to the City, obligations of payment hereunder shall cease immediately, without penalty, upon written notice by the Board to the City, at any time if there are not sufficient appropriated funds lawfully available to the Board to meet such obligations.

13. **Board Confidential Information**. In the performance of its obligations under the Agreement, the Department may have access to certain student information and other Board Information that is not generally known to others ("**Board Confidential Information**"). The Department agrees not to disclose to any third party Board Confidential Information or any records, reports or documents prepared or generated as a result of this Agreement without the prior written consent of the Board. The Department shall not disseminate any information regarding this Agreement, except as required by law, without the prior written consent of the Board. The Department shall use at least the same standard of care in the protection of the

5

Board Confidential Information as the Department uses to protect its own confidential information, but in any event such Board Confidential Information shall be protected in at least a commercially reasonable manner. Notwithstanding the foregoing, it is understood and agreed that such protection of Board Confidential Information may be subject to the special requirements set forth in the Family Educational Rights and Privacy Act ("**FERPA**") and the Illinois School Student Records Act ("**ISSRA**"). The Department agrees to cause its personnel including SROs, agents and/or subcontractors, if any, to undertake the same obligations of confidentiality agreed to by the Department under this Agreement.

In the event the Department is presented with a request for documents by any agency of the Federal or State Government or as may be required in response to a request under the Freedom of Information Act identified below, or with a *subpoena duces tecum* regarding such Board Confidential Information which may be in the Department's possession by reason of this Agreement, the Department must immediately give notice to the Board and its General Counsel with the understanding that the Board will have the opportunity to contest such process by any means available to it before the Board Confidential Information is submitted to a court or other third party. The Department shall not be obligated to withhold the delivery of such Board Confidential Information beyond the time ordered by the court or administrative agency, unless the subpoena or request is quashed or the time to produce is otherwise extended.

14. **Compliance with Laws, Board Policies and Procedures.** The parties shall comply with all applicable laws, ordinances, rules regulations and codes in performing their respective obligations hereunder. SROs shall comply with applicable Board policies in the course of his/her duties, and any other operating procedures that are agreed upon between the parties.

15. **Access to Education Records**.

    A.    School administrators shall allow SROs to inspect and copy any public records maintained by the school to the extent allowed by law.

    B.    If some information in a student's record is needed in an emergency to protect the health or safety of the student or other individuals, school administrators shall disclose to the SRO that information which is needed to respond to the emergency situation based on the seriousness of the threat to someone's health or safety; the need of the information to meet the emergency situation and the extent to which time is of the essence.

    C.    If confidential student record information is needed by an SRO, but no emergency situation exists, the information may be released only as allowed by law.

16. **Freedom of Information Act**: CPD acknowledges that this Agreement and all documents submitted to the Board related to this Agreement are a matter of public record and are subject to the Illinois Freedom of Information Act (5 ILCS 140/1) and any other comparable state and federal laws and that this Agreement is subject to reporting requirements under 105 ILCS 5/10-20.44. CPD further acknowledges that this Agreement shall be posted on the Board's Internet website at http://www.cps.edu.

6

MONITOR00055839

17. **Default and Remedies**.

    A.    If the Department defaults by failing to perform any material obligations under this Agreement and does not cure such material default, then the Board may terminate this Agreement and/or take any other action at law the Board deems appropriate. For the purposes of this Agreement, a "material default" by the Department shall be any default that would reasonably be construed as material by the Board and that the Board identifies as being grounds for terminating the Agreement. It is understood and agreed that the Board shall give the Department prompt written notice of any obligations that the Board deems to be material, pursuant to the terms of this Agreement.

    B.    In the event of any material default by the Department, the Board shall give the Department thirty (30) days advance written notice of its intent to terminate stating the nature of the material default. If the Department does not cure the default within the 30-day notice period, the termination will become effective at the end of the period. Notwithstanding the foregoing, with respect to those defaults that are not capable of being cured within the 30-day period, the Department shall not be deemed to be in default if, in the opinion of the Board, using a reasonable standard, the Department has begun to cure the default within the 30-day period and, in the reasonable opinion of the Board, thereafter diligently and continuously prosecutes the cure of the default until cured.

    C.    In addition to the above, in the event of any uncured material default, the Board may, in any court of competent jurisdiction, by any proceeding at law or in equity, seek the specific performance of the agreements contained in this Agreement, or damages for failure of performance, or both.

18. **Parties Responsibilities**. Neither party to this Agreement shall be liable for any negligent or wrongful acts, either of commission or omission, chargeable to the other unless such liability is imposed by a court of competent jurisdiction. This Agreement shall not be construed as seeking to either enlarge or diminish any obligation or duty owed by one party against the other or against a third party. In the event of a claim for any wrongful or negligent act, each party shall bear the cost of its own defense and attorney's fees. The indemnities set forth herein shall survive the expiration or termination of this Agreement.

19. **Independent Contractor**. Nothing in this Agreement shall be considered to create the relationship of employer and employee or principal and agent between the parties hereto. It is understood and agreed that the relationship of the City or CPD to the Board is and shall continue to be that of an independent contractor and neither City nor any of City's employees shall be entitled to receive Board employee benefits. City agrees that City's employees, staff or subcontractors shall represent themselves as employees or agents of the Board.

It is understood and agreed that nothing contained herein is intended or should be construed

MONITOR00055840

as in any way affecting the status of the Board and/or the City as separate, independent and distinct entities under Illinois or any other law. It is further understood and agreed that the entry into this Agreement by the City and the Board shall not operate or be construed as a waiver of any rights, claims or actions they may have against the other including, but not limited to, any claims resulting from the providing of SROs to the Board pursuant to this Agreement.

20.    **No Partnership or Joint Venture Created**.   It is understood and agreed that nothing herein contained is intended or should be construed as in any way creating or establishing the relationship of co-partners or joint venturers between the parties hereto, or as constituting the Board or the City as representatives of each other for any purpose.

21.    **General Provisions**.   Any headings of this Agreement are for convenience or reference only and do not define or limit the provisions thereof. Words of any gender shall be deemed and construed to include correlative words of the other gender. Words importing the singular number shall include the plural number and vice versa, unless the context shall otherwise indicate.   All references to any person or entity shall be deemed to include any person or entity succeeding to the rights, duties and obligations of such person or entity in accordance with the terms of this Agreement.

22.    **Severability**.  If any provision of this Agreement shall be held or deemed to be or shall in fact be inoperative or unenforceable as applied in any particular case in any jurisdiction or jurisdictions or in all cases because it conflicts with any other provision or provisions hereof or any constitution, statute, ordinance, rule of law, or public policy, or for any other reason, such circumstances shall not have the effect of rendering the provision in question inoperative or unenforceable in any other case or circumstances, or of rendering any other provision or provisions herein contained invalid, inoperative or unenforceable. The invalidity of any one or more phrases, sentences, clauses, or sections contained in this Agreement shall not affect the remaining portions of this Agreement or any part hereof.

23.    **Termination**.    It is the intent of the parties to this Agreement that its commitments made hereunder are conditioned upon satisfactory performance of the commitments made by the other party hereto.  Each party shall have the right to terminate this Agreement if the other fails or refuses to honor any of its commitments under this Agreement. Otherwise, this Agreement may be terminated by either party upon the giving of sixty (60) days prior written notice to the other party.  Upon termination of this Agreement, CPD shall have no obligation to continue to provide SROs for Designated Schools other than the usual and customary obligations charged to sworn police officers of the City.

24.    **Notices**.  Unless otherwise specified, any notice, demand or request required under this Agreement must be given in writing at the addresses set forth below, by a party in writing, by any of the following means: (a) personal service, (b) first class mail, (c) overnight courier or (d) facsimile or email, confirmed by mail. These addresses may be changed by notice to the other party given in the same manner provided above.  Any notice, demand or request given by personal service or overnight courier is considered received when delivered, if transmitted by facsimile or email when transmitted; and if given by first class mail is considered received two business days following deposit in the mail with sufficient first class postage affixed.  Refusal of

8

delivery has the same effect as receipt.

IF TO THE DEPARTMENT:  Chicago Police Department
3510 South Michigan Ave., 5th Floor
Chicago, Illinois 60653
Attention: Superintendent of Police
Fax: 312-745-6963

WITH COPIES TO:      City of Chicago
Department of Law
121 North LaSalle Street, Room 600
Chicago, Illinois 60602
Attention: Finance and Economic Development Division
Fax: 312-744-8538

and

Chicago Police Department
3510 South Michigan Avenue, 5th Floor
Chicago, IL 60653
Attention: General Counsel
Fax: 312-745-6995

and

City of Chicago
Office of Budget and Management
121 North LaSalle Street, Room 604
Chicago, Illinois 60602
Attention: Budget Director
Fax: 312-744-3618

and

City of Chicago
Office of the Chief Financial Officer
121 North LaSalle Street, Room 509
Chicago, Illinois 60602
Attention: Chief Financial Officer
Fax: 312-744-7159

and

City of Chicago
Department of Finance
121 North LaSalle Street, Room 700

9

MONITOR00055842

Chicago, Illinois 60602
Attention: City Comptroller
Fax: 312-744-2887

IF TO THE BOARD:

Board of Education of City of Chicago
Office of the Chief Executive Officer
42 West Madison Street, 3rd Floor
Chicago, Illinois 60602
Attention: Janice K, Jackson, Ed.D, CEO
Fax: 773-553-1501

and

Board of Education of City of Chicago
Office of School Safety and Security
42 West Madison Street, Garden Level
Chicago, Illinois 60602
Attention: Jadine Chou, Chief Officer of Safety & Security
Fax: 773-553-3050

WITH COPY TO:

Board of Education of City of Chicago
Law Department
One North Dearborn Street, Suite 900
Chicago, Illinois 60602
Attention: Joseph T. Moriarty, General Counsel
Fax: 773-553-1701

25.    **Conflict of Interest**. This Agreement is not legally binding on the Board if entered into in violation of the provisions of 105 ILCS 5/34-21.3, which restricts the employment of, or the letting of contracts to, former Board members within a one year period following expiration or other termination of their office.

26.    **Ethics**. No officer, agent or employee of the Board is or shall be employed by the City or has or shall have a financial interest, directly, or indirectly, in this Agreement or the compensation to be paid hereunder except as may be permitted in writing by the Board's Code of Ethics Policy adopted May 25, 2011 (11-0525-PO2), as amended from time to time, which policy is hereby incorporated by reference into and made a part of this Agreement as if fully set forth herein.

27.    **2014 City Hiring Plan Prohibitions**

A.    The City is subject to the June 16, 2014"City of Chicago Hiring Plan" (the "City Hiring Plan") entered in Shakman v. Democratic Organization of Cook County, Case No 69 C 2145 (United State District Court for the Northern District of Illinois). Among other things, the City Hiring Plan prohibits the City from hiring persons as governmental employees in non-exempt positions on the basis of political reasons or factors.

10

B.     The Board is aware that City policy prohibits City employees from directing any individual to apply for a position with CPS, either as an employee or as a subcontractor, and from directing CPS to hire an individual as an employee or as a subcontractor. Accordingly, CPS must follow its own hiring and contracting procedures, without being influenced by City employees. Any and all personnel provided by CPS under this Agreement are employees or subcontractors of CPS, not employees of the City of Chicago. This Agreement is not intended to and does not constitute, create, give rise to, or otherwise recognize an employer-employee relationship of any kind between the City and any personnel provided by CPS.

C.     The Board will not condition, base, or knowingly prejudice or affect any term or aspect of the employment of any personnel provided under this Agreement, or offer employment to any individual to provide Services under this Agreement, based upon or because of any political reason or factor, including, without limitation, any individual's political affiliation, membership in a political organization or party, political support or activity, political financial contributions, promises of such political support, activity or financial contributions, or such individual's political sponsorship or recommendation. For purposes of this Agreement, a political organization or party is an identifiable group or entity that has as its primary purpose the support of or opposition to candidates for elected public office. Individual political activities are the activities of individual persons in support of or in opposition to political organizations or parties or candidates for elected public office.

In the event of any communication to CPS by a City employee or City official in violation of this Section 27.B., or advocating a violation of Section 27.C., CPS will, as soon as is reasonably practicable, report such communication to the Hiring Oversight Section of the City's Office of the Inspector General ("**IGO Hiring Oversight**"), and also to the head of the relevant City Department providing Services provided under this Agreement.

28.     **Inspector General.** Each party to this Agreement hereby acknowledges that in accordance with 105 ILCS 5/34-13.1, the Inspector General of the Board has the authority to conduct certain investigations and that the Inspector General shall have access to all information and personnel necessary to conduct those investigations.

29.     **Non-Liability of Officials.** The Board and its consultants, subcontractors, successors and assignees will not charge any official, employee or agent of the Department personally with any liability or expenses of defense or seek to hold him or her personally liable under any term or provision of this Agreement or because of his or her execution or attempted execution of this Agreement. The Department and its consultants, subcontractors, successors and assignees will not charge any official, employee or agent of the Board personally with any liability or expenses of defense or seek to hold him or her personally liable under any term or provision of this Agreement or because of his or her execution or attempted execution of this Agreement.

30.     **Audit and Records Retention.** CPD shall maintain records showing time expended in performing Services, costs incurred and actual Services performed. Subject to state and federal

laws regarding the disclosure of student information and the confidentiality provisions of this Agreement, all records referenced above and all records required to be maintained as part of the Services shall be retained for two (2) years after completion of Services. The Board shall have the right to inspect and audit the records of CPD with respect to this Agreement and CPD shall cooperate with such request and make records available for inspection at a location mutually agreed to by the parties. Such audits may be conducted up to two (2) times per year. The Inspector General of the Board shall have the same right to inspect and audit said records as set forth herein.

31.  **Authorization:** The parties have taken all actions necessary for the approval and execution of this Agreement, and execution by the person signing on behalf of each is duly authorized by each party and has been made with complete and full authority to commit each party to all terms and conditions of this Agreement.

32.  **Entire Agreement and Amendment.** This Agreement, including all exhibits attached to it and incorporated into it, constitutes the entire agreement of the parties with respect to the matters contained herein. All attached exhibits are incorporated into and made a part of this Agreement. No modification of or amendment to this Agreement shall be effective unless such modification or amendment is in writing and signed by both parties hereto. Any prior agreements or representations, either written or oral, relating to the subject matter of this Agreement are of no force or effect.

33.  **Governing Law.** This Agreement shall be governed as to performance and interpretation in accordance with the laws of the State of Illinois.

34.  **Assignment.** This Agreement, and all rights and obligations hereunder, may not be assigned or delegated without the express, prior written consent of the other party hereto. Any assignment or attempt at same in the absence of such prior written consent will be void and without effect.

35.  **Waiver.** No delay or omission by either party to exercise any right hereunder shall be construed as a waiver of any such right and each party reserves the right to exercise any such right from time to time as often and as may be deemed expedient under this Agreement.

36.  **Ordinance.** Execution of this Agreement by the City of Chicago is authorized by virtue of an ordinance passed by the City Council of the City of Chicago on October 31, 2018.

37.  **Counterparts; Facsimile/Electronic Signatures.** This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute but one instrument. A signature delivered by facsimile or electronic means shall be considered binding for both parties.

[Rest of this page left intentionally blank.]

MONITOR00055845

**IN WITNESS WHEREOF**, the City of Chicago and the Board of Education of the City of Chicago have caused this Agreement to be duly executed and delivered as of the Effective Date hereof.

**CITY OF CHICAGO**

By: _____     Date: _11 DEC_____, 2019
Charlie Beck
Interim Superintendent of Police

By: _____     Date: _____, 2019
Reshma Soni
City Comptroller

**BOARD OF EDUCATION OF THE CITY OF CHICAGO**

By: _____
Miguel del Valle, President

Attest: _____     Date: _12/11_____, 2019
Estela G. Beltran, Secretary

By: _____
Janice K. Jackson, Ed.D., Chief Executive Officer

Board Report No: ___19-0828-Ex 4-1_____
19-1211-AR4-17

Approved as to legal form:

By: _____
Joseph T. Moriarty, General Counsel

**Attachments:**
Exhibit A – Scope of Services
Exhibit B – List of Designated Schools
Exhibit C – Statement of Work Form

13

MONITOR00055846

**IN WITNESS WHEREOF**, the City of Chicago and the Board of Education of the City of Chicago have caused this Agreement to be duly executed and delivered as of the Effective Date hereof.

**CITY OF CHICAGO**

By: _____  Date: _11 Dec____, 2019

Charlie Beck
Interim Superintendent of Police

By: _Reshma Soni_____  Date: _Dec 11____, 2019

Reshma Soni
City Comptroller

**BOARD OF EDUCATION OF THE CITY OF CHICAGO**

By: _____

Miguel del Valle, President

Attest: _____  Date: _____, 2019

Estela G. Beltran, Secretary

By: _____

Janice K. Jackson, Ed.D., Chief Executive Officer

**Board Report No:** _____

Approved as to legal form:

By: _____

Joseph T. Moriarty, General Counsel

**Attachments:**
Exhibit A – Scope of Services
Exhibit B – List of Designated Schools
Exhibit C – Statement of Work Form

13

MONITOR00055847

**EXHIBIT A**

**Scope of Services**

This Scope of Services shall be conducted pursuant to the terms and conditions of the Intergovernmental Agreement (the "**Agreement**") effective as of the 1st day of September, 2019 (the "**Effective Date**") by and between the City of Chicago (the "**City**"), acting through its Department of Police (the "**Department**" or the "**CPD**") and the Board of Education of the City of Chicago commonly known as the Chicago Public Schools (the "**Board**" or "**CPS**"). Defined terms used in this Scope of Services shall have the same meanings as those ascribed to such terms in the Agreement.

CPD agrees to provide to the Board the Services set forth herein below:

A.    CPD will provide sworn full-duty police officers at each of the Designated Schools for full tours of duty as SROs to ensure safety and deter crime at schools. SROs shall be uniformed and carry standard equipment.

B.    SROs will conduct roving patrols inside the school buildings while maintaining a visible presence and positive student interactions.

C.    SROs shall respond immediately to calls involving emergency situations. SROs will call in to dispatch all emergency situations to protect all CPS students, school personnel, or others who are present on school property and, in non-criminal acts, reference the CPS Code of Conduct to determine if the situation can be handled through discipline. The CPS Office of Student Protections and Title IX may consult with SROs on assessing whether a matter should be handled through a criminal case report and arrest or through school discipline.

D.    SROs shall have no involvement in school disciplinary actions and shall ensure that no other Department officers are requested to intervene in school disciplinary actions.

E.    SROs will coordinate with school administration and the CPS Office of School Safety and Security personnel in problem solving exercises and emergency drills. SROs will participate in any training of CPS emergency drills, including active shooter response. SROs' actions shall always minimize any disruption to the school's normal operations.

F.    SROs shall work with school administrators to make reasonable attempts to reach students' parents or guardians prior to any action by a CPD officer involving a student on school grounds. Nothing herein limits the authority of any SRO to perform his/her duties, as provided by ordinance and statute.

G.    SROs shall notify their immediate supervisor and/or Commander of inappropriate situations where they are asked by school administrators, teachers and other staff to intervene in student situations that involve mere school disciplinary actions.

14

MONITOR00055848

H.  SROs and school administrators shall develop plans and strategies to prevent and/or minimize dangerous situations which might result in student unrest. SROs shall share information with the school administrators about persons and conditions that pertain to campus safety concerns.

I.  SROs shall be a resource for students which will enable them to be associated with a law enforcement figure and role model in the students' environment.

J.  SROs can participate in meetings with school administration upon notification and approval of the SRO's immediate supervisor or Commander.

K.  SROs must have knowledge of the CPS Student Code of Conduct Manual and CPS disciplinary procedures.

L.  SROs will follow the Reciprocal Reporting Systems Agreement between Chicago Public Schools and the Chicago Police Department, as said agreement may be amended from time to time, regarding any arrests made pursuant to this Agreement.

N.  SROs shall maintain daily reports on all crimes and arrests committed by any persons at CPS schools, whether a student, staff or otherwise.

O.  SROs shall not transport students in Department vehicles except when the students are under lawful arrest or when some other emergency circumstances exist. SROs shall not transport students in their personal vehicles.

[Rest of this page left intentionally blank.]

15

MONITOR00055849

**EXHIBIT B**

**List of Designated Schools**

(see attached)

16

MONITOR00055850

Exhibit B
List of Designated Schools

| Police District | School Name | Beat |
|---|---|---|
| 001 | Jones College Prep | 175S |
| 001 | Dunbar H.S. | 176S |
| | | |
| 002 | Phillips | 275S |
| 002 | Martin Luther King | 276S |
| 002 | Chicago Milit Acad | 277S |
| 002 | Dusable | 278S |
| 002 | Kenwood Academy | 274S |
| 002 | Dyett H.S. | 279S |
| | | |
| 003 | Hyde Park | 375S |
| 003 | School Car | 373 |
| 003 | School Car | 374 |
| 003 | School Car | 376 |
| 003 | School Car | 377 |
| 003 | School Car | 378 |
| 003 | School Car | 379 |
| | | |
| 004 | Chicago Vocational | 477 |
| 004 | Bowen | 478 |
| 004 | Washington | 479 |
| 004 | School Car | 478S |
| 004 | School Car | 479S |
| | | |
| 005 | Harlan | 575 |
| 005 | Corliss | 576 |
| 005 | Carver Military Academy | 578 |
| 005 | School Car | 576S |
| 005 | School Car | 577S |
| 005 | School Car | 578S |
| 005 | School Car | 579S |
| | | |

MONITOR00055851

Exhibit B
List of Designated Schools

| Police District | School Name | Beat |
|---|---|---|
| 006 | Calumet | 675 |
| 006 | Hirsch Metro | 676 |
| 006 | Simeon | 677 |
| 006 | Ellison | 678 |
| 006 | School Car | 674S |
| 006 | School Car | 676S |
| 006 | School Car | 675S |
| 006 | School Car | 677S |
| | | |
| 007 | School Car | 774 |
| 007 | School Car | 777 |
| 007 | Englewood STEM | 776S |
| 007 | School Car | 775 |
| 007 | Harper | 778S |
| 007 | Lindblom | 779S |
| | | |
| 008 | Curie | 874S |
| 008 | Goode | 874A1 |
| 008 | Gage Park | 875 |
| 008 | Hubbard | 876 |
| 008 | Bogan | 877 |
| 008 | Kennedy | 878 |
| 008 | Hancock | 879S |
| 008 | Solorio | 889S |
| | | |
| 009 | Kelly | 975S |
| 009 | Richards | 976S |
| 009 | Tilden | 977S |
| 009 | Air Force Academy | 978S |
| 009 | Back of the Yards | 979S |
| 009 | School Car | 978 |
| 009 | School Car | 979 |
| | | |

MONITOR00055852

Exhibit B
List of Designated Schools

| Police District | School Name | Beat |
|---|---|---|
| 010 | Farragut | 1075S |
| 010 | Collins | 1076S |
| 010 | Little Village | 1077S |
| 010 | School Car | 1078S |
| 010 | School Car | 1079S |
| | | |
| 011 | Westinghouse | 1174S |
| 011 | Manley | 1175S |
| 011 | Marshall | 1176S |
| 011 | Al Raby | 1177S |
| 011 | Orr | 1173S |
| 011 | School Car | 1179S |
| | | |
| 012 | Clemente HS (bldg) | 1274S |
| 012 | Whitney Young | 1275S |
| 012 | Crane Tech | 1277S |
| 012 | Juarez | 1279S |
| 012 | Wells | 1278S |
| 012 | School Car | 1274 |
| 012 | School Car | 1279 |
| | | |
| 014 | School Car | 1474 |
| 014 | Clemente HS *** dismissal only | 1488 |
| | | |
| 015 | Douglass | 1574S |
| 015 | Austin H.S. | 1575S |
| 015 | Michelle Clark | 1576S |
| 015 | School Car | 1578S |
| | | |
| 016 | Taft | 1675S |
| 016 | Foreman | 1676S |
| 016 | School Car | 1674 |
| 016 | Taft Freshman Academy | 1674S |

MONITOR00055853

Exhibit B
List of Designated Schools

| Police District | School Name | Beat |
|---|---|---|
| 017 | Von Steuben | 1775S |
| 017 | Roosevelt | 1776S |
| 017 | Carl Schurz | 1777S |
| 017 | North Side Prep | 1778S |
| 017 | School Car | 1774 |
| 017 | School Car | 1775 |
| 018 | Lincoln Park | 1884B |
| 018 | School Car | 1884A |
| 019 | Lake View | 1975S |
| 019 | Lane Tech | 1976S |
| 019 | Uplift | 1978S |
| 019 | School Car | 1977S |
| 020 | Amundsen | 2075S |
| 020 | Mather | 2076S |
| 020 | Senn | 2077S |
| 022 | Morgan Park | 2276 |
| 022 | Percy Julian | 2277S |
| 022 | Fenger | 2278S |
| 024 | Sullivan H.S. | 2475S |
| 024 | School Car | 2476 |
| 024 | School Car | 2477 |
| 025 | Kelvyn Park | 2575 |
| 025 | Prosser | 2576 |
| 025 | Steinmetz | 2577 |
| 025 | North-Grand H.S. | 2578 |
| 025 | School Car | 2575S |
| 025 | School Car | 2576S |

Oct-19

MONITOR00055854

**Exhibit C**
**Statement of Work Form**

(see attached)

17

MONITOR00055855

## STATEMENT OF WORK # _____
#### #19-0828-EX 4

This statement of work ("**Statement of Work**" or "**SOW**") is made and entered by and between the City of Chicago (the "**City**"), acting through its Department of Police ("**Department**" or the "**CPD**")and the Board of Education of the City of Chicago, commonly known as Chicago Public Schools ("**Board**" or "**CPS**"). Services provided pursuant to an approved Statement of Work form shall be performed pursuant to the terms of the Intergovernmental Agreement between the City of Chicago and the Board of Education of the City of Chicago effective as of September 1, 2019 ("**Agreement**"). Defined terms used in this Statement of Work form 'shall have the same meanings as those ascribed to such terms in the Agreement. No attempt to alter the terms and conditions of the Agreement through this Statement of Work will be effective. Any attempt to modify or add to the legal terms and conditions of the Agreement through this Statement of Work for the Services provided pursuant to this SOW **shall** be null and void.

### PROGRAM DESCRIPTION

| General Information | | |
|---|---|---|
| **Program Name:** | **School Resource Officer Program** | |
| **SOW date** | | **August 31, 2020** |
| | | |

18

MONITOR00055856

In acknowledgement that the parties below have read and understood this Statement of Work and agree to be bound by it, each party has caused this Statement of Work to be signed by its respective authorized representative. The parties agree that the Services provided pursuant to this Statement of Work shall be subject to the terms and conditions set forth in the Agreement. Any attempt to modify or add to the legal terms and conditions of the Agreement through this Statement of Work for the Services provided pursuant to this SOW shall be null and void.

**City of Chicago**                                          **Board of Education of City of Chicago**

By:_____          By: _____
Signature                                                     Signature

Name: _____          Name:_____

Title: _____          Title: _____

Date:_____          Date:_____

**Copies of the fully approved and executed Statement of Work shall be provided to the CPS Law Department upon execution.**

19

# EXHIBIT B

**A Knowledge Resource for** Members of the Chicago Police Department

Distribution: All Sworn Members    ETB18-01
Release Date: JAN 2018          Revised Date: February 2020

# Foot Pursuits Training Bulletin

## DEFINITION

A **foot pursuit** is an incident in which an officer is actively chasing, on foot, a suspect who is evading arrest or detention.

> **Department members will engage in a foot pursuit only when they have reasonable articulable suspicion to conduct an investigatory stop or probable cause to arrest.**
> Department members are reminded that a subject's action in fleeing from the police, by itself, does not automatically amount to reasonable articulable suspicion to conduct an investigatory stop or probable cause to arrest. However, a subject fleeing upon sight of a clearly identifiable police officer can be one factor in the totality of the circumstances to establish reasonable articulable suspicion.

## RISKS TO BE CONSIDERED

Foot pursuits present potential risks of physical injury to members of the public, Department members, and the fleeing subject. **When engaging in a foot pursuit, Department members will assess the risks to the public, to themselves, and to the fleeing subject, in relation to law enforcement's duty to enforce the law and apprehend the subject.** Officers should use caution when going over obstacles/barriers, rounding corners, or at the end of fences, especially when following the same path as the subject. Officers should be cognizant of losing sight of the subject, who may take the opportunity to lie in wait for the officer.

**Officers should not separate from their partner absent exigent circumstances. Officers acting alone ("99" units) should consider this as a factor in determining whether to engage in a foot pursuit, and should use extra caution if they decide to do so. "**Separation" is any situation in which one officer is unable to immediately render aid or otherwise assist the other officer in the apprehension of the subject. Staying with your partner is the responsibility of both officers. Having your partner to assist in the possible arrest of a subject is greatly preferred for officer safety. Subjects who might decide to fight one officer when arrest is imminent, may decide not to do so when encountered with two officers. Similarly, subjects may lead a pursuing officer where they know persons who might assist in their escape are nearby, or where they know there is dangerous terrain, an improvised trap, or even an ambush awaiting a pursuing officer.

1

A Knowledge Resource for Members of the Chicago Police Department

Officers should avoid the tactic of one officer pursuing on foot, while the other officer follows in the vehicle. If the subject runs into a gangway or other area not traversable by a vehicle, the officers will become separated. When two officers are engaged in a foot pursuit one should take the role of the "primary" or "lead" officer, who should direct the foot pursuit and focus on any observed threats, the actions of the subject, and the subject's location. The "secondary" or "support" officer should be responsible for radio communications, including updating the direction of travel, and requesting assist units. These roles may change between officers during the pursuit based on the circumstances. Officers should plan who should initially take on these roles, much as they would plan on which officer would be the "contact officer," and which would be the "cover officer" during a traffic stop.

## USING SOUND TACTICS:
### Factors to Be Considered

Factors that may be part of an officer's decision to engage in, not engage in, or discontinue a foot pursuit once engaged may include but are not limited to:

1. the number of subjects involved;

2. whether the subject is believed or known to be armed;

3. the seriousness and nature of the offense committed by the subject;

4. the availability and proximity of assist units;

5. the availability of radio communications;

6. the physical characteristic of the pursuit location, including but not limited to the:

    a. nature of the area: residential, commercial, school zone, roadway;

    b. community setting: school dismissal, community event, pedestrian traffic;

    c. environmental factors: weather, lighting, time of day;

    d. condition of the structures: abandoned building, troubled building, gang and/or drug house;

    e. physical hazards: clotheslines, unrestrained animals, unsteady ground, train tracks, rail yards, waterways;

    f. The officer's familiarity with the area.

2

MONITOR00035506

**Before a Pursuit Begins**

While no tactic can completely eliminate the possibility of a foot pursuit, officers should try to use assistance from other units and other tactics to their advantage. If officers have reason to believe that a subject may present a flight risk, there may be ways to mitigate the circumstances. Be aware of signs that the subject may be about to flee, such as their body language and movements. If officers believe a subject may present a flight risk, the officers should consider waiting for backup before stopping a vehicle, or before approaching a subject who is on foot. If a vehicle is already stopped, consider waiting for backup before getting the subjects out of the vehicle. Once you are ready, have subjects, normally starting with the driver, exit the vehicle one at a time, and secure them before having the next subject step out. Using sound tactics might prevent or discourage a subject from fleeing.

**Deciding Whether to Pursue**

No officer can prevent every subject from fleeing. Once a subject flees, officers need to make a quick decision as to their most prudent course of action. If an officer does not have reasonable articulable suspicion or probable cause to stop a subject, an officer should not engage in a foot pursuit. For example, if a subject looks in the direction of an officer and begins to run, and there are NO other factors to contribute to reasonable articulable suspicion, the officer should not engage in the foot pursuit. Officers should also take other immediate factors into consideration.

What is the nature of the offense? Apprehending a subject who has committed a violent crime is much more important than the necessity of apprehending someone for a minor non-violent offense.

Has the subject's identity been established? If we know the identity of the subject and there is no indication that a delay in arrest will risk harm to life or damage to property, then arrest at a later date might be advisable.

Where is the subject running to? Is the subject running into a building with a large red "X" over the door, or otherwise abandoned or dilapidated property? If so, an officer should consider this as a factor in deciding whether to pursue.

**When making the decision to pursue, or to continue to pursue, the safety of the public, Department members, and the fleeing subject, should be the foremost considerations.**

**Once a Member Engages in a Foot Pursuit**

Due to the rapidly evolving and individualistic nature of foot pursuits, whenever a Department member engages in a foot pursuit, they will continuously assess the circumstances of the pursuit and determine the appropriate response to effectively apprehend the subject and safely conclude the pursuit. **Officers will discontinue the foot pursuit if they determine that the risk to themselves, the subject, or the public outweigh the need to apprehend the subject, or if instructed to do so by a supervisor.** Other potential response options may include obtaining backup from other members, establishing a perimeter to contain the subject, or requesting assistance from specialized units.

3

A Knowledge Resource for Members of the Chicago Police Department

## IF A PURSUIT IS INITIATED

Officers will:

- Immediately notify the Office of Emergency Management and Communications (OEMC) and attempt to broadcast their location, description of the subject, direction of travel, and the reason for the foot pursuit.
- Include in that notification the fact that an officer is in plain clothes or undercover dress, if applicable.
- Make reasonable efforts to update their location and direction of flight during the pursuit. If a pursuing officer is unable to do so, their partner or an assisting unit who knows the location and direction of flight is responsible for doing so.
- Except in cases of emergency, units should avoid radio communications not related to essential information regarding the apprehension of the offender or officer safety.
- Coordinate with responding officers to establish a perimeter to contain the subject.
- Request outside unit support if appropriate (saturation teams, canine units, helicopter unit, etc.).
- Be mindful of weapon retention and weapon discipline. Running with a firearm in hand is to be avoided.
- Activate the body worn camera and/or in-car video system at the beginning of the incident, record throughout the entire incident, and conform to other requirements regarding body worn and in car cameras consistent with Department policy.
- Monitor radio communications for additional information from OEMC, the location of the responding units, or guidance and direction from supervisors.
- Notify OEMC of any discontinuation of a pursuit or apprehension of the subject.

Other officers should minimize radio traffic/communications to allow the pursuing officer(s) to communicate effectively. When assisting in a foot pursuit, responding officers should take a tactically safe and strategic approach, and coordinate with initiating/pursuing officer(s) to establish a perimeter.

**Injuries Before or During a Pursuit:** If another officer or member of the public is injured prior to or during the pursuit, Department members should determine whether assisting in the treatment of a serious injury is more important than the apprehension of the subject. All incidents will be resolved with the foremost regard for the preservation of human life and the safety of all persons involved.

**Evidence Recovery Before or During a Pursuit:** If easily recoverable evidence is discarded by the subject before or during the foot pursuit, officers should determine if delaying, interrupting, or discontinuing the foot pursuit might be required. This is particularly true for items that pose a serious risk to public safety, such as firearms.

4

MONITOR00035508

**Immediate Apprehension vs. Containment:** Based on the totality of the circumstances, officers may determine that the best course of action may be to contain the subject, rather than attempting to overtake and immediately apprehend them. Containing the subject allows for the response of other units. For example, containment may be the best course of action if the subject enters a building, or if they are armed. The "secondary" or "support" officer should coordinate containment efforts, including radio transmissions, while the "primary" or "lead" officer should concentrate on the location of the subject and possible threats.

**Use of Force and Foot Pursuits:** Deadly force may not be used on a fleeing subject unless the subject poses an imminent threat of death or great bodily harm. Force used on a subject who is fleeing, or who has been apprehended, must, as in all use of force, be objectively reasonable, necessary, and proportional.

**Supervisors will monitor foot pursuits to appropriately coordinate the situation**. Based on a reasonable understanding of the circumstances, supervisors monitoring a foot pursuit will ensure the coordination of Department resources during the pursuit, including the actions of assisting member(s) and support units(s), in order to safely apprehend the subject. As in any other incident, a supervisor my take control of the situation even if not physically present on-scene. If available, supervisors who are monitoring the foot pursuit should respond to the scene (1) to develop and coordinate a plan for subject apprehension when a perimeter is established, or (2) when a pursuit results in an arrest. **A supervisor will issue instructions to discontinue the foot pursuit if they determine that the risk to the officers, the subject, or the public outweigh the need to apprehend the subject.**

**When engaging in a foot pursuit, Department members will consider their own safety, as well as the safety of the public and the fleeing subject, in relation to law enforcement's duty to enforce the law and to apprehend the subject.**

RESOURCES

*G03-02-01 Force Options*
*G03-01-01 Radio Communications*
*S03-03-06 District Field Sergeants*
*Illinois v. Wardlow 528 U.S. 119*
*(2000)*
*Terry v. Ohio 392 U.S. 1 (1968)*

5

 MONITOR00035509

EXHIBIT C

| **C O P A**  CIVILIAN OFFICE OF POLICE ACCOUNTABILITY  INTEGRITY • TRANSPARENCY • INDEPENDENCE • TIMELINESS | **POLICY** |
| --- | --- |
|  | **Unit:** Agency-Wide |
| **Number:** | **Title:** Transparency Initiatives – Release of Video and Related Materials |
| **Effective Date:** | **Supersedes:** 2.1.2 (8/19/19) |

### Transparency Initiatives – Release of Video and Related Materials

## PUBLIC POLICY STATEMENT

(¶454)

Effective policies ensure compliance with the law, promote the use of best practices, foster integrity and independence in the performance of COPA activities, and provide transparency regarding the procedures and standards for the conduct of those activities.

COPA's continued commitment to increased transparency involves several activities centered on the public release of materials related to COPA investigations. Transparency allows for better understanding and conversations around sensitive issues that impact the community and the public safety system. COPA's obligation to timely share information enhances the public's ability to make informed decisions and promotes accountability.

Pursuant to the City of Chicago Video Release Policy, COPA releases videos and related materials for certain serious uses of force involving Chicago Police Department members, such as firearm discharges or uses of force that result in Great Bodily Harm or death. Executive Order 2021-1 is a compliment to the Video Release Policy, as it creates a standardized, accessible, and easy-to-navigate process for complainants to receive access to materials related to their incidents of alleged police misconduct, including video recordings.

Both the Video Release Policy and Executive Order 2021-1 strike an important balance between preserving the integrity of investigations while being responsive to complainants of alleged police misconduct and incidents involving serious uses force by Department members by limiting law enforcement requests to delay or prohibit release of materials.

Public release of information by COPA in no way suggests that COPA has made any determination regarding the conduct of any Chicago Police Department member or any other individual or entity, the cause of injury to or death of any individual, or, whether any released material bears any legal relevance to a particular incident.

## PURPOSE

The purpose of this policy is to document COPA's compliance with the VRP and EO 2021-1, as well as explains that COPA may release information related to incidents not covered under the VRP and EO 2021-1.

**DEFINITIONS**

| Term | Meaning |
|---|---|
| City of Chicago Video Release Policy (VRP) | It is the City of Chicago's policy to publicly release within 60 days, with limited exception, materials including 911 calls, dispatch recordings, radio calls, video and audio from dash cameras or body-worn cameras, Police Observation Device (POD) cameras, third party video and audio, arrest reports, original case incident reports, tactical response and officer battery reports related to incidents involving:<br>• an officer discharging their firearm in a manner that strikes, or that potentially could strike, another individual, even if no allegation of misconduct is made;<br>• an officer discharging their Taser or stun gun in a manner that strikes another individual and results in death or Great Bodily Harm; and<br>• incidents in which, as a result of the use of force by an officer, the death of, or Great Bodily Harm to, a person occurs while that person is in police custody. |
| Executive Order (EO) 2021-1 | EO 2021-1 governs the release of materials directly to subjects of alleged police misconduct. EO 2021-1 allows victims of alleged police misconduct to receive swift access to materials without having to navigate the Freedom of Information Act process or be constrained by its limitations. |
| Final Summary Report (FSR) | Also known as Summary Report of Investigators (SRI) or Administrative Summary Report (ASR). The report which summarizes the content and outcome of a COPA disciplinary investigation. |
| Great Bodily Harm (also referred to as Serious Injury) | An injury of a graver and more serious character than an ordinary battery. This may include, but is not limited to, injuries resulting in unconsciousness; disfigurement; hospital confinement; permanent or protracted loss or impairment of the function of a body part, organ, or mental faculty; or a substantial risk of death. |
| Illinois Freedom of Information Act (FOIA) | The Illinois FOIA, 5 ILCS 140/1 et seq., is a state law under which certain public records in possession of public agencies, such as COPA, may be accessed by the public upon written request. |
| Incident Related Material | For purposes of Executive Order 2021-1, material that depicts or captures any portion of the incident involving alleged misconduct by one or more members of the Department or, in the case of initial police reports, reflects a narrative memorialization of the incident. |
| Tactical Response Reports | Tactical Response Reports are used by the Department to document, investigate, and evaluate use of force incidents where members respond to the actions of an individual, including any force mitigation efforts, or when members use force. The report is also completed when a Department member is assaulted or battered by an individual and no force is used by the member. |

MONITOR00261762

POLICIES

I.  **PUBLIC RELEASE OF INFORMATION** (¶544)

    A.  COPA will make public the results of its investigations by electronically publishing a FSR, as well as quarterly and annual reports summarizing key agency statistics, including complaint intake, pending case loads, and investigation resolutions. *See* COPA Policy (Public Reporting Policy).

    B.  Though legal obligations may limit the overall scope of information that COPA may release relative to an ongoing investigation, the VRP and EO 2021-1 compel COPA to release certain information and materials of public interest even if administrative or criminal investigations remain pending. Additionally, the Chief Administrator, in his/her discretion, may release certain information of public interest related to incidents not specifically covered by the VRP or EO 2021-1.

    C.  COPA will release as much information as legally permissible (i.e., without preventing or hindering compliance by COPA with respect to any legal obligations, including but not limited to: any court order; any obligation to redact identifying or other information; restrictions imposed by applicable collective bargaining agreements; or any obligations imposed by applicable state or local law) in order to build public trust and strengthen police accountability.

II.  **CHICAGO VIDEO RELEASE POLICY** (¶554)

    A.  Pursuant to the VRP, COPA will release materials for the following types of incidents:

        1.  those in which a Chicago Police Department member discharges a firearm in a manner that strikes, or potentially could strike, another individual, even if no allegation of misconduct is made;

        2.  those in which a Department member discharges a Taser or stun gun in a manner that strikes another individual and results in death or Great Bodily Harm; and

        3.  those in which, as a result of the use of force by a Department member, the death of, or Great Bodily Harm to, a person occurs while that person is in police custody (or occurs during the course of attempts to bring a person into police custody).

    B.  Pursuant to the VRP, COPA will release the following items:

        1.  All video and audio recordings relating to an incident, including 911 calls; Office of Emergency Management and Communications (OEMC) dispatches; Department radio transmissions; Department in-car and body-worn cameras; and OEMC POD cameras.

        2.  Any video or audio recordings made using cameras or equipment not owned or controlled by the City of Chicago that come into the possession or control of the Department or COPA.

MONITOR00261763

3. Any arrest reports, original case incident reports, and reports detailing Department member uses of force (e.g., Tactical Response Reports).

C. COPA's release of information will comply with the following:

1. **Initial Release:** Any materials covered by the VRP shall be released to the public no more than 60 calendar days from the date of the incident, unless the Chief Administrator or another government entity requests that the release be delayed for a period not to exceed 30 calendar days.

   a. In the event another government agency, such as the Department, DOL, or OEMC, release materials, such as audio or video related to an incident, either independently or pursuant to a FOIA request, in advance of COPA's release of materials pursuant to the VRP, COPA will release materials as soon as practicable and consistent with II(C)(3) below.

2. **Supplemental Material:** Where any video or audio recording covered by this policy comes into the possession of the City after the date of the incident, it shall be released to the public no more than 60 days after coming into the possession of the City.

   a. If supplemental material is received by the City after the date of the incident, but within 60 calendar days of the incident or any extension period, COPA will make every effort to include the supplemental material in the Initial Release.

   b. If the supplemental material cannot be included in the Initial Release, COPA will supplement the Initial Release as soon as practicable before 60 days have passed since the date the City came into possession of material.

3. Provided the release of the information related to the incident will not impede or negatively impact the investigation, COPA will make some or all information available as soon as practicable before 60 days have passed since the date of the incident, or, for supplemental material, the date the information came into possession of the City.

   a. For example, release timelines may be impacted by the existence of multiple qualifying incidents occurring in close succession, capacity of COPA personnel to index, review and redact, if necessary, potentially voluminous audio, video and related materials, and the ability to communicate with affected parties (*see* II(D) below) or bring awareness of the release to legal counsel in any criminal prosecutions related to the incident.

4. All Information related to those incidents covered by the VRP, as well as those not covered under the VRP that the Chief Administrator deems to be of great public interest, will be accessible on the COPA website.

D. Prior to the release of the information, COPA will:

1. attempt to notify any subject(s) (i.e., individuals that were the subject of Department member use(s) of force described in II(A) above) depicted in any video recording, (or

the subject's legal representative or next of kin) of the scheduled release of such video on the COPA website; and

2. offer to show such subject, legal representative, or next of kin the video recording(s), and/or play any related audio, in advance of its public release on the COPA website.

E. To ensure that all cases covered by the VRP and those of particular public interest are released on the COPA website in a timely manner, COPA employees in the Investigative, Information Systems, Legal, and/or Public Information units/sections will conduct the following periodic meeting to discuss incidents subject to this Policy:

1. Weekly informational conference calls including other City or external stakeholders, which may include law enforcement and/or prosecutorial partners, to convey:

   a. Status and timelines for release.

   b. Potential restrictions on release.

   c. Scope of Materials identified for release.

F. Incidents not included in the Video Release Policy:

1. COPA may release information related to incidents not specifically covered by the VRP. Any release of information implemented at the discretion of the Chief Administrator must comply with applicable law and Collective Bargaining Agreements to which the City is a party.

   a. Specifically, in determining whether and when to release information, the Chief Administrator shall consider the public interest versus the investigative needs of the agency.

G. COPA may include press releases, which may highlight postings in advance of the 60-day deadline and provide limited factual information regarding the incident under investigation, with materials released pursuant to the VRP on COPA's website.

## III. EXECUTIVE ORDER 2021-1 (¶544)

A. Pursuant to EO 2021-1, COPA will:

1. post to its website instructions on how to request Incident Related Materials, including what information must be provided by the complainant, as well as routinely provide this information to the public as part of community engagement efforts;

2. accept written requests for release of Incident Related Materials from complainants that have filed a complaint with COPA alleging police misconduct in which they were the subject of the incident;

3. verify that a complaint has been filed with COPA regarding the incident, and that the incident is not otherwise covered by the VRP;

4. determine which City of Chicago Department has jurisdiction for investigating the incident;

    a. If COPA has jurisdiction over the request, COPA will conduct a reasonable search to identify Incident Related Material. Once identified, COPA will provide a list of the Incident Related Material to the Chicago Police Department and the Department of Law (DOL).

    b. If the Department has jurisdiction over the request, COPA will receive a list of any Incident Related Material identified through the Department's reasonable search efforts.

        i. COPA is not responsible for conducting searches for, or releasing, Incident Related Materials for investigations not within its jurisdiction.

5. notify the Department and DOL of the request within three (3) days of receiving the request, including in the notification a copy of the request and information pertaining to III(A)(3-4) above;

6. determine whether the incident relates to an ongoing criminal matter and, if so, notify the appropriate prosecutorial agency (typically, the Cook County State's Attorney's Office) of the request;

7. confirm receipt of the request from the complainant;

    a. If COPA determines that either a complaint has not been filed regarding the incident or the incident is otherwise covered by the VRP, COPA will notify the complainant of as much as soon as practicable.

8. provided that the incident is not covered by the VRP, COPA will release the following Incident Related Materials, which may be in the possession of the Department, COPA, the Public Safety Administration, and/or the Office of Emergency Management and Communications, to the complainant as soon as practical, but no later than 30 calendar days following the request:

    a. video and audio recordings from Department in-car cameras and/or body-worn-cameras; and

    b. initial police reports, including original case incident reports and reports detailing Department member uses of force (e.g., Tactical Response Reports).

        i. COPA will make the materials available for download by the complainant via a secure web-based portal for a minimum of 30 days.

## IV. LIMITATIONS ON RELEASE

A. The release of material may be delayed or prohibited entirely by operation of law or may be delayed at the request of a government entity. Circumstances resulting in delay or prohibition include:

1. VRP and EO 2021-1:

   a. Materials are subject to provisions of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), the Illinois Juvenile Court Act, the Illinois Law Enforcement Officer-Worn Camera Act, or the Illinois Identity Protection Act.

      i. COPA may redact certain information from materials to comply with the above listed law prior to release.

   b. A court order prohibits or delays release of materials.

      i. For incidents subject to the VRP, COPA may publicly post these orders to the COPA website.

2. VRP:

   a. Upon the City's Corporation Counsel's approval of a written request from a government entity, COPA will delay release of materials for a period not to exceed 30 calendar days.

      i. Such requests may be made by the United States Attorney for the Northern District of Illinois, the Cook County State's Attorney, the Attorney General of Illinois, COPA, or any other federal, state, county or local law enforcement agency.

      ii. Such requests must specify the materials to be withheld, the length of delay, and reasons supporting the requested delay.

      iii. Such requests and the Corporation Counsel's approval or denial will be posted publicly on COPA's website.

3. EO 2021-1:

   a. Materials are the subject of an ongoing criminal investigation or a request to delay is made by a law enforcement agency.

      i. All requests for delay will expire 90 days after the request is received from a law enforcement agency, at which time COPA will provide the complainant all Incident Related Material, unless production is prohibited by law or court order.

   b. To the extent COPA invokes applicable state or federal law as a basis for delay or prohibition of release of materials related to an incident within its jurisdiction, the basis for such action will be provided in writing to the complainant as soon as possible, but no later than 30 calendar days from the receipt of the request.

Transparency Initiatives – Release of Video and Related Materials

## V. ROLES AND RESPONSIBILITIES

A. *See* COPA Guidance (Video Release Policy and Executive Order 2021-1 – Roles & Responsibilities) for detailed information regarding roles and responsibilities involving COPA personnel related to compliance with the VRP and EO 2021-1.

B. *See* COPA Policy (External Requests for Information / FOIA) regarding COPA's production of information pursuant to written FOIA requests.

C. *See* COPA Policy (Information Sharing), COPA Policy (Litigation), and COPA Policy (Media Response) regarding protocols for, and the extent to which, COPA personnel may share or disclose information, documents, or evidence relating to an investigation outside of the VRP, EO 2021-1, and FOIA.

## EXCEPTIONS

If material qualifying for release pursuant to the VRP or EO 2021-1 in the possession of a City agency other than COPA is not timely made available to COPA pursuant to request, or COPA is otherwise unaware of the existence of the material, leaving COPA unable to comply with timeframes mandated by the VRP and EO 2021-1 (*see* II(C) and III(A)(8) above), COPA will release the material as soon as practicable, but no later than 30 days from receipt of the material at COPA, provided no other limitations on release apply (*see* IV above). COPA will memorialize all efforts to request and follow-up on material in possession of the City agency other than COPA and/or the date and circumstances under which COPA became aware of the material.

## RELATED INFORMATION

| Title | Link |
|---|---|
| External Requests for Information / FOIA | COPA Policy |
| Information Sharing | COPA Policy |
| Intake | COPA Policy |
| Litigation | COPA Policy |
| Media Response | COPA Policy |
| Public Reporting Policy | COPA Policy |
| Quality Assurance | COPA Policy |
| Timeliness Benchmarks | COPA Policy |
| Video Release Policy and Executive Order 2021-1 – Roles & Responsibilities | COPA Guidance |
| City of Chicago Video Release Policy | City of Chicago Policy |
| Executive Order 2021-1 | Mayoral Executive Order |

## ADDITIONAL SEARCH OPTIONS

| Title | Link |
|---|---|
| Return to [Section Description] | [LINK] |
| Proceed to [Next Section Description] | [LINK] |
| Return to Keyword Search | [LINK] |
| Return to Table of Contents | [LINK] |



MONITOR00261769