# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STATE OF ILLINOIS, | |
| Plaintiff, | Case No. 17-cv-06260 |
| v. | Hon. Rebecca R. Pallmeyer |
| CITY OF CHICAGO, | |
| Defendant. | |

***AMENDED***
**STIPULATION REGARDING INVESTIGATORY STOPS, PROTECTIVE**
**PAT DOWNS, AND ENFORCEMENT OF LOITERING ORDINANCES**

Subject to the approval of the Court, the City of Chicago (the "City") and the Office of the Illinois Attorney General (the "OAG") on behalf of the State of Illinois (collectively, the "Parties") agree to the following stipulation amending the Consent Decree (Dkt. 703) with respect to Chicago Police Department's ("CPD") policies and practices governing investigatory stops, protective pat downs, and the enforcement of the City of Chicago's Gang and Narcotics-Related Loitering Ordinances ("the Loitering Ordinances").

WHEREAS, in *Smith v. The City of Chicago*, No. 1:15-cv-03467, 2015 WL 1842780, (N.D. IL April 20, 2015), a class action of plaintiffs alleged that CPD officers engage in a pattern and practice of unconstitutional stops and frisks in violation of the United States Constitution and laws of the State of Illinois. *Smith* plaintiffs and the City have agreed to settlement relief related to certain monitoring, reporting, review, community engagement, training, and accountability measures relating to investigatory stops conducted by CPD, along with revisions to CPD's policies and procedures concerning investigatory stops and CPD's enforcement of the City's Loitering Ordinances, as set forth in Exhibit [A].

WHEREAS, in August 2015, the City and the American Civil Liberties Union of Illinois ("ACLU-IL") agreed to the Investigatory Stop and Protective Pat Down Settlement Agreement ("ACLU Agreement") to ensure that CPD's policies and procedures relating to investigatory stops and protective pat downs comply with applicable law, including the United States and Illinois Constitutions and the Illinois Civil Rights Act of 2003 ("ICRA"). On September 26, 2019, the ACLU-IL and the City agreed to a Temporary Stay of certain provisions of the ACLU Agreement, particularly those concerning data analysis, and agreed to take additional steps to advance the ACLU Agreement's goals.

WHEREAS, the Consent Decree between the State of Illinois and the City seeks to ensure that the City and CPD deliver services in a manner that fully complies with the Constitution and laws of the United States and the State of Illinois, respects the rights of the people of Chicago, builds trust between officers and the communities they serve, and promotes community and officer safety. In addition, the Consent Decree seeks to ensure that Chicago police officers are provided with the training, resources, and support they need to perform their jobs professionally and safely.

With the termination of the ACLU Agreement and upon entry of this Stipulation, this Stipulation addresses the scope and applicability of the Consent Decree to the *Smith* settlement relief and replaces Paragraph 712 of the Consent Decree with the provisions stated herein.

Unless otherwise specified, this Stipulation incorporates all defined terms from the Consent Decree and does not alter or change the other requirements, deadlines, or terms of the Consent Decree. Any additional stipulations to the Consent Decree, including paragraphs cited in this Stipulation, are subject to the approval of the Parties and the Court, pursuant to Paragraph 696 of the Consent Decree.

## XIV.  INVESTIGATORY STOPS, PROTECTIVE PAT DOWNS, AND THE ENFORCEMENT LOITERING ORDINANCES

### A.  Guiding Principles

800.    The Parties agree that the Consent Decree will be expanded to include obligations by CPD to monitor, report, review, train, and implement accountability measures with respect to investigatory stops, protective pat downs, and enforcement of the Loitering Ordinances. Enforcement of the Loitering Ordinances will include initial dispersal orders and, where appropriate, may include investigatory stops, protective pat downs, and arrests. These measures will ensure that CPD's investigatory stops, protective pat downs, and enforcement of the Loitering Ordinances are conducted in a manner that comply with the Constitution and laws of the United States and the State of Illinois and are in accordance with best practices, as defined in Paragraph 730 of the Consent Decree.

801.    In conducting investigatory stops and protective pat downs and enforcing the Loitering Ordinances, CPD will interact with all members of the public without bias and will treat all persons with the courtesy and dignity which is inherently due every person as a human being without reference to stereotypes based on race, color, ethnicity, religion, homeless status, national origin, immigration status, gender identity or expression, sexual orientation, socio-economic class, age, disability, incarceration status, or criminal history.

802.    The Parties agree that in achieving the goals of this Stipulation, CPD will encourage officers, through training and supervision, to employ a less intrusive response when enforcing the Loitering Ordinances when appropriate and reasonable under the circumstances.

**B.** **Investigatory Stops, Protective Pat Downs, and Enforcement of the Loitering Ordinances**

803.    CPD will review and, to the extent necessary, revise the policies and procedures for the enforcement of the Loitering Ordinances consistent with the law, the Consent Decree, and this Stipulation and in accordance with the terms set forth in Exhibit [A], including that:

   a.    Upon initial contact with person(s) engaged in loitering prohibited by the Loitering Ordinances, CPD officers will issue a dispersal order without conducting an investigatory stop, unless:

      i.    A previous dispersal order has been given and documented for that person(s) at that location within eight hours of such contact, in which case CPD officers may undertake enforcement action under the Loitering Ordinances; or

      ii.    They have separate and distinct reasonable articulable suspicion, based on specific and articulable facts, that an individual has committed, is committing, or is about to commit a crime;

   b.    CPD officers will document the initial contact with person(s) engaged in loitering prohibited by the Loitering Ordinances and any dispersal orders on a Loitering Dispersal Report ("LDR"); and

   c.    If a dispersed person fails to promptly obey the dispersal order or violates the dispersal order by returning within sight or hearing of the location where loitering is prohibited within eight hours of the dispersal, CPD officers may undertake enforcement action as provided for under the Loitering Ordinances.

804.    CPD will review and, to the extent necessary, revise the policies and procedures for conducting investigatory stops and protective pat downs consistent with the law, the Consent Decree, and this Stipulation.

805.    CPD will require officers to:

   a.    Conduct investigatory stops and protective pat downs, and undertake enforcement action under the Loitering Ordinances in a manner consistent with the Constitution and laws of the United States and the State of Illinois, the Consent Decree, this Stipulation, and best practices;

   b.    Communicate with individuals regarding the specific basis for an investigatory stop, consistent with principles of procedural justice, by:

i.      Identifying themselves by name and rank as soon as it is safe, reasonable, and practical to do so;

ii.     Stating the reason for the investigatory stop as soon as it is safe, reasonable, and practicable to do so;

iii.    If it is safe, reasonable, and practical to do so, notifying the person(s) encountered that they are being lawfully detained temporarily, indicating that they will be free to leave at the conclusion of the investigatory stop, and if asking the individual questions, informing the individual they are not required to answer; and

iv.    When an officer is equipped with a properly functioning body-worn camera ("BWC") activated to record the incident, informing the person that the encounter is being recorded on BWC;

c.     Ensure that the duration of an investigatory stop is no longer than reasonably necessary to confirm or dispel reasonable articulable suspicion and to take the appropriate enforcement actions, if any; and

d.     Act with professionalism and courtesy throughout the duration of the investigatory stop interaction.

806.    CPD will prohibit officers from:

a.     Performing investigatory stops unless they have reasonable articulable suspicion, based on specific and articulable facts that an individual has committed, is committing, or is about to commit a crime;

b.     Unreasonably extending a stop lawfully made based on reasonable articulable suspicion or probable cause to conduct an investigation into other criminal activity unless they have reasonable articulable suspicion, based on specific and articulable facts, that an individual has committed, is committing or is about to commit another crime;

c.     Relying on information known to the officer at the time to be materially false to establish reasonable articulable suspicion for an investigatory stop or protective pat down;

d.     Basing investigatory stops or protective pat downs solely on an individual's geographic location, such as presence in a high crime area or proximity to the scene of suspected or reported crimes, without any other reasonable articulable suspicion that the individual is, has, or is about to be engaged in criminal activity;

e.     Basing investigatory stops or protective pat downs solely on an individual's response to the presence of police officers, such as an individual's attempt to avoid contact with an officer (e.g., walking away, declining to talk,

running away, or crossing the street to avoid contact), without any other reasonable articulable suspicion that the individual is, has, or is about to be engaged in criminal activity;

f.  Basing investigatory stops or protective pat downs solely on an individual's presence in the company of others suspected of criminal activity without any other reasonable articulable suspicion that the individual is, has, or is about to be engaged in criminal activity;

g.  Conducting investigatory stops and protective pat downs solely on the basis of an individual's race, ethnicity, color, national origin, religion, disability, gender, gender identity, sexual orientation, immigration status, homeless status, marital status, parental status, military discharge status, financial status, or lawful source of income, except that officers may rely on the listed characteristics when part of a specific suspect description;

h.  Conducting a protective pat down, with or without consent, except where officers have reasonable suspicion, based on specific and articulable facts, that a person is armed and dangerous;

i.  Conducting an investigatory stop or search of an individual based solely on an officer smelling cannabis/marijuana without any other specific and articulable facts of criminal activity; and

j.  Conducting a protective pat down based solely on "officer safety," without having reasonable articulable suspicion, based on specific and articulable facts, that a person is armed and dangerous.

807.  During an investigatory stop, CPD officers may conduct a search of a person upon consent if officers have reasonable articulable suspicion that the person is involved in a crime or possesses evidence of the crime.

808.  CPD will require that when an officer requests consent for a search of a person during an investigatory stop, the officer will specifically ask the person for consent to search, and document on an Investigatory Stop Report ("ISR") or whatever similar form of documentation CPD may implement ("Stop Report") the request for consent, the person's response, and whether a search was conducted by consent. If an individual gives consent to search, the officer must inform the individual that they may revoke consent at any time.

809.     CPD will ensure that when officers request consent to conduct a search during an investigatory stop, officers will record the entire interaction on BWC.

810.     An officer must establish and communicate the scope of the consensual search and end the search upon the person revoking consent.

811.     Whenever CPD officers conduct a search by consent during an investigatory stop, the Investigatory Stop Receipt or whatever similar form of documentation CPD may implement ("Stop Receipt") provided to the person will indicate that a consent search was conducted.

812.     CPD will ensure that CPD officers report when they conduct investigatory stops, protective pat downs, or enforce the Loitering Ordinances.

813.     CPD will ensure that officers' reasonable suspicion for their investigatory stops and protective pat downs, the facts on which the suspicion is based, and other information from an investigatory stop or protective pat down are documented in a written or electronic ISR or Stop Report using specific and clear language that does not rely solely on standardized or boilerplate terms.

814.     When CPD officers conduct an investigatory stop, protective pat down, or engage in the enforcement of the Loitering Ordinances, their reports need to justify that the stop, pat down, or enforcement action complies with the law and CPD policy.

815.     CPD officers will not justify an investigatory stop solely by describing an individual's behavior as "suspicious," without further articulating specific facts that the individual has committed, is committing, or is about to commit a crime.

816.     CPD policy will continue to require that all of the factors that support reasonable articulable suspicion in order to temporarily detain an individual and, if applicable, all of the factors that support reasonable articulable suspicion in order to perform a protective pat down of

an individual, will be documented on an ISR or Stop Report in CPD's electronic reporting application.

817.    CPD will require officers to document on the ISR or Stop Report any BWC footage viewed prior to the completion of the report.

818.    CPD will permit officers to submit only one revised version of an ISR, Stop Report, or LDR from an investigatory stop, protective pat down, or Loitering Ordinance dispersal order, upon a supervisor's review and rejection of the originally submitted ISR, Stop Report, or LDR. When a supervisor rejects an ISR, Stop Report, or LDR, the supervisor will document in writing the reason for the rejection, such as requesting that an officer amend an ISR or Stop Report for lack of sufficient description of reasonable articulable suspicion. CPD will prohibit officers from submitting multiple revised versions of an ISR, Stop Report, or LDR, or further revising an ISR, Stop Report, or LDR once a revised version has been submitted.

819.    CPD will require officers to provide an Investigatory Stop Receipt or Stop Receipt to a stopped individual at the conclusion of an investigatory stop, except an officer will not provide a receipt when an investigatory stop ends in an arrest and transport to a CPD facility or ends in the issuance of a citation and release from the scene under the Illinois Pre-Trial Fairness Act. In any circumstance in which an Investigatory Stop Receipt or Stop Receipt was required, but was not provided to or received by the individual, the CPD officer will articulate in the ISR or Stop Report the reasons why the receipt was not provided to or received by the individual stopped.

820.    Investigatory Stop Receipts and Stop Receipts will indicate the Office of Emergency Management and Communications Police Computer Aided Dispatch event number of the stop, the reason for the stop, the CPD officer's name and star number, whether a consent search

was conducted, and instructions on how to obtain a copy of the ISR or Stop Report from CPD through an Illinois Freedom of Information Act request.

821.     CPD will ensure that the policies for conducting investigatory stops and protective pat downs are consistent with the policies for the enforcement of the Loitering Ordinances in instances where both policies may be applicable.

**C.     Training**

822.     CPD will train officers how to perform investigatory stops and protective pat downs and to enforce the Loitering Ordinances consistent with CPD policies and all applicable laws. This training will be consistent with CPD's commitment to procedural justice, de-escalation, impartial policing, and community policing, and will incorporate scenario-based elements.

823.     CPD will review and, to the extent necessary, revise its training specific to investigatory stops, protective pat downs, and enforcement of the Loitering Ordinances so that they are sufficient in quantity, quality, type, and scope to prepare officers to comply with CPD directives consistently, effectively, and in accordance with the law, CPD policy, best practices, and the Consent Decree.

824.     CPD will provide training for officers and supervisors instructing that:

 a. Officers should consider reasonable alternatives to the enforcement of the Loitering Ordinances based on the circumstances, including lesser actions such as a repeated dispersal;

 b. Investigatory stops are conducted only where there is reasonable articulable suspicion that a crime has been, is being, or is about to be committed;

 c. If it is safe, reasonable, and practical to do so, Officers will notify the person(s) encountered that they are being lawfully detained temporarily, indicate that they will be free to leave at the conclusion of the investigatory stop, and if asking the individual questions, inform the individual that they are not required to answer;

 d. Protective pat downs are performed only where there is reasonable articulable suspicion that the person stopped is armed and dangerous;

e.    An individual subject to an investigatory stop conducted by a CPD officer is not required to answer any questions asked by the CPD officer; and

f.    Consent to conduct a search of an individual must be voluntarily given based on the totality of the circumstances, including that consent cannot be obtained by using force, threats of force, promises, misrepresentation, intimidation, or exertion of authority, and the individual may revoke consent at any time.

825.    CPD will train all officers with respect to ISRs, Stop Reports, Stop Receipts, and LDRs, the electronic applications for documenting of ISRs/Stop Reports, and their responsibilities to record the specific and articulable facts for each investigatory stop and protective pat down.

826.    CPD will train supervisors on how to review ISRs, Stop Reports, and LDRs and how to discuss the results of the supervisory review of these reports and officers' practices with officers.

827.    As part of CPD's 2024 Training Needs Assessment, and annually thereafter, under the supervision of the Training Oversight Committee, CPD will determine any additional development and administration of training related to investigatory stops, protective pat downs, and enforcement of the Loitering Ordinances.

**D.    Supervisory Review**

828.    All submitted ISRs, Stop Reports, LDRs, and related arrest reports must be reviewed by a CPD supervisor.

829.    CPD supervisors will approve or reject all submitted ISRs, Stop Reports, and LDRs documenting investigatory stops, protective pat downs, or enforcement of the Loitering Ordinances by the end of their tours of duty.

830.    CPD supervisors will review and ensure submitted ISRs, Stop Reports, and LDRs are properly completed and conform to CPD policy (e.g., ensuring that CPD officers document in

the narrative sections of the ISR or Stop Report the reasonable articulable suspicion that justifies the investigatory stop and, if performed, protective pat down).

831.     CPD supervisors will inform the preparing CPD officer of the reason for any rejection of a submitted ISR, Stop Report, or LDR and comply with CPD policy on Department review of such reports.

832.     With respect to the supervisory review of ISRs, Stop Reports, and LDRs, CPD supervisors will take the appropriate action, such as after-action support recommendations, to address any rejected reports and deviations from CPD policy related to the report or the conduct described in the report. The after-action support recommendations may include, but are not limited to, individual debriefing with a supervisor, reviewing CPD policy with the CPD officer, reviewing BWC footage from the stop with the CPD officer, mandatory re-training, formal counseling, enhanced supervision, or initiating progressive discipline.  The appropriate after-action support will be documented within the report rejection.

833.     When directed by a 4th Amendment Street Stop Review Unit after-action support recommendation, CPD supervisors will review the BWC footage from the identified investigatory stop or protective pat down with the involved officer(s). CPD supervisors will document the viewing of the BWC footage and the results of the after-action support in the appropriate supervisory reports.

**E.     Data Collection**

834.     CPD will continue to post de-identified investigatory stop data derived from ISRs or Stop Reports on its website (currently, https://home.chicagopolice.org/statistics-data/isr-data/) on an annual basis, including fields for which information is collected on the ISR or Stop Report. CPD also will continue to post on its website the ISR data dictionary or an equivalent data dictionary for Stop Report data.

835.     To evaluate and improve its data collection efforts with respect to investigatory stops, protective pat downs, and enforcement of the Loitering Ordinances, CPD agrees that, within 180 days, or a reasonable extension of time approved by the Monitor, of entry of this Stipulation, it will conduct an assessment of the reporting and data collection mechanisms and system for investigatory stops, protective pat downs, and enforcement of the Loitering Ordinances.

836.     Within 180 days of completion of the needs assessment provided for in Paragraph 835 of this Stipulation, CPD will submit a plan to address areas of need to the Monitor and OAG for the review and approval process, as provided for in Paragraph 640 of the Consent Decree.

837.     CPD's data plan for investigatory stops, protective pat downs, and enforcement of the Loitering Ordinances will:

a.     Ensure that CPD maintains an electronic system such that every CPD officer will be able to electronically complete the documents related to investigatory stops, protective pat downs, and enforcement of the Loitering Ordinances, with the exception of Investigatory Stop Receipts or Stop Receipts;

b.     Where feasible and practical, ensure every CPD officer in Patrol Field Units will have the equipment necessary while on patrol to electronically complete ISRs, Stop Reports (when implemented), and LDRs (when implemented); and

c.     Ensure that all required fields of the ISR, Stop Report, and LDR are completed before the electronic document can be submitted.

838.     CPD will maintain and preserve all electronic versions of any ISRs, Stop Reports, and LDRs submitted or re-submitted by CPD officers.

839.     CPD will collect and maintain the data and records related to investigatory stops, protective pat downs, and enforcement of the Loitering Ordinances necessary to:

a.     Accurately evaluate its practices concerning investigatory stops, protective pat downs, and enforcement of the Loitering Ordinances; and

b.     Post de-identified investigatory stop data derived from ISRs or Stop Reports on its website as provided for in Paragraph 834 of this Stipulation.

12

840.     Upon approval and implementation of the data plan provided for in Paragraph 837 of this Stipulation, CPD will have an electronic reporting system that accurately and reliably maintains data and records related to investigatory stops, protective pat downs, the enforcement of the Loitering Ordinances, and unit-level supervisory and 4th Amendment Street Stop Review Unit reviews, including all electronic versions of any ISRs, Stop Reports, and LDRs submitted or re-submitted. CPD will continue to maintain all data, records, and reports relevant to and associated with investigatory stops and protective pat downs, including BWC footage, consistent with legal requirements and the requirements of the Consent Decree.

841.     Further, CPD will also continue to develop, implement, and maintain an electronic system to track and document which CPD officers have repeated rejected ISRs or Stop Reports consistent with the review process performed by the 4th Amendment Street Stop Review Unit (or an equivalent internal CPD unit) described in Paragraph 857 of this Stipulation.

**F.     Data Analysis**

842.     The Parties acknowledge that the Consultant for the ACLU Agreement is preparing a report, in consultation with an independent statistical expert, which assesses data regarding investigatory stops completed by CPD officers for the period between 2018 and 2020 ("Report"). With respect to the disparate impact compliance methodology for this Report, the City has agreed that the Consultant may (1) assume that a prima facie showing under ICRA based on disparate impact on the basis of race has been satisfied, and (2) forego that analysis. The Parties recognize that the methodology for this Report includes, but is not limited to, an analysis of the following:

    a.     Total CPD investigatory stops citywide and by police district, broken down by racial/ethnic identity;

    b.     Comparison of investigatory stop share to population share by race/ethnicity;

       c.      Protective pat downs, searches, and enforcement actions by race/ethnicity;

       d.      Hit-rate analysis for all contraband, firearms/weapons, drugs, and cannabis, including variations in hit rates between police districts; and

       e.      Analysis of the boxes most often checked by officers to document reasonable articulable suspicion, including variations by race/ethnicity and by police district.

843.     An independent subject matter expert (selected by the Monitor) will compile and assess data regarding investigatory stops and Loitering Ordinance dispersals completed by CPD officers through and including the period ending December 31, 2024. For the initial report, the Monitor will set a period for review and establish the date by which the report will be published. The preparation of the initial report will be under the direction of the Monitor. The methodology for this report will be consistent with the methodology for the report referenced in Paragraph 842 of this Stipulation, except that this report will also include (1) a Fourth Amendment analysis of a statistically representative sample of Stop Reports to assess whether the reports contain sufficient facts to establish the requisite reasonable suspicion for the investigatory stop and for any protective pat down, (2) an analysis of Loitering Ordinance dispersal orders issued by CPD officers and documented on LDRs, and (3) an analysis of the relative frequency of requests for consent to search and searches conducted based on consent. To the extent the report includes an analysis of the relative frequency of all Loitering Ordinance dispersal orders issued by CPD officers of persons in specific demographic categories, including race/ethnicity and gender within the reporting period, the report will clearly state that such analysis will be for information purposes only because the demographic classifications are based on the subjective observations of the CPD officer(s) who (1) pursuant to CPD policy, will not have stopped the individual to conduct the dispersal and (2) lacks the means to validate or confirm the demographic classifications. Any

further changes in methodology will be submitted by the Monitor to the City and OAG in advance for review, comment, and approval.

844.    After publication of the report as provided for in Paragraph 843 of this Stipulation, the City will submit to the Monitor and OAG for approval its plan for taking over the responsibility for obtaining and publishing periodic future independent subject matter reports from the Monitor. Once the plan has been approved, the Monitor will transfer the responsibility for obtaining periodic future independent subject matter reports to CPD.

845.    After the Monitor transfers to CPD the responsibility for obtaining periodic independent subject matter reports on investigatory stops and Loitering Ordinance dispersal orders, CPD will annually submit to the Monitor and OAG a copy of the annual independent subject matter expert report consistent with the methodology in Paragraph 843 of this Stipulation. The Monitor and OAG will review and approve the proposed independent subject matter expert and any proposed modifications to the methodology, including whether the use of an independent subject matter expert may be phased out in favor of an assessment methodology to be administered by CPD for future reports.

846.    Prior to conducting this assessment, CPD will share its proposed methodology, including any proposed factors to be considered as part of the assessment, with the Monitor for review and approval. The Monitor will approve CPD's proposed methodology provided that the Monitor determines that CPD's methodology comports with published, peer-reviewed methodologies and the Consent Decree.

847.    After the Monitor transfers to CPD the responsibility for obtaining periodic independent subject matter reports on investigatory stops and Loitering Ordinance dispersal

orders, CPD will annually submit to the Monitor and OAG a copy of the annual independent subject matter expert report consistent with the methodology in Paragraph 843 of this Stipulation.

848.     As part of CPD's annual report on investigatory stops and Loitering Ordinance dispersal orders, CPD will conduct an assessment of: (1) the relative frequency of all investigatory stops made by CPD officers of persons in specific demographic categories, including, race/ethnicity, gender, age, or perceived or known disability status for the prior calendar year, (2) the relative frequency of all Loitering Ordinance dispersal orders issued by CPD officers, and (3) an analysis of the relative frequency of requests for consent to search and searches conducted based on consent. For informational purposes only, CPD will identify the relative frequency of all Loitering Ordinance dispersal orders issued by CPD officers of persons in specific demographic categories, including race/ethnicity and gender. The report will clearly indicate that the assessment of Loitering Ordinance dispersal orders based on demographic categories is for informational purposes only because the demographic classifications are based on the subjective observations of the CPD officer(s) who (1) pursuant to CPD policy, will not have stopped the individual to conduct the dispersal and (2) lacks the means to validate or confirm the demographic classifications.

849.     The assessment of all investigatory stops and protective pat downs conducted by CPD officers will be conducted in accordance with the requirements set forth in Paragraphs 79-82 of the Consent Decree. This assessment of all investigatory stops and protective pat downs effectuated by CPD will be in addition to and does not replace the requirements of Paragraph 79 of the Consent Decree.

850.     Within 180 days after completion of each independent expert report, CPD will review the data and results of the analysis set forth in the report and assess whether to implement any revision to policies, procedures, or training to address any patterns of disparities, bias, or

constitutional inadequacies in CPD's investigatory stops, protective pat downs, and enforcement of the Loitering Ordinances.

851.     If CPD's assessment determines there are any necessary revisions to policies, procedures, or training, CPD will develop a timeline for implementation of the modifications, subject to the processes provided for in Paragraph 627 of the Consent Decree for policies and Paragraph 641 of the Consent Decree for training.

G.     **4th Amendment Street Stop Review Unit Review**

852.     CPD's 4th Amendment Street Stop Review Unit (or an equivalent internal CPD unit), under the authority of the Tactical Review and Evaluation Division (or an equivalent internal CPD unit), will serve as the designated unit within CPD tasked with conducting Department-level reviews of a representative sample of ISRs and Stop Reports, including a representative sample of those completed for the enforcement of the Loitering Ordinances.

853.     CPD will ensure that the 4th Amendment Street Stop Review Unit has sufficient resources to perform these review duties promptly, efficiently, and effectively, including staff with sufficient experience, rank, knowledge, and expertise.

854.     Beginning at the entry of this Stipulation, the 4th Amendment Street Stop Review Unit will perform the Department-level reviews, consistent with the requirements of Paragraph 857(a) through (d) of this Stipulation, of 5% of the backlog of ISR reviews maintained in the 4th Amendment Street Stop Review Unit for January 1, 2021 through the entry of this Stipulation.

855.     The backlog of ISR reviews consists of 15% of all ISRs completed during 2021 through the entry of this Stipulation that have been randomly selected.

856.     The 4th Amendment Street Stop Review Unit will create and submit to the Monitor and OAG a summary to report the demographic and geographic distribution of the

17

individuals subject to the investigatory stops and protective pat-downs reviewed as prescribed in Paragraph 854 of this Stipulation.

857. The 4th Amendment Street Stop Review Unit will perform regular Department-level reviews of a representative sample of ISRs and Stop Reports, including a representative sample of those completed for the enforcement of the Loitering Ordinances, submitted by CPD officers after the entry of this Stipulation, sufficient to reach relevant and reliable observations on:

    a.    Whether CPD officers completely and thoroughly reported all factors that established the reasonable articulable suspicion to justify the investigatory stop;

    b.    Whether CPD officers completely and thoroughly reported all factors that established the reasonable articulable suspicion to justify the protective pat down;

    c.    Whether CPD officers completely and thoroughly completed the report and complied with CPD policy; and

    d.    Whether supervisory review was timely, thorough, complete, objective, and consistent with CPD policies.

858. For the representative sample of ISRs and Stop Reports described in Paragraph 857 of this Stipulation, CPD must demonstrate that the subset of investigatory stops and protective pat-downs reviewed is demographically and geographically representative of community members stopped by CPD officers throughout Chicago.

859. CPD will recommend an involved officer(s) and their supervisor review the BWC footage for the identified investigatory stop or protective pat down conducted by the involved officer(s), after the involved officer has submitted five ISRs or Stop Reports within a 90-day period that have resulted in a recommendation for after-action support to resolve a lack of sufficient description of reasonable articulable suspicion.

860.     On a semi-annual basis, the 4th Amendment Street Stop Review Unit will report on the ISRs and Stop Reports reviewed beginning with the time period ending with December 31, 2023, including those completed for the enforcement of the Loitering Ordinances, and identify:

   a.   The total number of ISRs and Stop Reports reviewed by the 4th Amendment Street Stop Review Unit;

   b.   Any trends or patterns relating to investigatory stops, protective pat downs, and enforcement of the Loitering Ordinances identified through the 4th Amendment Street Stop Review Unit reviews;

   c.   The number of reports rejected by supervisors and categories of reason for rejection;

   d.   The number of officers who had multiple ISRs and Stop Reports rejected;

   e.   The number of officers who had multiple ISRs and Stop Reports rejected for a lack of sufficient description of reasonable articulable suspicion; and

   f.   Any equipment, training, or policy concerns, and to the extent necessary, recommendations regarding modifications to equipment, training, or policy as necessary to address those concerns.

861.     CPD will develop a timeline for implementation of the recommendations provided for in Paragraph 860(f) of this Stipulation and consult at the earliest feasible time with the Monitor and OAG, with the goal of developing consensus on the substance and timetable for the implementation of recommendations, subject to the processes provided for in Paragraph 627 of the Consent Decree for policies and Paragraph 641 of the Consent Decree for training.

## H.     Community Engagement

862.     CPD will establish and maintain clear channels through which community and Department members can provide input regarding CPD's investigatory stop policies and forms and propose revisions or additions to those policies and forms.

863.     In developing or revising policies and training referenced in this Stipulation, including those on investigatory stops, protective pat downs, and the enforcement of the Loitering

19

Ordinances, CPD will seek input from members of the community and community-based organizations with relevant knowledge and experience through community engagement efforts.

864.    CPD will regularly conduct a community engagement process through which community members, reflecting a broad cross section of the Chicago community the Department serves, can provide feedback on CPD's policy for investigatory stops, protective pat downs, and enforcement of the Loitering Ordinances. At a minimum CPD will conduct this community engagement process every two years and will consider the recommendations, in accordance with the terms set forth in Exhibit [A], during the biennial policy review process. A summary of CPD's policy review and community engagement efforts will be shared with the community organizations and community members that participated in the community engagement process.

865.    The Parties recognize that the City, ACLU-IL, and the ACLU Agreement Consultant have developed a promising model for thoughtful community engagement through the creation of a Request for Proposals which sought community organizations to co-design and lead a citywide process to engage individuals and stakeholders to develop recommendations regarding CPD's investigatory stop and protective pat down practices. Within 180 days of the release of these recommendations, the Monitor will publicly report on these recommendations and CPD's response, and will further make recommendations as to CPD's ability to adapt elements of this model for community engagement. CPD will consider the results of the Monitor's report in developing future community engagement processes.

866.    Investigatory stops, protective pat downs, and enforcement of the Loitering Ordinances will be included among the topics covered in the public awareness campaign provided for in Paragraph 28 of the Consent Decree.

## I.     Policy, Training, and Plan Review

867.     The Parties agree that the provisions in Paragraphs 627-633 of the Consent Decree apply to the policies and procedures, Paragraph 640 of the Consent Decree applies to the plans, and Paragraph 641 of the Consent Decree applies to the training described herein.

868.     Within 60 days of the entry of this Stipulation, CPD will submit the most recently developed draft versions of the CPD policies and reports related to investigatory stops, protective pat downs, and the enforcement of the Loitering Ordinances, in accordance with the terms set forth in Exhibit [A], to the Monitor and OAG for the review, comment, and, if necessary, objection process as provided for in Paragraphs 627-30 of the Consent Decree.

869.     After the review, comment, and, if necessary, objection process provided for in Paragraphs 627-30 of the Consent Decree, CPD will adopt and utilize an LDR in accordance with the terms set forth in Exhibit [A].

870.     After the review, comment, and, if necessary, objection process provided for in Paragraphs 627-30 of the Consent Decree, CPD will adopt and utilize a revised Stop Report and Stop Receipt, to replace the use of the ISR and the Investigatory Stop Receipt.

871.     The Parties further agree that CPD will submit any new or revised policies, procedures, and trainings regarding investigatory stops, protective pat downs, and the enforcement of the Loitering Ordinances to the Monitor and OAG for review, comment, and, if necessary, objection, consistent with the requirements of the Consent Decree.

872.     Every two years, CPD will conduct a comprehensive review of its investigatory stops policies to assess whether the policies meet the requirements of this Stipulation, incorporate best practices, address observed trends and practices, as necessary, and reflect developments in applicable law. CPD will regularly review and consider the community input received, including during this biennial policy review process.

### J.       Miscellaneous

873.       CPD will not permit the number of investigatory stops, protective pat downs, or enforcement of the Loitering Ordinances to be considered as part of any bonus, incentive, or promotional process for any CPD officer and will not implement any form of quota relating to the same.

874.       The Parties agree that the Implementation, Enforcement, and Monitoring provisions in Part XII of the Consent Decree apply to the requirements described herein, including those of the Coalition described in Paragraph 709 of the Consent Decree.

### K.       Community Input on this Stipulation

875.       The Parties agree that they will make a joint request to the Court for a Community Input Session on this Stipulation, to be held within 90 days of the submission of this Stipulation by the parties and to include an opportunity for community input and public testimony by individuals affected by this Stipulation.

### L.       Definitions

876.       Loitering Ordinances – the City of Chicago's Gang and Narcotics-Related Loitering Ordinances set forth in the Municipal Code of Chicago Section 8-4-015 "Gang Loitering" and Section 8-4-017 "Narcotics-Related Loitering."

877.       Patrol Field Units – the primary beat cars, rapid response cars, and watch specialty cars (squadrol, traffic car, and park car) assigned to watch field operations in District Law Enforcement; District tactical teams; and Community Safety Teams (or operationally equivalent units).

Respectfully submitted,

Kwame Raoul
Attorney General for the
**State of Illinois**

By:  /s/ Karyn L. Bass Ehler

Karyn L. Bass Ehler
Assistant Chief Deputy Attorney General
Karyn.BassEhler@ilag.gov
Amy Meek, Bureau Chief
Civil Rights Bureau
Amy.Meek@ilag.gov
Mary J. Grieb, Deputy Bureau Chief,
Civil Rights Bureau
Mary.Grieb@ilag.gov
Rebekah Newman,
Assistant Attorney General,
Special Litigation Bureau
Rebekah.Newman@ilag.gov
Office of the Illinois Attorney General
100 West Randolph Street
11th Floor
Chicago, Illinois 60601
(312) 814-5968

Christopher G. Wells
Chief, Public Interest Division
christopher.wells@ilag.gov
Office of the Illinois Attorney General
100 West Randolph Street
Chicago, IL 60601
(312) 814-3000

Mary B. Richardson-Lowry,
Acting Corporation Counsel for the
**City of Chicago**

By:  /s/ Allan T. Slagel

Allan T. Slagel
aslagel@taftlaw.com
Elizabeth E. Babbitt
ebabbitt@taftlaw.com
Paul J. Coogan
pcoogan@taftlaw.com
Anna Greve
agreve@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive
Suite 2600
Chicago, Illinois 60601
(312) 527-4000

Jennifer Bagby
Jennifer.Bagby@cityofchicago.com
Deputy Corporation Counsel
City of Chicago Department of Law
Public Safety Reform Division
121 North LaSalle Street
Room 600
Chicago, Illinois 60602
(312) 742-6408

SO ORDERED this _____, day of June, 2023.

_____
REBECCA R. PALLMEYER
United States District Judge
Northern District of Illinois

127696853v1

23

# EXHIBIT A

**AGREEMENT ON AMENDMENT TO**
**GANG- AND NARCOTICS-RELATED LOITERING ENFORCEMENT**

I.    <u>First Contact – Initial Dispersal Order</u>. Upon observation of the initial instance of person(s) engaged in prohibited loitering, the officer will issue an initial dispersal order to those person(s) pursuant to MCC 8-4-015(a) (gang loitering) or MCC 8-4-17(a) (narcotics loitering). The officer will not conduct a stop or complete an Investigatory Stop Report, or whatever similar form of documentation CPD may implement,  ("ISR") of the person(s) in order to issue the dispersal order, except upon such circumstances in which a separate and distinct basis exists for reasonable articulable suspicion or probable cause for the stop and completion of an ISR.

CPD will create a new document to record the initial dispersal order ("Gang/Narcotics-Related Loitering Dispersal"). The Gang/Narcotics-Related Loitering Dispersal will contain sections to document the basis for the initial dispersal order, a description of the person(s) being dispersed, including names – only if known without conducting an investigatory stop – and physical descriptions, and the time and place of the initial dispersal. This information will be reported in a mandatory field. The initial dispersal will be further documented with an event number generated by OEMC.

A.    <u>First Contact – Refusal to Disperse</u>. A refusal to promptly obey the initial dispersal order will subject the person(s) to arrest pursuant to MCC 8-4-015(e) (gang loitering) or MCC 8-4-17(d) (narcotics loitering).

II.   <u>Subsequent Contact</u>. In the event that the officer from the first contact, or a different officer, arrives in the dispersal area and observes a person(s) fitting the description of a person(s) previously documented as being dispersed for gang or narcotics-related loitering engaging in prohibited loitering in the location from which they were dispersed, the officer may take the following actions, as applicable:

A.    <u>Probable Cause to Arrest</u>. The officer may arrest the person(s) at the Second Contact if the officer is able to establish probable cause to arrest for prohibited loitering following the initial dispersal based on the officer's knowledge, observations, and the Gang/Narcotics-Related Loitering Dispersal, pursuant to MCC 8-4-015(e) (gang loitering) or MCC 8-4-17(d) (narcotics loitering). Under this scenario, the officer shall prepare both an ISR and an arrest report.

B.    <u>Where Probable Cause To Arrest Is Not Established.</u> The officer can rely on his or her knowledge, observations, and the Gang/Narcotics-Related Loitering Dispersal as reasonable articulable suspicion to conduct an investigatory stop.  Where the officer determines the person(s) was not previously dispersed from that location, the officer will issue a dispersal order to those person(s) pursuant to MCC 8-4-015(a) (gang loitering) or MCC 8-4-17(a) (narcotics loitering). The officer will complete an ISR identifying the person(s) who are being dispersed. This dispersal order will be further documented with an event number generated by OEMC.  A refusal to promptly obey the second dispersal order will subject the person(s) to

arrest pursuant to MCC 8-4-015(e) (gang loitering) or MCC 8-4-17(d) (narcotics loitering). Under this scenario, the officer shall prepare both an ISR and an arrest report.

1.  <u>Subsequent Contact – Enforcement</u>. An officer who observes prohibited loitering by person(s) identified in the ISR prepared for prohibited loitering will take appropriate enforcement action pursuant to MCC 8-4-015(e) (gang loitering) or MCC 8-4-17(d) (narcotics loitering).  Under this scenario, the officer shall prepare both an ISR and an arrest report.