**Law Office of the**
**COOK COUNTY PUBLIC DEFENDER**

69 W Washington, Suite 1600, Chicago, IL 60602 • (312) 603-0600
Sharone R. Mitchell, Jr. • Public Defender

FILED
8/11/2023
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

August 11, 2023

Clerk of Court
United States District Court for the Northern District of Illinois
Everett McKinley Dirksen Federal Building
219 South Dearborn Street, 20th Floor Chicago, IL 60604

Re: State of Illinois vs. City of Chicago, Case No. 17-cv-6260

As the leader of the Law Office of the Cook County Public Defender, I want to thank the Court for the opportunity to offer comments on a topic that impacts a majority of our clients. The Public Defender's Office has a staff of more than 650 providing representation to the overwhelming majority of people charged with crimes in Cook County. Each year, we are appointed to represent accused people in over 70,000 cases.

It is undisputed that the Chicago Police Department has historically used investigatory stops, pat downs, and loitering ordinances in a disproportionate and even violent manner, particularly against Black, Latinx, and poor constituents. The practice of stop and frisk is not only a violation of the constitutional rights of Chicagoans, it is also often the gateway to criminal charges that can inflict a lifetime of consequences on the individuals targeted. While we appreciate the intent of the new Stipulation to address these abhorrent practices, we want to also address shortcomings regarding the process for developing the stop and frisk amendment and, as a result, its substance.

Addressing CPD's practice of unconstitutional stops and frisks in violation of the United States Constitution and the laws of the State of Illinois is obviously important and necessary. Negotiations without the community organizations who led for the call for the consent decree, however, risks creating remedies that look more like perpetuation of the status quo than meaningful reform.

Allegations by both the *Smith* plaintiffs and the ACLU Settlement highlight CPD's longstanding and common practice of unconstitutional stop and frisk. We know this practice disproportionately impacts communities of color and Black and Latinx communities in particular. Time and time again, our clients recount testimonies of violent interactions with police while simply existing in their neighborhoods. These interactions all too often result in life-altering criminal prosecution and records that have grave implications for the emotional, professional, and societal experiences of Black, Latinx, and poor people across Chicago. In fact, this is what led to the settlement agreement between the City of Chicago and the ACLU, which was designed to decrease the overall number of investigatory stops and decrease the racial disparities in stops.

Since 2015, there has been an enormous surge in traffic stops. Four years after the ACLU settlement, annual traffic stops rose almost seven times, to almost 600,000. The number remained



high even during the COVID-19 pandemic when there were not as many drivers on the road. Despite the move away from the stop and frisk of pedestrians, our clients and public defenders can confirm that CPD has effectively continued the practice by instead conducting pretextual traffic stops. Just like stop and frisk, pretextual traffic stops, under the guise of community safety efforts, overwhelmingly impact Black and Latinx people. CPD officers are in some cases sitting around in poor neighborhoods waiting for Black and Latinx drivers to commit minor traffic violations and in other instances outright fabricating violations just to pull these drivers over. CPD officers then use these interactions as justification to search clients' vehicles for weapons. These are not instances where someone has reported a threat, or an alleged gun has been brandished or fired. And yet, our clients are being arrested and charged with felonies for possession of a gun without the proper paperwork. Almost a quarter of the felony cases assigned to our office are simple gun possession cases like these.

The Stipulation specifically prohibits CPD from stopping people based on the smell of cannabis, which presumably is based on the change in cannabis laws. However, it does not do the same as it relates to the change in gun possession laws. New case law tells us that mere possession of a gun alone is not probable cause and possession of a gun is a presumption of innocence and is constitutional. Furthermore, a bulge or L-shaped bulge is not enough for a stop. Ultimately, the racist pattern of selective enforcement targets communities that already feel unsafe, adding the threat of incarceration on top of the threat of community violence.

This demonstrated shift in Chicago Police practice from one form of harm to another is why it is critical to include community members and advocates in the discussion of the Consent Decree's expansion to stop and frisk. It is critical to make this expansion in a meaningful way and not after the parties have become beholden to the provisions already agreed to in negotiations outside of the people who will actually be impacted. The Stipulation is a step backward because it ultimately weakens the oversight and legal protections previously won in the *Smith* settlement.

Our office, therefore, implores the Court, Independent Monitor, City, and Attorney General's Office to expand the negotiation table to include representatives of the community organizations behind this effort and to amend the Stipulation in response to their feedback. It is imperative that the policies on investigatory stops are strengthened – not weakened.

Sincerely,

*[signature]*

Sharone R. Mitchell, Jr.
Public Defender
Cook County