UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STATE OF ILLINOIS, <br><br>         Plaintiff, <br><br>   v. <br><br> CITY OF CHICAGO, <br><br>         Defendant. | Case No. 17-cv-6260 |

**UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT FOR A FINDING OF PSIG AND OIG'S SUSTAINED FULL AND EFFECTIVE COMPLIANCE OF MATERIAL REQUIREMENTS OF THE CONSENT DECREE**

  The Consent Decree entered into by the City of Chicago ("City") and the State of Illinois delineates multiple requirements related to public safety reform across multiple City entities. Once the City achieves full and effective compliance with Consent Decree requirements, it may: (1) request from the Court a judicial finding of full and effective compliance for those requirements; and (2) after either one or two years (depending on the subject matter of the requirement), move the Court for a finding that the City has maintained full and effective compliance and those requirements can be terminated from the City's obligations under the Consent Decree. (Dkt. 703-1 at ¶¶ 714–16.)

  The City here moves the Court for a finding that the Office of the Inspector General ("OIG") and the Deputy Inspector General for Public Safety ("PSIG") have maintained full and effective compliance with the material requirements of ¶¶ 440(b), 444, 481, 522, 523, 537, 556, 557, 558, 559, 561, 562, 563, and 565 of the Consent Decree for the required two-year time period and that those requirements as to OIG and PSIG thus be terminated from the City's obligations under the Consent Decree. This request is based on Independent Monitoring Team ("IMT") reports finding that OIG and PSIG have been in full and effective compliance with these paragraphs for the required two years.

## BACKGROUND

On August 29, 2017, the State of Illinois filed a complaint against the City alleging that CPD engages in unconstitutional practices. (Dkt. 1.) The City has not admitted liability. But to avoid extensive litigation, and in the interest of ensuring that the City provides effective and constitutional public safety to its residents, the City and the State of Illinois agreed to enter into a Consent Decree in lieu of litigating the complaint further. (Dkt. 703-1.) The Consent Decree details hundreds of requirements for public safety reform across various topic areas. The Consent Decree contains requirements for the City and several of its agencies including the Office of the Inspector General. The Consent Decree is overseen by the Independent Monitor who, together with her team, assesses and reports on whether the City is implementing the requirements of the Consent Decree. (Dkt. 703-1 at ¶ 610.) These requirements are delineated numerically in the Consent Decree by numbered paragraphs, and the Monitor's report assesses the City's progress on a paragraph-by-paragraph basis.

## LEGAL STANDARD

"A consent decree is a court order that embodies the terms agreed upon by the parties as a compromise to litigation" and, "[f]or purposes of construction . . . is essentially a contract." *United States v. Alshabkhoun*, 277 F.3d 930, 934 (7th Cir. 2002). This means that "[a] court interprets the meaning of a consent decree in the same way it interprets the meaning of a contract." *Bailey v. Roob*, 567 F.3d 930, 940 (7th Cir. 2009). Where Illinois state contract law applies to a Consent Decree, the Court's "'primary objective'" in construing the decree must be "'to give effect to the intent of the parties.'" *Holmes v. Godinez*, 991 F.3d 775, 780 (7th Cir. 2021) (quoting *Peoples Gas Light & Coke Co. v. Beazer E., Inc.*, 802 F.3d 876, 881 (7th Cir. 2015)). To do so, the Court "'must first look to the language of the contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent.'" *Id.*

To determine whether the City has completed all or a portion of its obligations under the Consent Decree, the Consent Decree provides for a two-step process. First, upon request by the City, the Court will determine whether the City "is in full and effective compliance regarding any of the material requirements under the Agreement." (Dkt. 703-1 at ¶¶ 714–16.) The City must demonstrate by a preponderance of the evidence that it has achieved full and effective compliance. (Dkt. 703-1 at ¶ 720.) "The Court's determination of full and effective compliance will start the relevant one- or two- year compliance periods," depending on the subject matter of the requirement. (Dkt. 703-1 at ¶ 715.)

Thereafter, once the relevant one- or two-year period has passed, the City may request that the Court determine that the City has maintained full and effective compliance for the relevant period (one or two years, dependent on the subject matter). (Dkt. 703-1 at ¶¶ 714–16.) If the Court so finds, then the City has met its obligations under the Consent Decree as to that requirement and the Monitor will no longer review or assess the requirement. (Dkt. 703-1 at ¶¶ 714–716.) However, at "any time prior to the full termination" of the Consent Decree, the Court "may reinstate previously terminated requirements upon a showing that compliance with such requirements has materially lapsed." (Dkt. 703-1 at ¶ 716.)

Per the Consent Decree, full and effective compliance "means sustained compliance with all material requirements of this Agreement. No specific numerical threshold will be required to demonstrate full and effective compliance. Non-compliance with mere technicalities, or temporary or isolated failure will not constitute failure to achieve full and effective compliance." (Dkt. 703-1 at ¶¶ 717.)

## ARGUMENT

The City moves here for a determination by the Court that, for the required two-year maintenance period, OIG and PSIG have maintained full and effective compliance with ¶¶ 440(b), 444, 481, 522, 523, 537, 556, 557, 558, 559, 561, 562, 563, and 565 of the Consent Decree.

On October 8, 2021, IMT published its Fourth Monitoring Report, which found that OIG and PSIG were in full and effective compliance with the above Consent Decree requirements. (*See* IMR4, Dkt. 978.) On February 11, 2022, the City filed an Unopposed Motion in Support of a Finding of Full and Effective Compliance for OIG and PSIG. (OIG and PSIG Motion, Dkt. 995.) On February 16, 2022, the Court granted the City's motion and began the two-year sustainment period as of the date of its order. (Docket Entry, Dkt. 997.)

On March 25, 2022, the City and the Office of the Illinois Attorney General ("OAG") jointly submitted a Stipulation concerning, among other provisions, the effective dates regarding findings of the City's full compliance with portions of the Consent Decree. (Stipulation, Dkt. 1009 at PageID 15267–68.) Specifically, the City and OAG agreed that "the Court may accept the IMT's determination that the City has met 'Full compliance' in a semiannual report and may retroactively start the relevant one- or two-year compliance period at the date the IMT filed the corresponding semiannual report." (*Id.* at PageID, 15267–68.) After a hearing on the motion, the Court approved the stipulation in its entirety. (Signed Stipulation, Dkt. 1011.) On April 13, 2022, the City filed an Unopposed Motion to Reset Initial Compliance Date for OIG and PSIG to October 8, 2021. (Dkt. 1021.) The Court granted the motion. (Order, Dkt. 1028.)

As noted below, in its report for the eighth monitoring period, IMT has found that OIG and PSIG have maintained full and effective compliance with these paragraphs. The City has thus demonstrated by a preponderance of the evidence that OIG and PSIG have achieved full and effective compliance with the above-referenced paragraphs for the requisite time period. These

paragraph requirements are discrete and apply only to specific entities. They are therefore severable from the Consent Decree without impeding the Monitor's ability to assess the compliance of other City entities with these or other paragraphs.[1]

Terminating these requirements with respect to OIG and PSIG is appropriate in light of the unique oversight role of these entities. To the extent that the Consent Decree paragraphs identified in this motion also impose requirements on City entities other than OIG and PSIG (i.e., ¶¶ 440(b), 444, 481, 522, 523, 537, and 565), the City is not seeking to terminate these requirements as to those other entities.

IMT found OIG and PSIG remained in full compliance for ¶¶ 440(b), 444, 481, 522, 523, 537, 556, 557, 558, 559, 561, 562, 563, and 565 in its Eighth Independent Monitoring Report ("IMR8"). All paragraphs at issue in this motion fall within portions of the Consent Decree requiring a two-year maintenance period. (Dkt. 703-1 at ¶¶ 714-715). As OIG and PSIG have maintained full compliance with all paragraphs for the two-year maintenance period, the City requests that those requirements as to OIG and PSIG be terminated from the City's obligations under the Consent Decree. (Dkt. 703-1 at ¶¶ 714–16.)

I.     Paragraph 440(b)

Consent Decree ¶ 440(b) provides that:

*The City, CPD, and COPA will ensure that all non-confidential complaints are processed by COPA as follows … all complaints of alleged misconduct submitted to the anonymous reporting website and all non-confidential complaints of alleged misconduct received by the OIG will be submitted to COPA by the end of the next business day after the complaint was received…*

---

[1] "To terminate a portion of the Agreement, the Court must find that the portion of the Agreement is sufficiently severable from the other requirements of the Agreement such that partial termination would not impede the Monitor's ability to assess the City's compliance with other requirements of this Agreement." (Dkt. 703-1 at ¶ 719.)

IMR8 specifies that OIG has been in full compliance with this paragraph since the fourth reporting period. (*See* Exhibit A, Accountability and Transparency Compliance Assessment, by Paragraph, ¶ 440(b) at p. 58.) To show its continued compliance with this paragraph for IMR8, OIG "provided a memorandum detailing its compliance with the requirements of ¶ 440(b), explaining current relevant information and historical information for context." (*Id.* at ¶ 440(b), p. 62.) As IMT concluded, OIG "maintained Full compliance with ¶ 440 and completed its two-year Sustainment Period for this paragraph." (*Id.* at ¶ 440(b), p. 63.)

II.  Paragraph 444

Consent Decree ¶ 444 provides that:

*Within ten days of the final disciplinary decision of each complaint of sexual misconduct against a CPD member alleging conduct against a non-CPD member, the City will provide the Deputy PSIG with the complete administrative investigative file, subject to applicable law. The Deputy PSIG will review and analyze each administrative investigative file and, on an annual basis, the Deputy PSIG will publish a report: a. assessing the quality of the sexual misconduct administrative investigations reviewed; b. recommending changes in policies and practices to better pre-vent, detect, or investigate sexual misconduct; and c. providing aggregate data on the administrative investigations reviewed, including: i. the volume and nature of allegations investigated, broken down by investigating agency; ii. The percentage of investigations referred to the Cook County State's Attorney's Office ("CCSAO") for criminal review; iii. The percentage of investigations criminally prosecuted; iv. The percentage of investigations closed after the preliminary investigation; v. the percentage of investigations closed for lack of a signed complainant affidavit; and vi. The investigative findings and recommendations, including a summary breakdown of discipline recommended for investigations with sustained findings.*

IMR8 specifies that PSIG has been in full compliance with this paragraph since the fourth reporting period. (*Id.* at ¶ 444, p. 74.) To show its continued compliance with this paragraph for IMR8, PSIG "provided its *Report on Investigations of Sexual Misconduct Allegations Against CPD Member*" which "provides specific information on each case the Deputy PSIG reviewed, including the allegation, the disposition, and any discipline determined as a result of the investigation, among other information." (*Id.* at ¶ 444, p. 78.) As IMT concluded, PSIG

"maintained Full compliance with ¶ 444 and completed its two-year Sustainment Period for this paragraph." (*Id.* at ¶ 444, p. 78.)

    III.    <u>Paragraph 481</u>

Consent Decree ¶ 481 provides that:

*The City, CPD, and COPA will ensure that if CPD, COPA, or the OIG requests the Superintendent's authorization to open an investigation concerning incidents that allegedly occurred more than five years before the date that COPA, CPD, or the OIG be-came aware of the allegations, the Superintendent will respond within 30 days.*

IMR8 specifies that OIG has been in full compliance with this paragraph since the fourth reporting period. (*Id.* at ¶ 481, p. 77.) To show its continued compliance with this paragraph for IMR8, OIG provided "memoranda noting that their office made one request to the Superintendent in the previous reporting period to open an investigation which allegedly occurred more than five years before that date. The Superintendent's response was received within 30 days as required by ¶ 481." (*Id.* at ¶ 481, p. 79.) As IMT concluded, OIG "maintained Full compliance, completing the Deputy PSIG's two-year Sustainment Period for this paragraph." (*Id.* at ¶ 481, p. 79.)

    IV.    <u>Paragraph 522</u>

Consent Decree ¶ 522 provides that:

*Within 365 days of the Effective Date, COPA, the Deputy PSIG, and BIA will create separate staffing and equipment-needs plans. Such plans will include analyses setting forth the basis for the plans' staffing requirements and equipment needs assessments. CPD will implement the staffing and equipment-needs plans in accordance with the specified timeline for implementation.*

IMR8 specifies that PSIG has been in full compliance with this paragraph since the fourth reporting period. (*Id.* at ¶ 522, p. 89.) To initially reach compliance, PSIG provided its *Staffing and Equipment Needs Assessment* and *OIG Budget Request FY2021*. (*Id.* at ¶ 522, p. 90.) As IMT explained "Given the one-time nature of this paragraph, these entities have since remained in Full compliance." (*Id.* at ¶ 522, p. 91.)

7

V. Paragraph 523

Consent Decree ¶ 523 provides that:

*On an annual basis, COPA, the Deputy PSIG, and BIA will review and revise, if needed, each entity's respective staffing and equipment-needs plans.*

IMR8 specifies that PSIG has been in full compliance with this paragraph since the fourth reporting period. (*Id.* at ¶ 523, p. 93.) To show compliance here, PSIG "submitted staffing and equipment-needs plans." (*Id.* at ¶ 523, p. 94.) IMT noted, "PSIG continues to provide detailed information, often with more detail than the Consent Decree requires." (*Id.*) As IMT concluded, PSIG "maintained Full compliance with ¶ 523." (*Id.* at ¶ 523, p. 96.)

VI. Paragraph 537

Consent Decree ¶ 537 provides that:

*All regular meetings convened by the Police Board that are open to the public will be attended by the CPD Superintendent or his or her designee; the Chief Administrator of COPA or his or her designee; the Deputy PSIG or his or her designee; and the Chief of BIA or his or her designee.*

IMR8 specifies that PSIG has been in full compliance with this paragraph since the fourth reporting period. (*Id.* at ¶ 537, p. 12.) In the fourth reporting period "IMT attended public Police Board meetings virtually. Each meeting was attended by … the Deputy PSIG or designee…. In fact, in very few meetings were the respective heads not personally in attendance." (*Id.*) IMT further "acknowledged PSIG for its additional efforts ensuring compliance" as "The Office of Inspector General *Public Safety Section Policies Manual* includes a policy that ensure attendance of the PSIG at the Police Board meetings." (*Id.*) As IMT concluded, "the City [including PSIG] maintained Full compliance with ¶ 537." (Id. at ¶ 537, p. 13.)

VII. Paragraph 556

Consent Decree ¶ 556 provides that:

8

> *The Deputy PSIG will conduct periodic analysis and evaluations, and perform audits and reviews as authorized by Municipal Code of Chicago § 2-56-230.*

IMR8 specifies that PSIG has been in full compliance with this paragraph since the fourth reporting period. (*Id.* at ¶ 556, p. 69.) To show its continued compliance with this paragraph for IMR8, PSIG "conducted a number of evaluations required by ¶ 556 and published reports responsive to Municipal Code of Chicago § 2-56-23." (*Id.* at ¶ 556, p. 70.) As IMT concluded, PSIG "maintained Full compliance with ¶ 556 and completed its two-year Sustainment Period for this paragraph." (*Id.*)

    VIII.    <u>Paragraph 557</u>

Consent Decree ¶ 557 provides that:

> *The Deputy PSIG's audits and reviews will be conducted pursuant to the Association of Inspectors General Principles and Standards for Offices of Inspector General.*

IMR8 specifies that PSIG has been in full compliance with this paragraph since the fourth reporting period. (*Id.* at ¶ 557, p. 72.) To show its continued compliance with this paragraph for IMR8, PSIG "submitted a memorandum that included evidence that it continues to conduct audits and reviews according to the Green Book standards." (*Id.* at ¶ 557, p. 73.) As IMT concluded, PSIG "maintained Full compliance with ¶ 557 and completed the two-year Sustainment Period for this paragraph." (*Id.* at ¶ 557, p. 74.)

    IX.    <u>Paragraph 558</u>

Consent Decree ¶ 558 provides that:

> *Within 60 days of the Effective Date, the Deputy PSIG will develop policies for regularly, and at least annually, conducting data-driven reviews and audits to measure the effectiveness of the City and CPD's accountability practices. These reviews and audits will be designed to measure whether members of the community can readily make a complaint alleging misconduct and whether such complaints are investigated and adjudicated consistently with CPD policy, this Agreement, and the law. Re-views and audits will include: a. analysis of the number of com-plaints received, the disposition of complaints by complaint type, the timeliness and*

9

*average length of administrative investigations, and disciplinary actions taken; b. analysis of complaint trends; c. analysis of CPD's enforcement of its Rule 14, Rule 21, and Rule 22; d. analysis of the thoroughness of administrative investigations, and of the justifications for terminating investigations before the investigative findings and recommendations; e. analysis of disciplinary grievance procedures and outcomes; and f. analysis of complainant-involved mediation.*

IMR8 specifies that PSIG has been in full compliance with this paragraph since the fourth reporting period. (*Id.* at ¶ 558, p. 75.) To show its continued compliance with this paragraph for IMR8, PSIG "produced its 2022 Annual Report. As in past years and reporting periods, the Annual Report is comprehensive and provides details regarding the work the PSIG conducted in the prior year." (*Id.* at ¶ 558, p. 77.) As IMT concluded, PSIG "maintained Full compliance with ¶ 558 and completed the two-year Sustainment Period for this paragraph." (*Id.* at ¶ 558, p. 78.)

X. Paragraph 559

Consent Decree ¶ 559 provides that:

*The Deputy PSIG will conduct reviews of individual closed COPA and CPD administrative investigative files for thoroughness, fairness, and objectivity, and will make recommendations based on those reviews, including the recommendation that an investigation be reopened upon a finding of a deficiency that materially affects the outcome of the investigation.*

IMR8 specifies that PSIG has been in full compliance with this paragraph since the fourth reporting period. (*Id.* at ¶ 559, p. 79.) To show its continued compliance with this paragraph for IMR8, PSIG "produced a memorandum explaining that, in the Fourth Quarter of 2022 and the First Quarter of 2023, it screened a total of 542 closed cases from BIA and COPA. Of those cases, the Deputy PSIG opened 34 cases for further investigation, as is the Deputy PSIG's normal practice." (*Id.* at ¶ 559, p. 81.) As IMT concluded, PSIG "maintained Full compliance with ¶ 559 and completed the two-year Sustainment Period for this paragraph." (*Id.*)

XI. Paragraph 561

Consent Decree ¶ 561 provides that:

> *The Deputy PSIG will hire a full-time staff member responsible for diversity and inclusion issues, who will have specific authority to review CPD actions for potential bias, including racial bias, on any matter within the Deputy PSIG's statutory authority. The Deputy PSIG will regularly publish reports on diversity and inclusion issues, no less frequently than on an annual basis, which will contain findings and analysis.*

IMR8 specifies that PSIG has been in full compliance with this paragraph since the fourth reporting period. (*Id.* at ¶ 561, p. 85.) To show its continued compliance with this paragraph for IMR8, PSIG "produced a memorandum that set forth the following on-going projects with which the DEI Director was involved." (*Id.* at ¶ 561, p. 87.) As IMT concluded, PSIG "maintained Full compliance with ¶ 561 and completed the two-year Sustainment Period for this paragraph." (*Id.*)

    XII.    <u>Paragraph 562</u>

Consent Decree ¶ 562 provides that:

> *The Deputy PSIG will provide all staff members with comprehensive initial onboarding training and annual in-service training. The Deputy PSIG will create initial and in-service training plans and submit these plans to the Monitor and OAG for re-view and comment.*

IMR8 specifies that PSIG has been in full compliance with this paragraph since the fourth reporting period. (*Id.* at ¶ 562, p. 88.) To show its continued compliance with this paragraph for IMR8, PSIG "provided its PSIG Orientation Training to new employees and conducted several in-service training sessions for employees, including *Report Writing*, *Working with Data*, *Statistics*, *Intro to City Government*, and *Fourth Amendment* Trainings." (*Id.* at ¶ 562, p. 89.) IMT specifically "commend[ed] the Deputy PSIG for its continued involvement in training and continuing education." (*Id.*) As IMT concluded, PSIG "maintained Full compliance with ¶ 562 and completed its two-year Sustainment Period for this paragraph." (*Id.* at ¶ 562, p. 90.)

    XIII.    <u>Paragraph 563</u>

Consent Decree ¶ 563 provides that:

11

> *At least 60 days prior to publishing its annual audit plan, the Deputy PSIG will provide the Monitor with a draft of its audit plan for review and comment.*

IMR8 specifies that PSIG has been in full compliance with this paragraph since the third reporting period. (*Id.* at ¶ 563, p. 91.) For IMR8, IMT explained "Because the Deputy PSIG published its annual audit plan in the seventh reporting period and satisfied the requirements of ¶ 563 at that time, the Deputy PSIG did not have additional materials to submit for ¶ 563 this reporting period. As in the past, we expect that the Deputy PSIG will continue to produce an audit plan on an annual basis. We anticipate that the Deputy PSIG's next annual audit plan will be published in the next reporting period, after the Deputy PSIG's Sustainment Period for this paragraph has concluded." (*Id.* at ¶ 563, p. 92.) As IMT concluded, PSIG "maintained Full compliance with ¶ 563 and completed its two-year Sustainment Period for this paragraph." (*Id.*)

XIV. Paragraph 565

Consent Decree ¶ 565 provides that:

> *At least quarterly, COPA, the Deputy PSIG, and the President of the Police Board, or his or her designee, will meet to confer and share information regarding trends and analyses of data relating to CPD. They will jointly or separately provide any resulting recommendations for changes in CPD policy or rules, in writing, to the Superintendent. Thereafter: a. the Superintendent will respond to any such recommendation within 60 days of receipt; b. the Superintendent's response will include a description of the actions that the Superintendent has taken or plans to take with respect to the issues raised in the recommendations; and c. all policy recommendations and responses to the same will be published on a City website.*

IMR8 specifies that PSIG has been in full compliance with this paragraph since the fourth reporting period. (*Id.* at ¶ 565, p. 97.) To show its continued compliance with this paragraph for IMR8, "the Police Board provided the IMT with documentation from the Police Board President and minutes of the Police Board's quarterly meetings from December 6, 2022 to March 3, 2023. These meeting minutes show that COPA, the Deputy PSIG, the Police Board, and now the Community Commission for Public Safety and Accountability (CCPSA) executive continue to

meet on a regular basis and have substantive discussions about their agencies' work, both within and beyond the scope of the Consent Decree." (*Id.* at ¶ 565, p. 98.) As IMT concluded, PSIG "maintained Full compliance with ¶ 565 in the eighth reporting period and completed the two-year Sustainment Period for this paragraph." (*Id.*)

## CONCLUSION

OIG and PSIG have maintained full compliance with all material requirements under ¶¶ 440(b), 444, 481, 522, 523, 537, 556, 557, 558, 559, 561, 562, 563, and 565 of the Consent Decree and that compliance has been sustained for the required two-year time period. For the reasons discussed above, the City requests the Court find that those requirements with respect to OIG and PSIG can be terminated from the City's obligations under the Consent Decree and grant such other and further relief as necessary.

Dated: December 5, 2023

Respectfully submitted,

**CITY OF CHICAGO**

By: /s/ Anna M. Greve
One of Its Attorneys

Jennifer Bagby
Jennifer.bagby@cityofchicago.com
Deputy Corporation Counsel
City of Chicago Department of Law
Public Safety Reform Division
121 North LaSalle Street, Room 600
Chicago, Illinois 60602
(312) 742-6408

Allan T. Slagel
aslagel@taftlaw.com
Elizabeth E. Babbitt
ebabbitt@taftlaw.com
Paul J. Coogan
pcoogan@taftlaw.com
Anna Greve
agreve@taftlaw.com
Special Assistant Corporation Counsels
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive
Suite 2600
Chicago, Illinois 60601
Telephone: (312) 527–4000

130045169v1

13