UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| STATE OF ILLINOIS,<br><br>      Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO,<br><br>      Defendant. | Case No. 17 CV 06260<br><br>Honorable Rebecca R. Pallmeyer |

## JOINT STATUS REPORT

The State of Illinois (State), Plaintiff, and City of Chicago (City), Defendant, file this Joint Status Report to provide relevant updates on topics discussed during the status hearings before this Court on November 16 and December 14, 2023 and January 9 and February 13, 2024 concerning selected topics and progress on the Consent Decree:

1. **Accountability & Transparency**. The Chicago Police Department's (CPD) Bureau of Internal Affairs has continued to develop training materials toward secondary compliance and anticipates hiring additional personnel, including civilian investigators, over the next few months.

2. **Decision of Arbitrator Edwin Benn**. On October 19, 2023, Edwin Benn, the neutral arbitrator overseeing an interest arbitration between the City and Fraternal Order of Police Lodge 7 (FOP) issued a final award in favor of the FOP, ruling that Illinois law required the City to allow FOP members to seek arbitration of disciplinary grievances, including for separation recommendations, in lieu of proceedings before the Chicago Police Board. On February 15, 2024, the Chicago City Council rejected Benn's award. The issue is now in litigation between the City and the FOP in the Circuit Court of

      Cook County, Chancery Division, where it is pending before Judge Michael Mullen.

3. **CPD's Body-worn Camera Policy**. On January 22, 2024, the State filed a request for the Court to resolve a dispute pursuant to Consent Decree paragraph 630 regarding a provision of CPD's Body-worn Camera Policy which requires officers to deactivate their body-worn cameras prior to providing an oral response to the public safety investigation after an officer-involved shooting. The City filed its response on February 16 and the State filed a reply on March 1, 2024.

4. **Search Warrant Policies and Practices**. The City, State, and the Coalition have submitted position statements to the Court for resolution on several components of CPD's Search Warrant policies.

5. **CPD Tactical Review and Evaluation Division (TRED)**. TRED has made significant progress on reducing the backlog of its reviews of use of force incidents and pointing incidents. The backlog was 5,644 on November 28, 2023, and decreased to 3,084 on March 1, 2024. TRED currently has 45 officers, which is down from the 54 officers it had in February 2023, but recently hired four part-time civilian contractors.

6. **Officer Wellness**. As for staffing, a Notice of Job Opportunity for four additional police mental health clinicians has recently closed and candidates are now being evaluated. Regarding data in this area, the Professional Counseling Division (PCD) will adjust the manner in which it provides the data it does have to the IMT and OAG, and otherwise understands the need for additional data to continue its progress. The PCD continues to provide a broad scope of important and impactful services to its members, including but not limited to one-on-one counseling. In response to the Court's question at the February 13, 2024, hearing concerning the breakdown of the groups receiving

service from the PCD for the period reporting on (August 12 to December 29, 2023) were as follows: Sworn Members: 3,665; Civilians: 213; Retirees: 271; Family Members: 1,236; and Children (Under 18): 385. Please note these amounts may include repeat counts for individuals who received multiple services, potentially increasing the unique individual service numbers.

7. **2024 Training**. CPD is in the process of delivering its 2024 Annual In-Service Training, which consists of over 40 hours of in-person instruction and is heavily focused on preparing officers for the Democratic National Convention in August 2024.

8. **Investigatory Stops**. CPD is working to revise its policies and forms relating to investigatory stops, protective pat downs, and enforcement of Chicago's loitering ordinances, in response to written and oral feedback provided by IMT and OAG. The City, State, and IMT continue to meet monthly to discuss the status of implementation.

Dated: March 8, 2024                                    Respectfully submitted,

On behalf of the State of Illinois                      KWAME RAOUL
                                                        Attorney General for the State of Illinois

                                                        *By: s/Mary J. Grieb*
                                                        Mary J. Grieb
                                                        *Deputy Chief, Civil Rights Bureau*
                                                        Christopher G. Wells
                                                        *Chief, Public Interest Division*
                                                        Karyn L. Bass Ehler
                                                        *Assistant Chief Deputy Attorney General*
                                                        Office of the Illinois Attorney General
                                                        115 S. LaSalle St.
                                                        Chicago, IL 60603

On behalf of the City of Chicago:                       */s/ Jennifer K. Bagby*
                                                        Jennifer K. Bagby
                                                        Deputy Corporation Counsel
                                                        City of Chicago Department of Law