June 12, 2024

Clerk of Court
United States District Court
Everett McKinley Dirksen Federal Building
219 South Dearborn Street, 20th Floor
Chicago, IL 60604
Re: State of Illinois vs. City of Chicago, Case No. 17-cv-6260



Dear Chief Judge Pallmeyer,

We write to you today as a group of Alderpeople who are concerned about the Chicago Police Department's (CPD) use of traffic stops and who would like to see the Community Commission for Public Safety & Accountability (the Commission or CCPSA) be given an opportunity to fulfill its duty and develop a policy to reform traffic stops in our city.

Since 2015, CPD has increased its use of traffic stops. We know that traffic stops disproportionately impact our Black and Latine residents. In 2023, 51.2% of traffic stops were against Black drivers, despite Black residents making up less than 30% of the cities population. The use of traffic stops can further erode trust between CPD and our residents. Traffic stops as a policing strategy also do not address the traffic violence in our wards- in 2023, 70% of all traffic stops made by CPD were in response to improper or expired registration plates and headlight, taillight, and license plate offenses whereas 0.7% of stops were made for speeding.

Advocacy organizations, community members, journalists, public officials, and more have raised alarms about these stops being racially disparate as well as ineffective tools to achieve public or road safety. As officials elected to represent the needs of our communities and to ensure the City is using its resources in Chicagoans' best interest, these alarms are incredibly concerning.

It's clear to us that Chicago is in need of transformational change on traffic stops. Therefore, we appreciate and share the concerns that the parties to the Consent Decree have acknowledged by raising the possibility of including traffic stops into the Consent Decree, a powerful force for public safety reform in Chicago.

We also recognize that the Consent Decree is not the only force for policing change in our city. In 2021, Chicago made history by enacting a model for police oversight, accountability, and public safety. The Empowering Communities for Public Safety Ordinance was thoroughly considered by our City Council and ultimately passed in an effort to increase trust and accountability with law enforcement. The fundamental premise of the newly created Community Commission for Public Safety and Accountability (CCPSA) is that when it comes to decisions about how Chicago achieves true public safety, our communities can and must have a say.

Over the last 21 months, the Commission has been busy building out this new city entity, developing policies on pressing accountability issues, working with public safety agencies to set goals, and importantly—listening and responding to community calls for change. The Commission has taken its call to community oversight seriously, and with the upcoming appointment of the first full-term Commissioners, potential abounds.

However, if traffic stops are included wholesale into the Consent Decree, the city Ordinance creating the Commission will prevent the CCPSA from developing a community-driven policy to address the urgent problems with traffic stops. We are troubled by the possibility that the Consent Decree would effectively cut off this new and promising community oversight mechanism by incorporating traffic stops into the consent decree. Surely, there must be another solution where all of those invested in addressing this dire

problem can meaningfully and openly collaborate to ensure we change CPD's ineffective and harmful practice.

Our understanding is that the new full-term Commissioners are ready and willing to set to work on developing such a policy as soon as possible. Certainly, the Consent Decree parties' expertise and collaboration will be essential as the CCPSA works with CPD to develop a policy and to ensure it is implemented correctly and that the intended results are achieved. We only ask that you allow the first full-term CCPSA an opportunity to fulfill its duty and address this urgent community concern hand in hand with community members, as it was created to do.

Sincerely,

Daniel La Spata, 1st Ward
Desmon Yancy, 5th Ward
Michael Rodriguez, 22nd Ward
Byron Sigcho-Lopez, 25th Ward
Jessie Fuentes, 26th Ward
Rossana Rodriguez-Sanchez, 30th Ward
Andre Vasquez, 40th Ward
Leni Manaa-Hoppenworth, 48th Ward

Alderman Daniel La Spata
1858 N. Milwaukee Avenue
Chicago, IL 60647

Clerk of Court
United States District Court
Everett McKinley Dirksen Federal Building
219 South Dearborn Street, 20th Floor
Chicago, IL 60604
Re: State of Illinois vs. City of Chicago,
Case No. 17-CV-6260