**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STATE OF ILLINOIS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CITY OF CHICAGO, )<br>)<br>Defendant. ) | Case No. 17-cv-6260<br><br>Judge Rebecca Pallmeyer |

**THE CITY OF CHICAGO'S STATUS REPORT FOR INDEPENDENT MONITOR
REPORTING PERIOD 10 (IMR-10)**

Defendant City of Chicago, by and through one of its attorneys, Jennifer K. Bagby, Deputy Corporation Counsel for the City of Chicago, respectfully submits the City of Chicago's ("City's") Status Report for Reporting Period 10, pursuant to Consent Decree paragraph 680.

Consent Decree paragraph 680 provides that "[b]eginning with the Monitor's first report filed with the Court, and for each subsequent semiannual report by the Monitor, the City agrees to file a status report one month before each of the Monitor's reports is due for the duration of this Agreement. The City's status report will delineate the steps taken by CPD during the reporting period to comply with this Agreement, and the CPD's assessment of the status of its progress implementing this Agreement."

**BACKGROUND**

The Consent Decree is a negotiated settlement agreement between the City and the State of Illinois that requires the City, through the Chicago Police Department (CPD) and other City agencies, to institute a series of reforms designed to build public trust between officers and the communities they serve through the delivery of police services in a manner consistent with applicable laws and in a manner that respects individual's rights. Compliance with the Consent Decree is assessed by the Monitor ("IMT") every six months in the "Independent Monitor Reports" or IMRs. IMR-10 represents the period of January 1, 2024, through June 30, 2024.

Compliance is generally assessed by the IMT in three levels – preliminary, secondary, and full or operational. The general methodology for achieving preliminary compliance is that a policy

exists that addresses the requirements of a particular Consent Decree paragraph. The general methodology for achieving secondary compliance is that at least 95% of relevant CPD members have received an approved training covering the policy (and therefore Consent Decree) requirements. Finally, the general methodology for achieving full or operational compliance requires evaluating whether the policy and training are achieving the requisite goals or objectives. It is also important to stress that each CPD policy and training covered by the Consent Decree requires review and approval by the IMT and Office of Attorney General (OAG). The City and CPD typically do not obtain full compliance with any provisions of the Consent Decree without first achieving preliminary compliance through the policy development, review, and implementation process and then achieving secondary compliance through the development, review, and approval of training that is then administered to 95% of required department members.

The Consent Decree includes the following sections: Community Policing; Impartial Policing; Crisis Intervention; Use of Force; Recruitment, Hiring, and Promotion; Training; Supervision; Officer Wellness and Support; Accountability and Transparency; Data Collection, Analysis, and Management; and Investigatory Stops, Protective Pat Downs, and Enforcement of Loitering Ordinances, which was added in mid-2023. CPD's reform efforts, and Consent Decree compliance efforts are led by the Office of Constitutional Policing and Reform (OCPR). OCPR is staffed by sworn and civilian members who work on policy; training; community engagement; data collection and analysis; auditing; and project management for the entire Consent Decree. OCPR works with subject matter experts within CPD and external experts where necessary to address the specific topics covered by the Consent Decree. Below are highlights of the steps taken by CPD and the status of its progress through IMR-10 both overall and by Consent Decree section. Each section and paragraph call for different materials to establish or maintain compliance. The information below is meant to highlight the work undertaken by CPD during the latest six-month reporting period to comply with the requirements of the Consent Decree and to summarize CPD's progress in implementing the Agreement. Accordingly, this report does not capture all of the work and accomplishments made by CPD through the efforts of its sworn and civil members during this reporting period nor the foundational work necessary for future compliance.

I.     **OVERALL COMPLIANCE EFFORTS**

IMR-9 (July 1, 2023 through December 31, 2023) saw increased collaboration between CPD, the IMT, and the OAG in certain policy and training development and approval, particularly in areas necessary for CPD to be prepared to address the needs posed by the upcoming Democratic National Convention (DNC). These collaborative efforts continued throughout IMR-10.

CPD worked with the IMT and OAG to finalize the Coordinated Multiple Arrest (CMA) policy suite. The subject matter expertise of members of the IMT has been invaluable to CPD in the development of this suite of policies which are essential for CPD to meet the public safety needs posed by large scale gatherings. This collaborative work is an example of how the Consent Decree process can work effectively to achieve policy and training reforms.

In addition, IMR 10 saw increased direct interactions between the Associate Monitors on the IMT and CPD's subject matter experts. These interactions have fostered a more collaborative process, an understanding of the IMT's expectations on compliance issues, and a level of technical assistance. Combined, it is anticipated that these will provide both short- and long-term increases in CPD's compliance. Additionally, the efforts of the Deputy Monitor and the Senior Monitor in fostering the communication of clear expectations and specific actionable feedback have been invaluable.

However, other areas were less successful and the process itself has slowed CPD's ability to finalize policy and achieve compliance. As an example, CPD worked extensively to revise and develop policies governing their response to, and investigation of, officer involved shooting incidents (G03-06). CPD engaged a subject matter expert to assist in the policy development; staged a large-scale simulated exercise to demonstrate the policy to the Court, IMT and OAG; and engaged in multiple meetings with the IMT subject matter experts and attorneys from the OAG, ultimately receiving a "no objection" notice from the IMT on the policy. Despite these efforts, CPD continues to receive repeated comments from the OAG that appear driven not by subject matter expertise but by attorneys without the necessary law enforcement background. The lack of subject matter expertise along with frequent turnover on the OAG team remains an impediment to the completion of the policy and training necessary for CPD to achieve compliance.

## II. COMPLIANCE EFFORTS BY SECTION

Noted below are ongoing projects which will achieve compliance in future reporting periods as well as specific achievements from IMR-10 that should achieve new or increased compliance in IMR-10 once assessed by the IMT.

### A. Community Policing

*<u>Goals:</u>*

Among the goals of the Community Policing section are the integration of a community policing philosophy into CPD operations to build public trust and confidence in CPD and ensure constitutional and effective policing as well as officer and public safety. Additionally, CPD is to ensure that its community policing philosophy is a core component of police services, crime reduction strategies and tactics, training, management, resource deployment, and accountability systems.

*<u>CPD Ongoing Work:</u>*

CPD continued development of its Community Engagement policy (D22-08) and its Community Engagement Plan. CPD also continues to develop the Community Partnerships eLearning. The implementation of the policy and plan, as well as the delivery of the training will achieve compliance in future reporting periods. Additionally, CPD is developing Digitized Community Resource Guides and revising the Know Your Rights Campaign. Finally, coordinated efforts between CPD, the Department of Family Support Services (DFSS), and the Mayor's Office in developing a pilot program to address youth deflection and diversion. The development of this pilot into a formal program will achieve compliance in future reporting periods.

*<u>CPD Consent Decree Achievements in IMR-10:</u>*

CPD anticipates increased levels of compliance with the noted paragraphs based upon the following IMR-10 deliverables: CPAP Quarterly Reports (13, 16); Annual Community Policing Report (14, 22, 23, 24, 25, 26, 27, 29); Racial Equity Plan (15); In-Custody Communication Data and Recruit Training (31); Annual Training Plan (37); District Strategic Plans (45, 46, 47); and S01-01 – Department Awards (48). Additionally, the City and CPD maintain that preliminary compliance should have been achieved with paragraph 32 with the implementation of G02-05 – Interactions with Youth and Children.

### B. Impartial Policing

**_Goals:_**

Among the goals of the Impartial Policing section are for CPD to deliver police services to all members of the public without bias and to treat all people with dignity and respect. To achieve these goals, CPD is to build partnerships with community members supporting the effective delivery of police services and provide clear policy, training, and supervision to its members in order to deliver police services in a manner that promotes community trust and ensures equal protection of the law to all individuals.

**_CPD Ongoing Work:_**

As noted above, CPD continued development of the Community Engagement Policy and Plan which will achieve new compliance when completed. Additionally, CPD continued revisions to its Limited English Proficiency Policy and entered into a contract to proficiency test officers to serve as interpreters in addition to utilizing Language Line. Further, CPD conducted engagement with the Chicago Hearing Society on S02-07 – Deaf, Deaf-Blind, and Hard of Hearing policy. Additionally, CPD's Racial Equity Plan and Equity Plan should lead to future compliance as implemented. Finally, after extensive negotiations between CPD and the Coalition, the Court resolved outstanding search warrant policy disputes. CPD now has revised the policies and is seeking the required "no objection" notices from the IMT and OAG. This will allow CPD to finalize these important policies in IMR-11.

**_CPD Consent Decree Achievements in IMR-10:_**

CPD anticipates increased levels of compliance with the noted paragraphs based upon the following IMR-10 deliverables: CPD's Racial Equity Plan (52, 53, 54, 55, 56, 74); Equity Action Plan Framework (73, 74); and Hate Crimes Report (76, 77, 78).

### C. Crisis Intervention

**_Goals:_**

To ensure that CPD members interact with persons in crisis with dignity and respect, use trauma-informed techniques to respond appropriately, and to prevent unnecessary criminal justice involvement for individuals in crisis.

***CPD Ongoing Work:***

Throughout IMR-10 CPD continued revisions to S05-14 – Crisis Intervention Team Program due to transition to voluntary / Memphis model and engaged in collaborative discussions with the Associate Monitor about future compliance under the Memphis model. CPD continued development of a data dashboard for better data analysis on responses to calls for service involving individuals in crisis; continued the development of a scope of work for the Officer Implementation Plan; and continued policy and training presentations to CCMHE.

***CPD Consent Decree Achievements in IMR-10:***

CPD anticipates increased levels of compliance with the below noted paragraphs based upon the following IMR-10 deliverables: CIT Coordinator Staffing Plan (90, 91); delivery of approved crisis intervention trainings (Basic 40-hour, Refresher, Promotional classes, Recruits, and Supervisors) (92, 95, 98, 100, 101, 102, 103, 105, 119, 127); CIT Coordinator Summary Report (93, 94, 102, 104); CIT Refresher Training Plan (95, 98, 100, 101); CIT Documentation and Response Evaluation SOP (114, 115); CIT Coordinator Continuing Education (116); and Workforce Allocation Scope of Work (91, 121).

### D. Use of Force

***Goals:***

CPD's use of force policies as well as training, supervision, and accountability systems are to ensure that CPD officers use force in accordance with federal law, state law, and the requirements of the Consent Decree; that officers apply de-escalation techniques to prevent or reduce the need to use force where safe and feasible; that officers only use objectively reasonable force that is necessary and proportional; and that any use of unreasonable force is promptly identified and responded to appropriately.

***CPD Ongoing Work:***

CPD continued policy and training development and delivery necessary to prepare for the DNC and achieve the required 40 hours of training to 95% of required Department members which is expected to be completed in IMR-11. Additionally, TRED hired part-time civilian employees to address staffing needs. Finally, the long-standing collaboration between CPD and the Associate Monitor has contributed to the existing levels of compliance in this section and has continued to ongoing operational compliance planning with the Associate Monitor and members of the OAG.

***CPD Consent Decree Achievements in IMR-10:***

CPD anticipates new or increased levels of compliance with the below noted paragraphs based upon the following IMR-10 deliverables: TRED Year End Report (153, 154, 156, 157, 161, 164 – 169, 172, 173, 176 – 178, 189, 190, 192, 193, 196, 198, 200 – 203, 207, 209, 210, 220, 224 – 228, 230 – 235, 239); Annual Use of Force Report (154, 158 – 160, 162, 164 – 167, 169, 172 – 175, 177, 182, 186, 187, 198, 200 – 202, 204, 205, 210, 211, 213, 216 – 219, 239); updated Use of Force Dashboard (157).

### E. Recruitment Hiring, and Promotion

***Goals:***

To recruit, hire, and promote officers who are qualified to meet the complex needs of law enforcement and who reflect a broad cross section of the City.

***CPD Ongoing Work:***

CPD continued the development of the Recruitment Training Curriculum and the promotional process for commander which will achieve compliance in future reporting periods.

***CPD Consent Decree Achievements in IMR-10:***

CPD[1] anticipates new or increased levels of compliance with the below noted paragraphs based upon the following IMR-10 deliverables: Recruitment – Hiring Annual Report (253, 258, 259, 260) and published job descriptions (255).

### F. Training

***Goals:***

Training of CPD members, both recruits and active members, is essential to ensure that members are policing diligently, safely, and with an understanding of and commitment to the constitutional rights of all individuals they encounter. Additionally, at this stage of the Consent Decree, CPD must provide all non-probationary police officers who are active duty and available for assignment forty hours of in-service training annually. This training must consist of a minimum of 24-hours of in-person mandatory courses. Finally, as CPD has achieved preliminary (policy)

---

[1] Under the City's employment structure, the Recruitment, Hiring, and Promotions functions are handled by CPD, the Office of Public Safety Administration (OPSA) and the Department of Human Resources (DHR). Because paragraph 680 requires status on CPD's compliance efforts, the Status Report only references CPD's functions and achievements in the RHP section.

compliance with approximately 90% of the Consent Decree, ongoing training development and delivery is essential and ongoing in order to achieve future secondary compliance.

***CPD Ongoing Work:***

CPD continued the development and delivery of training to required Department members. These trainings will satisfy the annual 40 hours of training required under the Consent Decree. Once approved trainings are delivered to 95% of required Department members, CPD will achieve compliance in IMR-11. Additionally, CPD is developing a 5-year training plan to more effectively allow for long-range training planning.

***CPD Consent Decree Achievements in IMR-10:***

CPD anticipates new or increased levels of compliance in IMR-10 with the below noted paragraphs based upon the following IMR-10 deliverables: Training Needs Assessment to Inform 2025 Training Plan (272), 2025 Training Plan (270 – 278, 281 – 289, 296 – 299, 303, 305, 314, 315, 317 – 321, 323, 324, 326, 327, 331 – 335, 337); Training Oversight Committee (TOC) Agendas and Minutes (270 – 278, 295, 315, 318, 323, 326, 327); Workforce Allocation Scope of Work (296, 298); and FTO Initial Training (299 – 314).

### G. Supervision

***Goals:***

To provide effective supervision necessary for members to perform their duties lawfully, safely, and effectively. Additionally, supervisors are to have the opportunity to spend time with members under their supervision to allow them to prevent, identify, and correct adverse officer behavior.

***CPD Ongoing Work:***

CPD began delivery of the Annual In-Service Supervisor Training; worked on the development of the Unity of Command – Span of Control Staffing Model and Watch Application; and began work on the Department-wide workforce allocation study. To conduct the workforce allocation study, the City and CPD partnered with philanthropy organizations to fund this necessary work. CPD has finalized the scope of work with input from the IMT, OAG, and philanthropy organizations. A vendor has been selected and the contracting process between the City, funders, and vendor is concluding. Based upon these accomplishments on the WFA study,

CPD and the City should achieve preliminary compliance in IMR-10. The full analysis and its implementation will support future increased levels of compliance.

***CPD Consent Decree Achievements in IMR-10:***

CPD anticipates new or increased levels of compliance with the below noted paragraphs based upon the following IMR-10 deliverables: Workforce Allocation Scope of Work (356, 360, 361, 366, 367); Unity of Command – Span of Control Dashboard (362 – 368); D20-02 (357, 365, 366); and PES Evaluation (372).

### H. Officer Wellness and Support

***Goals:***

Psychological and emotional wellness are critical to officers' health, relationships, job performance, and safety and are necessary to achieve a healthy, effective, and constitutionally compliant police force. CPD is required to provide its members with adequate support systems to treat members experiencing mental health, substance abuse, and other emotional challenges as well as to cope with the consequences that come from their service to the public.

***CPD Ongoing Work:***

Development of a Civilian Wellness Training curriculum that when approved and delivered will achieve compliance; TISMP eLearning to address the TISMP policy revisions; and Recruit Officer Wellness Training.

***CPD Consent Decree Achievements in IMR-10:***

CPD anticipates new or increased levels of compliance with the below noted paragraphs based upon the following IMR-10 deliverables: Professional Counseling Division (PCD) Annual Report to the Superintendent (381 – 384, 387, 389 – 394, 398 – 401, 406); PCD Clinicians' Licenses and Specialties (381, 390 – 392, 395); completion of FOID eLearning (387); E06-01 (389); Employee Assistance Program (EAP) Summary Report (376); PCD weekly meetings (394, 398 – 400); Peer Support Program Suite (404); Revised E06-03 (TISMP) (407, 410); and ICIOT Training (409, 410).

### I. Accountability and Transparency

**_Goals:_**

Officer accountability for misconduct is essential to public confidence, employee safety, and officer morale. CPD and other City agencies are to ensure the process for submitting and pursuing complaints that allege violations of CPD policy or the law by CPD members is open and accessible for all individuals who wish to file complaints.

**_CPD Ongoing Work:_**

CPD continued revisions to G03-06 – Firearms Discharge and Officer Involved Incident Response and received a "no objection" notice from the IMT. Once finalized and implemented, this suite of policies should achieve new compliance with paragraphs 488 – 491. BIA continued the development and delivery of training which will achieve increased compliance once delivered to 95% of required Department members.

**_CPD Consent Decree Achievements in IMR-10:_**

CPD anticipates new or increased levels of compliance with the below noted paragraphs based upon the following IMR-10 deliverables: BIA Annual Report (456, 462, 476, 526 – 528, 530); BIA Satisfaction Survey (483); BIA Final Disposition Publication (502); CPD Annual Report (546, 547); Annual Use of Force Report (546, 547); BIA Quarter 1 Report (551); and Workforce Allocation Scope of Work (521).

### J. Data Collection and Analysis

**_Goals:_**

The ability of CPD to collect and analyze data is necessary to engage in critical self-examination and to identify issues and correct them as well as necessary for transparency and increased public trust.

**_CPD Ongoing Work:_**

CPD continued the development of D20-04, the EISS Policy Suite, as well as the TRR Supervisory Debriefing Dashboard eLearning. Additionally, CPD began the Use of Force Data Analysis required under paragraphs 572 and 573 by engaging a subject matter expert, providing underlying data, and providing the proposed methodologies to the IMT for approval as required by paragraph 573.

***CPD Consent Decree Achievements in IMR-10:***

CPD anticipates new or increased levels of compliance with the below noted paragraphs based upon the following IMR-10 deliverables: Annual Use of Force Report (568, 575); Use of Force Data Review Audit (568); Use of Force Dashboards – Incident Level (569, 571, 572, 574); TRED Year End Report and SOPs (574, 575); Workforce Allocation Scope of Work (575); and Annual Forms Review (609).

### K. Investigatory Stops, Protective Pat Downs, and Enforcement of Loitering Ordinances

***Goals:***

The Consent Decree was expanded by way of stipulation to include investigatory stops, protective pat downs, and enforcement of the City's Loitering Ordinances. The stipulation requires CPD to monitor, report, review, train, and implement accountability measures to ensure that when conducting investigatory stops and protective pat downs and when enforcing the City's loitering ordinances, CPD members act in a manner that complies with the Constitution, the laws of the United States, and the laws of the State of Illinois and that CPD members act without bias and treat all people with dignity.

***CPD Ongoing Work:***

CPD continued the 627 process on the suites of policies and forms to address Investigatory Stops and Loitering Enforcement.

***CPD Consent Decree Achievements in IMR-10:***

CPD anticipates new or increased levels of compliance with the below noted paragraphs based upon the following IMR-10 deliverables: TRED Year End Report (837, 838, 841, 856, 857) and Needs Assessment (835).

## **CONCULSION**

As highlighted above, CPD has continued the work of reform and its Consent Decree compliance efforts throughout IMR-10, building on its efforts over past reporting periods. The City and CPD expect to see increased levels of compliance in the IMT's report for IMR-10 as they continue to plan the work for IMR-11.

**RESPECTFULLY SUBMITTED**

BY:    */s/ Jennifer K. Bagby*
        Jennifer K. Bagby
        Deputy Corporation Counsel

**Attorneys for the City of Chicago**
Jennifer K. Bagby, Deputy Corporation Counsel
Danielle Clayton, Assistant Corporation Counsel
Max Frazier, Assistant Corporation Counsel
Arthur Haynes, Assistant Corporation Counsel
City of Chicago Department of Law
Public Safety Reform Division
121 North LaSalle Street, Suite 600
Chicago, IL 60602
(312)742-6408
Jennifer.Bagby@CityofChicago.org
Allan T. Slagel
Taft, Stettinius & Hollister, LLP
111 East Wacker Drive Suite 2600
Chicago, IL 60601
(312)527-4000
aslagel@taftlaw.com

**CERTIFICATE OF SERVICE**

    I, Jennifer Bagby, certify that on June 27,, 2024, I served the foregoing document on all parties of record by filing it using this Court's CM/ECF system.

                      */s/ Jennifer K. Bagby*
                      Jennifer K. Bagby