UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STATE OF ILLINOIS,<br><br>                Plaintiff,<br><br>   v.<br><br>CITY OF CHICAGO,<br><br>               Defendant. | Case No. 17-cv-6260<br><br>Hon. Rebecca R. Pallmeyer |

## THE COALITION'S STATUS REPORT ON
## CPD'S MASS ARREST TRAINING

The Coalition files this Status Report to further update the Court and the public on the status of its enforcement action concerning the Chicago Police Department's ("CPD") *Response to Crowds and Coordinated Multiple Arrest* policy suite (Special Orders S06-06X – S06-06-03XX) (the "mass arrest policy"), which governs CPD's "response to crowds, First Amendment assemblies, and civil disturbances." S06-06X, Sec. I.A.[1] As a result of the Coalition's enforcement motion and subsequent negotiations with CPD that this Court ordered, CPD agreed to provide the Coalition with a demonstration of its in-person training on the revised mass arrest policy and a copy of its eLearning training on the revised policy. This Status Report summarizes the Coalition's observations and recommended changes to these training modules.

Much of CPD's training is consistent with the negotiated terms of CPD's mass arrest policy, as reflected in the revised June 10, 2024 draft. *See also* Coalition's June 27, 2024 Status

---

[1] Unless otherwise noted, citations to the mass arrest policy are to the revised draft of the policy that CPD posted for public comment on June 10, 2024. *See* CPD, *Response to Crowds and Coordinated Multiple Arrests – UPDATED* (June 10, 2024), https://home.chicagopolice.org/draft_policy/response-to-crowds-and-coordinated-multiple-arrests-updated/.

1

Report (Dkt. 1189). However, the Coalition documented significant omissions that fail to reflect the negotiated revisions to the mass arrest policy. Additionally, we are concerned that the training too narrowly focuses on CPD's mass arrest policies without sufficiently explaining how the new mass arrest processes and reporting mechanisms coexist with other CPD policies—especially CPD's First Amendment policy (Gen. Order G02-02) and policies concerning human rights (Gen. Order G02-01) and biased policing (Gen. Order G02-04). Below, we set out certain important revisions to the training that are necessary to ensuring CPD officers understand the full panoply of legal and policy guardrails for policing First Amendment assemblies and other large gatherings. With the Democratic National Convention ("DNC") less than two weeks away, we focus our comments below on the most concerning deficiencies. We propose changes needed to ensure the training is consistent with the Consent Decree, CPD's First Amendment policy, and the negotiated revisions to CPD's mass arrest policy.

A. **In-Person Training –** *2024 De-Escalation, Response to Resistance, Use of Force, and Coordinated Multiple Arrests.*

Below is a summary of the Coalition's suggested revisions to CPD's in-person mass arrest training.

- The training should distinguish at the outset between First Amendment assemblies (a term that should be defined pursuant to G02-02, Sec. II.A.) and other gatherings, and explain that First Amendment assemblies have special constitutional protections that change how police should respond, as detailed in CPD's First Amendment policy.

- The training should more clearly explain when arrests are and are *not* permitted when a person is engaged in First Amendment conduct. Instructing officers that they can arrest people "for their actions" or for "illegal" behavior is not correct or sufficient in light of the restrictions in S06-06X, Sec. III.I.3.a, which prohibit officers from arresting persons engaged in First Amendment conduct for minor offenses unless they "pose an immediate threat to the safety of the community" or to individuals or of causing property damage, or are not complying with a lawful crowd dispersal order as prescribed under CPD's First Amendment policy.

2

- The training should explain that the provisions of the Pretrial Fairness Act and CPD's policies implementing the Pretrial Fairness Act remain in place during a "coordinated multiple arrest" incident, such that officers and supervisors should cite and release, rather than detain and transport, all persons arrested for a non-detainable offense.

- The training should explain at the outset that CPD's First Amendment policy governs CPD's response to First Amendment assemblies, and that all other CPD policies regarding human rights, biased policing, and constitutional policing also remain in effect after the declaration of a "coordinated multiple arrest" incident. These include policies regarding the rights of juveniles, people with disabilities, people with limited English proficiency, TIGN individuals, and all other policies prohibiting discrimination and retaliation. The specific titles and order numbers of all relevant policies should be included on the slides and handouts.

    - Throughout, the training should use the updated language of S06-06-02, Sec. III.A.1 ("If there is any perceived conflict between a *reporting, transporting, or processing* procedure in this directive and any other Department directive, including the Department directive titled 'Processing Persons Under Department Control,' this directive will take precedence.") (emphasis added to show revised language); *see also* S06-06-03, Sec. IV.A.1 (same).

- The training must make clear that CPD policy prohibits using canines at First Amendment assemblies or other crowds, *see Canine Teams*, Special Order S03-04-01, Sec. IV.A, and that this prohibition remains in effect regardless of a "coordinated multiple arrest" declaration.

- Consistent with CPD's policies, the training should use humane, people-first language and should avoid labels that can reinforce an us-versus-them mentality. For example, instead of referring to community members as "subjects" and officers as "victims," the training should refer to "persons" and "Department members."

- The training must specifically instruct officers on their obligations to secure medical care for injured people in CPD custody. Pursuant to General Order G03-02 (Sec. V), officers must immediately request medical aid for injured people and must provide aid consistent with their training.

- Each training module, and the training as a whole, should have a summary at the end to distill the most important lessons into key takeaway points.

B. **eLearning – *2024 Coordinated Multiple Arrests*.**

Below is a summary of the key corrections that should be made to CPD's eLearning module on the mass arrest policy suite.

- Lesson 3's summary should be revised to reflect the updated language of S06-06-02, Sec. III.A.1 ("If there is any perceived conflict between a *reporting, transporting, or processing* procedure in this directive and any other Department directive, including the Department directive titled 'Processing Persons Under Department Control,' this directive will take precedence.") (emphasis added to show revised language); *see also* S06-06-03, Sec. IV.A.1 (same).

- Lesson 4's summary incorrectly suggests that all reportable uses of force need only to be reported on a Coordinated Multiple Arrest Report and not a Tactical Response Report ("TRR"). *See* S06-06-03, Sec. V.C. (listing instances in which a TRR is required). The text of Lesson 4's summary should be revised to make clear when a TRR is required during a "coordinated multiple arrest" incident.

- The "knowledge check" questions at the end of each section are generally unhelpful in gauging whether an officer understands the policies. Given the time constraints before the DNC, CPD should focus on revising the following three particularly troubling items.

    - Question #1 of Lesson #1 asks about the definition of "kettling" rather than asking officers to confirm their understanding that kettling and other similar crowd containment tactics are *prohibited*. *See* S06-06X, Sec. V.B.4.c.Reminder. The current language may inadvertently even leave officers with the false impression that kettling is allowed.

    - Question #1 of Lesson #3 has confusing true/false answer choices to a yes/no question: "Does a CMA declaration authorize the arrest of any individual or group of individuals?" The answer to this question ("no") is of paramount importance and the confusion left by the current answer ("false") does not help officers understand the obligation not to arrest people absent probable cause, regardless of any "coordinated multiple arrest" declaration.

    - All of the questions following Lesson #4 are about using OC [pepper] spray and none focus on the requirements and procedures for reporting uses of force during a "coordinated multiple arrest" incident. Not only does this miss a large portion of the policy and applicable Consent Decree requirements, it may inadvertently train officers to believe that the use of OC spray during First Amendment assemblies is an inevitability. These questions should be revised to include questions that test officers' comprehension of the use of force reporting requirements.

DATED: August 8, 2024                    Respectfully submitted,

*/s/ Joshua M. Levin*
Alexandra K. Block (ablock@aclu-il.org)
Michelle T. García (mgarcia@aclu-il.org)

4

Joshua M. Levin (jlevin@aclu-il.org)
Roger Baldwin Foundation of ACLU, Inc.
150 N. Michigan Ave., Suite 600
Chicago, IL 60601
(312) 201-9740

Amanda Antholt (amanda@equipforequality.org)
Equip for Equality
20 N. Michigan Ave., Suite 300
Chicago, IL 60602
(312) 341-0022

Sheila A. Bedi (sheila.bedi@law.northwestern.edu)
Community Justice and Civil Rights Clinic
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 60611-3609
(312) 503-2492

Craig B. Futterman (futterman@uchicago.edu)
Mandel Legal Aid Clinic
University of Chicago Law School
6020 S. University Ave.
Chicago, IL 60637
(773) 702-9611

**Counsel for the Coalition**