# EXHIBIT 1



**ROGER BALDWIN FOUNDATION OF ACLU, INC.**

ROGER BALDWIN FOUNDATION OF
ACLU, INC.
150 N. MICHIGAN AVENUE
SUITE 600
CHICAGO, ILLINOIS 60601-7570
(312) 201-9740
FAX (312) 201-9760
WWW.ACLU-IL.ORG

Illinois

January 24, 2025

<u>*Via Email*</u>

Allan Slagel
Counsel for the City of Chicago
Taft Stettinius & Hollister LLP
111 East Wacker, Suite 2800
Chicago, IL 60601
aslagel@taftlaw.com

Dear Mr. Slagel:

We write on behalf of the Coalition to provide notice of the Coalition's intent to initiate enforcement proceedings pursuant to Consent Decree Paragraphs 695 and 709(a) with respect to serious deficiencies in the Chicago Police Department's policy suite titled "Police Encounters and the Fourth Amendment" (General Order G03-08 and G03-08-01) ("Stops Suite"), which became final on December 31, 2024.

The Stops Suite violates the law and the Consent Decree in two ways. First, it impermissibly allows officers to use race, ethnicity, and other protected characteristics when making decisions on whether to stop, frisk or search people, in violation of federal and state law and Paragraphs 55-56 of the Consent Decree. Second, the Stops Suite permits officers to stop and search people based on the odor of raw cannabis/marijuana, in direct contravention of Paragraph 806(i) of the Consent Decree.

**A.     Section III.B.4 of the Investigatory Stops Policy (G03-08-01) Violates Anti-Discrimination Laws and Paragraphs 55-56 of the Consent Decree.**

The Coalition has pointed out on numerous occasions that CPD's Stops Suite, and Paragraph 806(g) of the Consent Decree amendment on which it is based, violates the Equal Protection Clause of the U.S. Constitution and permits illegal discrimination. *See* Dkt. No. 1104 at 6-7; Dkt. No. 1110 at 2; Coalition policy comment on Stops Suite dated 9/9/24; Coalition letter to City regarding Stops Suite dated 11/8/24 at 22.

The Equal Protection Clause prohibits policing decisions made on the basis of race, ethnicity, or other protected characteristics (unless part of a specific description of a person). Police action is unconstitutional if "a discriminatory purpose has been *a motivating factor*"; a plaintiff need not show that a discriminatory purpose was the "dominant" or "primary" factor. *Floyd v. City of New York*, 959 F. Supp. 2d 540, 571 (S.D.N.Y. 2013) (emphasis added), citing *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 265 (1977) (finding New York City's stop and frisk program was unconstitutional racial profiling). The Illinois Civil Rights Act, 740 ILCS

1

23/5(a), likewise forbids government actions that "subject a person to discrimination … on the grounds of that person's race, color, national origin, or gender." It is crystal clear that if race, ethnicity or other protected characteristics are even one basis among several for a police action – such as a decision to stop, frisk or search a person – that police action violates federal and state law unless the police are acting on a description of a particular person.

Section III.B.4 of the Investigatory Stops policy (G03-08-01) violates this clear legal standard by permitting police actions that are based on race or other protected characteristics, so long as those protected characteristics are not the *sole* basis for the police action:

> Sworn Department members are prohibited from conducting Investigatory Stops or Protective Pat Downs based **solely** on:
>
> 4.      a person's race, ethnicity, color, national origin, religion, disability, gender, gender identity, sexual orientation, immigration status, homeless status, marital status, parental status, military discharge status, financial status, or lawful source of income, without any **other** specific and articulable facts that the person is, has, or is about to be engaged in criminal activity.
>
>      EXCEPTION:      Department members may rely on the listed characteristics when part of a specific suspect description.
>
> (emphases added).

The phrase "based **solely** on" permits CPD to make unconstitutional stops and frisks that are motivated – even in part – by a person's race or ethnicity. The "solely" modifier must be deleted.

Even worse, Section III.B.4 of the most recent version (Dec. 2024) of the Stops Suite closes with a phrase suggesting that protected characteristics *are* grounds for suspicion: It prohibits the use of protected characteristics "without any **other** specific and articulable facts that the person is, has, or is about to be engaged in criminal activity." (emphasis added). This language paradoxically suggests that race and other protected characteristics *are* grounds to investigate someone, as long as the officer can also articulate other additional suspicious facts. Race, ethnicity, disability, and other protected characteristics are *never* grounds for suspicion unless they are part of a specific description of a specific individual. Following this direction will cause officers to violate the law and the Consent Decree.

The additional modifying phrase ("without any other specific and articulable facts…") also confuses the governing standards. Officers need reasonable articulable suspicion that a person is, has, or is about to commit a crime to effect an investigatory stop in *all* cases. Re-stating that Fourth Amendment standard specifically in Section III.B.4 does not remedy the fact that the "solely" phrase in the introduction to Section III.B. allows discriminatory police action in violation of the Equal Protection Clause.

Consent Decree Paragraphs 55 and 56 correctly state the applicable Constitutional standard. Paragraph 55 prohibits officers from "using" protected characteristics "when making routine or spontaneous law enforcement decisions," and Paragraph 56 prohibits officers from using "substitutes or stereotypes" as stand-ins for protected characteristics.

CPD must rewrite the language of Section III.B.4 to comply with Paragraphs 55-56 of the Consent Decree and governing Constitutional law.

**B.      Section VI.D.5 of G03-08 and Section III.A.4. of G03-08-01 Violate Consent Decree Paragraph 806(i), Prohibiting Stops and Searches Based on the Odor of Cannabis**

Paragraph 806(i) of the Consent Decree's Amended Stipulation Regarding Investigatory Stops, Protective Pat Downs, and Enforcement of Loitering Ordinances provides: "CPD will prohibit officers from … Conducting an investigatory stop or search of an individual based solely on an officer smelling cannabis/marijuana without any other specific and articulable facts of criminal activity." *See* Dkt. 1096, ¶ 806(i).

The City agreed unambiguously in Paragraph 806(i) that the odor of cannabis alone, whether burnt or raw, shall not be a basis for an investigatory stop or search by police.

Yet in two places, the Stops Suite contradicts Consent Decree Paragraph 806(i). Section VI.D.5 of the Police Encounters and the Fourth Amendment Policy (G03-08) and Section III.A.4. of the Investigatory Stops policy (G03-08-01), both reference the Illinois Supreme Court's recent ruling in *People v. Molina*, 2024 IL 129237, with the latter describing *Molina* as an "exception" permitting officers to stop or search a vehicle based on the odor of raw cannabis. While *Molina* did so hold, that decision does not override CPD's obligation under Paragraph 806(i) of the Consent Decree – which pre-dated *Molina* by a year and a half – to instruct officers that they are prohibited from conducting a stop or search based on the odor of cannabis, burnt or raw.  *See Komyatti v. Bayh*, 96 F.3d 955, 959 (7th Cir. 1996) (affirming "the power of a federal court to enter and enforce a consent decree whose requirements go beyond constitutional minima.").

CPD must rewrite Section VI.D.5 of G03-08 and Section III.A.4. of G03-08-01to state clearly that CPD officers cannot stop or search an individual or a vehicle based on the odor of cannabis alone, whether raw or burnt.

***

Both of these violations must be corrected before CPD begins training officers on the Stop Suite. If CPD does not correct the legal deficiencies in the Stop Suite identified above, the Coalition will initiate enforcement proceedings on April 24, 2025. We remain available to discuss within the 90-day cure period.

Sincerely,

Amanda Antholt
Sheila Bedi
Alexandra Block
Joseph DiCola
Craig Futterman
Michelle García
Jessica Gingold
Imani Thornton

*Attorneys for the Coalition*

Cc:
    Karyn Bass-Ehler
    Christopher Wells
    Mary Grieb
    Amy Meek
    Monitor Maggie Hickey
    Anthony-Ray Sepúlveda