**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STATE OF ILLINOIS,<br><br>                    Plaintiff,<br><br>          v.<br><br>CITY OF CHICAGO,<br><br>                    Defendant. | Case No. 17-cv-6260<br><br>Hon. Rebecca R. Pallmeyer |

**COALITION'S MOTION TO ENFORCE CONSENT DECREE ¶806(i) PROHIBITING
POLICE SEARCHES BASED ON THE ODOR OF CANNABIS**

Pursuant to ¶¶ 695 and 709 of the Consent Decree (Dkt. 703), the Coalition respectfully moves for an order requiring that the Chicago Police Department ("CPD") amend its policy suite entitled "Police Encounters and the Fourth Amendment" ("Stops Suite") (Ex. 1) to conform to Consent Decree ¶ 806(i), which prohibits CPD officers from conducting investigatory stops or searches based solely on the odor of cannabis.[1]

**I.      Paragraph 806(i) Prohibits Searches Based on Cannabis Odor**

Paragraph 806(i) states: "CPD will prohibit officers from … Conducting an investigatory stop or search of an individual based solely on an officer smelling cannabis/marijuana without any other specific and articulable facts of criminal activity." Amended Stipulation Regarding Investigatory Stops, Protective Pat Downs, and Enforcement of Loitering Ordinances (Dkt. 1096)

---

[1]      On February 7, 2025, the Coalition filed its *Notice of the Coalition's Intent to Initiate Enforcement Proceedings* (Dkt. 1258), attaching a letter to the City dated January 24, 2025. The letter raised two significant legal issues with the Stops Suite. Following discussions, the Coalition and the City have resolved the first issue: that the Stops Suite's language prohibiting officers from basing law enforcement decisions "solely" on a person's race or other protected characteristics violated the Equal Protection Clause, the Illinois Civil Rights Act, and ¶¶ 55-56 of the Consent Decree.

at ¶ 806(i). The language is unambiguous. The odor of cannabis alone, whether burnt or raw, cannot be the sole basis for an investigatory stop or search by CPD officers.

Yet in two places, the Stops Suite contradicts ¶ 806(i). Section VI.D.5 of G03-08[2] (Ex. 1 at p. 10) and Section III.A.4. of G03-08-01[3] (Ex. 1 at p. 15), permit officers to perform a warrantless vehicle search based on the odor of raw cannabis alone. As support, they reference the Illinois Supreme Court's recent ruling in *People v. Molina*, 2024 IL 129237. The Stops Suite describes *Molina* as an "exception" to the general prohibition on conducting a stop or a search of an individual based solely on the odor of cannabis:

> **EXCEPTION**: In *People v. Molina* (2024), the Supreme Court of the State of Illinois held that the odor of raw cannabis coming from a vehicle being operated on an Illinois highway, alone, is sufficient to provide police officers, who are trained and experienced in distinguishing between burnt and raw cannabis, with probable cause to perform a warrantless search of a vehicle.

Ex. 1 at p. 15.

But ¶ 806(i) contains no such exception. It does not distinguish between raw and burnt cannabis, and it does not set different rules for searches as compared to stops. The Consent Decree prohibits *all* investigatory stops and searches based solely on the odor of cannabis.

---

[2]     Section VI.D.5 states in full: "Plain Smell Doctrine: … In *People v. Molina* (2024), the Supreme Court of the State of Illinois held that the odor of raw cannabis coming from a vehicle being operated on an Illinois highway, alone, is sufficient to provide police officers, who are trained and experienced in distinguishing between burnt and raw cannabis, with probable cause to perform a warrantless search of a vehicle." Ex. 1 at p. 10.

[3]     Section III.A.4. states in full: "Department members are prohibited from: … conducting an Investigatory Stop or search of a person based solely on an officer smelling cannabis/marijuana without any other specific and articulable facts of criminal activity. **EXCEPTION**: In *People v. Molina* (2024), the Supreme Court of the State of Illinois held that the odor of raw cannabis coming from a vehicle being operated on an Illinois highway, alone, is sufficient to provide police officers, who are trained and experienced in distinguishing between burnt and raw cannabis, with probable cause to perform a warrantless search of a vehicle." Ex. 1 at p. 15.

## II.   The Monitor Concluded that the Stops Suite Contradicts ¶ 806(i)

The Independent Monitor determined that the challenged provisions of the Stops Suite permitting officers to search vehicles based on the odor of raw cannabis do not conform to the plain language of ¶ 806(i). Independent Monitoring Report 11 (IMR11), Appendix 11, p. 14, available at: https://cpdmonitoringteam.com/wp-content/uploads/2025/04/11-IMR11-ISR-Stipulation.pdf (last visited 4/18/25) (stating that "¶806(i)  does not allow for such an exception" based on *Molina*). The Independent Monitor stated that CPD "incorporated this [*Molina*] exception into the policy after the IMT provided a no-objection notice to the policy" and therefore "request[ed] that the CPD revise this portion of the policy to be consistent with ¶806(i)." *Id.* The Independent Monitor further stated that "the City and the CPD must remove the exception in ¶806(i) based on *People v. Molina* or they will not maintain Preliminary compliance" with ¶ 806 in future monitoring reports. *Id.*

## III.   Paragraph 806(i) Applies to Searches During Vehicle Stops

As the Monitor observed, *Molina* does not and cannot override CPD's agreements embodied in ¶ 806(i) of the Consent Decree.  The Consent Decree's terms bind CPD regardless of the Illinois Supreme Court's later-issued decision affording less protection to drivers who transport impermissibly packaged raw cannabis. *See Komyatti v. Bayh*, 96 F.3d 955, 959 (7th Cir. 1996) (affirming "the power of a federal court to enter and enforce a consent decree whose requirements go beyond constitutional minima.").

Despite the straightforward language in ¶806(i), the City may argue that the Consent Decree's prohibition on "[c]onducting an investigatory stop or search *of an individual* based solely on an officer smelling cannabis/marijuana" (emphasis added) does not prohibit officers from searching *a vehicle* based on the odor of raw cannabis. But *people* drive cars—cars do not drive

themselves—at least not yet in Chicago. CPD's hair-splitting reading is belied by the Consent Decree and the remainder of the Stops Suite. It also would create an entirely unworkable policy on the streets of Chicago.

The Consent Decree nowhere limits its terms only to investigatory stops and searches of people on foot; it covers many types of investigatory actions to which the Fourth Amendment applies. *See* Dkt. 1096, ¶ 800.[4] Indeed, in 2024, approximately 49% of CPD's investigatory stops involved people in cars.[5] There is no reason to believe that the parties intended to exclude searches of vehicles during investigatory stops when the Consent Decree was amended in 2023 to cover investigatory stops, frisks and searches.

Further, the Stops Suite implementing the Consent Decree's investigatory stop provisions addresses stops and searches of both people and cars. The policy defines an "investigatory stop" as one form of "temporary detention" (the other form is a "probable cause stop"), which in turn is "not limited to pedestrians; occupants of vehicles and individuals on bicycles may be the subjects of Temporary Detentions." G03-08, Ex. 1 at p. 3, §IV.D.-E. The Stops Suite also covers all forms of searches, including but not limited to vehicle searches. *Id.* at p. 8 §VI.D. And it instructs officers to fill out an electronic Stop Form for every temporary detention that "contains information concerning persons and, when appropriate vehicles temporarily detained for Investigatory Stops and Probable Cause Stops." G03-08-03, Ex. 1 at p. 19, §III.A.2.a.

---

[4] "The Parties agree that the Consent Decree will be expanded to include obligations by CPD to monitor, report, review, train and implement accountability measures with respect to investigatory stops, protective pat downs, and enforcement of the Loitering Ordinances. … These measures will ensure that CPD's investigatory stops, protective pat downs, and enforcement of the Loitering Ordnances are conducted in a manner that comply with the Constitution and laws of the United States and the State of Illinois and are in accordance with best practices, as defined in paragraph 730 of the Consent Decree." Consent Decree ¶ 800.

[5] *See* 2024 Chicago Police Department Investigatory Stop Report (ISR) Data, available at: https://www.chicagopolice.org/statistics-data/isr-data/ (last visited 4/18/25).

Throughout, the Stops Suite imposes limitations on investigatory stops of "a person," and there is every reason to believe that these prohibitions apply to persons in cars as well as on foot. For instance, officers are prohibited from conducting investigatory stops and frisks based solely on "a person's geographic location… a person's response to the presence of police officers," … "a person's presence in the company of others suspected of criminal activity," etc. *Id.* at p. 15 §III.B.1-4. It would be quite anomalous to read these sections to protect only "persons" who are not in cars. If officers cannot stop "persons" on these prohibited grounds, they cannot pull over a person's car on those grounds, either.

For the same reason, it makes no sense to read the prohibition on "conducting an Investigatory Stop or search of a person based solely on an officer smelling cannabis/marijuana…" in a way that allows officers to pull over or search a car (that is driven by a person) due to cannabis odor but not to stop or search a person on the sidewalk due to the same reason.

In fact, the Stops Suite *does not allow officers to stop any individuals or pull over cars* based on cannabis odor. *See* Ex. 1 at pp. 10, 15. CPD's proposed "exception" allows officers only to *search* cars based on raw cannabis odor. *Id.* This shows that the Stops Suite's true intention is not to effectuate ¶ 806(i) but to attempt to amend it based on the later-decided *Molina* ruling, which held that raw cannabis alone may provide probable cause for a vehicle *search* to locate improperly packaged raw cannabis, but did not address whether raw cannabis odor provides probable cause for a vehicle stop. *Molina*, 2024 IL 129237, ¶ 61. As the Monitor stated, CPD's attempt to utilize *Molina* as an end-run around ¶ 806(i) is not permitted. The Consent Decree prohibits investigatory stops and searches based on cannabis odor, full stop, and does not have a *Molina* exception.

On a practical level, CPD's proposal is easily manipulated and raises more questions than it answers. As just one example, under CPD's reading, if a driver is suspected of possessing

unlawful amounts of raw cannabis in a purse or backpack, would an officer be allowed to search those belongings? Does it matter whether the driver leaves the backpack on the seat when exiting the car during a stop, or if he brings it outside of the car? If so, what prevents an officer from simply ordering the driver to leave the backpack in the car and then claiming that the backpack is part of the vehicle subject to a search? If a person walking down the street with a backpack cannot be stopped or searched based on the odor of raw cannabis, why should a driver's backpack be subject to search simply because it was or is located in a vehicle?

Even more fundamentally, how can CPD officers distinguish between the odors of raw and burnt cannabis? To the Coalition's knowledge, there is no reliable scientific method to do so. *See, e.g.,* R. Doty et al., *Marijuana Odor Perception: Studies Modeled From Probable Cause Cases*, 28 Law & Hum. Behav. 223, 232 (2004) (finding "no convincing evidence" that *one pound* of raw cannabis could be accurately discerned in a vehicle under real-world conditions; the chances of a detection were as reliable as a coin flip). Further, to the Coalition's knowledge, CPD has no policy on olfactory cannabis detection by officers during vehicle stops, has not trained its officers to distinguish raw cannabis odor from burnt cannabis odor, and has no mechanism to test and verify their skill at reliably distinguishing the smell of raw and burnt cannabis at various amounts and concentrations. These issues are only a few of the many logistical questions raised by CPD's proposal, but they illustrate why CPD should not be permitted to unilaterally amend the Stops Suite in a manner that contradicts the plain terms of ¶ 806(i).

WHEREFORE, the Coalition respectfully requests that this Court order CPD to revise the Stops Suite in accordance with ¶ 806(i) to prohibit all investigatory stops and searches based on the odor of cannabis alone, without any other reasonable articulable suspicion of criminal activity.

DATED: April 24, 2025

Respectfully Submitted,

*/s/ Alexandra K. Block*

Alexandra K. Block (ablock@aclu-il.org)
Michelle T. García (mgarcia@aclu-il.org)
Joseph DiCola (jdicola@aclu-il.org)
Imani Thornton (ithornton@aclu-il.org)
Roger Baldwin Foundation of ACLU, Inc.
150 N. Michigan Ave., Suite 600
Chicago, IL 60601
(312) 201-9740

Amanda Antholt (amanda@equipforequality.org)
Jessica Gingold (jessicag@equipforequality.org)
Equip for Equality
20 N. Michigan Ave., Suite 300
Chicago, IL 60602
(312) 341-0022

Sheila A. Bedi (sheila.bedi@law.northwestern.edu)
Community Justice and Civil Rights Clinic
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 60611-3609
(312) 503-2492

Craig B. Futterman (futterman@uchicago.edu)
Mandel Legal Aid Clinic
University of Chicago Law School
6020 S. University Ave.
Chicago, IL 60637
(773) 702-9611

**Counsel for the Coalition**