IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STATE OF ILLINOIS,<br><br>          Plaintiff,<br><br>  v.<br><br>CITY OF CHICAGO,<br><br>          Defendant. | Case No. 1:17-cv-06260<br><br>Judge Rebecca R. Pallmeyer |

**DEFENDANT'S RESPONSE TO CHICAGO JOHN DINEEN LODGE #7'S MOITON TO INTERVENE AND ENFORCE SAFETY PARAGRAPHS OF THE CONSENT DEVREE**

  Defendant City of Chicago, by and through one of its attorneys, Danielle Alvarez Clayton, Assistant Corporation Counsel III Supervisor, respectfully submits the City of Chicago's (City) Response to Chicago's John Dineen Lodge #7 Motion Instanter to Intervene and Enforce Safety Paragraphs of the Consent Decree (Dkt. 1282 ("Lodge's Motion")).

  **I.**  **Introduction**

  Currently before the Court is the John Dineen Lodge #7 Motion Instanter to Intervene and Enforce Safety Paragraphs of the Consent Decree ("Lodge's Motion"). The motion should be denied because the Lodge is not entitled to intervention, they cannot enforce the Consent Decree, its Collective Bargaining Agreement and other rights under IL labor statue (the IPLRA) (5 ILCS 315/2) provides the Lodge with adequate alternative avenues for the alleged relief it seeks. Further, the Lodges argument that CPD acted unreasonably is unsupported by the facts. CPD was made aware of any potential issues with the Sig Sauer P320 in February 2025 and after careful research took appropriate and timely action. (Ex A Aff. Par. 11) by adopting a plan to phase out the P320 without sacrificing the integrity of the department and safety to the community. (Ex A Aff. Par.

1

13) Therefore, despite the Lodges claims, the actions of CPD demonstrate that they acted reasonably and diligently after learning of potential issues with the Sig Sauer P320.

## II. The Lodge's request to intervene should be denied

Under the Federal Rules of Civil Procedure, intervention as a matter of right must be granted to anyone who "is given an unconditional right to intervene by a federal statute or claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." (Fed. R. Civ. Pro. 24(a)). Permissive intervention may be granted by the court to anyone who "is given a conditional right to intervene by a federal statute; or has a claim or defense that shares with the main action a common question of law or fact." (Fed. R. Civ. Pro. 24 (b)(1)). When considering permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights. (Fed. R. Civ. Pro. 24 (b)(3)). Intervention of right and permissive intervention both require a timely filed motion. (Fed. R. Civ. Pro. 24).

### a) The Lodge cannot meet the required elements and therefore are not entitled to intervention as a matter of right

The Court must grant intervention as a matter of right to any person who in a "timely motion" "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent the interest." (Fed. R. Civ. Pro. 24(a)(2)). Therefore, to be granted intervention as a matter of right, the Lodge must establish the following elements: "(1) timeliness, (2) an interest relating to the subject matter of the main action, (3) at least potential impairment of that interest if the action is resolved without the intervenor, and (4) lack of adequate representation by existing parties." *Reid L. v. Illinois State*

*Board of Education,* 289 F.3d 1009, 1017 (7th Cir. 2002). "The burden is on the party seeking to intervene of right to show that all four criteria are met." Id. (citing *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985)). If the party does not establish all four elements, the court must deny the intervention. Id. (citing *United States v. 36.96 Acres of Land*, 754 F.2d 855, 858 (7th Cir. 1985)). Because the Lodge cannot establish all four elements, their request for intervention as a matter of right must be denied.

The Lodge's motion seeking to intervene was not timely filed. The court considers "four factors to determine whether a motion is timely (1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; (4) any other unusual circumstances." *State of Illinois v. City of Chicago*, 912 F. 3d 979, 984 (7th Cir. 2019) (internal citations omitted). The elements of timeliness seek to determine whether the moving party was diligent in their efforts to intervene and whether prejudice to the original parties would result from granting the intervention. In the instant case, the Lodge filed their motion seeking to intervene on May 16, 2025, nearly six years after the Consent Decree (Dkt. 703) was filed.

The court measures timeliness from the time that the movant "has reason to know its interests **might** be adversely affected, not from when it knows for certain that they will be." *State of Illinois v. City of Chicago*, 912 F. 3d at 985 (*emphasis added*). The Lodge, as part of the Fraternal Order of Police (FOP), has been actively involved in the instant case since 2017 and previously filed to intervene in 2018. (Dkt. 51) The Lodge's motion to intervene filed on June 6, 2018, was reviewed and denied by this Court on August 16, 2018. (Dkt. 51 FOP Motion to Intervene, Dkt. 88 Court Order Denying the FOP Motion to Intervene) Then on May 31, 2019, the Lodge appeared before the Court on concerns with the Consent Decree and perceived conflicts with the Collective

3

Bargaining agreement, further demonstrating that the Lodge has been an active participant in this case and was well aware of the paragraphs they seek to intervene and enforce in the current motion before the Court. (Dkt. 761) The Lodge knew or should have known that changes in equipment could have potentially been adversely affected, and the likely implicated paragraphs 154, 182, 298, 379, 420, 491, and 706. The Lodges knowledge of the Consent Decree's potential effect to their Collective Bargaining Agreement was the basis of their June 6, 2018, Motion to Intervene, which was denied. (Dkt. 51 FOP Motion to Intervene, Dkt. 88 Court Order Denying the FOP Motion to Intervene) Therefore, the Lodge knew about the Consent Decree and the paragraphs noted in their motion for several years and failed to timely file a motion seeking intervention.

Next, the party seeking to intervene "must claim an interest relating to the property or transaction which is the subject of the action." *Sokaogon Chippewa Community v. Babbitt*, 214 F.3d 941, 945 (7th Cir. 2000). The interest must "be a 'direct, significant legally protectable one.'" *Reich v. ABC / York-Estes Corp*. 64 F.3d 316, 322 (7th Cir. 1995) (*quoting American National Bank v. City of Chicago*, 865 F.2d 144, 146 (7th Cir. 1989)). "Whether an applicant has an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination, making comparison to other cases of limited value." *Security Insurance Company of Hartford v. Schipporeit, Inc*., 69 F.3d 1377, 1381 (7th Cir. 1995). "In ascertaining a potential intervenor's interest in a case, [the court] focuses on the issues to be resolved by the litigation and whether the potential intervenor has an interest in those issues." *Id*. "[A] mere 'betting' interest in the outcome of a case . . . [such as] a third party [with] some outstanding monetary claim from one of the parties [who] attempts to intervene to ensure that the outcome of the case preserves as much of its claim as possible" is insufficient. *Reich v. ABC / York-Estes Corp*. 64 F.3d 316, 322 (7th Cir. 1995).

The Lodge seeks intervention to "request enforcement of several paragraphs of the Consent Decree that protect the sanctity of life and officer and citizen safety," but fails to plead a specific interest that is significant and legally protectable. (Dkt. 1282) The Lodge also argues the City and CPD's plan to phase out the P320 was unreasonable, and the weapon should have been removed immediately; however, the Lodge fails to plead facts that demonstrate that the City and CPD's actions are unreasonable or that the plan to phase out the P320 is insufficient. As fully discussed below the P320 was suspended within days of CPD discovering any potential issues with the weapon; within months of the incident the Arsenal Committee voted to remove the P320 and approved the phase out process; and a month after the Arsenal Committee meeting, a July 14, 2025, proof of purchase deadline was established. (Ex A Aff par 11, 13, and 18) Lastly, the Lodges request fails to identify any interest sufficient to warrant intervention as a matter of right.

Further, the Lodge fails to plead impairment, or a potential impairment, of any interest if this action is resolved without their intervention. "The existence of 'impairment' depends on whether the decision of a legal question involved in the action would as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding." *Meridian Homes Corporation v. Nicholas W. Prassas & Company*, 683 F.2d 201, 204 (7th Cir. 1982) (*citing Atlantis Development Corporation v. United States*, 379 F.2d 818, 826 – 29 (5th Cir. 1967)). The Lodge argues the Court "recognized the substantial interest of the Lodge as 'an important potential intervenor, certainly an interested party'" at the May 31, 2019 status hearing; however, the Courts statement is taken out of context. (*Id*.) The Court did say "Mr. D'Alba is obviously not a party, be he is an important *potential* intervenor, and certainly an interested party," but the Court did not grant Mr. D'Alba or the Lodge intervention. (emphasis added, Dkt. 761) The Court also did not issue a legal finding or

5

support the Lodges intervention. As noted above, the Lodge sought intervention in this case and was denied (Dkt. 88).

Lastly, a party seeking intervention as of right must make a minimal showing that the representation of the existing parties may be inadequate. *Ligas ex rel. Foster v. Maram*, 474 F. 3d 771, 774 (7th Cir. 2007) (*citing Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10 (1972)). "[W]hen the representative party is a governmental body charged by law with protecting the intervenors, the representative is presumed to adequately represent their interests unless there is a showing of gross negligence or bad faith." *Id.* (*internal citations omitted*). One of the representative parties in the Consent Decree is the Office of Illinois Attorney General (OAG), the chief law enforcement agency for the State of Illinois. The Consent Decree arose from the lawsuit filed by the OAG alleging unconstitutional policing practices by CPD. The OAG seeks to protect all individuals who may encounter CPD members, by ensuring that CPD delivers services in a manner that fully complies with the Constitution and state and federal laws; respects individuals' rights; builds trust between officers and the communities they serve; and promotes community and officer safety. The Lodge failed to plead their interests are not represented by the OAG or make any showing of gross negligence or bad faith by the OAG as required for intervention as a matter of right. Specifically, the Lodge fails to plead facts that demonstrate the OAG cannot sufficiently represent their interest in paragraphs 154, 182, 298, 379, 420, 491, and 706. (Dkt. 1282 pg. 2) In fact, this Court previously held that the OAG "is a governmental body charged by law with protecting the interests of the proposed intervenors, the representative is presumed to adequately represent their interests unless there is a showing of gross negligence or bad faith." *(Wilkins v. City of Chicago and Chicago Police Department*, No. 23 C 4072 (N.D. Ill.) (Dkt. 1247) quoting *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007)(Dkt. 73) "In this case, the State is suing

the City of Chicago as parens patriae on behalf of all Illinois residents." (*Id*) "By initiating this action as parens patriae, the State represents all Illinoisans in pursuing its "quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general." *Alfred L. Snapp &Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607 (1982)." (*Id*) "The Attorney General is charged by Illinois law with "appear[ing] for and represent[ing] the people of the State" and "defend[ing] all actions and proceedings against any State officer, in his official capacity, in any of the courts of this State or the United States." 15 ILCS 205/4." (*Id*) The OAG's "duties as charged by law entitle the State to a presumption of adequate representation." (*Id*) Thus any attempt by the Lodge to intervene must be denied as they are fully represented by the OAG. Therefore, the Lodge failed to sufficiently plead intervention as of right.

  **b) The Lodge is not entitled to permissive intervention, and their motion should be denied.**

The Lodges motion does not specify whether they are seeking intervention as a matter of right or permissive intervention, but any potential inferred request should be denied. "Permissive intervention is within the discretion of the district court where the applicant's claim and the main action share common issues of law or fact and where there is independent jurisdiction." *Ligas*, 478 F.3d at 775. Before the court can exercise its discretionary power to grant permissive intervention, "the proposed intervenor must demonstrate that there is a common question of law or fact." *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995). The Lodge has failed to plead or demonstrate that there is a common question of law or fact. The Lodge's argument that they are requesting "enforcement of several paragraphs of the Consent Decree that protect the sanctity of life and officer and citizen safety," is not sufficient to warrant permissive intervention. (Dkt. 1282)

Because the Lodge's motion seeking to intervene is not timely and because they cannot meet the elements of either intervention of right or permissive intervention under Federal Rule 24, the Motion to Intervene must be denied.

**III.     The Lodge's request to enforce the Consent Decree should be denied**

The Lodge's request of "enforcement of several of paragraphs of the Consent Decree" should be denied. (Dkt. 1282 pg. 1) The terms of the Consent Decree do not grant the Lodge the right to enforce the agreement between the parties. Paragraph 711 of the Consent Decree, however, does protect the Lodge's collective bargaining interests. Consent Decree paragraph 711 states "(n)othing in the Consent Decree is intended to (a) alter any of the CBAs between the City and the Unions; or (b) impair or conflict with the collective bargaining rights of employees in those units under the IPLRA. Nothing in this Consent Decree shall be interpreted as obligating the City or the Unions to violate (i) the terms of the CBAs, including any Successor CBAs resulting from the negotiation process (including Statutory Impasse Resolution Procedures) mandated by the IPLRA with respect to the subject of wages, hours and terms and conditions of employment unless such terms violate the U.S. Constitution, Illinois law or public policy, or (ii) any bargaining obligations under the IPLRA, and/or waive any rights or obligations thereunder. In negotiating Successor CBAs and during any Statutory Resolution Impasse Procedures, the City shall use its best efforts to secure modifications to the CBAs consistent with the terms of this Consent Decree, or to the extent necessary to provide for the effective implementation of the provisions of this Consent Decree." (Dkt. 703 Par. 711) The plain language of paragraph 711 does not provide the Lodge with the right to enforce the Consent Decree. Instead, paragraph 711 preserves the Lodges interest and prevents the parties from entering into an agreement or otherwise altering the Consent Decree in such a way that would impede the Unions' collective bargaining interest.

The Lodge argues "(t)he role of the Lodge in the successful implementation of the Consent Decree has been recognized by this Court, which has acknowledged that the Lodge should have a role in the development of policies that affect wages, hours and working conditions of Police Officers." (Dkt. 1282 pg. 2, citing Dkt. 761) However, the Lodge's summary of the Judge's statement during the May 31, 2019 status hearing is inaccurate. On May 31, 2019, approximately six months after the Consent Decree was filed, Mr. Joel A. D'Alba appeared on behalf of the Lodge and presented the Lodge's arguments pending before the Court. Specifically, the Lodge sought resolution of their pending motion, concerning Consent Decree deadlines, anonymous complaints and the perceived conflict with the Collective Bargaining Agreement (Consent Decree paragraphs 425 and 426), and issues with "point and report" training addressed in Consent Decree paragraphs 188 and 189. (Dkt. 761 pg. 8) The Court ordered the parties to meet and confer with Mr. D'Alba on the above-mentioned issues and to "come back and tell me whether you want to have a briefing scheduled on it, whether you want to have a status hearing on it, whether you want to have a settlement conference on it, whatever you want to do." (Dkt. 761 pg. 10) The Judge did not make a finding or decision as to "(t)he role of the Lodge in the successful implementation of the Consent Decree…" nor did the Court acknowledge "that the Lodge should have a role in the development of policies that affect wages, hours and working conditions of Police Officers." (Dkt. 1282 pg. 2, citing Dkt. 761) To the contrary, the Court asked the parties to meet and discuss the Lodges concerns, and any remaining issue would be presented to the Court for decision.

The Court statements on May 31, 2019, do not assert enforcement rights nor do they contradict or negate paragraph 711 of the Consent Decree. As previously stated, paragraph 711 preserves Lodges interest and prevents the parties from entering into an agreement that would impede the Unions' collective bargaining interest. Furthermore, at the May 31, 2019 status hearing,

9

the Court stated "I'm doing contract enforcement here. I'm not doing – I don't have remedial power based on violation of a federal law. So, you know, that negotiation process is going to be kind of a third wheel on this. And you guys have to do the best you can to make it all happen." (Dkt. 761 pg. 10-11) The Court sought to encourage and acknowledge the cooperative roles of the parties and not assert enforcement or support intervention for the Lodge.

The terms of the Consent Decree do not grant the Lodge the right to enforce the agreement between the parties and paragraph 711 preserves the Lodge's interest and prevents the parties from entering into an agreement or otherwise altering the Consent Decree in such a way that would impede the Unions' collective bargaining interest. Thus, the Lodge's motion to enforce and intervene should be denied.

### IV. The Lodge's motion should be denied because this Court is the incorrect venue to seek relief.

The Lodge's motion should be denied because they are not entitled to enforcement of the Consent Decree, as noted above, and the remedies available to them are outlined in the Collective Bargaining Agreement. The Labor Act (Act) grants "public employees full freedom of association, self-organization, and designation of representatives of their own choosing for the purpose of negotiating wages, hours and other conditions of employment or other mutual aid or protection." (5 ILCS 315/2) (from Ch. 48, Par. 1602) The Act regulates "labor relations between public employers and employees, including the designation of employee representatives, negotiation of wages, hours and other conditions of employment, and resolution of disputes arising under collective bargaining agreements." (*Id*) In their motion, the Lodge alleges that they filed their motion before this Court "due to the urgency required in removing the abnormally dangerous weapon from the workplace of the Lodge's bargaining unit members." (Dkt.1282 pg. 2) However, workplace concerns, or disputes, are covered by the Act and the prescribed method of handling

disputes was negotiated as part of the terms of the Collective Bargaining Agreement. The City nor the Lodge can unilaterally change the terms of the Collective Bargaining Agreement, and disputes between the parties are to be addressed via the terms of the agreement. The Collective Bargaining Agreement permits the Lodge to file a grievance and to seek remedy via arbitration. Any decision reached, which may have an impact on the Consent Decree, under paragraph 711, would be adhered to. The City, as a party to the Consent Decree and the Collective Bargaining Agreement, would take any corrective action necessary to comply with paragraph 711.

      The Lodge is fully aware of the Collective Bargaining Agreement's exclusive dispute resolution mechanisms. The Lodge filed a grievance on May 19, 2025, although the grievance notification is dated May 2, 2025, as well as filed a request for a panel of interest arbitrators with the American Arbitration Association (AAA) on May 19, 2025. (Exhibit B, Grievance filed; Exhibit C AAA complaint filed) The Grievance is the appropriate route for pursuing the Lodge's complaint, not the Consent Decree. The Lodge filed their grievance on May 19, 2025, three days after the Lodge filed this motion. The filing of the grievance, as well as the AAA request, three days after this motion give the appearance that the Lodge, despite following the proper channels, is attempting to circumvent the Collective Bargaining Agreement's prescribed method of handling disputes by attempting to intervene and enforce paragraphs in the Consent Decree. However, as previously addressed, the Lodge does not possess the right to enforce the Consent Decree, and paragraph 711 applies to the parties and prohibits any action taken by the parties that may impede the Unions' Collective Bargaining Agreement. Thus, The Lodge's motion should be denied because they are not entitled to intervention or enforcement of the Consent Decree and the remedies available to them are outlined in the Collective Bargaining Agreement.

### V. The Lodge's claims that CPD unreasonably delayed taking action to remove and replace the Sig Sauer P320 is contrary to the facts

The Lodge alleges that CPD "unreasonably delayed in taking action to remove and replace these defective weapons." (Dkt. 1282 page 3) However, within months of being alerted to potential user error with the Sig Sauer P320 (P320) CPD took the conservative and cautious approach and removed the P320 from CPD's list of primary weapons. (Ex A Aff. Par. 11) On April 7, 2025, CPD's Arsenal Committee (Committee) met to discuss issues with the Serpa Holster and P320 firearm. (Ex A Aff. Par. 13) The Committee reviewed the information presented and unanimously voted to remove the Serpa Holster and P320. (*Id*.) The Committee voted to ban the use of the P320 from new recruits; not allowing sworn department members to carry the P320 as their primary firearm; and looking into ways of offsetting the cost for replacing the P320. (*Id.*) The Committee subsequently unanimously voted to phase out the P320. (*Id*.)

On May 5, 2025, the Lodge met with representatives of the City and CPD to discuss the removal of the P320. (Dkt. 1282 pg. 3) During discussions the Lodge asked that CPD immediately remove the firearm from use. (*Id*.) In response to the Lodge's request, CPD explained the above outlined process of phasing out the P320. (Dkt. 1282 pg. 4, Ex A Aff. Par. 13 and 14) Although the Lodge disagrees with CPD's phasing out process, the process includes a ban of the P320 for new recruits and not allowing sworn department members to carry the P320 as their primary firearm. (Ex A Aff. Par. 13) The phasing out process is also described in the CPD Administrative Message Center general message attached to the Lodge's motion. (Dkt. 1282 Exhibit C: 4/30/25 CPD General Message) The general message starts out stating "(t)he Sig Saur P320 is being phased out and will no longer be an approved firearm." (*Id*) The general message includes opportunities for officers to replace their P320 at a specific event, referred to as "Gun Days," officers are permitted to attend the conventions on and off duty to replace their P320. (*Id*., Ex A Aff. Par. 17)

12

The general message states that "vendors will be displaying and accepting orders for Department approved weapons and ancillary equipment, including optics, lights, holsters, belts, etc." (Dkt. 1282 Exhibit C: 4/30/25 CPD General Message)

Despite the opportunity to replace the P320 and CPD's outlined process of banning and replacing the P320, the Lodge argues that other departments immediately removed the P320 from use. Specifically, the Lodge points to the Milwaukee Police Department as an example of a police department that swapped "out all the Sig Saur P320's and replace them with Glock pistols, at no cost to the Officers." (Dkt. 1282, Exhibit A) However, the Milwaukee Police Department pays for and distributes their officers' weapons, CPD does not. If CPD were to immediately remove the P320, officers would be prevented from returning to the field prior to securing a new firearm, this would result in a depleted force and reduced safety for the community.

Additionally, the City does not agree with the Lodge's statement in their motion that the P320 is defective, and CPD's actions to remove the P320 from the primary weapons list is not a statement as to the reliability of the use of weapons. Despite their motion, the Lodge agrees with the City's position on the P320, as noted in their April 18, 2025 letter to the Superintendent, President John Catanzara states "(t)o be clear, the Lodge is not taking a position on the weapon reliability and safety concerns one way of the other." (1282 Exhibit A, Letter to the Superintendent) The articles attached in support of the Lodges motion also demonstrate that while there have been a small number of reported issues with some P320, the weapon "has become one of the most popular guns in America, with more than 2.5 million units sold." (1282 Exhibit B, Article, page2) In response to the reported issues with the P320, "Sig Sauer has steadfastly maintained that the P320 is safe for use. The company denied claims that the gun is defective and insists that the reported discharges are due to improper handling." (*Id* at pg. 6)

13

However, despite the limited number of reported issues with the P320, CPD acted within months of being alerted to any possible issue with the P320 and took the conservative and cautious approach and removed the P320 from CPD's list of primary weapons. CPD's actions were not only timely, but they were also reasonable.

VI. **Conclusion**

The Lodge's Motion Instanter to Intervene and Enforce Safety Paragraphs of the Consent Decree should be denied. The Lodge is not entitled to intervention, nor can they enforce the Consent Decree. The Collective Bargaining Agreement and the IPLRA provides the Lodge with avenues to seek the relief sought, and as demonstrated above CPD acted reasonably.

            **RESPECTFULLY SUBMITTED**

            */s/ Danielle Alvarez Clayton*
            Assistant Corporation Counsel III Supervisor
            City of Chicago Department of Law
            Public Safety Reform Division

Danielle Alvarez Clayton
City of Chicago Department of Law
Public Safety Reform Division
2 N. LaSalle Street, Suite 420
Chicago, Illinois 60602
(312) 744-2784
City of Chicago Department of Law, Public Safety Reform Division
Danielle.Clayton@CityofChicago.org

Allan Slagel
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive
Suite 2600
Chicago, Illinois 60601
Counsel for Defendants
aslagel@taftlaw.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 9, 2025, I served a true and correct copy of the foregoing City of Chicago's Response to the Community Coalition Motion to Enforce Consent Decree Paragraph on all counsel of record by filing the same on the Court's ECF system.

                                    */s/ Danielle Alvarez Clayton*
                                    Assistant Corporation Counsel III Supervisor
                                    City of Chicago Department of Law
                                    Public Safety Reform Division