## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| STATE OF ILLINOIS, | |
| Plaintiff, | |
| v. | Case No. 17-cv-6260 |
| CITY OF CHICAGO, | Hon. Rebecca R. Pallmeyer |
| Defendant. | |

### COALITION'S WITHDRAWAL OF MOTION TO ENFORCE CONSENT DECREE ¶806(i) PROHIBITING POLICE SEARCHES BASED ON THE ODOR OF CANNABIS

The Coalition applauds the Chicago Police Department (CPD) for further amending its Stops Suite[1] in response to our Motion to Enforce Consent Decree ¶806(i) Prohibiting Police Searches Based on the Odor of Cannabis. *See* Dkt. 1286 at 8 and Ex. 1. Although the Coalition continues to disagree with the Stops Suite's remaining reference to *People v. Molina*, 2024 IL 129237, in Section VI.D.5 of G03-08, we acknowledge that CPD's draft dated 21 May 2025 (the "amended Stops Suite," Dkt. 1286-1) is an improvement and that the Independent Monitor has now determined that the amended Stops Suite reflects an acceptable compromise interpretation of ¶806(i). *See* Dkt. 1286 at 8 (City's representation that IMT has agreed to the amended Stops Suite). Additionally, CPD has now acknowledged that its officers cannot conduct vehicle searches based on the odor of raw cannabis unless and until they are adequately trained to distinguish between the odors of raw and burnt cannabis. Dkt. 1286 at 8, 9. In light of these positive developments, the Coalition withdraws its Motion to Enforce (Dkt. 1277).

The Coalition also provides the following responses to the City's and State's briefs.

---

[1] This memorandum adopts the terms defined in Coalition's opening motion (Dkt. 1277).

**Consent Decree Paragraph 806(i)**

Paragraph 806(i) of the Amended Stipulation Regarding Investigatory Stops, Protective Pat Downs, and Enforcement of Loitering Ordinances ("Stipulation," Dkt. 1096) prohibits officers from "[c]onducting an investigatory stop or search of an individual based solely on an officer smelling cannabis/marijuana without any other specific and articulable facts of criminal activity." As the Coalition showed in its opening motion (Dkt. 1277 at 3-5), the most natural reading of this language is that the same standard applies to *stops* based on the odor of cannabis and to *searches* based on the odor of cannabis. It is not natural to read the phrase "of an individual" to modify only the prohibition on searches based on cannabis odor but not the prohibition on stops. And in light of the fact that the Stipulation governs investigatory stops and searches of vehicles, as well as police encounters on the street, the best interpretation is that ¶806(i) prohibits searches of cars, as well as of people in cars, based on the odor of cannabis.[2] The Stipulation's original intent was to prohibit all investigatory stops and searches on the basis of cannabis odor. Since the Illinois Supreme Court decided *People v. Redmond*, 2024 IL 129201, and *People v. Molina,* 2024 IL 129237, however, the City and the State appear to have updated their views.

**Amended Stops Suite**

While the Coalition remains unconvinced of the parties' interpretation of ¶806(i), we acknowledge that the parties and the Independent Monitor have now agreed on an improved Stops Suite that limits its reference to *Molina* only to the section of the policy titled "Vehicle Searches." The new draft deletes the most problematic reference to *Molina* in Section III.A.4 of G03-08-01,

---

[2]     Both the City (Dkt. 1286 at 7) and the State (Dkt. 1291 at 2-3) point out that the United States Supreme Court has established a motor vehicle exception that allows warrantless searches of cars based on probable cause that the vehicle contains evidence of criminal activity. But that is irrelevant to the analysis of the language in Paragraph 806(i). The consent decree may, and does, establish a higher standard than the Fourth Amendment floor.

which previously suggested that *Molina* was an "exception" to the prohibition on investigatory stops and searches of a person based on the odor of cannabis.

The State encouragingly posits that, as a result of this compromise, vehicle searches based on the odor of cannabis will be permitted only under "narrow fact patterns" and, specifically, that officers will not be permitted to extend a temporary detention initiated based on probable cause of a traffic violation solely to investigate raw cannabis odor. Dkt. 1291 at 3-6. We are hopeful that the City will adopt the State's view and that its training on the Stops Suite will instruct officers accordingly. We look forward to reviewing and providing feedback to CPD on the Stops Suite's training module after it is drafted.

### Consent Searches Based on Raw Cannabis Odor

The Coalition remains concerned that the Stops Suite continues to permit officers to ask for *consent* to search cars based on the odor of raw cannabis. Section IV.B.1 of G03-08-01 (Dkt. 1286-1 at p. 16) states: "During an Investigatory Stop, sworn Department members may conduct a search of a person upon consent if they have Reasonable Articulable Suspicion that the person is involved in a crime or possesses evidence of a crime." Possession of cannabis that is not in an "odor proof" container while in a motor vehicle is a Class A misdemeanor. 625 ILCS 5/11-502.15(d). Suspicion of improperly contained raw cannabis therefore would be a permissible basis to ask for a consent search according to the amended Stops Suite. Chicago police conduct thousands of vehicle consent searches every year.[3] If searches based on the odor of cannabis are to be truly limited to a "narrow" set of facts, then CPD members should be prohibited from asking

---

[3]     The most recent publicly available data shows that CPD conducted 1,813 consent searches of cars in 2023. Illinois Dep't of Transportation, Illinois Traffic and Pedestrian Stop Study (2023) at 210, panel 4, https://idot.illinois.gov/content/dam/soi/en/web/idot/documents/transportation-system/reports/safety/traffic-stop-studies/2023%20Illinois%20Traffic%20Stop%20Study%20-%20Part%20II.pdf. Nearly all of those consent searches were performed on cars driven by Black and Latino people.

3

a driver for consent to search their car based on a suspicion that the car contains improperly packaged raw cannabis. The Coalition urges the parties to clarify in Section IV.B.1 that raw cannabis odor, alone, is not sufficient grounds to ask a driver for consent to search a car.

### Coalition's Participation In Development of the Stops Suite

Finally, the Coalition is compelled to address the City's accusation that we "created unnecessary roadblocks, delays and distractions" during development of the Stops Suite. Dkt. 1286 at 2. Contrary to the City's assertion, the Coalition's advocacy resulted in the improvements that the City now endorses. *Id.* at 3, 8. It took two years of advocacy by the Coalition, including multiple filings and letters, before the City relented and agreed to remove the unconstitutional term "solely" from the Stops Suite's prohibition on conducting stops and frisks on the basis of race and other protected characteristics.[4] Similarly, the Coalition repeatedly raised the problems with permitting investigatory stops and searches based on the smell of cannabis, including filing this enforcement motion, before the City ultimately agreed to remove the reference to *Molina* in G03-08-01 §III.A.4. Dkt. 1286 at 8. The City's complaint that the Coalition should not have filed its enforcement notice (Dkt. 1258) on the docket has no legal basis. Nothing in consent decree ¶695 prohibits the Coalition from alerting the Court to a forthcoming motion and, in fact, the Coalition and the State have made their enforcement notices public in the past[5] without objection by the City

---

[4] *See* Communities United Parties' Position Statement on Parties' Amended Stipulation Regarding Investigatory Stops, Protective Pat Downs, and Enforcement of Loitering Ordinances (Dkt. 1104) at 6-7; Campbell Plaintiffs' Position Statement on Parties' Amended Stipulation Regarding Investigatory Stops, Protective Pat Downs, and Enforcement of Loitering Ordinances (Dkt. 1110) at 2; Coalition policy comments on Stops Suite dated 9/9/24, https://www.aclu-il.org/en/chicago-police-department-consent-decree; Coalition letter to City regarding Stops Suite dated 11/8/24 at 22, https://www.aclu-il.org/sites/default/files/2024-11-08_coalition_letter_police_encounters_fourth_amendment.pdf; and Notice of the Coalition's Intent to Initiate Enforcement Proceedings (Dkt. 1258). The Independent Monitor also recommended deleting the term "solely." IMT, Comprehensive Assessment—Part II at 53, https://live-chicago-imt.pantheonsite.io/wp-content/uploads/2024/10/2024.10.11-Independent-Monitoring-Team-Comprehensive-Assessment-Part-II-amended-and-filed.pdf.

[5] *See* Dkt. 1156 (Notice of the Coalition's Intent to Initiate Enforcement Proceedings regarding CPD's mass arrest policy); *see also* Heather Cherone, *Attorney General Tells Chicago Mayor to Reverse*

or the Court.

We hope that, moving forward, the City will acknowledge that the Coalition's input, along with feedback from many others, was crucial to ensuring that the Stops Suite meets the requirements of the constitution, federal and state law, and the consent decree. The consent decree (¶¶862-65) *requires* community engagement on the Stops Suite. And, as the amended Stops Suite shows, the Coalition's recommendations and advocacy yielded a better policy.

## Conclusion

As a result of the improvements reflected in the amended Stops Suite, the Coalition withdraws its enforcement motion (Dkt. 1277) and looks forward to observing implementation of the policy and associated training.

DATED: June 23, 2025         Respectfully Submitted,

                                     */s/ Alexandra K. Block*

Sheila A. Bedi                 Alexandra K. Block (ablock@aclu-il.org)
(sheila.bedi@law.northwestern.edu)    Michelle T. García (mgarcia@aclu-il.org)
Wallace Hilke                  Joseph DiCola (jdicola@aclu-il.org)
(Wally.hilke@law.northwestern.edu)    Imani Thornton (ithornton@aclu-il.org)
Community Justice and Civil Rights Clinic   Roger Baldwin Foundation of ACLU, Inc.
Northwestern Pritzker School of Law    150 N. Michigan Ave., Suite 600
375 East Chicago Avenue         Chicago, IL 60601
Chicago, IL 60611-3609          (312) 201-9740
(312) 503-2492

Craig B. Futterman           Amanda Antholt (amanda@equipforequality.org)
(futterman@uchicago.edu)        Jessica Gingold (jessicag@equipforequality.org)
Mandel Legal Aid Clinic         Equip for Equality
University of Chicago Law School     20 N. Michigan Ave., Suite 300
6020 S. University Ave.          Chicago, IL 60602
Chicago, IL 60637             (312) 341-0022
(773) 702-9611

                                     **Counsel for the Coalition**

---

*Planned Budget Cuts to Police Reform Effort or Face Sanctions*, WTTW (Nov. 13, 2024), https://news.wttw.com/2024/11/13/attorney-general-tells-chicago-mayor-reverse-planned-budget-cuts-police-reform-effort-or (attaching letter dated Nov. 12, 2024 from Attorney General Raoul to Mayor Johnson).