Exhibit 3

| Chicago Police Department | Special Order S03-14 |
|---|---|
| **BODY WORN CAMERAS** | |

| ISSUE DATE: | 16 May 2025 | EFFECTIVE DATE: | |
|---|---|---|---|
| RESCINDS: | 08 August 2024 Version | | |
| INDEX CATEGORY: | 03 - Field Operations | | |
| CALEA: | Law Enforcement Standards Chapters 4, 41, and 72 | | |

## I. PURPOSE

This directive:

    A.    continues the Department's body worn camera (BWC) policy and procedures.

    B.    satisfies the requirements of the Illinois Officer-Worn Body Camera Act (50 ILCS 706/10); and

    C.    continues the use of the revised:

        1.    Random Video Review Report (CPD-21.130).

        2.    Videos Viewed Report (CPD-21.131).

## II. DEFINITIONS

For purposes of this directive the following definitions apply:

    A.    **Activate**: To double press the event button on the body-worn camera to switch the camera from buffering mode to event mode to begin permanently recording digitally recorded data (audio and video media).

    B.    **Body-Worn Camera (BWC)**: Equipment worn by a Department member that captures digitally recorded data (audio and video media) that includes, at a minimum, a camera, microphone, and recorder. Per 50 ILCS 706/10-20(a)(2), Department BWCs must be capable of recording for a period (buffering) of 10 hours or more.

    C.    **Buffering**: The BWC is powered on, indicating ready to record, and continually capturing video without audio. While in buffering mode, the video is not recorded to the permanent memory of the BWC until activation, at which time the 120 seconds prior to activation is retained without audio and audio/video recording to the permanent memory begins.

    D.    **Community Caretaking Function**: A task undertaken by a law enforcement officer in which the officer is performing an articulable act unrelated to the investigation of a crime. "Community caretaking function" includes, but is not limited to, participating in town halls or other community outreach, helping a child find his or her parents, providing death notifications, and performing in-home or hospital well-being checks on the sick, elderly, or persons presumed missing. (50 ILCS 706/10-10)

    E.    **Deactivate**: To press and hold the event button on the body-worn camera to stop permanently recording digitally recorded data (audio and video media) and returning the camera back to buffering mode.

    F.    **Flag**: Utilizing the category box in Evidence.com to extend the retention of recorded digital media captured by a body-worn camera beyond the 90 days required by law.

    G.    **Force**: Any physical contact by a Department member, either directly or through the use of equipment, to compel a person's compliance, consistent with the Department directive titled "De-escalation, Response to Resistance, and Use of Force."

H.   **Great Bodily Harm**: A bodily injury that creates a substantial risk of death; causes serious, permanent disfigurement; or results in long-term loss or impairment of the functioning of any bodily member or organ.

I.   **Law-Enforcement-Related Activities:** include, but are not limited to:

1.   responding to and engaging in calls for service;

2.   investigatory stops;

3.   traffic stops;

4.   traffic control;

5.   foot and vehicle pursuits;

6.   arrests;

7.   use of force incidents;

8.   seizure of evidence;

9.   interrogations;

10.   searches, including searches of people, items, vehicles, buildings, and places;

11.   statements made by individuals in the course of an investigation;

12.   requests for consent to search;

13.   emergency driving situations;

14.   emergency vehicle responses where fleeing suspects or vehicles may be captured on video leaving the crime scene;

15.   high-risk situations;

16.   any encounter with the public that becomes adversarial after the initial contact;

17.   arrestee transports;

18.   issuing a dispersal order or making an arrest in response to crowds, protests, First Amendment assemblies, and civil disturbances;

   **NOTE:**   Because of the technological capabilities of the BWC, an on-scene supervisor at such events may instruct the additional activation or deactivation of the BWC for limited durations of the event when it serves a proper police purpose or supports the documentation of the event.

19.   situations where an arrestee interferes with the arrest processing procedures (e.g., refusing fingerprints); and

20.   any other instance when enforcing the law.

   **NOTE:**   *"Law enforcement-related encounter or activities" does not include when the officer is completing paperwork alone, is participating in training in a classroom setting, or is only in the presence of another law enforcement officer.*

J.   **Private Conversation**: Any oral communication between two or more persons, whether in person or transmitted by other means, when one or more of the parties intends the communication to be of a private nature under circumstances reasonably justifying that expectation. A reasonable expectation shall include any expectation recognized by law, including, but not limited to, an expectation derived from a privilege, immunity, or right established by common law, case law, state or federal statute, or the Illinois or United States Constitution (720 ILCS 5/14-1).

**III.    POLICY**

A.    The Department is committed to protecting the integrity, safety, and welfare of the public as well as its members. Department members assigned a body-worn camera (BWC) are required to wear and utilize the BWC consistent with this policy and the Illinois Officer-Worn Camera Act (50 ILCS 706/10).

B.    The proper use of BWC and the audio and visual recordings from the BWC can:

1.    augment the Department's records of incidents to improve the quality and reliability of investigations.

2.    increase Department transparency and member accountability.

3.    build trust with the public and improve Department legitimacy in the community.

C.    All Department members will:

1.    prior to the assignment of and deployment with a BWC, be trained on the use of the BWC equipment and this policy, including the activation and deactivation of the BWC and operational procedures.

2.    receive periodic refresher training on the use of BWC, including changes to the law, policy, or technology, when applicable.

D.    Any Department member who fails to comply with this directive is subject to progressive discipline, training, or other corrective action according to current Department policies and consistent with the Illinois Officer-Worn Body Camera Act (50 ILCS 706/10).

1.    Improper behavior or infractions observed by a supervisor when viewing BWC recordings are subject to corrective action, which may include training or other supervisory actions if the nature or circumstances of an incident do not warrant a reprimand or formal disciplinary action (e.g., uniform standards, no smoking policy).  Department supervisors are permitted and urged to use their judgment in determining the appropriate response to achieve the goal of correcting improper behavior.

2.    However, Department members are reminded that consistent with the Department directives titled "Complaint and Disciplinary System" and "Summary Punishment," discipline may be administered for any misconduct or violations of Department rules or policy, including but not limited to the failure to timely activate and use the BWC according to policy, early deactivation of the BWC, improper use of the BWC or recordings, or lost or damaged equipment.

　　　　　**NOTE:**　　　　Department members may refer to the Department directive titled "Summary Punishment" for specific less serious transgressions.

E.    All digitally recorded data created with BWCs are the property of the Department. Dissemination outside the Department of any BWC-recorded data is strictly prohibited without specific authorization by the Superintendent or an appointed designee in compliance with (50 ILCS 706/10) Law Enforcement Officer-Worn Body Camera Act. Unauthorized duplicating, deleting, altering, capturing, viewing, accessing, or disseminating of any audio or video from BWC recordings is strictly prohibited.

F.    The Office of Public Safety Administration – Information Technology Unit will ensure all digitally recorded data created by the BWC and downloaded to Evidence.com are retained in accordance with the Department's Forms Retention Schedule (CPD-11.717), the Illinois Officer-Worn Body Camera Act (50 ILCS 706/10), and Item XII of this directive.

G.    According to the Illinois Officer-Worn Camera Act (50 ILCS 706/10), no officer may hinder or prevent any non-officer from recording a law enforcement officer who is performing his or her duties in a public place or when the officer has no reasonable expectation of privacy.

1. Department members will permit members of the public to photograph or record law enforcement officers, including sworn Department members, in the performance of their duties in a public place or in circumstances where the law enforcement officer has no reasonable expectation of privacy.

2. 720 ILCS 5/14-2(e) allows any individual, not a law enforcement officer, to record law enforcement officers in the performance of their duties in a public place or in circumstances in which the officer has no reasonable expectation of privacy. A public place includes areas on the public way and locations accessible to the public.

3. However, Department members may take reasonable action to maintain safety and control, secure crime scenes and accident sites, protect the integrity and confidentiality of investigations, and protect the safety of Department members or others.

4. Violation of this law may constitute disciplinary actions consistent with the Department directive titled "Complaint and Disciplinary System" as well as criminal penalties such as theft or criminal damage to property.

H. Department members will only use Department-issued BWCs while on duty in accordance with this directive.

I. If a Department member assigned a BWC is in a vehicle equipped with an in-car video system, the member will follow the procedures outlined in both the Department directive titled "In-Car Video Systems" and this directive.

J. The Department will comply with the video dissemination and release policies as outlined in the Department directive titled "Freedom of Information Act" and the "Video Release Policy for the City of Chicago," that includes the responsibility for the Civilian Office of Police Accountability (COPA) to release Chicago Police Department BWC recordings related to specific types of incidents.

> **NOTE:** Pursuant to the Illinois Freedom of Information Act's personal information exemption (5 ILCS 140/7(1)(c)) which protects the unwarranted invasion of personal privacy, certain video and audio may be redacted upon release.

## IV. BODY-WORN CAMERA IMPLEMENTATION

A. The Department has implemented the use of BWCs Department-wide, regardless of a sworn member's unit of assignment.

B. All sworn Department members who are assigned to conduct patrol or field duties will be assigned, wear, and utilize a BWC.

> **NOTE:** Department members detailed or assigned to another law enforcement agencies (e.g., Federal Bureau of Investigations) for a task force or other assignments will follow the agreements in place between the Department and the other law enforcement agency.

C. The Department-wide implementation of the BWC program encompasses three types of BWC assignment: Fixed, Flex, and Take-Home.

D. Fixed BWC Assignment

1. Fixed BWC assignment is the traditional method of assignment where the BWC is stored, charged, docked, and downloaded in the unit of assignment and sworn members:

   a. are assigned a consistent BWC.

   b. receive their assigned BWC from the designated member of the unit of assignment at the beginning of their tour of duty.

   c. return their assigned BWC to the designated member of the unit of assignment at the end of their tour of duty.

2.   The Department has implemented the Fixed BWC Assignment in the following units:

    a.   Districts 001 through 025 in District Law Enforcement, Bureau of Patrol

        **NOTE:**    Each district has also been provided _with_ Flex BWCs for emergency, replacement, or other discretionary use by district personnel.

    b.   Critical Incident Response Team – CIRT (Unit 715)

    c.   Community Safety Team – CST (Unit 716)

    d.   Crisis Intervention Teams – CIT (Unit 143)

    e.   Public Transportation Division (Unit 701)

    f.   Traffic Section (Unit 145)

    g.   Detached Services – Uniformed Support Division (Unit 544)

    h.   Airport Operations – North (Unit 050)

    i.   Airport Operations – South (Unit 051).

3.   The Office of Public Safety Administration, Information Technology, is responsible for assigning BWCs to sworn members assigned to the above-listed units.

4.   Commanding officers of units identified above will ensure that all members under their command that are not assigned and required to use BWCs are properly documented in the CLEAR Watch application.

5.   Commanding officers of units that are routinely assigned to patrol or field duties may contact Office of Public Safety Administration, Information Technology, to request the Fixed Assignment of BWCs.

E.   Flex BWC Assignment

1.   Flex BWC Assignment is:

    a.   a method of deploying unassigned BWCs individually to non-field unit personnel with the BWCs stored, charged, docked, and downloaded in central locations of select Department facilities.

    b.   utilized by non-field unit personnel when being deployed and assigned to field or patrol duties for an individual tour of duty.

2.   Sworn members being deployed and assigned to field or patrol duties for an individual tour of duty will:

    a.   be assigned a rotating Flex BWC.

    b.   receive a BWC at the beginning of their tour of duty from the designated member assigned to the Department facility.

    c.   return the assigned BWC at the end of their tour of duty to the designated member assigned to the Department facility.

3.   The Department has implemented the Flex BWC Assignment for all units within the following Department facilities:

    a.   Public Safety Headquarters

    b.   Training Division

    c.   Homan Square Facility, for personnel assigned to the Bureau of Counterterrorism

      d.     Area Centers 1 through 5, for personnel assigned to the Bureau of Detectives

      e.     Strategic Deployment Initiative (SDI) deployment locations.

4.     Supervisors assigned to the above-listed Department facilities are responsible for assigning Flex BWCs, via the Axon mobile environment, to sworn members under their command assigned to field or patrol duties for an individual tour of duty.

F.     Take-Home BWC Assignment

1.     Take-Home BWC Assignment is a method where sworn members are assigned a consistent BWC and deploy with their assigned BWC at the beginning of their tour of duty or when notified to respond to an individual incident (e.g., call-out SWAT Team response).

2.     The Take-Home BWCs are:

      a.     stored and charged at the assigned sworn member's residence.

      b.     docked to download the digitally recorded data in the sworn member's unit of assignment, Flex BWC location, or other Department facility.

3.     The Department has implemented the Take-Home BWC Assignment in the following units:

      a.     Special Weapons and Tactics (SWAT) Team (Unit 353)

      b.     Investigative Field Group (Unit 606)

      c.     Canine Unit (Unit 341)

      d.     Street Deputies Unit (Unit 140).

4.     The Office of Public Safety Administration, Information Technology is responsible for assigning BWCs to sworn members assigned to the above-listed units. However, supervisors assigned to the above-listed units are responsible for assigning Flex BWCs, via the Axon mobile environment, to sworn members requiring a temporary replacement BWC when an assigned BWC is out-of-service due to being docked and downloading digitally recorded data.

5.     Sworn members assigned a Take-Home BWC are responsible for the security of their assigned BWC. Any lost, stolen, or damaged Take-Home BWCs will be reported and investigated consistent with the procedures outlined in Item VII of this directive.

6.     Commanding officers of units identified above will ensure that all members under their command that are not assigned and required to use BWCs are properly documented in the CLEAR Watch application.

G.     Regardless of the assignment type, Department members are responsible for securing and using their assigned BWC consistent with the requirements of this directive.

## V.   INITIATING, CONCLUDING, AND JUSTIFYING RECORDINGS

A.    **Initiating a Recording**

1.     Department members equipped with a BWC will electronically record all law-enforcement-related activities using the BWC while on-duty, except for the limited exceptions specifically indicated in the law (50 ILCS 706/10) and Item V of this policy. The use of BWC to electronically record law-enforcement-related activities **is mandatory and is not discretionary**.

2.     The Department member will activate the BWC to event mode at the beginning of an incident and will record the entire incident for all law-enforcement-related activities. For the purposes of the activation of BWCs, the Department has identified the following circumstances as the beginning of a law-enforcement-related activity:

a.  for dispatched calls for service, when acknowledging the call for service and en-route to the incident scene.

b.  for investigatory stops, when approaching the member of the public to initiate the stop.

c.  for traffic stops, when activating the Department vehicle's emergency equipment to initiate the traffic stop.

d.  for all other law-enforcement-related activities, when the member initiates and engages in the activity.

   NOTE:  For Take-Home Assignment BWCs, Department members responding to a call-out incident will activate the BWC to event mode upon arrival at the responding location.

3.  Consistent with 50 ILCS 706/10-20(a)(3)(A), if exigent circumstances prevent activating the BWC at the beginning of an incident as defined above (e.g., the incident scene creates a situation where the initial activation of the BWC unsafe, impractical, or impossible), the member will activate the BWC to "event" mode to record a law-enforcement related activity as soon as practicable.

   a.  The justification for the late activation of a BWC will be documented and recorded as outlined in Item V-C of this directive.

   b.  The First Deputy Superintendent or exempt member of the Office of the Superintendent may authorize exigent circumstances that the Department member use of BWC is unsafe or operationally impracticable. These circumstances include, but are not limited to:

      (1)  A Department Explosives Technician approaching a potentially explosive device.

      (2)  A Department Marine Officer conducting a SCUBA diving activity under the surface of the water.

      (3)  A Department member operating in an approved covert capacity and assigned not to be reasonably identifiable as a police officer.

4.  A Department member may utilize discretion to activate the BWC for non-law-enforcement-related activities in the following circumstances that are not required by the law or policy:

   a.  in situations that the member, through training and experience, believes will serve a proper police purpose.

      NOTE:  Department members are reminded that the Chicago Police Department will not tolerate abuse of law enforcement authority. While the Department does recognize the concept of discretion, that discretion must be reasonable, defensible, and may not be for an improper purpose, consistent with the Department directive titled "Protection of Human Rights."

   b.  in situations that may help document, enhance, and support the following: written reports, evidence collection, investigations, and court testimony; and

   c.  when the member is engaged in community caretaking functions (e.g., on-view lost person or well-being check).

NOTE:    If the community caretaking function develops into a law-enforcement-related activity (e.g., the investigation of criminal activity; the person on whose behalf the member is performing a community caretaking function has committed, is committing, or is about to commit a crime), Department members are required to activate the BWC to event mode to begin electronically recording the incident.

5.    Upon initiation of a recording, Department members will announce to the person(s) that their BWC has been activated and provide verbal notice that the incident is being recorded, unless doing so would be unsafe, impractical, or impossible.

    a.    Department members will ensure this announcement is recorded using the activated BWC.

    b.    If circumstances prevent issuing the notice upon the initiation of the recording, the Department member will provide the notice as soon as practical.

6.    Sworn members will not unreasonably endanger themselves or another person to conform to the provisions of this directive.

B.    **Activation in Response to Crowds, First Amendemnt Activities and Civil Disturbances**

1.    Department members will document their actions during an incident response by adhering to Illinois state law and Department directives on video recording requirements, including the Department directive titled "Body Worn Cameras" and the Illinois Officer-Worn Body Camera Act (50 ILCS 706/10). Department body-worn cameras will be:

    a.    in "buffering" mode when the Department member is engaged in "community caretaking" functions. This applies to any task undertaken by a law enforcement officer in which the officer is performing an articulable act unrelated to the investigation of a crime, including but not limited to:

        (1)    crowd management efforts such as observing the crowd to assess any potential safety concerns, engaging in voluntary communication with crowd members, or supporting and protecting persons engaged in lawful First Amendment activities on a public way.

        (2)    attendance at community meetings where community members express their opinions, ideas, or beliefs.

        (3)    escorting an established First Amendment march or procession on a public way.

        NOTE:    Department members will activate their BWC during a "community caretaking" function when the encounter with the public becomes adversarial after the initial contact or a person is committing a criminal act or are in the early stages of committing a criminal act.

    b.    activated to electronically record all law-enforcement-related activities, including but not limited to:

        (1)    communicating, or attempting to communicate, with the crowd or its representatives to give instructions or warnings to the leaders or spokesperson of the crowd or the other participants regarding actions and observations, including potentially unlawful actions or any observed unlawful conduct.

(2) crowd control incidents where Department members are actively engaging the crowd by forming a static human barrier, preventing the breaching of a police line, physically engaging or entering a crowd, or directing a crowd to move.

(3) issuing a dispersal order or making an arrest in response to crowds, First Amendment assemblies, and civil disturbances.

(4) being approached by the person about a crime in-progress or observing an act that requires a law enforcement intervention, including becoming a victim of an assault or battery.

**NOTE:** Due to the technological capabilities of the BWC, an on-scene supervisor at such events may instruct the additional activation or deactivation of the BWC for limited durations of the event when it serves a proper police purpose or supports the documentation of the event, such as not powering on the BWC while in transit to an assignment or designated post to conserve battery life.

**REMINDER:** Department members may utilize discretion to activate the BWC for non-law enforcement related activities in situations that the member, through training and experience, believes will serve a proper police purpose or assist in documenting the incident.

C. **Deactivation of a Recording**

1. The Department member will not deactivate event mode unless:

    a. the entire incident has been recorded and the member is no longer engaged in a law-enforcement-related activity;

    For the purposes of the deactivation of BWCs, the Department has identified the following circumstances as the conclusion of a law-enforcement-related activity:

    (1) the member has cleared the assignment;

    (2) the member leaves the scene of the incident;

    (3) for arrestee transports, when the arrestee:

        (a) is secured in the processing room and the member is only conducting administrative functions of the Department alone or only in the presence of other sworn members; or

        (b) custody has been transferred to another Department member, lock-up personnel, mental health providers, or hospital personnel.

    (4) the highest-ranking on-scene Bureau of Patrol supervisor has determined that the scene is "*safe and secured*" in circumstances involving an officer-involved death investigation, firearm discharge, or any other use of force incident.

        (a) The scene may be considered "*safe and secured*" when all of the following conditions are met: all offenders are in custody or otherwise not in the area, medical aid has been requested/administered or the Chicago Fire Department (CFD) is on the scene, the involved officers have been identified, and the crime scene has been established.

        (b) The Bureau of Patrol supervisor determining that the scene is secured will announce the determination via the Office of Emergency Management and Communications (OEMC) dispatcher.

b.   requested by a victim of a crime;

c.   requested by a witness of a crime or a community member who wishes to report a crime; or

d.   the officer is interacting with a confidential informant.

> **EXCEPTION:**   Department members may continue or resume recording a victim or witness if exigent circumstances exist or if the officer has reasonable articulable suspicion that a victim, witness, or confidential informant has committed, is committing, or is about to commit a crime.

e.   *the member is involved in a firearms discharge incident or an officer-involved death incident and is participating in a Public Safety Briefing consistent with the Department directive titled* "Firearm Discharge and Officer-Involved Death Incident - Immediate Response" *and the procedures in item V-C-2 of this directive outlined below*

2.   *For incidents involving a firearms discharge or an officer-involved death*, Department members will *deactivate* their BWC *when* providing an oral response to the *questions of the* Public Safety *Briefing conducted by a sworn supervisor,* consistent with the Department directive titled "Firearm Discharge and Officer-Involved Death Incident - Immediate Response."

a.   *Upon the completion of a Public Safety Briefing, the Department supervisor who conducted the briefing will:*

(1)   *take control of and secure the Body Worn Camera (BWC) of the involved member.*

(2)   *continue to electronically record all law-enforcement-related activities using their BWC while on-duty, including responding to and engaging in calls for service and conducting investigations, consistent with Illinois Officer-Worn Body Camera Act (50 ILCS 706/10) and this directive.*

b.   *Department members not participating in a Public Safety Briefing at the scene of an incident involving a firearms discharge or an officer-involved death will:*

(1)   *continue to electronically record all law-enforcement-related activities using the BWC while on-duty, including responding to and engaging in calls for service and conducting investigations, consistent with Illinois Officer-Worn Body Camera Act (50 ILCS 706/10) and this directive.*

(2)   *not deactivate his or her activated Department-issued recording equipment (e.g., In-Car Video Systems, Body Worn Cameras) until so directed by an on-scene supervisor or until the conclusion of the incident in accordance with the procedures delineated in this directive.*

3.   The Department member will ensure that any request made by a victim or witness to deactivate the camera, unless impractical or impossible, is made by a victim or witness on the recording.

4.   When deactivating a BWC prior to the conclusion of an incident, the Department member will:

a.   verbally state the reason for the deactivation, as outlined in *Item V-C-1* above, on the BWC before deactivation, unless doing so would be unsafe, impractical, or impossible.

b. *reactivate their BWC after completing the necessary unrecorded activities and returning to other law enforcement-related activities regarding the incident. This may include but is not limited to, reactivating to conduct an arrest after speaking with a victim of a crime who requested deactivation, reactivating to investigate a scene after speaking with a community member who requested deactivation to report a crime, reactivating to return to crime scene processing by a supervisor after the completion of the Public Safety Briefing, or reactivating to capture an uncooperative arrestee after deactivation to complete arrestee processing.*

D. **Justification for Not Activating, Late Activation, and Early Deactivation of a Recording**

1. When not activating a BWC, activating the BWC after the beginning of a law-enforcement-related activity, or deactivating a BWC prior to the conclusion of an incident, Department members will:

a. verbally state the reason on the BWC. When a member fails to record an incident or circumstances warrant the verbal justification of a late activation or early deactivation as being unsafe, impractical, or impossible, the member will document the reason by:

(1) activating the BWC to event mode, and

(2) stating the type of incident, event number, and the reason for deactivating the recording.

b. notify their immediate supervisor.

c. document the reason in the narrative of the incident case report, if completed for the incident.

2. When notified of a BWC activation deficiency, the notified supervisor will document the incident on their Supervisor's Management Log and ensure the appropriate corrective actions are taken and documented.

VI. **PROHIBITED CONDUCT**

A. The BWC will not be activated to record:

1. individuals in residences or other private areas not open to the public unless:

a. there is a crime in progress,

b. during the service of a search warrant, or

c. other circumstances that would allow the officer to be lawfully present without a warrant (e.g., response to a call for service, lawful search for a person wanted for a criminal act).

2. inside medical facilities, except when directly relevant and necessary to a law enforcement investigation and approved by the member's immediate supervisor.

3. appearances at court or hearings. Members will turn off their BWC so that it is not in buffering mode after notifying the dispatcher and verbally announcing the reason for turning off the BWC.

4. in connection with strip searches.

**NOTE:** Department members will not activate the BWC to record strip searches.

5. personal activities of other Department members during routine, non-law-enforcement-related activities.

B. The audio recording of a private conversation is prohibited by law when obtained or made by stealth or deception or executed through secrecy or concealment.

**VII. OPERATIONAL PROCEDURES**

A. At the beginning of their tour of duty or upon being assigned to patrol or field duties, Department members will:

    1. receive their assigned BWC from the designated Department member and indicate receipt by completing the Personal Equipment Log (CPD-21.919);

    2. visually and physically inspect the BWC and ensure that it is their assigned BWC, fully charged, and operational;

    3. securely attach the BWC to the front of the member's person ensuring the camera lens captures the perspective of the member and is not obstructed by clothing or any other uniform item or equipment (e.g., attached to a member's outermost garment) consistent with training; and

    4. ensure the BWC is on buffering mode prior to leaving the station or their unit's Department facility.

        a. Department members assigned a Take-Home BWC will follow the procedures outlined in Item VII-A-2 through 4 at the beginning of their tour of duty or upon being assigned and responding to the incident.

        b. In response to crowds, First Amendment assemblies, and civil disturbances, Department supervisors will monitor and manage the battery charge status of radios and body-worn cameras assigned to members within their command. Due to the technological capabilities of the BWC, an on-scene supervisor at such events may instruct the additional activation or deactivation of the BWC for limited durations of the event when it serves a proper police purpose or supports the documentation of the event, such as not powering on the BWC while in transit to an assignment or designated post to conserve battery life.

B. During the tour of duty, Department members will:

    1. be responsible for the proper use, care, and maintenance of their assigned BWC consistent with this directive.

    2. activate their BWC to event mode to record incidents consistent with this directive.

    3. when responding to incidents, including self-initiated activities and calls for service, notify OEMC to ensure a PCAD event number is obtained for the incident. If responding to the incident as an assist unit, notify OEMC of their response to the incident and obtain the primary unit's event number consistent with training.

    4. annotate all reports that relate to a recorded incident as "BWC" and document the incident's event number either in the designated field or narrative of the report.

    5. if seeking approval of felony charges through the Assistant State's Attorney Felony Review Unit, inform the ASA that the incident was recorded using a BWC.

    6. document the review of their BWC recording of an incident in the narrative portion of any report they complete for the incident (e.g., incident case report, Arrest Report, Tactical Response Report).

        a. Except for incidents outlined below, Department members may view their BWC recording of an incident prior to writing an initial report related to the incident.

        **EXCEPTION:** Department members **will not** have access to or view their BWC recordings of an incident or the BWC recordings of other Department members **prior to writing an initial report for the following incidents**:

      (1)     A Department member has been involved in or is a witness to an officer-involved firearm discharge or officer-involved death incident.

      (2)     Use of deadly force incidents or use of force incidents resulting in great bodily harm or death.

      (3)     If a Department member is ordered to write a report in response to a complaint or misconduct investigation.

    b.    When the above-listed exceptions apply, after writing an initial report, a Department member may review his or her BWC recording and, subject to a supervisor's approval, will complete and submit a supplemental report, that will include documentation regarding the access to the video, by the end of the tour of duty in which the Department member reviewed the BWC recording.

        **NOTE:**     Supervisors will document in any denial of a member completing a supplemental report and the rationale for the denial.

7.    in any instance where a BWC was turned off or deactivated consistent with this directive, turn on or reactivate the BWC if required and as soon as it is safe and practicable to do so.

    **EXAMPLE:**     The member is cleared from court or the interview of the person requesting deactivation is completed.

8.    notify their supervisor as soon as practicable if, at any time during their tour of duty:

    a.    they are unable to utilize the BWC or download digitally recorded data due to technical problems.

    b.    their assigned BWC or a component thereof becomes inoperable (e.g., dead battery, inoperable audio or video recording functions) or the BWC is lost, stolen, or damaged.

C.    At the conclusion of a tour of duty, Department members will:

1.    return their assigned BWC to the designated Department member and ensure the BWC is placed in the assigned slot on the docking station.

2.    sign-in the BWC on the Personal Equipment Log (CPD-21.919).

3.    flag any BWC recordings for retention in Evidence.com, consistent with the requirements in Item XII of this directive.

D.    When their recordings are identified as being unmatched to a PCAD event number, Department members will match their BWC recordings with the correct associated PCAD event number and record the full ten digit PCAD event number in the "ID" field of the Evidence.com record.

E.    When a Take-Home BWC was activated to event mode to capture a law-enforcement related *activity*:

1.    the Department member assigned the Take-Home BWC will:

    a.    notify their immediate supervisor.

    b.    relocate to the designated Department facility prior to the conclusion of their tour of duty.

    c.    provide their Take-Home BWC to the designated Department member and ensure the BWC is placed in the assigned slot on the docking station.

(1)    If the digitally recorded data download process is not complete before the conclusion of their tour of duty, *the member will* receive a temporary replacement Flex BWC when the assigned Take-Home BWC is out-of-service due to being docked and downloading digitally recorded data. Upon completion of the downloading of the digitally recorded data, the member will return the replacement Flex BWC and receive their assigned Take-Home BWC.

(2)    If the digitally recorded data download process has been completed by the conclusion of their tour of duty, the member will retrieve their assigned Take-Home BWC.

2.    the notified supervisor will:

    a.    relocate with the member assigned the BWC to the designated Department facility prior to the conclusion of their tour of duty.

    b.    ensure the BWC is docked and document the docking/storage of the BWC at the Department facility on a Personal Equipment Log (CPD-21.919).

    c.    log into Evidence.com to verify the status and confirm the completion of the download of the digitally recorded data from the BWC. When an assigned BWC is out-of-service due to being docked and downloading digitally recorded data:

    (1)    assign a replacement Flex BWC, via the Axon mobile environment, to sworn members requiring a temporary replacement of a Take-Home BWC, and

    (2)    ensure the return of the replacement Flex BWC and receipt of the member's assigned Take-Home BWC upon completion of the downloading of the digitally recorded data.

## VIII.   SUPERVISORY RESPONSIBILITY

A.    All supervisors will ensure Department members are utilizing their BWCs consistent with this directive, including the proper use, care, and maintenance of the BWCs.

B.    A supervisor assigned to oversee Department members utilizing Department-issued BWCs will:

    1.    if a member utilizes a BWC that is not assigned to him or her, initiate an investigation and reassign the recording in Evidence.com to the member who created the recordings.

    2.    obtain a P-Quip – Equipment Support Ticket whenever a member's BWC becomes inoperable or the member is unable to utilize the BWC or download digitally recorded data due to technical problems.

    3.    initiate an investigation when notified of a missing, lost, or damaged BWC.

    4.    ensure members who reviewed a BWC recording prior to writing any report document this fact in the narrative portion of the report prior to the supervisor's approval of the report.

    5.    document any supervisory reviews or actions taken in respect to BWCs on their Supervisor's Management Log (CPD-11.455).

    6.    document any supervisory observation that results in taking a support action with a Department member regarding the use of a BWC or the reviewing of a BWC recording in a Performance Recognition System Portfolio Report consistent with the Department directive titled "Performance Recognition System."

C.    Department supervisors are required to view recordings on Evidence.com when completing their assigned supervisory responsibilities in regards to:

1. investigating a complaint against an officer or a specific incident in which the Department member was involved, consistent with the Department directive titled "Complaint and Disciplinary System."

   NOTE: The initiating supervisor is encouraged to view the relevant BWC recording for evidence of the allegation of misconduct or complaint.

2. reviewing and evaluating the performance of Department members that have had a pattern of actions or allegations of misconduct and have been placed in the Behavioral Intervention System or Personnel Concerns Program consistent with the respective Department directives.

D. District station supervisors (DSS) will ensure:

1. the daily assignment roster sent to OEMC and entered in the Police Computer Aided Dispatch (PCAD) identifies members who are assigned a BWC by placing the letter "K" next to the members' names.

2. any supervisory review or actions taken in respect to a BWC is documented on the Watch Incident Log (CPD- 21.916).

3. the designated Department member issues and receives Department members' BWCs consistent with the provisions outlined in this directive, including the docking of BWCs to initiate charging and the downloading of the digitally recorded data.

E. Whenever a BWC-related incident requires the completion of a Tactical Response Report (TRR) (CPD-11.377), the lieutenant or above/exempt level incident commander responsible for *investigating* the reportable use of force documented on the TRR will review:

1. the BWC videos related to the involved member's reportable use of force, and

2. verify the reporting procedures outlined in the Department directive titled "Incidents Requiring the Completion of a Tactical Response Report" are followed and that the members involved complied with Department policy.

   NOTE: If unable to view a BWC-recorded incident, the investigating supervisor will notify the Crime Prevention Information Center (CPIC) and request assistance from a designated member of Office of Public Safety Administration, Information Technology.

F. The watch operations lieutenant (WOL) will:

1. ensure members who reviewed a BWC recording prior to writing an arrest report document this fact in the narrative portion of the Arrest Report prior to initial approval of probable cause for any arrests.

2. whenever operationally feasible, review video of any arrest recorded by a BWC as part of the approval of probable cause. The WOL will document whether or not the BWC recording was reviewed in the "Watch Operations Lieutenant Comments" section of the Automated Arrest Application.

G. **Random Reviews**. District watch operations lieutenants (WOL) will review one randomly selected BWC recording on their respective watch per tour of duty. Visiting lieutenants and tactical lieutenants designated as the WOL will complete the required random body worn camera video review process for the date, watch, and unit that they are assigned as a WOL.

1. In units outside District Law Enforcement with Fixed Assignment BWCs, the commanding officers will designate a supervisor the rank of lieutenant or above to conduct the review of one BWC recording per tour of duty *for days the supervisor is assigned to duty*.

        **EXAMPLE:** *A unit with only one lieutenant as the commanding officer will not be required to conduct a random video review for days the designated supervisor is not available and assigned a tour of duty (e.g., regular-day-off, attending training). However, if the position is filled on a temporary basis, (e.g., furlough relief), the visiting supervisor will complete the required random body worn camera video review process for the date, watch, and unit that they are assigned to duty. Therefore, units outside District Law Enforcement with Fixed Assignment BWCs may not have a random video review conducted for each calendar day.*

2. The WOL or the designated unit reviewing supervisor will:

    a. access the "Random Video Review (RVR)" application in CLEAR and select the date range, watch, and unit associated with the required review.

      (1) The RVR will randomly identify one BWC recording for each date for the watch and unit identified.

      (2) The BWC recording is identified based on date, unit, and the times of day for the selected watch. Therefore, the recording selected may have been captured by a Department member not assigned to their respective watch.

      **NOTE:** If the RVR is unavailable or does not identify a BWC recording for review, the WOL will contact the Help Desk and document the unavailability of the video and Help Desk Ticket number on the Body Worn Camera Videos Viewed Report (CPD-21.131) for that date.

    b. select the identified recording to review via Evidence.com.

    c. review the identified recording to ensure compliance with policy, assess the need for additional training and tactical improvement, ensure close and effective supervision, and verify that an PCAD event number has been assigned for the recording.

    d. after viewing the recording, select "Mark Reviewed" to indicate the completion of the viewing and indicate if the recording reviewed included a civilian interaction.

    e. complete a Body Worn Camera Video Review Report (CPD-21.130) for the one randomly selected BWC recording viewed per tour of duty and forward it to the executive officer.

      **REMINDER:** *In units outside District Law Enforcement with Fixed Assignment BWCs, a random video review will only be conducted by the designated reviewing supervisor the rank of lieutenant or above for days the supervisor is available and assigned to duty.*

    f. log each video viewed in a Body Worn Camera Videos Viewed Report (CPD-21.131), and forward the completed report to the executive officer at the end of each month.

H. The district executive officer will complete a Unit Level Body Worn Camera Program Evaluation Report in a To-From-Subject Report at the end of each month and submit it to the unit commanding officer no later than the 16th of the following month.

1. The criteria for the unit level evaluation report will consist of:

    a. an evaluation of the Body Worn Camera Total Activity Report.

    The Body Worn Camera Total Activity Report:

      (1) generates members' BWC activation activity.

      (2) is accessed on The Wire under the BWC tab.

(3)      will be generated and analyzed weekly to ensure compliance with Department policy and training.

> **NOTE:**    The evaluation of the report will include a review of how many videos a member assigned a BWC has recorded respective to his or her current assignment and number of days worked.

    b.    how many investigations were initiated for missing, lost, or damaged BWCs and the status of the investigation.

    c.    how many P-Quip – Equipment Support Tickets were obtained for any reason for a BWC and a detailed description of the reason.

    d.    a compiled evaluation of the Body Worn Camera Video Review Reports ([CPD-21.130](CPD-21.130)).

    e.    all district Body Worn Camera Videos Viewed Reports ([CPD-21.131](CPD-21.131)).

> **NOTE:**    If the Body Worn Camera Videos Viewed Report indicates that the RVR was unavailable or did not identify a BWC recording for review, the district executive officer will notify the appropriate WOL to review the selected video for that district, watch, and date.

    f.    all identified non-compliance issues, any corrective action that was taken, and a description of the incident including the status.

2.    The district executive officer will ensure corrective measures, are taken for members who are found to be in non-compliance of Department policy or training. Any corrective action taken will be documented on the Unit Level Body Worn Camera Program Evaluation Report.

> **NOTE:**    In units outside District Law Enforcement with Fixed Assignment BWCs, commanding officers will designate a supervisor the rank of lieutenant or above to complete the Unit Level Body Worn Camera Program Evaluation Report.

I.    District commanders/unit commanding officers or their designees will:

1.    review BWC information quarterly in Evidence.com to ensure each recording has a PCAD event number assigned to it.

2.    ensure that Body Worn Camera Video Review Reports ([CPD-21.130](CPD-21.130)) are retained at the unit level.

3.    review and approve the monthly Unit Level Body Worn Camera Program Evaluation Report, which includes the criteria established in item VIII-H of this directive and will:

    a.    submit the report, before the end of the month, through the chain of command to the *Commander*, Inspections Division, ATTN: BWC Program Evaluation Committee; and

    b.    email the report to the Inspections Division at [126.notification@chicagopolice.org.](mailto:126.notification@chicagopolice.org)

# IX.    UNIT RESPONSIBILITIES

A.    Office of Public Safety Administration, Information Technology:

1.    will ensure all authorized Department members and any authorized outside-agency personnel have access to view recordings on the Evidence.com database that relate to their official duties.

NOTE:        Supervisors, members of the Bureau of Internal Affairs, members of the Inspections Division, and Civilian Office of Police Accountability (COPA) investigators may view the digitally recorded footage from BWCs on Evidence.com as determined by their clearance level and as authorized by the Managing Deputy Director, Information Technology, Office of Public Safety Administration.

    2.    is responsible for:

        a.    the management and maintenance of the equipment and technology used in support of the BWCs, including assigning, reassigning, and replacing BWCs.

        b.    the retention of all digitally recorded data created by the BWC and downloaded to Evidence.com are retained in accordance with the Department's Forms Retention Schedule (CPD-11.717), the Illinois Officer-Worn Body Camera Act (50 ILCS 706/10), and Item XI of this directive.

        c.    the annual report consistent with 50 ILCS 706/10-25 and Item XIV of this directive.

        d.    promptly providing Department members who have reported an inoperable or damaged BWC with a replacement (temporary or permanent) no later than the beginning of the reporting member's next tour of duty.

        e.    ensuring the automated process to match BWC recordings with the associated PCAD event number is conducted on a daily basis.

        f.    reporting to units when BWC recordings remain unmatched to a PCAD event number.

B.    The Inspections Division will promote compliance with the policy and procedures of this directive consistent with procedures established by the Commander, Inspections Division.

C.    The Training Division will ensure a process is developed and maintained to allow the use of functional BWCs for training purposes without retention of the BWC recordings beyond what is intended for training reviews, debriefings, or other uses for the advancement of training.

NOTE:        Activities during Department training exercises recorded on BWC as outlined above are not considered law-enforcement-related activities for retention purposes under the Illinois Officer-Worn Body Camera Act (50 ILCS 706/10). However, if during a training exercise a Department member engages in a law-enforcement-related activity as defined in this directive, the member will follow the provisions of this directive for the use of the BWC and any recordings.

D.    The Audit Division will regularly audit:

    1.    samples of BWC recording to assess the Department member's use of BWCs and compliance with this policy to identify any trends that warrant changes to policy, training, tactics, equipment, or Department practices.

    2.    the random reviews conducted and evaluation reports completed by units assigned Fixed BWCs to assess compliance with policy and to identify any trends that warrant changes to policy, training, tactics, equipment, or Department practices.

## X.    OFFICER-INVOLVED SHOOTING OR OTHER INCIDENT THAT INVOLVES GREAT BODILY HARM TO A PERSON

A.    Department members at the scene of an officer-involved shooting or other incident that involves great bodily harm or death will not deactivate their BWC until directed to do so by an on-scene supervisor.

B.    Department members involved in an officer-involved shooting or other incident that involves great bodily harm will provide their BWCs when so directed by a supervisor.

C.    The assigned street deputy will direct a supervisor to take control of the BWCs once the scene is secured.

D.    The supervisor directed by the street deputy to take control of the BWC will ensure:

    1.    the recording is available for immediate viewing by authorized personnel investigating the incident; and

    2.    the BWC is returned to the docking station in the unit of assignment and uploaded.

## XI.    VIEWING DIGITALLY RECORDED DATA

A.    Recordings are stored and viewed on Evidence.com.

B.    If the digitally recorded data must be viewed before it is uploaded to Evidence.com, the BWC will be taken to a Department facility equipped with a computer or other device identified by Office of Public Safety Administration, Information Technology, as capable of showing the recording.

C.    Department members authorized to view recordings on Evidence.com will use their unique user access credentials from a Department computer at a Department facility.

D.    Non-authorized Department members who are seeking to view copies of recordings from a BWC will complete the "Digitally Recorded Data Viewing/Hold/Duplication Request" (CPD-65.224) and forward it to the Administrative Support Division.

    **NOTE:**    All digitally recorded data created with BWCs are the property of the Department. Dissemination outside the Department of any BWC-recorded data is strictly prohibited without specific authorization by the Superintendent or an appointed designee in compliance with (50 ILCS 706/) Law Enforcement Officer-Worn Body Camera Act. Unauthorized duplicating, deleting, altering, capturing, viewing, accessing, or disseminating of any audio or video from BWC footage is strictly prohibited.

## XII.    RETENTION

All digitally recorded data created by the BWC will be retained in accordance with the Department's Forms Retention Schedule (CPD-11.717) and the Illinois Officer-Worn Body Camera Act (50 ILCS 706/10).

A.    Recordings made on BWCs must be retained for a period of 90 days unless any incident captured on the recording has been flagged for extended retention.

B.    Under no circumstances will any BWC recording of a flagged incident be altered or destroyed prior to two years after the recording was flagged. If the flagged recording was used in a criminal, civil, or administrative proceeding, the recording will not be destroyed except upon a final disposition and order from the court.

C.    BWC recording will be flagged in Evidence.com in the following manner:

    1.    Office of Public Safety Administration, Information Technology, will ensure that encounters matched with PCAD events resulting in a detention, including investigatory stops or arrests, excluding traffic stops which resulted in only a minor traffic offense or business offense, are flagged.

    2.    The involved member's supervisor will flag recordings that capture:

        a.    an officer discharging his or her firearm or using force during the encounter;

        b.    death or great bodily harm to any person;

        c.    incidents that a supervisor, prosecutor, defendant, or court determines has evidentiary value in a criminal prosecution.

    3.    The Bureau of Internal Affairs will flag recordings that relate to:

   a.  a complaint against a Department member, or

   b.  Department member who is the subject of an internal investigation or otherwise being investigated for possible misconduct.

  4.  The Administrative Support Division will flag recordings that are subject to a court order, subpoena, or a Freedom of Information Act (FOIA) request.

  5.  Recording members may flag their own recordings for purposes related to their duties.

  6.  Recordings may be flagged by other investigative bodies that have the legal authority to do so.

D.  Prior to the 90-day storage period, recordings may be flagged and retained if a supervisor designates the recording for training purposes.

E.  In the event any BWC recording is altered, erased, or destroyed prior to the expiration of the 90-day storage period, the Department will maintain, for a period of one year, a written record including:

  1.  the name of the individual who made such alteration, erasure, or destruction, and

  2.  the reason for any such alteration, erasure, or destruction.

**XIII.  BODY WORN CAMERA PROGRAM EVALUATION COMMITTEE**

A.  Committee Membership

  1.  The Body Worn Camera Program Evaluation Committee will consist of the following members, or their designee:

   a.  Chief, Bureau of Patrol, who will serve as chairperson of the committee;

   b.  Chief, Office of Constitutional Policing and Reform, who will serve as vice-chairperson of the committee;

   c.  Chief, Bureau of Detectives;

   d.  Chief, Bureau of Counterterrorism;

   e.  Chief, Bureau of Internal Affairs;

   f.  General Counsel to the Superintendent;

   g.  Deputy Chief, Training and Support Group;

   h.  Deputy Director, Risk Management Unit;

   i.  Commander, Inspections Division;

   j.  Commanding officer, Research and Development Division;

   k.  Commander, Labor Relations Division;

   l.  Assistant Director, Audit Section; and

   m.  Designated police officer, Bureau of Patrol.

  2.  Membership of the Body Worn Camera Program Evaluation Committee will also include Office of Public Safety Administration personnel having responsibility for the administrative functions of the Department, to include, overseeing and coordinating the Department's technological, budget, and fiscal responsibilities.

  3.  The chairperson will designate a police officer from the Bureau of Patrol to serve on the committee.

  4.  Committee meetings will convene quarterly and upon notification from the chairperson.

5.  The Commander, Inspections Division, will analyze and compile all reports received and present a report to the Body Worn Camera Program and Evaluation Committee at the quarterly meetings.

B.  The Body Worn Camera Program Evaluation Committee is responsible for:

1.  ensuring the program is operating efficiently and within compliance of the law, Department policies, and best practices.

2.  referring any recommended Department-wide actions (e.g., training and policy recommendations) based on observed or reported trends identified in BWC usage or recordings (e.g. patterns of departing from Department policy, officer safety issues) to the appropriate Department unit responsible for the implementation.

3.  evaluating the effectiveness of the program and determine if it should be expanded or modified.

4.  advising the Superintendent on the recommendations concluded by the committee.

## XIV.   ANNUAL REPORT TO THE ILLINOIS LAW ENFORCEMENT TRAINING AND STANDARDS BOARD

The Department will produce an annual report on the use of BWCs to the Illinois Law Enforcement Training and Standards Board, on or before May 1 of each year. This report will include:

A.  a brief overview of the makeup of the Department, including the number of members using BWCs;

B.  the number of BWCs used by the Department;

C.  any technical issues with the equipment and how those issues were remedied;

D.  a brief description of the review process used by supervisors within the Department;

E.  for each recording used in prosecutions of conservation, criminal, or traffic offenses or municipal ordinance violations:

1.  the time, date, location, and district of the incident;

2.  the offense charged and the date charges were filed; and

F.  any other information relevant to the use of BWCs.

(Items indicated by *italics/double underline* have been added or revised.)

Authenticated by MWK

Larry Snelling
Superintendent of Police

24-009 ASH/MWK