**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

STATE OF ILLINOIS

           Plaintiff,

     v.

CITY OF CHICAGO,

           Defendant

Case No. 17-cv-6260

Judge Rebecca R. Pallmeyer

---

**SIG SAUER INC.'S RESPONSE TO THE LODGE'S SUR-REPLY
TO AFFIDAVIT OF SGT. WASIM M. SAID**

---

Sig Sauer Inc. ("Sig Sauer") respectfully submits the following in response to Chicago John Dineen Lodge #7's ("Lodge") sur-reply, (Doc. 1338), and in opposition to the Lodge's request to intervene, (Doc. 1282), and states as follows:

## I.    INTRODUCTION

The Lodge's request to intervene and for a court order declaring – as a matter of law – that the Sig Sauer P320 is an affront to the sanctity of human life is based on an entirely false premise – that the P320 is defective and abnormally dangerous. The Lodge's extraordinary request is made without any support, substantiation, data, expert reports, or any discovery whatsoever. There is simply no basis for this Court to reach such a conclusion, and further, granting the Lodge's request would result in extreme prejudice to Sig Sauer. The Lodge's request should be denied.

The P320 has undergone the most rigorous testing and evaluation by military and law enforcement agencies around the world, which have shown that the P320 is among the world's most reliable firearms and cannot – under any circumstance – discharge without the user pulling the trigger. Notably, even the City and Lodge *admit* that they have been unable to replicate such a defect. This is

1

entirely unsurprising because nobody – *ever* – has replicated a P320 pistol firing without trigger actuation. Neither the Lodge nor the City dispute these forensic results – nor can they. Rather, the Lodge relies on anecdotal stories and media reports to declare, without any scientific evidence, that the P320 is defective and unsafe.

The Lodge's assertions and arguments fall woefully short of justifying their extraordinary request and should be rejected. Alternatively, and at a minimum, this Court must allow Sig Sauer to intervene and afford the opportunity to conduct discovery on the Lodge's assertions before the Court considers entering an order declaring – as a matter of law – that carrying the P320 is inconsistent with the CPD's policy on the sanctity of human life. Sig Sauer has a direct and substantial interest in the issues before the Court that is not being protected or represented by existing parties to the litigation.

## II.     ARGUMENT

The P320 has been the subject of years of comprehensive forensic and scientific testing that has determined that the P320 is a non-defective, safe, and reliable firearm. Moreover, courts around the country have found that plaintiffs cannot prove any defect with the P320, including in cases cited by the Lodge and the City. Curiously, none of this is referenced in any of the Lodge or City's submissions. Instead, both rely solely on unscientific reports and conjecture without providing any context whatsoever about what their assertions and purported conclusions are based upon.

Sig Sauer submits that this Court should consider the objective, forensic, and scientific evidence submitted herein, as well as the Lodge's lack thereof, before opining on the extent to which the P320 poses a safety risk to the CPD officers and the public.

1. **There is no basis for this Court to find as a matter of law that the Sig Sauer P320 is defective or an unreasonable danger to CPD officers or the public.**

The P320 was designed and engineered to ensure its reliability and safety. As such, it is no wonder that numerous courts and experts have concluded – as a matter of fact and law – that the concocted safety concerns regarding the P320 are without merit.

### A. The P320's design and engineering ensure its reliability and safety.

The P320 model firearm is a semi-automatic, striker-fired, centerfire pistol. The P320 is the model of choice among multiple braches of the military and law enforcement agencies. In the seven-plus years the Sig Sauer P320 has been in production, it has risen to be a market leader, in part due to the P320's excellent reliabilty and performance. The P320 model firearm incorporates three major internal safety features that act to prevent the firearm from discharging without actuation of the trigger mechanism (i.e. a trigger pull): (1) the Sear/Striker engagement, (2) the Secondary Sear Notch, and (3) the Striker Safety Lock. Each of these safety features work independently of the other, and are effective on their own in preventing the firearm from discharging without a trigger pull.



This engineering ensures that, even if one of the safeties is overcome or disengaged, the other safeties prevent the firearm from discharging. For the P320 model firearm to fire, all three safeties must be disengaged, such as occurs when the trigger is pulled.

### i. Sear/Striker engagement

The first safety feature is the positive connection between the sear and striker pin when the firearm is at rest in a charged condition. In order for the firearm to discharge, the sear must move in a downward direction, completing the tensioning of the striker and then releasing the striker pin forward to impact the primer of a chambered cartridge. If these two components are not disengaged, the firearm cannot discharge. The design of these two components, and how they interact with each other, act to keep the components in positive connection until a sufficient force is applied to the sear to break the connection (specifically through actuation of the trigger mechanism).

### ii. Secondary Sear Notch

The second safety feature in the design of the P320 is the secondary sear notch, which is a redundant safety feature that acts to arrest forward movement of the striker pin in the unlikely event that the striker pin were to be disengaged from the primary sear notch without a trigger pull through an abusive event, such as a severe impact. If such an unlikely event were to happen, the released striker pin would only travel forward until being caught by the secondary sear notch, which remains in the path of the striker pin unless the sear has been rotated downwards by actuation of the trigger mechanism. This safety feature works entirely independently of the Striker Safety Lock and would remain effective in the event of any failure in that safety feature. Similarly, any failure in the Secondary Sear Notch would have no effect on the Striker Safety Lock.

### iii. Striker Safety Lock

The third safety feature of the P320 model firearm design is the striker safety lock. The striker safety lock system is another redundant safety feature that blocks the striker pin from moving forward and impacting (thereby igniting) a chambered cartridge without actuation of the trigger mechanism if the sear/striker pin connection is somehow lost. The striker safety lock system consists of two main

components: the safety lock and the safety lever. The safety lock is a sheet metal component which, when at rest, rides along a shelf formed on the striker pin body:



If the striker pin of the firearm is released without the safety lock being raised out of this at rest position, the safety lock will come into contact with the striker pin safety notch, preventing the forward movement of the striker pin into a chambered cartridge. In order for the firearm to discharge, the safety lock must be disengaged prior to release of the striker pin from the sear.

***

Acting in concert, these three safety features (the sear/striker pin connection, secondary sear notch, and the striker safety lock) prevent the firearm from discharging. Specifically, each require that the trigger be pulled by someone or something to be disengaged, and due to their independent nature, are each effective at preventing a discharge of the firearm without a trigger pull.

**B. Courts around the country have found that allegations regarding the P320 being defective cannot be proven, while experts have concluded that the P320 is, in fact, a safe and reliable firearm.**

**i. Courts around the country have dismissed the same allegations the Lodge and City raise here.**

As set forth in the Lodge and City's briefing, the P320 has been the subject of litigation relating to alleged unintentional discharges. (Doc. 1293-1, at ¶ 8.) However, what they neglect to state is that

courts – and juries – around the country have dismissed claims that the P320 is defective. For instance, see:

- *Stephen Mayes v. SIG SAUER, Inc.*, 19-cv-146 (W.D. Ky.) (summary judgment entered in favor of Sig Sauer on 3/30/2023), (Exhibit 1);

- Derick Ortiz v. SIG SAUER, Inc., 19-cv-01025 (D.N.H.) (case dismissed on 1/24/2024), (Exhibit 2);

- *Thomas Frankenberry and Sansani Frankenberry v. SIG SAUER, Inc.*, 19-cv-2990 (D.S.C.) (summary judgment entered in favor of Sig Sauer on 2/4/2022), (Exhibit 3);

- *Tyler Herman v. SIG SAUER, Inc.*, 20-cv-94 (W.D. Okla.) (summary judgment entered in favor of Sig Sauer on 9/8/2023), (Exhibit 4);

- *Kyle Guay v. SIG SAUER, Inc.*, 20-cv-736 (D.N.H.) (jury verdict on all counts in favor of Sig Sauer on 7/25/2022), (Exhibit 5)

- *Jimmy Jinn v. SIG SAUER, Inc.*, 20-cv-1122 (S.D.N.Y.) (summary judgment entered in favor of Sig Sauer on 9/13/2023), (Exhibit 6);

- Justin Schneider v. SIG SAUER, Inc., 20-cv-01190 (D.N.H.) (case dismissed on 5/24/2022), (Exhibit 7);

- *Brittany I. Hilton v. SIG SAUER, Inc.*, 21-cv-441(E.D. Tex. Beaumont Div.) (summary judgment entered in favor of Sig Sauer on 6/8/2023), (Exhibit 8);

- *Howard Robert Northrop v. SIG SAUER, Inc.*, 2021-ca-00611 (Circuit Court of the Thirteenth Judicial Circuit in and for Hillborough County, Florida) (summary judgment entered in favor of Sig Sauer on 9/13/2023), (Exhibit 9);

- *Michael Colwell and Julia Colwell v. SIG SAUER, Inc.*, 21-cv-1200 (N.D.N.Y) (summary judgment entered in favor of Sig Sauer on products liability and negligence claims 9/17/2024 and Judgment entered in favor of Sig Sauer on 10/18/2024), (Exhibit 10);

- *James B. Hulett v. SIG SAUER, Inc.*, 21-CA-9783 (Circuit Court of the 13th Judicial Circuit in and for Hillsborough County, Florida) (case dismissed on 10/2/2024), (Exhibit 11);

- Walter Collette, Jr. v. SIG SAUER, Inc, 21-cv-11392 (D. Mass) (case dismissed on 8/15/2023), (Exhibit 12);

- *Jack Anthony Williams v. SIG SAUER, Inc.*, 22-cv-48 (E.D.N.C.) (summary judgment entered in favor of Sig Sauer on 9/8/2025), (Exhibit 13);

- Elvis Ramon Green Berrios v. SIG SAUER, Inc, 22-cv-1002 (D.P.R.) (case dismissed on 3/11/2025), (Exhibit 14);

- *Harvey Winningham v. SIG SAUER, Inc.*, 22-cv-1037 (D. Ariz.) (summary judgment entered in favor of Sig Sauer on 8/7/2024), (Exhibit 15);

- *Leonce White v. SIG SAUER, Inc.*, 22-cv-1985 (N.D. Ga. Atlanta Div.) (summary judgment entered in favor of Sig Sauer on 1/25/2024), (Exhibit 16);

- Angelo Valentino v. SIG SAUER, Inc., 23-cv-01309 (D.N.J.) (case dismissed on 7/24/2024), (Exhibit 17); and

- *Coy J. Mathis v. SIG SAUER, Inc.*, 23-055CA (Circuit Court of the Third Judicial Circuit in and for Taylor County, Florida) (case dismissed on 4/2/2024), (Exhibit 18).

Importantly, these matters were decided with the benefit of full discovery and a developed record relating to the P320's design, engineering, safety profile, and expert discovery. The Lodge's extraordinary request here comes without the benefit of any such discovery.

Moreover, it is not without irony that the Lodge points to the fact that Sig Sauer has been named as a defendant in cases involving allegations of unintentional discharges, suggesting that being named as a defendant implies some level of culpability. Surely, the Lodge does not take that same position regarding the fact that their own officers and the CPD are currently defendants in *hundred*s of active civil rights lawsuits, as if that fact implies their officers have violated the Consent Decree's emphasis on the sanctity of human life policy.

### ii. Experts have concluded, to a reasonable degree of scientific certainty, that the P320 is neither defective nor at particular risk of unintentional discharges.

Experts and mechanical engineers with specializations in product design have examined, inspected, and tested the P320 and conclude that the design of the P320 model firearm, including its internal safety features, prevent the firearm from discharging without someone or something pulling the trigger. This conclusion has been confirmed through rigorous testing that ultimately led to the conclusion that the discharges at issue were the result of user error – not any product defect.

The Lodge and the City cite to three cases in which puported experts opined that "they believe the P320 has several design and manufacturing flaws." (Doc. 1293-1, at ¶ 8.) In the first, *Hilton v. Sig Sauer,* 21-cv-441 (E.D. Tex.), the cited "expert" was a "Timothy Hicks" who the court **excluded** from testifying as a qualified expert. (Exhibit 19, Order Exculding Plaintiff's Expert and Granting SJ In Favor of Sig Sauer).[1] The second case cited, *Abrahams v. Sig Sauer,* No. 22061213 (Phila. C.P. 2022), involved allegations that the P320 trigger pull was "too short" (as opposed to allegations that the gun discharges without a triger pull), and improtnatly the "multi-million-dollar award" cited by the Lodge and City (i.e. punitive damage award) has already been reversed, and the remaining findings are still up on appeal. (Exhibit 22, Appellate order.) The third case, *Davis v. Sig Sauer*, 22-cv-10 (E.D. Ky.), was dismissed on summary judgment and judgment was entered in Sig Sauer's favor. (Group Exhibit 23, Orders Granting SJ and Judgment for Sig Sauer.)

Conversely, Derek Watkins (a mechanical engineer with a master's degree in mechanical engineering),[2] has inspected and tested 46 separate P320 pistols, and based on his inspections and testing concludes that the P320 passes all function tests, and as designed, only discharges with a contemporaneous and full actuation of the trigger. (Exhibits 25-28, Watkins Reports).[3] Notably, Mr. Watkins has *never* been excluded from testifying as an expert when offering opinions related to the P320 and ultimately concludes that:

- the P320 was never made to discharge absent a trigger pull. (*Id.*);

- the P320's control components do not possess any manufacturing or design defects (*Id.*); and

---

[1] Notably, Mr. Hicks was similarly dismissed as in expert in two additional cases brought against Sig Sauer. (Exhibit 20, *Mayes v. Sig Sauer*, 19-cv-146 (W.D. Ky.); Exhibit 21, *Jinn v. Sig Sauer*, 20-cv-1122 (S.D.N.Y.))

[2] *See* Derek Watkins CV attached as Exhibit 24.

[3] As set forth above, Mr. Watkins has inspected 46 separate P320s. Rather than attaching all related reports, Sig Sauer is attaching a sample as Exhibits 25-28 and can represent that the ultimate conclusions in all are substantially similar.

- the P320 is without any design or manufacturing defect that would cause the P320 to discharge absent a trigger pull. (*Id.*)

Ultimately, the forensic testing, physical evidence, and all root cause analysis conclusively demonstrate that allegations of product defect causing unintentional discharges are entirely without merit, the P320 is safe in design and manufacture for its intended and reasonably foreseeable uses, and the alleged incidents were the result of user error. (*Id.*)

## 2. The Lodge and City's alleged safety concerns regarding the P320 are meritless and without any objective support.

The Lodge contends in their sur-reply that the "continued use of the P320 as a primary duty weapon interferes with one of the primary stated purposes of the Consent Decree [and] commitment to the principle of the sanctity of life . . ." (Doc. 1338 at ¶ 12.) This dubious conclusion is based on non-specific "research" that, according to the Lodge, shows that the P320 has "been known to cause some of the unintentional discharges." *Id.* at ¶ 18. However, the only "research" referenced in any of the briefing by either the Lodge or the City is limited to anecdotal reports, informal conversations, and media reports which they assert supports their conclusion that the P320 poses unreasonable risks to CPD members and the public, all while simultaneously *admitting* that the only objective testing that was performed *failed to replicate any safety concerns.* (Doc. 1293-1, at ¶ 7.)

For instance, the Lodge relies on a May 16, 2025 affidavit by John Catanzara who purports to have been involved in contract negotiations between the Lodge and the City, "including negotiations relating to an abnormally dangerous working condition involving [the P320] firearm," but neither the Lodge nor Mr. Catanzara cite to an underlying basis for Mr. Catanzara's conclusion that the P320 is "abnormally dangerous." (Doc. 1282-1, at ¶ 2.) Though Mr. Catanzara goes on to state that he was aware that various other police departments stopped authorizing the use of the P320 in their respective departments, he again fails to provide any discussion or citation as to what was considered by these unnamed police departments in coming their policy decision. (*Id.* at ¶ 6.)

The Lodge and the City also rely on the June 9, 2025, affidavit of Sgt. Wasim Said. (Doc. 1293-1.) Therein, Sgt. Said admits that the only testing he performed was on February 21, 2025, when he conducted in-house testing of six P320s, which ultimately "***could not replicate the problem.***" (Doc. 1293-1, at ¶ 7.) The other purported evidence contained in Sgt. Said's affidavit relies on anecdotal reports, conjecture, and hearsay. For instance, Sgt. Said references conversations with two individuals: one with an official from the Milwaukee Police Department, in which they reviewed alleged reports and body worn camera footage relating to two incidents of a P320 allegedly discharging in holsters; and another with an official of the Washington State Criminal Justice Training Commission regarding their response to a single incidence of an alleged P320 "uncommanded discharge." Mr. Said, however, fails to provide any details about these three alleged "uncommanded discharges." He fails to provide any details regarding when these discharges happened, where they happened, how they happened, whether they were the result of user error, or any objective analysis whatsoever of the discharges. (Doc. 1293-1, at ¶ 6(b).) Sgt. Said goes on to cite to a purported "open source investigation" into various accidental P320 discharges.[4] But once again, Sgt. Said fails to disclose any details regarding these alleged incidents, including when they happened, where they happened, the individuals involved, the circumstances involved, or whether the incidents were determined to be the result of user error. (Doc. 1293-1, at ¶ 6(c).)

### III.    CONCLUSION

The P320 is a well trusted and reliable firearm, and Sig Sauer submits that the evidence referenced above demonstrates that the Lodge's allegations to the contrary are in dispute, and that the Lodge's support is inadequate to justify their request.

---

[4] An "open source" investigation is generally defined as a public records search, including information gleaned from social media and news media.

The Lodge has failed to submit any forensic evidence supporting their contention that the P320 poses an elevated safety risk. Sig Sauer, on the other hand, cites to fully informed courts around the country, and expert reports based on forensic testing, that conclude – as matters of law and reasonable scientific certainty – that the P320 is a safe firearm and is without defect. As such, the Lodge's request to intervene, and for an order finding that the P320's usage among CPD officers violates the Consent Decree's policy emphasis on the sanctity of human life, is entirely baseless. This Court should deny the Lodge's motion.

Alternatively, should this Court consider the Lodge's request, Sig Sauer should similarly be allowed to intervene in order to conduct discovery on the relevant issues. Namely, discovery into the Lodge and City's respective conclusions regarding the P320 in order to assist the Court in coming to an informed opinion. This discovery may include:

1. Wasim Said's deposition;[5]

2. All documents and communications related to Wasim Said's February 21, 2025 testing of six P320s in which he "could *not* replicate the problem, (Doc. 1293-1, at ¶7);

3. John Catanzara Jr.'s deposition;[6]

4. All documents and communications related to Wasim Said's "open source investigation," (Doc. 1293-1, at ¶6(c));

5. All documents and communications related to Wasim Said's "informal research" into the P320, (Doc. 1293-1, at ¶¶ 2-5);

6. All documents and communications related to Wasim Said's "formal research" into the P320, (Doc. 1293-1, at ¶ 6);

7. All communications between Wasim Said and Milwaukee Police Department's former Range Master Allen Groszczyk, (Doc. 1293-1, at ¶ 6(b)(i));

8. All communications between Wasim Said and Assistant Director Dave Mill from the Washington State Criminal Justice Training Commission, (Doc. 1293-1, at ¶ 6(b)(ii));

---

[5] Affiant of various affidavits attached to the subject briefing. (Doc. Nos. 1293-1, 1335).

[6] Affiant of affidavit and author of correspondence attached in support of Lodge's motion. (Doc. 1282-1).

9. All documents and communications related to Wasim Said's "TEAMS meeting" with "other members of the department" relating to firearm discharges stemming from "user error," (Doc. 1293-1, at ¶ 10);

10. Depositions of members of the Chicago Police Department's Arsenal Committee;

11. All policies and procedures relating to the process by which the Chicago Police Department's Arsenal Committee reviews firearms;

12. All documents and communications relating to the Chicago Police Department's Arsenal Committee review of the P320.

13. All documents and communications related to Superintendent Snelling's response to Chicago Police Department's Arsenal Committee review of the P320;

14. Deposition of Midgalia Bulnes (Deputy Chief Training & Support Group);[7]

15. All documents and communications related to the Chicago Police Department's "phase out" of the P320; and

16. All documents and communications upon which the Chicago Police Department relies as justification for the "phase out" of the P320.

WHEREFORE, intervenor Sig Sauer requests that this Court: (1) deny the Lodge's request to intervene and deny the request for an order declaring that the P320 violates the Consent Decree, or (2) in the alternative, grant Sig Sauer's request to intervene and allow the parties to conduct the relevant and necessary discovery prior to this Court entering any substantive order.

Respectfully submitted,

By:     /s/ *Carter Grant*

Attorneys for Sig Sauer

---

[7] Author of correspondence to CPD members regarding the COD's P320 phase out process. (Doc. 1282-2).

Carter Grant
**HART MCLAUGHLIN & ELDRIDGE, LLC**
One South Dearborn Street, Suite 1400
Chicago, Illinois 60603
Tel: (312) 955-0545
cgrant@hmelegal.com

Christopher Emch (*pro hac vice* forthcoming)
Julia Doherty (*pro hac vice* forthcoming)
**Foster Garvey PC**
111 Third Avene, Suite 3000
Seattle, Washington 98101
Tel: (206) 447-4400
chris.emch@foster.com
julia.doherty@foster.com