**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STATE OF ILLINOIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 17-cv-6260 |
| v. | ) | |
| | ) | Judge Rebecca Pallmeyer |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**THE CITY OF CHICAGO'S STATUS REPORT FOR INDEPENDENT MONITOR**
**REPORTING PERIOD 13(IMR-13)**

Defendant City of Chicago, by and through one of its attorneys, Danielle Alvarez Clayton, Assistant Corporation Counsel Supervisor for the City of Chicago, respectfully submits the City of Chicago's ("City's") Status Report for Reporting Period 13, pursuant to Consent Decree paragraph 680.

Consent Decree paragraph 680 states "[b]eginning with the Monitor's first report filed with the Court, and for each subsequent semiannual report by the Monitor, the City agrees to file a status report one month before each of the Monitor's reports is due for the duration of this Agreement. The City's status report will delineate the steps taken by CPD during the reporting period to comply with this Agreement, and the CPD's assessment of the status of its progress implementing this Agreement."

**BACKGROUND**

The Consent Decree is a negotiated settlement agreement between the City and the State of Illinois that requires the City, through the Chicago Police Department (CPD) and other City agencies, to institute a series of reforms designed to build public trust between officers and the communities they serve through the delivery of police services in a manner consistent with

applicable laws and in a manner that respects individual's rights.  Compliance with the Consent Decree is assessed by the Monitor ("IMT") every six months in the "Independent Monitor Reports" or IMRs.  IMR-13 represents the period of July 1, 2025, through December 31, 2025.

Compliance is generally assessed by the IMT in three levels – preliminary, secondary, and full or operational.  The general methodology for achieving preliminary compliance is that a policy exists that addresses the requirements of a particular Consent Decree paragraph.  The general methodology for achieving secondary compliance is that at least 95% of relevant CPD members have received training covering the policy (and therefore Consent Decree) requirements.  Finally, the general methodology for achieving full or operational compliance requires evaluating whether the policy and training are achieving the requisite goals or objectives.  It is also important to stress that each CPD policy and training covered by the Consent Decree requires review and approval by the IMT and Office of Attorney General (OAG).    The City and CPD typically do not obtain full compliance with any provisions of the Consent Decree without first achieving preliminary compliance through the policy development, review, and implementation process and then achieving secondary compliance through the development, review, and approval of training that is then administered to 95% of required department members.

The Consent Decree includes the following sections: Community Policing; Impartial Policing; Crisis Intervention; Use of Force; Recruitment, Hiring, and Promotion; Training; Supervision; Officer Wellness and Support; Accountability and Transparency; Data Collection, Analysis, and Management; and Investigatory Stops, Protective Pat Downs, and Enforcement of Loitering Ordinances.  CPD's Reform efforts, and Consent Decree compliance efforts are led by the Office of Constitutional Policing and Reform (OCPR). OCPR is staffed by sworn and civilian members who work on policy; training; community engagement; data collection and analysis;

2

auditing; and project management for the entire Consent Decree. OCPR works with subject matter experts within CPD and external experts where necessary to address the specific topics covered by the Consent Decree. During IMR 12 and IMR 13 the City and CPD worked together regarding staffing Consent Decree related positions as well as OCPR.

Below are highlights of the steps taken by CPD and the status of its progress through IMR-13 by Consent Decree section. Each section and paragraph calls for different materials to establish or maintain compliance. The information below is meant to highlight the work undertaken by CPD during the latest six-month reporting period to comply with the requirements of the Consent Decree and to summarize CPD's progress in implementing the Agreement. Accordingly, this report does not capture all the work and accomplishments made by CPD through the efforts of its sworn and civil members committed to doing this work during this reporting period.

## I.      DEMONSTRATED SUCCESS

Building upon the prior efforts, increased dedication and resources along with increased interactions with the IMT the City and CPD achieved increased compliance during IMR 13 reporting period. Specifically, Consent Decree compliance rose to 94% preliminary compliance, 66% secondary compliance, 23% full compliance, and paragraphs not in compliance dropped to 6%. These numbers only provide a snapshot of CPD's hard work, due to the nature of compliance assessment. For example, as more paragraphs advance to secondary compliance the number of paragraphs remaining to achieve preliminary compliance decreases. As a result, the percentages across compliance categories will fluctuate over time, reflecting the dynamic nature of the compliance process. The addition of subject matter also affects overall compliance rates, as will occur in the Investigatory Stop section, where 5 paragraphs moved into the reviewable category during the IMR13 monitoring period, and 8 more are assessable for IMR15. The City and CPD

continued to work with the Monitor and OAG to complete ongoing reviews of policy and training in support of future levels of compliance. Furthermore, in IMR13, CPD worked collaboratively with the IMT and OAG to identify all monitorable paragraphs that had not obtained preliminary compliance. The parties reviewed the methodology and determined a pathway forward for each paragraph not in compliance. CPD worked diligently during the reporting period to complete the work and expects all CPD monitorable paragraphs to have reached some level of compliance in IMR13; thus, the IMR13 Report, once filed by the Monitor, will have zero CPD paragraphs not in compliance. This achievement is particularly impactful for the Crisi Intervention section of the Consent Decree, where paragraphs 107 through 112 are expected to move into preliminary compliance. CPD's progress is a direct result of continued efforts by the Superintendent and the Department as whole.

During IMR13, CPD hosted Community Training Observation Days (CTOD) (October 4, 2025, and October 25, 2025). Community members were invited to CPD's training facility to participate abbreviated versions of Crisis Intervention training, Use of Force/High Risk Transitional – Vehicle Stops trainings, and Constitutional Policing Foundations/VirTra Simulator training. In addition to viewing CPD training, community members were given the opportunity to engage in scenario-based roleplay, acting as officers responding to individuals in crisis as well as responding to a high-risk transitional vehicle stop. Of the 93 attendees, 90 took the survey provided at the end of the CTOD. Out of the 90 who took the survey, 61% found the scenario-based activities most helpful, 98% felt the event was well-organized, and 94% said it improved their understanding of CPD's officer preparation. Participants also requested additional CTOD's and presentation handouts. Given the strong positive response, CPD plans to host additional Community Training Days in 2026. CTOD's efforts help to restore public trust and confidence in CPD while providing

the public with the opportunity to view how officers are trained in constitutional and effective policing. CPD produced evidence of the Community Training Observation Days (CTOD) in support of compliance throughout the Consent Decree.

Additionally, during IMR11 CPD began work on a Work Force Allocation Study (WFA) to achieve compliance with paragraph 368 and this work continued in IMR13. The WFA is a comprehensive and replicable Department-wide analysis designed to assess and optimize staffing and workforce deployment to meet the City's public safety needs. The WFA was supported through philanthropic funding, underscoring the importance of external partnerships in advancing sustainable reform. In addition to paragraph 368 the WFA impacts Consent Decree compliance for paragraphs in the Supervision, Training, Officer Wellness, Crisis Intervention, Accountability, and Data sections. To conduct the WFA Matrix Consulting Group was retained. Further information on the WFA is publicly available at [Workforce Analysis – Chicago Police Department](#).

## II.  COMPLIANCE EFFORTS BY SECTION

Noted below are ongoing projects which will achieve compliance in future reporting periods as well as specific achievements from IMR-13 that should achieve new or increased compliance in IMR-13 once assessed by the IMT.

## i.  COMMUNITY POLICING

***Goals***:

Among the goals of the Community Policing section are the integration of a community policing philosophy into CPD operations to build public trust and confidence in CPD and ensure constitutional and effective policing as well as officer and public safety. Additionally, CPD is to ensure that its community policing philosophy is a core component of police services, crime

reduction strategies and tactics, training, management, resource deployment, and accountability systems.

### *CPD Ongoing Work:*

CPD's Community Engagement Policy and Plan, Beat and District Area Council (DAC) meetings, District and Bureau Strategic Plans, Youth District Advisory Councils (YDAC), Quarterly Reports to the Community Policing Advisory Panel (CPAP), Victim Services, Affinity and Liaisons continue all contribute to meeting the goals of the Community Policing section of the Consent Decree. CPD's training department hosted their first Community Training Observation Days (CTOD) in IMR12 and IMR13 and will host additional days in 2026.

### *CPD Consent Decree Progress and Achievements in IMR –13:*

CPD's produced the 2025 Annual Community Policing Report to maintain compliance for paragraphs 14, 22, 23, 24, 25, 26, 27, and 29. The Community Policing Pre Service training, part of pre-service training for supervisors, was produced for IMT and OAG comment and review in support of full and secondary compliance for paragraphs 13 -17, 19, 20, 22, 23-30, 31-37, 45, 46, 333, 334, 349, 350, 351, 352, 353 and 354. CPD also produced the 2025 District Strategic Plans & Community Conversation Documents in support of compliance for paragraphs 15, 16, 17, 45, 46, and 47. The 2025 Comprehensive Summary was produced in support of full compliance with paragraph 13. CPD completed 95% distribution of the Digital Resource Guide during IMR13 in support of secondary compliance with paragraphs 19 and 134. Transport notifications were produced to the IMT and OAG in support of the policy and preliminary compliance with paragraph 22. CPD submitted the crime victim assistance audit in support of secondary compliance for paragraph 29.

The Detention Facilities Review eLearning was submitted with 95% completion in support of full compliance with paragraph 31. The 2025 Arrestee and In-Custody Communications Program was completed by 95% of all relevant department members and was submitted in support of full compliance with paragraphs 31 and 34. Arrest records demonstrating calls made in compliance with the law and Consent Decree were submitted in support of full compliance with paragraph 31. The Interactions with Youth Training Curriculum eLearning reached 95% completion and was produced in support of secondary compliance for paragraphs 32, 33, and 37. CPD also submitted the Matrix for Juvenile Processing Audit in support of secondary compliance for paragraphs 34 and 35. The CTOD's efforts supported compliance throughout the Consent Decree and specifically, supported secondary compliance for paragraphs 23 and 46 and preliminary compliance for paragraphs 52, 72, 158, and 160.

## ii.    IMPARTIAL POLICING

### Goals:

Among the goals of the Impartial Policing section are for CPD to deliver police services to all members of the public without bias and to treat all people with dignity and respect. To achieve these goals, CPD is to build partnerships with community members supporting the effective delivery of police services and provide clear policy, training, and supervision to its members in order to deliver police services in a manner that promotes community trust and ensures equal protection of the law to all individuals.

### CPD Ongoing Work:

CPD continues to incorporate principles of impartial policing into policies and trainings as they are developed, including the G04-06 Hate Crimes policy; Religious Interaction eLearning; Sexual Misconduct eLearning; Use of Social Media eLearning; Interactions with People with

Disabilities eLearning; Language Access eLearning; and the Search Warrant Training (SWAT and Narcotics). CPD is working with subject matter experts on a Misdemeanor Arrest Analysis, as required by paragraphs 79, 80, and 82. During IMR13 CPD produced the methodology and implementation plan, and anticipate preliminary compliance with paragraphs 79, 80, and 82; however, the entire analysis requires a year's worth of data and six months of analysis, thus the projects anticipated completion date is either the end of IMR16 or the beginning of IMR17.

### ***CPD Consent Decree Progress and Achievements in IMR-13:***

During IMR13 CPD submitted the 2026 Impartial Policing and Community Policing Plan to the IMT and OAG for comment and review in support of paragraphs 37, 59, 62, 68, 70,72, 74, 176, 317, 319-321, and 323; once approved the City and CPD expect additional compliance with the previously mentioned paragraphs. CPD produced the Equity Action Plan in support of secondary compliance with paragraphs 53, 57, and 72. The 2026 Annual Use of Force Training the Active Threat Incident Response (ATIR) was submitted to the IMT and OAG for comment and review, the review process was completed during IMR13. The ATIR was submitted in support of paragraphs 37, 52, 53, 153-56, 158, 161, 163-66, 177-80, 182- 190, 192, 194-205, 207-12, 216-20, 243-46, 276-77, 283, 317, 320-21, 323, and 412-13 of the Consent Decree.

The Search Warrants Trainings, Narcotics and SWAT, were reviewed and received no-objection letters from the IMT and OAG in IMR13. The Search Warrants Trainings, Narcotics and SWAT, were submitted in support of preliminary and secondary compliance with paragraphs 53, 54, and 55. The Use of Social Media eLearning was submitted in support of paragraphs 54, 57, 74, 320, 321, and 323. CPD submitted the list of Council of Religious Leaders of Metropolitan and the Religious Interactions eLearning in support of paragraph 60. The G02-06 Gender Based

Violence Incidents policy was produced towards preliminary compliance with paragraph 62 and received no-objection letters from the IMT and OAG in IMR13.

CPD submitted G08-06 Sexual Misconduct Community Engagement was submitted for review and received no-objections from the OAG and IMT. The Prohibitions of Sexual Misconduct eLearning 95% Compliance were submitted in support of paragraphs 63, 443, and 444. The Limited English Proficiency (LEP) eLearning was completed and produced towards secondary compliance for paragraphs 64 and 65. CPD submitted the Language Access Policy Translation via Language Access site in support of full compliance with paragraph 67.

CPD published and produced the full Disability Policy Suite S02-07. Parent policies S02-07-01 and S02-07-02 were produced in support of paragraphs 68 and 69. After publishing the full Disability Policy Suite S02-07 (1-3) for public comment, the Chicago Hearing Society (CHS) requested that S02-07-03, the Interactions with Persons Who are Deaf, Deafblind, or Hard of Hearing policy, be a stand-alone policy. CPD incorporated CHS feedback and reproduced the Interactions with Persons Who are Deaf, Deafblind, or Hard of Hearing as policy S02-09. Once completed, CPD submitted S02-09 to the IMT and OAG for comment and review, received no-objection letters and support compliance for paragraphs 53, 68, 69, and 70. The Interactions with People with Disabilities eLearning completed the review process and was produced during IIMR13 in support of secondary compliance with paragraphs 37, 68, and 7. The ADA Annual report was submitted in support of secondary compliance with paragraph 70. CPD submitted Transport Notifications in support of secondary compliance with paragraphs 20 and 71. The 2026 Crowd Management Plan was submitted for review and comment and received no-objection letters during IMR13, in support of paragraphs 74, 156, 162, 163, 208, 215, 218, 219, 220, 221, 245, 246, 220, 221, 244, 317, 320, 321, 322, 323, 381, 386, 412, 413, 414. The Hate Crimes Refresher

eLearning was submitted for comment and review during IMR13, in support of paragraphs 76, 77, 78, 320, 321, 323. The Hate Crimes Annual Report was also submitted during IMR13 in support of compliance with paragraphs 76, 77, and 78.

### iii. CRISIS INTERVENTION

#### *Goals:*

To ensure that CPD members interact with persons in crisis with dignity and respect, use trauma-informed techniques to respond appropriately, and to prevent unnecessary criminal justice involvement for individuals in crisis.

#### ***CPD Ongoing Work and Consent Decree Progress and Achievements in IMR-13:***

The Crisis Intervention Team (CIT) produced a compliance report addressing the implementation plan and quarterly reports in support of paragraphs 87, 88, 90, 91. The CIT Quarterly (3Q) Response Ratio Report was submitted in support of compliance with paragraphs 87, 90, 92, 106, 113, 118, 120, and 121. The Third Quarter CIT Training was produced in support of full compliance with paragraphs 90, 92, 93, 95, 101, 105, 121, and 141. The Task Force Records Receipt demonstrating that CPD is flagging CIT Certified Officers for OEMC, to respond to CIT calls for service, was produced in support of paragraph 87 and 141. The CIT Basic and Refresher Course Evaluations for May, June, July, August, and September were submitted in support of paragraphs 95, 96, 97, and 99. The 2025 CIT Refresher was produced during IMR13 and received no-objection letters in support of paragraphs 95, 97, 99, 100, and 103.

The Mental Health Awareness and Response Recruit Training Schedule were produced in support of compliance with paragraphs 126 and 127. The Recruit Curriculum Compliance (24-8) was also submitted towards compliance with paragraphs 126, 127, and 247; the Recruit Curriculum Compliance (25-2) was submitted in response to paragraphs 127 and 247. CPD also submitted

S11-10-01 Recruit Training Compliance Packet in support of paragraphs 127, 247, 294, 295, 296, 297, 303, 320, and 323. In support of paragraph 150 CPD submitted the OEMC and CPD CIT Data Memo, demonstrating the hard work and collaboration around CIT data that occurs behind the scenes within the City of Chicago.

### iv.   USE OF FORCE

***Goals:***

CPD's use of force policies as well as training, supervision, and accountability systems are to ensure that CPD officers use force in accordance with federal law, state law, and the requirements of the Consent Decree; that officers apply de-escalation techniques to prevent or reduce the need to use force where safe and feasible; that officers only use objectively reasonable force that is necessary and proportional; and that any use of unreasonable force is promptly identified and responded to appropriately.

***CPD Ongoing Work:***

CPD continues to collect and to report Use of Force Data in both a public facing dashboard and regular published reports. CPD's Tactical Review and Evaluation Division (TRED) continues to review certain use of force incidents, firearm pointing incidents, and foot pursuits. The following were drafted and produced for review that remain pending: Pre-Service Lieutenant Investigative and Review Responsibilities: TRRs, FPIs, Foot Pursuits, and BWC Analysis; TRED Training Materials; BWC Order- S03-14.

***CPD Consent Decree Progress and Achievements in IMR-13:***

Throughout IMR13, CPD engaged in discussions with the IMT and OAG to establish the methodologies and plans for operational compliance with additional paragraphs in the Use of Force section. As previously mentioned, the 2026 Annual Use of Force Training the Active Threat

Incident Response (ATIR) was submitted to the IMT and OAG for comment and review, the review process was completed during IMR13 and CPD produced ATIR in support of paragraphs 37, 52, 53, 153-56, 158, 161, 163-66, 177-80, 182- 190, 192, 194-205, 207-12, 216-20, 243-46, 276-77, 283, 317, 320-21, 323, and 412-13 of the Consent Decree. The Community Engagement Website was submitted in support of compliance with paragraphs 154, 158, 159, and 160. The policy U04-04 Issue and Replace First Aid Kits received no-objections and was produced in support of 174 and 175. The policies, U04-02-02 Control Device Instruments and G03-02-04 Taser Use Incidents policy, produced in IMR12, were completed in IMR13 and produced in support of paragraphs 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, and 212. The Mental Health Treatment and FOID Card Eligibility Compliance Report was submitted in support of paragraphs 181 and 387. The S11-03-01 Annual Prescribed Weapon Qualification was submitted in support of paragraphs 181 and 197. The Captains FPIR Training 95% Attendance Sheets demonstrating secondary compliance with paragraphs 189, 190, 191, 192, 193, and 194 were also produced in IMR13.

TRED On-Boarding training was produced and reviewed in IMR13 in support of paragraphs 190, 191, 192, 193, and 575. The D24-06 Firearm Pointing Incidents District-Level Review - Pilot Program documentation was produced in support of paragraphs 192 and 193. The BOP Taser District Inspections Q4 2024 and Q1 2025 were produced in support of paragraph 206. The In-Car Camera eLearning was completed in IMR13 and was produced in support of paragraph 242.

Lastly, after months of negotiations concerning whether CPD department members are required to record public safety briefings, communications between officers involved in a shooting or death and uninvolved supervisors who responds to the scene, the Court issued a ruling which allows the deactivation of body worn cameras during the safety briefing but requires recording

during the incident walk through. Therefore, CPD submitted the S03-14 Body Worn Camera Compliance Report in support of paragraphs 236, 237, 238, 239, 240, 241, and 451. CPD anticipates BWC paragraphs 236-38 to obtain preliminary, if not secondary compliance, in IMR13. CPD anticipates further revisions in IMR14 to the S03-14 policy suite will result in further levels of compliance.

v.   **RECRUITMENT, HIRING, AND PROMOTION**

*Goals:*

To recruit, hire, and promote officers who are qualified to meet the complex needs of law enforcement and who reflect a broad cross section of the City.

*CPD Ongoing Work:*

Due to the unique human resources structure within the City and budgetary restraints, the responsibilities for Recruitment, Hiring, and Promotions are divided between CPD, the City's Department of Human Resources (DHR), and the City's Department of Public Safety Administration (OPSA). CPD's responsibilities are primarily limited to recruitment; however, DHR, OPSA, and CPD have worked together to form a Police Promotions Committee and a Recruit Hiring Committee towards achieving the goals of this section of the Consent Decree.

*CPD Consent Decree Progress and Achievements in IMR-13:*

During IMR13 the City produced the RHP Presentation Notes in support of paragraphs 256 and 258. The City also worked with CPD to recruit and hire 94 Consent Decree positions during IMR13.

vi.   **TRAINING**

*Goals*:

Training of CPD members, both recruits and active members, is essential to ensure that members are policing diligently, safely, and with an understanding of and commitment to the constitutional rights of all individuals they encounter. Additionally, at this stage of the Consent Decree, CPD must provide all non-probationary police officers who are active duty and available for assignment forty hours of in-service training annually. This training must consist of a minimum of 24-hours of in-person mandatory courses.

### *CPD Ongoing Work:*

The production of TOC and TCAC meeting minutes continues to support full compliance with several paragraphs. Multiple training courses were drafted and produced during IMR12, all of which completed the review process and were issued no-objection letters; thus, the City and CPD anticipate further compliance for many paragraphs throughout the Consent Decree in IMR13. The Training Division of CPD continues to enhance, update, and revise training in accordance with changes in the law, changes in policy, and as described in CPD policy and the Consent Decree.

### *CPD Consent Decree Progress and Achievements in IMR-13:*

This year, due to increased efficiency, CPD completed the 40-hour training requirement for all Department members earlier than in past years. This accomplishment is reflected not only in this section of the status report, but throughout. The 2026 Annual Training Plan was reviewed and received no-objection letters from the IMT and OAG in IMR13. The 2026 Annual Training Plan was produced in support paragraphs 37, 72, 73, 74, 126, 243, 244, 245, 246, 247, 270, 271, 272, 273, 274, 275, 276, 277, 278, 280, 281, 282, 283, 284, 285, 286, 287, 288, 289, 290, 291, 294, 295, 296, 297, 298, 299, 302, 303, 305, 314, 315, 317, 318, 319, 320, 321, 322, 323, 324, 326, 327, 331, 332, 333, 334, 335, 337, 338, and 414. The TOC Monthly Meeting Minuets for Second Quarter of 2025 were submitted in support of paragraphs 270, 271, 272, 273, 274, 275, 276, 278,

315, 316, 318, 323, 326, 327, 412, and 414. The 2025 Quarter Two Survey Report was produced in support of paragraphs 271, 286, and 287.

The FTO Refresher, completed in IMR12, received a no-objection in IMR13 and was produced in support of paragraphs 275, 276, 303, 309, 311, 320, and 323. The D25-06 Training Division Instructor Evaluation - Pilot Program, also completed in IMR12, received a no-objection in IMR13 and was produced in support of paragraphs 285, 286, 287, and 288. CPD also produced the Consent Decree eLearning in support of compliance with paragraphs 291, 339, and 529. The FTO/PPO Quarterly Surveys were produced in support of paragraphs 304, 313, 314, and 315. As noted in the IMR12 status report the Field Qualified Recruit Groups 23-11, 24-01, 24-02, & 24-03 were completed in IMR13 and produced in support of paragraph 310. The FTEP Evaluations Board, the review of PPO performance, was completed in IMR13 and submitted in support of paragraph 312. The E04-05 Returning Service Officer was produced in support of compliance with paragraph 329. Pre-Service COMPSTAT Training was completed in IMR13 and submitted in support of paragraphs 331, 332, 333, and 334.

vii.  **SUPERVISION**

 *Goals:*

To provide effective supervision necessary for members to perform their duties lawfully, safely, and effectively.  Additionally, supervisors are to have the opportunity to spend time with members under their supervision to allow them to prevent, identify, and correct adverse officer behavior.

 *CPD Ongoing Work:*

In 2024 the Work Force Allocation Scope of Work and Vendor Plan were prepared and in IMR11 were produced for compliance towards a number of paragraphs throughout the consent

decree. CPD expects to achieve preliminary and secondary compliance with the Work Force Allocation Scope and Plan for several paragraphs: 91, 296, 298, 356, 357, 359, 360, 361, 362, 363, 364, 365, 366, 367, 399, 521, and 575. As noted above, the consulting firm, Matrix, has started the process of engaging the community and conducting the work force allocation study. Matrix is anticipated to provide a full report in December 2025. Additionally, CPD is working with Benchmark Analytics, a software workforce management company, to assist with CPD's department records management related to officer performance and accountability.

### *CPD Consent Decree Progress and Achievements in IMR-13:*

During IMR12 the PES Policy E05-01 was produced and reviewed by the IMT and OAG and received no-objection letters in IMR13. The PES Policy E05-01 was produced in IMR13 in support of compliance with paragraphs 369, 370, 371, 372, 373, 374, 375, and 376. Additionally, the Performance Evaluation System (PES) Pilot 4th and 6th Districts Training achieved 95% during IMR13 and was produced in support of paragraphs 369, 370, 371, 372, 373, 374, 375, and 376.

The Sworn and Civilian Equivalency Chart was produced this IMR in support of paragraphs 347, 349, 350, 351, 352, 353, 369, 370, 371, 372, 373, 374, 375, and 376. The two-year review of G01-09 Supervisor Responsibilities was completed and produced in support of compliance with paragraphs 347, 348, 349, 350, 351, 352, 353, 354, and 355. The 2025 Annual In-Service Supervisors Training compliance recognition and supporting documentation were produced in support of 348, 351, 352, 354, and 355. The CPD Newsletter and Quarter Two and Quarter three Newsletter Packages were submitted in support of compliance of paragraphs 350, 385, and 386. CPD submitted the Civilian Supervisor list in support of paragraph 354. CPD submitted the Unity of Command and Span of Control 2025 Onboarding Memo, Unity of

Command and Span of Control training, and Watch Application Screenshots in support of compliance for paragraphs 359, 360, 361, 362, 363, 364, 365, 366, 367, and 368.

viii.     **OFFICER WELLNESS AND SUPPORT**

   ***Goals:***

   Psychological and emotional wellness are critical to officers' health, relationships, job performance, and safety and are necessary to achieve a healthy, effective, and constitutionally compliant police force.  CPD is to provide its members with adequate support systems to treat members experiencing mental health, substance abuse, and other emotional challenges as well as to cope with the consequences that come from their service to the public.

   ***CPD Ongoing Work:***

   CPD continues to produce Peer Support meeting agendas, CPD wellness newsletters and EAP referrals, accomplishments, PCD clinicians licensing and specialties, and activities towards full and secondary compliance for several paragraphs.

   ***CPD Consent Decree Progress and Achievements in IMR-13:***

   During IMR13 CPD produced the 2025 Officer Wellness Support Plan 381, 383, 384, 385, 386, 388, 389, 391, and 394. The Officer Wellness presentations to the IMT and OAG for the months of July, August, September, and October were produced in support of paragraphs 381, 382, 383, 384, 385, 386, 389, 394, 398, 401, 404, and 406. The Column Case System Walkthrough was submitted in support of compliance with paragraphs 381, 394, and 399. CPD provided Department members with PCD EAP Retirement Information for Members and produced supporting documentation in support of paragraphs 385 and 386. The BIA SAFLEO Officer Suicide Post Event Guide was produced in support of paragraph 388. CPD anticipates full compliance for this paragraph in IMR14. In support of Department members use of the CPD Officer Wellness

resources, CPD produced EAP signs that are displayed within the districts for compliance with paragraph 396.

CPD produced, for the two-year review, the E06-01 Professional Counseling Division in support of compliance with paragraphs 350, 389, 390, 391, 392, 394, 395, 396, 397, 398, 400, 401, 402, 403, and 414. The Staff Listing of Alcohol and Drug Counselors Certifications were produced in support of paragraphs 398 and 400. The 2025 Peer Support Refresher Training received no objections and was produced in support of paragraphs 404 and 406. The Wellness Division also produced the ICIOT & CIOT training records in support of full compliance with paragraphs 409 and 410.

### ix.    ACCOUNTABILITY AND TRANSPARENCY

**_Goals:_**

Officer accountability for misconduct is essential to public confidence, employee safety, and officer morale.  CPD and other City agencies are to ensure the process for submitting and pursuing complaints that allege violations of CPD policy or the law by CPD members is open and accessible for all individuals who wish to file complaints.

**_CPD Ongoing Work:_**

CPD has continued to work with the IMT and OAG to complete several more rounds of revisions to G03-06 – Firearms Discharge and Officer Involved Incident Response and received a "no objection" notice from the IMT. Once finalized and implemented, this suite of policies should achieve new compliance with paragraphs 488 – 491.

The City and CPD continue to work with the IMT and OAG in achieving further levels of compliance with paragraph 492, PCRIA. BIA continues to maintain compliance with the Annual Complaint Initiation and Affidavit Overrides Module, BIA Intake Division Training Compliance

Report, Onboard Trainings, and In-Service Trainings. BIA produced the 2026 Training Plan for review and comment to the IMT and OAG in IMR13 and anticipates producing the plan towards further levels of compliance in IMR14.

### *CPD Consent Decree Progress and Achievements in IMR-13:*

In IMR13 BIA, a division within CPD, completed and produced the 2025 BIA In-Service training. The 2025 BIA In-Service training consisted of several eLeraning modules: a Consent Decree and Law Review; Investigatory File and CMS; Sexual Misconduct and Criminal/Bias Organization; Interviewing Department Members; Objective Verifiable Evidence. These modules were submitted in support of compliance with paragraphs 436 - 438, 443, 450, 452, 453, 455, 460, 464, 465, 467, 468, 475, 476, 477, 480, 480, 483, 484, 486, 494, 497, 505 - 509, 513 - 515, 528, 550, 551, and 552. The Sexual Misconduct training achieved 95% compliance and documentation was produced in support of paragraphs 63, 443, and 444. Audio recordings of Department members interviews, demonstrating compliance with policy, was produced in support of paragraph 447. The ILETSB documentation was produced pursuant to paragraph 518 and training records for paragraphs 526 and 527 were also produced in IMR13.

CPD produced the BIA 2025 Q1 Report and BIA 2025 Q3 Report in support of compliance with paragraphs 424, 425, 426, 429, 431, 432, 433, 438, 441, 443, 456, 462, 477, 483, 506, 507, 550, and 551. CPD produced notifications of cases past deadlines in support of paragraphs 474 and 448; notifications of allegations were produced in support of compliance with paragraph 475. The data for confidential criminal investigations that correspond with administrative investigations were produced in support of paragraph 453. The BIA Satisfaction Survey Analysis was produced in support of paragraph 483 and the BIA/CPD webpage was produced in support of paragraph 544.

CPD produced S09-05-02 Department Publications to the IMT and OAG for review and comment and received no objection letters. The S09-05-02 Department Publications policy was submitted in support of preliminary compliance with paragraphs 546 and 547; CPD anticipates both paragraphs to achieved preliminary in IMR-13.

x.     **DATA COLLECTION, ANALYSIS**

***Goals:***

The ability of CPD to collect and analyze data is necessary to engage in critical self-examination and to identify issues and correct them as well as necessary for transparency and increased public trust.

***CPD Ongoing Work and IMR-13 Progress and Achievements:***

CPD produced the Use of Force Data Analysis and Data Analysis Input Verification Process in support of 572 and 573. The methodology was previously produced and approved by the IMT as described in paragraph 573. CPD anticipates new, increased, or sustained levels of compliance with several paragraphs based upon the following IMR-13 deliverables:  FRB Q2 and Q3 Attendance Sheets (577, 578, 579); Special Order S01-09 (585, 586, 587, 588); City of Chicago Benchmark Analytics Agreement (605); Use of Force Data Review Audit (568); Use of Force Dashboards – Incident Level (569, 571, 572, 574); TRED Year End Report and SOPs (574, 575); Workforce Allocation Scope of Work  and Plan (575); and Annual Forms Review (609).

Additionally, CPD and the City continue to make progress on a new records management system (RMS) that will provide CPD with a more efficient way of managing records. In IMR-12, the CPD produced the Data Systems Plan, establishing a strategic framework for consolidating legacy systems. In IMR-13, the CPD produced the signed contract between the City of Chicago and Benchmark Analytics for the implementation of the Benchmark Management System (BMS)

that will house the EIS for preliminary compliance of paragraph 605. The Early Intervention System (EISS) - Scope of Work and Timeline provides a detailed roadmap of the steps CPD is taking to operationalize the EIS, including system modeling, configuration, policy development and public review, training, and unit staffing. The EISS was produced in support of paragraphs 583-602, 604, and 605.

### xi. INVESTIGATORY STOPS, PROTECTIVE PAT DOWNS, ENFORCEMENT OF LOITERING ORDINANCES

***Goals:***

The Consent Decree was expanded by way of stipulation to include investigatory stops, protective pat downs, and enforcement of the City's Loitering Ordinances.  The stipulation requires CPD to monitor, report, review, train, and implement accountability measures to ensure  that when conducting investigatory stops and protective pat downs and when enforcing the City's loitering ordinances, CPD members act in a manner that complies with the Constitution, the laws of the United States, and the laws of the State of Illinois and that CPD members act without bias and treat all people with dignity.

***CPD's Ongoing Work and IMR-13 Progress and Accomplishments:***

CPD continued the 627-review process on the policies and forms to address Investigatory Stops and Loitering Enforcement in IMR13. CPD anticipates new or increased levels of compliance with the below noted paragraphs based upon the following IMR-13 deliverables: TRED Year End Report (837, 838, 841, 856, 857); ISR Needs Assessment (835); Monthly ISR Data. Additionally, in IMR13, CPD completed the policy G03-08 Police Encounters and the Fourth Amendment Suite in support of paragraphs 803, 804 – 834, 839, 857, 859, 860, 862, 863, 864, 868, and 873. The ISR Policy eLearning was also produced during IMR13 in support of paragraphs 803, 804, 805, 806, 807, 808, 812, 814, 818, 821, 822, 823, 824, 825, 827, 829, 830,

831, 832, 838, 839, 863, 864, and 873. The ISR Stop application was produced in support of compliance with paragraphs 803, 808, 809, 810, 811, 812, 813, 814, 815, 816, 817, 818, 819, 820, 828, 829, 830, 831, 832, 836, 837, 840, 860, 861, 869, and 870. The S10-02 Gang and Narcotics Loitering Suite was produced in support of paragraphs 803, 805, 812, 814, 818, 821, 822, 823, 824, 825, 826, 827, 828, 829, 830, 831, 832, 838, 839, 863, 864, and 873. CPD created a Cannabis Recognition Program, which mirrors the State of IL training, in IMR12 and produced it in IMR13 for compliance in support of paragraphs 806 (i).

## CONCLUSION

As highlighted above, CPD has continued the work of reform and its Consent Decree compliance efforts throughout IMR-13, building on its efforts over past reporting periods. The City and CPD expect to see increased levels of compliance in the IMT's report for IMR-13 as they continue to plan the work for IMR-14.

**RESPECTFULLY SUBMITTED**

BY:    */s/ Danielle Alvarez Clayton*
Danielle Alvarez Clayton
Assistant Corporation Counsel Supervisor III

**Attorneys for the City of Chicago**
Danielle Clayton, Assistant Corporation Counsel Supervisor
Jackie Thompson, Deputy Corporation Counsel
Alexander MacMillan, Assistant Corporation Counsel
Matthew Axelrod, Assistant Corporation Counsel
City of Chicago Department of Law
Public Safety Reform Division
121 North LaSalle Street, Suite 600
Chicago, IL 60602
(312)744-2784 (Clayton)
Danielle.Clayton@CityofChicago.org

Allan T. Slagel
Taft, Stettinius & Hollister, LLP
111 East Wacker Drive Suite 2600
Chicago, IL 60601
(312)527-4000
aslagel@taftlaw.com

## **CERTIFICATE OF SERVICE**

      I, Danielle A. Clayton, certify that on December 30, 2025, I served the foregoing document on all parties of record by filing it using this Court's CM/ECF system.

                                 */s/ Danielle Alvarez Clayton*
                                 Danielle Alvarez Clayton
                                 Assistant Corporation Counsel Supervisor III