**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STATE OF ILLINOIS,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO,<br><br>Defendant. | Case No. 17-cv-6260<br><br>Hon. Rebecca R. Pallmeyer |

# NOTICE OF THE COALITION'S INTENT TO INITIATE ENFORCEMENT PROCEEDINGS

The Coalition provides the Court with this notice of its intent to initiate enforcement proceedings, pursuant to ¶ 709 of the Consent Decree. On November 9, 2026, the Coalition sent the attached letter to the City of Chicago. Ex. 1. As stated in that letter, the Chicago Police Department ("CPD") is in violation of ¶ 492 of the Consent Decree and the Illinois Police and Community Relations Improvement Act, 50 ILCS 727/1-1 *et seq.* ("PCRIA").

PCRIA is a state statute (effective January 1, 2016) that requires CPD to engage an outside law enforcement agency to conduct criminal investigations when Chicago police kill people. Consent Decree ¶ 492 requires the City to "use best efforts" to comply with PCRIA. Despite these overlapping mandates, CPD has not engaged an outside law enforcement agency to complete the required criminal investigations and has not made substantial progress toward doing so.

Since the Consent Decree went into effect in 2019, approximately forty individuals have been killed by CPD officers or died while in CPD custody, according to data published by the Illinois Criminal Justice Information Authority. Under PCRIA, the families of each of these individuals deserved an independent investigation into whether the officers who caused their

deaths should be charged with a crime. But these grieving families have not received the fully independent law enforcement investigation to which they were entitled by state law and ¶ 492.

The Coalition has asked to meet with the City promptly to discuss resolution of this critical issue, including a timeline for CPD to fully comply with PCRIA. Should the parties be unable to reach a resolution of the issues identified in the Coalition's enforcement letter (Ex. 1), the Coalition will file an enforcement motion with the Court.

DATED: November 9, 2026

Respectfully Submitted,

*/s/ Alexandra K. Block*

Alexandra K. Block (ablock@aclu-il.org)
Michelle T. García (mgarcia@aclu-il.org)
Joseph DiCola (jdicola@aclu-il.org)
Hirsh Joshi (hjoshi@aclu-il.org)
Roger Baldwin Foundation of ACLU, Inc.
150 N. Michigan Ave., Suite 600
Chicago, IL 60601
(312) 201-9740

Amanda Antholt (amanda@equipforequality.org)
Gavin Martin (gavin.martin@equipforequality.org)
Equip for Equality
20 N. Michigan Ave., Suite 300
Chicago, IL 60602
(312) 341-0022

Wallace Hilke (wally.hilke@law.northwestern.edu)
Community Justice and Civil Rights Clinic
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 60611-3609
(312) 503-2224

Craig B. Futterman (futterman@uchicago.edu)
Mandel Legal Aid Clinic
University of Chicago Law School
6020 S. University Ave.
Chicago, IL 60637
(773) 702-9611

*Counsel for the Coalition*

# EXHIBIT 1

ACLU
ROGER BALDWIN FOUNDATION OF ACLU, INC.
Illinois

ROGER BALDWIN FOUNDATION OF ACLU, INC.
150 N. MICHIGAN AVENUE
SUITE 600
CHICAGO, ILLINOIS 60601-7570
(312) 201-9740
FAX (312) 201-9760
WWW.ACLU-IL.ORG

EQUIP FOR EQUALITY

THE UNIVERSITY OF CHICAGO
THE EDWIN F. MANDEL LEGAL AID CLINIC
OF THE UNIVERSITY OF CHICAGO LAW SCHOOL

Northwestern
PRITZKER SCHOOL OF LAW

Bluhm Legal Clinic
375 East Chicago Avenue
Chicago, Illinois 60611-3069

legalclinic@law.northwestern.edu
Office 312. 503. 8576
Fax 312. 503. 8977
www.law.northwestern.edu

November 9, 2026

***Via Email***

Danielle Clayton
Asst. Corporation Counsel Supervisor
Public Safety Reform Division
City of Chicago Department of Law
121 North LaSalle St., Room 600
Chicago, IL 60602
Danielle.Clayton@cityofchicago.org

Allan Slagel
Counsel for the City of Chicago
Taft Stettinius & Hollister LLP
111 East Wacker, Suite 2800
Chicago, IL 60601
aslagel@taftlaw.com

Maggie Hickey
Independent Monitor
ArentFox Schiff
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
Maggie.Hickey@afslaw.com

Christopher G. Wells
Chief, Public Interest Division
Office of the Illinois Attorney General
100 W. Randolph Street, 12th Floor
Chicago, IL 60601
Christopher.Wells@ilag.gov

***Re: Coalition's Notice of Intended Enforcement: CPD's Violation of Consent Decree Paragraph 492 Requiring Compliance with the Illinois Police and Community Relations Improvement Act (PCRIA)***

Dear Counsel and Monitor Hickey,

Pursuant to Consent Decree ¶¶ 695 and 709, the Coalition[1] provides notice that the City of Chicago is currently in violation of Consent Decree ¶ 492 and the Illinois Police and Community Relations Improvement Act, 50 ILCS 727/1-1 *et seq.* ("PCRIA"), which requires that the City engage an outside law enforcement agency to investigate when Chicago police kill people. As further explained below, approximately forty individuals have died at the hands of Chicago Police Department officers while the community awaits the Department's compliance with ¶ 492 of the Consent Decree. These forty families were entitled to independent criminal investigations into CPD's actions—investigations that never occurred.

We request that the Monitor convene a conversation among all parties within 45 days, pursuant to ¶ 695, to discuss resolution of the Coalition's anticipated enforcement motion.

The Coalition understands that the City and Chicago Police Department ("CPD") have been in the process of evaluating options for complying with PCRIA for many years. The City and CPD commissioned a report by consultants at Hillard Heintze that was published on July 10,

---

[1] Organizations within the Coalition include the ACLU of Illinois; Community Renewal Society; Communities United; ONE Northside; Black Lives Matter Chicago; Blocks Together; Brighton Park Neighborhood Council; Chicago Westside Branch of the NAACP; Network 49; Women's All Points Bulletin; the 411 Movement for Pierre Loury; and the Chicago Urban League.

2020—more than six years ago—laying out a set of options for PCRIA compliance, including contracting with the Illinois State Police (as do most law enforcement agencies in Illinois, including the Cook County Sheriff's Office), establishing a task force under the investigative authority of the Illinois State Police, and establishing a City-led investigative task force to investigate "officer-involved deaths."[2]

At the status hearing before Judge Pallmeyer on October 20, 2026, the Attorney General's Office shared an update on the City's efforts to comply with PCRIA and expressed its preference that CPD enter into a task force arrangement with other law enforcement agencies to meet its statutory and Consent Decree obligations. Representatives of the City did not make a presentation regarding PCRIA compliance efforts at the status hearing and have not committed to any specific, concrete steps to bring CPD into compliance with PCRIA and ¶ 492 of the Consent Decree.

## I. Background

### A. The Police and Community Relations Improvement Act ("PCRIA")

The Illinois Legislature passed PCRIA in 2015, in the wake of the murder of Laquan McDonald by a CPD officer and the subsequent cover-up by officials throughout CPD and the City. The statute's effective date was January 1, 2016.

In relevant part, PCRIA requires that all law enforcement agencies (including CPD) retain an outside "entity or agency" to conduct a third-party criminal investigation of all officer-involved deaths. 50 ILCS 727/1-10(b).[3] The statute specifies that such an investigation "shall be conducted by at least 2 investigators," of which the lead investigator must be certified by the Illinois Law Enforcement Training and Standards Board as a "Lead Homicide Investigator" or have received similar training by the State Police or a Board-certified institution. Most importantly, PCRIA provides that *"[n]o investigator involved in the investigation may be employed by the law enforcement agency that employs the officer involved in the officer-involved death*" with an exception, not relevant here, for the Illinois State Police. *Id.* (emphasis added).

At the conclusion of the investigation, the third-party agency must provide a "complete report to the State's Attorney…." 50 ILCS 727/1-10(d). At that point, the State's Attorney decides whether to criminally charge the officer responsible for the death of the community member. If

[2] Hillard Heintze, *Independent Investigations into Officer-Involved Death Incidents in Chicago: An Initial Feasibility Study for the Police Community Relations Improvement Act Options* (July 10, 2020), available at: https://cdn.vox-cdn.com/uploads/chorus_asset/file/22494519/Hillard_Heintze_Feasiblity_Review_of_PCRIA_Options___07_10_20__1_.pdf (hereinafter "Hillard Study").

[3] An "officer-involved death" is defined comprehensively in PCRIA to include "any death of an individual that results directly from an action or directly from an intention omission, including unreasonable delay involving a person in custody or intentional failure to seek medical attention when the need for treatment is apparent, of a law enforcement officer while the officer is on duty, or otherwise acting within the scope of his or her employment, or while the officer is off duty, but performing activities that are within the scope of his or her law enforcement duties…."50 ILCS 727/1-5.

the officer is charged, the State's Attorney moves forward with a criminal case. If the officer is not charged, the third-party investigators publicly release their report. 50 ILCS 727/1-10(e).

Critically, PCRIA also permits law enforcement agencies to conduct separate, internal investigations of officer-involved deaths. 50 ILCS 727/1-15. This includes, for example, investigations conducted by an internal affairs bureau or, in Chicago, disciplinary investigations conducted by the Civilian Office of Police Accountability ("COPA") pursuant to Chicago Municipal Code § 2-78-120(c)-(e).

### B. Consent Decree Paragraph 492

Paragraph 492 of the Consent Decree requires the City to make best efforts to comply with PCRIA.[4] It provides:

> Criminal investigations into the actions of any CPD member relating to any "officer-involved death" will comply with the Police and Community Relations Improvement Act, 50 ILCS 727/1-1 et seq. ("PCRIA"). The City will use best efforts to ensure that a "law enforcement agency," as that term is defined under PCRIA, will conduct such investigations. The "law enforcement agency" conducting criminal investigations into the actions of any CPD member relating to any "officer-involved death" will have substantial experience and expertise in criminal homicide investigations.

In *Independent Monitoring Report 14*, released October 13, 2026 [Dkt. No. 1392], the Independent Monitor reported that "the Parties are still working together on finding a viable path forward for the City and CPD's compliance with PCRIA and ¶492." This report finds that the City is not in full compliance with ¶492. *Id.*

The City acknowledges that it is not in compliance with the law. On June 30, 2026, the City filed a status report stating: "The City and CPD continued its best efforts to comply with [PCRIA], working with the IMT and OAG to achieve further levels of compliance with paragraph 492. With Illinois Attorney General Kwame Raoul and CPD Superintendent Snelling both in attendance, the parties held a conference for high-level discussions on steps necessary in order to bring the City of Chicago into full compliance with PCRIA." City of Chicago's Status Report for Independent Monitor Reporting Period 14 (IMR 14), Dkt. No. 1382, at 14.

## II. Harms Caused By CPD and the City's Delay in Implementing PCRIA

Since the Consent Decree went into effect in 2019, approximately forty individuals have been killed by CPD officers or died while in CPD custody, according to data published by the

---

[4] Additionally, Consent Decree ¶ 153 generally requires the City and CPD to ensure that their policies and procedures comply with Illinois law, such as PCRIA.

Illinois Criminal Justice Information Authority.[5] Under PCRIA, the families of each of these individuals deserved an independent investigation into whether the officers who caused their deaths should be charged with a crime.

In a few high-profile instances such as the deaths of Adam Toledo and Anthony Alvarez, the Cook County State's Attorney's Office ("CCSAO") conducted criminal investigations. However, CCSAO did not investigate all forty deaths. CCSAO also has an inherent conflicts of interest.

As a result, the grieving families of the approximately forty people who have been killed by CPD since 2019 have not received the benefit of the fully independent law enforcement investigation to which they were entitled by state law. The public has not had the benefit of the transparency that comes with an objective, independent investigation free of conflicts of interest. And community trust in CPD suffers when it is uncertain whether CPD officers will be held accountable for shooting and killing people in violation of the criminal laws of Illinois.

### III. COPA's Role is Critical But Is Not an Adequate Substitute for an Independent Law Enforcement Investigation

The Coalition fully supports COPA's continued, concurrent jurisdiction to investigate whether officers who use deadly force against community members violated CPD policy. The Coalition further supports recent efforts to ensure that COPA has unfettered access to all witnesses, video footage, and other evidence necessary to complete timely and thorough disciplinary investigations. This is precisely the type of internal investigation contemplated in 50 ILCS 727/1-15. It is crucial that COPA should have the resources from the City and the cooperation from CPD necessary to fulfill its obligation to determine whether officers should be disciplined for shooting or killing people.

COPA's investigation, however, serves a different purpose from the independent law enforcement agency investigation contemplated by PCRIA. COPA has authority to determine whether an individual officer should be disciplined and also may make recommendations to change CPD policy. Chicago Mun. Code 2-78-120. COPA does not conduct criminal investigations. *See id.*[6] Therefore, while COPA's role is critical, COPA alone is not a substitute for CPD's compliance with PCRIA.

---

[5] Illinois Criminal Justice Information Authority, Illinois Deaths in Custody data dashboard, available at: https://public.data.illinois.gov/t/Public/views/IllinoisDeathsinCustody/DeathsinCustodyDashboard?%3Aembed=y&%3AisGuestRedirectFromVizportal=y (last visited July 6, 2026).

[6] *See also* Hillard Study at 10 (stating that the Illinois Law Enforcement Training and Standards Board ("ILETSB") has determined that COPA's civilian investigators cannot be designated as Lead Homicide Investigators because they are not sworn officers).

## IV. Waiting for Statutory Amendments to PCRIA Is Not a Solution

We understand, based on various statements in the Independent Monitor's reports and the Hillard Study, that the City has explored amending PCRIA to seek an exemption for Chicago. This may have been a viable option to explore immediately after PCRIA passed. It is no longer realistic. The Illinois Legislature has not adopted the City's desired amendment in the past ten years, and the Coalition is aware of no pending legislation with a chance of passage anytime soon.

Consent Decree ¶ 492 requires the City and CPD to comply with PCRIA as currently drafted.

## V. Conclusion

We look forward to discussing the City's specific plans to come into compliance with PCRIA and Consent Decree ¶ 492.

In the absence of such plans, the Coalition plans to seek relief from the Court in ninety days, on February 8, 2027. Specifically, the Coalition intends to seek an order:

A. Finding that the City and CPD are in violation of Consent Decree ¶ 492;

B. Requiring the City and CPD to fully comply with PCRIA by a date certain;

C. Until the date, requiring the City and CPD to provide monthly written status reports to the Court detailing their efforts to come into compliance with PCRIA;

D. Requiring the City and CPD to meet regularly with the Coalition to provide information about their efforts to come into compliance with PCRIA;

E. To the extent that financial considerations are a barrier to the City and CPD's negotiation of a task force or other arrangement to complete the independent criminal investigations of officer involved deaths mandated under PCRIA, requiring the City and CPD to bear all costs associated with those investigations.

Respectfully Submitted,

*/s/ Alexandra K. Block*

Alexandra K. Block (ablock@aclu-il.org)
Michelle T. García (mgarcia@aclu-il.org)
Joseph DiCola (jdicola@aclu-il.org)
Hirsh Joshi (hjoshi@aclu-il.org)
Roger Baldwin Foundation of ACLU, Inc.
150 N. Michigan Ave., Suite 600
Chicago, IL 60601
(312) 201-9740

Amanda Antholt (amanda@equipforequality.org)
Gavin Martin (gavin.martin@equipforequality.org)
Equip for Equality
20 N. Michigan Ave., Suite 300
Chicago, IL 60602
(312) 341-0022

Craig B. Futterman
(futterman@uchicago.edu)
Mandel Legal Aid Clinic
University of Chicago Law School
6020 S. University Ave.
Chicago, IL 60637
(773) 702-9611

Wallace Hilke
(wally.hilke@law.northwestern.edu)
Community Justice and Civil Rights Clinic
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 60611-3609
(312) 503-2224

*Counsel for the Coalition*